# EXHIBIT 123

# Crueger Dickinson



von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

**VIA EMAIL**

Pierce County
c/o Jeff Holst, Board Chair

**RE:** ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Pierce County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Pierce County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Pierce County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A. von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B. As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C. Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Pierce County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Pierce County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

      A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Pierce County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

Pierce County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

PIERCE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: _____10-24-17_____

Title: _____

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 124

## RESOLUTION NO. 25 (2017-2018)

**Subject:** **2018 Waupaca County Employee Wages & Salaries**

**WHEREAS,** the Waupaca County Finance and Human Resources Committee has reviewed compensation market data and has identified a need for a wage/salary adjustment and;

**WHEREAS,** the Finance and Human Resources Committee has concluded that the annual compensation structure should be increased by 2.5% effective 1/1/2018 for wage/salaries of employees paid in accordance with the Waupaca County wage schedule; and

**NOW, THEREFORE, BE IT RESOLVED** that the Waupaca County Board of Supervisors does hereby authorize an annual compensation increase of 2.5% effective 1/1/2018 for wage/salaries of employees paid in accordance with the Waupaca County Employee wage schedules.

**RECOMMENDED FOR INTRODUCTION BY WAUPACA COUNTY FINANCE & HUMAN RESOURCE COMMITTEE:** /s/ DuWayne Federwitz, Gary Barrington, John F. Penney, G. Robert Flease, Gerald M. Murphy, David S. Neumann, Patricia Craig, Dick Koeppen

ATTEST:                                       APPROVED AS TO FORM:
/s/ Jill Lodewegen                            /s/ Diane Meulemans
Waupaca County Clerk                          Corporation Counsel

Supr. Craig moved and Supr. Jonely seconded the motion to approve Resolution No. 25 (2017-2018).  Motion carried 24-0.  Passed the 31st day of October, 2017.

## RESOLUTION NO. 26 (2017-2018)

TO THE HONORABLE BOARD OF SUPERVISORS OF WAUPACA COUNTY, WI

MEMBERS,

**WHEREAS,** Waupaca County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

6

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of Von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED** County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED** County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted this 31st day of October, 2017.

**RECOMMENDED FOR INTRODUCTION BY THE WAUPACA COUNTY LEGISLATIVE, JUDICIAL, ETHICS, SAFETY & SECURITY COMMITTEE AND WAUPACA COUNTY FINANCE AND HUMAN RESOURCE COMMITTEE:** /s/ Dennis Kussmann, Mary Kay Poehlman, Dona Gabert, Fred Zaug, DuWayne Federwitz, Gary Barrington, John F. Penney, G. Robert Flease, Gerald M. Murphy, David S. Neumann, Patricia Craig, Dick Koeppen

ATTEST:                                    APPROVED AS TO FORM:
/s/ Jill Lodewegen                    /s/ Diane Meulemans
Waupaca County Clerk            Corporation Counsel

Supr. Nygaard moved and Supr. Rohan seconded the motion to approve Resolution No. 26 (2017-2018).  Motion carried 24-0.  Passed the 31st day of October, 2017.

## REPORTS

Chair Koeppen reported on the Wisconsin Counties Mutual Insurance meeting.

Supr. Craig reported on the East Central Regional Planning meeting.

Suprs. Zaug, Kietzmann, Penney, and Rohan reported on the WCA Annual Conference.

## APPOINTMENTS

Supr. G. Murphy moved and Supr. Spierings seconded the motion appointing Supr. Johnson to the Health & Human Services Board.  Motion carried 24-0.  Passed the 31st day of October, 2017.

Supr. Ellis moved and Supr. Zaug seconded the motion reappointing Marilyn Herman and Supr. Craig to the OWLS Board for a 3-year term.  Motion carried 24-0.  Passed the 31st day of October, 2017.

Supr. Craig moved and Supr. Poehlman seconded the motion appointing Julie Meyer, to the Waupaca County Revolving Loan Fund Committee.  Motion carried 24-0.  Passed the 31st day of October, 2017.

Supr. Nygaard moved and Supr. Sorensen seconded the motion reappointing Jim Goeser to the Veterans Service Commission for a 3-year term.  Motion carried 24-0.  Passed the 31st day of October, 2017.

 **Crueger Dickinson**

**vonBriesen**
von Briesen & Roper, s.c. | Attorneys at Law

September 12, 2017

**VIA EMAIL**

Waupaca County
c/o County Board Chair Dick Koeppen
811 Harding Street
Waupaca, WI 54981

RE:  *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Chair Koeppen:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to WAUPACA COUNTY ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel

and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County

disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.   <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.   <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.   <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to  perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

WAUPACA COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _Dick Koepp_          Date: _10/31/2017_

Title: _Chair_

cc:    Corporation Counsel

29243067_1.DOCX

# EXHIBIT 125

Resolution 2017 -10-102

| Motion by: | | | | |
|---|---|---|---|---|
| Koth | | | | |
| Second by: | | | | |
| Vander Sanden | | | | |

| Dist. | Supervisor | Y | N | Abs |
|---|---|---|---|---|
| 19 | Allen | | | |
| 10 | Baughan | | | |
| 1 | Bialecki | | | |
| 11 | Breitenmoser | | | |
| 13 | Crosby | | | |
| 12 | Gilk | | | |
| 14 | Hafeman | | | |
| 8 | Heller | | | |
| 17 | Koth | | | |
| 15 | Lee | | | |
| 16 | Loka | | | |
| 3 | Mueller | | | |
| 4 | | | | |
| 21 | Pike | | | |
| 22 | Reichelt | | | |
| 7 | Rusch | | | |
| 5 | Saal | | | |
| 20 | Vander Sanden | | | |
| 18 | Voermans | | | |
| 2 | Weaver | | | |
| 6 | Woller | | | |
| 9 | Zeitz | | | |
| | **Totals** | | | |

Carried
Defeated
Amended

Voice vote
Roll call

STATE OF WISCONSIN )
                                    ) SS
COUNTY OF LINCOLN )

I hereby certify that this
resolution/ordinance
is a true and correct copy of a
resolution/ordinance adopted
by Lincoln County Board of
Supervisors on:
October 17, 2017

Christopher J. Marlowe
County Clerk

SEAL

## TO AUTHORIZE ENTRY INTO AN AGREEMENT WITH LAW FIRMS TO PURSUE LEGAL ACTION AGAINST OPIOID MANUFACTURERS AT NO DIRECT COST TO LINCOLN COUNTY

WHEREAS, Lincoln County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Lincoln County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, Lincoln County has likely spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

WHEREAS, Lincoln County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

WHEREAS, Lincoln County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Lincoln County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

WHEREAS, all sums that Lincoln County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Lincoln County provides to County citizens, residents and visitors; and

WHEREAS, Lincoln County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

WHEREAS, Lincoln County has engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for Lincoln County to pursue certain legal claims against certain opioid manufacturers; and

WHEREAS, Lincoln County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

WHEREAS, the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

WHEREAS, all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Lincoln County consistent with the terms of this Resolution; and

WHEREAS, Lincoln County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Lincoln County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

WHEREAS, Lincoln County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

WHEREAS, Lincoln County believes it to be in the best interest of the County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

WHEREAS, by pursuing the claims against certain of the opioid manufacturers, Lincoln County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Lincoln County and other public agencies across the country in dealing with the Opioid Epidemic.

NOW, THEREFORE, BE IT RESOLVED that Lincoln County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

BE IT FURTHER RESOLVED that Lincoln County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Dated:  October 17, 2017

Introduced by:  Administrative & Legislative Committee
Date Passed:  10/17/17      Committee Vote: 7-0
Fiscal Impact:  County personnel and copy costs to participate in litigation process.
             Potential unknown monetary recovery and injunctive relief leading to future savings in programs and services costs.

Drafted by:  N.L.Bergstrom, Corporation Counsel

 

October 6, 2017

**VIA EMAIL**

Lincoln County
c/o Robert Lee, Board Chair

**RE:** *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Lincoln County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Lincoln County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Lincoln County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

    A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

    B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

    The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

    C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Lincoln County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County
or any other county or municipality in pursuing such a course. That is to say, Counsel and National
Law Firm cannot advocate for County's individual interests at the expense of the other counties or
municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National
Law Firm do not believe that this poses a problem because County's interests are currently aligned
with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National
Law Firm are confident that their representation of County will not be limited in this matter by
representation of any other county or municipality, but County should consider these consequences
of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in
agreeing to joint representation. Because each county or municipality would be a client of Counsel
and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and
communication to each client. As such, Counsel and National Law Firm must share all relevant
information with all counties and municipalities who are clients in relation to the Lawsuit and
Counsel and National Law Firm cannot, at the request of one county or municipality, withhold
relevant information from the other client. That is to say, Counsel and National Law Firm cannot
keep secrets about this matter among the counties and municipalities who are clients of Counsel and
National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge
information about communications with their clients because it is protected by the attorney-client
privilege. However, because County would be a joint client in the same matter with other counties
and municipalities, it is likely that were there to be a future legal dispute between County and other
counties or municipalities that engage Counsel and National Law Firm about this matter, the
attorney-client privilege would not apply, and each would not be able to invoke the privilege against
the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and
the conflict discussed above is waivable, facts and circumstances may change. For example, County
may change its mind and wish to pursue a course that is adverse to the interests of another county or
municipality and the conflict may become unwaivable. In that case, depending upon the
circumstances, Counsel and National Law Firm may have to withdraw from representing either
County or another county or municipality and County would have to bear the expense, if County
chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks
involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement
Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and
municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would
prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement
Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively
large law firm based in Wisconsin and represents many companies and individuals. It is possible that
some present and future clients of von Briesen & Roper, s.c., will have business relationships and
potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent
clients in matters that are actually adverse to the interests of County without County's permission and
informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by
case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or
maybe adverse to, the interests of County in circumstances where County has selected other counsel
and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Lincoln County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed
consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is
obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or
otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number
of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or
appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and
matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and
expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and
prosecuting the Lawsuit provided, however, that the costs and expenses associated with County
cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise
performing its responsibilities under this Engagement Letter are the responsibility of County. In
consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent
attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the
Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the
above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount
set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be
reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm,
and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the
gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then
the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be
deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000.
The costs and disbursements which may be deducted from a Recovery include, but are not limited to,
the following, without limitation: court fees, process server fees, transcript fees, expert witness fees
and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to
attend depositions, interview witnesses, attend meetings related to the scope of this Engagement
Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any
Recovery results in a monetary payment to County that is less than the amount of the costs incurred
and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay
Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or
disbursements made by Counsel or National Law Firm in the event no Recovery to County has been
obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by
the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs
incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party
shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be
disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Lincoln County
Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Lincoln County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Lincoln County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

LINCOLN COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: _10/17/17_____

Title: _Chairman_____

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 144

# **AUTHORITY TO REPRESENT**

RE:  <u>Rockingham County, North Carolina civil suit against those legally responsible for
the wrongful distribution of prescription opiates and damages caused thereby.</u>

ROCKINGHAM COUNTY, NORTH CAROLINA (hereinafter "CLIENT") hereby retains the law firm
MCHUGH FULLER LAW GROUP, PLLC, pursuant to the North Carolina Rules of Professional
Responsibility, on a contingent fee basis, to pursue ***all*** civil remedies against those in the chain of
distribution of prescription opiates responsible for the opioid epidemic which is plaguing
Rockingham County, North Carolina, including, but not limited to, filing a claim for public nuisance
to abate the damages caused thereby. **Michael Jay Fuller, Jr., Esq.** of the law firm MCHUGH
FULLER LAW GROUP, PLLC shall serve as LEAD COUNSEL. CLIENT authorizes lead counsel to employ
and/or associate additional counsel, with consent of CLIENT, to assist LEAD COUNSEL in the just
prosecution of the case.  CLIENT consents to the participation of the following firms:

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Rd
Hattiesburg, Mississippi

POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, West Virginia

GARRY WHITAKER LAW, P.C.
One N. Marshall Street, Suite 350
Winston-Salem, North Carolina

MELVIN & POWELL
Suite 200 Park West, 4400 Silas Creek Parkway
Winston-Salem, North Carolina

In consideration, CLIENT agrees to pay thirty percent (30%) of the total recovery (gross) in favor of the CLIENT as an attorney fee whether the claim is resolved by compromise, settlement, or trial and verdict (and appeal). The gross recovery shall be calculated on the amount obtained before the deduction of costs and expenses. CLIENT grants Attorneys an interest in a fee based on the gross recovery. If a court awards attorneys' fees, Attorneys shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded. **There is no fee if there is no recovery.**

McHUGH FULLER LAW GROUP, PLLC and the other law firms, hereinafter referred to as the "Attorneys," agree to advance all litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated. **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Attorneys, the fee customarily charged in the locality for similar legal services, the anticipated (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community. The litigation focuses on the manufacturers and wholesale distributors and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality. There is no easy solution and no precedent for such an action against this sector of the industry. Many of the facts of the case are locked behind closed doors. The billion dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Attorneys with reimbursement contingent upon a successful recovery. The outcome is uncertain, like all civil litigation, with compensation contingent upon a successful recovery. Consequently, there must be a clear understanding between the CLIENT and the Attorneys regarding the definition of a "successful recovery."

The Attorneys intend to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages or equitable remedies (e.g., abatement fund). The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or to recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the manufacturers and wholesale distributors. The CLIENT agrees to compensate the Attorneys, contingent upon prevailing, by paying 30% of any settlement/resolution/judgment, in favor of the CLIENT, whether it takes the form of monetary damages or equitable relief. For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay 30% of the gross amount to Attorneys as compensation and then reimburse the reasonable litigation expenses. If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay 30% of the gross value of the equitable relief to the Attorneys as compensation and then reimburse the reasonable litigation expenses. To be clear, Attorneys shall not be paid nor receive reimbursement from public funds. However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether

monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee. Under no circumstances shall the CLIENT be obligated to pay any Attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Attorneys will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Attorneys to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Attorneys should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT. Any division of fees will be governed by the North Carolina Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in this writing; and (3) the total fee is *reasonable*.

LEAD COUNSEL shall appoint a contact person to keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT. The CLIENT at all times shall retain the authority to decide the disposition of the case and maintain absolute control of the litigation.

Upon conclusion of this matter, LEAD COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm, as required in Rule 1.05 (e)(3) of the North Carolina Rules of Professional Conduct. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter. The Attorneys make no such promises or guarantees. Attorneys' comments about the outcome of this matter are expressions of opinion only and the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

SIGNED, this __4__ day of ___December___, 2017.

Rockingham County Board of Commissioners

_____
Mark F. Richardson

_____
Kevin Berger

_____
W. Keith Mabe

_____
A. Reece Pyrtle, Jr.

_____
T. Craig Travis


Accepted:

McHugh Fuller Law Group, PLLC
97 Elias Whiddon Rd
Hattiesburg, MS 39402
(601) 261-2220

By _____        _____
      Michael J. Fuller, Jr., Esq.                         Date
      *Lead Counsel*

RESOLUTION OF THE BOARD OF COMMISSIONERS OF
ROCKINGHAM COUNTY, NORTH CAROLINA

**Date:** December 4, 2017

### RESOLUTION NO. \_\_\_\_\_ (2017)

WHEREAS, Rockingham County Board of Commissioners has the authority to adopt resolutions with respect to county affairs of Rockingham County, North Carolina, pursuant to N.C. Gen. Stat. Ann. § 153A-121;

WHEREAS, the Rockingham County Board of Commissioners has the authority to take action to protect the public health, safety, and welfare of the residents and citizens of Rockingham County;

WHEREAS, there exists a serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Rockingham County;

WHEREAS, the diversion of legally produced controlled substances into the illicit market causes or contributes to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Rockingham County;

WHEREAS, the opioid crisis unreasonably interferes with rights common to the general public of Rockingham County; involves a significant interference with the public health, safety, peace, comfort, and convenience of citizens and residents of Rockingham County; includes the delivery of controlled substances in violation of State and Federal law and regulations; and therefore constitutes a public nuisance;

WHEREAS, the opioid crisis is having an extended and far reaching impact of the general public, health, and safety, of residents and citizens of Rockingham County and must be abated;

WHEREAS, the violation of any laws of the State of North Carolina, or of the United States of America controlling the distribution of a controlled substance is inimical, harmful, and adverse to the public welfare of the residents and citizens of Rockingham County constitutes a public nuisance;

WHEREAS, the Rockingham County Board of Commissioners has the authority to abate, or cause to be abated, any public nuisance including those acts that unreasonably interfere with rights common to the general public of Rockingham County and/or involve a significant interference with the public health, safety, peace, comfort, and convenience of citizens and residents of Rockingham County;

WHEREAS, Rockingham County has expended, is expending, and will continue to expend in the future County funds to respond to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality within Rockingham County; and

WHEREAS, the Rockingham County Board of Commissioners have received information that indicates that the manufacturers and wholesale distributors of controlled substances have distributed in Rockingham County, North Carolina, and surrounding areas may have violated Federal and/or State laws and regulations that were enacted to prevent the diversion of legally produced controlled substances into the illicit market.

NOW, THEREFORE, BE IT RESOLVED by the Rockingham County Board of Commissioners, assembled on this day at which a quorum is present, that based upon the above the Rockingham County Board of Commissioners are declaring the opioid crisis a public nuisance which must be abated for the benefit of Rockingham County and its residents and citizens.

BE IT FINALLY RESOLVED that all resolutions that are inconsistent with this resolution are rescinded.

The motion to approve the foregoing resolution was made by Commissioner ___Travis___,

seconded by Commissioner ___Pyrtle___, and the following vote was recorded:

| | | |
|---|---|---|
| Mark F. Richardson | *[signature]* | Aye |
| Kevin Berger | *[signature]* | Aye |
| W. Keith Mabe | *[signature]* | Aye |
| A. Reece Pyrtle, Jr. | *[signature]* | Aye |
| T. Craig Travis | | Aye |

# EXHIBIT 149

# Exhibit A
# AUTHORITY TO REPRESENT

RE:    Illinois civil suit against those legally responsible for the
wrongful distribution of prescription opiates and damages caused thereby.

The County of White by and through their duly authorized agent, Denton Aud, (hereinafter
"CLIENT") hereby retains the law firm GOLDENBERG, HELLER & ANTOGNOLI, PC., (hereinafter
generally referred to as "COUNSEL" as special counsel,  pursuant to the Illinois Rules of
Professional Responsibility, on a contingent fee basis, to pursue *all* civil remedies against those in
the chain of distribution of prescription opiates responsible for the opioid epidemic which is
plaguing the County of White, Illinois including, but not limited to, filing a claim for public
nuisance to abate the damages caused thereby. CLIENT authorizes COUNSEL to employ and/or
associate additional counsel, with consent of CLIENT, to assist COUNSEL in the just prosecution of
the case. CLIENT consents to the participation of the following firms:

GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 S. State Route 157
Edwardsville, Illinois

CATES MAHONEY, LLC
216 W. Pointe Dr.
Swansea, IL

HOLLAND LAW FIRM
300 N. Tucker Blvd
St. Louis, MO

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

4

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Rd
Hattiesburg, Mississippi

In consideration, CLIENT agrees to pay "Attorneys' fees" of one-third (33 1/3%) of gross settlement proceeds or forty percent (40%) of the gross judgment proceeds. Should an appeal be necessary and the CLIENT prevails on the appeal, then "Attorneys' fees" shall be 50% of any of the gross judgment proceeds, or compensation as otherwise allowed by a court of law. The gross proceeds shall be calculated on the amount obtained before the deduction of costs and expenses. CLIENT grants Attorneys an interest in a fee based on the gross recovery. If a court awards attorneys' fees, Attorneys shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded. **There is no fee if there is no recovery.**

GOLDENBERG HELLER & ANTOGNOLI, P.C. and the other law firms, hereinafter referred to as the "Attorneys," agree to advance all necessary litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated. **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Attorneys, the fee customarily charged in the locality for similar legal services, the anticipated  (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community. The litigation addresses the wholesale distributors and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality. There is no easy solution and no precedent for such an action against this sector of the industry. Many of the facts of the case are locked behind closed doors. The billion dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Attorneys with reimbursement contingent upon a successful recovery. The outcome is uncertain, as is all civil litigation, with compensation contingent upon a successful recovery. Consequently, there must be a clear understanding between the CLIENT and the Attorneys regarding the definition of a "successful recovery."

The Attorneys intend to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages or equitable remedies (e.g., abatement fund). The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the companies in the chain of sale and distribution of prescription opioid drugs. The CLIENT agrees to compensate the Attorneys, contingent upon prevailing whether it takes the form of monetary damages or equitable relief. For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay the Attorneys' fees as set forth

5

above of the gross amount to Attorneys as compensation and then reimburse the reasonable litigation expenses. If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay the Attorneys' fees, as set forth above, out of the gross value of the equitable relief to the Attorneys as compensation and then reimburse the reasonable litigation expenses. To be clear, Attorneys shall not be paid nor receive reimbursement from public funds. However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee. Under no circumstances shall the CLIENT be obligated to pay any Attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Attorneys will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Attorneys to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Attorneys should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT. Any division of fees will be governed by the Illinois Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT has given *written* consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation; (3) except where court approval of the fee division is obtained, the *written* closing statement in a case involving a contingent fee shall be signed by the CLIENT and each lawyer and shall comply with the terms of Rule 1.5 (c) of the Illinois Rules of Professional Conduct; and (4) the total fee is *reasonable*.

COUNSEL shall keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT. The CLIENT at all times shall retain the authority to decide the disposition of the case and maintain absolute control of the litigation.

Upon conclusion of this matter, COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

CLIENT understands that it may, through its offices and branches of working government, have to produce documents, either to demonstrate the CLIENT 's ability to be an adequate plaintiff, or to support the CLIENT's claims. In addition to the production of documents, this may include assisting with answering written discovery, having employees' depositions taken, giving oral testimony and/or appearing at trial. The Attorneys understand and appreciate that the CLIENT

6

may object to an opposing party's unchecked access to its government information and the Attorneys will vigorously oppose the production of any irrelevant, unrelated information and seek protective orders that limit any defendant's access to any information that contains confidential information (including attorney-client communications); BUT, there is no guarantee, as the production of information is left to the sound discretion of the court.

This Authority to Represent is between a unit of government and attorneys in private practice. As such, the CLIENT acknowledges that information from the CLIENT to its Attorneys, and vice versa, should not be produced in response to FOIA requests or discussed at public meetings because it is covered by the attorney-client privilege and is an exception under the Illinois Freedom of Information Act (5 ILCS 140/1 et seq.).

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter. The Attorneys make no such promises or guarantees. Attorneys' comments about the outcome of this matter are expressions of opinion only and the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

The undersigned represents that he is authorized by his office to enter into the above agreement and agrees to the express terms and conditions as set forth in this Authority to Represent.

SIGNED, this _16_ day of _November_, 2017.

**White County**

_Denton Aud_ States Attorney

Accepted:

GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 S. STATE ROUTE 157
EDWARDSVILLE, ILLINOIS 62025

By _____     _11/29/17_
Thomas J. Lech                        Date

*Counsel*

7

| | |
|---|---|
| **From:** | Ascher, Curtis |
| **Sent:** | Monday, March 31, 2025 4:34 PM |
| **To:** | stattesattorney1 |
| **Cc:** | pmougey@levinlaw.com |
| **Subject:** | RE: FOIA |

Hi Chris,

Thank you for your help. Please continue the search.

Best,
Curtis

Curtis Ascher
Law Clerk
**ALSTON & BIRD**
90 Park Avenue
New York, NY 10016
+1 212 905 9181 (O)
Curtis.Ascher@alston.com
Admission to the New York State Bar pending.

---

**From:** stattesattorney1 <statesattorney1@whitecounty-il.gov>
**Sent:** Friday, March 28, 2025 5:02 PM
**To:** Ascher, Curtis <Curtis.Ascher@alston.com>
**Subject:** FOIA

**EXTERNAL SENDER – Proceed with caution**

---

We received your request for public records. I am the State's Attorney for White County and authorized to speak on its behalf. Attached are public records related to the retention of outside counsel to file a civil action against those responsible for the opioid epidemic plaguing our community. We consented to amending the pleadings in MDL2804 to add the pharmacy benefit managers (PBMs) as defendants, I am still searching for the document stating such. It is my belief that no public hearing was held in this regard.

If you have any questions or concerns, please feel free to contact me at the number below.

Chris Neal
White County State's Attorney
(618) 382-7522

# EXHIBIT 153

| | |
|---|---|
| **From:** | Brian Madden |
| **Sent:** | Monday, July 8, 2024 9:36 AM |
| **To:** | Josh Bachman; marybaack-garvey@co.buchanan.mo.us; Josh Bachman |
| **Cc:** | Amy C. Baldwin |
| **Subject:** | Buchanan County.MO.Email to Clients.July 2024 |
| **Attachments:** | Buchanan County.MO.Email to Clients.July 2024.docx |

Counsel, please see attached correspondence regarding adding opioid defendants for Buchanan County.  We recommend doing so.  Please let me know by tomorrow whether you have objection to adding any of the proposed defendants.

Brian J. Madden

Dear Client,

We are writing with an update regarding the potential joinder of additional defendants in your county's case in the Opioid MDL 2804 (national litigation).  On May 27, 2024, the MDL Court issued an order temporarily granting the Co-Leads and the Plaintiff's Executive Committee ("PEC") leave to file motions to amend complaints to add new defendants.  We are required to identify by July 10 which defendants, if any, we will authorize the National Co-Leads and PEC to add to your case.  This email provides you with our recommendation and plan for your case.  If **you agree with our recommendation and plan, no response or action is necessary.  If you do not agree with our recommendation and plan in any respect, then please contact us immediately and before July** 9, and we will be happy to discuss and change our plan if you ask us to.  We do not believe Board of Supervisors action or authority is needed on this procedural amendment of pleadings, but, that would be up to any given County.

Based on the totality of information we have analyzed, and consistent with the guidance from the PEC, we recommend and plan to authorize the PEC to attempt to join the following new defendants to your County's case:

**Buchanan County, MO**

- Aurolife Pharma LLC
- KVK-Tech, Inc.
- Sun Pharmaceutical
- Express Scripts, Inc.
- Optum Rx Inc.

Our recommendations above are based on directives from the MDL Court, guidance from the Co-Leads and PEC, standards under the Federal Rules of Civil Procedure, updated Automated Reports and Consolidated Ordering System (ARCOS) data produced in the litigation, additional facts learned during discovery, litigation, and mediations about these defendants, and the financial viability of the remaining defendants.  Please note that the list of defendants we recommend adding to your County's case is not necessarily identical to the list for other counties in your state, even nearby counties.  It is based on specific market share and distribution data applicable to <u>your</u> County.  We do not recommend seeking to add any defendants not listed above to your county's case as the facts and data for such potential defendants do not meet applicable thresholds for joinder.

**Please remember that even though the cases against the original, major defendants have largely settled, your county's lawsuit in the National Opioid Litigation remains pending against other defendants, including these potential new defendants we expected to be added.  Thus, the County should continue to observe the "litigation hold" on relevant documents established for this case at the outset.  We also remind you that, in the unlikely event that your county's case is selected by the MDL Court for trial as a "bellwether" trial against any remaining defendant(s), your County will be required to cooperate and participate in additional discovery, trial preparations, and trial, and there may be significant sanctions imposed against a County that fails to adequately cooperate in that process if selected.**

If you have any questions or concerns, or if your County does not want to add one or more defendants listed above to your County's case, please contact me immediately by email or at (816) 701-1100.

As always, thanks for your continued attention and assistance in this important litigation.

# County Commission, Buchanan County, Missouri

STATE OF MISSOURI,  }   SS.                                    OCTOBER TERM, 2017
County of Buchanan,  }

In the County Commission of said County, on the 21nd day of November, 2017 the following, among other proceeding, were had viz:

The Buchanan County Commission hereby Authorizes the Presiding Commissioner; Harry Roberts to execute the attached and incorporated Representation in Opioid Litigation Agreement with Wagstaff & Cartmell, LLP to pursue Opioid Litigation on Behalf of Buchanan County, MO

It is so ordered.

_____          _____          _____
Ron Hook                                            Harry Roberts                                     Scott Burnham
Western District Commissioner           Presiding Commissioner                 Eastern District Commissioner

STATE OF MISSOURI,  }
County of Buchanan,  }      I, **Mary Baack-Garvey**, Clerk of the County Commission and for said County, hereby certify the above and foregoing to be a true copy of the proceedings of said County Commission, on the day and year above written, as the same appears of record, in my office. In Testimony Whereof, I have hereunto set my hand and affixed the seal of said County Commission at office in the Courthouse in St. Joseph, MO, this 21nd day of November, 2017.

_____ Clerk County Commission

By _____ , D.C.

Law Offices
# WAGSTAFF & CARTMELL LLP
4740 Grand Avenue – Suite 300
Kansas City, Missouri  64112
------------
(816) 701-1100
FAX (816) 531-2372

THOMAS W. WAGSTAFF
THOMAS P. CARTMELL
MARC K. ERICKSON
JONATHAN P. KIEFFER
ERIC D. BARTON†‡†
BRIAN J. MADDEN
JEFFREY M. KUNTZ
THOMAS A. ROTTINGHAUS
THOMAS J. PREUSS
TYLER W. HUDSON****
BRANDON D. HENRY
DIANE K. WATKINS***
SARAH B. RUANE
CHRISTOPHER L. SCHNIEDERS††
JOHN P. O'CONNOR ∆
P.J. O'CONNOR ∆
DAVID C. DeGREEFF
SANDY J. SMITH

DARYL J. DOUGLAS∆
VANESSA H. GROSS
ADAM S. DAVIS
DIANA L. BECKMAN
MELODY R. DICKSON
JACK T. HYDE
NATHANIEL M. JONES ∆
JOAN D. TOOMEY
ANDREW N. FAES ∆
MALLORY A. VANDYKE
SAMUEL P. BENNETT**
ROBERT G. GROVES
ZACHARY D. POOLE
LUKE F. CALLAHAN ∆
---------
SCOTT M. CROCKETT†
PHILLIP P. ASHLEY*†

ADMITTED IN MISSOURI AND KANSAS
∆ ADMITTED IN MISSOURI
*ADMITTED IN KANSAS
***ADMITTED IN MISSOURI, KANSAS AND COLORADO
****ADMITTED IN MISSOURI, KANSAS AND THE DISTRICT OF COLUMBIA
††ADMITTED IN MISSOURI, KANSAS AND ILLINOIS
†††ADMITTED IN MISSOURI, KANSAS AND UTAH
**ADMITTED IN MISSOURI, KANSAS AND WISCONSIN
†OF COUNSEL

November 21, 2017

**VIA PERSONAL DELIVERY**

Buchanan County, Missouri Commissioners

**RE:**            ***Representation in Opioid Litigation***

Dear Commissioners,

We appreciate the opportunity to represent the interests of Buchanan County, Missouri in the above-referenced litigation. The purpose of this letter is to confirm the terms and conditions of our representation.

**WHEREAS**, Buchanan County, Missouri wishes to determine the feasibility of Buchanan County, Missouri ("COUNTY") bringing an action against manufacturers and distributors of prescription opiates for damages to COUNTY arising out of marketing, monitoring, and distribution of opiates in and to COUNTY; and COUNTY understands based upon the pendency of similar litigation pending in the United States that COUNTY may have various viable causes of action at law against such manufacturers and distributors; and

**WHEREAS**, COUNTY has decided that it wishes to engage Wagstaff and Cartmell, LLP, a law firm located in Kansas City, Missouri, ( "COUNSEL"), to investigate the viability of and potential prosecution of an action against such manufacturers and distributors;

**NOW THEREFORE**, in consideration of the covenants, promises, and consent herein contained, the parties agree as follows:

## 1. SCOPE OF REPRESENTATION

COUNSEL, for the consideration herein provided, agrees to represent COUNTY in connection with investigation and potential prosecution of a civil action against manufacturers and distributors of prescription opiates. At a minimum, COUNSEL shall provide the following services: Work with COUNTY personnel to determine the costs that COUNTY has incurred as a result of opioid marketing, monitoring, and over-prescription; determine the viable causes of action available to COUNTY; and determine which manufacturers and distributors, if any, should be targeted in a lawsuit. After such identification, and only as authorized by COUNTY, COUNSEL will, on behalf of COUNTY, bring a civil lawsuit against those parties identified by COUNSEL and agreed to by COUNTY. If additional claims are desired to be raised, a separate agreement will need to be executed between COUNTY and COUNSEL or these claims will need to be handled by another law firm.

## 2. TERMINATION OF REPRESENTATION

This Agreement shall cover the period from November 2017 until the termination of the litigation or termination of the legal services rendered hereunder, whichever is sooner. This Agreement may be terminated by COUNTY upon at least 10-days' notice, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a recovery by COUNTY against the defendant manufacturers and distributors subsequent to termination, COUNSEL shall have rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to its work prior to termination. In the event of termination of this Agreement for any reason, COUNSEL shall immediately return to COUNTY all materials and documents of every kind and nature, including but not limited to COUNTY documents and computer disks, relating to this Agreement and the above-mentioned matter. COUNSEL may withdraw as COUNTY's attorneys at any time if they determine, in their sole discretion, that COUNTY's claim lacks merit or that it is not worthwhile to pursue COUNTY's claim further.

## 3. ATTORNEYS' FEES AND COSTS AND EXPENSES OF LITIGATION

a.   There is no fee for this representation unless a monetary recovery is obtained by COUNSEL in favor of COUNTY, whether by suit, settlement, or otherwise. COUNSEL agrees to advance all costs associated with prosecuting the litigation. Subject to paragraph 3 (b), below, and in consideration of the legal services to be rendered by COUNSEL, COUNTY agrees that the contingent attorneys' fees for this representation shall be a 33 and 1/3% contingent fee.   COUNTY shall have the option to provide notice to COUNSEL that it will secure a more favorable contingent fee agreement if COUNSEL does not match such contingent fee agreement.   COUNTY must provide COUNSEL 30 days' written notice of a more favorable contingent fee agreement and COUNSEL shall have 30 days from receipt of such notice to match or reject such fee agreement.

Upon the application of the applicable fee percentage to the gross amount recovered, and that dollar amount set aside as attorneys' fees to COUNSEL, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by COUNSEL, and that amount shall be remitted to COUNSEL. The costs and disbursements which may be deducted from a monetary recovery acceptable to COUNTY that is obtained

2

by COUNSEL include the following, without limitation:  court fees, process server fees, transcripts fees, expert witness fees, courier service fees, appellate printing fees, necessary travel and related expenses of attorneys to attend depositions, interview witnesses and the like, and other appropriate out-of-pocket expenses.   In the event that any settlement, final judgment, or other resolution of the action results in a monetary recovery to COUNTY that is less than the amount of the costs incurred and/or disbursements made by COUNSEL, COUNTY shall not be required to pay COUNSEL any more than the sum of the full monetary recovery.

b.      No monies shall be paid to COUNSEL for any work performed, costs incurred or disbursements made by COUNSEL in the event no monetary recovery to COUNTY has been obtained by COUNSEL.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the lawsuit by the court, no monies shall be paid to the COUNSEL for any work performed, costs incurred or disbursements made by the COUNSEL.  In such an event, neither party shall have any further rights against the other.

## 4.  DISBURSEMENT OF PROCEEDS TO CLIENT

The proceeds of any settlement, judgment or recovery on COUNTY's behalf under the terms of this Agreement shall be disbursed to COUNTY as soon as reasonably practicable after receipt by COUNSEL. At the time of disbursement of any proceeds recovered on COUNTY's behalf under the terms of this Agreement, COUNTY will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation which are due to COUNSEL from such proceeds. COUNSEL is authorized to retain out of any moneys that may come into their hands by reason of its representation of COUNTY the fees, costs, expenses and disbursements to which they are entitled as determined in this Agreement.

## 5.  SETTLEMENT

COUNTY has the authority to accept or reject any final settlement amount after receiving the advice of COUNSEL. COUNTY understands settlements are a "compromise" of its claim, and that COUNSEL's fee, as outlined in Section 3 above, applies to settlements also.  For example, if a settlement is reached, and includes future or structured payments, COUNSEL's fee shall include its contingent portion of those future or structured payments as outlined in Section 3 above.

## 6.  NO GUARANTEE OF RECOVERY

COUNTY understands and acknowledges that dispute resolution through litigation often takes years to achieve. COUNTY understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of COUNTY's claim, but that COUNSEL attorneys will use their skill, diligence, and experience to diligently pursue its action.

## 7.  INDEPENDENT CONTRACTOR

It is expressly agreed that COUNSEL's status hereunder is that of an independent contractor and the COUNSEL shall not be considered an employee of COUNTY for any purpose.

3

## 8. DUTIES AND RESPONSIBILITIES OF PARTIES

All professional work performed under this Agreement shall be performed by COUNSEL in accordance with existing professional standards.  COUNSEL shall exert its best efforts and use its best judgment in review and analysis and preparation of opinions and memoranda and representation in such proceedings.  COUNTY will cooperate with attorneys and their representatives at all times and comply with all reasonable requests of attorneys in the prosecution of this matter on a timely basis. COUNTY agrees to be truthful at all times with attorneys, to provide whatever information is necessary (in the attorney's estimation) in a timely and competent manner; to provide immediate information as to any change in COUNTY's status which may have any impact on the prosecution of this claim.

## 9. POTENTIAL CONFLICT

Without the prior written approval of COUNTY Attorney, COUNSEL shall not simultaneously represent other private clients in actions or proceedings against COUNTY, its agencies or COUNTY employees in their official capacity.  The representation of any individual in a dispute concerning the legal relationship between the individual and COUNTY or its agencies would also create a conflict which could require disqualification. COUNSEL shall disclose to COUNTY the existence of any such adverse interests whether existing or potential.  This duty shall continue so long as COUNSEL is retained on behalf of COUNTY or its employees.  The determination as to when a conflict exists shall ultimately be made by COUNTY Attorney after full disclosure is obtained.

## 10. APPROVAL TO BIND COUNTY

COUNSEL shall not have the power to enter into any agreement binding COUNTY or otherwise obligating COUNTY without the prior written approval of COUNTY.

## 11. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, without regard to conflicts of law rules.  Venue shall be designated in the State of Missouri Circuit Court for Buchanan County, Missouri, or in the United States District Court for the Western District of Missouri.

## 12. ENTIRE AGREEMENT

It is expressly agreed that this Agreement represents the entire agreement of the parties, that all previous understandings are merged in this Agreement, and that no modification of this Agreement shall be valid unless written and executed by both parties.

## 13. SEVERANCE CLAUSE

It is expressly agreed that if any term or provision of this Agreement, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such term or provision to persons or

4

circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

## 14. ACKNOWLEDGEMENTS AND AUTHORITY TO EXECUTE

The parties acknowledge that they have carefully read and fully understand all of the provisions of this agreement, and that they have the capacity to enter into this agreement. Each party and the person signing on behalf of each party represents that the person signing this agreement has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, the COUNTY acknowledges that it is bound by this agreement and will execute all the necessary documents (i.e., passing an ordinance or resolution) that may be required by its governing statutes and/or code.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the latest date written below.

**WAGSTAFF & CARTMELL, LLP**

By: *Thomas P. Cartmell*
Partner

Date: 11/27/17

**COUNTY OF BUCHANAN**
**STATE OF MISSOURI**

By:

Name: HARRY ROBERTS
Title: County Commissioner

Date: 11/22/17

6

# EXHIBIT 180

## RETAINER AGREEMENT

Genesee County, State of Michigan, hereby retains, WEITZ & LUXENBERG, P.C. ("W&L"), The Sam Bernstein Law Firm PLLC and the Behm and Behm Law Firm (collectively, "Claimant's Counsel") to prosecute and adjust for Genesee County a claim for past and future damages and/or expenditures caused by the culpable conduct of any and all pharmaceutical manufacturers, distributors and/or retailers of opioid analgesics. Genesee County hereby gives Claimant's Counsel the exclusive right to take all legal steps to enforce its claims.

### I. Fee.

In consideration of the services rendered and/or to be rendered by Claimant's Counsel, Genesee County hereby agrees to pay the following contingent fee:

Thirty (30) percent of the net sum recovered, whether recovered by suit, settlement or otherwise.

This fee will be paid ONLY if there is a recovery and will be deducted after the reimbursement of the litigation expenses and/or costs. Litigation expenses and/or costs include, but are not limited to, filing fees, costs associated with conducting discovery, hearings, conferences, meetings, trials, expert consultation and testimony, and investigation costs. W&L will advance all costs of the litigation.

W&L is authorized, in good faith and in the honest belief that it is in the best interests of Genesee County, to associate other firm(s) to assist in this matter. Any association of counsel will not include any additional legal fees as the firms will share in any legal fees earned pursuant to the above terms.

Claimant's Counsel will maintain full control of the matter on behalf of Genesee County at all times but will consult with and follow the direction of Genesee County through the Genesee County Corporation Counsel on all matters concerning the discovery, trial or resolution of Genesee County's claim. Claimant's Counsel will prosecute Genesee County's claim as an individual action against any and all manufacturers, distributors and/or retailers of opioid analgesics who have engaged in culpable conduct. Genesee County has the authority to resolve its claim in consultation with Claimant's Counsel. Claimant's Counsel shall not release any information to the public regarding Genesee County's claim without approval by the Genesee County Corporation Counsel.

### II. Conflicts of Interest.

It is agreed that Claimant's Counsel or any other future counsel associated in this matter reserve the right to continue to represent existing clients or to undertake to represent new clients in any matter that is not substantially related to their work for Genesee County in this matter even if the interests of such clients in those other matters are directly adverse to Genesee County, including litigation in which the County, its officers or related entities are parties. Claimant's Counsel shall notify Genesee County of any such conflict.

1

Claimant's Counsel or any other counsel associated in this matter consent to put Genesee County on notice as soon as Claimant's Counsel or any other future counsel associated in this matter become aware of new or prospective matters in which a conflict of interest may exist in order to give the County the opportunity to waive any potential conflicts of interest.

On Behalf of Genesee County.

Signature: _Mark Young_

Name: _Mark Young_

Title: _Chairman  Board of Commissioners_
Genesee County

Dated: _12 | 13 | 17_

2

On Behalf of Weitz & Luxenberg, PC.

Signature: _Paul F Nc_

Name: _Paul F. Novak_

Title: _Managing Attorney, Detroit office_

Dated: _1-4-18_

On Behalf of The Sam Bernstein Law Firm PLLC.

Signature: _Beth Bernstein / Miller_

Name: _Beth Bernstein / Miller_

Title: _Attorney_

Dated: _1-4-2018_

On Behalf of the Behm and Behm Law Firm.

Signature: _Mi.Pl_

Name: _Michael Behm_

Title: _Attorney_

Dated: _12-13-17_

**ADDITIONAL GENESEE COUNTY BOARD OF COMMISSIONERS**

2017-27

**ITEMS FOR BOARD ACTION**
Monday, December 4, 2017 @ 8:30 a.m.

I.     **CALL MEETING TO ORDER**

II.    **ROLL CALL**

III.   **INVOCATION**

IV.    **PLEDGE TO THE FLAG**

V.     **APPROVAL OF MINUTES**

VI.    **PUBLIC ADDRESS TO THE BOARD**

VII.   **COMMUNICATIONS**

Report and recommendation by the Opioid Ad-Hoc Committee

VIII.  **REPORTS**     BOARD OF COMMISSIONERS

17605 · B01 Resolution authorizing retaining the law firms of Weitz & Lusenberg, the Sam Bernstein Law Firm PLLC, and Behm and Behm Law Firm as Special Counsel to represent the County in a lawsuit against manufacturers and/or wholesale distributors of opioid controlled substances

Report from Chairperson

**COMMUNITY & ECONOMIC DEVELOPMENT COMMITTEE**

**David Martin, Chairperson**
**Ellen Ellenburg, Vice Chairperson**

Report from Chairperson

**FINANCE COMMITTEE**

**Kim Courts, Chairperson**
**Martin Cousineau, Vice Chairperson**

Report from Chairperson

ADDITIONAL BOARD OF COMMISSIONERS
DECEMBER 4, 2017

### GOVERNMENTAL OPERATIONS COMMITTEE

**Bryant W. Nolden, Chairperson**
**Kim Courts, Vice Chairperson**

Report from Chairperson

### HUMAN SERVICES COMMITTEE

**Brenda Clack, Chairperson**
**Ellen Ellenburg, Vice Chairperson**

Report from Chairperson

### PUBLIC WORKS COMMITTEE

**Ted Henry, Chairperson**
**Bryant W. Nolden, Vice Chairperson**

Report from Chairperson

### LAUDATORY RESOLUTIONS

IX.  **UNFINISHED BUSINESS**

X.  **NEW AND MISCELLANEOUS BUSINESS**

XI.  **OTHER BUSINESS**

XII.  **ADJOURNMENT**

TO THE HONORABLE CHAIRPERSON AND MEMBERS OF THE GENESEE COUNTY
BOARD OF COMMISSIONERS, GENESEE COUNTY, MICHIGAN

LADIES AND GENTLEMEN:

WHEREAS, the Genesee County Board of County Commissioners ("this
Board" is the policy-making body of the County; and

WHEREAS, this Board has the authority to take action to protect the public
health, safety, and welfare of the citizens of Genesee County; and

WHEREAS, there exists a serious public health and safety crisis involving
opioid/opiate abuse, addition, morbidity, and mortality in Genesee County; and

WHEREAS, the diversion of legally produced controlled substances into the
illicit market causes or contributes to the serious public health and safety crisis involving
opioid/opiate abuse, addition, morbidity, and mortality in Genesee County; and

WHEREAS, the violation of any laws of the state of Michigan or of the United
States of America controlling the distribution of a controlled substance is harmful and
adverse to the public welfare of the citizens of Genesee County and constitutes a public
nuisance; and

WHEREAS, Genesee County has expended, is expending, and will
continue to expend in the future public funds to respond to the serious public health and
safety crisis involving opioid/opiate abuse, addiction, morbidity, and mortality in Genesee
County; and

WHEREAS, the Board of County Commissioners may sue to obtain any
money due to the County; and

WHEREAS, the Board of County Commissioners has received information
that indicates that the manufacturers and wholesale distributors of controlled substances
who dispensed or otherwise caused opioids to be diverted into Genesee County may
have violated Federal and State laws and regulations that were enacted to prevent the
diversion of legally produced controlled substances into the illicit market; and

WHEREAS, the citizens of Genesee County will benefit from the retention
of special outside counsel to investigate and pursue, if appropriate, County claims against
the manufacturers and/or wholesale distributors of controlled substances in Genesee

County, on a contingent fee basis, wherein there is no attorney fee or reimbursement of litigation expenses if there is no recovery; and.

WHEREAS, this Board has reviewed the qualifications of, and the Opioid Ad Hoc Committee of this Board interviewed at a meeting held in compliance with the Open Meetings Act, several law firms seeking to represent the county in litigation concerning the opioid epidemic; and

WHEREAS, the Opioid Ad Hoc Committee recommends, and this Board has determined, that Weitz & Luxenberg PC, the Sam Bernstein Law Firm PLLC, and Behm and Behm Law Firm collectively possess outstanding experience and qualifications to represent the County's interests as they relate to the opioid epidemic.

NOW THEREFORE BE IT RESOLVED, by this Board of County Commissioners of Genesee County, Michigan, that opiate/opioid abuse, addition, morbidity, and mortality has created a serious public health and safety crisis in Genesee County, Michigan, and is a public nuisance.

BE IT FURTHER RESOLVED, that this Board hereby retains the firms of Weitz & Luxenberg PC, the Sam Bernstein Law Firm PLLC, and Behm and Behm Law Firm, and such other legal counsel as needed, as Special Counsel to represent the County of Genesee, in consultation with the county Corporation Counsel, to investigate and, if appropriate, pursue all civil remedies which may be afforded under the law as against the manufacturers and/or wholesale distributors in the chain of distribution of controlled substances who have caused or contributed to the public nuisance and serious public health and safety crisis involving opioid/opiate abuse, addiction, morbidity, and mortality in Genesee County, and the Chairperson of this Board is authorized to execute the retainer agreement on behalf of Genesee County.

BOARD OF COMMISSIONERS

B_____
CDB: cdb
11-29-17
12-04-B01                                                                    B01

# EXHIBIT 181

## RETAINER AGREEMENT

The City of Detroit, State of Michigan, hereby retains, WEITZ & LUXENBERG, P.C. ("W&L") and The Sam Bernstein Law Firm PLLC (collectively, "Claimant's Counsel") to prosecute and adjust for the City of Detroit a claim for past and future damages and/or expenditures caused by the culpable conduct of any and all pharmaceutical manufacturers, distributors and/or retailers of opioid analgesics.  The City of Detroit hereby gives Claimant's Counsel the exclusive right to take all legal steps to enforce its claims.

**I.      Fee.**

In consideration of the services rendered and/or to be rendered by Claimant's Counsel, the City of Detroit hereby agrees to pay the following contingent fee:

Thirty (30) percent of the net sum recovered, whether recovered by suit, settlement or otherwise.

This fee will be paid ONLY if there is a recovery and will be deducted after the reimbursement of the litigation expenses and/or costs.  Litigation expenses and/or costs include, but are not limited to, filing fees, costs associated with conducting discovery, hearings, conferences, meetings, trials, expert consultation and testimony, and investigation costs.  W&L will advance all costs of the litigation.

W&L is authorized, in good faith and in the honest belief that it is in the best interests of the City of Detroit, to associate other firm(s) to assist in this matter.  Any association of counsel will not include any additional legal fees as the firms will share in any legal fees earned pursuant to the above terms.

Claimant's Counsel will maintain full control of the matter on behalf of the City of Detroit at all times but will consult with and follow the direction of the City of Detroit through the Office of the City Attorney, City of Detroit on all matters concerning the discovery, trial or resolution of the City of Detroit's claim.  Claimant's Counsel will prosecute the City of Detroit's claim as an individual action against any and all manufacturers, distributors and/or retailers of opioid analgesics who have engaged in culpable conduct.  The City of Detroit has the authority to resolve its claim in consultation with Claimant's Counsel.  Claimant's Counsel shall not release any information to the public regarding the City of Detroit's claim without approval by the City of Detroit through the Office of the City Attorney, City of Detroit.

**II.      Conflicts of Interest.**

It is agreed that The Sam Bernstein Law Firm PLLC or any other future counsel associated in this matter reserve the right to continue to represent existing clients or to undertake to represent new clients in any matter that is not substantially related to their work for the City of Detroit in this matter even if the interests of such clients in those other matters are directly adverse to the City of Detroit, including litigation in which the City of Detroit, its officers or related entities are parties.  The Sam Bernstein Law Firm PLLC shall notify the City of Detroit of any such conflict.

The Sam Bernstein Law Firm PLLC or any other counsel associated in this matter consent to put the City of Detroit on notice as soon as The Sam Bernstein Law Firm PLLC or any other future counsel associated in this matter become aware of new or prospective matters in which a conflict of interest may exist in order to give the City of Detroit the opportunity to waive any potential conflicts of interest.

On Behalf of the City of Detroit.

Signature:   _____

Name:   _____

Title:   _____

Dated:   _____

# RETAINER AGREEMENT

Subject to the following terms and conditions, THE CITY OF DETROIT, MICHIGAN (the "Client") agrees to retain THE MILLER LAW FIRM, P.C., THE SAM BERNSTEIN LAW FIRM, PLLC, WEITZ & LUXENBERG, P.C., and ROBBINS GELLER RUDMAN & DOWD LLP (collectively the "Attorneys" or the "Firm") to litigate a lawsuit ("the Lawsuit") against companies involved in the manufacture, distribution and sale of insulin products, and Pharmacy Benefit Managers for illegal price fixing and price gouging, in violation of law, (jointly, "Defendants"), on the terms set forth herein.

1. The Attorneys' representation of Client in the proposed action will be handled strictly on a *contingent-fee* basis and the Client agrees to pay and assign to the Firm a combined thirty (30) percent of the gross amount recovered as set forth below.

   a. Client will pay the Firm thirty (30) percent of the entire recovery from any settlement, verdict or recovery, after deduction of the costs and expenses referred to hereinafter.

2. The Attorneys shall advance from time to time certain court costs, expenses and other out-of-pocket disbursements necessary to the handling of the above matter. These expenses include, but are not limited to, filing fees, process server fees, expert witness fees, transcript fees, electronic discovery costs, overnight courier charges, document reproduction, and travel costs. Such out-of-pocket disbursements advanced by the Attorneys will be reimbursed from any recovery obtained. Such costs will be repaid first before the allocation of any fees.

3. The Attorneys may at their discretion retain, affiliate, or consult with other firms as the Attorneys deem appropriate to prosecute this matter; provided, however, that the

1

Attorneys serve as Lead Counsel with ultimate responsibility to handle the litigation and make decisions. Client will have no responsibility to such associate counsel for fees or expenses, and they shall be entitled to compensation only as set forth above. Attorneys are responsible for both selection of and supervision of any associate counsel that Attorneys ask to assist in this matter.

4.  This Agreement is deemed to be made in the State of Michigan and is governed by the law, regulations and Rules of Professional Conduct of the State of Michigan.

5.  Attorneys will keep Client informed as to the status of the litigation on an ongoing basis and will provide copies of key pleadings and court filings to Client.

**AGREED TO BY:**

**The City of Detroit, Michigan**

By: _Conrad L. Mallett_

Its: _Corporation Counsel_

Dated: _11/27/2023_

**The Miller Law Firm, P.C.**

By: _Melvin Butch Hollowell_

Its: _Managing Partner_

Dated: _11/28/23_

**The Sam Bernstein Law Firm, PLLC**

By: _____ Mark Bernstein

Its: _Managing Partner_

Dated: _1/25/24_

2

Weitz & Luxenberg, P.C.

By: _____

Its: _Managing Attorney, Detroit_

Dated: _12/4/23_


Robbins Geller Rudman & Dowd LLP

By: _____

Dorothy P. Antullis

Its: _Partner_

Dated: _November 28, 2023_


12/10/2024

City Council Approval Date


Signed by:

_Jay Rising_

7C3115179B97423...

CFO

12/16/2024


3

# EXHIBIT 182

## RETAINER AGREEMENT

The County of Macomb, State of Michigan, hereby retains, WEITZ & LUXENBERG, P.C. ("W&L") and The Sam Bernstein Law Firm PLLC (collectively, "Claimant's Counsel") to prosecute and adjust for the County of Macomb a claim for past and future damages and/or expenditures caused by the culpable conduct of any and all pharmaceutical manufacturers, distributors and/or retailers of opioid analgesics. The County of Macomb hereby gives Claimant's Counsel the exclusive right to take all legal steps to enforce its claims.

**I.  Fee.**

In consideration of the services rendered and/or to be rendered by Claimant's Counsel, the County of Macomb hereby agrees to pay the following contingent fee:

Thirty (30) percent of the net sum recovered, whether recovered by suit, settlement or otherwise.

This fee will be paid ONLY if there is a recovery and will be deducted after the reimbursement of the litigation expenses and/or costs. Litigation expenses and/or costs include, but are not limited to, filing fees, costs associated with conducting discovery, hearings, conferences, meetings, trials, expert consultation and testimony, and investigation costs. W&L will advance all costs of the litigation.

W&L is authorized, in good faith and in the honest belief that it is in the best interests of the County of Macomb, to associate other firm(s) to assist in this matter. Any association of counsel will not include any additional legal fees as the firms will share in any legal fees earned pursuant to the above terms.

Claimant's Counsel will maintain full control of the matter on behalf of the County of Macomb at all times but will consult with and follow the direction of the County of Macomb through the Office of the County Attorney, County of Macomb on all matters concerning the discovery, trial or resolution of the County of Macomb's claim. Claimant's Counsel will prosecute the County of Macomb's claim as an individual action against any and all manufacturers, distributors and/or retailers of opioid analgesics who have engaged in culpable conduct. The County of Macomb has the authority to resolve its claim in consultation with Claimant's Counsel. Claimant's Counsel shall not release any information to the public regarding the County of Macomb's claim without approval by the County of Macomb through the Office of the County Attorney, County of Macomb.

1

Dated: _Dec. 18, 2017_     By: _[signature]_

Its: _DEPUTY COUNTY EXECUTIVE_

**On behalf of Macomb County**


Dated: _12/18/17_     By: _[signature]_

**Paul F. Novak**

**Weitz & Luxenberg, PC**


Dated: _12/18/17_     By: _[signature]_

**Mark J. Bernstein**

**Sam Bernstein Law Firm, PLLC**

2

# EXHIBIT 187

# **ENGAGEMENT TO REPRESENT**

RE:    <u>Cecil County, Maryland civil suit against those legally responsible  for the</u>
<u>wrongful distribution of prescription opiates and damages caused  thereby.</u>

**Cecil County, Maryland** (hereinafter "CLIENT"), by and through its governing body,
hereby retains the law firm  LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR,
PA ("Firm") pursuant to the Maryland Rules of Professional Conduct, on a contingent fee basis,
to pursue **_all_** civil remedies against those in the chain of distribution of prescription opiates
responsible for the opioid epidemic which is plaguing **Cecil County, Maryland** including, but
not limited to, filing a claim for public nuisance to abate, enjoin, recover and  prevent the
damages caused thereby. **Burton LeBlanc** of the law firm BARON & BUDD, PC shall serve as
LEAD COUNSEL. CLIENT authorizes lead counsel to employ and/or associate additional counsel,
with consent of CLIENT, to assist LEAD COUNSEL in the just prosecution of the case. CLIENT
consents to the participation of the following firms (collectively referred to, herein, as
"Attorneys"), if no conflicts exist, including but not limited to conflicts pursuant to the Maryland
Rules of Professional Conduct:

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington,  West Virginia

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

POWELL & MAJESTRO, PLLC
405 Capitol Street, P-1200
Charleston, West Virginia

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Road
Hattiesburg, Mississippi

In  consideration, CLIENT agrees to pay twenty eight percent (28%) of the total recovery
(gross)  in favor of the CLIENT as an attorney fee whether the claim is resolved by  compromise,
settlement,  or  trial  and  verdict  (and appeal). The gross recovery shall be calculated on the

amount obtained before the deduction of costs and expenses.  Total fees and expenses shall not exceed forty-eight (48%) of the gross recovery to CLIENT.  CLIENT grants the Firm an interest in a fee based on the gross recovery.  If a court awards attorneys' fees, the Firm shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded.  **There is no fee if there is no recovery.**

BARON & BUDD, PC and/or the other law firms, hereinafter referred to as the "Attorneys," shall advance all necessary litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated. **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Firm, the fee customarily charged in the locality for similar legal services, the anticipated (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community.  The litigation focuses on the wholesale distributors and manufacturers of opioids and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality.  There is no easy solution and no precedent for such an action against this sector of the industry.  Many of the facts of the case are locked behind closed doors. The billion-dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Firm with reimbursement contingent upon a successful recovery. The outcome is uncertain, as is all civil litigation, with compensation contingent upon a successful recovery.  Consequently, there must be a clear understanding between the CLIENT and the Firm regarding the definition of a "successful recovery."

The Firm intends to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages and/or equitable remedies (e.g., an abatement fund).  The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the wholesale distributors and manufacturers of opioids. The CLIENT agrees to compensate the Firm, contingent upon prevailing, by paying 28% of any settlement/resolution/judgment, in favor of the CLIENT, whether it takes the form of monetary damages or equitable relief.  For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay 28% of the gross amount to Firm as compensation and then reimburse the reasonable litigation expenses.  If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay 28% of the gross value of the equitable relief to the Firm as compensation and then reimburse the reasonable litigation expenses. To be clear, the Firm shall not be paid nor receive reimbursement from public funds unless required by law.  However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether monetary or equitable, shall

not be considered public funds for purposes of calculating the contingent fee unless required by law. Under no circumstances shall the CLIENT be obligated to pay any attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Firm will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Firm to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Firm should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT. Any division of fees will be governed by the Maryland Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT has given *written* consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation; and (3) the total fee is *reasonable*.

LEAD COUNSEL shall appoint a contact person to keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT. The CLIENT at all times shall retain the authority to decide the disposition of the case and personally oversee and maintain absolute control of the litigation.

Upon conclusion of this matter, LEAD COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm, as required in Rule 1.5 of the Maryland Rules of Professional Conduct. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter. The Attorneys make no such promises or guarantees. Attorneys' comments about the outcome of this matter are expressions of opinion only and   the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

SIGNED, this __4__ day of __DECEMBER__, 2017.

Cecil County, Maryland

Dr. Alan McCarthy
*County Executive*

Accepted:

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

By _____      12/7/17
   Burton LeBlanc                 Date
   *Lead Counsel*

**Office of the County Executive**
Adam Streight
County Executive

Dan Schneckenburger
Director of Administration

Office:   410.996.5202
Fax:       800.863.0947



**County Attorney**
Keith A. Baynes, Esquire
Member, Maryland Bar

Office:   410.996.8300
kbaynes@cecilcountymd.gov

County Information
Phone:  410.996.5200

## CECIL COUNTY, MARYLAND
200 Chesapeake Boulevard, Suite 2100, Elkton, MD  21921
www.ccgov.org

March 11, 2025

*Sent via email and NextRequest:* esmat.hanano@alston.com

Esmat Hanano
1201 W Peachtree NE
Atlanta, GA 30309

      **RE:**    **Maryland Public Information Act request submitted on February 18, 2025**

Dear Esmat Hanano,

We received your request for public records. I am the County Attorney for Cecil County Government and authorized to speak on its behalf. Attached are public records related to the retention of outside counsel to file a civil action against those responsible for the opioid epidemic plaguing our community. We consented to amending the pleadings in MDL2804 to add the pharmacy benefit managers (PBMs) as defendants on May 9, 2024. No public hearing was held in this regard.

If we do not hear from you regarding any additional concerns within the 10 business days, we will consider this matter closed.

Sincerely,

Keith Baynes
County Attorney
Cecil County Government

CC: opioidlitigation@levinlaw.com

# EXHIBIT 188

City of Woburn, Massachusetts

# ENGAGEMENT TO REPRESENT

RE:   City of Woburn, Massachusetts civil suit against those legally responsible for the wrongful distribution of prescription opiates and damages caused thereby.

**City of Woburn, Massachusetts** (hereinafter "CLIENT"), by its Mayor, Scott D. Galvin, hereby retains the law firm LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA ("Firm") on a contingent fee basis, to pursue all civil remedies against those in the chain of distribution of prescription opiates responsible for the opioid epidemic which is plaguing the City including, but not limited to,  filing a claim for public nuisance to abate, enjoin, recover and prevent the damages caused thereby.

**Peter J. Mougey** of the Firm shall serve as LEAD COUNSEL. CLIENT authorizes LEAD COUNSEL to employ and/or associate additional counsel, with consent of CLIENT, to assist LEAD COUNSEL in the just prosecution of the case. CLIENT consents to the participation of the following firms (collectively referred to, herein, as "Attorneys"), if no conflicts exist, including but not limited to conflicts pursuant to the Massachusetts Ethics laws and the Massachusetts Rules of Professional Conduct:

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

SWEENEY MERRIGAN LAW, LLP
268 Summer Street, LL
Boston, Massachusetts

RODMAN, RODMAN & SANDMAN, P.C.
442 Main Street, Suite 300
Malden, Massachusetts

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

City of Woburn, Massachusetts

POWELL & MAJESTRO, PLLC
405 Capitol Street, P-1200
Charleston, West Virginia

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Road
Hattiesburg, Mississippi

KP LAW, P.C.
101 Arch Street, 12th Floor
Boston, Massachusetts

CLIENT is retaining the Firm and Attorneys collectively and not as individuals, and attorney services to be provided to CLIENT hereunder will not necessarily be performed by any particular attorney.

In consideration, CLIENT agrees to pay twenty-five percent (25%) of the total recovery (gross) in favor of CLIENT as an attorney fee whether the claim is resolved by compromise, settlement, or trial and verdict (and appeal). The gross recovery shall be calculated on the amount obtained before the deduction of costs and expenses. CLIENT grants the Firm an interest in a fee based on the gross recovery. If a court awards attorneys' fees, the Firm shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded. CLIENT shall not pay to the Firm and Attorneys a fee of any kind or nature if there is no recovery.

The Firm and the Attorneys shall advance all necessary litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated and shall be paid to the Firm and Attorneys. CLIENT shall not be required to reimburse the Firm and Attorneys for litigation expenses of any kind or nature if there is no recovery.

CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this retention will preclude other retention by the Firm, the fee customarily charged in the locality for similar legal services, the anticipated (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

Attorneys shall have the right to represent other municipalities, governmental agencies or governmental subdivisions in other opioid related actions or similar litigation, subject to the requirements of the Massachusetts Rules of Professional Conduct relating to conflicts of interest, and CLIENT consents to such multiple representation. CLIENT has determined that it is in its own best interests to waive any and all potential or actual conflicts of interest which may occur as the result of Attorneys' current and continuing representation of other entities in similar litigation.

City of Woburn, Massachusetts

This litigation is intended to address a significant problem in the City. The litigation focuses on the wholesale distributors and manufacturers of opioids and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality. There is no easy solution and no precedent for such an action against this sector of the industry. Many of the facts of the case are locked behind closed doors. The billion-dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Firm with reimbursement contingent upon a successful recovery. The outcome is uncertain, as is all civil litigation, with compensation contingent upon a successful recovery.

The Firm intends to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages and/or equitable remedies (e.g., an abatement fund).  The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the wholesale distributors and manufacturers of opioids. CLIENT agrees to compensate the Firm, wholly contingent upon prevailing, by paying 25% of any settlement/resolution/judgment, in favor of CLIENT, whether it takes the form of monetary damages or equitable relief. For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay 25% of the gross amount to Firm as compensation and then reimburse the reasonable litigation expenses. If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay 25% of the gross value of the equitable relief to the Firm as compensation and then reimburse the reasonable litigation expenses, subject to appropriation of funds therefore and the applicable provisions of Massachusetts law.  To the extent that the remedy includes both monetary damages and equitable relief, 25% of the monetary value of the equitable relief together with 25% of the monetary damages will be deducted from the total monetary damages as compensation for the Firm.  If such compensation exceeds the total amount of the monetary damages awarded, payment of the additional compensation amount shall be subject to appropriation of funds therefor.  To be clear, however, the Firm shall not be paid nor receive reimbursement from public funds unless required by law. However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee unless required by law. Under no circumstances shall CLIENT be obligated to pay any attorneys' fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Firm will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Firm to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Firm should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by CLIENT. Any division of fees will be governed by the Massachusetts Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with CLIENT; (2) CLIENT has given *written* consent after full disclosure of the identity of each lawyer, that the fees

City of Woburn, Massachusetts

will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation; (3) except where court approval of the fee division is obtained, the *written* closing statement in a case involving a contingent fee shall be signed by CLIENT and each lawyer and shall comply with the terms of the Massachusetts Rules of Professional Conduct; and (4) the total fee is not clearly excessive.

The Firm and Attorneys will perform the legal services called for under this Agreement, keep CLIENT informed of progress and developments, and respond promptly to CLIENT's inquiries and communications. CLIENT will be truthful and cooperative with the Firm and Attorneys, disclose to the Firm and Attorneys all facts relevant to the claim, keep the Firm and Attorneys reasonably informed of developments, and be reasonably available to attend any necessary meetings, depositions, preparation sessions, hearings, and trial as reasonably necessary.

LEAD COUNSEL shall appoint a contact person to keep CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by CLIENT. CLIENT at all times shall retain the authority to decide the disposition of the case and personally oversee and maintain absolute control of the litigation, including but not limited to whether to settle the litigation and on what terms.

CLIENT may discharge the Firm and Attorneys at any time by written notice effective when received by LEAD COUNSEL. Unless specifically agreed by the Firm and CLIENT, the Firm and Attorneys will provide no further services and advance no further costs on CLIENT's behalf with respect to the litigation after receipt of the notice. If the Firm is CLIENT's attorney of record in any proceeding, CLIENT will execute and return a substitution-of-attorney form immediately on its receipt from the Firm.

Upon conclusion of this matter, LEAD COUNSEL shall provide CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

At the conclusion or termination of services under this Agreement, the Firm and Attorneys will release promptly to CLIENT all of CLIENT's papers and property. "CLIENT's papers and property" includes correspondence, deposition transcripts, exhibits, experts' reports, legal documents, physical evidence, and other items reasonably necessary to CLIENT's representation, whether CLIENT has paid for them or not.

Nothing in this Agreement and nothing in the Firm and Attorneys' statement to CLIENT may be construed as a promise or guarantee about the outcome of this matter. The Firm and Attorneys make no such promises or guarantees. The Firm and Attorneys' comments about the outcome of this matter are expressions of opinion only and the Firm and Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

City of Woburn, Massachusetts

    The relationship to CLIENT of the Firm and Attorneys, and any associate counsel or paralegal provided through them, in the performance of services hereunder is that of independent contractor and not that of employee of CLIENT, and no other wording of this Agreement shall stand in derogation of this paragraph.  The fees and costs paid to the Firm and Attorneys hereunder shall be deemed revenues of their law office practice and not as a remuneration for individual employment apart from the business of that law office.

    This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties. This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement to the extent that the parties carry it out.

    If any provision of this Agreement is held in whole or in part to be unenforceable, void, or voidable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

    This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts and the parties hereto submit to the jurisdiction of any of its appropriate courts for the adjudication of disputes arising out of this Agreement.

SIGNED, this _17th_ day of _MARCh_, 2018.

City of Woburn, Massachusetts

_____
Scott D. Galvin, Mayor

Accepted:

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

By _____        _3/2n/19_
    Peter J. Mougey              Date
    *Lead Counsel*

Accepted:

SWEENEY MERRIGAN LAW, LLP
268 Summer Street, LL
Boston, Massachusetts

By _____        _3/22/18_
    Peter M. Merrigan             Date
    *Massachusetts Counsel*

City of Woburn, Massachusetts

Accepted:

RODMAN, RODMAN & SANDMAN, P.C.
442 Main Street, Suite 300
Malden, Massachusetts

By _____     Date _3/29/18_

   Richard M. Sandman
   *Massachusetts Counsel*


Accepted:

KP LAW, P.C.
101 Arch Street
Boston, Massachusetts

By _____     Date _3-28-18_

   Mark R. Reich
   *Massachusetts Coordinating Counsel*

| | |
|---|---|
| **From:** | Salvati, Mark <msalvati@cityofwoburn.com> |
| **Sent:** | Wednesday, April 23, 2025 10:45 AM |
| **To:** | Hanano, Esmat; Higgins, Lindsay |
| **Cc:** | Hatchett, Andrew |
| **Subject:** | Re: City of Woburn, Massachusetts Public Records Request |
| **Attachments:** | Contract (Fully Executed) Massachusetts-Woburn.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**EXTERNAL SENDER – Proceed with caution**

Hello, I am the City Solicitor for the City of Woburn and have received your public records request.  I am authorized to respond on behalf of the City.  Attached are the public records related to the retention of outside counsel to file a civil action against those responsible for the opioid epidemic plaquing our community.  We consented to amending the pleadings in MDL2804 to add the pharmacy benefit managers (PBMs) as defendants on 5/13/2024.  No public hearing was held in this regard.

I believe this completes the record request.

Mark J Salvati
City Solicitor
10 Common Street
Woburn MA 01801
781-897-5916
msalvati@cityofwoburn.com

---

**From:** Hanano, Esmat <Esmat.Hanano@alston.com>
**Sent:** Monday, April 7, 2025 12:22 PM
**To:** Higgins, Lindsay <lhiggins@cityofwoburn.com>
**Cc:** Salvati, Mark <msalvati@cityofwoburn.com>; Hatchett, Andrew <Andrew.Hatchett@alston.com>; Tara MacNeill <taramacneill@quinnemanuel.com>; Peter Mougey (pmougey@levinlaw.com) <pmougey@levinlaw.com>
**Subject:** City of Woburn, Massachusetts Public Records Request

[**NOTICE:**  This message originated outside of our organization -- **DO NOT CLICK** on **links** or open **attachments** unless you are sure the content is safe.]
Hello,

I hope this email finds you well. I am writing to initiate a public records request under the Massachusetts Public Records Law, as explained in the attached letter. Please let me know if there is anything else you need from me. Thank you for your attention to this matter.

Sincerely,

Esmat Hanano
Associate
**ALSTON & BIRD**
1201 West Peachtree Street
Atlanta, GA 30309
+1 404 881 7742 (O)
+1 404 446 6223 (M)
Esmat.Hanano@alston.com

---

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.


NOTICE: Although specific privileges may apply, which could make a particular email correspondence confidential; in most instances any transmission through the municipal email system is considered a public document subject to the requirements of M.G.L. c.66. This means that any emails sent to or from a city email address ARE NOT PRIVATE and are subject to public records requests and dissemination. Please do not send private, sensitive information via email. This email may contain confidential and privileged material for the sole use of the intended recipient. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender and delete all copies.

# EXHIBIT 190



# City of Methuen, Massachusetts
### Office of the City Solicitor
The Searles Building, 41 Pleasant Street
Methuen, Massachusetts 01844
Telephone: 978-983-8575   Fax: 978-983-8981

*David P. Beauregard, Jr.*
*Mayor*

*Paul T. O'Neill*
*Acting City Solicitor*

*Nina I. Schulze*
*Second Assistant City Solicitor*

April 8, 2025

Esmat Hanano, Esq.
1201 West Peachtree St NE
Atlanta, Georgia 30309

VIA EMAIL THROUGH RECORDS PORTAL TO
esmat.hanano@alston.com

RE:     Public Records Request 2025-147

Dear Mr. Hanano:

This office represents the City of Methuen ("City") in connection with the above-noted public records request.

This timely correspondence follows your above-noted request, docketed on March 26, 2025 via the City's online public records request portal, in which you seek the following documents from the City:

1. All documents and other records relating to the City of Methuen's approval to bring claims against OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; UnitedHealth Group Incorporated; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; or Express Scripts Specialty Distribution Services, Inc. in the national opioid litigation, In re Nat'l Prescription Opiate Litig., 1:17-md-2804 (N.D. Ohio) and its member cases (the "Opioid Litigation").

2. All documents and other records relating to the City of Methuen's approval to file any complaint in the Opioid Litigation.

3. All documents and other records relating to the City of Methuen's approval to amend or supplement its complaint in the Opioid Litigation.

4. All engagement agreements, engagement letters, memoranda of understanding, memoranda of agreement, letters of intent, contracts, or other agreements (including any amendments, restatements, or modifications to such agreements) that the City of Methuen's entered into with any law firms, attorneys, or other professionals (including, but not limited to Peter Mougey or Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.) to prosecute or assist with the prosecution of the Opioid Litigation or claims against any party or entity.

5.   All documents authorizing any individual to act outside of a public hearing to authorize, approve, or consent to
the City of Methuen's filing or amending any lawsuit and all documents identifying any individuals with that
authority.

After a review of your submission, the City respectfully declines to produce documents responsive to your
requests given the pendency of litigation – <u>City of Methuen v. Amerisourcebergen Drug Corporation et al</u>, Case
No. 1:18-op-45106; <u>In Re: National Prescription Opiate Litigation</u> Case No. 1:17-md-2804. Where, as here, the
material that you seek is a matter of dispute in pending litigation, the Supervisor of Records can decline to hear
an appeal from a requestor seeking such access. See 950 CMR 32.08(2)(b)(1), linked here: <u>950 CMR 32</u>.

Please be advised that an administrative appeal of the City's response to your request may be made by filing a
written protest to the Supervisor of Public Records, Office of the Secretary of the Commonwealth, One
Ashburton Place, Room 1719, Boston, MA 02108, or by email to pre@sec.state.ma.us, in accordance with 950
CMR 32.08(1); or you may seek judicial review by commencing a civil action in the Superior Court.

Very truly yours,

/s/ Nina I. Schulze

Nina I. Schulze, Esq.
Second Assistant City Solicitor

Enc.
cc: Paul T. O'Neill, Esq.

# EXHIBIT 192

# AUTHORITY TO REPRESENT

RE:  Onslow County, North Carolina civil suit against those legally responsible for the wrongful distribution of prescription opiates and damages caused thereby.

ONSLOW COUNTY, NORTH CAROLINA (hereinafter "CLIENT") hereby retains the law firm MCHUGH FULLER LAW GROUP, PLLC, pursuant to the North Carolina Rules of Professional Responsibility, on a contingent fee basis, to pursue *all* civil remedies against those in the chain of distribution of prescription opiates responsible for the opioid epidemic which is plaguing Onslow County, North Carolina, including, but not limited to, filing a claim for public nuisance to abate the damages caused thereby. **Michael Jay Fuller, Jr., Esq.** of the law firm MCHUGH FULLER LAW GROUP, PLLC shall serve as LEAD COUNSEL. CLIENT authorizes lead counsel to employ and/or associate additional counsel, with consent of CLIENT, to assist LEAD COUNSEL in the just prosecution of the case.  CLIENT consents to the participation of the following firms:

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Rd
Hattiesburg, Mississippi

POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301

SEAGLE LAW
P.O. Box 15307
Asheville, NC 28813

WARD SMITH, P.A.
82 Patton Avenue
Suite 300
Asheville, NC 28801

In consideration, CLIENT agrees to pay thirty percent (30%) of the total recovery (gross) in favor of the CLIENT as an attorney fee whether the claim is resolved by compromise, settlement, or trial and verdict (and appeal). The gross recovery shall be calculated on the amount obtained before the deduction of costs and expenses. CLIENT grants Attorneys an interest in a fee based on the gross recovery. If a court awards attorneys' fees, Attorneys shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded. **There is no fee if there is no recovery.**

McHUGH FULLER LAW GROUP, PLLC and the other law firms, hereinafter referred to as the "Attorneys," agree to advance all litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated. **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Attorneys, the fee customarily charged in the locality for similar legal services, the anticipated (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community. The litigation focuses on the manufacturers and wholesale distributors and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality. There is no easy solution and no precedent for such an action against this sector of the industry. Many of the facts of the case are locked behind closed doors. The billion dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Attorneys with reimbursement contingent upon a successful recovery. The outcome is uncertain, like all civil litigation, with compensation contingent upon a successful recovery. Consequently, there must be a clear understanding between the CLIENT and the Attorneys regarding the definition of a "successful recovery."

The Attorneys intend to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages or equitable remedies (e.g., abatement fund). The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or to recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the manufacturers and wholesale distributors. The CLIENT agrees to compensate the Attorneys, contingent upon prevailing, by paying 30% of any settlement/resolution/judgment, in favor of the CLIENT, whether it takes the form of monetary damages or equitable relief. For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay 30% of the gross amount to Attorneys as compensation and then reimburse the reasonable litigation expenses. If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay 30% of the gross value of the equitable relief to the Attorneys as compensation and then reimburse the reasonable litigation expenses. To be clear, Attorneys shall not be paid nor receive reimbursement from public funds. However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee. Under no circumstances shall the CLIENT be obligated to pay any Attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Attorneys will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Attorneys to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Attorneys should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT. Any division of fees will be governed by the North Carolina Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in this writing; and (3) the total fee is *reasonable*.

LEAD COUNSEL shall appoint a contact person to keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT. The CLIENT at all times shall retain the authority to decide the disposition of the case and maintain absolute control of the litigation.

Upon conclusion of this matter, LEAD COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm, as required in Rule 1.05 (e)(3) of the North Carolina Rules of Professional Conduct. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter. The Attorneys make no such promises or guarantees. Attorneys' comments about the outcome of this matter are expressions of opinion only and the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

SIGNED, this **4** day of **December** ,2017.

Onslow County Board of Commissioners

_Jack Bright_, Chairman

ATTEST:

_Julie S. Wand_, Clerk to the Board

Accepted:

MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd
Hattiesburg, MS 39402
(601) 261-2220

By _____
Michael J. Fuller, Jr., Esq.
*Lead Counsel*

**12-5-17**
Date

## RESOLUTION OF THE BOARD OF COMMISSIONERS OF
## ONSLOW COUNTY, NORTH CAROLINA

### RESOLUTION NO. 17-013

**WHEREAS,** Onslow County Board of Commissioners has the authority to adopt resolutions with respect to county affairs of Onslow County, North Carolina, pursuant to N.C. Gen. Stat. Ann. § 153A-121; and,

**WHEREAS,** the Onslow County Board of Commissioners has the authority to take action to protect the public health, safety, and welfare of the residents and citizens of Onslow County;

**WHEREAS,** there exists a serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Onslow County; and,

**WHEREAS,** the diversion of legally produced controlled substances into the illicit market causes or contributes to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Onslow County; and,

**WHEREAS,** the opioid crisis unreasonably interferes with rights common to the general public of Onslow County; involves a significant interference with the public health, safety, peace, comfort, and convenience of citizens and residents of Onslow County; includes the delivery of controlled substances in violation of State and Federal law and regulations; and therefore, constitutes a public nuisance; and,

**WHEREAS,** the opioid crisis is having an extended and far reaching impact of the general public, health, and safety, of residents and citizens of Onslow County and must be abated; and,

**WHEREAS,** the violation of any laws of the State of North Carolina, or of the United States of America controlling the distribution of a controlled substance is inimical, harmful, and adverse to the public welfare of the residents and citizens of Onslow County constitutes a public nuisance; and,

**WHEREAS,** the Onslow County Board of Commissioners has the authority to abate, or cause to be abated, any public nuisance including those acts that unreasonably interfere with rights common to the general public of Onslow County and/or involve a significant interference with the public health, safety, peace, comfort, and convenience of citizens and residents of Onslow County; and,

**WHEREAS,** Onslow County has expended, is expending, and will continue to expend in the future County funds to respond to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality within Onslow County; and,

**WHEREAS,** the Onslow County Board of Commissioners have received information that indicates that the manufacturers and wholesale distributors of controlled substances have distributed in areas surrounding Onslow County, North Carolina, may have violated Federal and/or State laws and regulations that were enacted to prevent the diversion of legally produced controlled substances into the illicit market.

**NOW, THEREFORE, BE IT RESOLVED** by the Onslow County Board of Commissioners, assembled on this day at which a quorum is present, that based upon the above the Onslow County Board of Commissioners are declaring the opioid crisis a public nuisance which must be abated for the benefit of Onslow County and its residents and citizens.

**BE IT FINALLY RESOLVED** that all resolutions that are inconsistent with this resolution are rescinded.

The motion to approve the foregoing resolution was made by Commissioner _Buchanan_, seconded by Commissioner _Bennett_, and the following vote was recorded:

Commissioner Bright _Aye_

Commissioner Bennett _Aye_

Commissioner Buchanan _Aye_

Commissioner Knapp _Aye_

Commissioner Price _Aye_

**ADOPTED THIS THE** _4_ **DAY OF** _Dec._ **2017.**

_Jack Bright_
_____
**Chairman of the Board**

Attest:

_Julie S. Wand_
_____
**Julie S. Wand, Clerk to the Board**

SEAL
NC BOARD OF COUNTY COMMISSIONERS OF ONSLOW COUNTY

- 2 -

# EXHIBIT 193

| | |
|---|---|
| **From:** | Rose Marshburn <rosemarshburn@jacksonvillenc.gov> |
| **Sent:** | Monday, April 28, 2025 4:47 PM |
| **To:** | Hooker, Matthew |
| **Cc:** | Lorna Welch |
| **Subject:** | Public Records Request Regarding Opioids |
| **Attachments:** | NC - Jacksonville - Contract .pdf; Resolution 2017-15 fully executed and adopted by Jacksonville City Council 12-5-2017.pdf |

**EXTERNAL SENDER – Proceed with caution**

Good afternoon,
We received your request for public records. I am the City Clerk for Jacksonville, North Carolina and authorized to speak on its behalf for public records requests. Attached are public records related to the retention of outside counsel to file a civil action against those responsible for the opioid epidemic. We consented to amending the pleadings in MDL2804 to add the pharmacy benefit managers (PBMs) as defendants on April 29, 2024. Attached, please find a copy of the resolution and contract regarding retaining counsel in this matter. The matter was discussed on the public record as well, and I will be attaching the reflecting documents in a separate email to come.

I apologize for the delay and appreciate your patience.

Thank you,
Rose


Rose Marshburn, CMC, NCCMC
City Clerk, City of Jacksonville
PO Box 128
Jacksonville, NC 28541
Phone (910) 938-5224
Fax (910) 455-6761
Email: rosemarshburn@jacksonvillenc.gov


**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

# AUTHORITY TO REPRESENT

RE:     City of Jacksonville, North Carolina civil suit against those legally responsible for the wrongful distribution of prescription opiates and damages caused thereby.

CITY OF JACKSONVILLE, NORTH CAROLINA (hereinafter "CLIENT") hereby retains the law firm MCHUGH FULLER LAW GROUP, PLLC, pursuant to the North Carolina Rules of Professional Responsibility, on a contingent fee basis, to pursue **_all_** civil remedies against those in the chain of distribution of prescription opiates (excluding physicians, pharmacies and hospitals) responsible for the opioid epidemic which is plaguing Jacksonville, North Carolina, including, but not limited to, filing a claim for public nuisance to abate the damages caused thereby. **Michael Jay Fuller, Jr., Esq.** of the law firm MCHUGH FULLER LAW GROUP, PLLC shall serve as LEAD COUNSEL. CLIENT authorizes lead counsel to employ and/or associate additional counsel, with consent of CLIENT, to assist LEAD COUNSEL in the just prosecution of the case. CLIENT consents to the participation of the following firms:

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Rd
Hattiesburg, Mississippi

POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, West Virginia

SEAGLE LAW
P.O. Box 15307
Asheville, North Carolina

WARD AND SMITH, P.A.
P.O. Box 8088
Greenville, North Carolina

Page 1 of 4

In consideration, CLIENT agrees to pay thirty percent (30%) of the total recovery (gross) in favor of the CLIENT as an attorney fee whether the claim is resolved by compromise, settlement, or trial and verdict (and appeal).  The gross recovery shall be calculated on the amount obtained before the deduction of costs and expenses.  CLIENT grants Attorneys an interest in a fee based on the gross recovery.  If a court awards attorneys' fees, Attorneys shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded.  **There is no fee if there is no recovery.**

McHUGH FULLER LAW GROUP, PLLC and the other law firms, hereinafter referred to as the "Attorneys," agree to advance all litigation expenses necessary to prosecute these claims.  All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated.  **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Attorneys, the fee customarily charged in the locality for similar legal services, the anticipated (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community.  The litigation focuses on the manufacturers and wholesale distributors and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality.  There is no easy solution and no precedent for such an action against this sector of the industry.  Many of the facts of the case are locked behind closed doors.  The billion dollar industry denies liability.  The litigation will be very expensive and the litigation expenses will be advanced by the Attorneys with reimbursement contingent upon a successful recovery.  The outcome is uncertain, like all civil litigation, with compensation contingent upon a successful recovery.  Consequently, there must be a clear understanding between the CLIENT and the Attorneys regarding the definition of a "successful recovery."

The Attorneys intend to present a damage model designed to abate the public health and safety crisis.  This damage model may take the form of money damages or equitable remedies (e.g., abatement fund).  The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or to recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the manufacturers and wholesale distributors.  The CLIENT agrees to compensate the Attorneys, contingent upon prevailing, by paying 30% of any settlement/resolution/judgment, in favor of the CLIENT, whether it takes the form of monetary damages or equitable relief.  For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay 30% of the gross amount to Attorneys as compensation and then reimburse the reasonable litigation expenses.  If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay 30% of the gross value of the equitable relief to the Attorneys as compensation and then reimburse the reasonable litigation expenses.  To be clear, Attorneys shall not be paid nor receive reimbursement from public funds.  However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether

monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee.  Under no circumstances shall the CLIENT be obligated to pay any Attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims.  If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Attorneys will be paid the designated contingent fee from the resources expended by the defendant(s).  CLIENT acknowledges this is a necessary condition required by the Attorneys to dedicate their time and invest their resources on a contingent basis to this enormous project.  If the defendant(s) negotiate a release of liability, then the Attorneys should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT.  Any division of fees will be governed by the North Carolina Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in this writing; and (3) the total fee is *reasonable*.

LEAD COUNSEL shall appoint a contact person to keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT.  The CLIENT at all times shall retain the authority to decide the disposition of the case and maintain absolute control of the litigation.

Upon conclusion of this matter, LEAD COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.  The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm, as required in Rule 1.05 (e)(3) of the North Carolina Rules of Professional Conduct.  The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

NO suit will be filed against any entity without express written authority of the Jacksonville City Manager and Jacksonville City Attorney.

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter.  The Attorneys make no such promises or guarantees.  Attorneys' comments about the outcome of this matter are expressions of opinion only and  the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

SIGNED, this _____ day of _____, 2017.

Page **3** of **4**

CITY OF JACKSONVILLE, NORTH CAROLINA

By: _____

Sammy Phillips, Mayor of Jacksonville

APPROVED AS TO FORM:

_____

John Carter, City Attorney

Accepted:

MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd
Hattiesburg, MS 39402
(601) 261-2220

By _____

Michael J. Fuller, Jr., Esq.
*Lead Counsel*



1-31-18

Date

RESOLUTION 2017-15

RESOLUTION OF AUTHORITY TO REPRESENT THE CITY OF JACKSONVILLE,
NORTH CAROLINA CIVIL SUIT AGAINST THOSE LEGALLY RESPONSIBLE
FOR THE WRONGFUL DISTRIBUTION OF PRESCRIPTION OPIATES AND
DAMAGES CAUSED THEREBY

WHEREAS, the Jacksonville City Council has the authority to adopt resolutions with
respect to the health, safety, and welfare of the citizens of the City of Jacksonville, North Carolina,
pursuant to the City's Charter and N.C. Gen. State. Ann. § 160a-174;

WHEREAS, the Jacksonville City Council has the authority to take action to protect the
public health, safety, and welfare of the residents and citizens of Jacksonville;

WHEREAS, there exists a serious public health and safety crisis involving opioid abuse,
addiction, morbidity, and mortality in Jacksonville;

WHEREAS, the diversion of legally produced controlled substances into the illicit market
causes or contributes to the serious public health and safety crisis involving opioid abuse,
addiction, morbidity, and mortality in Jacksonville;

WHEREAS, the opioid crisis unreasonably interferes with rights commons to the general
public of Jacksonville; involves a significant interference with the public health, safety, peace,
comfort, and convenience of citizens and residents of Jacksonville; includes the delivery of
controlled substances in violation of State and Federal law and regulations; and therefore
constitutes a public nuisance;

WHEREAS, the opioid crisis is having an extended and far reaching impact of the general
public, health, and safety, of residents and citizens of Jacksonville and must be abated;

WHEREAS, the violation of any laws of the State of North Carolina, or the United States
of America controlling the distribution of a controlled substance is inimical, harmful, and adverse
to the public welfare of the residents and citizens of Jacksonville constitutes a public nuisance;

WHEREAS, the Jacksonville City Council has the authority to abate, or cause to be abated,
any public nuisance including those acts that unreasonably interfere with rights common to the
general public of Jacksonville and/or involve a significant interference with the public health,
safety, peace, comfort, and convenience of citizens and residents of Jacksonville; and

WHEREAS, the Jacksonville City Council has received information that indicates that the
manufactures and wholesale distributors of controlled substances have distributed in Jacksonville,
North Carolina, and surrounding areas may have violated Federal and/or State laws and regulations
that were enacted to prevent the diversion of legally produced controlled substances into the illicit
market.

NOW, THEREFORE, BE IT RESOLVED by the Jacksonville City Council assembled on
this day, which a quorum is present, that based upon the above the Jacksonville City Council is
declaring the opioid crisis a public nuisance that must be abated for the benefit of Jacksonville,
North Carolina and its residents and citizens.

BE IT FINALLY RESOLVED that all resolutions that are inconsistent with this resolution are rescinded.

Adopted by the City Council of the City of Jacksonville in regular session this 5th day of December 2017.

Sammy Phillips, Mayor

ATTEST:

Carmen K. Miracle, City Clerk

**Joshua Ray**

| | |
|---|---|
| **From:** | John Carter |
| **Sent:** | Monday, April 29, 2024 8:24 AM |
| **To:** | Joshua Ray |
| **Subject:** | FW: NC_Jacksonville_City_Agree |

Fyi...

**From:** John Carter
**Sent:** Monday, April 29, 2024 8:23 AM
**To:** 'amendmycomplaint@hpcbd.com' <amendmycomplaint@hpcbd.com>
**Cc:** Mike Yaniero <myaniero@jacksonvillenc.gov>; Sabrina Adams <sadams@jacksonvillenc.gov>
**Subject:** NC_Jacksonville_City_Agree

City of Jacksonville NC agrees to amend complaint as set out in your 4-26-24 email...

**John T. Carter, Jr.**

**Jacksonville City Attorney**

Phone: 910-938-5018

Fax: 910-938-5023

Confidentiality Notice:  If you are not the intended recipient of this message, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. This communication may contain information that is proprietary, attorney/client privileged, attorney work product, confidential, protected health information (PHI) which is subject to HIPAA privacy and security guidelines, or otherwise legally exempt from disclosure. If you have received this message in error, please notify the sender immediately either by phone (910-938-5220) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise).

1

# EXHIBIT 196

RESOLUTION NO. *10-2017*     AGENDA NO. *I-1*

**RESOLUTION**

**Initiated By:**
Personnel Committee

**Drafted By:**
Michal J. Peterson
Asst. Corporation Counsel



**Submitted By:**
Personnel Committee

**Date Drafted:**
November 10, 2017

## RESOLUTION AUTHORIZING ENGAGEMENT IN OPIOID LITIGATION

**WHEREAS,** Crawford County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent substantial sums in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

1

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted and attached hereto as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**

County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs Tom Cornford, County Board Chairman, to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:**

County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Dated this *19th* day of December, 2017.

**Gerald Krachey**, Chairman

**Larry Kelley**

*Gari Lorenz*

**Brad Steiner**

**Carl Orr**

Passed and approved this *19th* day of December, 2017.

**Tom Cornford**
County Board Chairman

ATTEST:

**Janet L. Geisler**
County Clerk

3

 

October 11, 2017

**VIA EMAIL**

Crawford County
c/o Tom Cornford, Board Chair

RE:  *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Crawford County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Crawford County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Crawford County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Crawford County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Crawford County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Crawford County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to
which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the
termination of the legal services rendered hereunder, unless earlier terminated as provided herein.
This Engagement Letter may be terminated by County at any time, and in the event of such
termination, neither party shall have any further rights against the other, except that in the event of a
Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and
National Law Firm shall have a statutory lien on any such recovery as provided by applicable law
and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses
reasonably allocable to their work prior to termination. Counsel and National Law Firm may
withdraw as County's attorneys at any time for the following reasons:

A. If Counsel and National Law Firm determine, in their sole discretion, that County's
claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B. For Good Cause.  For purposes of this Paragraph, Good Cause may include County's
failure to honor the terms of the Engagement Letter, County's failure to follow
Counsel or National Law Firm's advice on a material matter, or any fact or
circumstance that would, in the view of Counsel or National Law Firm, impair an
effective attorney-client relationship or would render continuing representation
unlawful or unethical.  If terminated for Good Cause, County will take all steps
necessary to free Counsel and National Law Firm of any obligation to perform
further, including the execution of any documents (including forms for substitution of
counsel) necessary to complete withdrawal provided, however, that Counsel and
National Law Firm shall have a statutory lien on any Recovery as provided by
applicable law and further maintain rights in the nature of *quantum meruit* to recover
fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of
Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s),
and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For
example, if a settlement is reached, and includes future or structured payments, Counsel and National
Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to
achieve. County understands and acknowledges that there is no guarantee or assurances of any kind
regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use
their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin
law.  This means that if Counsel fails to perform duties in the representation of County and that
failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals
directly involved in the representation may be responsible to County for those damages, but the

Crawford County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

Crawford County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals
listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

CRAWFORD COUNTY agrees to retain the services of Counsel and National Law Firm all upon the
terms and conditions specified above.

By: _____        Date:  December _19_ , 2017

Title: Tom Cornford, County Board Chairman

cc:    Corporation Counsel

_____

29243067_1.DOCX

# EXHIBIT 197



**RESOLUTION NO.** 35-12-2017

**A RESOLUTION AUTHORIZING PURSUIT OF LEGAL CLAIMS
AGAINST CERTAIN OPIOID MANUFACTURERS**

**TO THE HONORABLE KEWAUNEE COUNTY BOARD OF SUPERVISORS:**

1   **WHEREAS**, Kewaunee County is concerned with the recent rapid rise in troubles among County
2   citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of
3   opioid medications, which according to certain studies, impacts millions of people across the
4   country; and
5
6   **WHEREAS**, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents
7   and visitors are not unique to Kewaunee County and are, in fact, issues and concerns shared by all
8   other counties in Wisconsin and, for that matter, states and counties across the country, as has
9   been well documented through various reports and publications, and is commonly referred to as the
10  Opioid Epidemic; and
11
12  **WHEREAS**, the societal costs associated with the Opioid Epidemic are staggering and, according to
13  the Centers for Disease Control and Prevention, amount to over $75 billion annually; and
14
15  **WHEREAS**, The National Institute for Health has identified the manufacturers of certain of the opioid
16  medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their
17  aggressive and, according to some, unlawful and unethical marketing practices; and
18
19  **WHEREAS**, certain of the opioid manufacturers have faced civil and criminal liability for their actions
20  that relate directly to the rise of the Opioid Epidemic; and
21
22  **WHEREAS**, County has incurred substantial unexpected and unbudgeted time and resources in its
23  programs and services related to the Opioid Epidemic; and
24
25  **WHEREAS**, County is responsible for a multitude of programs and services, all of which require,
26  County to expend resources generated through state and federal aid, property tax levy, fees and
27  other permissible revenue sources; and
28
29  **WHEREAS**, County's provision of programs and services becomes more and more difficult every
30  year because of the costs associated with providing the Opioid Epidemic programs and services
31  continues to rise, yet County's ability to generate revenue is limited by strict levy limit caps and
32  stagnant or declining state and federal aid to County; and
33
34  **WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the
35  Opioid Epidemic are sums that cannot be used for other critical programs and services that County
36  provides to County citizens, residents and visitors; and

1
2 **WHEREAS,** County has been informed that numerous counties and states across the country have
3 filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the
4 persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the
5 costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and
6
7 **WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen
8 & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to
9 the potential for County to pursue certain legal claims against certain opioid manufacturers; and
10
11 **WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and
12 wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public
13 entities seeking to hold them responsible for the Opioid Epidemic; and
14
15 **WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the
16 aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated
17 unless County receives a financial benefit as a result of the proposed claims and the Law Firms
18 would advance all claim-related costs and expenses associated with the claims; and
19
20 **WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid
21 manufactures would be borne by the Law Firms; and
22
23 **WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of the
24 Resolution specifying the terms and conditions under which the Law Firms would provide legal
25 services to County and otherwise consistent with the terms of this Resolution; and
26
27 **WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive
28 discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and
29 other counties in the prosecution of claims against certain of the opioid manufacturers; and
30
31 **WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this
32 Resolution and the Engagement Letter by providing information and materials to the Law Firms and,
33 as appropriate, the Wisconsin Counties Association as needed; and
34
35 **WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors
36 and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against
37 certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement
38 Letter; and
39
40 **WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is
41 attempting to hold those persons and entities that had a significant role in the creation of the Opioid
42 Epidemic responsible for the financial costs incurred by County and other public agencies across the
43 county in dealing with the Opioid Epidemic.
44

1  **NOW, THEREFORE, BE IT RESOLVED,** by the Kewaunee County Board of Supervisors duly
2  assembled this 19th day of December 2017, that the Board authorizes, and agrees to be bound by,
3  the Engagement Letter and hereby directs the County Administrator to execute the Engagement
4  Letter on behalf of the County; and
5
6  **BE IT FURTHER RESOLVED,** County shall endeavor to perform all actions required of County in
7  relation to the claims contemplated herein and in the Engagement Letter and hereby directs all
8  County personnel to cooperate with and assist the Law Firms in relation thereto.

Respectfully Submitted,

**PERSONNEL, ADVISORY & LEGISLATIVE COMMITTEE**

Robert A. Weidner, Chair

Thomas J. Romdenne

Kaye Shillin

Linda Sinkula

John T. Pagel

Scott Jahnke

Larry Kirchman

Gerald Paape

John E. Mastalir

**APPROVED AS TO FORM**
Jeffrey R. Wisnicky
Corporation Counsel

FISCAL IMPACT STATEMENT:

| | YES | NO | ABSENT | ABSTAIN |
|---|---|---|---|---|
| Benes, P | ✓ | | | |
| Cravillion, D. | ✓ | | | |
| Dobbins, M. | ✓ | | | |
| Doell, D. | ✓ | | | |
| Haske, V. | ✓ | | | |
| Jahnke, S. | ✓ | | | |
| Kirchman, L. | ✓ | | | |
| Luft, L. | ✓ | | | |
| Mastalir, J. | ✓ | | | |
| Paape, G. | ✓ | | | |
| Pagel, J. | ✓ | | | |
| Paider, R. | ✓ | | | |
| Rasmussen, C. | | ✓ | | |
| Romdenne, T. | ✓ | | | |
| Shillin, K. | ✓ | | | |
| Sinkula, L. | ✓ | | | |
| Teske, L. | ✓ | | | |
| Thomas, D. | ✓ | | | |
| Wagner, C. | ✓ | | | |
| Weidner, R. | ✓ | | | |
| TOTALS | 19 | 1 | — | — |

 

October 6, 2017

**VIA EMAIL**

Kewaunee County
c/o Robert Weidner, Board Chair

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with*
*Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid*
*Manufacturers*

Dear Kewaunee County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel) will provide legal services to Kewaunee County ("County") in relation to the investigation
and prosecution of certain claims against the following manufacturers and other parties involved with
the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue
Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson,
Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations
of the facts and circumstances surrounding the potential claim(s), there may be additional parties
sought to be made responsible and/or certain of the aforementioned parties may be removed from the
potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the

Kewaunee County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware. Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit. either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Kewaunee County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply. and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Kewaunee County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Kewaunee County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Kewaunee County
Engagement Letter
Page -6

von Briesen & Roper. s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties. that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter. or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable. shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically. County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Kewaunee County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

von **BRIESEN & ROPER**, s.c.                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                               Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

KEWAUNEE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date:  12-20-2017

Title: _____

cc:    Corporation Counsel

29243067_1.DOCX

# EXHIBIT 198

**ROLL CALL**
**OUTAGAMIE COUNTY BOARD OF SUPERVISORS**

DATE     December 12, 2017

RESOLUTION #    119--2017-18      APPOINTMENT   _____

MOTION:    To adopt & lock in

MADE BY:                SECONDED BY:

| DST | NAME | AYE | NAY | PRES | ABSENT | DST | NAME | AYE | NAY | PRES | ABSENT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Thompson | X | | | | 19 | Stueck | X | | | |
| 2 | Miller | X | | | | 20 | Thomas | X | | | |
| 3 | Grady | X | | | | 21 | Thyssen | X | | | |
| 4 | Patience | X | | | | 22 | Hagen | X | | | |
| 5 | Gabrielson | X | | | | 23 | Klemp | X | | | |
| 6 | Foss | | | | X | 24 | Pleuss | X | | | |
| 7 | Hammen | X | | | | 25 | Nooyen | X | | | |
| 8 | Tony Krueger | X | | | | 26 | Duncan | X | | | |
| 9 | Justin Krueger | X | | | | 27 | Culbertson | X | | | |
| 10 | Lamers | X | | | | 28 | Sturn | | | | X |
| 11 | Meyer | X | | | | 29 | Buchman | X | | | |
| 12 | Mc Daniel | X | | | | 30 | Griesbach | | | | X |
| 13 | Wegand | X | | | | 31 | Clegg | X | | | |
| 14 | De Groot | X | | | | 32 | VanderHeiden | X | | | |
| 15 | Vacant | | | | X | 33 | O'Connor-Schevers | X | | | |
| 16 | Vacant | | | | X | 34 | Rettler | X | | | |
| 17 | Croatt | X | | | | 35 | Melchert | X | | | |
| 18 | Spears | X | | | | 36 | Suprise | X | | | |

AYE    31      APPROVED    X
NAY
PRESENT
VACANT   2      DEFEATED
ABSENT   3
    TOTAL   36

**ROLL CALL**
**OUTAGAMIE COUNTY BOARD OF SUPERVISORS**

DATE                 December 12, 2017

RESOLUTION #         119--2017-18                    APPOINTMENT         _____

MOTION:              To reconsider

MADE BY:             Gabrielson          SECONDED BY:        Spears

| DST | NAME | AYE | NAY | PRES | ABSENT | DST | NAME | AYE | NAY | PRES | ABSENT |
|-----|------|-----|-----|------|--------|-----|------|-----|-----|------|--------|
| 1 | Thompson | X | | | | 19 | Stueck | X | | | |
| 2 | Miller | X | | | | 20 | Thomas | X | | | |
| 3 | Grady | X | | | | 21 | Thyssen | X | | | |
| 4 | Patience | X | | | | 22 | Hagen | X | | | |
| 5 | Gabrielson | X | | | | 23 | Klemp | X | | | |
| 6 | Foss | | | | X | 24 | Pleuss | X | | | |
| 7 | Hammen | X | | | | 25 | Nooyen | X | | | |
| 8 | Tony Krueger | X | | | | 26 | Duncan | X | | | |
| 9 | Justin Krueger | X | | | | 27 | Culbertson | X | | | |
| 10 | Lamers | X | | | | 28 | Sturn | | | | X |
| 11 | Meyer | X | | | | 29 | Buchman | X | | | |
| 12 | Mc Daniel | X | | | | 30 | Griesbach | | | | X |
| 13 | Wegand | X | | | | 31 | Clegg | X | | | |
| 14 | De Groot | X | | | | 32 | VanderHeiden | X | | | |
| 15 | Vacant | | | | X | 33 | O'Connor-Schevers | X | | | |
| 16 | Vacant | | | | X | 34 | Rettler | X | | | |
| 17 | Croatt | X | | | | 35 | Melchert | X | | | |
| 18 | Spears | X | | | | 36 | Suprise | X | | | |

AYE          31               APPROVED          X
NAY          _____          DEFEATED          _____
PRESENT      _____
VACANT       2
ABSENT       3
    TOTAL    36

**ROLL CALL**
**OUTAGAMIE COUNTY BOARD OF SUPERVISORS**

DATE _____ December 12, 2017 _____

RESOLUTION NOS. _____ 116, 117, 118, 119, 120--2017-1 _____   APPOINTMENT  _____

MOTION: _____ For adoption _____

MADE BY: _____ Stueck _____   SECONDED BY: _____ Patience _____

| DST | NAME | AYE | NAY | PRES | ABSENT |
|-----|------|-----|-----|------|--------|
| 1 | Thompson | X | | | |
| 2 | Miller | X | | | |
| 3 | Grady | X | | | |
| 4 | Patience | X | | | |
| 5 | Gabrielson | X | | | |
| 6 | Foss | | | | X |
| 7 | Hammen | X | | | |
| 8 | Tony Krueger | X | | | |
| 9 | Justin Krueger | X | | | |
| 10 | Lamers | X | | | |
| 11 | Meyer | X | | | |
| 12 | Mc Daniel | X | | | |
| 13 | Wegand | X | | | |
| 14 | De Groot | X | | | |
| 15 | Vacant | | | | X |
| 16 | Vacant | | | | X |
| 17 | Croatt | X | | | |
| 18 | Spears | X | | | |

| DST | NAME | AYE | NAY | PRES | ABSENT |
|-----|------|-----|-----|------|--------|
| 19 | Stueck | X | | | |
| 20 | Thomas | X | | | |
| 21 | Thyssen | X | | | |
| 22 | Hagen | X | | | |
| 23 | Klemp | X | | | |
| 24 | Pleuss | X | | | |
| 25 | Nooyen | X | | | |
| 26 | Duncan | X | | | |
| 27 | Culbertson | X | | | |
| 28 | Sturn | | | | X |
| 29 | Buchman | X | | | |
| 30 | Griesbach | | | | X |
| 31 | Clegg | X | | | |
| 32 | VanderHeiden | X | | | |
| 33 | O'Connor-Schevers | X | | | |
| 34 | Rettler | X | | | |
| 35 | Melchert | X | | | |
| 36 | Suprise | X | | | |

AYE _____ 31 _____       APPROVED _____ X _____
NAY _____            DEFEATED _____
PRESENT _____
VACANT _____ 2 _____
ABSENT _____ 3 _____
    TOTAL _____ 36 _____

# *RESOLUTION NO.:  119—2017-18*

TO THE HONORABLE, THE OUTAGAMIE COUNTY BOARD OF SUPERVISORS

LADIES AND GENTLEMEN:                                                                        *MAJORITY*

1   Outagamie County is concerned with the recent rapid rise in troubles among County
2   citizens, residents and visitors in relation to problems arising out of the use, abuse and
3   overuse of opioid medications, which according to certain studies, impacts millions of
4   people across the country.  These issues surrounding opioid use are not unique to
5   Outagamie County, but are shared by counties across the State of Wisconsin and across
6   the country, as has been well documented through various reports and publications, and
7   is commonly referred to as the Opioid Epidemic.
8
9   The societal costs associated with the Opioid Epidemic are staggering and according to
10  the Centers for Disease Control and Prevention, amount to $75 billion annually.  The
11  National Institute for Health has identified the manufacturers of certain of the opioid
12  medications as being directly responsible for the rapid rise of the Opioid Epidemic by
13  virtue of their aggressive and, according to some, unlawful and unethical marketing
14  practices.  Certain of the Opioid manufacturers have faced civil and criminal liability for
15  their actions that related directly to the rise of the Opioid Epidemic.  The County has
16  expended great sums in unexpected and unbudgeted time and resources in its programs
17  and services related to the Opioid Epidemic and is responsible for a multitude of
18  programs and services, all of which require the expenditure of County resources
19  generated through state and federal aid, property tax levy, fees and other permissible
20  revenue sources; costs which will continue to rise.  Unfortunately, despite the rising
21  costs, the County's ability to generate revenue is limited by strict levy limit caps and
22  stagnant or declining state and federal aid to the County.  Given the finite and/or reduced
23  funding, County resources utilized for addressing the Opioid Epidemic diverts dedicated
24  resources from other critical county programs and services for County residents and
25  visitors.
26
27  The County has been informed that numerous counties and states across the country
28  have filed or intend to file lawsuits against certain of the opioid manufacturers in an
29  effort to force the persons and entities responsible for the Opioid Epidemic to assume
30  financial responsibility for the costs associated with addressing, combatting and
31  otherwise dealing with the Opioid Epidemic.  County staff has engaged in discussions
32  with representatives of von Briesen and Roper, s.c., which has teamed with the firms of
33  Crueger Dickinson LLC and Simmons Hanly Conroy LLC (Law Firms) related to the
34  potential for the County to pursue certain legal claims against certain opioid
35  manufacturers.  von Briesen and Roper s.c. has assured the county that it and its
36  associated law firms have the requisite skill, experience and wherewithal to prosecute
37  legal claims against certain of the opioid manufacturers on behalf of public entities.
38  This resolution proposes to engage the Law Firms to prosecute the aforementioned
39  claims on a contingent fee basis whereby the Law Firms would not be compensated
40  unless the County receives a financial benefit as a result of the proposed claims and the
41  Law Firms would advance all claim-related costs and expenses associated with the
42  claims, and all of the costs and expenses associated with the claims would be borne by
43  the Law Firms.  Attached is an engagement letter prepared by the Law Firms, which is

**Resolution No.  119--2017-18**                                                        **Page 2**

1      incorporated by reference herein, specifying the terms and conditions of the Law Firms
2      provision of legal representation.
3
4      The County is informed that the Wisconsin Counties Association has engaged in
5      extensive discussions with the Law Firms and has expressed a desire to assist the Law
6      Firms, County and other Counties in the prosecution of claims against certain of the
7      opioid manufacturers. The County would participate in the prosecution of the claims by
8      providing information and materials to the Law Firms and, as appropriate, the Wisconsin
9      Counties Association as needed, and consistent with any HIPAA, privilege and
10     confidentiality laws that may pertain to requested information.
11
12     The County believes it to be in the best interest of the County, its residents, visitors and
13     taxpayers to join with other counties in and outside Wisconsin in pursuit of claims
14     against certain of the opioid manufacturers, all upon the terms and conditions set forth in
15     the Engagement Letter. By pursuing these claims, the County is attempting to hold
16     those persons and entities that had a significant role in the creation of the Opioid
17     Epidemic responsible for the financial costs assumed by the County and other public
18     agencies across the country.
19
20     NOW THEREFORE, the undersigned members of the Health and Human Services

21 Committee recommend adoption of the following resolution.

22     BE IT RESOLVED, that the Outagamie County Board of Supervisors authorizes and

23 agrees to be bound by the attached Engagement Letter, which by reference is made a part

24 hereof, and hereby authorizes the County Executive to execute the Engagement Letter on behalf

25 of the County, and

26     BE IT FURTHER RESOLVED that Outagamie County shall endeavor to faithfully

27 perform all actions required of the County in relation to the claims contemplated herein and in

28 the Engagement Letter and request that the County Executive direct necessary County personnel

29 to cooperate with and assist the Law Firms in the prosecution of the claims against the certain

30 Opioid Manufacturers, and

31     BE IT FINALLY RESOLVED, that the Outagamie County Clerk be directed to forward

32 a copy of this resolution to the Outagamie County Executive, the Outagamie County Director of

33 Health and Human Services and the Outagamie County Corporation Counsel, and that a signed

34 Engagement Letter be forwarded to the Wisconsin Counties Association, 22 E. Mifflin Street,

35 Suite 900, Madison, WI 53703.

**Resolution No.   119--2017-18**                                          **Page 3**

Dated this __12th__ day of December 2017

Respectfully Submitted,

HEALTH & HUMAN SERVICES
COMMITTEE

_____
Dan Gabrielson

_____
Vacant

_____
Cathy Thompson

_____
Christine Lamers

_____
Justin Krueger

Duly and officially adopted by the County Board on: __December 12, 2017__

Signed: _____        _____
        Board Chairperson                       County Clerk

Approved: _____12 / 18 / 17_____          Vetoed: _____

Signed: _____
        County Executive

**Resolution No.   119--2017-18**                                              **Page 4**

 

November 15, 2017

VIA EMAIL

Outagamie County
c/o Jeff Nooyen, Board Chair

RE:   *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Outagamie County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Outagamie County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

## SCOPE OF SERVICES

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

## RESPONSIBILITIES

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

**Resolution No.  119--2017-18**                                           **Page 5**

Outagamie County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
| --- | --- |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

**Resolution No.  119--2017-18**                                        **Page 6**

Outagamie County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

**Resolution No.  119--2017-18**                                      Page 7

Outagamie County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel and National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Outagamie County
Engagement Letter
Page -5

Firm   At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

      A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

      B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

**Resolution No.  119--2017-18**                                        **Page 9**

Outagamie County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL.

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Outagamie County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

**Resolution No.  119--2017-18**                                              **Page 10**

Outagamie County
Engagement Letter
Page -7

CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at
any time during the course of representation you have any questions or comments about our services
or any aspect of how we provide services, please don't hesitate to call one or all of the individuals
listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                        CRUEGER DICKINSON LLC

Andrew T. Phillips                                    Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

OUTAGAMIE COUNTY agrees to retain the services of Counsel and National Law Firm all upon
the terms and conditions specified above.

By:  _____          Date: _____

Title: _____

cc:    Corporation Counsel

29245007_1.DOCX

# EXHIBIT 199

RESOLUTION NO. 17-37

AUTHORIZING OZAUKEE COUNTY TO ENGAGE LEGAL COUNSEL IN RELATION TO
CLAIMS AGAINST OPIOID MANUFACTURERS

WHEREAS, Ozaukee County ("County") is concerned with the recent rapid rise in
troubles among County citizens, residents, and visitors in relation to problems arising out of the
use, abuse and overuse of opioid medications, which according to certain studies, impacts
millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens,
residents and visitors are not unique to County and are, in fact, issues and concerns shared by all
other counties in Wisconsin and, for that matter, states and counties across the country, as has
been well documented through various reports and publications, and is commonly referred to as
the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and,
according to the Centers for Disease Control and Prevention, amount to over $75 billion
annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of
the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by
virtue of their aggressive and, according to some, unlawful and unethical marketing practices;
and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for
their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, County has spent millions in unexpected and unbudgeted time and resources
in its programs and services related to the Opioid Epidemic; and

WHEREAS, County is responsible for a multitude of programs and services, all of which
require County to expend resources generated through state and federal aid, property tax levy,
fees and other permissible revenue sources; and

WHEREAS, County's provision of programs and services becomes more and more
difficult every year because the costs associated with providing the Opioid Epidemic programs
and services continue to rise, yet County's ability to generate revenue is limited by strict levy
limit caps and stagnant or declining state and federal aid to County; and

WHEREAS, all sums that County expends in addressing, combatting and otherwise dealing
with the Opioid Epidemic are sums that cannot be used for other critical programs and services
that County provides to County citizens, residents and visitors; and

WHEREAS, County has been informed that numerous counties and states across the
country have filed or intend to file lawsuits against certain of the opioid manufacturers in an
effort to force the persons and entities responsible for the Opioid Epidemic to assume financial
responsibility for the costs associated with addressing, combatting and otherwise dealing with
the Opioid Epidemic; and

WHEREAS, County has engaged in discussions with representatives of the law firms of
von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law

Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

WHEREAS, County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

WHEREAS, the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

WHEREAS, all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

WHEREAS, County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

WHEREAS, County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

WHEREAS, County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

WHEREAS, by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

NOW, THEREFORE, BE IT RESOLVED, that the Ozaukee County Board of Supervisors authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

FURTHER RESOLVED, that the County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

FURTHER RESOLVED, that the County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Dated at Port Washington, Wisconsin, this 6th day of December 2017.

*SUMMARY: County to join with other counties in and outside Wisconsin in pursuit of claims*

*against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the County Board Chairperson to execute the Engagement Letter.*

*VOTE REQUIRED: Majority*

EXECUTIVE COMMITTEE

| | |
|---|---|
| **RESULT:** | **APPROVED [5 TO 0]** |
| **MOVER:** | K. Geracie, Supervisor District 15 |
| **SECONDER:** | J. Rothstein, Supervisor District 26 |
| **AYES:** | Schlenvogt, Melotik, Rothstein, Becker, Geracie |
| **ABSTAIN:** | K. Hertz |





September 13, 2017

**VIA EMAIL**

Ozaukee County
c/o Jason Dzwinel, County Administrator
121 W. Main Street
Port Washington, WI 53074

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Ozaukee County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Ozaukee County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel

Ozaukee County
Engagement Letter
Page -2

and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Ozaukee County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Ozaukee County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Ozaukee County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.     If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.     For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Ozaukee County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional
liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for
limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-
mail, and this will be the way in which communications occur with County.  While unencrypted e-
mail is convenient and fast, there is risk of interception, not only within internal networks and the
systems used by internet service providers, but elsewhere on the internet and in the systems of our
clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and
electronic records maintained are subject to a 10-year retention period from the last matter activity
date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of
matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy
records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State
of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the
terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the
State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District
Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that
all previous understandings are merged in this Engagement Letter, and that no modification of this
Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application
thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the
remainder of this Engagement Letter, or the application of such term or provision to persons or
circumstances other than those to which it is held invalid or unenforceable, shall not be affected
thereby; and every other term and provision of this Engagement Letter shall be valid and shall be
enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of
this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each
party and the person signing on behalf of each party, represents that the person signing this
Engagement Letter has the authority to execute this document and thereby bind the party hereto on
whose behalf the person is signing. Specifically, County acknowledges that it is bound by this
Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and
will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at
any time during the course of representation you have any questions or comments about our services

Ozaukee County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals
listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**          **CRUEGER DICKINSON LLC**

Andrew T. Phillips                      Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

OZAUKEE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the
terms and conditions specified above.

By: _____          Date:  December 6, 2017

Title:  County Board Chairperson

cc:    Corporation Counsel

29270824_1.DOCX

# EXHIBIT 200

RESOLUTION NO. _40-17_

**AUTHORIZING ENGAGEMENT LETTER FOR OPIOID MANUFACTURER LAWSUIT**

TO THE HONORABLE BOARD OF SUPERVISORS OF PEPIN COUNTY, WISCONSIN, MEMBERS,

**WHEREAS,** Pepin County ("County") is concerned with the recent rapid rise in troubles among County residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs in the United States associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent significant funds in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**
County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:**
County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted this ____11th____ day of ____December____, 2017

**RECOMMENDED BY THE PEPIN COUNTY EXECUTIVE COMMITTEE:**

**COMMITTEE MEMBERS VOTE**

| 5 | 0 | 0 | 0 |
|---|---|---|---|
| In favor | Oppose | Absent | Abstain |

Dwight Jelle, Chair

**FISCAL IMPACT REVIEWED – The County will not incur any legal costs as this will he handled on a contingency basis.  Staff time may be required for data gathering as needed.**

Pamela DeWitt
**Finance Director**

X
**Recommend     Not Recommended**

**COUNTY BOARD ACTION:**

____X____ **ADOPTED**

_____ **DEFEATED**     by the Pepin County Board of Supervisors on this 18 day of October, 2017

_____ **TABLED**     In favor _8_ Oppose _2_ Absent _1_ Abstain _0_

District 4- Vacant

**County Clerk**          **County Board Chair**

RESOLUTION NO. _40-17_     Authorizing Engagement Letter for Opioid Manufacturer Lawsuit

 

October 5, 2017

**VIA EMAIL**

Pepin County
c/o Dwight Jelle, Board Chair

RE:    ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with
Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid
Manufacturers***

Dear Pepin County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel") will provide legal services to Pepin County ("County") in relation to the investigation and
prosecution of certain claims against the following manufacturers and other parties involved with the
manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick
Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen
Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals,
Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.,
Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster
(collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the
facts and circumstances surrounding the potential claim(s), there may be additional parties sought to
be made responsible and/or certain of the aforementioned parties may be removed from the potential
claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the

Pepin County
Engagement Letter
Page -2

Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Pepin County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Pepin County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.  <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.  <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.  <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Pepin County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

    A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

    B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Pepin County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Pepin County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                 Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

PEPIN COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____            Date: _12-11-17_

Title: _County Board Chair_

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 201

December 5, 2017

**RESOLUTION NO. 2017-90**

**RESOLUTION BY THE RACINE COUNTY EXECUTIVE COMMITTEE AUTHORIZING THE ENGAGEMENT OF COUNSEL FOR PURPOSES OF PURSUING CLAIMS AGAINST OPIOID MANUFACTURERS**

**WHEREAS,** Racine County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse, and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse, and overuse by citizens, residents, and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent significant dollars in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees, and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting, and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents, and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

Res No. 2017-90

Page Two

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience, and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms and no taxpayer funds would be expended in supporting the litigation as any costs and expenses would only be reimbursed if a recovery was obtained; and

**WHEREAS,** the Law Firms have prepared an engagement letter – which  is submitted as part of and attached to this Resolution ("Engagement Letter") as Exhibit "A" – specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution and final execution of the Engagement Letter is contingent upon the review and approval and final edits deemed necessary and appropriate by the Racine County Corporation Counsel and the Racine County Executive; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County, and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors, and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

Res No. 2017-90
Page Three

**NOW, THEREFORE, BE IT RESOLVED,** that the Racine County Board of Supervisors hereby authorizes the Racine County Corporation Counsel to negotiate and the Racine County Executive to execute the Engagement Letter and hereby agrees to be bound by the same;

**BE IT FURTHER RESOLVED,** County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs appropriate County personnel to cooperate with and assist the Law Firms in relation thereto.

**BE IT FURTHER RESOLVED,** the County Clerk forward a copy of this Resolution, together with a copy of the signed Engagement Letter, to the Wisconsin Counties Association, 22 Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted,

1st Reading        _____          **EXECUTIVE COMMITTEE**

2nd Reading        _____
                                        _____
BOARD ACTION                            Russell A. Clark, Chairman
    Adopted      _____
    For          _____              _____
    Against      _____              Pamela Zenner-Richards, Vice Chairman
    Absent       _____
                                      _____
VOTE REQUIRED:  Majority              Q.A. Shakoor, II, Secretary

Prepared by:                          _____
Corporation Counsel                   Mark M. Gleason

                                      _____
                                      Ronald Molnar

                                      _____
                                      David J. Cooke

                                      _____
                                      Janet Bernberg

                                      _____
                                      Robert N. Miller

                                      _____
                                      Thomas Roanhouse

                                      _____
                                      Scott Maier

Res No. 2017-90

Page Four

**The foregoing legislation adopted by the County Board of Supervisors of Racine County, Wisconsin, is hereby:**

**Approved: _____**

**Vetoed: _____**

**Date: _____,**

**_____**

**Jonathan Delagrave, County Executive**

**Crueger Dickinson**



November 13, 2017

**VIA EMAIL**

Racine County
c/o Russell Clark, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Racine County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Racine County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Racine County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| **Firm Name** | **Percentage of Fees if Successful** |
| --- | --- |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Racine County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Racine County
Engagement Letter
Page -4

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

      A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Racine County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Racine County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

Racine County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                      Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

RACINE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: _____

Title: _____

cc:      Corporation Counsel

29243067_1.DOCX