## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-02804-DAP |
| Track 22: *City of Ogdensburg v. Purdue Pharma L.P., et al.*, No. 19-op-45852 | Judge Dan Aaron Polster |

## PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................i

TABLE OF AUTHORITIES.........................................................................................................ii

INTRODUCTION .........................................................................................................................1

LEGAL STANDARD ....................................................................................................................2

ARGUMENT .................................................................................................................................5

    I.   THE RICO STATUTE PROVIDES A BASIS FOR THIS COURT TO EXERCISE
        JURISDICTION OVER THE MOVING DEFENDANTS ............................................. 5

        A.  RICO AUTHORIZES PERSONAL JURISDICTION OVER ALL RICO
            DEFENDANTS SO LONG AS
            ONE DEFENDANT HAS MINIMUM CONTACTS WITH THE DISTRICT ........ 5

        B.  THIS COURT HAS PERSONAL JURISDICTION OVER OPTUMRX, INC. ...... 6

        C.  MOVING DEFENDANTS HAVE WAIVED SERVICE ........................................10

        D.  THE ENDS OF JUSTICE COMPEL THIS COURT TO EXERCISE PERSONAL
            JURISDICTION OVER ALL DEFENDANTS .........................................................10

            1.  THE ENDS OF JUSTICE ARE SERVED BY TRYING ALL RICO
               DEFENDANTS TOGETHER ...........................................................................12

            2.  DISMISSING THE MOVING DEFENDANTS WOULD CAUSE
               SUBSTANTIAL DELAY ...................................................................................18

            3.  MOVING DEFENDANTS FACE LITTLE BURDEN LITIGATING IN THIS
               COURT ...........................................................................................................19

        E.  DEFENDANTS' CHALLENGE TO PLAINTIFF'S RICO CLAIM FAILS ...........19

        F.  THIS COURT HAS ALSO PENDENT JURISDICTION OVER PLAINTIFF'S
            STATE LAW CLAIMS ........................................................................................21

    II.  IN THE ALTERNATIVE, PLAINTIFF RESPECTFULLY REQUESTS THAT THE
        MOTION BE HELD IN ABEYANCE UNTIL JURISDICTIONAL DISCOVERY IS
        COMPLETE ...................................................................................................................24

CONCLUSION ............................................................................................................................26

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*,
921 F.3d 282 (1st Cir. 2019) .................................................................2

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ............................................................23

*Anthony v. Van Over*,
No. 3:22-cv-416, 2023 WL 6307960 (E.D. Tenn. Sept. 27, 2023) ...........11-12, 21

*Anwar v. Dow Chem. Co.*,
876 F.3d 841 (6th Cir. 2017).................................................................3

*Brewer v. All.Coal, LLC*,
No. CV 20-41-DLB-EBA, 2021 WL 3057380 (E.D. Ky. July 20, 2021)................24

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017)..............................................................................4

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
788 F.2d 535, 539 (9th Cir. 1986) ....................................................11-12

*C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co.*,
2011 WL 13131001 (N.D. Ohio. May 10, 2011) .....................................24

*Canaday v. Anthem Co., Inc.*,
9 F.4th 392 (6th Cir. 2021) .................................................................22

*Cory v. Aztec Steel Bldg., Inc.*,
468 F.3d 1226 (10th Cir. 2006) .................................................6, 11, 19

*Cruz v. Kentucky Action Park*,
950 F. Supp. 210 (N.D. Ohio 1996)........................................................2

*Doe v. Varsity Brands, LLC*,
No. 1:22-cv-02139, 2023 WL 4935933 (N.D. Ohio Aug. 2, 2023) ...........10-11, 13, 18-19

*Drexel Chem. Co. v. SGS Depauw & Stokoe*,
59 F.3d 170 (6th Cir. 1995) .................................................................24

*Enginetec Corp. v. Boutin*,
2008 WL 11380215 (N.D. Ohio Dec. 5, 2008) .......................................12

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ...........................................................................8

*Gundaker/Jordan Am. Holdings, Inc. v. Clark*,
2008 WL 4585462 (E.D. Ky Oct. 13, 2008) ...........................................24

*Hall v. Trivest Partners, L.P.*,
No. 22-12743, 2023 U.S. Dist. LEXIS 161342 (E.D. Mich. Sep. 12, 2023) ...........11

*Hall v. Trivest Partners, L.P.*,
No. 22-12743, 2024 U.S. Dist. LEXIS 27859 (E.D. Mich. Feb. 16, 2024) .............12

*High Adventure Ministries, Inc. v. Tayloe*,
309 F. Supp. 3d 461 (W.D. Ky. 2018) ......................................................11

*IUE AFL-CIO Pension Fund v. Herrmann*,
9 F.3d 1049 (2d Cir. 1993) .................................................................23

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-2804 (N.D. Ohio Apr. 3, 2019) .......................................20, 24

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-2804 (N.D. Ohio Feb. 24, 2020) .......................................24

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
23 F. Supp. 2d 796 (N.D. Ohio 1998) ................................................12, 22

*J.M. Smucker Co. v. Promotion in Motion, Inc.*,
420 F. Supp. 3d 646 (N.D. Ohio 2019) .............................................4, 21-22

*Jonna v. GIBF GP, Inc.*,
617 F. Supp. 3d 789 (E.D. Mich. 2022) ...............................................22

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
106 F.3d 147 (6th Cir. 1997) .............................................................4

*King v. Taylor*,
694 F.3d 650 (6th Cir. 2012) ............................................................6

*M11 Motors, LLC v UP Trading, LLC*,
2017 WL 6624509 (N.D. Ohio Dec. 28, 2017) ........................................11

*Malone v. Stanley Black & Decker, Inc.*,
965 F.3d 499 (6th Cir. 2020) .........................................................3, 9

*Oetiker v. Jurid Werke, G.m.b.H.*,
181 U.S. App. D.C. 124, 556 F.2d 1, (D.C. Cir. 1977) ...........................................23

*Ohio County Commission, et al. v. Express Scripts, Inc., et al.*,
No. 5:24-cv-122 (N.D. W.Va. Dec. 23, 2024) ..........................................................20

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998) ........................................................................................6

*Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*,
40 F.4th 432 (6th Cir. 2022) .............................................................................*passim*

*Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*,
No. 3:09-cv-1584, 2010 WL 819063 (N.D. Ohio Mar. 9, 2010) .............................11-12, 18-19

*Robinson v. Penn Central Co.*,
484 F.2d 553 (3d Cir. 1973) .....................................................................................23

*Schneider v. Hardesty*,
669 F.3d 693 (6th Cir. 2012) .....................................................................................2

*Scroggins o/b/o Walton v. Imerys Talc Am., Inc.*,
2023 WL 8627629 (D.N.J. Dec. 7, 2023) ..................................................................2

*Smith v. Swaffer*,
No. 1:21-CV-2095, 2023 WL 35151 (N.D. Ohio Jan. 4, 2023) ...............................22

*Suarez Corp. Indus. v. McGraw*,
71 F. Supp. 2d 769 (N.D. Ohio 1999) ..................................................................13, 18-19

*Sullivan v. LG Chem, Ltd.*,
79 F.4th 651, 660 (6th Cir. 2023) .............................................................................3

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ..............................................................................3, 24

*Travis v. Anthes Imperial Ltd.*,
473 F.2d 515 (8th Cir. 1973) ...................................................................................23

*Welsh v. Gibbs*,
631 F.2d 436 (6th Cir. 1980) .....................................................................................2

*World Depot Corp. v. Onofri*,
2017 U.S. Dist. LEXIS 198814 (D. Mass. Dec. 4, 2017) .........................................21

iv

*Wuliger v. Positive Living Resources*,
410 F. Supp. 2d 701 (N.D. Ohio 2006) ..................................................................3

## **Statutes, Codes and Regulations**

18 U.S. Code § 1965(a) ...........................................................................5-6

18 U.S. Code § 1965(b) .........................................................................passim

29 U.S. Code § 201 ...................................................................................22

Fed. R.Civ.P. 4(k)(1) ...............................................................................5

Fed. R.Civ.P. 4(k)(1)(A) ..........................................................................5

Fed. R.Civ.P. 4(k)(1)(C) .........................................................................4-5

Fed. R.Civ.P. 12(b)(2) ...........................................................................1,6

Fed. R.Civ.P. 12(b)(3) ...............................................................................6

Fed. R.Civ.P. 12(b)(4) ...............................................................................6

Fed. R.Civ.P. 12(b)(5) ...............................................................................6

Fed. R.Civ.P. 12(b)(6) .............................................................................20

Fed..R.Civ.P. 12(h)(1)(b)(ii) ...................................................................6-7

Fed. R.Civ.P. 15(a)(1) ...............................................................................6

NY CLS CPLR § 302 ...............................................................................8

## INTRODUCTION

OptumInsight, Inc. and OptumInsight Life Sciences, Inc. ("Moving Defendants") bring these motions pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction in the CT22 (*City of Ogdensburg*) PBM Bellwether case. Doc. 6128.[1]  The Moving Defendants' motion should either be denied outright or held in abeyance pending the completion of jurisdictional discovery.

Neither OptumRx, Inc., the parent company of the other Optum entities and CSA Registrant, nor the ESI defendants challenged the Court's personal jurisdiction over them, thereby waiving that defense. The Moving Defendants, however, contend that this Court lacks a basis to assert personal jurisdiction over them because they lack minimum contacts with New York, the transferor jurisdiction.

While resolution of that claim will require discovery and factual findings, the Court can resolve the instant motion based on Plaintiff's allegations in its Amended Complaint, Amended Complaint at ¶ 95 ("Amended Complaint") (Exhibit 1), that this Court can exercise personal jurisdiction pursuant to § 1965(b) of the RICO statute, which provides for nationwide service of process and personal jurisdiction in this Court.  Moreover, under the principles of pendant jurisdiction, this Court can also exercise personal jurisdiction over Plaintiff's state-law claims because those claims arise from the same nucleus of facts. Thus, § 1965(b) provides sufficient basis for this Court to deny the motions outright.

---

[1] Pending before the Court in CT12, is a similar motion to dismiss filed by Moving Defendants. Doc. 5368.  That motion is fully briefed and is ripe for decision.  *See* Doc. 5449 (PEC Response); Doc. 5494 (Reply).  While Plaintiff's briefing here is very similar, this response contains arguments not included therein which are relevant to both motions.  *See, e.g., infra*, Argument, Parts I(D)(1), I(E), & n. 9.  Plaintiff suggests that it may be helpful to consider the CT22 motion and this response prior to the CT12 motion and briefing.

3243181.1

1

The Moving Defendants' only response to Plaintiff's assertion of personal jurisdiction under § 1965(b) is to argue the merits of Plaintiff's substantive RICO claim against them based on an incomplete description of the claim.   While Moving Defendants may not have directly dispensed opioids or received rebates, the RICO enterprise in Plaintiff's amended complaint includes the Moving Defendants' direct work with opioid manufacturers.

Alternatively, the Court should hold the motions in abeyance until jurisdictional discovery has been completed.  While Plaintiff contends that these motions may be denied on their face, as described below, discovery on the merits, which is still in its early stages, is still ongoing, and Defendants have so far refused to respond substantively to the jurisdictional discovery served in CT12 (Rochester).  Plaintiff believes that discovery will confirm that the Moving Defendants have sufficient contacts with the transferor forum states to provide an alternative basis for personal jurisdiction over them. If the Court has any doubt that the Moving Defendants' motions should be denied at this time, the Court should hold resolution of the motions in abeyance until, at the very least, this discovery is complete.

## **LEGAL STANDARD**

A plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).[2]  Where the complaint makes out a prima facie case of personal jurisdiction, however, the burden shifts to the defendant and "[t]he defendant's motion

---

[2] Sixth Circuit law governs the procedure the Court should use in determining how it resolves a motion to dismiss for lack of personal jurisdiction. *See, e.g., Cruz v. Kentucky Action Park*, 950 F. Supp. 210, 212-213 (N.D. Ohio 1996); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980); *AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282, 288 (1st Cir. 2019) ("When one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law."); *Scroggins o/b/o Walton v. Imerys Talc Am., Inc.*, 2023 WL 8627629, at *2 (D.N.J. Dec. 7, 2023) ("On issues of federal law or federal procedure, . . . the transferee court applies the law of the circuit where it sits.") (cleaned up).

to dismiss must be supported by evidence. . . " *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022); *accord Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023).  If the defendant meets that burden and supports its motion with evidence, the burden shifts back to the plaintiff who "must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Sullivan*, 79 F.4th at 660; *Peters*, 40 F.4th at 437-38.  Here, Plaintiff has established a *prima facie* basis for the exercise of personal jurisdictions over the Moving Defendants, and those Defendants have failed to submit evidence of any kind in response. Accordingly, Plaintiff is not required to submit any evidence, and the motion should be denied. *Id.*; *see also Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017).[3]

In this context, the plaintiff's initial burden is slight.  *Anwar*, 876 F.3d at 847; *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504-05 (6th Cir. 2020) ("relatively slight burden of a *prima facie* showing"); *accord Wuliger v. Positive Living Resources*, 410 F. Supp. 2d 701, 704 (N.D. Ohio 2006) (standard "is minimal").  Moreover, in assessing whether a plaintiff has met this burden, the district court must read the pleadings in the light most favorable to plaintiff.  *Peters*, 40 F.4th at 438; *Theunissen*, 935 F.2d at 1459. "Dismissal [without an evidentiary hearing] is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima*

---

[3] Where a defendant does meet its burden to present evidence in support of its motion, the Court "has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. . . .The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Here, as noted above, there are not factual issues to resolve because the Moving Defendants have failed to meet their burden to controvert the allegations of the pleadings with evidence. Nonetheless, as discussed below, should the Court find the pleadings insufficient to establish jurisdiction at this juncture, Plaintiff should be given the opportunity to complete jurisdictional discovery in order to establish the jurisdictional facts.

*facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (emphasis in original).

When service of process is based on the law of the forum state, a plaintiff must demonstrate that the requirements of the forum state's long-arm statute have been met and that the exercise of personal jurisdiction comports with due process. *See* Fed. R. Civ. P. 4; *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 282 (2017). But service of process, and thus personal jurisdiction, may also be based on a federal statute. *See* Fed. R. Civ. P. 4(k)(1)(C) ("[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute"). Here, the federal RICO statute provides for nationwide service of process:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).

Construing Rule 4 and the RICO jurisdictional provision, the Sixth Circuit has explained that, if at least one defendant that is a member of the RICO enterprise has minimum contacts with the forum state such that the court may exercise personal jurisdiction over that initial defendant, "[t]hen § 1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as . . . the 'ends of justice' require it." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 440 (6th Cir. 2022).  And a court that has personal jurisdiction over one claim may also generally exercise personal jurisdiction over related state-law claims arising from the same nucleus of facts under the doctrine of pendent personal jurisdiction. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 658–59 (N.D. Ohio 2019).

# ARGUMENT

I. **The RICO Statute Provides a Basis for this Court to Exercise Jurisdiction Over the Moving Defendants.**

As discussed below, in this case, the requirements for state law jurisdiction (including the requirements of due process) are met with respect to at least one Defendant, and the requirements of § 1965(b) for personal jurisdiction over all the other Defendants are satisfied. No more is required.

A. **RICO Authorizes Personal Jurisdiction Over All RICO Defendants So Long as One Defendant Has minimum Contacts With the District.**

Federal Rule of Civil Procedure 4(k)(1) provides that either serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant "when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). "Congress can authorize nationwide service of process in a regulatory statute permitting claimants to sue a defendant in any of the federal district courts in the country." *Peters*, 40 F.4th at 438. In *Peters*, the Sixth Circuit held that 18 U.S.C. § 1965(b) of the RICO statute provides that authorization. *Id.* at 440.

In reaching this decision, the court examined § 1965 as a whole. *Id.* at 440-441. Looking first to § 1965(a), the court noted that it provides that: "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In *Peters*, the Sixth Circuit interpreted this requirement in § 1965(b) holding that "[b]ecause subsection (a) is not jurisdictional, another rule—such as Federal Rule of Civil Procedure 4(k)(1)(A) and the relevant state's long-arm statute—is required to establish personal jurisdiction over an initial defendant." 40 F.4th at 440. "In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established

as to at least one defendant." *Id.* at 439 (*quoting PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).

Once jurisdiction under the state's long-arm statute is established over one defendant in the RICO enterprise, § 1965(b) extends personal jurisdiction through nationwide service of process over other parties residing in any other district, as long as venue over the initial defendant is proper under section1965(a) and the assertion of personal jurisdiction comports with the "ends of justice."[4] *Id.* at 440. Consequently, "[w]hen a plaintiff brings a civil RICO action in a district court where personal jurisdiction can be established over at least one defendant, nationwide summonses can be served on other defendants if required by the ends of justice." *Id.* (citing *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006)).

**B.      This Court has Personal Jurisdiction Over OptumRx, Inc.**

Here, OptumRx, Inc. ("OptumRx") has never argued that this Court lacks personal jurisdiction over it. And by omitting the defense from its own answer, *see* Doc. 6129, OptumRx has waived any objection to this Court's exercise of personal jurisdiction. *See* Fed. R. Civ. P.

---

[4]Moving Defendants do not challenge venue under Rule 12(b)(3), the sufficiency of process under Rule 12(b)(4), or service of process under Rule 12(b)(5).  Thus, any challenge based on these defenses has been waived.  *See* Fed. R. Civ. P. 12(h)(1)(b)(ii) ("A party waives any defense listed in Rule 12(b)(2) . . . failing to . . . include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."); *King v. Taylor*, 694 F.3d 650, 656 (6th Cir. 2012) ("By operation of the Federal Rules of Civil Procedure, a defendant who files a motion under Rule 12, yet fails to raise in that motion the defense of insufficient service of process, forever "waives" that defense. Fed. R. Civ. P. 12(b)(5), (g)(2), (h)(1)(A). Therefore, if Taylor filed a motion under Rule 12, but never argued therein that service was defective, he is barred from raising the issue later, and plaintiffs' first theory of waiver must be sustained.").  Similarly, as neither Optum Rx nor the ESI Defendants challenged service or venue in their answers, Docs. 6129, 6131, any objection on their part to service or venue has been waived.   Fed. R. Civ. P. 12(h)(1)(b)(ii).

12(h)(1)(b)(ii). OptumRx, therefore, has conceded this Court's exercise of personal jurisdiction over it complies with the New York long-arm statute and federal due process.

Even if Optum Rx had not conceded that jurisdiction exists, there is no doubt that Plaintiff's complaint plead a *prima facie* case of personal jurisdiction over OptumRx. For example, Plaintiff pleads in its complaint:

> This Court has personal jurisdiction over Defendants because the causes of action alleged in this Complaint arise out of Defendants' transacting business in New York, contracting to supply services or goods in this state, causing tortious injury by an act or omission in this state, and because Defendants regularly do or solicit business or engage in a persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in this state. Defendants have purposefully directed their actions towards New York and/or have the requisite minimum contacts with New York to satisfy any statutory or constitutional requirements for personal jurisdiction.

Doc. 6128-1 at ¶ 95. With respect to OptumRx, Plaintiff specifically alleges:

> OptumRx is registered to do business in New York and may be served through its registered agent: CT Corporation System, 28 Liberty St., New York, NY 10005.

> OptumRx, Inc. entities (Optum Care Networks, Inc., Optum Services (Puerto Rico) LLC, OptumHealth Care Solutions Inc, OptumHealth Care Solutions LLC, and OptumInsight, Inc.) hold 4 active licenses with the New York State Department of Finance.

> Prior to 2011, OptumRx was known as Prescription Solutions. In addition, as depicted in the PBM Consolidation Chart below, OptumRx grew as a result of numerous mergers and acquisitions. For example, in 2012, a large PBM, SXC Health Solutions, bought one of its largest rivals, Catalyst Health Solutions Inc. in a roughly $4.14 billion deal. Shortly thereafter, SXC Health Solutions Corp. renamed the company Catamaran Corp. Following this, UHG bought Catamaran Corp. in a deal worth $12.8 billion and merged Catamaran with OptumRx.

> Prior to merging with OptumRx (or being renamed), Prescription Health Solutions, Catalyst Health Solutions, Inc., and Catamaran Corp. engaged in the at-issue PBM and mail-order activities alleged more fully herein.

> OptumRx now provides both PBM and mail-order dispensing services. At relevant times to this Complaint, OptumRx provided and/or offered PBM services for entities and/or persons in Plaintiff's Community.

> At relevant times to this Complaint, OptumRx has sold and continues to sell prescription opioids through its mail order pharmacies in New York, including in Plaintiff's Community.

Doc. 6128-1 at ¶¶ 161–166.

OptumRx's connection with New York is significant. OptumRx covers over 2.2 million commercial lives in New York[5] and has contracts with approximately 5,000 pharmacies in New York.[6]

These allegations are more than sufficient to meet Plaintiff's burden to make a *prima facie* showing of facts sufficient to permit this Court to exercise personal jurisdiction over OptumRx based on the applicable long-arm statute.  New York's long-arm statute states that a court may exercise personal jurisdiction over any non-domiciliary who, inter alia, transacts any business within the state or contracts anywhere to supply goods or services in the state; or commits a tortious act within the state.  NY CLS CPLR § 302.  The factual allegations detailed above meet the requirements of the state's long-arm statute.

In addition to satisfying the long-arm statute, the exercise of personal jurisdiction satisfies due process if the claims "arise out of or relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021) (citations omitted).  A defendant's "contacts" are "some action by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Id.*  The factual allegations in the amended complaint noted above also satisfy the constitutional requirements for asserting personal jurisdiction.

---

[5] *MMIT PBM Profile OptumRx*, MMIT, 5 (September 2023), https://info.mmitnetwork.com/hubfs/Marketing%20Content/Infographics/PBM%20Profile%20Sample.pdf.

[6] N.Y. State S. Comm. on Investigations and Gov. Operations, Final Investigative Rep.: Pharmacy Benefit Managers in New York 34 (May 31, 2019), https://www.nysenate.gov/sites/default/files/article/attachment/final_investigatory_report_pharmacy_benefit_managers_in_new_york.pdf

Again, Plaintiff's burden here is not substantial.  In *Malone v. Stanley Black & Decker, Inc.*, the Sixth Circuit, faced with factual allegations that were "sparse on detail," reversed the district court's personal jurisdiction dismissal: "Taken together with the rest of the complaint, and in a light most favorable to the Malones, these allegations are enough to satisfy the relatively slight burden of a *prima facie* showing." 965 F.3d 499, 504-05 (6th Cir. 2020) (internal quotation omitted).  The allegations against OptumRx in this case are much more robust and easily are sufficient to meet the Plaintiff's slight burden.

Notably, the same is true of ESI, which has also waived any challenge to personal jurisdiction by not raising the defense in its answer.  Doc. 6131.  ESI is part of the same RICO enterprise as the Optum Defendants. Amended Complaint at ¶¶ 273-83.  As is the case with OptumRx, the Amended Complaint also alleges sufficient facts to allow the Court to conclude that Plaintiff has made a *prima facie* case of personal jurisdiction over ESI. Amended Complaint at ¶¶ 95, 104-40. Thus, ESI also satisfies the requirements to serve as a proper "initial defendant" for purposes of 18 U.S.C. § 1965(b).

As Plaintiff has met its *prima facie* burden with respect to OptumRx and the ESI defendants, the burden now shifts to the Moving Defendants, whose motion to dismiss must be properly supported with evidence." *Malone*, 965 F.3d at 504.  The Moving Defendants fail to meet that burden because they have not challenged Plaintiff's claims of personal jurisdiction over OptumRx or the ESI Defendants with evidence or even argument. This failure is especially striking given that Plaintiff specifically plead personal jurisdiction under § 1965(b). Amended Complaint at ¶ 95.

Plaintiff has established a *prima facie* showing of personal jurisdiction over OptumRx and the ESI Defendants. Accordingly, OptumRx qualifies as a proper "initial defendant" for purposes of 18 U.S.C. § 1965(b). *Peters*, 40 F.4th at 440.

### C. Moving Defendants Have Waived Service.

As the Sixth Circuit has recognized, waiving service will establish personal jurisdiction over a defendant. *See Peters*, 40 F.4th at 438; *see also Doe v. Varsity Brands, LLC*, No. 1:22-cv-02139, 2023 WL 4935933, at *12 (N.D. Ohio Aug. 2, 2023). Here, the Moving Defendants have waived service. *See, supra,* n. 4. Thus, waiver suffices under § 1965(b) to justify the exercise of this Court's personal jurisdiction over the non-resident Moving Defendants, so long as the ends of justice require it.

### D. The Ends of Justice Compel This Court to Exercise Personal Jurisdiction Over All Defendants.

When a RICO action has been properly instituted in a district court over an "initial defendant"—as is the case here—that court may exercise jurisdiction over the other non-resident enterprise member defendants if the ends of justice so require. 18 U.S.C. § 1965(b). The "ends of justice" require this Court to exercise personal jurisdiction over the Moving Defendants, all subsidiaries of RICO Defendant OptumRx and co-enterprise members in this RICO action, because: (1) Plaintiff's RICO claims should be tried against all RICO Defendants in one forum; (2) transfer to another forum would result in delay; and (3) the Moving Defendants—all of whom are corporate entities related to OptumRx and share the same counsel—will not be meaningfully burdened or inconvenienced by litigating in this Court (or in New York pursuant to an eventual remand).

Although the Sixth Circuit has not adopted a test for determining what is required to demonstrate the "ends of justice" for establishing personal jurisdiction over nonresident defendants

10

pursuant to section 1965(b), *Peters*, 40 F.4th at 440, n.4, a number of district courts in this circuit (and elsewhere) have adopted the test set by the Tenth Circuit in *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006). *See, e.g., Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, No. 3:09-cv-1584, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9, 2010); *Doe v. Varsity Brands, LLC*, No. 1:22-cv-02139, 2023 WL 4935933, at *16 (N.D. Ohio Aug. 2, 2023); *Anthony v. Van Over*, No. 3:22-cv-416, 2023 WL 6307960, at *3-4 (E.D. Tenn. Sept. 27, 2023); *Hall v. Trivest Partners, L.P.*, No. 22-12743, 2023 U.S. Dist. LEXIS 161342, at *24 (E.D. Mich. Sep. 12, 2023).

Under *Cory*, "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." 468 F.3d at 1232. As the Tenth Circuit explained, "RICO was intended as a means to eradicate organized crime," and that such purpose would be constrained if nationwide service of process was disallowed. *Cory*, 468 F.3d at 1232. To the contrary, such a limit would "mean that some RICO violations would go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state." *Id. Cory* further observed that such a limit would also be contrary to antitrust law, which incorporates a similar "ends of justice" analysis, and for which "[t]he Supreme Court has rejected the notion that a confluence of defendants within a single judicial district" is controlling.[7] *Id.*

---

[7] In *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, the Ninth Circuit adopted a narrow interpretation of the "ends of justice" test requiring a RICO plaintiff to "show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." 788 F.2d 535, 539 (9th Cir. 1986). The district court in *Rexam* persuasively characterized the *Butcher's Union* rule as "arbitrary," noting that the Ninth Circuit "did not explain . . . this crabbed and inflexible interpretation." *Rexam*, 2010 WL 819063, at *4. Some cases decided by courts in this Circuit (all decided prior to the Sixth Circuit's ruling in *Peters*) have cited *Butcher's Union*, but none since *Peters* have taken this position. *See High Adventure Ministries, Inc. v. Tayloe*, 309 F. Supp. 3d 461 (W.D. Ky. 2018) (finding "'the ends of justice' do not warrant utilizing the RICO jurisdictional provision to hale two individual defendants across the country to a venue already deemed improper under the traditional specific jurisdiction analysis, . . . especially considering the fact that venue would presumably be proper for both Defendants elsewhere"); *M11 Motors, LLC v UP Trading, LLC*, 2017 WL 6624509 (N.D. Ohio Dec. 28, 2017) (citing *Butchers Union* in dicta

In determining whether the Tenth Circuit's flexible interpretation of the "ends of justice" is satisfied, courts within the Sixth Circuit look to: (1) the preference for having the entire action litigated in one court, (2) the cost of delay in transferring the case to another forum, and (3) the balance of hardships between plaintiffs and defendants. See *Rexam*, 2010 WL 819063, at *5; accord *Anthony*, 2023 WL 6307960, at *4. Here, each of these factors counsels in favor of exercising personal jurisdiction over the Moving Defendants.

### 1.     *The Ends of Justice Are Served By Trying All RICO Defendants Together.*

First, this Court should exercise personal jurisdiction over the Moving Defendants because Plaintiff's RICO claim can be litigated against all RICO defendants in one court. That is an important factor here, given that all of the Defendants are alleged to have participated in a single nationwide RICO enterprise. *See, e.g., Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 803 (N.D. Ohio 1998) (Congress intended the "ends of justice" language to provide a means for plaintiffs to bring all RICO defendants before the court in a single trial.). Thus, "[i]t would not serve the ends of justice to require separate trials in different fora against

---

without considering the Tenth Circuit's approach after holding RICO defendant, over which the court lacked traditional personal jurisdiction, was not a participant in the same RICO conspiracy as the defendant for whom personal jurisdiction existed); *Enginetec Corp. v. Boutin*, 2008 WL 11380215 (N.D. Ohio Dec. 5, 2008) (citing *Butcher's Union* rule in dicta after refusing to find jurisdiction proper under section 1965(b) because argument raised for first time in motion for reconsideration was deemed untimely). Thus, the cases citing *Butcher's Union* are all distinguishable on the facts and all pre-date the Sixth Circuit's recognition of the availability of national service of process pursuant to section 1965(b) in *Peters* in 2022.  Recently, the Sixth Circuit granted an interlocutory appeal to decide "whether the ends-of-justice requirement can only be satisfied if no other district court has jurisdiction over all the named defendants."  *Hall v. Trivest Partners, L.P.*, No. 22-12743, 2024 U.S. Dist. LEXIS 27859 (E.D. Mich. Feb. 16, 2024), Pet. for appeal granted, Case No. 24-0102 (6th Cir. March 21, 2025).  Because briefing in *Hall* has just begun, the Court has not made a decision in the case.  The result in *Hall* will not be dispositive in this case because there does not appear to be a court that has jurisdiction over all the defendants. *See infra* p. 12.

parties who . . . have close involvement in the events underlying the plaintiff's case." *Suarez Corp. Indus. v. McGraw*, 71 F. Supp. 2d 769, 778 (N.D. Ohio 1999); *Doe*, 2023 WL 4935933, at *16 ("[r]equiring the plaintiff to file multiple identical actions against" nonresident defendants in different forums "in addition to maintaining the instant action, does not serve the ends of justice").

To understand why justice is served by allowing Plaintiffs to litigate their claims against all RICO Defendants in the same court, it is important to recognize the scope of the racketeering conduct committed by the RICO Defendants (including the Moving Defendants) in furtherance of the alleged RICO enterprise's purposes. Plaintiffs allege the PBM entities "colluded" with each other and the manufacturers to "spread[] fraudulent misrepresentations" that "induced doctors to write more opioid prescriptions, and then they made sure it would be easy for patients to fill those prescriptions, thus ensuring an unfettered flow of opioids to communities across America," including Plaintiff's community.  Amended Complaint at ¶ 15.  In other words, Plaintiff alleges that the Defendants' RICO enterprise engaged in a multipronged national campaign to increase the number of opioid prescriptions both by expanding the opioid market through deceptive marketing and miseducation (to "increase the flow of water at the source") and by easing prescription access through formulary positions, failure to impose appropriate utilization management (UM) rules, and more (to "open the floodgates"). *Id.* at ¶ 26. Plaintiff alleges that all of this racketeering conduct—including marketing and formulary placements—was part of the same "Formulary & UM Enterprise," as all served "the common purpose of illegally and fraudulently profiting from an expansion of the market for prescription opioids, and increased prescribing, dispensing, and sales of those drugs." *Id.* at ¶ 636.

Plaintiff's complaint makes the scope of the alleged RICO enterprise clear, even if the shorthand title given to the enterprise by the complaints incorporates some but not all of the tools

through which the RICO Defendants accomplished the enterprise's purpose of increasing opioid sales. *See, e.g., Id.* at ¶¶ 609 (evidence "of the existence of the Formulary and UM Enterprise can be found in the PBM Defendants' . . . work together on disseminating the Opioid Enterprise Manufacturers' marketing messages about prescription opioids"), 679-80 (PBMs' "uniform conduct"—including giving manufacturers "unfettered formulary access," "the dissemination of their marketing messages," and providing them "with PBM data so that they could pull through the formulary 'wins' and drive increased prescribing"— all "[c]ollectively . . . constitute a pattern of racketeering activity"), 685 (listing how PBMs used mail and wire facilities "to perpetrate the fraudulent scheme of the Formulary & UM Enterprise," including through "[m]arketing materials . . . disseminated by the PBM Defendants" and the provision of "PBM prescribing data"), 785 ("Evidence of the existence of the Formulary & UM Enterprise can be found in the way each PBM Defendant," inter alia, took formulary actions and supported manufacturers with research, pull-through marketing, and data).  Indeed, the complaints' introductory definitions of the "Formulary & UM Enterprise" state that the "PBM Defendants conducted, and participated in the conduct of, the Formulary & UM Enterprise by," inter alia, "taking formulary action" and "working together with opioid manufacturers to disseminate the false marketing and to support their detailing of prescription opioids to prescribers." *Id.* at ¶ 88.  "All of this conduct furthered the underlying fraudulent scheme of the Formulary & UM Enterprise . . . ." *Id.*

The complaint also explains how the Moving Defendants played integral roles in both the formulary and marketing prongs of the racketeering conduct—which were intertwined and interdependent. The key link between the two was the massive data collection and analytics

provided by OptumInsight, "Optum's data, research, and consulting arm" which "collects, processes, sells and profits from the vast data" on millions of patients and prescribers.[8] *Id.* at ¶ 197.

OptumInsight used its data and analysis to help opioid manufacturers "target the highest opioid prescribers with pull-through marketing" promoting the preferred formulary status Optum granted to opioids, enabling the manufacturers to transform their formulary positioning into sales "wins." *Id.* at ¶¶ 344-45. The formulary manipulation and data-driven marketing provided by the PBMs to the manufacturers worked synergistically to generate profits for all the RICO Defendants, as alleged in the complaint:

> Documents confirm these facts and evidence that unrestricted formulary access was a boon for each Opioid Enterprise Manufacturers marketing efforts and that "pull through" efforts were undertaken after each formulary announcement "win" in order to drive the Opioid Enterprise Manufacturers' profitability.  The PBM Defendants were not only aware of this pull through marketing, they actively joined in efforts with the Opioid Enterprise Manufacturers by creating reports about the "value proposition" of unrestricted use of prescription opioids . . . .

*Id.* at ¶ 677; *see also id.* at ¶ 650 ("Documents produced" by RICO Defendants "are replete with examples" of using "PBM Defendants' data to maximize" "pull-through initiatives touting the beneficial formulary placement of Opioid Enterprise Manufacturers' drugs"); *id.* at ¶ 675 (wire fraud for Formulary & UM Enterprise included "transmission of large volumes of data" "between the PBM Defendants and the Opioid Enterprise Manufacturers" for "pull-through marketing").[9]

---

[8] "OptumInsight is the Optum group that engages in data analytics," and "emerged from a collection of entities acquired by the UnitedHealth Group over the years," including "QualityMetric," the former name of OptumInsight Life Sciences, Inc.  Amended Complaint at ¶¶ 157-58.  In Optum's words, "From many distinct and powerful brands," including QualityMetric/OptumInsight Life Sciences, "emerges one company that spans the evidence lifecycle"—OptumInsight.  *Id.*  Therefore, as in the amended complaint, this brief uses "OptumInsight" to refer to both OptumInsight, Inc. and OptumInsight Life Sciences, Inc.

[9] Discovery has confirmed that Optum entities had access to OptumInsight's vast data. Just yesterday, Robert Lahman, OptumRx's Vice President of Industry Relations, testified that OptumInsight is an Optum segment. *See* Depo Tr. Robert Lahman (May 29, 2025) (Exhibit 2) at

As further evidence of OptumInsight's key role providing the data that helped monetize manufacturers' formulary status, "OptumInsight was paid tens of millions of dollars by the opioid manufacturers during the relevant time period for its work to expand the opioid market." *Id.* at ¶ 200.

OptumInsight's racketeering activity in furtherance of the Formulary & UM Enterprise's purposes also included deceptive marketing independent of opioids' formulary status. OptumInsight provided the data that manufacturers needed to precisely target and track prescribers for drug detailing (the practice of sending pharmaceutical representatives to persuade prescribers to use their product). *Id.* at ¶¶ 649-50 ("The nexus between data and detailing helped drive the formation of the common purpose of the Formulary & UM Enterprise."); *see also id.* at ¶¶ 344-45 (OptumInsight provided manufacturers lists of pain clients and prescribers); *id.* at ¶ 355 ("OptumInsight was paid by Purdue to . . . create algorithms to identify potential pain patients to suggest OxyContin prescriptions"). And Moving Defendants did not merely provide data— "OptumInsight worked directly with opioid manufacturers to convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive."[10] *Id.* at ¶ 198; *see also id.* at ¶¶ 646, 650, 685 (Optum's

---

354:21. He confirmed that OptumRx had access to patient data and from that data that Optum and United Healthcare could "tighten up opioids." *Id.* at 355:19-356:24; *see also* Exhibit 2.1 (PEC-OPT-00134.1) (email chain between Lanham and Calabrese discussed in Lanham deposition).

[10] Discovery has also borne out the Optum Defendants' work with the manufacturers of opioids to spread false information about the safety and efficacy of the drugs to physicians and nurse practitioners. For example, Dr. Michael Rosen, Optum Rx's Medical Director, testified that Optum adopted pain management programs (*e.g.* Partners Against Pain), at Purdue's request. *See* Depo Tr. Michael Rosen, M.D. (May 8, 2025) (Exhibit 3) at 213:14 - 216:5 (Dr. Rosen requesting 50 copies of an American Pain Society Pamphlet from Purdue); *id.* at 346:13 - 347:5; *id.* at 347:16 - 348:16 (Purdue expressing excitement to Dr. Rosen about sharing "a number of resources that may be beneficial for the case managers"). Partners Against Pain distributed Purdue talking points about opioid tolerance and the low risk of addiction. *Id.* at 350:9-14 (Partners Against Pain was associated with FACETS); *id.* at 146:9 -146:19 (FACETS was created by Purdue

racketeering activity included facilitating dissemination of manufacturers' deceptive marketing). For example, OptumInsight contracted with Purdue for decades to "reverse engineer studies" and "create large-scale marketing plans to convince payors that long-term opioid usage was not only useful for many types of pain and did not lead to serious addiction for long-term opioid users." *Id.* at 355.  OptumInsight also created and presented physician "education" programs targeted at increasing OxyContin prescriptions. *Id.* at ¶¶ 342-43.

Moving Defendants incorrectly argue that Plaintiff's alleged RICO enterprise–related racketeering activity is limited to negotiating rebates, managing formularies, and dispensing pills, which Moving Defendants argue only OptumRx did. Motion at 18. This is doubly incorrect. First, Plaintiff alleges that the Moving Defendants directly supported the formulary scheme with data that enabled pull-through marketing touting opioids' beneficial formulary placement. *See supra* at 16; *see also* Amended Complaint at ¶¶ 383-88 (describing Optum's unique vantage point in the opioid ecosystem, which allowed Moving Defendants to track every prescription claim in real-time). Second, as explained above, deceptive marketing is also part of the alleged racketeering conduct that furthered the Formulary & UM Enterprise's purpose of increasing opioid sales. *See supra* at 17. Plaintiff's complaint clearly alleges that the Moving Defendants participated in the racketeering activity that served the RICO enterprise.

The interconnected roles of the Moving Defendants and other RICO Defendants in the

---

and included a "catalog of multiple educational programs"). Those statements that appear in Purdue's programing, adopted and used by Optum in New York and throughout the country, are the same statements for which Purdue entered a plea agreement, agreeing to pay $600 million in criminal fines in 2007. *Id.* at 208:9-210:9; *id.* at 213:14-216:5.  Still, in November of 2013, Optum placed Purdue's Partners Against Pain program on UnitedHealth's website, *id.* at 351:1-352:6, where all clinical employees of UnitedHealth Group had access to it, *id.* at 353:17-355:25, and Partners Against Pain remained on UnitedHealth's website until February 2017. *Id.* at 356:1-357:13.

alleged racketeering activity demonstrate the importance of trying them before the same court.  If personal jurisdiction is not exercised over the Moving Defendants, Plaintiff could only proceed in this Court against OptumRx and the ESI defendants; the Moving Defendants would be dismissed, and Plaintiffs would have to pursue their RICO claims against two sets of defendants split between at least two different forums.  *See Rexam*, 2010 WL 819063, at *5 (dismissal "would potentially require the claims in this action to be simultaneously litigated in both Texas and this Court, to the great expense and inconvenience of both parties").  Indeed, given that Moving Defendants and OptumRx  reside a different state (Minnesota) from the ESI Defendants (Missouri),  it is possible that there might not be any district where all the RICO defendants are subject to personal jurisdiction under the traditional minimum contacts test.[11]  "It would not serve the ends of justice to  require  separate trials in different fora against parties who . . . have close involvement in the events underlying the plaintiff's case."  *Suarez*, 71 F. Supp. 2d at 778; *Doe*, 2023 WL 4935933, at *16 ("[r]equiring the plaintiff to file multiple identical actions against" nonresident defendants in different forums "in addition to maintaining the instant action, does not serve the ends of justice").

### 2. *Dismissing the Moving Defendants Would Cause Substantial Delay.*

Second, in the event this Court dismisses the Moving Defendants, refiling by Plaintiff in the districts where the Moving Defendants are residents, would result in starting such actions anew and would result in substantial delay.  Such delay weighs in favor of this Court extending personal jurisdiction over the Moving Defendants.  *Rexam*, 2010 WL 819063, at *5; *Doe*, 2023 WL 4935933, at *17.

---

[11] *See* Amended Complaint at ¶¶ 107 (Express Scripts, Inc., Missouri), 117 (ESI Mail Pharmacy Service, Inc., Missouri), 153 (OptumInsight, Inc., Minnesota), 156 (OptumInsight Life Sciences, Inc., Minnesota), 160 (OptumRx, Inc., Minnesota).

### 3. *Moving Defendants Face Little Burden Litigating in This Court.*

Third, requiring the Moving Defendants to defend these actions in this Court (and eventually in New York) imposes a minimal burden.  The Moving Defendants are both corporate entities related to OptumRx, which is subject to personal jurisdiction, and all of which share the same counsel.  *See Rexam*, 2010 WL 819063, *6 (finding balance of hardships favored jurisdiction under § 1965(b) where nonresident defendants were resident defendant's alter ego and wife); *Doe*, 2023 WL 4935933, at *17 (finding balance of hardships weighed in favor of jurisdiction where nonresident defendants "have retained competent local counsel and can easily conduct most of their litigation via electronic means"). "The burden is on the defendants to show that asserting jurisdiction in this forum will make litigation 'so gravely difficult and inconvenient' that they are unfairly at a 'severe disadvantage' in comparison to [plaintiff]." *Suarez*, 71 F. Supp. 2d at 778. The Moving Defendants do not attempt to argue that litigating in this forum would be either inconvenient or burdensome. Thus, this Court should conclude that the "ends of justice" require it to exercise personal jurisdiction over the Moving Defendants.

### E. Defendants' Challenge to Plaintiff's RICO Claim Fails.

The Moving Defendants' motion does not dispute much with respect to Plaintiff's claim that RICO authorizes personal jurisdiction.  The Moving Defendants do not contest the premise that section 1965 allows the assertion of personal jurisdiction over all RICO Defendants so long as one defendant has minimum contacts with judicial district.  Nor do they contest that that Plaintiff has established minimum contacts with Optum Rx and the ESI Defendants or that Moving Defendants have been properly served.  Instead, Moving Defendants argue that the "ends of justice" are not served by the assertion of personal jurisdiction over them, not because any of the

three *Cory* factors favors granting the motion, but because Plaintiff's substantive RICO claim against them supposedly fails because Plaintiff fails to specifically allege that Moving Defendants participated in the acts that serve as the basis for the RICO enterprise.  Doc. 6128-1 at 13-14.  They are wrong.

As an initial matter Plaintiff notes that the Moving Defendants never have in this Court sought a Rule 12(b)(6) dismissal of Plaintiff's RICO claims on this same basis.  In CT12, where the claims were based on almost identical allegations, Moving Defendants (unsuccessfully) sought dismissal only based on the statute of limitations and the failure to plead an injury to business or property.   Doc. 5370 at 5-11, 14-18.  They did not even raise the basis they offer here (and in CT12) as a basis to dismiss these Defendants.  In this case, none of the PBM Defendants moved to dismiss any of Plaintiff's claims for failure to state a claim, and instead, all but the Moving Defendants, answered the amended complaint.  Docs. 6129 (Optum Rx); 6131 (ESI Defendants).

Moving Defendants did, however, (unsuccessfully) seek a Rule 12(b)(6) dismissal in the case brought by a number of West Virginia subdivisions in federal court in the Northern District of West Virginia.  The motion was in part  based on the same on the same "group pleading" grounds alleged in the instant motion.  In that case, Judge Bailey rejected the argument holding that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  *Ohio County Commission, et al. v. Express Scripts, Inc., et al.* No. 5:24-cv-122, at 43-44 (N.D. W.Va. Dec. 23, 2024) (internal quotation omitted; citing cases); *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio June 13, 2019); Dkt. No. 1680, Opinion and Order (denying motion to dismiss in *Muscogee/Blackfeet* by manufacturer defendants based on allegedly improper group pleading claim).  With respect to a complaint that made substantively identical allegations against

the same Moving Defendants, Judge Bailey concluded: "In this case, plaintiffs' claims against . . . Optum entities do not fail merely because plaintiffs grouped defendants in order to bring identical claims against each of them."  *Id.* at 44.

As detailed above, when one looks at the actual allegations in Plaintiff's amended complaint against Moving Defendants, there are sufficient allegations of their specific conduct and culpability with respect to the RICO claims.  Thus, the specific allegations detailed in Plaintiff's amended complaint defeat Moving Defendants' claim that "Plaintiff fails to allege any facts showing that the Moving Defendants were members in the alleged "Formulary & UM Enterprise" or participated in the conduct and pattern of racketeering activity underlying the purported RICO claim."  Motion at 13.  The factual record here easily distinguishes this case from the authorities cited by Moving Defendants.  *See Anthony v. Over*, 2023 U.S. Dist. LEXIS 176603, at *14-15 (E.D. Tenn. Sep. 27, 2023) ( "Plaintiffs never specifically allege any single act of racketeering engaged in by [Defendant].");  *World Depot Corp. v. Onofri*, 2017 U.S. Dist. LEXIS 198814, at *15 (D. Mass. Dec. 4, 2017) ("At a minimum, the complaint fails to plead a pattern of racketeering activities.").  The Moving Defendants' claim that the ends of justice would not be served by asserting personal jurisdiction over them is belied by the specific allegations of their conduct in Plaintiff's amended complaint.

**F.  <u>This Court Also Has Pendent Jurisdiction Over Plaintiff's State Law Claims.</u>**

Because this Court has jurisdiction over the Moving Defendants with respect to Plaintiff's RICO claim, it also may exercise jurisdiction over Plaintiff's state-law claims under the doctrine of pendent personal jurisdiction. "Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or

claims arising out of the same nucleus of operative facts." *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 658 (N.D. Ohio 2019) (citation omitted). "Under those circumstances, it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions." *Id.* at 659 (citation omitted).  Plaintiff has pled that the state law claims arise out of the same common nucleus of operative facts as Plaintiff's RICO claims, Amended Complaint at ¶ 95.

The Sixth Circuit has recognized that pendent jurisdiction has been applied by courts in these circumstances. *Canaday v. Anthem Co., Inc.*, 9 F.4th 392, 401 (6th Cir. 2021).  And district courts within this Circuit exercising personal jurisdiction over a federal claim have routinely exercised pendent personal jurisdiction over related state claims arising from the same nucleus of facts. *See, e.g., J.M. Smucker Co.*, 420 F. Supp. 3d at 658–59 (N.D. Ohio 2019) (citing cases); *Smith v. Swaffer*, No. 1:21-CV-2095, 2023 WL 35151, at *3 (N.D. Ohio Jan. 4, 2023); *Iron Workers Loc. Union No. 17 Ins. Fund*, 23 F. Supp. 2d at 804–06 (applying pendent personal jurisdiction in case with RICO claims) (N.D. Ohio Sept. 14, 1998); *Jonna v. GIBF GP, Inc.*, 617 F. Supp. 3d 789, 799 (E.D. Mich. 2022).

The Moving Defendants rely on the Sixth Circuit's observation in *Canaday* that it had "never recognized" pendent personal jurisdiction and declined to recognize the doctrine in the case before it based on the particular circumstances of that case.  Doc. 6128-1 at 18 (citing 9 F.4th at 401).  The *Canaday* court did acknowledge, however, that pendent personal jurisdiction was usually applied in cases involving a nationwide service of process provision, *such as RICO*, whereas the claims in *Canaday* were under the Fair Labor Standards Act, which did not include

such a provision. *Id*. at 399 ("[t]hat silence rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions"). In addition, *Canaday* involved nonresident plaintiffs who were seeking to opt in to a collective action, and the court held it did not have jurisdiction over them under the pendant *party* personal jurisdiction doctrine. *Id*. at 401. Other circuit courts have expressly recognized pendant personal jurisdiction when a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative facts.[12] *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993); *Oetiker v. Jurid Werke, G.m.b.H.*, 181 U.S. App. D.C. 124, 556

---

[12] The Moving Defendants' claim that Plaintiff's claims against them do not arise from the same "common nucleus of operative fact," as the claims against the other PBM Defendants, Motion at 15, is simply untrue. As noted above, the PBM Defendants as members of the enterprise worked towards a common purpose "to profit from the increased and unrestricted prescribing, dispensing, and sale of prescription opioids without regard for public safety." The Moving Defendants' role in that enterprise was to work with opioid manufacturers to develop false information about the risks and benefits of opioid use in order to increase the sales of opioids. Plaintiff's state law claims all involve this common theme. *See, e.g.,* Doc. 5913-1 at ¶ 720 (alleging the creation of a public nuisance by "by colluding with manufacturers to make opioids more available and ignoring evidence of addiction and misuse"); *id.* at ¶ 820 (alleging negligence due to Defendants representation "to the public, as well as to their clients, that they were structuring formulary and UM offerings based on the health and safety of the public and the lives their clients insured, when in fact they were doing the exact opposite and doing it to maximize their own revenue in concert with the opioid manufacturers"); *id.* at ¶ 841, 854 (alleging GBL §§ 349, 350 claims because: PBM Defendants . . . colluded and conspired with opioid manufacturers to commit the wrongful acts and practices which are "deceptive or misleading in a material way" and include but are not limited to: misrepresenting the truth about how opioids lead to addiction [and] falsely omitting or minimizing the adverse effects of opioids and overstating the risks of alternative forms of pain treatment"). Optum's attempt to cordon off the OptumInsight defendants by saying they were not engaged in the same business activities as OptumRx and did not play any role in the opioid epidemic is belied by the specific allegations in the Amended Complaint described in this response. Because Plaintiffs' state law claims are based on the very same conduct by the Moving Defendants that constitutes key elements of the RICO claims, they arise from the same common nucleus of operative facts.

F.2d 1, 4-5 (D.C. Cir. 1977); *Robinson v. Penn Central Co.*, 484 F.2d 553, 555-56 (3d Cir. 1973); *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 528 (8th Cir. 1973).

As the requirements for pendant personal jurisdiction are met, this Court should exercise jurisdiction over Plaintiff's state law claims.

## II.    In the Alternative, Plaintiff Respectfully Requests That the Motion Be Held in Abeyance Until Jurisdictional Discovery Is Complete.

While Plaintiff's assertion of personal jurisdiction based on RICO provides a clear basis to deny the Moving Defendants' Motions outright; however, if the Court elects not to go that route, it should instead hold these Motions in abeyance while personal jurisdiction discovery proceeds, consistent with this Court's prior rulings and Sixth Circuit precedent.  *See* Doc. 1512, Ruling Regarding Jurisdictional Discovery on Defendants Allergan, Teva, and Mallinckrodt, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Apr. 3, 2019); Dkt. No. 3180, Order Regarding Jurisdictional Discovery of Rite Aid Corp., *In re Nat'l Prescription Opiate Litig.,* No. 1:17-md-2804 (N.D. Ohio Feb. 24, 2020); *Theunissen*, 935 F.2d at 1459; *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) (unpublished; remanding to district court for jurisdictional discovery or evidentiary hearing); *Brewer v. All.Coal, LLC*, No. CV 20-41-DLB-EBA, 2021 WL 3057380, at *2 (E.D. Ky. July 20, 2021) (courts should allow jurisdictional discovery unless the plaintiff's claim is clearly frivolous); *C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co*., No. 1:11–CV–0375, 2011 WL 13131001, at *2 (N.D.Ohio. May 10, 2011) (limited jurisdictional discovery should be allowed when evidence relevant to jurisdiction is unclear); *Gundaker/Jordan Am. Holdings, Inc. v. Clark,* No. 04–226–JBC, 2008 WL 4585462, at *2 (E.D. Ky. Oct. 13, 2008) ("Courts do not distinguish between facial and factual challenges in personal jurisdiction disputes.").

There is ample basis to expect that discovery would further demonstrate the Moving Defendants' connections to New York. OptumInsight is registered to do business in New York, Amended Complaint at ¶ 154, it holds an active Third Party Administrator and Independent Adjuster license with the New York Department of Finance, *id.* at ¶ 155, and has a physical office in Buffalo, New York. Exhibit 4 at *6. The complaint alleges the Moving Defendants' collusion in a nationwide campaign "to reshape the pain treatment market" by deceiving patients, prescribers, and payors about opioids' safety and effectiveness. Amended Complaint at. ¶ 30. The Moving Defendants sought to impact and profit from this scheme in New York, along with other states. As alleged, "OptumInsight partnered with various opioid manufacturers to create studies, marketing, educational programs, and even identifying algorithms to simultaneously downplaying opioids' addictive properties and expand its use and availability throughout the country, including in New York. *Id.* at ¶ 159. Indeed, Jurisdictional discovery could be expected to show, for example, educational programs or marketing held in or distributed to the forum states.

In CT12, Rochester served jurisdictional discovery on the Moving Defendants. The responses to this discovery consisted entirely of objections.[13] Moreover, while merits discovery has been proceeding, the Moving Defendants have not produced documents responsive to

---

[13] The response to each request propounds objections and states:

> Subject to and without waiving any objections, the Moving Defendants decline to answer this interrogatory [decline to produce documents]. The Moving Defendants are, however, willing to meet and confer to discuss their objections and to understand (1) why Plaintiffs believe this Request seeks information that is relevant to the Moving Defendants' personal jurisdiction challenge and (2) why Plaintiffs do not believe this request constitutes improper merits discovery.

*See* Exhibits 5, 6.

Plaintiffs' jurisdictional discovery requests (or, if they have done so through merits discovery, they have not told Plaintiffs about such documents or where to find them).  Because both Rochester and Ogdensburg are in New York, any jurisdictional discovery in this case would be the same as the discovery in CT12.  Moreover, the Rule 30(b)(6) deposition of the Moving Defendants, which was first noticed on September 6, 2024 (Exhibit 7), was delayed by meet and confers over Defendants' objections (Exhibit 8), was originally set for April 17, 2025, but now rescheduled at the witness's request. It is now rescheduled for August 27, 2025.

Plaintiff proposes that the Court first resolve the question of personal jurisdiction over the Moving Defendants based on RICO section 1965(b), and then, if it is necessary, permit the parties to conclude the jurisdictional discovery Plaintiff has attempted to begin.  Plaintiff believes that this discovery would be most efficiently conducted alongside merits discovery.  Thereafter, the parties could choose to file supplemental briefs on the same schedule as the Court has set for dispositive motions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this court deny the Moving Defendants motion to dismiss in its entirety.

Dated: May 30, 2025                             Respectfully submitted,

                                                Jayne Conroy
                                                SIMMONS HANLY CONROY
                                                112 Madison Avenue, 7th Floor
                                                New York, NY 10016
                                                (212) 784-6400
                                                jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and may be obtained by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger