# EXHIBIT 8

## TO

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS'
MOTIONS TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

# ALSTON & BIRD

Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
704-444-1000 | Fax: 704-444-1111

Brian D. Boone                    Direct Dial: **+1 704 444 1106**                    Email: **brian.boone@alston.com**

December 21, 2024

**By Email**

Counsel for the City of Rochester

Re:     *In re: National Prescription Opiate Litigation*, 1:17-md-2804 (N.D. Ohio) (Track 12):
Plaintiffs' Notice of Deposition Regarding Optum Defendants' Projects
Related to Purdue Pharma Pursuant to Rule 30(b)(6) and Document Request
Pursuant to Rule 30(b)(2) and Rule 34 to Defendants.

Dear Counsel for the City of Rochester:

I write on behalf of OptumInsight, Inc. (OptumInsight) and OptumInsight Life
Sciences, Inc. (OptumInsight Life Sciences) to memorialize their objections under
Federal Rule of Civil Procedure 30 to Plaintiffs' September 6, 2024 Notice of
Deposition Regarding Optum Defendants' Projects Related to Purdue Pharma
Pursuant to Rule 30(b)(6) (the "Notice"). You should not interpret anything in this
letter as a waiver of any of OptumInsight's or OptumInsight Life Sciences's objections
or legal rights.

OptumInsight and OptumInsight Life Sciences reserve all rights and objections to the
Notice, including their right to seek relief from the Court if necessary. OptumInsight
and OptumInsight Life Sciences reserve their right to amend, correct, or supplement
their responses and objections to the Notice.

Given that the Notice covers broad topics over a more than 23-year timeframe—many
of which are not identified by any contract date, name, or number, but instead by
"colloquial[]" nicknames, *see* Notice at 6—we ask that you provide any documents that
you intend to explore at the deposition at least ten business days before the deposition.
Any documents that you do not provide beforehand will be outside the Notice's scope.

Any offer to meet and confer about a Topic is not an agreement to provide testimony
about the Topic. OptumInsight's and OptumInsight Life Sciences's responses and
objections to the Notice do not constitute an admission of relevancy, materiality, or

admissibility in evidence of the topics set forth in the Notice. OptumInsight and OptumInsight Life Sciences reserve the right to object on any grounds, at any time, to specific questions posed at any deposition.

OptumInsight and OptumInsight Life Sciences are responding to the Notice subject to the parties' agreement that participation in discovery does not waive any jurisdictional or other defenses in any opioid litigation in this MDL, *see* ECF No. 5364 at 2, and subject to their motion to dismiss for lack of personal jurisdiction, which remains pending.

The summary below is not meant to capture every objection to the Notice, but it captures many of them.

We reserve the right to lodge additional objections after meeting and conferring with you.

## GLOBAL OBJECTIONS

The following global objections apply to the Notice in its entirety, including the "Definitions," "Relevant Time Period," the "Matters for Testimony" set forth in Schedule A of the Notice, every sub-part within Topic 1 of Schedule A, and the Requests set forth in Schedule B of the Notice.

1.  OptumInsight and OptumInsight Life Sciences object to the Notice as vague, ambiguous, and confusing because it is directed to "Optum Defendants" but seeks to take the deposition of a representative or representatives of "OptumInsight." We will construe the Notice as directed only to OptumInsight and OptumInsight Life Sciences.

2.  OptumInsight and OptumInsight Life Sciences object to the Notice inasmuch as it purports to impose obligations on them that are broader than, inconsistent with, or not otherwise authorized by, the Federal Rules of Civil Procedure, any other applicable rules or case law, or any prior ruling or instruction from the Court.

3.  OptumInsight and OptumInsight Life Sciences object to the Notice inasmuch as it seeks information that is not within their possession, custody, or control, or that OptumInsight and OptumInsight Life Sciences do not readily possess or maintain in the ordinary course of business. *See* Fed. R. Civ. P. 30(b)(6) (the designated witness "must testify about information known or reasonably available to the organization."); *see also Jenkins v. XpressSpa Grp., Inc.*, 2020 U.S. Dist. LEXIS 58724, at *8 (S.D.N.Y. Apr. 2, 2020) ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the

organization.") (quotations and citations omitted); *Wilmington Trust, N.A. v. Samcom 48 (DE) LLC*, 2022 U.S. Dist. LEXIS 232565, at \*14-15 (E.D.N.Y. Dec. 28, 2022) (striking topics where "neither the Court nor [the company] can adequately assess whether the information sought is within [the company]'s knowledge"). OptumInsight and OptumInsight Life Sciences do not agree to designate a witness on any topic for which their only information is through discovery in this litigation.

4. OptumInsight and OptumInsight Life Sciences object to the Notice inasmuch as it asks a corporate representative to testify about a large quantity of company records. *See Ross v. United States Capitol Police*, 2023 WL 4562924, at \*9 (D.D.C. Apr. 27, 2023) ("There is . . . 'a limit to the specificity of the information a [30(b)(6)] deponent can reasonably be expected to provide.' . . . Designees may be excused in particular from testifying in detail about a large number of their organization's records or transactions.") (internal citation omitted); *MD Auto Grp., LLC v. Nissan N. Am., Inc.*, 2023 WL 3251218, at \*5 (N.D. Ohio May 4, 2023) ("[A] 30(b)(6) deposition is not a memory contest.") (internal quotation marks omitted).

5. OptumInsight and OptumInsight Life Sciences object to the Notice as overbroad, unduly burdensome, and vague inasmuch as it uses expanders like "including," "related to," and "but not limited to." *See, e.g.*, *RM Dean Farms v. Helena Chem. Co.*, 2012 U.S. Dist. LEXIS 5830, at \*1-3 (D. Ark. Jan. 19, 2012) (rejecting 30(b)(6) notice where the topics "say that the testimony would include but not be limited to items listed" because such topics were "so open ended" and "so vague that compliance with the notice would be impossible"). We will ignore those expanders.

6. OptumInsight and OptumInsight Life Sciences further object to the Notice inasmuch as it seeks information that can be obtained through other means of discovery that are more convenient, less burdensome, or less expensive. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Furguson v. Metlife Invs. USA Ins. Co.*, 2024 WL 379907, at \*4 (E.D. Mich. Jan. 31, 2024) (finding Rule 30(b)(6) deposition "overly burdensome when a more efficient manner," written discovery, could be pursued); *Lear Corp. v. NHK Seating of Am. Inc.*, 2020 WL 5810053, at \*2 (E.D. Mich. Sept. 30, 2020) (denying request to compel deposition as "disproportionate to [Defendant]'s needs" and finding interrogatories are "well suited to provide the requested information").

7. OptumInsight and OptumInsight Life Sciences object to Definition No. 6 (the definitions of "You," "Your," "Optum Defendants," and "OptumInsight") inasmuch as they seek information from any entities other than OptumInsight, Inc. and OptumInsight Life Sciences, Inc. OptumInsight and OptumInsight Life Sciences also object that Definition No. 6 is overbroad in its reference to

"all predecessor and successor entities, subsidiaries and divisions." OptumInsight and OptumInsight Life Sciences further object to Definition No. 6 as overbroad and unduly burdensome inasmuch as it includes entities that did not perform any work for Purdue. Definition No. 6 is also vague and ambiguous in its inclusion of "Ingenix" and "Ingenix Medical Education" because Ingenix and Ingenix Medical Education are not, and were not, the names of any legal entity. OptumInsight and OptumInsight Life Sciences further object to Definition No. 6 as seeking information outside of OptumInsight's or OptumInsight Life Sciences's possession, custody, or control inasmuch as it seeks information from entities that were sold to external buyers (including i3 Research and i3 Canada, Inc.). OptumInsight and OptumInsight Life Sciences provide these responses and objections to the Notice only on behalf of themselves and any predecessor entities and business units that were subsumed within, or became, OptumInsight, Inc. and OptumInsight Life Sciences, Inc.

8. OptumInsight and OptumInsight Life Sciences object to Definition No. 7 as overly broad, unduly burdensome, disproportionate to the needs of this case, and encompassing information not relevant to any claim or defense in this case inasmuch as it seeks information from OptumInsight's or OptumInsight Life Sciences's "officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other persons or entities acting on [their] behalf or controlled by [them]." Rule 30(b)(6) does not require a company to prepare to testify on its corporate affiliates' behalf. As noted above, we will construe the Notice consistent with the objection to Definition No. 6 outlined above.

9. OptumInsight and OptumInsight Life Sciences object to the definitions of "Project" and "Projects" as facially overly broad, unduly burdensome, and disproportionate to the needs of the case because they include "*[a]ny* contract, agreement, proposal, inquiry, sales attempt, statement of work, and/or work" performed "for or on behalf of an opioid manufacturer." (emphasis added). Given the number of proposals, contracts, and other projects OptumInsight Life Sciences has worked on over the requested 23-year timeframe, it is not possible to prepare a witness to testify consistent with that definition. OptumInsight and OptumInsight Life Sciences further object to the definition of "Project" because the undefined terms "inquiry," "sales attempt," "marketing attempt," and "work" are vague and ambiguous. OptumInsight and OptumInsight Life Sciences also object to the definitions of "Project" and "Projects" as overbroad, unduly burdensome, and seeking information that is not relevant to the claims or defenses in the litigation inasmuch as they require OptumInsight and OptumInsight Life Sciences to designate a witness to testify concerning communications or proposals that never resulted in programs or studies that were ultimately implemented by OptumInsight or OptumInsight Life Sciences. OptumInsight and OptumInsight Life Sciences also object to the

definition of "Project" inasmuch as it implies that they worked on any project involving the "sale of any data" to opioid manufacturers because, as OptumInsight Life Sciences has already informed Plaintiffs, OptumInsight Life Sciences did not sell data to opioid manufacturers (it only licensed data). OptumInsight and OptumInsight Life Sciences also object to the definitions of "Project" and "Projects" as vague, ambiguous, and confusing because the Notice provides two different definitions for those terms. *Compare* Notice at 3 (defining "Project"), *with* Notice at 6 (defining "Projects").

10. OptumInsight and OptumInsight Life Sciences object to the Notice inasmuch as it seeks information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or doctrine, or that is subject to confidentiality obligations owed to third parties.

11. OptumInsight and OptumInsight Life Sciences object to the Notice inasmuch as Plaintiffs seek to take more than 14 hours of deposition testimony from OptumRx, Inc. and its affiliates (including OptumInsight and OptumInsight Life Sciences). Under the case management order entered on December 28, 2023 (ECF 5282), Plaintiffs are limited to taking up to 14 hours total of 30(b)(6) witness deposition testimony from a defendant family.

12. OptumInsight and OptumInsight Life Sciences object to any 30(b)(6) deposition as premature because the parties have not yet met and conferred about the "matters for examination," as required by Rule 30(b)(6).

## SPECIFIC OBJECTIONS AND RESPONSES TO SCHEDULE A

Subject to and without waiving the foregoing global objections, which are specifically incorporated as if set forth fully verbatim in each of the following responses, OptumInsight and OptumInsight Life Sciences respond as follows:

1. **All contracts or agreements and all Projects (as defined above) and contracts or agreements for Projects including, but not limited to, Projects formally identified and/or colloquially identified as follows:**

   OptumInsight and OptumInsight Life Sciences object to this Topic as facially overbroad, unduly burdensome, disproportionate to the litigation's needs, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because it seeks testimony about "*[a]ll* contracts or agreements" without specifying what aspects of those contracts Plaintiffs seek information about. *See* 7 Moore's Federal Practice – Civil § 30.25, at [2] ("When the responding party cannot identify the outer limits of the area of inquiry noticed, compliant designation is not feasible."). The Topic in the Notice is so broad that it would be impossible to prepare a corporate witness to testify about it.

   OptumInsight and OptumInsight Life Sciences also object to this Topic as facially overbroad, unduly burdensome, and vague because it uses the expander "including, but not limited to." *See, e.g.*, *RM Dean Farms*, 2012 U.S. Dist. LEXIS 5830, at *1-3.

   OptumInsight and OptumInsight Life Sciences also object to this Topic as seeking information that is not relevant to any claims or defenses in this case or is not proportional to the needs of the case inasmuch as it seeks contracts or agreements that are not related to work performed by an opioid manufacturer. *See Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (Federal Rule of Civil Procedure 26 "permits discovery only of information 'relevant to any party's claim or defense and proportional to the needs of the case.'") (quoting Fed. R. Civ. P. 26(b)(1)).

   OptumInsight and OptumInsight Life Sciences specifically incorporate their objections above to the overbroad definition of "Projects."

   OptumInsight and OptumInsight Life Sciences further object to this Topic because the terms "formally identified" and "colloquially identified" are vague, ambiguous, and confusing.

**(a) Hydrocodone or "HCD" Clinical.**

OptumInsight and OptumInsight Life Sciences object to sub-part (a) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "Hydrocodone" or "'HCD' Clinical" are generic terms.

OptumInsight and OptumInsight Life Sciences further object to sub-part (a) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 23 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (a) of Topic 1 because the applicable business – Ingenix Pharmaceuticals, Inc.'s "i3 Research" group – was sold to a third party before Ingenix, Inc.'s rebranding as OptumInsight, Inc.

OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on Topic 1.

**(b) Profiling the Oxycontin Patient: OXY 5015**

OptumInsight and OptumInsight Life Sciences object to sub-part (b) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties (*see e.g.*, PKY181047060; PLPC012000048260; PPLPC028000061894) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (b) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 23 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (b) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(c) Identification of Non-malignant Uncontrolled Chronic Pain Sufferers Using Elements of Claims Data: A Multi-state Approach**

OptumInsight and OptumInsight Life Sciences object to sub-part (c) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC031000051158) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (c) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 23 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (c) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic. OptumInsight and OptumInsight Life Sciences further state that, based on the documents produced by other parties in this litigation, it appears that Purdue partnered with another vendor (Protocare), and not OptumInsight or OptumInsight Life Sciences, on this project. *See, e.g.*, PPLPC029000021011; PPLPC009000025754.

**(d) LOW BACK PAIN - Pain Management**

OptumInsight and OptumInsight Life Sciences object to sub-part (d) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "Low Back Pain" and "Pain Management" are generic terms.

OptumInsight and OptumInsight Life Sciences object to sub-part (d) of Topic 1 insofar as it appears to seek testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC035000016921; PPLPC035000016919) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (d) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 21 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (d) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation, because the relevant entity– Ingenix Pharmaceuticals, Inc. – was sold to a third party before Ingenix, Inc.'s rebranding to OptumInsight, Inc.

OptumInsight and OptumInsight Life Sciences also object to sub-part (d) of Topic 1 inasmuch as it is duplicative of sub-part (h) of Topic 1.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (d) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

### (e) "UnitedHealthcare--Managing Chronic Pain Associated with Lower Back Pain"

OptumInsight and OptumInsight Life Sciences object to sub-part (e) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.,* PPLPC029000086377) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins,* 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences object to sub-part (e) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (e) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 20 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their

9

investigation to date, OptumInsight and OptumInsight Life Sciences have not identified any information within their possession, custody, or control regarding sub-part (e) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(f) "UnitedHealthcare Chronic Pain Ed"**

OptumInsight and OptumInsight Life Sciences object to sub-part (f) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC028000086548) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences object to sub-part (f) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (f) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 21 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (f) of Topic 1 inasmuch as it is duplicative of sub-part (h) of Topic 1.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (f) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(g) Identifying and Educating Physicians Treating Patients With Sub-Optimally Treated Chronic Pain**

OptumInsight and OptumInsight Life Sciences object to sub-part (g) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC021000038719; PPLPC035000022617) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS

58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (g) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 20 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (g) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation, because the applicable business – Ingenix Pharmaceuticals, Inc. – was sold to a third party before Ingenix, Inc.'s rebranding to OptumInsight, Inc.

OptumInsight and OptumInsight Life Sciences also object to sub-part (g) of Topic 1 inasmuch as it is duplicative of sub-part (h) of Topic 1.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (g) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: (i) "Communicating to Enhance Collaboration and Outcomes"**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(i) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," and "CME programs" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(i) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(i) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 18 years ago.

11

OptumInsight and OptumInsight Life Sciences also object to sub-part h(i) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation against OptumInsight and OptumInsight Life Sciences, inasmuch as the relevant program was conducted, or intended to be conducted, by OptumHealth, not OptumInsight or OptumInsight Life Sciences.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (h)(i) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: . . . (ii) "United Behavioral Health Chronic Pain and Addiction Teleconference series"**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(ii) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," and "CME programs" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(ii) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.,* PPLPC035000015628) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins,* 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(ii) of Topic 1 inasmuch as it is duplicative of sub-part (h)(v).

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(ii) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

12

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(ii) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 18 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (h)(ii) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: . . . (iii) "United Behavioral Health Chronic Pain and Addiction CME Website"**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iii) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," and "CME programs" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iii) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.,* PPLPC035000015628) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(iii) of Topic 1 inasmuch as it is duplicative of sub-part (h)(v).

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iii) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(iii) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 18 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (h)(iii) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: . . . (iv) "United Behavioral Health Chronic Pain and Addiction Monograph"**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iv) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," and "CME programs" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iv) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties (*see, e.g.*, PPLPC035000015628) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(iv) of Topic 1 inasmuch as it is duplicative of sub-part (h)(v).

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(iv) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(iv) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 18 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (h)(iv) of Topic 1. OptumInsight and OptumInsight Life

14

Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: . . . (v) "Chronic Pain Management" proposal and accompanying programs; "Low Back Pain Management" proposal and accompanying programs; "Low Back Pain" Educational campaign that included both CME teleconferences for physicians, live dinner meetings, half day seminars, a CME website and trainings**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(v) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," "CME programs," "CME teleconferences for physicians," "live dinner meetings," "half day seminars," "a CME website," and "trainings" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(v) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.,* PPLPC035000015626; PPLPC035000016921; PPLPC012000059687; PPLPC028000083254; PPLPC028000086548; PPLPC028000086009) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(v) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 20 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (h)(v) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation, because applicable business – Ingenix Pharmaceuticals, Inc. – was sold to a third party before Ingenix, Inc.'s rebranding as OptumInsight, Inc.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control

regarding sub-part (h)(v) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic. OptumInsight and OptumInsight Life Sciences further state that, based on the documents produced by other parties in this litigation, it appears that the project titled "Chronic Pain Management" never moved beyond the proposal phase. *See, e.g.*, PPLPC028000083254; PPLPC028000086548; PPLPC028000086009.

**(h) Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including: . . . (vi) "Low Back Pain" HECON study; "Chronic Pain Newsletter and Dinner Meetings" proposal by Ingenix to Purdue.**

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(vi) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the terms "chronic pain," "chronic pain programming," "monographs," "CME programs," "Low Back Pain," "HECON study," and "Chronic Pain Newsletter and Dinner Meetings" are vague and ambiguous.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(vi) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

OptumInsight and OptumInsight Life Sciences object to sub-part (h)(vi) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC028000083863; PPLPC028000083984) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(vi) of Topic 1 inasmuch as it is duplicative of sub-part (h)(v).

OptumInsight and OptumInsight Life Sciences further object to sub-part (h)(vi) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 20 years ago.

OptumInsight and OptumInsight Life Sciences also object to sub-part (h)(vi) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation, because applicable business

– Ingenix Pharmaceuticals, Inc. – was sold to a third party before Ingenix, Inc.'s rebranding as OptumInsight, Inc.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (h)(vi) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(i)       Disease Management Programs**

OptumInsight and OptumInsight Life Sciences object to sub-part (i) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the term "disease management programs" is a generic term.

OptumInsight and OptumInsight Life Sciences object to sub-part (i) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties (*see, e.g.*, PPLPC029000021291; PPLPC026000022149) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g.*, *Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences further object to sub-part (i) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 20 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (i) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(j) "Utilization Characteristics of Long Acting Opioids"**

OptumInsight and OptumInsight Life Sciences object to sub-part (j) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

17

OptumInsight and OptumInsight Life Sciences further object to sub-part (j) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 19 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (j) of Topic 1 beyond the information contained in one document that it has already produced in discovery in this litigation. OPTUMINSIGHT_MDL_000059634. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

### (k) "Utilization Characteristics of Long- and Short- Acting Opioids"

OptumInsight and OptumInsight Life Sciences object to sub-part (k) of Topic 1 inasmuch as it is duplicative of sub-part (j).

OptumInsight and OptumInsight Life Sciences object to sub-part (k) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (j).

### (l) Innovus "OXY4003" Study

OptumInsight and OptumInsight Life Sciences object to sub-part (l) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (l) as overbroad, unduly burdensome, and disproportionate to the needs of the case inasmuch as it seeks documents from over 18 years ago.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (l) of Topic 1 beyond the information contained in one

document that it has already produced in discovery in this litigation. OPTUMINSIGHT_MDL_000059634. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(m) A Usual Care, Multicenter, Open-label, Randomized, 4-month Parallel Group Trial To Compare the Impact of Therapy With OxyContin (Controlled Release Oxycodone) vs. Usual Care (Percocet) on Health Outcomes and Resource Utilization in Subjects with Moderate to Severe Osteoarthritis Pain of the Hip or Knee**

OptumInsight and OptumInsight Life Sciences object to sub-part (m) of Topic 1 inasmuch as it is duplicative of sub-part (l).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (l).

**(n) Opioid Class REMS Study (PUR0071)**

OptumInsight and OptumInsight Life Sciences object to sub-part (n) of Topic 1 because the undefined term "REMS Study" is vague and ambiguous.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (n) of Topic 1 beyond the information contained in the document that it has already produced in discovery in this litigation. OPTUMINSIGHT_MDL_000064896. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(o) Epidemiology using a claims database to assess the impact of reformulated OxyContin on patient safety (Statement of Work #1 dated April 20, 2010) and/or "Opioid Respiratory Depression Study" "PUR0067"**

OptumInsight and OptumInsight Life Sciences object to sub-part (o) of Topic 1 as vague, ambiguous, and as failing to "describe with reasonable particularity

the matters for examination" because it uses the expander "and/or" and inasmuch as it seeks information about more than one project. Fed. R. Civ. P. 30(b)(6).

OptumInsight and OptumInsight Life Sciences also object to sub-part (o) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (o) of Topic 1 inasmuch as it is duplicative of sub-part (p), (q), (r), (t), (z), and (cc).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

### (p) "Opioid Respiratory Depression Study- WO #2 (PUR0067) (Parent Incident #1708994/ Contract #61811/ Project #95305)"

OptumInsight and OptumInsight Life Sciences object to sub-part (p) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences object to sub-part (p) of Topic 1 inasmuch as it is duplicative of sub-parts (o) and (q).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that they agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

### (q) "Creation of a Claims-based Algorithm to Identify Respiratory Depression"; Statistical support of ISS/ISE- "BUP225-ISEINGX020"

OptumInsight and OptumInsight Life Sciences object to sub-part (q) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences object to sub-part (q) of Topic 1 inasmuch as it appears to be duplicative of sub-parts (o) and (p).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that they agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(r) "Oxycontin Dispensing Characteristics" "040623 PUR0072-95329 (epi)"**

OptumInsight and OptumInsight Life Sciences object to sub-part (r) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (r) of Topic 1 inasmuch as it is duplicative of sub-parts (o), (p), (q), (t), (z), and (cc).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(s) "QualityMetric- SOW4- PainPRO Analysis (Aaron Yarlas) O83505. 96151"**

OptumInsight and OptumInsight Life Sciences object to sub-part (s) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(t) "Oxy Risk Program (OPUR0069)"**

OptumInsight and OptumInsight Life Sciences object to sub-part (t) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences object to sub-part (t) of Topic 1 as vague, ambiguous, and failing to "describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), because the phrase "Oxy Risk Program" could be used to identify any number of projects.

OptumInsight and OptumInsight Life Sciences further object to sub-part (t) of Topic 1 inasmuch as it is duplicative of sub-parts (o), (p), (q), (r), (z), and (cc).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(u) "MW RFI (PUR0061)"**

OptumInsight and OptumInsight Life Sciences object to sub-part (u) of Topic 1 as vague and ambiguous because it appears to be quoting a document but does not identify the source of the quoted language.

OptumInsight and OptumInsight Life Sciences further object to sub-part (u) of Topic 1 because the undefined term "MW RFI" is vague and ambiguous.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, OptumInsight and OptumInsight Life Sciences have not identified any information within their possession, custody, or control regarding sub-part (u) of Topic 1 beyond the information contained in document that it has already produced in discovery in this litigation. OPTUMINSIGHT_MDL_000064896. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(v) Zolpidem 8 Hour Dosing Study (PUR0068)**

Subject to and without waiving the global objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (v) of Topic 1 beyond the information contained in documents that it has already produced in discovery in this litigation. *See* OPTUMINSIGHT_MDL_000064896. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(w) RFI (PUR0064)**

OptumInsight and OptumInsight Life Sciences object to sub-part (w) of Topic 1 because the undefined term "RFI" is vague and ambiguous.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (w) of Topic 1, beyond the information contained in

documents that it has already produced in discovery in this litigation. *See* OPTUMINSIGHT_MDL_000064896. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(x) Integrated Summary of Safety (ISS) Medical Writing Project**

OptumInsight and OptumInsight Life Sciences object to sub-part (x) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.,* PPLPC001000009795; PPLPC001000012212; PPLPC001000010134) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences also object to sub-part (x) of Topic 1 as seeking information that is outside of OptumInsight's and OptumInsight Life Sciences's possession, custody, or control, and that is not relevant to the claims or defenses in the litigation, because the applicable business – Ingenix Pharmaceuticals, Inc.'s "i3 Statprobe" division – was sold to a third party before Ingenix, Inc.'s rebranding as OptumInsight, Inc.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor and OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (x) of Topic 1. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic. OptumInsight and OptumInsight Life Sciences further state that, based on the documents produced by other parties in this litigation, it appears that Purdue awarded this project to another vendor, not OptumInsight or OptumInsight Life Sciences. *See, e.g.,* PPLPC007000001764; PPLPC018000191619.

**(y) A scientific exchange to provide input on clinical data analysis leading to opportunities in market acceptance, market access and reimbursement issues for Butrans (Statement of Work #2 dated August 5, 2010)**

Subject to and without waiving the Global objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(z) Claims database study to:**

**i. Assess changes in the prescribing of OxyContin to patients with comorbidities contraindicated in contraindications section of the label and prescribing of high-dose formulations to opioid-naïve patients;**

**ii. Determine before and after implementation of the REMS what proportion of patients are prescribed the 60 mg and 80 mg dosage forms of OxyContin and have:**

**1. Had no prior opioid prescription recorded in the claims database (opioid-naïve); and**

**2. Had a prior prescription for opioid analgesics that ended shortly before the prescription of the 60 or 80 mg dose of OxyContin (opioid-tolerant);**

**iii. Count the number of unique individuals prescribed OxyContin, the number of prescriptions of OxyContin by dosage form (10 mg to 80 mg), and the average duration of prescriptions for OxyContin in three-month periods before and after implementation of the REMS in a claims database. (Statement of Work #3 dated January 20, 2011. Also labeled with heading of Statement of Work #4);**

OptumInsight and OptumInsight Life Sciences object to sub-part (z) of Topic 1 inasmuch as it is duplicative of sub-parts (o), (p), (q), (r), (t), (z), and (cc).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(aa) Statement of Work #5 effective September 13, 2011 between Purdue Pharma L.P. and QualityMetric Incorporated**

OptumInsight and OptumInsight Life Sciences object to sub-part (aa) of Topic 1 inasmuch as it is duplicative of sub-part (s).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(bb) Statement of Work #6 effective September 20, 2011 between Purdue Pharma L.P. and Quality Metric Incorporated;**

OptumInsight and OptumInsight Life Sciences object to sub-part (bb) of Topic 1 inasmuch as it is duplicative of sub-parts (s) and (aa).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(cc) Overdose Rates in Patients Taking OxyContin**

OptumInsight and OptumInsight Life Sciences object to sub-part (cc) of Topic 1 inasmuch as it is duplicative of sub-part (r).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(dd) Incidence and Predictors of Opioid Overdose and Death among ER/LA Opioid Analgesics Users as Measured by Diagnoses and Death Records**

Subject to and without waiving the Global objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(ee) Payor Strategies for the Pain and Sleep Disturbance Therapeutic Areas; (i) "Partnership for Health Economics Outcomes Research" Proposal for Purdue Pharma by OptumInsight (OptumInsight Proposal Number 099135) including but not limited to; "OxyContin Aspirational Value Proposition"; (ii) "Evidence Generation Plain for OxyContin"; (iii) Oxycontin Event Mapping; (ee) Payor Strategies for the Pain and Sleep Disturbance Therapeutic Areas; (iv) Semi-Structured Payer Interview Project, including but not lmited [*sic*] to Interview Guide for OxyContin and Presentation of Payer Interview Results; OxyContin Product Information Review; (ee) Payor Strategies for the Pain and Sleep Disturbance Therapeutic Areas; (v) Butrans Database Study and Publications (ee) Payor Strategies for the Pain and Sleep Disturbance Therapeutic Areas; (vi) Butrans and HYD Technical Expert Panel; (vii) Butrans Event Map, Value Proposition, and Evidence Generation Plan; (viii) Oxycontin Database Study and Publications; (ix) OxyContin and Targin Technical Expert Panel; (x) Oxycontin Event Map, Value Proposition, and Evidence Generation Plan; (xi) Targin Rapid Payer**

**Insights for Protocol Development; (xii) Targin Value Proposition and Evidence Generation Plan**

OptumInsight and OptumInsight Life Sciences object to sub-part (ee) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(ff) Ingenix Pharmaceutical Services Master Services Agreement dated December 29, 2003**

OptumInsight and OptumInsight Life Sciences object to sub-part (ff) of Topic 1 inasmuch as it is duplicative of sub-part (g).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (g).

**(gg) Master Consultant Services Agreement dated April 20, 2010**

OptumInsight and OptumInsight Life Sciences object to sub-part (gg) of Topic 1 inasmuch as it is duplicative of sub-part (r).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (r).

**(hh) Amended and Restated Master Consultant Services Agreement between Purdue Pharma L.P. and QualityMetric Incorporated dated March 30, 2011**

Subject to and without waiving the global objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information within their possession, custody, or control regarding sub-part (hh) of Topic 1 beyond the information contained in one document that it has already produced in discovery in this litigation. OPTUMINSIGHT_MDL_000574186. OptumInsight and OptumInsight Life Sciences do not have information that would allow them to provide testimony that goes beyond the information contained in that lone document.

OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

**(ii) Amendedment [*sic*] #1 to Amended and Restated Mster [*sic*] Conslutant [*sic*] Services Agreement Dated March 30, 2011 between Purdue Pharma, L.P. and Qualitymetric, Inc., and related Statements of Work dated February 27, 2012**

OptumInsight and OptumInsight Life Sciences object to sub-part (ii) of Topic 1 as vague, ambiguous, and failing to describe with reasonable particularity the matters for examination," as required by Rule 30(b)(6), inasmuch as it refers to multiple projects.

OptumInsight and OptumInsight Life Sciences object to sub-part (ii) of Topic inasmuch as it is duplicative of sub-parts (r).

Subject to and without waiving the foregoing and global objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(jj) Services to assist Purdue to understand patient disenrollment from Medicare Advantage Part D (MAPD) and Medicare Prescription drug plans (PDPs) that discontinued coverage of extended-release oxycodone (OXY-ER) in 2013**

Subject to and without waiving the global objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(kk) "Hope Butrans in Fibromylagia Patients" Statement of Work effective July 14, 2013 between Purdue Pharma L.P. and OptumInsight Life Sciences, Inc.**

OptumInsight and OptumInsight Life Sciences object to sub-part (kk) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

**(ll) November 8, 2016 Statement of Work under "Amended And Restated Master Consultancy Services Agreement" between Purdue Pharma L.P. and OptumInsight Life Sciences, Inc., (f/k/a/ QualityMetric Inrocporated)**

OptumInsight and OptumInsight Life Sciences object to sub-part (ll) of Topic 1 inasmuch as it is duplicative of sub-part (jj).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (jj).

### (mm) "Pain Clinical SmartFile" Proposal

OptumInsight and OptumInsight Life Sciences object to sub-part (mm) of Topic 1 insofar as it seeks testimony about subject matters revealed only through documents produced by other parties *(see, e.g.*, PPLPC018001097992) but not available within OptumInsight's or OptumInsight Life Sciences's files. *See, e.g., Jenkins*, 2020 U.S. Dist. LEXIS 58724, at *8 ("If the corporation does not possess knowledge of the topics in the Rule 30(b)(6) deposition notice, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.").

OptumInsight and OptumInsight Life Sciences object to sub-part (mm) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information regarding sub-part (mm) of Topic 1 within their possession, custody, or control. OptumInsight and OptumInsight Life Sciences therefore have no obligation to (and cannot) provide a witness to testify on this Topic.

### (nn)  Optum EMR database and "Purdue Opioid Abuse" proposal

OptumInsight and OptumInsight Life Sciences object to sub-part (nn) of Topic 1 because the undefined term "EMR database" is vague and confusing.

OptumInsight and OptumInsight Life Sciences object to sub-part (nn) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

OptumInsight and OptumInsight Life Sciences object to sub-part (nn) of Topic 1 inasmuch as it is duplicative of sub-part (mm).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and

objections to this sub-part are the same as their responses and objections to sub-part (mm).

### (oo)  Optum Proposal to Purdue for Oxycontin "PASS Study" of the "fatal and non-fatal overdose in a commercially insured population"

OptumInsight and OptumInsight Life Sciences object to sub-part (oo) of Topic 1 as vague and ambiguous because it appears to be quoting a document or documents but does not identify the source(s) of the quoted language.

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

### (pp)  "Evidence Generation Plan for ONU," a combination of oxycodone and naloxone

OptumInsight and OptumInsight Life Sciences object to sub-part (pp) of Topic 1 inasmuch as it is duplicative of sub-part (ee).

Subject to and without waiving the global and specific objections, OptumInsight and OptumInsight Life Sciences state that their responses and objections to this sub-part are the same as their responses and objections to sub-part (ee).

### (qq)  OptumInsight Clinformatics Datamart proposal to Purdue (OI63055).

Subject to and without waiving the global objections, OptumInsight and OptumInsight Life Sciences agree to meet and confer with Plaintiffs concerning this sub-part of Topic 1.

### SPECIFIC OBJECTIONS AND RESPONSES TO SCHEDULE B

Subject to and without waiving the global objections, which are specifically incorporated as if set forth fully verbatim in each of the following responses, Optum Insight responds as follows to the Requests in Schedule B:

**1. All Documents which deponent(s) consulted, reviewed or plans to consult to prepare in preparation for his/her/their deposition has relied upon or will reply upon for testimony on the above deposition topics, including but not limited to any notes made during interviews with persons knowledgeable regarding above-outlined topics.**

OptumInsight and OptumInsight Life Sciences object to this Request as facially overbroad, unduly burdensome, and failing to "describe with reasonable particularity

the matters for examination," as required by Rule 30(b)(6), inasmuch as it seeks "[*a*]*ll* documents which deponent(s) consulted, reviewed, or plans to consult". *See Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 124 (E.D. Mich. 2019) ("Plaintiff's request for the deponent to bring 'any and all documents' reviewed in preparation of the deposition fails the reasonable particularity requirement.").

OptumInsight and OptumInsight Life Sciences further object to this Request inasmuch as it seeks documents that are protected from disclosure by the work-product protection or attorney-client privilege.

Subject to and without waiving the global and specific objections, it will produce any non-privileged documents that any representatives relies on in providing testimony on the designated topics, assuming that those documents have not already been produced in the litigation.

**2. Current curriculum vitae or resume of the deponent(s).**

OptumInsight and OptumInsight Life Sciences object to this Request because the current curriculum vitae(s) or resume(s) of any deponent(s) is not relevant to the claims or defenses in the litigation. OptumInsight and OptumInsight Life Sciences therefore do not agree to this Request.

**3. Personnel file of the deponent(s).**

OptumInsight and OptumInsight Life Sciences object to this Request because the personnel file(s) of any deponent(s) is not relevant to the claims or defenses in the litigation. OptumInsight and OptumInsight Life Sciences therefore do not agree to this Request.

*　　*　　*

OptumInsight and OptumInsight Life Sciences are willing to meet and confer about the Notice and their objections. But if the Notice remains unchanged, they will seek a protective order.

Sincerely,

Brian D. Boone

**MotleyRice** LLC
ATTORNEYS AT LAW

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

**Michael Elsner**
*Licensed in NY, VA, SC*
direct: 843.216.9250
melsner@motleyrice.com

January 24, 2025

<u>*Via Electronic Mail*</u>
optum.opioid.team@alston.com

Re:  *In re: National Prescription Opiate Litigation,* **1:17-md-2804 (N.D. Ohio)**
**Optum Objections to 30(b)(6) Projects Related to Purdue Pharma**

Counsel,

This letter relates to OptumInsight and OptumInsight Life Sciences' untimely objections to Plaintiff's Notice of Deposition Regarding Optum Defendants' Projects Related to Purdue Pharma Pursuant to Rule 30(b)(6) and Document Requests Pursuant to Rule 30(b)(2) and Rule 34. Plaintiff's 30(b)(6) notice was served on September 6th and Defendants waited until December 21st to file their objections.  Plaintiffs reserve their right to raise additional deficiencies as they are identified.

A.  <u>Global Objections</u>

OptumInsight and OptumInsight Life Sciences object to the Notice as vague, ambiguous, and confusing because it is directed to "Optum Defendants."  There is no ambiguity. OptumInsight and OptumInsight Life Sciences and the other original Optum Defendants agreed to participate in discovery on behalf of related corporate entities that the PEC agreed to dismiss from the case. This includes depositions.

Furthermore, your objection that the Notice asks a corporate representative to testify about a large quantity of company records is also not supported by the federal rules.  These are complex companies, and it is not surprising that the volume of company records is robust. There is no exception to 30(b)(6) for large enterprises, and the Topics clearly identify the issues to be covered, allowing you to prepare a witness or witnesses.  That a deponent may not know the answer to every question before conducting an investigation does not allow you to avoid your obligation to produce a witness.  The very purpose of rule 30(b)(6) is to streamline discovery in situations where it may require multiple witnesses to provide testimony on behalf of a corporation or party as to a large group of documents and subject matters. *See e.g., Risinger v. SOC, LLC*, 306 F.R.D. 655, 662 (D. Nev. 2015) ("The purpose of a Rule 30(b)(6) deposition is to streamline the discovery process.");

January 24, 2025
Re Optum Objections to 30(b)(6) Projects Related to Purdue Pharma
Page 2

*McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C. 1999) ("Rule 30(b)(6) is intended to streamline the discovery process.").

The most troubling objection is your refusal to prepare a witness to cover Optum projects carried out with Purdue where the source of that information is a document produced by Purdue. Simply because Optum did not retain a copy of a project proposal does not excuse Optum from its obligation to investigate and prepare a witness to testify about the project on behalf of the corporate entity. Furthermore, you confusingly cite to *Jenkins v. XpresSpa Grp., Inc.*, 2020 U.S. Dist. LEXIS 58724, at *8 (S.D.N.Y. Apr. 2, 2020) for the proposition that you have no obligation under Rule 30(b)(6); however, the passage you cite makes clear that you have an obligation for information that is *readily available* to you. All of these studies are readily available to OptumInsight and OptumInsight Life Sciences. In fact, we have provided you copies of those materials. Similarly, *Wilmington Trust, N.A. v. Samcom 48 (DE) LLC*, 2022 U.S. Dist. LEXIS 232565, at *14-15 (E.D.N.Y. Dec. 28, 2022) does not apply. In that case, the Court struck the topics due to a lack of basic definitions and specificity in the notice. *Id.* In contrast, Plaintiff's notice here makes clear what studies are the subject of examination and what the witness should be prepared to discuss. Plaintiff is entitled to examine a corporate representative as to all projects which fairly fall within the requested topics regardless of whether Optum retained copies of such agreements.

OptumInsight and OptumInsight Life Sciences also object to the Notice inasmuch as it seeks information about their corporate parents, affiliates, or subsidiaries. For the reason set forth above, Plaintiffs expect the witness to be prepared to answer questions regarding the named Defendants in the original and amended complaints as well as their predecessor entities. These are employees of these companies, some of whom are custodians, that were employed during the times in which these projects were proposed and/or performed.

In addition, you state that the definition "Project" and "Projects" is facially overly broad, unduly burdensome, and disproportionate to the needs of the case because it includes "[a]ny contract, agreement, proposal, inquiry, sales attempt, statement of work, and/or work" performed "for or on behalf of an opioid manufacturer." You also object to the terms "inquiry," "sales attempt," "marketing attempt," and "work" as vague and ambiguous. Plaintiffs' definition is not limitless and specifically applies to your interactions with opioid manufacturers. Your explanation is a general statement predicated on the use of the word "any." In addition, all the terms have a plain meaning, or an industry specific meaning well known to Optum, such that they do not require additional definition or explanation.

January 24, 2025
Re Optum Objections to 30(b)(6) Projects Related to Purdue Pharma
Page 3

A.  <u>Specific Objections and Responses to Schedule A</u>

**Topic 1: All contracts or agreements and all Projects (as defined above) and contracts or agreements for Projects including, but not limited to, Projects formally identified and/or colloquially identified as follows:**

You state that this Topic is overbroad, unduly burdensome, and disproportionate to the litigation's needs, and fails it to describe with reasonable particularity the matters for examination because it seeks testimony about all contracts or agreements, without specifying what aspects of those contracts Plaintiffs seek information about. The definition of "Projects" included in Plaintiffs Schedule A makes clear that the Topic covers "any proposal, inquiry, sales attempt, marketing attempt, statement of work and/or work performed by OptumInsight for or on behalf of a manufacturer of opioids related to ***Controlled Substances and the sharing, licensing and/or sale of any data by an Optum entity*** for or on behalf of a manufacturer of opioids and/or OptumRx and its predecessors." Thus, it is clear what is covered by the term "Projects."

Furthermore, you object that this Topic is seeking information that is not relevant to any claims or defenses in this case or is not proportional to the needs of this case. The Topic is plainly relevant to Plaintiff's claims as it relates to work OptumInsight and/or OptumInsight Life Sciences performed for manufacturers regarding opioids that contributed to the opioid epidemic.

**Sub-Parts of Topic 1**

Regarding sub-parts (a)-(h), (ff), (hh), (mm), and (nn) of Topic 1, you stated that, based on their investigation to date, neither OptumInsight nor OptumInsight Life Sciences has identified any information regarding the sub-part within their possession, custody, or control. You further state that the companies have no obligation to provide a witness to testify on the Topic. You object to these Topics as vague, ambiguous, and failing to describe with reasonable particularity the matters for examination. You also state these topics are overbroad, unduly burdensome, and disproportionate to the needs of the case based on the passage of time.

These studies have been found in the document production and you are obligated to produce a witness to testify to any knowledge that the companies have regarding the Topic. Your assertion that you have not found additional relevant information does not relieve you of your obligation to produce a witness to testify to the companies' knowledge—or lack thereof. Furthermore, the burden is minimal. The documents are equally accessible to Plaintiffs and Defendants and are clearly identified in the Notice. Regarding sub-parts (j)-(n) and (u)-(w), you concede that there is a basis of knowledge from your document production regarding these Topics. Nevertheless, you state you have no obligation to produce a witness to testify to these Topics

because you only identified one document with relevant information to these sub-parts. The volume of documents does not relieve your obligation to produce a witness to testify regarding these Topics. Again, if there is only one relevant document as you assert, the burden in preparing the witness is minimal.

Notwithstanding the positions stated above, to assist in the preparation of the witness, Plaintiffs are willing to consider providing a list of bates ranges or documents for the 30b6 deponent to review and prepare for the deposition, but will not agree to limit our examination to only those documents provided. It is not Plaintiffs' burden to provide documents to aid in the preparation of Defendants' witnesses. Moreover, should we agree to provide such documents in advance, we would require that the same be provided in advance of the 30(b)(6) depositions of the City of *Rochester* and the *City of Ogdensburg*.

Regarding sub-parts (o)-(t), (y), (z), (aa)-(ee), (gg), (ii)-(ll), (oo), (pp), and (qq), you offered to meet and confer regarding the Topic. Plaintiffs are prepared to meet and confer.

B.    Specific Objections and Responses to Schedule B

**Request 1: All Documents which deponent(S) consulted, reviewed or plans to consult to prepare in preparation for his/her/their deposition has relied upon or will rely upon for testimony on the above deposition topics, including but not limited to any notes made during interviews with persons knowledgeable regarding above-outlined topics.**

OptumInsight and OptumInsight Life Sciences object to this request as "facially overbroad, unduly burdensome, and failing to 'describe with reasonable particularity the matters for examination.'" Plaintiffs are entitled to documents the deponent used to prepare for the deposition and expect those documents will be produced, regardless of whether the documents have already been produced in the litigation or not. *See Vita-Mix Corp. v. Basic Holdings, Inc.*, No. 1:06-cv-2622, 2008 WL 495781, at *4 (N.D. Ohio Feb. 22, 2008) (quoting *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 183 F.R.D. 458, 469 (D. Md. Dec. 7, 1998)) ("[T]here is a greater need to know what materials were reviewed by expert and designee [i.e., 30(b)(6)] witnesses in preparation for deposition since the substance of their testimony may be based on sources beyond personal knowledge.").

**Request 2: Current curriculum vitae or resume of the deponent.**

The CV of a 30(b)(6) witness should be produced. There is nothing confidential about a resume and it assists the questioner with background questions and permits a more efficient deposition. The CV can also assist in determining what the witness has personal knowledge of

January 24, 2025
Re Optum Objections to 30(b)(6) Projects Related to Purdue Pharma
Page 5

and what information the witness has learned from others.  There is no legitimate basis to refuse to produce the 30(b)(6) deponents CV and it has been the practice of this MDL that CVs of 30(b)(6) witnesses are produced in advance of the deposition.

**Request 3: Personnel file of the deponent(s).**

Given the stay ordered by the Sixth Circuit, Plaintiffs are not presently seeking the personnel file of the deponent. However, Plaintiffs reserve all rights to seek the production upon resolution of Defendants' writ.

I suggest we schedule a meet and confer to review any remaining objections to the 30(b)(6) notice.  Please provide your availability next week.

Sincerely,

Michael Elsner

MEE/au

5

# ALSTON & BIRD

Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
704-444-1000 | Fax: 704-444-1111

**Brian D. Boone**                    Direct Dial: **+1 704 444 1106**                    Email: **brian.boone@alston.com**

February 6, 2025

**BY EMAIL**

Counsel for Tracks 12 and 22 Plaintiffs and Defendants

Re:      *In re: National Prescription Opiate Litigation*, 1:17-md-2804 (N.D. Ohio) (Tracks 12
         & 22): Plaintiffs' Notice of Deposition Regarding Optum Defendants' Projects
         Related to Purdue Pharma Pursuant to Rule 30(b)(6) and Document Request
         Pursuant to Rule 30(b)(2) and Rule 34 to Defendants.

Dear Counsel for Tracks 12 and 22 Plaintiffs and Defendants:

I write on behalf of OptumInsight, Inc. (OptumInsight) and OptumInsight Life
Sciences, Inc. (OptumInsight Life Sciences) to memorialize our January 30, 2025 meet
and confer about Plaintiffs' September 6, 2024 Notice of Deposition Regarding Optum
Defendants' Projects Related to Purdue Pharma Pursuant to Rule 30(b)(6) and
OptumInsight's and OptumInsight Life Sciences's December 21, 2024 responses and
objections to the Notice.

You should not interpret anything in this letter as a waiver of any of OptumInsight's
or OptumInsight Life Sciences's objections or legal rights.

*First*, you confirmed that, although the Notice is directed to "Optum Defendants,"
Plaintiffs intend the Notice to apply only to OptumInsight and OptumInsight Life
Sciences—not to OptumRx. We confirmed that any deposition of OptumInsight and
OptumInsight Life Sciences would include testimony on behalf of OptumInsight and
OptumInsight Life Sciences and their predecessors (inasmuch as those predecessors
were subsumed within or became OptumInsight or OptumInsight Life Sciences).[1]

---

[1] We have already informed Plaintiffs (through prior responses to written discovery requests)
that, in 2011—before the re-branding of OptumInsight—Ingenix, Inc. engaged in a series of
transactions to sell certain i3 business groups (including i3 Research, i3 Statprobe, and i3
Pharma Resourcing) to an external buyer. On January 31, we supplemented OptumInsight's

*Second*, you agreed to provide at least some of the documents that you intend to use at any 30(b)(6) deposition of OptumInsight or OptumInsight Life Sciences at least ten days before the deposition.

*Third*, based on your agreement to provide documents ahead of time, OptumInsight and OptumInsight Life Sciences agree to designate a corporate representative to testify about sub-parts (o), (p), (q), (r), (s), (t), (y), (bb), (cc), (dd), (ee), (ii), (jj), (kk), (oo), and (qq) of Topic 1. Our agreement is subject to OptumInsight's and OptumInsight Life Sciences' objections that several of those topics are duplicative, vague, and ambiguous because they appear to be quoting a document without identifying the source of the quoted language.[2]

*Fourth*, we explained that, as to sub-parts (j), (l), (n), (u), (v), (w), and (hh) of Topic 1, OptumInsight and OptumInsight Life Sciences have searched thoroughly and have identified no information other than the documents identified in the December 21 Responses and Objections. We'll keep looking for information, but at this point, a corporate representative can testify about those documents and the steps taken to search for relevant information and documents.

*Fifth*, we reiterated that for certain topics in the Notice (sub-parts (b), (c), (d), (e), (f), (g), (h), (i), (k), (x), and (mm) of Topic 1), OptumInsight and OptumInsight Life Sciences have not identified documents in their possession.[3] As we said during the meet

---

and OptumInsight Life Sciences' response to Interrogatory No. 6 Discovery Request 9 on this subject and subsequently produced the transaction documents related to that sale. *See* OPTUMINSIGHT_MDL_000608309 - OPTUMINSIGHT_MDL_000610422.

[2] You said on the call that the Notice "identifies documents." To be clear, the Notice does not identify any documents by Bates number. You also said that "many" of the projects mentioned in the Notice are identified in Plaintiffs' Complaints. But the operative Complaints identify fewer than 10 proposals or projects that Plaintiffs allege OptumInsight/OptumInsight Life Sciences performed—a fraction of the 50-plus purported projects listed in the Notice.

[3] For example, you asked about the 2002 Ingenix Medical Education "Chronic Pain Management" proposal. As we have repeatedly informed Plaintiffs, OptumInsight and OptumInsight Life Sciences have identified no responsive documents in their possession concerning that proposed project, and the Purdue-produced documents show that the proposed project did not move forward. *See* PPLPC035000016491 (December 2002 internal Purdue email describing the project as merely a "proposal"); PPLPC028000083254 (May 2003 internal Purdue email that says that Purdue executives were "not interested in this project because it ha[d] changed" and because the cost was too high); PPLPC028000127275 (November 2004 Purdue document stating that Purdue had "decline[d] support pending budget allocation" for this project and had scheduled a meeting to "re-review funding this initiative"); PPLPC053000015114 (Purdue "Project Status Report" stating that, as of March 2005, Ingenix was considering sending Purdue a "new proposal" but had not yet delivered it to Purdue, and that, as of May 2005, "[t]his project ha[d] been put on hold").

and confer, if you ask OptumInsight's or OptumInsight Life Sciences' corporate representative to testify about documents produced by other parties or nonparties, the witness will not be able to authenticate those documents but may be able testify about the subject matter if we learn additional information through our ongoing efforts to prepare the witness. There is no guarantee, though, that we will learn additional information from now until the deposition (even if you provide certain documents ahead of the deposition).

*Sixth*, OptumInsight and OptumInsight Life Sciences agree to provide the curriculum vitae or resume of the designated representative(s). Whether we provide a personnel file will depend on the outcome of the pending mandamus petition in the U.S. Court of Appeals for the Sixth Circuit.

*Finally*, you told us that you would let us know how many hours of 30(b)(6) deposition you're planning for this deposition. Please let us know as soon as possible. Once we hear back from you, we can finalize a proposed date.

Sincerely,

Brian D. Boone