**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Cases listed in Exhibits 1-4 | |

**REPLY IN RESPONSE TO JOINT AND INDIVIDUAL OPPOSITIONS OF**
**AHOLD DELHAIZE, ALBERTSONS, TARGET, AND WINN-DIXIE TO**
**MOTIONS FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 6

    I.     The JOCPs Fail to Overcome Plaintiffs' Showing of Good Cause
          under Rule 16 ........................................................................................ 6

          A.    Plaintiffs Have Pursued Claims Against the JOCPs with
               Reasonable Diligence. ............................................................... 6

               1.    Plaintiffs' Motions Are Based on Information that
                     Was Not Available to Them in Time to Meet the
                     Amendment Deadlines. ............................................... 6

                     a.    Plaintiffs Could Not Have Obtained the
                          ARCOS Data They Needed Prior to May 7,
                          2019 .............................................................. 7

                     b.    Critical Facts Bearing on the JOCPs' Liability
                          Emerged Between May 2019 and August 2023. ....... 12

               2.    The Existence of Other Pleadings Does Not
                     Demonstrate a Lack of Diligence. ........................................... 17

                 3.    That Plaintiffs Moved for Leave to Amend Seven
                     Months After Receiving the Final ARCOS Data Is
                     Neither Relevant to Nor Demonstrates Any Lack of
                     Diligence. .................................................................. 24

          B.    The JOCPs Identify No Cognizable Prejudice They Would
               Suffer If the Court Permits the Amendments. .................................. 29

    II.    There Are No Other Grounds to Deny Leave to Amend. .......................... 35

          A.    Plaintiffs Easily Satisfy Rule 15's Liberal Standard. ....................... 35

          B.    Plaintiffs Have Fully Complied with the Court's May 2024
               Order and Rule 7 ....................................................................... 40

          C.    The Proposed Amendments Are Not Futile. .................................... 45

          D.    Target's Request for "Clarification" Regarding the Court's
               Prior Order on the TPP Class Action Complaint Is
               Misplaced. ................................................................................. 51

CONCLUSION ..................................................................................................... 51

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abell v. Pacira Pharmaceuticals, Inc.*,
  2023 WL 1360304 (D.N.J. Jan. 31, 2023) ............................................................................25

*United States ex rel. Angelo v. Allstate Ins. Co.*,
  106 F.4th 441 (6th Cir. 2024) ...............................................................................................37

*Armatas v. Haws*,
  2021 WL 5356028 (6th Cir. Nov. 17, 2021) ....................................................................11, 12

*Black v. Ohio Indus. Comm'n*,
  2021 WL 4399736 (S.D. Ohio Sept. 27, 2021).................................................................34, 42

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  501 F.3d 493 (6th Cir. 2007) .................................................................................................45

*Brookfield Glob. Relocation Servs., LLC v. Burnley*,
  2020 WL 7711124 (N.D. Ohio Dec. 29, 2020) .....................................................................47

*Brown v. Cuyahoga Cnty.*,
  2012 WL 12884820 (N.D. Ohio Apr. 12, 2012) ....................................................................48

*Cassidy v. Teaching Co., LLC*,
  2014 WL 12717971 (S.D. Ohio Aug. 19, 2014).....................................................................37

*Castillo v. Morales, Inc.*,
  2013 WL 12180875 (S.D. Ohio May 21, 2013) .....................................................................47

*Cataldo v. U.S. Steel Corp.*,
  676 F.3d 542 (6th Cir. 2012) ......................................................................................44, 45, 46

*Church Joint Venture, L.P. v. Blasingame*,
  947 F.3d 925 6th Cir. 2020) ...................................................................................................36

*Commerce Benefits Group, Inc. v. McKesson Corp.*,
  326 F. App'x 369 (6th Cir. 2009)...........................................................................................32

*Commercial Money Center, Inc. v. Illinois Union Insurance Co.*,
  508 F.3d 327 (6th Cir. 2007) ...........................................................................................22, 36

## TABLE OF AUTHORITIES
### (continued)

Page

*Crestwood Farm Bloodstock v. Everest Stables, Inc.*,
   751 F.3d 434 (6th Cir. 2014) ...............................................................................37

*Denis Cimaf, Inc. v. Fecon, Inc.*,
   2020 WL 13169496 (S.D. Ohio May 26, 2020) ...........................................26, 27

*Drips Holdings, LLC v. Teledrip LLC*,
   2021 WL 6206347 (N.D. Ohio Dec. 7, 2021) ......................................................28

*Dubuc v. Green Oak Twp.*,
   312 F.3d 736 (6th Cir. 2002) ...............................................................................37

*Duggins v. Steak 'N Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999) ...............................................................................37

*Elcometer, Inc. v. TQC-USA, Inc.*,
   2013 WL 1433388 (E.D. Mich. Apr. 9, 2013)......................................................48

*Evans v. Pearson Enterprises, Inc.*,
   434 F.3d 839 (6th Cir. 2006) ..........................................................................43, 44

*FastTrac Transp., LLC v. Pedigree Techs., LLC*,
   2023 WL 3226185 (D.N.D. Mar. 7, 2023)............................................................16

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*,
   2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) .......................................................6

*Glenn v. Corizon Medical, Inc.*,
   2020 WL 1921658 (E.D. Mich. Apr. 21, 2020),
   *objections overruled sub nom. Glenn v. Corizon Healthcare, Inc.*, 2020 WL
   3867279 (E.D. Mich. July 9, 2020) ......................................................................30

*Gullo v. City of New York*,
   540 F. App'x 45 (2d Cir. 2013)............................................................................12

*Harris-Gordon v. Mortg. Elec. Registration Sys.*,
   2010 WL 2465367 (N.D. Ohio June 11, 2010) ....................................................47

*Hearn v. Dick's Sporting Goods, Inc.*,
   2023 WL 7298616 (S.D. Ohio Nov. 6, 2023)..........................................................3

3270551.1

## TABLE OF AUTHORITIES
### (continued)

Page

*Hedrick v. Ohio Health Corp.*,
2020 WL 13659064 (S.D. Ohio Oct. 8, 2020) ...................................................31

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
326 F.R.D. 513 (D. Minn. 2018) ......................................................................23

*Intera Corp. v. Henderson*,
428 F.3d 605 (6th Cir. 2005) ...........................................................................42

*Johnstone v. CrossCountry Mortgage, LLC*
2024 WL 1530803 (N.D. Ohio Apr. 9, 2024) ...................................................26

*JS Products, Inc. v. Standley Law Group, LLP*
2010 WL 2044709 (S.D. Ohio May 21, 2010) ..................................................22

*Kanagy v. Midlands Millroom Supply, Inc.*,
2020 WL 1275289 (N.D. Ohio Mar. 17, 2020) .................................................31

*Kaylor v. Radde*,
2005 WL 282851 (N.D. Ohio Feb. 3, 2005).................................................23, 34

*In re KDI Corp.*,
119 B.R. 594 (Bankr. S.D. Ohio 1990) .............................................................38

*Kitchen v. AngioDynamics, Inc.*,
2024 WL 3228414 (N.D. Ohio June 28, 2024) .............................................43, 44

*Knight Cap. Partners Corp. v. Henkel AG & Co.*,
930 F.3d 775 (6th Cir. 2019) ...........................................................................37

*Korn v. Paul Revere Life Insurance Co.*,
382 F. App'x 443 (6th Cir. 2010) .....................................................................32

*L.H. v. Red Roof Inn, Inc.*,
2025 WL 714385 (W.D. Ky. Mar. 5, 2025) .......................................................16

*Leary v. Daeschner*,
349 F.3d 888 (6th Cir. 2003) .......................................................................24, 30

*LoganTree LP v. Garmin International, Inc.*,
339 F.R.D. 171 (D. Kan. 2021).........................................................................11

## TABLE OF AUTHORITIES
### (continued)

Page

*Lynch v. Hitachi Astemo Americas, Inc.*
   2024 WL 4753547 (S.D. Ohio Nov. 12, 2024)....................................................27

*Mann Constr., Inc. v. United States*,
   27 F.4th 1138 (6th Cir. 2022).............................................................................44

*Mann Construction, Inc. v. Internal Revenue Service*,
   495 F. Supp. 3d 556 (E.D. Mich. 2020...............................................................44

*Mann v. CSX Transp., Inc.*,
   2009 WL 3766056 (N.D. Ohio Nov. 10, 2009) ...................................................31

*McConocha v. Blue Cross & Blue Shield Mut. of Ohio*,
   930 F. Supp. 1182 (N.D. Ohio 1996) ..................................................................50

*McNeill v. Bagley*,
   2018 WL 3348876 (N.D. Ohio July 9, 2018) ......................................................44

*Milner v. Biggs*,
   2012 WL 4512496 (S.D. Ohio Oct. 2, 2012) .......................................................37

*Montgomery v. Gove*,
   2021 WL 4859345 (N.D. Ohio Oct. 19, 2021) ....................................................49

*Morrison Enterprises, LLC v. Dravo Corp.*
   638 F.3d 594 (8th Cir. 2011) .........................................................................22, 23

*In re Nat'l Prescription Opiate Litig.*,
   2019 WL 2468267 (N.D. Ohio Apr. 1, 2019)
   *adopted in relevant part by* 2019 WL 3737023 (N.D. Ohio June 13, 2019)..................42, 47

*In re Nat'l Prescription Opiate Litig.*,
   2022 WL 20701236 (6th Cir. Nov. 10, 2022) ......................................................33

*In re Nat'l Prescription Opiate Litig.*,
   2020 WL 1986589 (N.D. Ohio Apr. 27, 2020) ....................................................49

*In re Nat'l Prescription Opiate Litig.*,
   2024 WL 4910299 (N.D. Ohio Nov. 15, 2024) ...................................................31

*In re Nat'l Prescription Opiate Litig.*,
   589 F. Supp. 3d 790 (N.D. Ohio 2022).................................................................14

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Nat'l Prescription Opiate Litig.,*
    956 F.3d 838 (6th Cir. 2020) ........................................................................ *passim*

*Newberry v. Silverman,*
    789 F.3d 636 (6th Cir. 2015) ........................................................................34

*NOCO Company v. Lapidus,*
    2022 WL 1803039 (N.D. Ohio June 2, 2022) ........................................27, 28, 33

*Pandora Distrib., LLC v. Ottawa OH, L.L.C.,*
    2015 WL 968007 (N.D. Ohio Mar. 4, 2015) ........................................................27

*Perkins v. Am. Elec. Power Fuel Supply, Inc.,*
    246 F.3d 593 (6th Cir. 2001) ........................................................................37

*Permasteelisa CS Corp. v. Airolite Co., LLC,*
    2007 WL 1683668 (S.D. Ohio June 8, 2007) .......................................................3

*Phelps v. McClellan,*
    30 F.3d 658 (6th Cir. 1994) ....................................................................34, 38

*Pittman v. Experian Information Solutions, Inc.,*
    901 F.3d 619 (6th Cir. 2018) ........................................................................37

*Powell-Lee v. HCR Manor Care,*
    231 F. App'x 438 (6th Cir. 2007) ..................................................................37

*Rose v. Hartford Underwriters Ins. Co.,*
    203 F.3d 417 (6th Cir. 2000) ........................................................................44

*Ross v. Am. Red Cross,*
    567 F. App'x 296 (6th Cir. 2014) ..................................................................24

*Salerno v. Fam. Heritage Life Ins. Co. of Am.,*
    2024 WL 2235772 (N.D. Ohio May 17, 2024) ..................................................11

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.,*
    64 F.3d 1001 (6th Cir. 1995) ....................................................................35, 38

*Shaughnessy v. Interpublic Group of Cos.,*
    506 F. App'x 369 (6th Cir. 2012) ..................................................................46

3270551.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Stanich v. Hissong Grp., Inc.,*
2011 WL 1560650 (S.D. Ohio Apr. 25, 2011) ....................................................24, 49

*State of New Mexico, ex rel., Hector Balderas, Attorney General, v. Purdue
Pharma L.P.,*
No. D-101-CV-2017-02541 ....................................................................................15, 42

*Stern v. Felmet,*
2006 WL 8443095 (S.D. Ohio Aug. 7, 2006)..............................................................36

*Sturdivant v. Blue Valley Unified School District,*
2020 WL 1320727 (D. Kan. Mar. 20, 2020)................................................................25

*Thomas v. Tennessee Department of Transportation,*
579 F. App'x 331 (6th Cir. 2014)................................................................................21

*Tipton v. Swanson,*
2021 WL 12320652 (N.D. Ohio Nov. 16, 2021) .........................................................10

*Town of Hull v. AmerisourceBergen Drug Corp., et al.,*
No. 1:19-op-46172-DAP.............................................................................................41

*Tucker v. Middleberg-Legacy Place,*
539 F.3d 545 (6th Cir. 2008) .....................................................................................34

*Wade v. Knoxville Utilities Board,*
259 F.3d 452 (6th Cir. 2001) .....................................................................................36

*Williams v. James River Group Inc.,*
627 F. Supp. 3d 1172 (D. Nev. 2022) ........................................................................11

*York v. Lucas Cnty., Ohio,*
2015 WL 2384096 (N.D. Ohio May 19, 2015) ...........................................................11

**Court Rules**

Fed. R. Civ. P. 1..............................................................................................................39

Fed. R. Civ. P.  7.................................................................................................4, 39, 42, 43

Fed. R. Civ. P. 12(b)(6) ...................................................................................................44

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. Civ. P. 12(c) ...................................................................................22

Fed. R. Civ. P. 12(d) ...................................................................................48

Fed. R. Civ. P. 15 ................................................................................. *passim*

Fed. R. Civ. P. 16 ................................................................................. *passim*

Fed. R. Civ. P. 16(b) .............................................................................3, 24

L.R. 15.1 ......................................................................................................44

**Treatises**

Charles Alan Wright, et al., 5A FED. PRAC. & PROC. CIV. § 1298 (4th ed.) ..........................45

3270551.1

Amending Plaintiffs ("Plaintiffs")[1] submit this reply in response to (1) the joint opposition (Dkt. #5888, "Joint Opp.") to Plaintiffs' motions for leave to amend ("MLAs") submitted by the "Jointly Opposing Chain Pharmacies" or "JOCPs," consisting of (a) Ahold Delhaize USA, Inc. and related entities ("Ahold Delhaize"); (b) Albertsons, Inc. and related entities ("Albertsons"); (c) Target Corporation ("Target"); and (d) Winn-Dixie Stores, Inc. and related entities ("Winn-Dixie"); and (2) the individual opposition briefs filed by Ahold Delhaize, Albertsons, Target, and Winn-Dixie.[2]

## PRELIMINARY STATEMENT

In their opening briefs, Plaintiffs demonstrated they have met Rule 16's prerequisites—diligence and lack of prejudice—as well as Rule 15's requirement that

---

[1] The updated lists of plaintiffs seeking leave to amend to add each of the defendants encompassed by this Reply are attached as Exhibits 1-4. These revised lists replace the charts attached as Exhibit A to each of the motions for leave to add these defendants. *See* Dkt. #5566-1 (re Ahold Delhaize); Dkt. #5567-1 (re Albertsons); Dkt. #5571-1 (re Target); Dkt. #5572-1 (re Winn-Dixie). Additionally, attached as Exhibit 5A-D are the updated lists of plaintiffs withdrawing from the subject motions. These updated lists include some additional plaintiffs that have withdrawn since the PEC filed its April 25, 2025 Submission. *See* Dkt. #6121.

[2] The motions to which this Reply applies are at Dkt. #5566 ("AD Mot."); Dkt. #5567 ("Alb. Mot."); Dkt. #5571 ("Target Mot."); and Dkt. #5572 ("WD Mot."). The JOCPs' individual oppositions are at Dkt. #5879 ("AD Opp."); Dkt. #5880 ("WD Opp."); Dkt. #5886 ("Target Opp."); and Dkt. #5898 ("Alb. Opp."). Plaintiffs have already filed, on June 3, 2025, a consolidated reply brief, Dkt. #6171, in connection with their motions for leave to amend to add certain manufacturer defendants, Dkt. #5551 ("Aurolife Mot."); Dkt. #5552 ("KVK-Tech Mot."); Dkt. #5553 ("Lupin Mot."); and Dkt. #5554 ("Tris Pharma Mot."), rendering those motions fully briefed, and are filing concurrently with this brief separate reply briefs applicable to motions for leave to amend with respect to Publix, Costco, and DDM. Dkt. #5568 ("Costco Mot."); Dkt. 5569 ("DDM Mot."); and Dkt. 5570 ("Publix Mot."). Finally, the deadline for Plaintiffs' reply brief in connection with motions to add the PBMs as defendants has been extended to August 15, 2025 as a result of the PBMs' request for additional time to submit their opposition brief.

1

3270551.1

amendment is in the interest of justice. [3]  In particular, Plaintiffs explained that they did not have access to any information about the JOCPs' market share in the relevant jurisdictions until May 7, 2019, at the earliest—after the initial March 16, 2019 amendment deadline—when certain ARCOS data became available to Plaintiffs for the first time. Moreover, as the Court well knows, updated ARCOS information did not become available until 2023.  Plaintiffs also explained that they lacked information about the full nature and extent of the improper dispensing practices of chain pharmacies until information became available through discovery in the MDL, well after the March 2019 deadline.[4]

The JOCPs advance four main arguments as to why the Court should nonetheless preclude Plaintiffs from amending their complaints to add these proposed defendants. None justifies denial of Plaintiffs' MLAs.

*First*, the JOCPs contend Plaintiffs were not diligent because they "had access to" ARCOS data sufficient to calculate the pharmacies' market share before March 16, 2019

---

[3] Unless otherwise indicated, terms and abbreviations are retained from Plaintiffs' opening briefs, all emphasis has been added, and all internal citations and quotation marks have been omitted.

[4] On November 8, 2018, this Court set the final deadline for plaintiffs in the MDL to amend their complaints without leave of Court. Dkt. #1106. The Court required plaintiffs to amend no later than March 16, 2019, or within 90 days of the date the case was transferred into the MDL, whichever was later.  (These deadlines are referred to collectively herein as the "Amendment Deadlines.")  Thus, certain plaintiffs were permitted to amend without leave of court after March 16, 2019, as well as after May 7, 2019.  For the reasons discussed below, these later-transferred plaintiffs were also reasonably diligent and should be granted leave to amend.

2

(Joint Opp. at 11).  This assertion is simply wrong as a matter of fact.  By order of this Court, none of the Amending Plaintiffs had access to the relevant ARCOS data as of March 16, 2019.  As of that date, the ARCOS data was, by order of this Court, in the custody of a third-party consultant and stored on a computer that had *no access to the Internet*.  Dkt. #233 at 4, 15.  Moreover, the Court had only authorized the PEC to provide Plaintiffs with limited reports derived from the data; with respect to pharmacies, that information was limited to identification of pharmacies within Plaintiffs' jurisdictions.  *See* Dkt. #739 at 4; Dkt. #1106 at 2.  Market share could not be calculated or even approximated from that information.  Indeed, the Court specifically prohibited the PEC from disclosing to Plaintiffs the ARCOS data itself or the *amounts or types* of opioids sold in their jurisdictions and stated the reports were to "set forth only the *identity* of entities that manufactured, distributed, or sold opioids in the counties."  Dkt. #739 at 4.  Given the limited information to which Plaintiffs had access as of March 2019 (indeed, at any time prior to May 7, 2019), no amount of diligence would have allowed them to determine the pharmacies' market share or other details supporting the dispensing claims Plaintiffs seek to assert against these defendants.

*Second*, the JOCPs argue that even if Plaintiffs lacked the information they needed by the deadline, they delayed too long in seeking leave to amend once they obtained it.  But as the JOCPs' own caselaw instructs, "the touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet *the deadline set forth in the pretrial order*."  *Permasteelisa CS Corp. v. Airolite Co., LLC*, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007) (case cited in WD Opp. at 6 n.5).  By contrast, "delay in filing

3

the motion to amend is *not* the touchstone of the [Rule 16] diligence analysis." *Hearn v. Dick's Sporting Goods, Inc.*, 2023 WL 7298616, at *3 (S.D. Ohio Nov. 6, 2023) (emphasis in original).  Once the amendment deadline passes, any "delay" in bringing the proposed amendments is assessed under *Rule 15*, which requires a showing of significant prejudice—a standard the JOCPs cannot meet.  But even if the Court evaluates this question under Rule 16, any delay between when the relevant data became available and when Plaintiffs asked the Court to allow them to seek leave to amend was reasonable under the extraordinary circumstances of this litigation, which has included more than 22 case tracks and a stay since 2018 of all but the bellwether cases.

*Third*, the JOCPs contend the amendments are prejudicial.  But in fact adding the JOCPs now as opposed to at the time of the Amendment Deadlines will impose *zero* prejudice on them.  Because these cases have been stayed since 2018 (*see* Dkt. #371)—with no motion practice, discovery, or any other significant proceedings during that time—the JOCPs stand in exactly the same posture as if Plaintiffs had added them by the Amendment Deadlines.  *See also* Dkt. #6124 at 1 n.1.  While Rule 16 "may ensure that at some point both the parties and the pleadings will be fixed," Joint Opp. at 8 (quoting *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020)), the JOCPs cannot credibly rely on the "fixed" nature of cases that remain at such an early stage of the litigation.

*Fourth*, contrary to the JOCPs' assertion, Plaintiffs have sufficiently specified the proposed amendments under Rule 7, Rule 15, and the Court's May 23, 2024 Order (the "May 2024 Order").  Indeed, had Plaintiffs amended their complaints by the Amendment

Deadlines, they would have done so through short-form complaints; there is no basis to require them to allege more detail now than they would have provided then.  Further, Plaintiffs have pointed to existing bellwether pleadings that specify the allegations and claims they intend to assert against each of the JOCPs, which have been litigated in multiple case tracks by this Court and others over years.  These proposed defendants plainly have notice of the intended claims and the bases for them.

The JOCPs' opposition is, moreover, as notable for what it *doesn't* argue as for what it does.  The JOCPs do not suggest this Court cannot or should not resolve the issues of diligence, prejudice, and appropriate particularity in a streamlined fashion applicable to all Plaintiffs while still conducting the requisite Plaintiff-by-Plaintiff analysis.  To the contrary, the JOCPs' arguments apply (and fail) equally as to each Plaintiff.  This is especially true with respect to Plaintiffs' reliance on the ARCOS data because Plaintiffs intend to sue each JOCP in its capacity as a dispenser and there is no dispute that the PEC's reports did not contain any information regarding these dispensers' market share until May 2019.  Nor do the JOCPs meaningfully confront Plaintiffs' argument regarding the extensive new information they have obtained over the course of the litigation of multiple pharmacy trials and case tracks.  The Court therefore can readily address the common issues raised by Plaintiffs' motions and apply its rulings to each Plaintiff.[5]

---

[5] Plaintiffs propose that submission of amended pleadings (whether by short-form complaints or otherwise) cannot be accomplished until the Court has ruled on all of the MLAs, since until such time, each Plaintiff will not know against which defendants it will be permitted to assert claims.  Once the Court has ruled on all of the defendant motions,

For the reasons detailed in Plaintiffs' opening briefs and below, the Court should grant in full each Plaintiff's motions for leave to add the JOCPs as defendants.

## ARGUMENT

I. **The JOCPs Fail to Overcome Plaintiffs' Showing of Good Cause under Rule 16[6]**

A. **Plaintiffs Have Pursued Claims Against the JOCPs with Reasonable Diligence.**

The JOCPs contend Plaintiffs have failed to demonstrate the requisite diligence under Rule 16.  They are wrong.  Each Plaintiff has shown both that it did not possess and could not have obtained the information it needed to assert dispensing and other claims against the JOCPs by the Amendment Deadlines.  The JOCPs contend that Plaintiffs *did* have access to information at an earlier time, and that Plaintiffs did not move quickly enough once the information finally became available.  These arguments cannot withstand scrutiny.

1. **Plaintiffs' Motions Are Based on Information that Was Not Available to Them in Time to Meet the Amendment Deadlines.**

The JOCPs do not dispute that "[n]ew information can constitute good cause under Rule 16(b)."  *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, 2018 WL 1835444, at *2

---

each Plaintiff will be in a position to file a single amended pleading that encompasses all defendants and claims.  Plaintiffs propose that if the Court grants MLAs against any defendant, the relevant Plaintiffs and that defendant should quickly begin to meet and confer to establish an appropriate process to streamline the complaints.

[6] In addition to their unavailing arguments with respect to Plaintiffs, the JOCPs confuse the relevant issues by asserting "[t]he Plaintiffs' Executive Committee ('PEC') . . . ha[s] not demonstrated good cause" (Joint Opp. at 1).  Whether the PEC—a creation of the MDL—can demonstrate good cause is irrelevant; the PEC is not a party, represents no plaintiffs, and is not, itself, seeking leave to amend.  The pertinent question is whether each *Plaintiff* has met the standard.

(S.D. Ohio Apr. 18, 2018).  They nonetheless contend Plaintiffs "had access to the data they needed to calculate dispensing market share" by August 2018 and thus could have met all of the Amendment Deadlines.  Joint Opp. at 11.  That is manifestly incorrect.  Not only did Plaintiffs *not* have access to relevant ARCOS data prior to May 2019, but other relevant information was not available until considerably later than that.

### a. Plaintiffs Could Not Have Obtained the ARCOS Data They Needed Prior to May 7, 2019.

Plaintiffs did not have any access to ARCOS data concerning the JOCPs' dispensing activities or their market share prior to May 7, 2019.  The JOCPs' argument to the contrary ignores or misreads the plain language of this Court's orders concerning access to ARCOS data and does not comport with what actually took place.

When this Court ordered the DEA to produce ARCOS data, it limited both the extent of data that would be produced and access to that data.  These limitations were designed to address various defendants' concerns about confidentiality and security as well as the need, emphasized by the DEA, to protect ongoing investigations and avoid disclosure of the locations of warehouses where opioids are stored.  Dkt. #233 at 4.  Accordingly, in April 2018 the Court directed the DEA to transfer certain limited ARCOS data to a third-party consultant hired by the PEC; the consultant was to house the data on a computer not connected to the Internet.  *Id.* at 4, 15.  This ensured that there could be no access to the ARCOS data other than in accordance with directions from the Court as to what information the PEC could share with plaintiffs and their counsel.  Each time the Court subsequently expanded the scope of ARCOS data to be produced, it directed

7

that production occur "using the protocols previously agreed to by DEA." Dkt. #397 at 2 (ordering production of nationwide data); Dkt. #668 at 2 (expanding scope of production to cover transactions involving additional drugs).

The question then arose how plaintiffs might use the ARCOS data—which could only be accessed from the consultant's physical location and consisted of raw data reflecting, in not-easily-digestible form, hundreds of millions of individual transactions— to identify defendants who should be added to their complaints. To resolve this issue, on July 13, 2018, the Court directed the PEC "to file a report derived from the ARCOS data that lists, for every county, all manufacturers, distributors, and pharmacies that contributed directly to the presence of opioids in that county," but instructed that the report "shall not reveal any data regarding the *amounts or types of opioids* distributed in the counties." Dkt. #739 ("July 2018 Order") at 3-4 (footnote omitted) (emphasis in original); *see also* Dkt. #5567-2 (Mougey Decl.) ¶ 16 ("The only information that the PEC was permitted to provide about dispensers was a pharmacy's presence in the jurisdiction; no dispensing market share information was provided at this time.").[7] The PEC was not

_____

[7] On November 8, 2018, the Court issued "minor modifications" to the order authorizing reports derived from the ARCOS data. With respect to manufacturers and distributors, the PEC would now identify only those entities that had more than a 5% market share in the relevant jurisdictions in at least three of the nine years then available in the ARCOS data (2006-2014). Dkt. #1106 ("November 2018 Order") at 2. But the Court did not permit disclosure of any market share analysis with respect to pharmacies. Thus, as set forth in the July 2018 Order, the PEC was authorized to share only the *identities* of the pharmacies that received opioids in Plaintiffs' jurisdictions. Dkt. #739 at 4. Whatever ambiguity there may have been in the November 2018 Order's language, its meaning was perfectly clear, especially in light of the July 2018 Order's plain language. The Declaration of Peter

permitted to provide additional information until after March 16, 2019.

Thus, as of March 16, 2019, the *only* information a Plaintiff could obtain from the PEC with respect to *dispensers* of opioids was the identity of every pharmacy operating in its jurisdiction. Nor could a Plaintiff go fishing through the ARCOS data itself to find market share information, as it was housed on the third-party consultant's computer with no way for anyone else to access it. Albertsons' observation that *the raw ARCOS data* "show[s] how many pills or MMEs . . . were sent to a given pharmacy," from which "a rough market share estimate could have been determined by each Amending Plaintiff for each defendant pharmacy" (Albertsons Opp. at 5), is therefore beside the point, as no Plaintiff had the ability to access this raw information.[8]

In April 2019, the Court, for the first time, permitted the PEC to share additional

_____

Mougey submitted in connection with Plaintiffs' MLAs confirms this was what the PEC understood the Court to direct and what the PEC in fact did.

[8] The JOCPs point to language in the ARCOS protective order directing that "disclosure [of ARCOS data] may be made to the governmental Plaintiffs . . . for this litigation" (Dkt. #167) as proof that plaintiffs did have access to the market share information prior to March 16, 2019. But this provision must be read in light of the limitations the Court (reasonably) imposed on such disclosure, as discussed above. Nor does the Court's statement that Plaintiffs "may use th[e] information" provided in the PEC's reports "to amend their complaints" (Dkt. #1106 at 2-3) suggest any Plaintiff was unreasonable in determining the information available to it as of an existing Amendment Deadline was not sufficient to bring claims against the JOCPs at that time. Further, while the JOCPs contend "other plaintiffs pleaded dispensing claims against retail pharmacies" before March 16, 2019 (Joint Opp. at 17), the complaints they reference included only *distribution* claims. In any event, whether some plaintiffs in other cases chose to bring claims (dispensing or otherwise) against pharmacies by March 2019 is not determinative as to whether there is good cause to allow these Plaintiffs to amend now based on new information.

information with Plaintiffs, *see* Dkt. #1545, but implementation of this order was not, and could not have been, instantaneous. On May 7, 2019, the PEC gave notice that it was ready to provide the expanded information. *See* Dkt. #1612. It was only then that a Plaintiff could obtain information detailing the proposed pharmacy defendants' dispensing market shares. Thus, at the time of the March 16, 2019 deadline for plaintiffs with cases already in the MDL, and continuing until May 7, 2019, *no* plaintiff had access to data from which the JOCPs' market share as dispensers could be computed or even approximated. The lack of access to this information prior to May 7, 2019 demonstrates "good cause" to amend for all Plaintiffs with amendment deadlines on or before that date.

The Court has long recognized the value of the ARCOS data to the proper identification of defendants that contributed to the opioid epidemic. Dkt. #397 at 1. And plaintiffs in this MDL have consistently made clear that careful analysis of the ARCOS data and other relevant facts was critical to identifying appropriate additional defendants and asserting plausible claims against them. This is especially true because a defendant's market share is an important component in establishing that its role sufficiently contributed to the opioid crisis to meet the requirements of causation. Indeed, numerous defendants in this litigation have made the argument that they did not have sufficient market share to be held liable. It is not unreasonable for a plaintiff to verify the magnitude of a dispenser's role before naming it as a defendant.

In suggesting this information was not necessary for Plaintiffs to amend (Joint Opp. at 10), the JOCPs focus, erroneously, on whether a Plaintiff could have brought *any*

10

possible claim—no matter how well or poorly supported—by the Amendment Deadlines. But that is not the standard; rather, the Court must assess whether Plaintiffs exercised reasonable diligence in asserting the claims and allegations they presently propose. *See, e.g.*, *Tipton v. Swanson*, 2021 WL 12320652, at *1 (N.D. Ohio Nov. 16, 2021) ("Plaintiff had good cause for being unable to make *this amendment* until he received his medical records through discovery."). As these claims and allegations incorporate critical facts based on the PEC's analysis of the ARCOS data and information developed through discovery in bellwether cases, Plaintiffs did not unduly delay in proposing them.

In short, attempting to avoid a "shoot first, ask questions later" approach to pleading, Plaintiffs understood it could take substantial time to develop facts to support adding new defendants and claims to this complex litigation. These circumstances are consistent with the "regular[]" practice of granting leave to amend "when discovery apparently confirmed [the party's] suspicions" so that it could assert claims. *Salerno v. Fam. Heritage Life Ins. Co. of Am.*, 2024 WL 2235772, at *2 (N.D. Ohio May 17, 2024) (alteration in original); *see also York v. Lucas Cnty., Ohio*, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later").[9] Plaintiffs with amendment deadlines prior to May 7, 2019

---

[9] The facts here are far removed from those in *LoganTree LP v. Garmin International, Inc.*, where the court denied plaintiff's motion to extend the expert discovery deadline given plaintiff's "eleventh-hour electronic review of source code" the defendant had provided, after which plaintiff "requested an unreasonable amount of printouts" and then "missed

thus acted with reasonable diligence in not amending prior to the time they were able to obtain data showing the market share of the dispensers in their jurisdictions.

        **b.**      **Critical Facts Bearing on the JOCPs' Liability Emerged Between May 2019 and August 2023.**

That the ARCOS data required to compute dispensing market share may have been necessary for a plaintiff to identify the JOCPs as defendants does not mean it was sufficient for that purpose.  Plaintiffs with amendment deadlines after May 7, 2019—that is, those whose cases were transferred into the MDL (i) less than 90 days before May 7, 2019; or (ii) after May 7, 2019—were also sufficiently diligent because additional critical information became available between May 2019 and August 2023.[10]  In particular, facts developed through the PEC's subsequent efforts as well as discovery in bellwether cases

_____

both the deadline to notify [defendant] that it requested additional printouts and the deadline for filing its motion to compel, causing further delays in briefing."  339 F.R.D. 171, 187 (D. Kan. 2021).  Nor do Plaintiffs attempt to demonstrate diligence through "an unelaborated assertion of a need to review records," as in *Williams v. James River Group Inc.*, 627 F. Supp. 3d 1172, 1180 (D. Nev. 2022).  Additionally, unlike here, the plaintiff in *Armatas v. Haws*, which Ahold Delhaize cites, "knew of the factual bases" for his proposed claims before the amendment deadline.  2021 WL 5356028, at *3 (6th Cir. Nov. 17, 2021).  Further, he waited "until after the parties had fully briefed Defendants' motion for judgment on the pleadings" before first seeking leave to amend, and brought his second motion for leave to assert a new claim "a mere two weeks before the discovery deadline," which threatened to impose "significant prejudice to the defendants because of the need to reopen discovery and to raise new defenses."  *Id.* at *3-4.  And in *Gullo v. City of New York*, 540 F. App'x 45 (2d Cir. 2013), which Target cites, plaintiffs received the information that formed the basis for their proposed amendment more than two months before the amendment deadline, yet they waited until after the deadline to seek to amend.  As detailed above, Plaintiffs did not have the relevant ARCOS data by March 2019.

[10] The latest amendment deadline for any Plaintiff seeking leave to add any of the JOCPs was June 21, 2022.

confirmed earlier suspicions of the JOCPs' liability.  For example, it was only after the PEC successfully moved to enforce its subpoena on the DEA for updated ARCOS data for 2015-2019 that the PEC received that data in *August 2023*, and then—following its analysis of the data with the help of consulting experts—provided Plaintiffs with updated information for their jurisdictions.  *See* Corr. Roadmap at 15.  This was well past the Amendment Deadlines for any Plaintiff.

In granting the PEC's motion to enforce the subpoena, the Court noted that "having presided over discovery and trial in numerous bellwether cases," it was "certain the PEC is correct that 'updated ARCOS data detailing the prescription opioid supply through 2019 is relevant and *increasingly* important to current MDL cases for which trial will commence in or after 2024.'"  Dkt. #5115 at 8 (emphasis in original) (quoting Dkt. #5109 at 2).  Among other things, the Court cited approvingly the PEC's argument that "if the 2015 to 2019 ARCOS data shows that the [opioid] prescription supply held steady or increased and may have continued to fuel addiction, this . . . would bear on the non-settled Defendants' liability for the continuing nuisance based on their manufacturing, distribution, and/or dispensing conduct, particularly if these Defendants expanded their market presence during this period."  *Id.* at 9 (quoting Dkt. #5109 at 3).  The Court explained "it would make no sense to ask a jury to determine in, say, 2024 whether a defendant is contributing to an ongoing public nuisance, but deny the parties access to ARCOS data newer than 10 years old."  *Id.* at 10.  The Court's reasoning applies equally to claims against the JOCPs and other proposed defendants.

The ARCOS data released in 2023 was indeed significant in at least two ways: *First*,

3270551.1

it provided further insight into potential defendants' market share (for example, whether a potential defendant with a very small market share before 2015 had a greater one during 2015-2019); and *second*, the PEC used the updated data to calculate market share for pharmacies as *dispensers* for the entirety of the relevant period, i.e., 2006-2019. *See* Corr. Roadmap at 15-16, 20-21. While the 5% threshold is not a requirement for asserting claims against particular entities, the parties and the Court historically have considered it important. That information therefore was highly relevant to assess whether to assert claims against additional defendants.[11]

The development of cases against pharmacy dispensers in previous bellwethers also supports good cause to permit the present amendments. Because MDL plaintiffs did not pursue dispensing claims before CT1B and CT3, no discovery proceeded on dispensing claims against chain pharmacies until after the CT3 amendments. That discovery was vital to the CT3 trial verdict against pharmacy defendants CVS, Walgreens, and Walmart, and supports similar claims against other chain pharmacies, including the JOCPs. In denying pharmacy defendants' post-trial motion for judgment as a matter of law, the Court noted "Plaintiffs presented evidence of Defendants' dispensing of large quantities of highly addictive drugs in the Counties, while repeatedly

---

[11] Target contends that because it "ceased dispensing opioids in 2015," the information regarding Target "that was available to the Amending Plaintiffs before the deadline" was "substantially the same as the information they now cite in their Motion." Target Opp. at 1. As detailed above, the information to which Plaintiffs had access as of March 2019 did *not* include pre-2015 dispensing data that is critical to Plaintiffs' amendments. Accordingly, it is irrelevant whether the later-obtained 2015 data "showed . . . a change in Target's market share" compared to 2006-2014 (*id.* at 5).

14

failing to take legally-required, effective measures to identify and resolve 'red flags' prior to dispensing, and failing to document any due diligence with respect to those red flags." *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 796 (N.D. Ohio 2022); *see also id.* at 798-806 (detailing evidence that supported defendants' liability). While the JOCPs contend "discovery or trials involving *other* retail pharmacies do not establish good cause to permit amendment as to the [JOCPs]," Joint Opp. at 16 (emphasis in original), the facts elicited in those proceedings are indicative of other chain pharmacies' conduct and are thus relevant to claims against the JOCPs.[12] In particular, it was only after seeing and analyzing the dispensing data produced by other pharmacies in discovery that Plaintiffs understood how this information could be used to determine the extent of a defendant's improper dispensing and thus establish liability. This was important for all pharmacy defendants, but especially important in providing Plaintiffs with a good faith basis to sue pharmacy chains that (like the JOCPs) did not engage in significant (or any) self-distribution.[13]

---

[12] Additionally, as detailed in the Albertsons Motion and the accompanying Declaration of Jay Lichter (Dkt. #5563-2), extensive information bearing on Albertsons' liability emerged through depositions taken in this MDL and in the state-court proceedings in *State of New Mexico, ex rel., Hector Balderas, Attorney General v. Purdue Pharma L.P.*, No. D-101-CV-2017-02541 ("*Balderas*"), which was not available to Plaintiffs until April 2022. *See* Alb. Mot. at 4-10; Lichter Decl. ¶¶ 4-9. Those post-March 2019 developments further support good cause for the proposed amendments as to Albertsons in particular.

[13] The pharmacy defendants involved in CT3 and CT4 acted as both distributors and dispensers. Those defendants had also been the subject of DEA enforcement activities with respect to their dispensing conduct, which was not the case for the JOCPs. As a result, knowledge of the JOCPs' market share, standing alone, was not necessarily sufficient to provide a diligent Plaintiff with a plausible basis to hold them accountable.

15

Nor could Plaintiffs, exercising reasonable diligence, have garnered the necessary information from other sources.  The CT1 bellwether plaintiffs chose not to pursue dispensing claims.[14]  The CT3 bellwether plaintiffs first brought dispensing claims in May 2020, well after the March 2019 amendment deadline.  Only through discovery in those cases and in CT4 did Plaintiffs have access to information that the pharmacies dispensed hundreds of thousands of prescriptions with "red flags" that raised (or should have raised) suspicion as to their validity.

This is especially so given the extremely complex and in many ways unique nature of this litigation.  Courts have recognized even in cases far less "complex and multi-faceted" than these, "it is understandable that some discovery might be necessary in order for the parties to appreciate fully the scope of claims and defenses, and indeed, to fully understand the relationships among the various entities." *L.H. v. Red Roof Inn, Inc.*, 2025 WL 714385, at *16 (W.D. Ky. Mar. 5, 2025).  That Plaintiffs sought to amend after additional facts emerged through discovery and trials in litigation of this unprecedented complexity and magnitude was reasonable.

That these cases have generally been stayed for the past seven years also bears on Plaintiffs' diligence.  It was reasonable for Plaintiffs to seek to amend in April 2024 given

---

[14] The JOCPs state that the CT1 bellwether plaintiffs "*expressly chose not to bring*" dispensing claims,  Joint Opp. at 8 (emphasis in original) (quoting *Nat'l Prescription Opiate Litig.*, 956 F.3d at 844), but that is not entirely accurate.  The *Summit County* complaint included dispensing allegations, although the claims were framed as relating to distribution.  Summit County later clarified that it was not pursuing claims arising from dispensing activity.

the complete absence of other activity in these proceedings since well before even the March 2019 deadline for earlier-transferred cases. *See FastTrac Transp., LLC v. Pedigree Techs., LLC*, 2023 WL 3226185, at *9 (D.N.D. Mar. 7, 2023) (observing "there is not a clear test for when a party is diligent enough to establish good cause" and "whether to allow amendment of a scheduling order is a fact-specific decision which involves considerable exercise of the court's discretion").

### 2. The Existence of Other Pleadings Does Not Demonstrate a Lack of Diligence.

The JOCPs point to short-form complaints a few municipalities filed in March 2019 that named Albertsons, Target, and other retail pharmacies as defendants, which they assert Plaintiffs "fail[ed] to . . . review." Joint Opp. at 17. Target also notes "[s]even of the Amending Plaintiffs amended their complaints in 2019 to name additional defendants, but they did *not* add Target." Target Opp. at 3.[15] And Albertsons cites the complaint filed in August 2018 in *Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-op-45749-DAP, Dkt. #9 ("*Blackfeet Tribe* Complaint"), which includes claims against Albertsons. But the complaints the JOCPs reference include *distribution* claims, not *dispensing* claims.

In this regard, the short-form complaints the JOCPs cite expressly refer to and incorporate allegations from the second amended complaint in *The County of Summit,*

---

[15] While Target notes that in those complaints the respective Plaintiffs stated they "reviewed the relevant ARCOS data" (Target Opp. at 4), it is evident those references were shorthand for the information presented in the PEC's reports, not the actual ARCOS database, as the Court had contemplated.

*Ohio, et al. v. Purdue Pharma L.P., et al.*, which included distribution (not dispensing) claims against pharmacies. *See* Case No. 1:18-op-45090, Dkt. #24 ("*Summit County* Complaint") ¶ 1 (plaintiffs assert "two categories of claims: claims against the pharmaceutical manufacturers of prescription opioid drugs that engaged in a massive false marketing campaign to drastically expand the market for such drugs and their own market share, and claims against entities in the supply chain [including certain retail pharmacies] that reaped enormous financial rewards by refusing to monitor and restrict the improper *distribution* of those drugs"); *id.* ¶ 127 (referring to pharmacy defendants CVS, Rite Aid, Walgreens, and Walmart collectively as "National Retail Pharmacies" and including those defendants among "the 'Distributor Defendants'"); *County of McLennan v. Purdue Pharma, et al.*, No. 17-op-45075, Dkt. #46 ("*McLennan County* Short-Form Complaint"), at 1 (incorporating "the common factual allegations identified and the RICO causes of action included in the [*Summit County* Complaint]" and adding as defendants, among others, Albertsons and Target entities).[16]  Likewise, the *Blackfeet Tribe* Complaint includes Albertson's LLC among the "Distributor Defendants," who failed to "fulfill[] the fundamental duty of wholesale drug *distributors* to detect and warn of diversion of dangerous drugs for non-medical purposes." *Blackfeet Tribe* Compl. ¶ 81; *see also id.* ¶ 90 (alleging that "[a]t all times relevant to this Complaint, Albertson's [LLC]

---

[16] The *Summit County* Complaint included numerous allegations about dispensing practices, but as the above language shows, the claims actually asserted pertained to *distribution* and not to dispensing.  Indeed, in responding to motions to dismiss that complaint, Summit County clarified that it was not alleging violations of statutes or regulations applicable to retail sales.  *See* Dkt. #654 at 75 n.47.

*distributed* prescription opioids throughout the United States, including in the State and Plaintiff's Community specifically").

In any event, the existence of those filings by some municipalities prior to the Amendment Deadlines does not demonstrate that Plaintiffs unduly delayed in proposing the present amendments. The short-form complaints, in particular, were merely placeholders based on the then-available information. The present amendments—which rely on the operative complaint filed on July 14, 2021 in *Cobb County v. Purdue Pharma, LP, et al.* (Dkt. #3787, "*Cobb County* Complaint") for proposed claims against Ahold Delhaize, Target, and Winn-Dixie, and on the operative complaint filed on July 14, 2021 in *Tarrant County v. Purdue Pharma, LP, et al.* (Dkt. #3789, "*Tarrant County* Complaint") for proposed claims against Albertsons[17]—reflect significantly more detailed allegations based on information that emerged after May 2019, and include *dispensing* claims. *E.g.,* *Cobb Cnty.* Compl. ¶ 743; *Tarrant Cnty.* Compl. ¶ 743.

The history of the Tarrant County and Cobb County cases further illustrates the material differences between what Plaintiffs knew as of May 2019 and what they discovered later. Tarrant County filed a short-form complaint on March 15, 2019, which incorporated "the common factual allegations identified in the RICO causes of action included in the [*Summit County*] Complaint." Case No. 1:18-op-45274, Dkt. #12 at 1.

---

[17] *See* AD Mot. 1 (referencing *Cobb County* Complaint); Target Mot. 1 (same); WD Mot. 1 (same); Alb. Mot. 1 (referencing *Tarrant County* Complaint). As Target notes, the Target Motion mistakenly refers to "claims substantially similar to those asserted against *manufacturers*" in the *Cobb County* Complaint; it should state "chain pharmacies."

Tarrant County alleged that "[h]aving reviewed the relevant ARCOS data," which it specified consisted of the information provided in the PEC's reports as of that time, it was adding, among others, certain pharmacies as "Additional *Distributor* Defendants." *Id.* at 2-3. Those newly added defendants did not include any of the JOCPs.

After its case was selected as a bellwether, in *July 2021* Tarrant County again amended its complaint (as permitted by the Court), but this time added claims—including dispensing claims—against Albertsons and several other pharmacies. *E.g.,* *Tarrant Cnty.* Compl. ¶ 1 (identifying pharmacy defendants); ¶¶ 429-53 (alleging "Albertsons Failed to Guard Against Diversion in Distributing *and Dispensing* in the County and Surrounding Areas" and "Albertsons Failed to Effectively Identify and Investigate *Dispensing* Red Flags at Its Pharmacies") (bold omitted). Among the facts in support of its claims, Tarrant County referred to market share data that had not been included in the PEC's reports before May 2019. *E.g., id.* ¶ 431 (noting that in the city of Lake Worth within Tarrant County, "a single Albertsons' pharmacy purchased almost 1.5 million dosage units of oxycodone and hydrocodone between 2006 and 2014," which given Lake Worth's population meant "that one Albertsons pharmacy dispensed approximately 322 pills per resident (or approximately 36 pills per resident per year)").

Cobb County likewise filed a short-form complaint on March 15, 2019, that incorporated the common factual allegations from the *Summit County* Complaint. Case No. 1:18-op-45817, Dkt. #6 at 1. Cobb County stated that "[h]aving reviewed the relevant ARCOS data," which consisted of reports provided "[p]ursuant to the Court's November 8, 2018 Order Regarding Plaintiff's Motion for Modification of CMO-1 (Dkt. 1106)," it was

adding certain pharmacy defendants, including Publix (another of the proposed defendants subject to the present motions), but only in their capacities as *distributors*. *Id.* at 2-3, 37-38 (including Publix among the "Additional Distributor Defendants").  Cobb County further amended its complaint in July 2021 as authorized by the Court, and this time added *dispensing* claims against Publix (and others) based in part on further analysis of the then-available ARCOS data.  The County alleged, for example:

> The 22 Publix pharmacies in the County purchased and dispensed more than 17 million dosage units of oxycodone and hydrocodone from 2006 to 2014, the years for which ARCOS data is available.  The volume of opioids it shipped into, and dispensed from locations in, the County is so high as to raise a red flag that not all of the prescriptions being ordered could be for legitimate medical uses.  During that same time frame, Publix dispensed approximately 12% of the oxycodone and hydrocodone in the County.

*Cobb Cnty.* Compl. ¶ 473.

Tarrant County and Cobb County thus both added allegations in 2021 based on information they lacked in March 2019.  These Plaintiffs similarly lacked this information but, because they have not been selected as bellwethers, were not given the opportunity that Cobb and Tarrant were given to add dispensing claims once the information supporting those claims became available.

Given the facts detailed above and in Plaintiffs' opening briefs, whether Plaintiffs reviewed or were even aware of complaints filed on or before March 16, 2019 has no

bearing on whether good cause exists for the present amendments.[18]  Nor does it matter that dispensing claims in the bellwether cases "were based on existing law" (Joint Opp. at 17), as the present amendments reflect *facts* that have emerged since March 2019.

In *Thomas v. Tennessee Department of Transportation*, which the JOCPs cite, the Sixth Circuit held the district court did not abuse its discretion in denying a motion to add four state officials where the plaintiff "knew the identity of the individual defendants before th[e] deadline."  579 F. App'x 331, 334 (6th Cir. 2014).  The court of appeals noted the answer filed by the existing defendant, a government agency, had alerted plaintiff to its sovereign-immunity defense.  *Id.*  Presumably, then, plaintiff in that case was long on notice that claims against the agency might ultimately be dismissed, leaving him without a viable defendant.  Those circumstances differ greatly from this litigation, where Plaintiffs seek to assert claims based on the revelation of new facts.

Additionally, the plaintiff in *JS Products, Inc. v. Standley Law Group, LLP* sought to amend based on a court decision that "did not come to [plaintiff]'s attention" until after the amendment deadline, even though it was issued more than a month before the deadline.  2010 WL 2044709, at *2 (S.D. Ohio May 21, 2010).  Further, the defendant suffered prejudice because the expenses associated with its motion for judgment on the pleadings "would likely not have been incurred had plaintiff sought leave to amend in

---

[18] Nor do the JOCPs explain how even a perfectly diligent plaintiff could, consistent with its own and its lawyers' obligations to ensure a good faith basis for their filings, have asserted claims against pharmacy defendants by March 16, 2019 based on review of short-form complaints filed by other plaintiffs only one day before—as both the *Cobb County* and *Tarrant County* Complaints were.

timely fashion." *Id.*  The timing of the present amendments, by contrast, is not the product of an oversight, and they will impose no prejudice on the JOCPs.

The JOCPs point to other decisions where movants made tactical decisions that resulted in undue delay and the proposed amendments would prejudice defendants.  In *Commercial Money Center, Inc. v. Illinois Union Insurance Co.*, the district court determined the delay was "motivated by an attempt to reargue its failed theories and get a new 'bite at the apple.'"  508 F.3d 327, 347 (6th Cir. 2007).  That is, the issue the proposed amendment sought to rectify "was squarely presented by the Rule 12(c) motions, but [movant] chose to rely on the pleadings" to make its arguments.  *Id.*  The movant was thus "not entitled to wait in the wings for an adverse decision before asserting that the issue should not have been determined from the documents alone."  *Id.*  No such gamesmanship is present here—Plaintiffs have not even taken a first bite at the apple, let alone a second.  And unlike *Commercial Money Center*, these motions do not involve "post-judgment . . . competing interests in finality of judgments and the expeditious termination of litigation."  *Id.*

Similarly, while the plaintiff in *Morrison Enterprises, LLC v. Dravo Corp.* contended it could not have brought the claim in question before the court's summary judgment rulings, "[defendant]'s . . . answer and . . . response to [plaintiff]'s motion to strike gave [plaintiff] ample notice" of the claim.  638 F.3d 594, 610 (8th Cir. 2011).  And in stark contrast to this litigation, the plaintiff there sought leave to amend following an adverse summary judgment ruling and "just two months before trial."  *Id.*  Finally, in *IBEW Local 98 Pension Fund v. Best Buy Co.*, the plaintiff's choice to "prioritize[] the issue of class

23

certification on the remaining . . . claims rather than seeking amendment of the operative Complaint d[id] not satisfy the good cause standard."  326 F.R.D. 513, 523 (D. Minn. 2018). No such tactical decision accounts for the timing of the present amendments.

> **3.**     **That Plaintiffs Moved for Leave to Amend Seven Months After Receiving the Final ARCOS Data Is Neither Relevant to Nor Demonstrates Any Lack of Diligence.**

The JOCPs fault Plaintiffs for moving to amend several months after the PEC provided them with a report analyzing the 2006-2019 ARCOS data in September 2023. Joint Opp. at 18.[19]  The JOCPs' focus on "how much time [Plaintiffs] took to seek leave after learning the relevant information" (Joint Opp. at 15), regardless whether it was before or after the amendment deadline, is misdirected.  "Good cause is primarily measured by a party's due diligence in attempting to meet *the case management conference deadlines*," *Kaylor v. Radde*, 2005 WL 282851, at *2 (N.D. Ohio Feb. 3, 2005), not whether the party acted within a specific amount of time after receiving new information or after the deadline passed.  *See Stanich v. Hissong Grp., Inc.*, 2011 WL 1560650, at *4 (S.D. Ohio Apr. 25, 2011) ("The focus of the diligence issue under Rule 16(b) is not how quickly counsel moved to amend once he became aware of th[e] information."); *cf. Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) ("A plaintiff does not establish 'good cause' to modify a case schedule . . . where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the

---

[19] The JOCPs contend Plaintiffs waited nine to ten months after receiving the updated information, but this is incorrect.  In fact, the PEC moved in April 2024—*seven* months after September 2023—to lift the stay to permit motions for leave.  Dkt. #5411.

complaint *before the deadline*.").

While the JOCPs note the Sixth Circuit determined in *Leary* that the movants "waited a long time after having learned of the facts in support of their proposed new claims" (Joint Opp. at 13), the court did so in evaluating whether "despite their diligence [plaintiffs] could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). Similarly, in its prior motion-to-amend ruling in this MDL, which the JOCPs also cite, the Sixth Circuit explained that given the April 2018 amendment deadline at issue, the proper question under Rule 16 was whether in November 2019 "the Counties showed good cause for their failure to make the amendments 19 months earlier." *Nat'l Prescription Opiate Litig.*, 956 F.3d at 843. That the plaintiffs "conceded in their brief that they had chosen not to bring their claims earlier" (Joint Opp. at 13) merely informed that analysis; it did not constitute an independent consideration untethered to the scheduling order's deadline.

Neither decision undermines the principle that once the movant surpasses the amendment-deadline inquiry, any additional time lapse in moving for leave to amend falls under Rule 15's "undue delay" analysis, which turns on whether the non-movant can demonstrate significant prejudice. The JOCPs do not, and cannot, articulate any cognizable prejudice they would suffer should these amendments proceed.[20]

---

[20] The out-of-Circuit decisions the JOCPs cite are not to the contrary. In *Sturdivant v. Blue Valley Unified School District*, the court looked primarily to whether the plaintiff "ha[d] the information necessary to support the proposed amended complaint at the time of the August 1, 2019 [scheduling order] deadline." 2020 WL 1320727, at *2 (D. Kan. Mar. 20,

Even assuming for argument's sake the JOCPs' "time . . . after learning the relevant information" standard were correct, it remains true that (as the JOCPs claim to appreciate) "factual context matters" (Joint Opp. at 14). While a months'-long span between when information became available and when the movant sought leave might weigh against good cause in an actively litigated case, where any significant delay could threaten to upend the proceedings and cause prejudice to the existing parties, there is no such issue in a litigation that has been stayed for seven years. Given how the parties and the Court have handled these massive and complex proceedings—actively engaging in bellwether cases, sequenced over multiple years by defendant types, and staying these (and other) actions in the meantime—Plaintiffs have acted with reasonable diligence. The JOCPs note "[t]he PEC has identified no cases in which a scheduling order was modified to permit amendment in [an] instance such as this one." Joint Opp. at 15. That is true, *because there is no other litigation like this one*. And that is why the JOCPs' attempt to impose an arbitrary time limit on the present motions based on circumstances in run-of-the-mill

---

2020). Further, it is unclear whether the court considered "why [plaintiff] waited three months after receiving the documents she relies upon to request leave to amend her complaint" as relevant to her diligence or to the question of prejudice to defendant. *Id.* at *3; *see also id.* ("If Plaintiff had sought leave to amend in November, December, or even January, that would have given the parties sufficient time to complete any additional discovery into this new claim (or for [defendant] to request an extension of the discovery deadline) . . . ."). And in *Abell v. Pacira Pharmaceuticals, Inc.*, the plaintiff "did not broach the possibility of filing a motion to amend at either [of two] status conferences, despite being in possession of facts she believed expanded her claim," and instead "waited until the date of the final pretrial conference." 2023 WL 1360304, at *4 (D.N.J. Jan. 31, 2023). Finally, Plaintiffs submit that to the extent *Sturdivant* or *Abell* considered post-deadline delay under Rule 16 rather than Rule 15, those decisions are inconsistent with how the Sixth Circuit and district courts within it have analyzed good cause.

cases fails.

Even aside from the unprecedented nature of these proceedings, the cases on which the JOCPs rely are readily distinguishable. Ahold Delhaize notes, for example, the court in *Johnstone v. CrossCountry Mortgage, LLC* determined that plaintiffs' failure to seek leave "for over eight months" after obtaining new information "indicates undue delay and a lack of diligence." 2024 WL 1530803, at *6 (N.D. Ohio Apr. 9, 2024). But plaintiffs there moved for leave "[o]n the last day of class discovery" and "acknowledged that they knew" the facts giving rise to their proposed claim eight months before filing the motion, yet they "submitted no evidence or argument to excuse or explain their dilatory failure to seek leave." *Id.* at *2, *6, *7. None of those factors applies here.[21]

So, too, with respect to *Denis Cimaf, Inc. v. Fecon, Inc.*, which Ahold Delhaize also cites. Notably, even though the plaintiff moved for leave "more than fourteen months after the agreed [amendment] deadline had passed," the court determined that because the amendment deadline "created a tight window between the start of discovery and the cutoff to amend," the delay, "in and of itself, d[id] *not* preclude a finding of diligence." 2020 WL 13169496, at *4 (S.D. Ohio May 26, 2020). Other factors, however, weighed against good cause—including prejudice to the proposed and existing defendants given that "fact discovery ha[d] closed, the Court ha[d] issued its Claim Construction, and only

---

[21] Plaintiffs respectfully submit that the court in *Johnstone* erred in considering delay after the amendment deadline had passed in assessing diligence under Rule 16, rather than under Rule 15. Given the facts of that case, however, there is no reason to expect the court would have ruled differently in applying Rule 15.

dispositive motions and trial remain[ed]."  *Id.* at *5.  Once again, that procedural posture is entirely distinct from Plaintiffs' cases.  The same court denied a motion for leave in *Lynch v. Hitachi Astemo Americas, Inc.* because the plaintiff there "was careless in omitting her [proposed] claims from her *initial* Complaint" and she "had all the information needed to amend her Complaint well in advance of the amendment deadline."  2024 WL 4753547, at *4 (S.D. Ohio Nov. 12, 2024).  Neither consideration applies here.

In short, as the JOCPs' own caselaw reflects, good cause is not assessed in a vacuum and there are no bright-line timetables that bind the inquiry.  As relevant to the present motions, "[w]hile a substantial amount of time has passed on the calendar since this litigation began, the parties remain in the relatively early stages of the case," and "the posture of the case and the spirit of the rules favor modification of the case management order under Rule 16(b)."  *Pandora Distrib., LLC v. Ottawa OH, L.L.C.*, 2015 WL 968007, at *2 (N.D. Ohio Mar. 4, 2015).

Additionally, as the JOCPs note, "countless mediations are underway" in this MDL.  Joint Opp. at 19.  This Court has previously declined to "penalize [plaintiff] for attempting to settle the dispute and, in turn, to conserve client resources by waiting to amend the complaint until it was clear that the litigation would proceed."  *NOCO Company v. Lapidus*, 2022 WL 1803039, at *2 (N.D. Ohio June 2, 2022).  The same conclusion is warranted here.

### B. The JOCPs Identify No Cognizable Prejudice They Would Suffer If the Court Permits the Amendments.[22]

Because "all amended pleadings result in at least some prejudice to the non-moving party who will have to defend the claims on the merits," the relevant question for these motions is whether the JOCPs have identified "*unique harm* that justifie[s] denying the Motion[s]." *NOCO*, 2022 WL 1803039, at *3. It is thus not enough to claim (as Ahold Delhaize does) that a "delay of more than five years is inherently prejudicial" (AD Opp. at 7). The JOCPs come nowhere close to demonstrating cognizable prejudice.

The inclusion of the proposed claims and allegations cannot impose any *additional* discovery or briefing burden on the JOCPs, who thus far have faced *no* discovery or motion practice in these cases, and in some instances even in previous cases in the MDL that included them as defendants. *See, e.g.*, Target Opp. at 2 (noting that "[b]eginning in 2019, Target was named as a defendant in seven cases in this MDL," and acknowledging "[n]one of these cases has been actively litigated to date"); *cf. Drips Holdings, LLC v. Teledrip LLC*, 2021 WL 6206347, at *4 (N.D. Ohio Dec. 7, 2021) (cited in WD Opp. at 9 n.6) (denying leave to amend "at [a] late stage in the litigation," as "the amendment would

---

[22] Undue prejudice to the non-movant is a factor with respect to amending a scheduling order under Rule 16 and with respect to granting leave to amend under Rule 15. The Rule 16 analysis focuses on the prejudice, if any, of allowing amendment beyond the time set forth in the scheduling order, while the Rule 15 analysis focuses on the prejudice, if any, of allowing amendment at the present time. But here that is a distinction without a difference because these cases have been stayed since before the Amendment Deadlines. The JOCPs will thus suffer no cognizable prejudice from the amendments, whether viewed through the lens of Rule 16 or Rule 15. This does not amount to "conflat[ing]" the Rule 15 and 16 standards (Joint Opp. at 6-7); it merely reflects the obvious overlap of the respective prejudice analyses in this instance.

compel the Court to postpone its discovery and dispositive motion deadlines even further, thus resulting in a later trial date," and "would force the Defendants to expend more attorneys' fees in conducting additional discovery and pursuing potential crossclaims"), *adopted by* 2022 WL 29787 (N.D. Ohio Jan. 3, 2022).  The JOCPs cannot show they would be in any different position had they been added as defendants by the Amendment Deadlines rather than now.  That should end the analysis.

The JOCPs summarily assert (1) Plaintiffs are "attempting to bring new claims to avoid the effect of prior rulings," (2) the JOCPs would confront "challenges" in "seeking discovery" from Plaintiffs, and (3) allowing these amendments would frustrate the Court's objective of promoting settlements.  Joint Opp. at 18-19.  But the JOCPs provide no credible basis to support any of these claims, nor any of the related individual arguments by particular pharmacies.  None of them withstands scrutiny.

*First*, nothing in the record suggests Plaintiffs are seeking "to avoid the effect of" any prior rulings.  The JOCPs point to the PEC's reference to discovery that supported bellwether trial verdicts against other chain pharmacies, which provided new information not available to Plaintiffs as of the Amendment Deadlines.  The JOCPs contend that "[t]o the extent the success of those trials influenced the strategy against other defendants here," permitting Plaintiffs to amend "only after having tested those theories" would prejudice the JOCPs.  Joint Opp. at 19.  But they fail to explain how relying on relevant discovery or trial evidence equates to "avoid[ing] the effect of" prior rulings.  In fact, it is the opposite: Plaintiffs are *relying*, in part, on prior proceedings in support of their amendments.  Rule 16 does not preclude diligent litigants from doing so.

30

The JOCPs' reliance on *Leary* is again misplaced, as their own parenthetical shows. *See* Joint Opp. at 18-19 ("'because we previously evaluated the merits of Plaintiffs' [due process] claims and ruled that Plaintiffs received sufficient pre-deprivation due process, the prejudice to Defendant is even more apparent' if the moving party were permitted to re-plead their due process claims as breach of contract claims") (alteration in original) (quoting *Leary*, 349 F.3d at 908). Plaintiffs are not attempting to replead claims that were dismissed, as in *Leary*. Nor do these motions come "almost two years after the scheduling order's discovery and dispositive motion deadlines had passed." 349 F.3d at 907.[23]

*Second*, the JOCPs assert many Plaintiffs "have never put a litigation hold in place, despite some of the relevant information becoming available in 2021, 2022, and 2023," which "will deprive the affected defendants of the opportunity to engage in meaningful discovery." Joint Opp. at 19; *see also* WD Opp. at 11 (contending "the Court cannot reasonably assume that Plaintiffs implemented legal holds that would adequately protect the otherwise discoverable information that is relevant to the Plaintiffs' claims and Winn-

_____

[23] The plaintiff in *Glenn v. Corizon Medical, Inc.*, which Target cites, sought leave to add new defendants after the primary existing defendant "had seemingly conducted its discovery, and expended considerable resources, to successfully argue its motion for summary judgment," and "would undoubtedly have to conduct additional discovery, prepare new defenses on behalf of the four [new] individuals, and file additional dispositive motions." 2020 WL 1921658, at *5 (E.D. Mich. Apr. 21, 2020), *objections overruled sub nom. Glenn v. Corizon Healthcare, Inc.*, 2020 WL 3867279 (E.D. Mich. July 9, 2020). The plaintiff thus could not satisfy the "increased burden to show justification for failing to move earlier" that applies "[w]hen amendment is sought at a late stage in the litigation." *Id.* As these cases, by contrast, remain in their infancy, adding the JOCPs now will impose no prejudice on them. In the same vein, Plaintiffs have not (unlike in *Glenn*) "wait[ed] to see how things would pan out with the existing cast of defendants," *id.*, as there has been no prior motion practice or other significant proceedings in these cases.

31

Dixie's defenses"). But such "unsupported speculations do not rise to the level of articulable prejudice." *Kanagy v. Midlands Millroom Supply, Inc.*, 2020 WL 1275289, at *2 (N.D. Ohio Mar. 17, 2020); *see also Hedrick v. Ohio Health Corp.*, 2020 WL 13659064, at *4 (S.D. Ohio Oct. 8, 2020) (plaintiff's argument that allowing defendant to amend its answer after the deadline could cause "the resolution of th[e] case [to] be delayed and require [plaintiff] to expend additional resources" was "not well-developed and relie[d] exclusively on speculation").

Further, "[t]his Court has already stated that whether a plaintiff implemented a litigation hold is not a precondition to allowing amendment." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 4910299, at *1 (N.D. Ohio Nov. 15, 2024); *see also* Dkt. #5517. With good reason: nothing in the record suggests any failure to institute a litigation hold has resulted in the destruction of any information relevant to Plaintiffs' proposed claims, let alone whether any such destruction would materially impact the JOCPs' ability to pursue any available defenses. *See* Dkt. #5763 (PEC's Opp. to PBMs' Mot. to Strike) at 6-12 (discussing lack of evidence of spoliation). Denying leave to amend based on the JOCPs' baseless hypothetical would impose the ultimate sanction on Plaintiffs—effectively a dismissal of their claims—without any finding regarding the existence and extent of any spoliation or the degree of any fault. *See Mann v. CSX Transp., Inc.*, 2009 WL 3766056, at *6 (N.D. Ohio Nov. 10, 2009) (Polster, J.) (to warrant sanctions, "the destruction of evidence must have caused prejudice to the party alleging spoliation," which "occurs where the [non-movant]'s actions impair the [movant]'s ability to go to trial or threaten to interfere with the rightful decision of the case," and "the severity of the sanctions

should correspond with the degree of fault"). The Court should decline the JOCPs' invitation to error.

Once again, the JOCPs' own caselaw undermines them. As they acknowledge, in *Korn v. Paul Revere Life Insurance Co.*, 382 F. App'x 443 (6th Cir. 2010), "discovery had closed, and the non-moving party would have been effectively prevented from exploring its claims" were the court to allow the proposed amendment. Joint Opp. at 19 (citing *Korn*, 382 F. App'x at 450). As discovery has not even begun in Plaintiffs' cases, the "clear[] prejudice[]" due to the defendant's "inability to freely gather information about [plaintiff]'s new claim" in *Korn* is absent here. 382 F. App'x at 450. Similarly, in *Commerce Benefits Group, Inc. v. McKesson Corp.*, which Ahold Delhaize cites, the Sixth Circuit held the district court did not abuse its discretion in denying leave where "[t]he case ha[d] already progressed past the dispositive discovery deadline and the original filing deadline for dispositive motions," and one defendant "had already moved for summary judgment." 326 F. App'x 369, 376 (6th Cir. 2009). The addition of new claims thus "would have resulted in prejudice to defendants *at such a late stage in the litigation*." *Id.* Nor could the plaintiff "adequately explain its delay in bringing the claims," the factual bases for which "existed at the beginning of the lawsuit." *Id.* The circumstances in that case, like the JOCPs' other authorities, bear no resemblance to these proceedings.

*Third*, the JOCPs fail to explain how allowing these amendments "while countless mediations are underway, and after the JPML has closed the MDL proceedings" (Joint Opp. at 19), would frustrate the Court's objective of promoting settlements. Presumably the opposite is true: allowing Plaintiffs to assert their claims will provide more specificity

33

as to the proposed defendants' potential exposure within the MDL, which could help the parties define the contours of any global resolution.

*Fourth*, Target contends it "was entitled to rely on the pleadings as being 'fixed' after the amendment deadline" and to make unspecified "decisions" based on the cases pending as of the deadline. Target Opp. at 7. Target's vagueness is both telling and dispositive, and any assumptions it may have made about the "fixed" nature of cases that have not even reached discovery were at best premature. In the same vein, Winn-Dixie asserts it would be prejudiced simply by the addition of "more parties to the cases and additional claims that had not previously been asserted." WD Opp. at 11. But the vast majority of amendments to pleadings entail adding new claims or parties; those general developments impose no "*unique* harm" on Winn-Dixie or any other proposed defendant here, *NOCO*, 2022 WL 1803039, at *3—especially given the absence of any prior motion practice or discovery in these cases for the past seven years. Nor does the fact that these amendments would "prolong Target's [or any other proposed defendant's] involvement in this MDL" (Target Opp. at 7) amount to cognizable prejudice.

In short, the only "prejudice" the JOCPs will suffer is the need to participate in discovery (whenever the stay is lifted) and otherwise defend against Plaintiffs' claims. But those are burdens *any* defendant faces in litigation; they do not constitute the type of specific, individualized harm necessary to preclude amendment. That is especially true where, as here, some of the JOCPs already have litigated similar claims in related proceedings. *See In re Nat'l Prescription Opiate Litig.*, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022) (no cognizable prejudice where "the only prejudice [proposed defendant]

34

identifies is its litigation costs," which the proposed defendant "has known it could suffer since it was added to the MDL in 2019").  Moreover, this generalized "prejudice" does not arise from the filing of amendments now rather than by the Amendment Deadlines.

## II.    There Are No Other Grounds to Deny Leave to Amend.

### A.    Plaintiffs Easily Satisfy Rule 15's Liberal Standard.

While Plaintiffs have never suggested Rule 15 confers an "'absolute or automatic'" right to amend, Joint Opp. at 20 (quoting *Tucker v. Middleberg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008)), "the case law in this Circuit manifests liberality in allowing amendments to a complaint."  *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). The Rule's permissive standard "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings."  *Black v. Ohio Indus. Comm'n*, 2021 WL 4399736, at *1 (S.D. Ohio Sept. 27, 2021) (alteration in original).  There is thus "a presumption in favor of the moving party."  *Kaylor*, 2005 WL 282851, at *3.

Further, "[i]n determining what constitutes prejudice" under Rule 15, "the court considers whether the assertion of the new claim . . . would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction."  *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994).  The Sixth Circuit has indicated, moreover, an "important[]" consideration is whether "the amendment embodies a legally valid [claim]."  *Id.* at 663.  The JOCPs fail to demonstrate *any*—let alone *significant*—prejudice, and Plaintiffs plainly seek to assert legally viable claims.  Rule 15 is easily satisfied here.

35

The JOCPs reiterate their assertion that "many of the Plaintiffs have failed to implement litigation holds, or have done so belatedly, resulting in the *potential* loss of information which may have otherwise been preserved."  Joint Opp. at 13.  The word "potential" entirely undermines the JOCPs' argument.  In fact, neither the JOCPs nor any other proposed defendant has demonstrated (1) any actual loss of information due to the absence of a litigation hold, (2) that any such information was relevant to Plaintiffs' claims, (3) that the JOCPs would suffer any prejudice due to the loss of any such information, (4) that any Plaintiff knowingly or even negligently spoliated any evidence, or (5) that more information would be available now had Plaintiffs added the proposed defendants to their complaints by the Amendment Deadlines.  The JOCPs' unfounded speculation cannot preclude Plaintiffs from bringing their claims.  This is all the more true because each Plaintiff was required to provide a Plaintiff Fact Sheet and produce certain documents in connection with it.  *See* Dkt. #638 (Fact Sheet Implementation Order); Dkt. #638-1 at 5-6 (template Government Plaintiff Fact sheet calling for, *inter alia*, the production of several categories of documents "for the period of January 1, 2008 to present"); Dkt. #941 at 6-7.  Thus, the JOCPs already possess substantial information with respect to each Plaintiff.

Additionally, because the JOCPs cannot demonstrate any prejudice as a result of the proposed amendments, even if Plaintiffs did unduly delay in moving to amend (as discussed *supra* pp. 6-27, they did not), Rule 15 would nonetheless permit the amendments.  "Delay alone . . . does not justify the denial of leave to amend.  Rather, the party opposing a motion to amend must make some *significant showing* of prejudice to

3270551.1

prevail." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). As detailed above, the JOCPs have made *no showing* of prejudice. Indeed, "even amendments made on the eve of trial are permissible when there is no demonstrable prejudice." *Stern v. Felmet*, 2006 WL 8443095, at *1 (S.D. Ohio Aug. 7, 2006). The JOCPs' perfunctory prejudice challenge falls flat.

The JOCPs highlight the Sixth Circuit's observation that "delay will at some point become undue, placing an unwarranted burden on the court, or prejudicial, placing an unfair burden on the opposing party." *E.g.*, WD Opp. at 5 (quoting *Com. Money*, 508 F.3d at 347). But that caveat does not apply where, as here, virtually no active litigation has occurred in the subject proceedings and they are far from trial.

The present circumstances thus bear no similarity to cases such as *Commercial Money*, where the district court determined "it would be grossly inequitable to allow [movant] to amend itself out from under the judgment of liability," which "would place an unfair burden on the opposing party." 508 F.3d at 347. Nor do these proceedings resemble *Wade v. Knoxville Utilities Board*, where the plaintiff "fail[ed] to offer any explanation or justification for the lateness of the motion to amend" and did not "dispute the finding of prejudice to the defendant that would result if plaintiff had been allowed to add the [proposed] claims" when "[t]he dispositive motion deadline ha[d] already past, and defendant ha[d] filed a motion for summary judgment on all claims alleged in the original complaint." 259 F.3d 452, 459 (6th Cir. 2001). The same is true of *Church Joint Venture, L.P. v. Blasingame*, where the proposed amendment came "after discovery and dispositive motions were complete and the remaining matters set for trial."

947 F.3d 925, 934 (6th Cir. 2020).

Winn-Dixie also elliptically cites the Sixth Circuit's affirmance of a denial of leave to amend in *Pittman v. Experian Information Solutions, Inc.*, where "'the plaintiff was long aware of the basis for the claim to be amended.'"  WD Opp. at 6 (quoting 901 F.3d 619, 642 (6th Cir. 2018)).  But the plaintiff in *Pittman* "provided no excuse or justification for the delay" and "allowing amendment months after the close of discovery and after dispositive motions were filed and briefed would have resulted in significant prejudice to the [defendants]."  901 F.3d at 642.  None of those factors exists in these cases.[24]

---

[24] Winn-Dixie's other cases, which it selectively quotes, are likewise inapposite.  *See United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 454 (6th Cir. 2024) ("Despite sufficient opportunity, relators did not formally seek leave to amend *before the entry of judgment*.  This is, at the very least, dilatory."); *Knight Cap. Partners Corp. v. Henkel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019) (district court did not abuse its discretion in denying leave where plaintiff asked to bring new claim "on the day before discovery closed," which "rais[ed] an inference of prejudice against its opponent," and failed to "explain[] its tardiness"); *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 445 (6th Cir. 2014) (undue delay where plaintiff sought leave to amend "more than two months *after* the court granted summary judgment to [defendant] and almost a year after the close of discovery") (emphasis in original); *Powell-Lee v. HCR Manor Care*, 231 F. App'x 438, 444 (6th Cir. 2007) (no abuse of discretion where district court denied leave "essentially because it found no justification for plaintiff's delay in seeking to amend until after discovery had closed and after [defendant]'s dispositive motion had been filed"); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752-53 (6th Cir. 2002) (no abuse of discretion in denying leave to amend where "the case was ready for trial"); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001) (leave denied where four months earlier the district court "gave Plaintiff an opportunity to cure deficiencies in his complaint and Plaintiff declined to do so"); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (leave denied where plaintiff "delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed"); *Cassidy v. Teaching Co., LLC*, 2014 WL 12717971, at *3 (S.D. Ohio Aug. 19, 2014) (defendant would "suffer significant prejudice by the proposed amendment," as "discovery [wa]s scheduled to close in slightly more than two (2) months"); *Milner v.*

As the Sixth Circuit noted in reversing the denial of leave to amend in *Security Insurance*, "[i]n focusing on [plaintiff]'s 16-month delay in filing its motion to amend, the court overlooked the fact that the action had been dormant for 13 of those months," and despite a grant of partial judgment on the pleadings, "the remainder of the case was at its earliest stage of pretrial activity," as "[t]he discovery cut-off and trial dates had not been set." 64 F.3d at 1009.  The court of appeals' reasoning applies equally here.

Finally, regarding whether denying these motions would "prevent [Plaintiffs] from bringing a timely action in another jurisdiction," *Phelps*, 30 F.3d at 663, the JOCPs indicate they would oppose any attempt to assert Plaintiffs' proposed claims in separate standalone cases.  *E.g.*, AD Opp. at 16 n.15 (contending Plaintiffs "do not address how many (if not all) of their claims would not be time-barred").  While Plaintiffs believe they have strong arguments regarding, for example, the timeliness of their claims should they be forced to file them separately, the likelihood that the JOCPs (and the other proposed defendants) would challenge those claims further supports permitting Plaintiffs to pursue them in their existing cases.

---

*Biggs*, 2012 WL 4512496, at *4 (S.D. Ohio Oct. 2, 2012) (plaintiffs "sought to add [a] host of new parties and claims not clearly related to the ongoing litigation . . . more than a year after the original complaint was filed *and more than two months after the close of discovery*"), *supplemented by* 2013 WL 1401370 (S.D. Ohio Apr. 5, 2013), *aff'd*, 566 F. App'x 410 (6th Cir. 2014); *In re KDI Corp.*, 119 B.R. 594, 599 (Bankr. S.D. Ohio 1990) (where claimant's original proof of claim "was consciously and deliberately framed to preserve the position of claimant pending the outcome of [a related] suit," claimant unduly delayed in waiting eight years after the related suit was resolved to move to amend).

**B.      Plaintiffs Have Fully Complied with the Court's May 2024 Order and Rule 7.**

The JOCPs assert Plaintiffs' motions contravene this Court's May 2024 Order authorizing Plaintiffs to seek leave to amend, which directed that the motions must address "***each individual*** case" (Dkt. #5455 at 2 (emphasis in original)), as well as Rule 7's requirement that a motion "state with particularity the grounds for seeking an order." They are wrong on both counts.

The PEC and Plaintiffs did exactly what the Court ordered, identifying each case/Plaintiff, which defendants the Plaintiff intends to add, which bellwether allegations and claims each Plaintiff proposes to incorporate, and why good cause exists to permit these amendments. *See* Exs. 1-4 (modified Plaintiff charts for each of the JOCPs); Dkt. #5566-1 (original Plaintiff chart for Ahold Delhaize); Dkt. #5567-1 (original Plaintiff chart for Albertsons); Dkt. #5571-1 (original Plaintiff chart for Target); Dkt. #5572-1 (original Plaintiff chart for Winn-Dixie). Indeed, the Court specifically prohibited Plaintiffs from filing separate motions, requiring them, instead, to join together to file one consolidated motion for each defendant family as to which any Plaintiff sought leave to amend. That the PEC attempted, successfully, to streamline this process for the benefit of all parties and the Court is logical and simply reflects the significant similarities among these cases. It would hardly promote the "just, speedy, and inexpensive determination" of these proceedings, Fed. R. Civ. P. 1, to compel Plaintiffs to submit thousands of pages of redundant briefing on these common issues.

The JOCPs fail to explain how the motions' references to allegations in existing complaints against some of these same entities or other similarly situated defendants

"deprives the defendant groups and the Court of the opportunity to meaningfully understand the proposed amendments" (Joint Opp. at 21).  The JOCPs fault Plaintiffs both for "pointing to an existing complaint to show what their proposed amendments would look like" *and* for failing to previously submit short-form complaints that provide *less* detail (*id.* at 17, 21).  Why the approach the JOCPs claim Plaintiffs should have taken by the Amendment Deadlines now "cannot be countenanced" (*id.* at 21) is a mystery.

In light of the above considerations, the JOCPs' reliance on the Sixth Circuit's admonition that "the cases within an MDL retain their separate identities," *Nat'l Prescription Opiate Litig.*, 956 F.3d at 845, is misplaced.  Plaintiffs are not "imping[ing]" the JOCPs' rights in service of "creat[ing] efficiencies in the MDL generally."  *Id.* Permitting Plaintiffs to amend in this fashion falls well within the Court's "broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL."  *Id.*

Albertsons erroneously contends that "[b]y relying exclusively on state-wide or county-wide [ARCOS] data" in calculating market share, city and tribal entity Plaintiffs "have failed to adhere to this Court's directives" in the May 2024 Order that they provide factual allegations specific to each case (Alb. Opp. at 4).  But allegations about the state or county in which a tribal entity or a city is located *are* allegations specific and relevant to those Plaintiffs.  As this is the best data that is (or ever would have been) available to these Plaintiffs, their reliance on this information—which they did not have in time to meet the Amendment Deadlines—satisfies the standards of Rules 15 and 16 and complies with the Court's directives to provide Plaintiff-specific justifications for each MLA.

41

Albertsons' attempt to substitute its own market share calculations (Alb. Opp. at 2) fares no better.  At no time has this Court held or even suggested that a 5% market share is a requirement for asserting claims against any proposed defendant, and the Court need not determine whether Albertsons in fact has that market share in any Plaintiff's jurisdiction to grant its motion for leave to amend.  Rather, the Court need only determine that each Plaintiff has shown good cause, including, with respect to market share data, that the information on which Plaintiffs now rely was not available at the time of the Amendment Deadlines.  Albertsons' quibbles with how Plaintiffs interpret the data relevant to their claims do not change the undisputed fact that Plaintiffs did not previously have this information.

Further, in recently denying Publix's motion seeking dismissal from existing MDL cases, the Court noted those plaintiffs have "suppl[ied] statistics showing they likely have a factual basis for amending their complaints to state dispensing claims."  Dkt. #6124 at 2 n.3.  Those statistics are based on the same ARCOS data on which Plaintiffs rely for their proposed claims against the JOCPs.  Accordingly, that the bellwether plaintiff in *Town of Hull v. AmerisourceBergen Drug Corp., et al.*, No. 1:19-op-46172-DAP, ultimately determined to dismiss its claims against Albertsons after "it was determined that Albertsons' actual market share in the Town of Hull was 0.0088%" (Alb. Opp. at 4) does not bear on whether Plaintiffs have a plausible basis to bring their claims against the JOCPs.

Additionally, Albertsons' assertion that Plaintiffs improperly fail to "distinguish which Albertsons defendant entity(ies) will be the subject of each prospective

42

amendment" (Alb. Opp. at 6) is a non-starter.  This Court has rejected similar "group pleading" challenges regarding groups of *different* corporate entities, where the plaintiffs "allege[d] that each of the groups . . . share common regulatory and legal obligations and have breached their respective duties by undertaking the same variety of misconduct." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 2468267, at *14 (N.D. Ohio Apr. 1, 2019), *adopted in relevant part by* 2019 WL 3737023 (N.D. Ohio June 13, 2019).  Group-pleading arguments are even weaker where, as here, they relate to members of *the same corporate family*.  Plaintiffs have "provide[d] fair notice of the claims sufficient to permit the [JOCPs] to understand and respond to them."  *Id.* at *13.  No more is required.  For this reason, Albertsons' complaint that Plaintiffs do not "link" the testimony from *Balderas* "to each Albertsons defendant entity or the plaintiff jurisdictions in any meaningful way" (Alb. Opp. at 6) likewise fails.  Albertsons' arguments ring hollow especially given that it is actively litigating substantially similar claims in bellwether cases.

Nor do Plaintiffs' motions run afoul of Rule 7's particularity requirement, which "must" be "liberally constru[ed]."  *Intera Corp. v. Henderson*, 428 F.3d 605, 613 (6th Cir. 2005).  Plaintiffs have "reasonably specified," even if "in a succinct manner," the grounds for the motions and their proposed amendments.  *Id.*  That is all Rule 7 requires.  *See id.* (reversing dismissal with prejudice and remanding for judgment of dismissal without prejudice); *Black*, 2021 WL 4399736, at *2 ("a movant may provide the substance of the proposed amendment without providing the exact proposed language to be changed or added to the complaint," and "may . . . provide the substance of the proposed changes by making a general statement of intent").  Accordingly, Albertsons' assertion that

Plaintiffs "have made no effort to distinguish what causes of action they will pursue based on their own state law" (Alb. Opp. at 6), as well as Target's argument that Plaintiffs violated Rule 7 (and the March 2024 Order) by not "filing a proposed amended complaint or otherwise detailing their Target-specific allegations" (Target Opp. at 8), are unavailing. As the JOCPs note, "dispensing claims . . . were based on existing law" (Joint Opp. at 17). Given the extensive motion practice and rulings on substantively similar claims in these proceedings, the JOCPs' professed ignorance of the nature of Plaintiffs' proposed claims is not credible. This is especially true because Plaintiffs asserted state law claims in their original complaints; any permitted amendment would supplement (through the addition of new defendants), not supplant, those claims. The JOCPs thus know perfectly well what state law claims each Plaintiff proposes to assert.

In *Kitchen v. AngioDynamics, Inc.*, which Albertsons cites, this Court denied plaintiff's motion for leave to amend "to cure any alleged defects in the pleadings" notwithstanding that she "already amended her original complaint . . . after Defendants filed their original motion to dismiss . . . and put Plaintiff on notice that her common law claims must be asserted under the [Ohio Product Liability Act]," and her request for leave consisted of "a single sentence in her response brief." 2024 WL 3228414, at *6 (N.D. Ohio June 28, 2024) (Polster, J.). And in *Evans v. Pearson Enterprises, Inc.*, "[i]n her responses to the defendants' motions to dismiss and for summary judgment, [plaintiff] requested leave to amend in a single sentence without providing grounds *or* a proposed amended complaint to support her request." 434 F.3d 839, 853 (6th Cir. 2006). The contrast between those cases and these proceedings is obvious, as even Albertsons concedes. *See* Alb. Opp.

at 12 (acknowledging Plaintiffs "have submitted more than the single sentences referenced in [*Kitchen* and *Evans*]").[25]

### C.    The Proposed Amendments Are Not Futile.

"A proposed amendment . . . must be frivolous or legally insufficient on its face to warrant denial of leave to amend" as futile. *McNeill v. Bagley*, 2018 WL 3348876, at *8 (N.D. Ohio July 9, 2018) (Polster, J.); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss). Ahold Delhaize contends the proposed amendments are futile because Plaintiffs refer[] to . . . separate companies collectively as 'Ahold Delhaize'" and "plead no factual content that would allow the Court to draw the reasonable inference that each of these separate companies is liable for any misconduct alleged." AD Opp. at 8. Ahold Delhaize further asserts "[i]t is well-established that 'Rule 9(b) does not permit a plaintiff to allege fraud by indiscriminately grouping all of the individual defendants into one wrongdoing monolith.'" *Id.* at 10 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012)). These specificity challenges miss the mark.

_____

[25] Albertsons' suggestion that the court in *Evans* required "copies of a proposed amendment" (Alb. Opp. at 12) is incorrect: as noted above, the Sixth Circuit expressly referred to providing "grounds" <u>or</u> "a proposed amended complaint." Additionally, the court in *Mann Construction, Inc. v. Internal Revenue Service*, which Target cites, denied (without prejudice) plaintiffs' request for leave to amend where the district's local rules directed that "'[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion.'" 495 F. Supp. 3d 556, 581 (E.D. Mich. 2020) (quoting E.D. Mich. L.R. 15.1). No such requirement applies here. In any event, the Sixth Circuit subsequently reversed the district court's judgment of dismissal, rendering its determination on the request to amend moot. *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022).

As discussed above, this Court has rightly rejected similar arguments by other defendants in these proceedings.  That the various proposed Ahold Delhaize defendants "are independent and legally distinct entities" that purportedly "operate in different geographic regions, serve different markets, and have distinct and separate business purposes" (AD Opp. at 8) does not warrant a different result.  This is particularly so because facts regarding the relationships between those entities are principally within Ahold Delhaize's control, and no discovery has yet occurred.

As this Court has observed in rejecting similar arguments by generic manufacturers: "'The sufficiency of a fraud pleading tends to vary with the complexity of the transaction in question in the litigation.  When the issues are complicated or the transactions cover a long period of time, a number of federal courts have required less of the pleader.'"  *Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *2 (quoting Charles Alan Wright, et al., 5A FED. PRAC. & PROC. CIV. § 1298 (4th ed.)).  Further, "[t]he Sixth Circuit has relaxed pleading standards in certain contexts to aid in judicial efficiency." *Id.* (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509-10 (6th Cir. 2007)).  No one can reasonably dispute that the claims involved in this unprecedented litigation are complicated and encompass a long duration.  The level of specificity required of typical claims thus does not apply here, and in any event the cases Ahold Delhaize cites are readily distinguishable.

In *Cataldo*, for example, the Sixth Circuit affirmed this Court's dismissal of claims for breach of fiduciary duty under ERISA where the plaintiffs "ha[d] not pleaded the fraud with even the slightest amount of particularity."  676 F.3d at 551.  The court of

46

appeals observed:

> The complaint avers in relevant part that "[n]umerous Plaintiffs specifically asked (orally and in writing) [defendants] for assurances that they would receive the same T.A.P. benefits as all other . . . U.S. Steel employees.  In response, one or more of [defendants] promised the Plaintiffs that they would receive the same such benefits, made representations, and provided false, inaccurate, and/or misleading information to the Plaintiffs."

*Id.* (alterations and ellipsis in original).  The near absence of specificity is a far cry from the abundant facts relating to pharmacies' liability that the Court has extensively analyzed—and largely deemed sufficient to plead claims—in these proceedings.  *E.g.*, *Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *15 (largely denying pharmacies' motions to dismiss challenging, *inter alia*, dispensing-related claims under RICO and Oklahoma common law).  Ahold Delhaize's suggestion that the proposed amendments are deficient because Plaintiffs have not expressly reiterated those facts in these motions, as opposed to referencing the relevant bellwether complaints, is unavailing.

The present circumstances also differ significantly from *Shaughnessy v. Interpublic Group of Cos.*, where the proposed allegations "did not go beyond a bare recitation of the causes of actions alleged."  506 F. App'x 369, 373-74 (6th Cir. 2012).  The plaintiff in that employment action "failed to specify, *inter alia*, dates or even approximate time frames, the individuals involved in his alleged reports of misconduct, the individuals involved in his termination, the specific retaliatory actions taken against him, or any facts—even circumstantial facts—from which th[e] Court could infer that Plaintiff was terminated because he reported the misconduct of a fellow employee."  *Id.* at 374.  The court thus

deemed plaintiff's complaint futile because it lacked factual specificity sufficient to render his claims plausible.  *Id.*  The parties in this nearly eight-year-old litigation, by contrast, are well familiar with the essential facts giving rise to the pharmacies' liability, which are amply specified in the bellwether complaints to which Plaintiffs' motions refer. Any suggestion by Ahold Delhaize or other proposed defendants that they are unaware of the basis of Plaintiffs' claims is baseless.[26]  In any event, as Magistrate Judge Ruiz observed in rejecting other pharmacy defendants' similar pleading challenge, "'particular' allegations of fraud may demand different things in different contexts."  *In re Nat'l Prescription Opiate Litig.*, 2019 WL 2468267, at *13, *adopted in relevant part by* 2019 WL 3737023.  In this context, what Plaintiffs have done is sufficient.[27]

Finally, Ahold Delhaize's assertion that Plaintiffs' claims are "implausible"

---

[26] Ahold Delhaize's other caselaw is similarly distinguishable.  *See, e.g., Brookfield Glob. Relocation Servs., LLC v. Burnley*, 2020 WL 7711124, at *7 (N.D. Ohio Dec. 29, 2020) (denying leave to amend where, *inter alia*, plaintiffs "ha[d] not alleged any facts supporting a single element of either intentional or negligent infliction of emotional distress"); *Harris-Gordon v. Mortg. Elec. Registration Sys.*, 2010 WL 2465367, at *1 (N.D. Ohio June 11, 2010) (plaintiff failed to satisfy Rule 9(b) where "[t]he only precatory allegation against the defendant" in the proposed complaint was "Defendant Clunk Law Firm filed the fraudulent transfer on behalf of Defendants Mila Inc. and MERS in furtherance of the criminal enterprise in violation of 11 U.S.C. § 548 and 18 U.S.C. 96 [sic] § 1956"); *Castillo v. Morales, Inc.*, 2013 WL 12180875, at *4 (S.D. Ohio May 21, 2013) (proposed amendment to add defendants to claims under Fair Labor Standards Act "fail[ed] to plead what [the proposed defendants] did to control [corporate defendant]'s policies regarding tips, tip pools, distribution of tips, recording of hours work[ed], and so on to give them fair notice of how they [we]re alleged to have violated the FLSA").

[27] Given the above facts and authorities, Ahold Delhaize's argument that Plaintiffs are attempting to "disregard the corporate form" with respect to the Ahold Delhaize entities (AD Opp. at 11) is a non-sequitur.

because "[s]ome of the companies Amending Plaintiffs seek to add are not even reflected in the ARCOS data" (AD Opp. at 11) is unavailing for at least two reasons.

*First*, in relying on a purported expert analysis to support its contention that the ARCOS data "does not contain any entry for any Ahold Delhaize company [or in some instances, all but one or several companies] related to any political subdivision in [certain states]" (*id.* at 12-15), Ahold Delhaize improperly attempts to refute Plaintiffs' allegations with information outside of the pleadings.  "Under Rule 12(d), if the Court considers matters outside the pleadings, then a motion to dismiss is converted to a motion for summary judgment, in which case the parties must be given a reasonable opportunity to present all materials pertinent to the motion."  *Brown v. Cuyahoga Cnty.*, 2012 WL 12884820, at *1 n.1 (N.D. Ohio Apr. 12, 2012) (Polster, J.).  The Court, however, "is not obligated to consider the outside material and may choose instead to treat the motion as a motion to dismiss."  *Id.*  It should do so here.  *See id.* (the Court "disregard[ed] the outside material and treat[ed] Defendants' motion as a motion to dismiss"); *Elcometer, Inc. v. TQC-USA, Inc.*, 2013 WL 1433388, at *3 (E.D. Mich. Apr. 9, 2013) (determining it would be "improper for the Court to rely on the [defendant]'s declaration at th[e] [motion-to-dismiss] stage").

This is especially so because it is unclear what Ahold Delhaize or its purported expert mean by "related to any political subdivision."  Further, Plaintiffs are not privy to many of the facts relating to the structures of and relationships among the proposed Ahold Delhaize defendants, which could bear on the extent of each entity's misconduct with respect to the dispensing of opioids.  Factual questions or disputes should be

49

resolved through discovery, not at the pleading stage.  After all, "at this stage, the Court does not decide whether plaintiff's allegations are supported by evidence"; rather, "[t]hat will be determined in the context of a motion for summary judgment, pursuant to Fed. R. Civ. P. 56." *Montgomery v. Gove*, 2021 WL 4859345, at *2 (N.D. Ohio Oct. 19, 2021) (Polster, J.).

*Second*, Ahold Delhaize's argument fails in any event because even if a particular Ahold Delhaize entity did not dispense opioids to one or more of Plaintiffs' jurisdictions, it would nonetheless be subject to liability for (at least) conspiracy, which is encompassed by Plaintiffs' proposed amendments.  *See, e.g.*, *Cobb Cnty.* Compl. ¶ 683 (alleging all Defendants, including pharmacies, "agreed among themselves to increase the supply of opioids and fraudulently increase the quotas that governed the manufacture and supply of prescription opioids" for the purpose of "increas[ing] sales, revenue, and profit from their opioid products"); *In re Nat'l Prescription Opiate Litig.*, 2020 WL 1986589, at *6-7 (N.D. Ohio Apr. 27, 2020) (upholding, *inter alia*, dispensing-related claims against pharmacies under federal and state RICO statutes).[28]

---

[28] For the same reasons discussed above, Ahold Delhaize's assertion that the lack of entries in the ARCOS data related to certain Ahold Delhaize entities "exude[s] a lack of diligence" by Plaintiffs (AD Opp. at 14) likewise fails.  Further, Ahold Delhaize's reliance on *Stanich* is misplaced because there, "by [the movants'] own admission," they discovered the information that formed the basis for the proposed amendment before the amendment deadline.  2011 WL 1560650, at *4.  Specifically, the information "came to light through their own counsel's investigation in connection with preparing interrogatory responses on their behalf."  *Id.*

### D. Target's Request for "Clarification" Regarding the Court's Prior Order on the TPP Class Action Complaint Is Misplaced.

Target requests "clarification" that plaintiffs in the TPP class case "did not have leave to add Target as a new defendant in the TPP Class Action Complaint" and that Target "is entitled to notice and an opportunity to be heard on this issue if and when the TPP Class Action Complaint is ever litigated." Target Opp. at 10. But the Court's October 2024 Order already states the TPPs' "placeholder" class complaint "will not be litigated pending further Court Order (after due notice and an opportunity to be heard)." Dkt. #5666 at 3. No "clarification" is necessary. And even if it were, Target is too late in seeking it. *Cf. McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) ("a motion to reconsider must be submitted in a reasonably timely manner").

To the extent Target is concerned that Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("AFSCME DC 37")—which is also a named plaintiff in the TPP Class Action Complaint—is seeking to obtain leave to assert its TPP claims against Target through this motion, the issue is moot, as AFSCME DC 37 has withdrawn its present motion for leave with respect to Target. *See* Ex. 5C. The Court thus need not entertain Target's errant request for "clarification."

## CONCLUSION

For the above reasons and those detailed in Plaintiffs' opening briefs, the Court should grant the motions for leave to amend (Dkt. #5566; Dkt. #5567; Dkt. #5571; Dkt.

#5572) for the Plaintiffs listed in Exhibits 1-4 attached to this Reply.  To implement such leave, Plaintiffs respectfully request that the Court issue an order directing that:

1) Each Plaintiff who has sought to do so is permitted to amend its respective Complaint to add each of the JOCPs as a defendant;

2) After the Court rules on Plaintiffs' other pending motions for leave to amend, each Plaintiff will, within 30 days of the Court's final motion-to-amend ruling, submit to the Court a proposed order identifying all defendants against which the Plaintiff has been granted leave to amend (the "Proposed Order Deadline");

3) Within 14 days of the Proposed Order Deadline, Plaintiffs and the additional defendants will meet and confer regarding a process for the form and submission of amended pleadings to incorporate the additional defendants and claims, and will submit a proposal (or, if necessary, competing proposals) to the Court; and

4) The Court will then issue an order setting the form of amended pleadings and a deadline to file them.

Dated:  July 2, 2025

Respectfully submitted,

*/s/ Jayne Conroy*
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice

52

3270551.1

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

53

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

3270551.1