**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Cases listed in Exhibit 1 | |

# REPLY IN RESPONSE TO OPPOSITION OF DISCOUNT DRUG MART, INC. TO MOTION FOR LEAVE TO AMEND

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.      The Proposed Amendments to Add DDM Are Not Futile. ...................... 3

      A.     Amending Plaintiffs Seek to Assert Claims Other than Public Nuisance. ................................................................................ 3

      B.     DDM's Statute-of-Limitations Arguments Do Not Demonstrate that Plaintiffs' Proposed Amendments Are Futile. ................................. 5

II.     Amending Plaintiffs Have Complied with the Court's May 23, 2024 Order. ........ 8

III.    DDM's Diligence Challenge Fails Because the Information It Points to Was Unavailable to Amending Plaintiffs Until Long After the Amendment Deadlines. ................................................................................................ 10

IV.    DDM Identifies No Cognizable Prejudice It Would Suffer If the Court Permits Amendment. ............................................................................... 14

CONCLUSION ................................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................ 17

TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashford v. Zma,*
    No. 18 CV 50312, 2020 WL 2041324 (N.D. Ill. Apr. 28, 2020) ..........................................6

*Bennett v. MIS Corp.,*
    607 F.3d 1076 (6th Cir. 2010) ...................................................................................................5

*Cataldo v. U.S. Steel Corp.,*
    676 F.3d 542 (6th Cir. 2012) .....................................................................................................6

*Clabo v. Johnson & Johnson Health Care Sys., Inc.,*
    982 F.3d 989 (6th Cir. 2020) .....................................................................................................5

*Duncan v. Leeds,*
    742 F.2d 989 (6th Cir. 1984) .....................................................................................................7

*Father Flanagan's Boys Home v. Donlon,*
    449 F. Supp. 3d 739 (S.D. Ohio 2020) .....................................................................................6

*Grover v. BMW of N. Am., LLC,*
    434 F. Supp. 3d 617 (N.D. Ohio 2020)......................................................................................7

*Kanagy v. Midlands Millroom Supply, Inc.,*
    No. 5:19-cv-01726, 2020 WL 1275289 (N.D. Ohio Mar. 17, 2020)........................................15

*Kovac v. Superior Dairy, Inc.,*
    930 F. Supp. 2d 857 (N.D. Ohio 2013) .....................................................................................7

*McNeill v. Bagley,*
    No. 1:02 CV 1645, 2018 WL 3348876 (N.D. Ohio July 9, 2018)............................................3

*In re Nat'l Prescription Opiate Litig.,*
    No. 1:17-md-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) .........................................6

*In re Nat'l Prescription Opiate Litig.,*
    No. 1:17-md-2804. 2019 WL 4194296 (N.D. Ohio Sept. 4, 2019) .........................................6

*Nichols v. State Farm Mut. Auto. Ins. Co.,*
    No. 2:22-cv-16, 2023 WL 3032169 (S.D. Ohio Apr. 21, 2023) ..............................................7

TABLE OF AUTHORITIES
**(continued)**

**Page**

*NOCO Co. v. Lapidus*,
No 21-cv-900, 2022 WL 1803039 (N.D. Ohio June 2, 2022) .........................................3, 14

*Rapp v. Forest City Techs., Inc.*,
No. 1:20-cv-2059, 2021 WL 4713394 (N.D. Ohio June 17, 2021) .....................................11

*Rose v. Hartford Underwriters Ins. Co.*,
203 F.3d 417 (6th Cir. 2000) .................................................................................................3

*Trumbull Cnty. v. Purdue Pharma, L.P. (In re Nat'l Prescription Opiate Litig.)*,
No. 2023-1155, 2024 WL 5049302 (Ohio Dec. 10, 2024) .....................................................3

**Statutes**

R.C. 4729.80 ...........................................................................................................................11

Amending Plaintiffs (also referred to as "Plaintiffs")[1] respectfully submit this reply memorandum in further support of their Corrected Motion for Leave to Amend to Add Discount Drug Mart, Inc. (Doc. #5569, "Mot.").[2]

## INTRODUCTION

Nothing in Discount Drug Mart, Inc.'s ("DDM") opposition rebuts Plaintiffs' showing of "good cause" within the meaning of Rule 16, and that amendment is proper under Rule 15.  DDM offers four main arguments why amendment should be denied, but none has merit and all should be rejected.

*First*, DDM contends that amendment would be futile because Plaintiffs seek to assert only public nuisance claims that DDM contends are barred by Ohio law.  But DDM misapprehends Plaintiffs' proposed amendments, which explicitly seek to incorporate the same comprehensive set of claims alleged in the Exemplar Complaint filed by Cobb

---

[1] The updated list of Plaintiffs seeking leave to amend to add Discount Drug Mart, Inc. ("DDM") is attached as Exhibit 1.  This revised list replaces the chart attached as Exhibit A to the motion for leave to add DDM.  *See* Dkt. #5569-1.  Additionally, attached as Exhibit 2 is the updated list of plaintiffs withdrawing from the DDM motion.  This updated list includes some additional plaintiffs that have withdrawn since the PEC filed its April 25, 2025 Submission.  *See* Dkt. #6121.

[2] DDM submitted two opposition briefs:  one designated as its "Main Opposition" (Doc. #5875) and another designated as a separate "Out-of-State Opposition" (Doc. #5874).  DDM also separately moved to dismiss the claims of one amending plaintiff, City of Lakeland, for failure of service of process.  This Court has already granted the motion to dismiss City of Lakeland's case, thus mooting that plaintiff's motion for leave to amend.  The four plaintiffs that were the subject of the "Out-of-State Opposition," City of Springfield (Missouri), Fiscal Court of Elliott County (Kentucky), American Federation of State, County & Municipal Employees District Council 37 Health & Security Plan, and Teamsters Health Service & Insurance Plan Local 404 have all withdrawn their motions for leave to amend. The arguments in the "Out-of-State Opposition" thus having been mooted, the remaining Amending Plaintiffs here respond to DDM's "Main Opposition."

1

County, including RICO violations, state deceptive trade practices claims, and other causes of action—not merely public nuisance.

DDM also argues that amendment would be futile because Plaintiffs' claims are time-barred, but this argument ignores Plaintiffs' well-pleaded allegations of fraudulent concealment and continuing conduct that toll applicable limitations periods.  Because DDM offers no other reason Plaintiffs cannot proceed on these other claims, the proposed amendments would not be futile.

*Second*, contrary to DDM's suggestion, Plaintiffs have complied with the Court's May 23, 2024 Order by, among other things, providing plaintiff-specific factual allegations against DDM, describing DDM's substantial opioid market presence, and alleging DDM's violation of its duties to prevent diversion while participating in campaigns to increase opioid utilization.

*Third*, DDM suggests that Plaintiffs lacked reasonable diligence as required by Rule 16, but its argument is contradicted by the undisputed timeline: DDM did not produce its own dispensing data until March 2020—a full year after the Court's amendment deadline—and the OARRS dispensing data was not made available until November 2020, more than eighteen months after the deadline.

*Fourth*, DDM fails to demonstrate any cognizable prejudice from permitting Plaintiffs to amend now, much less the "*unique harm*" required to deny the Motion. *NOCO Co. v. Lapidus*, No 21-cv-900, 2022 WL 1803039, at *3 (N.D. Ohio June 2, 2022) (emphasis added).

Because DDM's grounds for opposition are meritless, Plaintiffs' Motion for Leave

to Amend to Add DDM should be granted.

## ARGUMENT

## I.  The Proposed Amendments to Add DDM Are Not Futile.

DDM contends that leave to amend should be denied because the amendments Plaintiffs propose are futile.  This is not so.  "A proposed amendment . . . must be frivolous or legally insufficient on its face to warrant denial of leave to amend" as futile. *McNeill v. Bagley*, No. 1:02 CV 1645, 2018 WL 3348876, at *8 (N.D. Ohio July 9, 2018) (Polster, J.); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss).  DDM has not shown that Plaintiffs' amendments are legally insufficient or that the proposed amended complaint could not withstand a Rule 12(b)(6) motion.

## A.  Amending Plaintiffs Seek to Assert Claims Other than Public Nuisance.

DDM first argues that leave to amend should be denied because Amending Plaintiffs allegedly assert *only* public nuisance claims, which have been abrogated by the Ohio Product Liability Act.  *See* Opp. at 6-7 (citing *Trumbull Cnty. v. Purdue Pharma, L.P. (In re Nat'l Prescription Opiate Litig.)*, No. 2023-1155, 2024 WL 5049302 (Ohio Dec. 10, 2024)).  But DDM's argument flows from a flawed premise.  Contrary to DDM's assertion, Amending Plaintiffs' Motion explicitly states that Amending Plaintiffs seek to "supplement their existing pleadings with claims substantially similar to those asserted against chain pharmacies in the first amended CT8 bellwether complaint in *Cobb County*" [the "Exemplar Complaint"].  Corrected Omnibus Mot. for Leave to Amend to Add DDM ("Mot.") (Doc. #5569) at 1.

The Exemplar Complaint (as DDM acknowledges in a footnote) alleges numerous claims against chain pharmacies *in addition to public nuisance*, including RICO violations, unfair/deceptive trade practices, negligence, unjust enrichment, fraud, and civil conspiracy.  *See* Exemplar Compl. ¶ 730 (alleging that plaintiff is "assert[ing] ***all causes of action*** alleged in its Original Complaint (ECF 1), Plaintiff's Amended Short Form Complaint (ECF 6), and this Supplemental and Amended Allegations to be Added to 'Short Form for Supplementing Complaint and Amending Defendants and Jury Demand' *against all [chain pharmacy] Defendants newly named herein*, and reserves all rights to revise and amend those causes of action if and when the Court lifts the applicable stay and proceeds with those claims") (emphasis added); *see also Cobb County*, No. 1:18-op-45817-DAP, Doc. #1 (alleging RICO, violation of Georgia Deceptive Trade Practices Act, public nuisance negligence, unjust enrichment, fraud, and civil conspiracy).

DDM's argument that the Exemplar Complaint is proceeding only with a public nuisance claim is based on a misreading of the allegations in that pleading, which noted that Cobb County was "proceeding at this time with its Fourth Claim for Relief: Public Nuisance against the Chain Pharmacies," Exemplar Compl. ¶ 732, in compliance with a Court Order requiring just "one cause of action" for bellwether trials against pharmacies. *Id.* ¶ 731.  The Exemplar Complaint's allegation regarding its nuisance claim reflects compliance with the Court's order regarding bellwether trial management; not claim abandonment.  Indeed, the Exemplar Complaint clarifies in the immediately preceding paragraph that, "[f]or avoidance of doubt, [Cobb] County hereby asserts all causes of action alleged" in its prior pleadings, "and reserves all rights to revise and amend those

4

causes of action if and when the Court lifts the applicable stay and proceeds with those claims." *Id.* ¶ 730.

Because DDM offers no argument that the other claims Amending Plaintiffs seek to assert are legally insufficient, DDM's argument that amendment is futile should be rejected.

**B.  DDM's Statute-of-Limitations Arguments Do Not Demonstrate that Plaintiffs' Proposed Amendments Are Futile.**

DDM next argues that amendment is futile because Amending Plaintiffs' proposed claims are time-barred.  Opp. at 7-9.  But DDM cannot show that the proposed complaint would fail to survive a Rule 12(b)(6) motion to dismiss on this basis.

In ruling on a Rule 12(b)(6) motion, the Court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).  Applying this standard, the Sixth Circuit recognizes that it is generally inappropriate to deny leave to amend or grant Rule 12(b)(6) dismissal based on the statute of limitations or other affirmative defenses; only when the defense is clearly established on the face of the pleading alone can a complaint be dismissed at the pleading stage as time-barred.  *See Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 995 n.2 (6th Cir. 2020) ("[I]t is generally inappropriate to deny a motion to amend on futility grounds because the claims within a complaint are time-barred . . .  [although] such a denial is permissible if the complaint affirmatively shows that the plaintiff's claims are barred by an applicable statute of limitations."); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("[A] motion under Rule 12(b)(6), which

considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations."); *Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) ("A motion to dismiss based on the statute of limitations . . . can be granted *only* where the defense appears valid *from the face of the Complaint alone*.") (emphasis added) (citation omitted).

DDM fails to demonstrate that its limitation defense is (or would be) "valid from the face of the Complaint alone." *Father Flanagan's Boys Home*, 449 F. Supp. 3d at 743; *see also Ashford v. Zma*, No. 18 CV 50312, 2020 WL 2041324, at *2 (N.D. Ill. Apr. 28, 2020) (noting that "it should be certain from the face of the complaint that any amendment would be futile or otherwise unwarranted before leave to amend is denied").  On the contrary, Plaintiffs plead extensive equitable tolling and estoppel allegations based on continuing conduct and fraudulent concealment.  *See Cobb County*, No. 1:18-op-45817-DAP, Doc. #1 ¶¶ 673-74 (continuing conduct allegations); ¶¶ 675-83 (equitable estoppel and fraudulent concealment allegations).[3] Where a plaintiff pleads facts supporting equitable tolling, a court should not dismiss or deny leave to amend based on a statute of

---

[3] These allegations by bellwether plaintiffs have withstood motions to dismiss and for summary judgment.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2018 WL 6628898, at *2-3 (N.D. Ohio Dec. 19, 2018) (denying CT1 defendants' motions to dismiss on statute-of-limitations grounds; finding plaintiffs' allegations of fraudulent concealment and continuing violations "sufficient to raise a plausible inference that the applicable limitations periods are subject to tolling"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804. 2019 WL 4194296, at *2-6 (N.D. Ohio Sept. 4, 2019) (denying CT1 manufacturer and distributor defendants' motion for summary judgment on statute-of-limitations grounds; applying equitable tolling to RICO and public nuisance claims for equitable relief).

limitations.  *See Duncan v. Leeds*, 742 F.2d 989, 991-93 (6th Cir. 1984) (denying motion to dismiss where plaintiff pleaded equitable tolling facts); *Nichols v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-16, 2023 WL 3032169, at *3 (S.D. Ohio Apr. 21, 2023) (court rejected argument that amendment would be futile because the conduct at issue had ceased outside the limitations period, given that it was "not clear from the face of the proposed amended complaint that all claims . . . would be time-barred"); *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 629-30 (N.D. Ohio 2020) ("Because BMW raised the statute of limitations as an affirmative defense through a motion to dismiss—as opposed to summary judgment—plaintiffs need not prove at this stage that the statute of limitations was tolled."); *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 869 n.10 (N.D. Ohio 2013) ("Superior did not argue against the application of [waiver estoppel, or equitable tolling] doctrines in its motion [to dismiss], and for good reason: there was nothing on the face of Kovac's complaint to suggest that it do so."). As in *Kovac*, Amending Plaintiffs allege plausible grounds for tolling, precluding a finding, at this stage, that their claims are time-barred.

Amending Plaintiffs also plead facts suggesting continuing conduct—namely that, subsequent to 2014, "while others in the opioids market were limiting their opioids sales in response to the opioid crisis, DDM effectively decided to more or less continue steadily in terms of MME dispensing." Mot. at 3; *see also id.* at 4 (noting the "trend" that DDM's distribution in terms of MMEs "shot up in 2018 and peaked in 2019"). In addition, as set forth in the Exemplar Complaint—which Amending Plaintiffs will track—this "wrongdoing and unlawful activity . . . has not ceased." Exemplar Compl. ¶ 722. These

allegations, as well, preclude a finding that Amending Plaintiffs' claims are time-barred on the face of their pleadings.[4]

## II.  Amending Plaintiffs Have Complied with the Court's May 23, 2024 Order.

DDM next contends that Plaintiffs' Motion "fails to meet the required standard of particularity and evidentiary support" set forth in the Court's May 2024 Order.  Opp. at 16.  Again, DDM is wrong.  Plaintiffs have fully complied with the Court's May 23, 2024 Order by (i) identifying the specific plaintiffs seeking leave to amend their complaints to assert claims against DDM; (ii) identifying which bellwether allegations and claims Amending Plaintiffs propose to incorporate; (iii) providing "plaintiff-specific factual allegations" implicating DDM; and (iv) "stating with particularity the reasons amendment should be permitted" against DDM.  Doc. #5455 at 2.

First, as to DDM's conduct as a dispenser, each Amending Plaintiff alleges that DDM sold opioids for distribution into their respective jurisdictions in quantities representing at least 5% of opioid sales in these jurisdictions over the entire period between 2006 and 2019.  *See* Mot. at 3-5, Ex. 1.  Plaintiffs allege that, between 2006 and 2019, DDM dispensed more than 235 million opioid dosage units (DUs) and more than

---

[4] For this reason, DDM's argument that the existing ARCOS data, which only covers the years 2006 to 2019, cannot be used to establish DDM's liability for claims that would be timely should also be rejected.  To the extent that Plaintiffs may timely assert claims extending back to the period prior to 2019, because of equitable tolling or fraudulent concealment, ARCOS data from that period will be highly relevant.  Moreover, because Plaintiffs also plead continuing and indeed on-going conduct, their use of ARCOS data from an earlier period in no way precludes them from establishing, in discovery, that DDM's improper dispensing practices continued beyond the period covered by the ARCOS data that is now available.

4.3 billion morphine milligram equivalents (MMEs) to customers.  Moreover, Plaintiffs describe how DDM continued dispensing at high levels through 2019—dispensing more than 10 million DUs per year and more than 300 million MMEs per year every year from 2015 to 2019.  Based on these facts, Plaintiffs allege that, "while others in the opioids market were limiting their opioids sales," DDM instead "effectively decided to more or less continue steadily in terms of MME dispensing." *Id.* at 3. DDM overlooks that Plaintiffs allege, through incorporation of the Exemplar Complaint, that DDM—like the chain pharmacies addressed in that pleading—acted unlawfully and unreasonably by: (i) disregarding their fundamental duties to maintain effective controls against diversion, Exemplar Compl. ¶¶ 99-185; and (ii) actively participating in manufacturers' and distributors' coordinated campaign to fundamentally transform how opioids were utilized in the United States, including by promoting demonstrable falsehoods to increase opioid use, *id.* ¶¶ 604-21.  DDM's opioid market share in Plaintiffs' jurisdictions is therefore highly relevant to whether this alleged unlawful conduct substantially contributed to damages Plaintiffs have incurred responding to the opioid crisis.  *See id.* ¶¶ 99-110 (alleging that market-share data "confirms" that pharmacies "distributed and dispensed substantial quantities of prescription opioids" in applicable jurisdictions). Plaintiffs thus allege relevant conduct by DDM.[5]

_____

[5] Amending Plaintiffs also allege that DDM acted as an opioid distributor in addition to its dispensing business, "distributing Schedule III-V controlled substances from DDM's distribution center in Medina, Ohio to its Ohio pharmacies." Mot. at 4. In particular, DDM's distribution in terms of MMEs "shot up in 2018" and continued through 2019—a

III.    **DDM's Diligence Challenge Fails Because the Information It Points to Was Unavailable to Amending Plaintiffs Until Long After the Amendment Deadlines.**

DDM's diligence challenge is fundamentally flawed and contradicted by the factual record.  DDM argues that Plaintiffs lacked diligence because they allegedly "knew or should have known" of information to support their proposed amendment based on: (i) notice of the existence of the Ohio Board of Pharmacy's OARRS database in February 2018; and (ii) DDM's production of its own dispensing data to the PEC in March 2020. Both arguments fail.

First, DDM's argument regarding the production of its dispensing data is undermined by the undisputed chronology.  DDM asserts that it provided its own dispensing data to the PEC on March 16, 2020, when "counsel for DDM sent Mr. Weinberger, a member of the Plaintiffs Executive Committee, a flash drive containing DDM's dispensing data for Ohio."  Opp. at 21.  But DDM simultaneously acknowledges that "all of [the Amending Plaintiffs] filed their lawsuits at some point between 2017 and 2019." *Id.* at 12; *see also* Mot., Ex. 1 (list of Amending Plaintiffs showing cases filed between 2017 and 2019).[6]   This timeline is dispositive.  Even assuming that DDM provided comprehensive dispensing data for Ohio and that the PEC could immediately analyze

---

"trend" that "was unknown to Amending Plaintiffs prior to the recent availability of the 2015-2019 ARCOS data." *Id.*

[6] The latest that any Amending Plaintiff filed its complaint was June 10, 2019 (City of Seven Hills, Ohio, No. 1:19-op-45413-DAP), meaning that its deadline to amend the complaint was September 9, 2019—more than six months prior to DDM's production of a flash drive with its dispensing data.

and distribute that data to all Plaintiffs (which it could not), DDM did not provide this dispensing information *until March 16, 2020*—a full year after the March 16, 2019 amendment deadline established in the Court's November 8, 2018 Order (Doc. #1106).

It was therefore impossible for any Plaintiff to use this information to amend its complaint prior to the CMO deadlines. Plaintiffs cannot be faulted for failing to amend based on dispensing data that DDM did not produce until one year after the CMO deadline. *See, e.g., Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3-4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence.").

DDM's argument regarding the existence of data in the Ohio Board of Pharmacy's Ohio Automated Rx Reporting System ("OARRS") database fares no better, as dispensing data from OARRS was not produced until long after the deadlines for amendment had passed. DDM claims that Amending Plaintiffs were "informed" of the existence of the OARRS Ohio's prescription drug monitoring program much earlier, but the mere existence of OARRS is immaterial. Access to OARRS data is tightly controlled by statute. *See* R.C. 4729.80 (providing that Board of Pharmacy may provide access to database only under limited circumstances). Even in the transcript cited by DDM in support of its argument, counsel for AmerisourceBergen merely "assume[d]" that the "[*Ohio] Attorney General* would have access to" OARRS data and noted that "Ohio, among some other states has been getting . . . a large portion of what's in the [OARRS] database." Opp. at 20 (emphasis added). That the Ohio Attorney General might have had access to OARRS, or

that a defendant assumed that the Ohio Attorney General could obtain such access, in no way demonstrates that these Amending Plaintiffs had access to OARRS data or could have obtained it prior to their amendment deadlines.

In fact, despite the efforts of the parties in discovery, the Board of Pharmacy did not produce dispensing data from OARRS until November 2020—a year and a half after the Court's amendment deadlines.  In July 2018,  at a time when the parties were litigating distribution claims (but not dispensing claims), one of the distributor defendants, McKesson, served a subpoena for all OARRS data.  After the Board refused to comply, citing privacy and confidentiality concerns, McKesson moved to compel.  This Court denied McKesson's motion in January 2019 but suggested that McKesson was entitled to some of the data it was seeking and directed the parties "to continue negotiating to appropriately limit the scope of the data produced." Doc. #1292 at 2. Shortly after the Court's Order, the Board finally produced some statewide OARRS data from 2008 to 2018, but that production *did not include dispensing-related data.  See* Doc. #3395 at 1-3.

Notably, when the Board produced this data, the only claims pending against the pharmacy defendants related to their *distribution* of prescription opioids to their own stores, not their *dispensing* practices.  In December 2019, after the Track One plaintiffs asserted claims stemming from the pharmacy defendants' dispensing practices, the pharmacy defendants served a subpoena on the Board of Pharmacy seeking additional OARRS data, including dispensing data.  *By this time, the amendment deadline for all of the Amending Plaintiffs had already passed*.  The Court granted the pharmacy defendants' motion in February 2020, Doc. #3168, but withdrew that Order as moot in June 2020 after

12

the Sixth Circuit ordered the Court to strike the amendments in Track 1B that had added the dispensing claims.  Doc. #3313.

Thereafter, on July 1, 2020, the pharmacy defendants again filed a motion to compel pharmacy dispensing data from OARRS, this time in connection with the Track 3 cases.  Doc. #3364.  As the pharmacy defendants argued in their motion, it was "undisputed" the OARRS data that had been produced to that point did not relate to dispensing and "[could not] be used to identify the *pharmacy* that filled any prescription or the *prescriber* who wrote any prescription." Doc. #3364 at 5 (emphasis in original).  On July 24, 2020, again over the Board of Pharmacy's objection, the Court granted the motion to compel certain OARRS dispensing data.  Doc. #3395. The Board of Pharmacy eventually produced this OARRS dispensing data in November 2020—*more than a year and a half after the March 16, 2019 deadline to amend*.

As the Pharmacy Defendants themselves argued in their motion to compel dispensing data from the OARRS database, until this data was produced in November 2020, it was "impossible to identify the pharmacy where any prescription in the OARRS database was filled." Doc. #3364 at 3.  So even if the earlier OARRS distribution information could have been immediately analyzed and shared with Plaintiffs, there was simply no way for the Plaintiffs to have used that information to add dispensing claims before the amendment deadlines.  And they could not have used the OARRS dispensing data to amend their complaints in time to meet the amendment deadlines because that data was not produced until long after those deadlines had passed.

## IV. DDM Identifies No Cognizable Prejudice It Would Suffer If the Court Permits Amendment.

DDM fails to demonstrate any cognizable prejudice from allowing Plaintiffs to add DDM now, much less the "*unique harm* that justifie[s] denying the Motion." *NOCO*, 2022 WL 1803039, at *3 (Polster, J.) (emphasis added). Instead, DDM offers only two inadequate arguments that fall far short of establishing the articulable prejudice necessary to deny leave to amend. Because DDM's arguments mirror those advanced by the Generic Manufacturers and Chain Pharmacies (*see* Doc. #5899 & #5888, respectively*)*, Plaintiffs incorporate by reference the comprehensive responses to those contentions offered by the plaintiffs seeking to add those defendants (*see* Doc. #6171 & #6211, respectively), and provide a brief summary of those responses here.

First, DDM makes the predictable and insufficient claim that it "would incur significant additional resources" in defending against new lawsuits. Opp. at 22. This boilerplate assertion of increased litigation costs does not constitute prejudice under Rule 16 or under Rule 15(a), as such costs are inherent in any amendment adding new parties or claims. Moreover, that kind of "prejudice" does not arise from allowing amendment *now*, rather than at the time of the original amendment deadlines. Given that the cases have been stayed since the time of those deadlines – there has been no discovery, no motion practice – the timing of the amendment (the only relevant inquiry under Rules 15 and 16) has not caused DDM any prejudice. DDM is in exactly the same position it would have been in had Plaintiffs amended by their original amendment deadlines.

Second, DDM claims prejudice by speculating that "most of the Amending

14

Plaintiffs did not institute litigation holds, which impairs and prejudices DDM's ability to access relevant information that may be material to defend itself, specifically in the areas of causation and damages."  Opp. at 22-23.  Such "unsupported speculations do not rise to the level of articulable prejudice." *Kanagy v. Midlands Millroom Supply, Inc.*, No. 5:19-cv-01726, 2020 WL 1275289, at *2 (N.D. Ohio Mar. 17, 2020).  And, again, regardless of the information that Plaintiffs do or do not have, the same would be true if DDM had been added to Plaintiffs' complaints in 2019.  DDM's litigation hold argument provides no basis to deny leave to amend.

## CONCLUSION

For the above reasons and those detailed in Amending Plaintiffs' opening brief, the Court should grant Plaintiffs leave to amend their complaints to add DDM.

Dated:  July 2, 2025                            Respectfully submitted,

_/s/ Jayne Conroy_
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger