# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Cases listed in Exhibit 1 | |

# REPLY IN RESPONSE TO OPPOSITION OF PUBLIX
# SUPER MARKETS, INC. TO MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 6

I.     Publix's Challenges to Plaintiffs' "Qualifications" to Amend Are
Legally and Factually Incorrect........................................................................ 6

      A.    Publix Provides No Credible Reason to Deny Leave to
Amend Based on Any Purported Lack of "Authorization" to
Sue. ................................................................................................... 6

      B.    Plaintiffs Have Amply Demonstrated Their Readiness to
Litigate. ............................................................................................. 7

      C.    The Court Should Reaffirm Its Prior Determination That
Any Deficiency with Respect to Litigation Holds Does Not
Bar Amendment. ............................................................................... 8

      D.    The MSP Plaintiffs' Inadvertent Omission from the Motion,
Which the PEC Promptly Corrected, Does Not Warrant
Denying Them Leave to Amend.......................................................... 10

      E.    Publix's Reference to So-Called "Zero-Percent Market Share"
Plaintiffs Does Not Warrant Denying Leave to Amend. ................. 12

      F.    Plaintiffs Have Sufficiently Specified the Proposed
Amendments. ..................................................................................... 14

II.    Publix Fails to Overcome Plaintiffs' Showing of Good Cause Under
Rule 16 .................................................................................................................. 17

      A.    The Motion Shows Good Cause for Each of the 22 Plaintiffs
Seeking to Add Publix.................................................................... 17

      B.    Plaintiffs Have Pursued Claims Against Publix with
Reasonable Diligence........................................................................ 20

            1.    Plaintiffs Could Not Have Obtained the ARCOS Data
They Needed Prior to May 7, 2019 ......................................... 21

            2.    Critical facts bearing on Publix's liability emerged
over several years after March 16, 2019. ............................... 27

      C.    Publix Identifies No Cognizable Prejudice It Would Suffer If
the Court Permits the Amendments. ................................................. 34

CONCLUSION ...................................................................................................................... 37

# TABLE OF AUTHORITIES

**Page**

## Cases

*Butler v. 3M Co.,*
    No. 24-cv-01587, 2024 WL 5054884 (S.D. Ohio Dec. 9, 2024) ........................................20

*City of Albany, GA v. AmerisourceBergen Drug Corp.,*
    No. 1:18-op-46337 (N.D. Ohio) ............................................................................................24

*City of Sandy Springs, GA v. Purdue Pharma, L.P., et al.,*
    Case No. 1:18-op-45516 (N.D. Ohio) ....................................................................................7

*Cobb County, GA v. Purdue Pharma,*
    No. 1:18-op-45817 (N.D. Ohio) ............................................................................................24

*County of Peach, GA v. Purdue Pharma, Inc.,*
    No. 1:18-op-45579 (N.D. Ohio) ......................................................................................24, 25

*FastTrac Transp., LLC v. Pedigree Techs., LLC,*
    No. 22-cv-53, 2023 WL 3226185 (D.N.D. Mar. 7, 2023) ....................................................33

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs,*
    No. 17-cv-195, 2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ............................................21

*Golembewski v. Rusek,*
    No. 16-2335, 2017 WL 1078329 (M.D. Pa. Mar. 22, 2017) .............................................2, 10

*Hedrick v. OhioHealth Corp.,*
    No. 19-cv-1326, 2020 WL 13659064 (S.D. Ohio Oct. 8, 2020) ..........................................34

*Henry County, GA v. Purdue Pharma, L.P.,*
    No. 1:18-op-46310 (N.D. Ohio) ............................................................................................24

*James v. Cleveland Sch. Dist.,*
    No. 19-CV-66-DMB-RP, 2021 WL 1988197 (N.D. Miss. May 18, 2021).........................11

*Kanagy v. Midlands Millroom Supply, Inc.,*
    No. 19-cv-01726, 2020 WL 1275289 (N.D. Ohio Mar. 17, 2020)..................................9, 34

*L.H. v. Red Roof Inn, Inc.,*
    No. 22-CV-625-CHB-RSE, 2025 WL 714385 (W.D. Ky. Mar. 5, 2025) ............................32

**TABLE OF AUTHORITIES**
(continued)

Page

*Mann v. CSX Transp., Inc.*,
    No. 07–cv–3512, 2009 WL 3766056 (N.D. Ohio Nov. 10, 2009) .........................................9

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) .................................................................30

*In re Nat'l Prescription Opiate Litig.*,
    No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) ................................................36

*NOCO Co. v. Lapidus*,
    No. 21-cv-900, 2022 WL 1803039 (N.D. Ohio June 2, 2022) ...................................4, 32, 33

*Palm Beach Cnty., FL v. Mylan Pharms., Inc.*,
    No. 9:23-cv-80431-RLR (S.D. Fla.) .....................................................17

*Reed v. Home Depot U.S.A., Inc.*,
    No. 16-cv-926, 2017 WL 5202684 (S.D. Ohio May 15, 2017) ...........................................20

*Salerno v. Fam. Heritage Life Ins. Co. of Am.*,
    No. 23-cv-01419, 2024 WL 2235772 .......................................................26

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*,
    64 F.3d 1001 (6th Cir. 1995) ............................................................34

*Spadafore v. Gardner*,
    330 F.3d 849 (6th Cir. 2003) ........................................................14, 15

*Tipton v. Swanson*,
    No. 20-cv-02346, 2021 WL 12320652 (N.D. Ohio Nov. 16, 2021) ...................................26

*U.S. v. Petroff-Kline*,
    557 F.3d 285 (6th Cir. 2009) ...........................................................11

*Walker v. Am. Red Cross*,
    No. 20-cv-01755-MK, 2022 WL 22662135 (D. Or. Feb. 1, 2022) ....................................11

*Waseleski v. City of Brooklyn*,
    No. 23-cv-548, 2024 WL 4287834 (N.D. Ohio Sept. 25, 2024) .........................................36

*Wharton v. Nassau Cnty.*,
    No. 10–CV–0265 (JS)(AKT), 2010 WL 4878998 (E.D.N.Y. Nov. 22, 2010) .....................11

3270255.8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*York v. Lucas Cnty., Ohio*,
No. 13 cv 1335, 2015 WL 2384096 (N.D. Ohio May 19, 2015).........................................26

**Court Rules**

Fed. R. Civ. P. 6(b)(1)(B) ..............................................................................................................12

**Other Authorities**

Byron, Georgia, "About Byron" (https://www.byronga.com/about-
byron-php...................................................................................................................................13

*Opioids Data*, SLCG Economic Consulting, https://www.slcg.com/opioid-
data/ .........................................................................................................................................13

3270255.8

Amending Plaintiffs ("Plaintiffs") submit this reply in response to the Opposition (Dkt. #5881, "Opp.") of Publix Super Markets, Inc. ("Publix") to Plaintiffs' Corrected Motion for Leave to Amend (Dkt. #5570, "Mot.").[1]  Publix's brief raises questions common to all Plaintiffs, which the Court can address collectively, allowing for the resolution of the motion in each individual case.  Plaintiffs therefore respectfully request that the Court grant their motion with respect to Publix.[2]

## PRELIMINARY STATEMENT

In their opening brief, Plaintiffs demonstrated they have met Rule 16's prerequisites—diligence and lack of prejudice—as well as Rule 15's requirement that amendment be in the interest of justice.  Publix advances three main arguments as to why the Court should nonetheless preclude Plaintiffs from amending their complaints to add Publix as a defendant.  None has merit.

*First*, Publix argues that the Court's orders erect a series of "qualifications" for amending that Plaintiffs fail to satisfy.  In particular, Publix contends some Plaintiffs have not demonstrated their "authority" to sue it (Opp. at 5-6); some plaintiffs did not implement litigation holds (*id.* at 7); and some plaintiffs purportedly have no Publix

---

[1] The updated list of Plaintiffs seeking leave to amend to add Publix is attached as Exhibit 1. This revised list replaces the chart attached as Exhibit A to the motion for leave to add Publix.  *See* Dkt. #5570-1.  Additionally, attached as Exhibit 2 is the updated list of plaintiffs withdrawing from the Publix motion.  This updated list includes some additional plaintiffs that have withdrawn since the PEC filed its April 25, 2025 Submission.  *See* Dkt. #6121.

[2] Unless otherwise indicated, terms and abbreviations are retained from Plaintiffs' opening briefs, all emphasis has been added, and all internal citations and quotation marks have been omitted.

3270255.8

stores in their jurisdictions (*id.* at 13-14).  The Court, however, has already rejected these arguments as grounds for denying leave to amend.  *See* Dkt. #6048 at 23:8-13 (court will not address authorization to sue at leave to amend stage); Dkt. #5766 at 1 (whether plaintiff implemented litigation hold is not a precondition for amendment); Dkt. #6026 at 2-3 (CT22 order overruling objections to leave to amend based on near-zero market share).  The Court should reject these arguments again here.  With good reason: even accepting Publix's version of events—which itself would require resolving disputed facts and making inferences *against* Plaintiffs, in violation of pleading-stage principles— none of those considerations would warrant a finding of lack of diligence by Plaintiffs or demonstrate cognizable prejudice to Publix as a result of the amendments.

Publix also contends that Plaintiffs violated the Court's order that each moving plaintiff's lead counsel certify that client and counsel are prepared to litigate if their case is chosen as a bellwether (Opp. at 6-7 (citing Dkt. #5455 at 2)).  Plaintiffs complied.  The PEC provided certifications in an administrable manner by having each counsel sign where their respective cases are listed in Exhibit A to the motion, Dkt. #5570-1 ("signed by" column), which shows counsel's agreement to the Court's requirement and to providing individual statements upon any grant of leave to amend.  *See* Pltfs' Corr. Roadmap (Dkt. #5565) at 3-4.  Likewise, Publix's argument that the MSP Plaintiffs must be denied leave to amend for failing to meet the July 30, 2024 deadline fails because Publix's own evidence shows that the PEC inadvertently left the MSP Plaintiffs off the timely-filed motion for leave and acted promptly (within two days) to correct its error.  *See* Publix Ex. 6 (Dkt. #5881-6) at 4-5 (PEC's disclosure and correction of inadvert

2

omission); *cf. Golembewski v. Rusek*, No. 16-2335, 2017 WL 1078329, at *2 (M.D. Pa. Mar. 22, 2017) (finding excusable neglect where counsel "would have been in compliance with the filing deadline but for a clerical oversight, and upon discovery of the oversight counsel immediately corrected the mistake by filing the notice with the appropriate court."). Plaintiffs are amply "qualified" to sue Publix.

*Second*, Publix argues that Plaintiffs do not show that they were diligent in moving to amend. Publix contends that Plaintiffs do not provide individualized case analyses as required by Rule 16 to assess diligence and good cause. This is incorrect. Plaintiffs' motion asserts for each individual case the common criterion that newly-available information allowed the Plaintiff to determine that Publix had a 5% or greater opioid dispensing market share for the 2006-2019 period in or around Plaintiff's jurisdiction. *See* Mot. at 9; Mot. Ex. A (Dkt. #5570-1). In other words, what Publix calls "one undistinguishable mass" of Plaintiffs (Opp. at 18) in fact reflects a basis for finding reasonable diligence that applies with equal force to each Plaintiff, each one of which provides its own specific market share.

Publix also argues that the fact that other plaintiffs sued it before March 2019 shows that Plaintiffs here also could have. But Publix's argument fails to refute Plaintiffs' showing of their own diligence because Publix neither identifies any particular cases it contends asserted dispensing claims against it in 2019, nor says anything about what information these claims were based on or whether such

information was available to *these* Plaintiffs.[3]  Publix also argues that the 2015-2019 ARCOS data and the information about its dispensing practices produced in discovery (which it admits only became available in 2023 and 2024) still do not establish a basis for Plaintiffs to sue, so that the recent availability of this information does not establish good cause for Plaintiffs to amend now.  Opp. at 28-36.  This, too, is incorrect.  As Plaintiffs have shown, the 2015-2019 ARCOS data show the sharp increase in Publix's opioid sales after 2015 (when other pharmacies' opioid sales were declining), while the discovery information made public in the unsealing of Cobb County's summary judgment motion in May 2024 shows Publix's actionable conduct that fueled its sharply increasing opioid sales.  *See* Mot. at 4-7, 10-12.

*Third*, Publix contends the amendments are prejudicial.  But adding Publix now as opposed to on Plaintiffs' original amendment deadlines in 2019 to 2021 will impose *zero* prejudice on it.  Because Plaintiffs' cases have been stayed since no later than May 2018 (Dkt. #371)—with no motion practice, discovery, or any other significant proceedings during that time—the cases stand in the same posture as if Plaintiffs had added Publix by their amendment deadlines.  *See also* Dkt. #6124 at 1 n.1.  In light of this procedural posture, Publix's only argument for finding prejudice is that some Plaintiffs did not implement litigation holds, though Publix makes no showing of spoliation and the Court has ruled the absence of a litigation hold alone does not prohibit amendment.

---

[3] In any event, the existence of earlier-filed claims against Publix does not undermine a showing of good cause here, as "the time at which certain information became available to [Plaintiffs]" is merely "a factor to be considered" rather than "dispositive of diligence."  *NOCO Co. v. Lapidus*, No. 21-cv-900, 2022 WL 1803039, at *2 (N.D. Ohio June 2, 2022) (Polster, J.).

Dkt. #5766 at 1.  Moreover, Publix's unsupported speculation that the memories of unspecified witnesses "have no doubt faded or been lost to time," Opp. at 39-40, does not demonstrate any concrete, actual prejudice from these amendments, especially because, given the stay that has been in place, the same would be equally true had Plaintiffs asserted the claims in 2019.  Publix also ignores that testimony of its "key witnesses" has been obtained in the CT8 Cobb County bellwether case.  *E.g.*, Dkts. #5593-17, 20, 22, 24, 31, 33-36.  There simply is no prejudice here.

Plaintiffs also note that Publix's opposition is as notable for what it *doesn't* argue as for what it does.  Publix does not suggest this Court cannot resolve the issues of diligence, prejudice, and appropriate particularity in a streamlined fashion applicable to all Plaintiffs.  To the contrary, Publix's diligence and prejudice arguments apply (and fail) equally to each Plaintiff.  This is especially true with respect to the ARCOS data because Plaintiffs intend to sue Publix in its capacity as a dispenser, and there is no dispute that the PEC's reports as of March 2019 did not contain dispensing information.  The Court therefore can readily address the issues raised by Plaintiffs' motions and apply its rulings to each Plaintiff.[4]

For the reasons detailed in Plaintiffs' opening brief and below, this Court should grant in full Plaintiffs' motion for leave to add Publix as a defendant.

---

[4] Plaintiffs propose that the Court postpone submission of amended pleadings (whether by short-form complaints or otherwise) until it has ruled on all of the motions for leave. This will enable the Court and the parties to have a complete picture of which defendants, if any, each Plaintiff has been granted leave to add, thus allowing each Plaintiff to file a single amended pleading that encompasses all defendants and claims.

3270255.8

## ARGUMENT

I.  **Publix's Challenges to Plaintiffs' "Qualifications" to Amend Are Legally and Factually Incorrect.**

    A.  **Publix Provides No Credible Reason to Deny Leave to Amend Based on Any Purported Lack of "Authorization" to Sue.**

Publix argues that Plaintiff Sandy Springs, Georgia is not qualified to amend to sue it because Publix has not found written authorization by it to do so.  Opp. at 6 ("[T]he City of Sandy Springs . . . says it has *no* documentation approving a claim against Publix and no agreement engaging counsel to pursue such a claim.").[5]  This argument is legally baseless and factually insufficient in any event.

As a threshold matter, even if a party's "authorization" to add a defendant were a prerequisite to amending a complaint (as discussed below, it is not), it is far from clear that Publix or any other defendant would have standing to raise the issue.  Authorization to name a defendant in an existing lawsuit is a matter between a client and its attorneys, not opposing litigants or other outside parties.  In any event, this isn't the appropriate stage to address any such arguments.

The Court has rightly noted "the time to address [client authorization] is . . . when [a case] is . . . getting geared up to be litigated for discovery and trial," and thus the Court is "not going to deal with it now."  Tr. of 3/26/2025 Status Conf. (Dkt. #6048) at 23:8-13.  Publix cites no contrary authority holding this fact-laden issue *is* appropriately addressed on a motion to amend, let alone any decision denying leave to

---

[5] Publix also raises arguments concerning Shelby County, AL, City of Oviedo, FL, and Okaloosa County, FL, Opp. at 5-6, each of which has since withdrawn from this motion. Ex. 2 (Plaintiffs withdrawn from Publix motion).

amend for lack of authorization.  The Court should decline Publix's invitation to render factual and legal determinations regarding Plaintiffs' authorization to sue it based on an incomplete record before any discovery has occurred.[6]

Regardless, Publix's purported failure to find documentation expressly authorizing a Plaintiff to sue it does not show an absence of authorization.  On the contrary, Sandy Springs' statement in response to public records requests that it has "[n]o responsive record" regarding certain lawyer-retainer matters (Opp. Ex. 4 (Dkt. #5881-4)) does not show an absence of authorization to add Publix as a defendant.  *See City of Sandy Springs, GA v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45516 (N.D. Ohio) (Dkt. #4, Short Form for Supplementing Compl. and Amending Defs. & Jury Demand) at 2 (adding, *inter alia*, Walgreens, Kroger, and CVS Defendants).  Publix thus does not demonstrate an absence of authority for these Plaintiffs to sue it, which would not be a ground for denying leave to amend anyway.

### B. Plaintiffs Have Amply Demonstrated Their Readiness to Litigate.

Publix also argues that Plaintiffs disobeyed the Court's order to certify in their motion that they are prepared to litigate if chosen for a bellwether case.  This, too, is

---

[6] Publix mischaracterizes the Court's discussion of client authorization at the May 22, 2024 conference.  *See* Opp. at 8 ("All clients' formal authorization to participate in the Motion had to be obtained prior to filing the Motion.") (citing Dkt. #5471 at 7:3-9:15). The Court did not *require* client authorizations.  Rather, when the PEC raised the issue of clients that require authorization, the Court set a procedure for their motions.  *See* Dkt. #5465 at 9:8-15 (discussing procedure "*if you have a situation like that*").  Moreover, to the extent Publix contends that two Plaintiffs—St. Lucie County, FL and City of St. Augustine, FL—improperly moved to amend without authorization, Opp. at 9-10, St. Augustine has withdrawn from the motion (Ex. 2 (Plaintiffs withdrawn from Publix motion)), while the timing of St. Lucie's authorization is not a ground for denying it leave to amend.  Dkt. #6048 at 23:8-13.

incorrect.  In lifting the moratorium on substantive filings to allow motions for leave to amend, the Court ordered that:

> Lead counsel for each plaintiff seeking amendment of any listed complaint shall sign the motion to indicate that — should any of the listed cases be chosen as a bellwether — both counsel and plaintiff-client are prepared to spend the time and money necessary to litigate the case against each defendant.

Order (Dkt. #5455) at 2.  The PEC carried out the Court's directive by having each moving Plaintiff's counsel sign the motion, Mot. Ex. A (Dkt. #5570-1) ("signed by" column), while the PEC certified that (1) signing counsel "*have already agreed to sign the statement required by the Court*" and (2) "the actual signed documents [will] be provided along with a proposed order applicable to each plaintiff, if any, granted leave to amend with respect to any defendant."  Corr. Roadmap (Dkt. #5565) at 4 (emphasis in original).[7]

### C. The Court Should Reaffirm Its Prior Determination That Any Deficiency with Respect to Litigation Holds Does Not Bar Amendment.

Publix next argues that the Court should deny leave because some Plaintiffs' "failure to implement [litigation] holds makes clear they never intended to litigate and are not prepared to do so."  Opp. at 7.  This argument fails for two reasons.

First, Plaintiffs signified their intent to litigate through their lawyers' signatures

---

[7] Indeed, Publix appears to recognize as much.  Publix concedes with respect to its argument that the "only exception is Sarasota County, whose counsel signed the Motion."  Opp. at 7 n.7.  Sarasota's counsel is Motley Rice LLC, for which Joseph F. Rice signed the motion as PEC Co-Lead Counsel.  Mot. at 18.  To the extent that Publix's argument turns on the difference between counsel signing the motion or signing *the exhibit to the motion*, this is a distinction without a difference under the Court's directive and in light of the PEC's certification of all counsel's agreement.

to the motion for leave to amend.  Mot. Ex. A (Dkt. #5570-1) ("signed by" column); Corr. Roadmap (Dkt. #5565) at 4 (PEC certification that signing counsel agreed to be prepared to litigate).  Thus, Publix does not demonstrate the absence of any Plaintiff's intent to litigate through a failure to implement a litigation hold, which the Court already has held is not a requirement for leave to amend in any event.  Order Denying the PBMs' Motion to Strike (Dkt. #5766) at 1 ("This Court has already stated that whether a plaintiff implemented a litigation hold is not a precondition to allowing amendment.") (citing Dkt. #5517).

*Second*, the absence of a litigation hold does not show that any Plaintiff is "not prepared" to litigate.  Publix's argument regarding litigation holds necessarily assumes that there has been spoliation of evidence that prevents some Plaintiffs from litigating, but makes *no* showing that any evidence was lost, let alone that any such evidence was relevant to Plaintiffs' claims or Publix's defenses.  Such "unsupported speculations do not rise to the level of articulable prejudice" that precludes amendment.  *Kanagy v. Midlands Millroom Supply, Inc.*, No. 19-cv-01726, 2020 WL 1275289, at *2 (N.D. Ohio Mar. 17, 2020).  Such speculation is especially inappropriate here, where most Plaintiffs are government entities that likely have their own retention policies that may have obviated the need for a formal litigation hold letter.  Denying leave to amend based on this unfounded and dubious assumption would impose the ultimate sanction on Plaintiffs— effectively a dismissal of claims—without any finding on Plaintiffs' actual ability to litigate.  *Cf. Mann v. CSX Transp., Inc.*, No. 07–cv–3512, 2009 WL 3766056, at *6 (N.D. Ohio Nov. 10, 2009) (Polster, J.) (to warrant sanctions, "the destruction of evidence must

. . . impair the plaintiff's ability to go to trial or threaten to interfere with the rightful decision of the case"). That would be both unwarranted and unfair to Plaintiffs. In any event, Publix's argument makes no sense – it is undeniable that each of the Plaintiffs already has a case on file in this MDL against other defendants. The absence of a formal litigation hold cannot be deemed to say anything about a Plaintiff's preparedness or commitment to litigating against *Publix*.

### D. The MSP Plaintiffs' Inadvertent Omission from the Motion, Which the PEC Promptly Corrected, Does Not Warrant Denying Them Leave to Amend.

Publix argues that the Medicare Secondary Payer ("MSP") Plaintiffs—MSPA Claims 1, LLC; MSP Recovery Services, LLC; MSP Recovery Claims, Series LLC; and MAO-MSO Recovery II, LLC—must be denied leave to amend for failure to timely move. This argument too is incorrect.

The PEC timely filed Plaintiffs' motion for leave to amend against Publix (Dkt. #5558) on July 30, 2024. In Exhibit A to the motion (Dkt. #5558-1), the PEC inadvertently left off the MSP Plaintiffs. The PEC quickly recognized this omission and disclosed it to Special Master Cohen and counsel for Publix within two days. *See* Publix Ex. 6 (Dkt. #5881-6) at 3-6 (Aug. 1, 2024 email of Paulina do Amaral). That same day, the PEC fixed its omission by filing a corrected motion against Publix (Dkt. #5570, filed 8/1/24) with the MSP Plaintiffs included in a corrected Exhibit A (Dkt. #5570-1) (Case Numbers 1:18-op-45057, 1:18-op-45526, and 1:21-op-45079). The PEC's prompt curing of this inadvertent omission should be deemed timely as to the MSP Plaintiffs. *See, e.g., Golembowski*, 2017 WL 1078329, at *2 ("[I]t is clear the defendants' counsel acted in good

faith; counsel would have been in compliance with the filing deadline but for a clerical oversight, and upon discovery of the oversight counsel immediately corrected the mistake by filing the notice with the appropriate court."). *Walker v. Am. Red Cross*, No. 20-cv-01755-MK, 2022 WL 22662135, at *1 (D. Or. Feb. 1, 2022) ("Although filed after the filing deadline, the Court will consider only Plaintiff's corrected amended complaint and corrected motion to amend as they are presumed to be the most up to date and comprehensive compilation of Plaintiff's allegations.").[8]

The Court should reject Publix's argument that the MSP Plaintiffs must be denied leave to amend because "this unauthorized filing was their first and only request for leave to amend." Opp. at 12. The Court has discretion to allow the corrected filing without requiring the PEC to file a separate motion for allowance. *See U.S. v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (recognizing the "understandable discretion vested in district courts to permit a longer time for a written answer to a request for admissions and to accept the filing of an answer that would otherwise be untimely" and that "a formal motion is not always required").[9] The Court should

---

[8] *See also James v. Cleveland Sch. Dist.*, No. 19-CV-66-DMB-RP, 2021 WL 1988197, at *1 (N.D. Miss. May 18, 2021) ("[T]he Court finds that all relevant documents were filed within hours of the expiration of the deadline, thereby eliminating any potential prejudice to the defendants; consideration of the missing exhibits would advance the interest of deciding this case on the merits[.]"); *Wharton v. Nassau Cnty.*, No. 10–CV–0265 (JS)(AKT), 2010 WL 4878998, at *2 (E.D.N.Y. Nov. 22, 2010) ("[T]he worst that can be said about Defendants' behavior is that they missed a deadline and then, without prompting by Plaintiff, corrected their mistake by filing an Answer after a relatively short delay. Such conduct . . . does not rise to the level of willfulness required for a default judgment.").

[9] Publix's reliance on Rule 6, which provides that "the court may, for good cause, extend [a deadline] on motion made after the time has expired if the party failed to act

exercise its discretion to allow this corrected filing because it would be fundamentally unfair to punish the MSP Plaintiffs for the PEC's drafting error, and Publix suffered no prejudice by the passage of *two days* from July 30 to August 1, 2024, when it still had over *five months* to prepare its opposition.

### E. Publix's Reference to So-Called "Zero-Percent Market Share" Plaintiffs Does Not Warrant Denying Leave to Amend.

Publix next argues that Plaintiff Sheriff of Peach County, GA is unqualified to amend to sue Publix because it cannot possibly intend to litigate when Publix purportedly operates no pharmacies in its jurisdiction.[10]  Since Publix filed its Opposition, the Court has issued two Orders denying motions, *including one by Publix*, that sought dismissal or denial of leave to amend on this ground.  *See* CT22 Order Regarding Motion to Amend (Dkt. #6026) at 2-3 (argument based on low dispensing volume was not ground to deny leave to amend); Order Denying Publix's Motion to Enforce Court Order (Dkt. #6124) at 3 (denying dismissal of allegedly zero market share cases; finding Plaintiffs to have complied with prior orders on this issue).  The Court's prior reasoning applies equally here.

Moreover, Publix's assertion that it has no pharmacies in Peach County, Georgia is incorrect or at least highly misleading.  As Publix has admitted, the DEA's ARCOS data lists Peach County as having a Publix pharmacy.  *See* Publix Memo. of Law in

---

because of excusable neglect[,]" Fed. R. Civ. P. 6(b)(1)(B), is misplaced.  The PEC *did* act within the deadline by filing the motion on July 30, 2024.

[10] Publix also makes this argument against Plaintiffs Russell County, AL; Columbiana, AL; and City of Florida City, FL.  *Id.*  These three Plaintiffs have since withdrawn from the motion against Publix.  Ex. 2 (Plaintiffs withdrawn from Publix motion).

Support of Motion to Dismiss (Dkt. #6020) at 4 n.3.  In its failed motion to dismiss, Publix relied on extrinsic evidence (Dkt. #6020-1) to situate this pharmacy just over the Peach County line, though still within the City of Byron, Georgia, most of which is in Peach County.[11]  Whether it is located in Peach County or just outside the county line, this Publix pharmacy had an opioid morphine milligram equivalent ("MME") distribution amount equal to what would be **10%** of the Peach County market—16,174,032 of 161,756,232 opioid MMEs shipped during its active years of 2010 to 2019.[12]  This is the exact type of evidence the Court has recognized may support a claim.  *See* Tr. of 6/2/21 Teleconference (Dkt. #3753) at 9:25-10:5 ("[Plaintiffs] are going to have to make a showing . . . as to what is their basis for proceeding against a pharmacy that has zero market share in that county.  *Now, if there is a large market share in a neighboring county and the stores are close, well, okay.  That would be a good reason.*").[13]  Publix's argument for denying leave to amend based on purportedly low market share thus is wrong on both the law and the facts.

---

[11]  *See* website for City of Byron, Georgia, "About Byron" page (https://www.byronga.com/about-byron-php, last visited July 2, 2025) ("The City of Byron . . . was incorporated in 1874 and covers 5.8 square miles in Peach County, Georgia.").

[12]  *See* ARCOS 2006-2019 data; *Opioids Data*, SLCG Economic Consulting, https://www.slcg.com/opioid-data/ (containing Plaintiffs' expert Pharmacy Reports for Peach County, GA).

[13]  In light of the Court's recognition of this common-sense point about geographic proximity, Publix's argument challenging Plaintiffs' use of county market share data for amending cities and towns within the county, Opp. at 32-33, is misplaced, particularly as a ground for denying leave to amend.  *See* Dkt. #6026 at 3.

### F. Plaintiffs Have Sufficiently Specified the Proposed Amendments.

Publix contends that Plaintiffs purportedly violated the Court's May 2024 Order (Dkt. #5455) by failing to specify "the jurisdiction-specific claims they seek to assert or any jurisdiction-specific factual allegations to support a claim against Publix." Opp. at 15. Not so.

Publix emphasizes "the necessity for plaintiffs to submit the substance of their proposed amendments." Opp. at 14 (citing *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003)). Plaintiffs have done so by stating they intend to supplement their complaints with allegations and claims substantially similar to those asserted against Publix in the CT8 supplemental and amended complaint (Dkt. #3787). Had Plaintiffs amended by the previous deadlines, they also would have done so through short-form complaints incorporating a bellwether pleading. *See* Op. and Order Approving Short-Form Complaint (Dkt. #1282). There is no basis for Publix to require Plaintiffs to allege more detail now than they would have provided then. *See, e.g.*, Dkt. #1282 at 2 (rejecting other defendants' argument that short-form complaint did not suffice to plead fraud with particularity "with respect to each amending plaintiff," as incorporated sections of relevant bellwether complaint demonstrated that any allegations of fraud "apply with sufficient particularity to all plaintiffs and are sufficient to put any named defendant on notice of the alleged fraudulent behavior"). Further, any issues relating to additional state-specific claims can be addressed by discrete pleading motions (if appropriate) or at summary judgment. There is no basis to preclude Plaintiffs *from even*

14

*bringing those claims* now.[14]

Publix argues that "Cobb County's claims – based on Georgia law – necessarily cannot inform the kinds of claims available to Movants [] pursuing claims based on other states' laws." Opp. at 15. This argument, however, does not apply to Plaintiffs' federal RICO claims and it fails as to Plaintiffs' state-law claims for three reasons.

*First*, Plaintiffs have already asserted state-law claims against other defendants in their pending actions. The amendments they seek leave to file would supplement, not supersede, those filings. Publix thus has notice of what state-law claims each Plaintiff is asserting.

*Second*, Plaintiffs state *not* that they will adopt Cobb County's *exact* claims, but rather that they will supplement their existing pleadings with "substantially similar claims" to those pleaded by Cobb County. Mot. at 1. The public nuisance and other common law and statutory claims pleaded in the Cobb County Complaint and the detailed allegations in support of them provide more than enough information for Publix to determine *the substance* of Plaintiffs' proposed amended state-law claims.

*Third*, Publix's suggestion of wide variation among the states' laws at issue also misses the mark. The 22 Plaintiffs amending against Publix consist of 12 counties and

---

[14] In *Spadafore*, which Publix cites, the Sixth Circuit rejected plaintiffs' argument "that they were wrongfully denied the opportunity to further amend their complaint after offering to do so in their opposition to the defendant's motion for summary judgment." 330 F.3d at 853. The court of appeals noted "[n]o motion for leave to amend was ever filed, . . . nor was a proposed amendment submitted *in any form* as required by Rule 15(a)[.]" The virtual absence of information regarding the nature of the proposed amendment in *Spadafore* is a far cry from the motion and extensive accompanying briefing and full bellwether allegations Plaintiffs have provided regarding their proposed amendments.

cities located *only* in Georgia (2) and Florida (10), plus ten TPPs or MSPs of which six also are in Florida while the other four are suing under federal and Ohio or Massachusetts law.  *See* Ex. 1 (Amending Pltfs. Seeking Leave to Add Publix).  Of these, the Georgia Plaintiffs *could* assert the exact same public nuisance and other common law and statutory claims in the Cobb County Complaint.  The Court has found these claims actionable in both denying Publix's motion to dismiss (Dkt. #4071) and granting Cobb County partial summary judgment request on the legal standards governing Publix's duties as a controlled substances distributor and dispenser (Dkt. #5640 at 1, 3).  There is thus no question that the motion gives Publix notice of the Georgia Plaintiffs' claims.

It also gives Publix notice of the Florida Plaintiffs' "substantially similar claims" under federal and Florida law, which this Court likewise has found actionable by denying pharmacy defendants' motion to dismiss a Florida Plaintiff's claims (Dkt. #3253 at 26-27 (West Boca RICO claims against pharmacies), 29-33 (public nuisance), 40-46 (Deceptive and Unfair Trade Practices Act claims against distributors and pharmacies), 50-54 (negligence), 57-60 (unjust enrichment)).  Finally, the Cobb County Complaint likewise gives Publix notice of the actual substance of the conduct underpinning the federal RICO claims sought to be filed by the four TPP and MSP Plaintiffs outside of Florida and Georgia, which this Court has found actionable.  *See* Op. and Order on Cleveland Bakers Motion to Dismiss (Dkt. #3177) at 14-23, 30-39 (denying dismissal of RICO claims by TPP plaintiff).

*       *       *

3270255.8

For all of the reasons set forth above, Plaintiffs have complied with the Court's orders, the Federal Rules, and Sixth Circuit precedent in seeking leave to amend. The Court should reject Publix's attempt to evade liability based on factually and legally unsupported challenges to Plaintiffs' "qualifications" to sue.[15]

## II. Publix Fails to Overcome Plaintiffs' Showing of Good Cause Under Rule 16.

### A. The Motion Shows Good Cause for Each of the 22 Plaintiffs Seeking to Add Publix.

Plaintiffs showed in their motion that Publix had a substantial 5% or greater opioid dispensing market share for the 2006-2019 time period in or around each Plaintiff's jurisdiction and that Plaintiffs could not have determined this before the DEA produced the 2015-2019 ARCOS data in 2023. Mot. at 1-2, 3-5, 10-13. Publix nonetheless argues this showing is insufficiently individualized as to each Plaintiff. This is incorrect. Plaintiffs show that, under the Court's orders for producing ARCOS information, *no* Plaintiff could access opioid dispensing market share data before the March 2019 amendment deadline, and none could access ARCOS data for the 2015-2019

---

[15] The Court also should reject Publix's assertion, with respect to the April 8, 2022 Order of the Judicial Panel on Multidistrict Litigation ("JPML"), that "[t]he PEC admits the JPML prohibits their requested amendments" (Opp. at 16). The PEC admits no such thing. Publix cites a statement of counsel in a non-MDL case in 2023 addressing the JPML order to the effect that "[t]his is the Order Plaintiffs construe as preventing them from pursuing, in the MDL, the claims brought in this case against [Publix and other defendants]." Notice of Filing at 2, *Palm Beach Cnty., FL v. Mylan Pharms., Inc.*, No. 9:23-cv-80431-RLR (S.D. Fla.) (Dkt. #152, filed 5/22/23). The PEC did not make this statement. Moreover, the statement of belief was not clearly wrong when it was made in 2023, at which time the JPML had prohibited transfers of new cases to the MDL and this Court had stayed all non-bellwether cases, including as to amendment. Now that the Court has partially lifted the stay to allow motions to amend, the 2023 statement is inapposite.

period, when Publix sharply increased its opioid dispensing and market share, until 2023.  Mot. at 10-11; Corr. Roadmap at 11-15.  That these facts are common to all 22 Plaintiffs seeking to amend does not make them any less applicable to each one of them.

Indeed, Publix seems to recognize this, as it immediately pivots to arguing that the ARCOS data productions are not dispositive as to Plaintiffs' knowledge or diligence.  This argument fails for two reasons.  *First*, except for the right to amend by the applicable Amendment Deadlines, all of Plaintiffs' cases were stayed from latest May 2018 until May 2024 when the Court lifted the stay to allow these motions.  *See* Dkt. #371, Dkt. #5455.  Since no Plaintiff could take discovery during that time, the DEA's production and the PEC's processing of ARCOS data pursuant to the Court's orders were the *only* available information sources on Publix's opioid dispensing in Plaintiffs' jurisdictions.  *Second*, even if other information sources had been available, those would not have enabled Plaintiffs to make the jurisdiction-specific opioid dispensing market share determinations that underpin their motion to amend against Publix.  The Court has long recognized that "[d]iscovery of precisely which manufacturers sent which drugs to which distributors, and which distributors sent which drugs to which pharmacies and doctors, is critical . . . to all of plaintiffs' claims."  Order Regarding ARCOS Data (Dkt. #233) at 8.  Plaintiffs' motion thus correctly identifies the common factor—the availability of the 2015-2019 ARCOS data in late 2023—that enabled each Plaintiff to develop its proposed claims against Publix.[16]

---

[16] Publix's assertion that Plaintiffs' motion fails to account for different amending deadlines for certain Plaintiffs *see* Opp. at 19-20, also is incorrect.  Plaintiffs' motion

In light of the foregoing, it is unsurprising that the alternative information sources Publix identifies (Opp. at 20-21) did nothing to identify Publix as contributing to the opioid epidemic in any Plaintiff's jurisdiction.[17]  In short, none of the "wide-ranging data, reports and information" (Opp. at 21) to which Plaintiffs may have had access would have given them notice of their proposed claims against Publix.

So, too, with respect to the TPP and MSP Plaintiffs.  Publix argues that these Plaintiffs "have vast amounts of current and historical claims data which shows (i) prescription drug (including opioid) utilization for drugs dispensed by Publix and other

expressly differentiated between information available to Plaintiffs with amendment deadlines on or before May 7, 2019, and those with amendment deadlines after that date, and explained how both groups of Plaintiffs satisfied the diligence standard.  *See* Mot. at 10-12.  There are no other meaningful distinctions based on the different deadlines.  The last deadline applicable to any of the Plaintiffs occurred in August 2021 *See Transitions Recovery Program v. McKesson Corp. et al.*, No. 1:21-op-45066 (N.D. Ohio) (Dkt. #1, Complaint, filed May 19, 2021).  Accordingly, Plaintiffs' deadlines to amend were between March 2019 and August 2021.  Discovery was stayed that entire time.  Moreover, the motion shows how both the 2015-2019 opioid dispensing market share information and the CT8 bellwether discovery on Publix's controlled substances distribution and dispensing practices that underpin Plaintiffs' proposed amended claims did not become available to any Plaintiff until 2023 and 2024.  Mot. at 3-5.  The different amendment deadlines thus did not create any material difference with respect to each Plaintiff's diligence regarding claims against Publix.

[17] *See* Opp. Ex. 10 (Dkt. #5881-10) (Orange County, FL Drug Court page describing addiction treatment); Ex. 11 (Dkt. #5881-11) (Brevard County, FL Prevention Coalition statement describing opioid misuse prevention efforts); Ex. 12 (Dkt. #5881-12) (DEA press release on Broward County, FL pill mill arrests, describing types of pills prescribed and manner of prescription, but not pharmacy sources);  Ex. 13 (Dkt. #5881-13) (Florida Attorney General's Opioid Working Group report providing, *inter alia*, recommendations for enforcement with no mention of dispensing pharmacies); Ex. 14 (Orange County, FL Update on Opioid-Related Litigation, Nov. 13, 2018, naming as "Possible Defendants . . . Pharmacies" including Walgreens, CVS, Walmart, and Costco, but not Publix); Ex. 15 (Dkt. #5881-15) ("Municipalities and the Opioid Crisis" presentation to Florida Association of County Attorneys, June 28, 2018, identifying as existing "Defendants . . . Pharmacies: CVS, Walgreens, Costco," but not Publix).

19

pharmacies nationwide and (ii) treatment for opioid use disorder and its impacts." Opp. at 21-22.  This information, however, would not have enabled the TPP or MSP Plaintiffs to determine whether Publix meaningfully contributed to their damages.  The TPPs, for example, seek damages arising from health-related expenses they have paid to treat opioid use.  *Cf.* Dkt. #5697 (Amended TPP Class Action Complaint) ¶ 1346 (damages include "substantial sums for the purchase of opioid drugs *and treatment for their abuse*"); ¶ 1510 (consumer protection statute harms include "health-related expenses"); ¶¶ 1466, 1493, 1560 (common law claims seeking "all damages allowed by law").  Such opioid abuse treatment expenses are not necessarily related to opioid prescriptions for which these Plaintiffs paid; they may have arisen from a patient's exposure to opioids diverted, in part, due to Publix's failure to meet its obligations to provide effective controls against diversion.  To determine whether Publix's opioid-related conduct meaningfully contributed to these expenses, these Plaintiffs needed the opioid market share information provided in the 2015-2019 ARCOS data reports.

## B.  Plaintiffs Have Pursued Claims Against Publix with Reasonable Diligence

Contrary to Publix's assertion, Plaintiffs have shown both that they did not possess and could not have obtained the information they needed to assert claims against Publix as of March 2019 or through August 2021.  That suffices to satisfy Rule 16, especially because the Rule requires only "reasonable," not perfect, diligence.  *Reed v. Home Depot U.S.A., Inc.*, No. 16-cv-926, 2017 WL 5202684, at *2 (S.D. Ohio May 15, 2017); *see also Butler v. 3M Co.*, No. 24-cv-01587, 2024 WL 5054884, at *3 (S.D. Ohio Dec. 9, 2024) ("Although the Court agrees with Defendants that [plaintiff] was not perfectly

diligent in that she could have moved to amend earlier, she was sufficiently diligent to satisfy Rule 16(b).").

### 1. Plaintiffs Could Not Have Obtained the ARCOS Data They Needed Prior to May 7, 2019

Publix does not dispute that "[n]ew information can constitute good cause under Rule 16(b)." *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, No. 17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018). Yet it asserts that Plaintiffs could have moved to amend years earlier without the 2015-2019 ARCOS data or the evidence of its opioid distribution and dispensing practices simply because "other MDL plaintiffs did." Opp. at 23. This is manifestly incorrect.

 When this Court ordered the DEA to produce ARCOS data, it limited both the extent of data that would be produced and access to that data. These limitations were designed to address various defendants' concerns about confidentiality and security as well as the need, emphasized by the DEA, to protect ongoing investigations and avoid disclosure of the locations of warehouses where opioids are stored. Dkt. #233 at 4. Accordingly, in April 2018 the Court directed the DEA to transfer certain limited ARCOS data to a third-party consultant hired by the PEC; the consultant was to house the data on a computer not connected to the Internet. *Id.* at 4, 15. This ensured that there could be no access to the ARCOS data other than in accordance with directions from the Court as to what information the PEC could share with Plaintiffs and their counsel. Each time the Court subsequently expanded the scope of ARCOS data to be produced, it directed that production occur "using the protocols previously agreed to

by DEA."  Dkt. #397 at 2 (ordering production of nationwide data); Dkt. #668 at 2 (expanding scope of production to cover transactions involving additional drugs).

The question then arose how Plaintiffs might use the ARCOS data—which could only be accessed from the consultant's physical location and consisted of raw data reflecting, in not-easily-digestible form, hundreds of millions of individual transactions—to identify defendants who should be added to their complaints.  To resolve this issue, on July 13, 2018, the Court directed the PEC to "file a report derived from the ARCOS data that lists, for every county, all manufacturers, distributors, and pharmacies that contributed directly to the presence of opioids in that county," but instructed that the report "shall not reveal any data regarding the *amounts or types of opioids* distributed in the counties."  Dkt. #739 ("July 2018 Order") at 3-4 (footnote omitted) (emphasis in original); *see also* Dkt. #5567-2 (Mougey Decl.) ¶ 16 ("The only information that the PEC was permitted to provide about dispensers was a pharmacy's presence in the jurisdiction; no dispensing market share information was provided at this time.").[18]  The PEC was not permitted to provide additional information until well

---

[18] On November 8, 2018, the Court issued "minor modifications" to the order authorizing reports derived from the ARCOS data.  With respect to manufacturers and distributors, the PEC would now identify only those entities that had more than a 5% market share in the relevant jurisdictions in at least three of the nine years then available in the ARCOS data (2006-2014).  Dkt. #1106 ("November 2018 Order") at 2. But the Court did not permit disclosure of any market share analysis with respect to pharmacies.  Thus, as set forth in the July 2018 Order, the PEC was authorized to share only the *identities* of the pharmacies in Plaintiffs' jurisdictions that received opioids from distributors.  Dkt. #739 at 4.  Whatever ambiguity there may have been in the November 2018 Order's language, its meaning was perfectly clear, especially in light of the July 2018 Order's plain language.  The Declaration of Peter Mougey submitted in

after March 16, 2019, and was not able to provide such expanded information until May 7, 2019.

As of March 16, 2019, then, the *only* information a Plaintiff could obtain from the PEC with respect to dispensing of opioids was the identity of every pharmacy operating in its jurisdiction.  Given these facts, Publix's contention that Plaintiffs could have (and therefore should have) accessed raw ARCOS data and performed their own calculations of dispensing market share by the March 16, 2019 deadline is simply wrong – at that time, the information was housed on the third-party consultant's computer and there was no way for anyone else to access it.

In April 2019, the Court, for the first time, permitted the PEC to share additional information with Plaintiffs, *see* Dkt. #1545, but implementation of this order was not, and could not have been, instantaneous.  On May 7, 2019, the PEC gave notice that it was ready to provide the expanded information. *See* Dkt. #1612. It was only then that a Plaintiff could obtain information detailing Publix's dispensing market share.  Thus, at the time of the March 16, 2019 deadline for Plaintiffs with cases already in the MDL, and continuing until May 7, 2019, *no* Plaintiff had access to ARCOS data from which Publix's market share as a dispenser could be computed or even approximated.

Although Publix cites media coverage (including a *60 Minutes* appearance by a member of the PEC) as evidence that market share information from ARCOS data was available to Plaintiffs in time to meet all of the Amendment Deadlines, all of the reports

---

connection with Plaintiffs' motions to amend confirms this was what the PEC understood the Court to direct and what the PEC in fact did.

it cites occurred *after* the Court permitted the PEC to provide expanded reports and *after* the ARCOS data became available to the public, none of which occurred before May 7, 2019. *See* Opp. at 24-25 (quoting transcript of *60 Minutes* episode from June 30, 2019); *id.* at 27 (quoting *Tampa Bay Times* articles of July 25-26, 2019, and *Washington Post* article of September 20, 2019). Far from showing that Plaintiffs had market share information in time to meet the Amendment Deadlines, these articles simply confirm that this information became available after May 7, 2019 – and that it was new and newsworthy when that occurred.

Moreover, while Publix asserts that "[d]ozens of local governments in Alabama, Florida, and Georgia timely filed claims against Publix, including dispensing claims," Opp. at 23, the only Plaintiffs it identifies *id.* at 25-26, either did not make dispensing allegations,[19] named Publix as a dispenser without alleging dispensing conduct,[20] or alleged dispensing conduct without any specific reference to Publix or its dispensing volume or market share.[21] Moreover, for none of those Plaintiffs does Publix identify

---

[19] *City of Albany, GA v. AmerisourceBergen Drug Corp.*, No. 1:18-op-46337 (N.D. Ohio) (Dkt. #5, Short-Form Suppl. Complaint, filed 3/15/2019) at 2; *id.* at 1 (incorporating CT1 Summit County Corrected Second Amended Complaint allegations, which asserted distribution, not dispensing, claims); *County of Peach, GA v. Purdue Pharma, Inc.*, No. 1:18-op-45579 (N.D. Ohio) (Dkt. #2, Short Form Suppl. Complaint, filed 3/15/2019), at 1-2 (same).

[20] *Cobb County, GA v. Purdue Pharma*, No. 1:18-op-45817 (N.D. Ohio) (Dkt. #6, Short Form Suppl. Complaint, filed 3/15/2019) at 37-38 (fact allegations against Publix only as distributor).

[21] *Henry County, GA v. Purdue Pharma, L.P.*, No. 1:18-op-46310 (N.D. Ohio) (Dkt. #24, Short Form Suppl. Complaint, filed 3/18/2019) at 2; *id.* at 1 (incorporating CT1 Summit County Corrected Second Amended Complaint allegations); *id.* at 13 (sole allegations

what other non-ARCOS information they may have relied upon in suing Publix or whether any such information was available to these Plaintiffs. Those cases thus do nothing to show that Plaintiffs could have amended to assert their dispensing claims in March 2019.[22]

The lack of access to the ARCOS data from which market share information could be inferred prior to May 7, 2019, demonstrates "good cause" to amend for all Plaintiffs with amendment deadlines on or before that date. The Court has long recognized the value of the ARCOS data to the proper identification of defendants that contributed to the opioid epidemic. Dkt. #397 at 1. And Plaintiffs in this MDL have consistently made clear that careful analysis of the ARCOS data and other relevant facts was critical to identifying appropriate additional defendants and asserting plausible claims against them. This is especially true because a defendant's market share is an important component in establishing that its role sufficiently contributed to the opioid crisis to meet the requirements of causation. Indeed, numerous defendants in this litigation have made the argument that they did not have sufficient market share to be

---

specifying Publix); *id.* at 51-55 (dispensing conduct allegations against CVS, Walgreens, and Rite Aid).

[22] Likewise, Publix's assertion that jurisdictionally overlapping Plaintiffs' amendments in 2019 show that certain Plaintiffs here could have amended to assert their dispensing claims then is incorrect. Plaintiff Sheriff of Peach County, Georgia (*see* Opp. at 24) seeks to amend to assert dispensing claims, whereas Plaintiff Peach County, Georgia amended in 2019 to assert only *distribution* claims against Publix. *See County of Peach, GA v. Purdue Pharma, Inc.*, No. 1:18-op-45579 (N.D. Ohio) (Dkt. #2, Short Form Suppl. Complaint, filed 3/15/2019), at 2; *id.* at 1 (incorporating CT1 Summit County Corrected Second Amended Complaint allegations). And Plaintiff City of Ocala, FL (*see* Opp. at 23-24) has withdrawn from the motion. Ex. 2 (Plaintiffs withdrawn from Publix motion).

held liable. It is not unreasonable for a Plaintiff to verify the magnitude of a dispenser's role before naming it as a defendant.

Additionally, whether market share data was required to amend (*see* Opp. at 33) is irrelevant. In this respect, Publix focuses on whether a Plaintiff could have brought *any possible* claim – no matter how well or poorly supported – by the amendment deadline.[23] But that is not the standard; rather, the Court must assess whether Plaintiffs exercised reasonable diligence in asserting *the claims and allegations they presently propose*. *See, e.g., Tipton v. Swanson*, No. 20-cv-02346, 2021 WL 12320652, at *1 (N.D. Ohio Nov. 16, 2021) ("Plaintiff had good cause for being unable to make *this amendment* until he received his medical records through discovery."). As Plaintiffs' proposed claims and allegations incorporate critical facts based on the PEC's analysis of the ARCOS data and information developed through discovery in bellwether cases, Plaintiffs did not unduly delay in proposing them.

In short, attempting to avoid a "shoot first, ask questions later" approach to pleading, Plaintiffs understood it could take substantial time to develop facts to support adding new defendants and claims to this complex litigation. These circumstances are consistent with the "regular[]" practice of granting leave to amend "when discovery apparently confirmed [the party's] suspicions" so that it could assert claims. *Salerno v.*

---

[23] *See* Opp. at 29 ("Regardless of whether **more** is known today about ***dispensing-based claims***, the fact remains that sufficient information was available to Movants to determine whether to add Publix to a case in time to meet applicable deadlines.") (emphasis in original); *id.* at 31 (without citing authority, faulting Plaintiffs for "focusing only on a *dispensing*-based claim and not on the availability of information to add Publix as a *party* to *any* claim in the case") (emphasis in original).

*Fam. Heritage Life Ins. Co. of Am.*, No. 23-cv-01419, 2024 WL 2235772, at *2 (N.D. Ohio May 17, 2024 (alteration in original); *see also York v. Lucas Cnty., Ohio*, No. 13 cv 1335, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later.").

### 2. Critical facts bearing on Publix's liability emerged over several years after March 16, 2019.

That the ARCOS data required to compute dispensing market share may have been necessary for a plaintiff to identify Publix as a defendant does not mean it was sufficient for that purpose.  Plaintiffs with amendment deadlines after May 7, 2019 – that is, Plaintiffs whose cases were transferred into the MDL less than 90 days before May 7, 2019 – were also sufficiently diligent because additional critical information became available between May 2019 and August 2023.[24]  In particular, facts developed through the PEC's subsequent efforts as well as discovery in bellwether cases confirmed

---

[24] Nine of the 22 Amending Plaintiffs had post-May 2019 amendment deadlines, which ranged from August 4, 2019 (Sarasota County, FL) to August 17, 2021 (Transitions Recovery Program, FL).  *See Transitions Recovery Program v. McKesson Corp. et al.*, No. 1:21-op-45066 (N.D. Ohio) (Dkt. #1, Complaint, filed May 19, 2021) (latest Plaintiff to file, with amendment deadline of August 17, 2021).  The nine Plaintiffs with post-May 2019 amendment deadlines are: Sheriff of Peach County, GA, No. 1:19-op-45314; Sarasota County, FL, No. 1:19-op-45339; St. Johns County, FL, No. 1:19-op-45563; St. Lucie County, FL, No. 1:19-op-45656; Hernando County, FL, No. 1:19-op-45667; Lee County, FL, No. 1:19-op-45671; City of Stuart, FL, No. 1:20-op-45124; Transitions Recovery Program, FL, No. 1:20-op-45066; and Series 17-03-615, No. 1:21-op-45079.  The last three of these--City of Stuart, Transitions Recovery Program, and Series 17-03-615--had amendment deadlines after November 5, 2019, when the ARCOS data became public.  *Cf.* Opp. at 29 (table of Plaintiffs with post-November 5, 2019 amendment deadlines, which omits Series 17-03-615 and includes eight additional Plaintiffs that have since withdrawn from the motion).

Plaintiffs' earlier suspicions of Publix's liability.  For example, it was only after the PEC successfully moved to enforce its subpoena on the DEA for updated ARCOS data for 2015-2019 that the PEC received that data in August 2023, and then – following its analysis of the date with the help of consulting experts – provided Plaintiffs with updated information for their jurisdictions.  *See* Corr. Roadmap (Dkt. #5565) at 15.

In granting the PEC's motion to enforce the subpoena, the Court noted that "having presided over discovery and trial in numerous bellwether cases," it was "certain the PEC is correct that 'updated ARCOS data detailing the prescription opioid supply through 2019 is relevant and *increasingly* important to current MDL cases for which trial will commence in or after 2024.'"  Dkt. #5115 at 8 (emphasis in original) (quoting Dkt. #5109 at 2).  Among other things, the Court cited approvingly the PEC's argument that "if the 2015 to 2019 ARCOS data shows that the prescription [opioid] supply held steady or increased and may have continued to fuel addiction, this . . . would bear on the non-settled Defendants' liability for the continuing nuisance based on their manufacturing, distribution, and/or dispensing conduct, particularly if these Defendants expanded their market presence during this period."  *Id.* at 9 (quoting Dkt. #5109 at 3).  The Court explained "it would make no sense to ask a jury to determine in, say, 2024, whether a defendant is contributing to an ongoing public nuisance, but deny the parties access to ARCOS data newer than 10 years old."  *Id.* at 10.  The Court's reasoning applies fully, and indeed with special force, to Publix in light of its sharply increased opioid dispensing and market share during this period.  *See* Mot. at 3-5; *supra*

pp. 17-20.[25]

The ARCOS data released in 2023 was indeed significant in at least two ways. *First*, it provided further insight into whether potential defendants who had below 5% market share before 2015 had more than 5% market share during 2015-2019; and *second*, the PEC used the updated data to calculate market share for pharmacies *as dispensers* for the entirety of the relevant period, i.e., 2006-2019.  *See* Corr. Roadmap (Dkt. #5565) at 15-16, 20-21.  While the 5% threshold is not strictly a requirement for asserting claims against particular entities, *see* Opp. at 33-34, the parties and the Court historically have considered it to be significant.  *E.g.*, Dkt. #1106 at 2 (ordering PEC to provide "Distributor Reports" to Plaintiffs based on 5% opioid market share threshold for three of nine ARCOS years).[26]  That information therefore was highly relevant to assess whether to assert claims against additional defendants.[27]

---

[25] Publix's argument that the Court's 2015-2019 ARCOS Order precludes use of the data for amendment, Opp. at 35-36, is incorrect.  Although the Court recognized that using the updated ARCOS data to support amendment "will raise some real concern," Dkt. #5115 at 12, it concluded "that issue is not before the Court" and if any motion to amend is filed, "the Court will rule on those motions based on the Federal Rules of Civil Procedure, the arguments and case-law provided in the parties' briefs, and the guidance provided by the Sixth Circuit in its above-cited mandamus rulings."  *Id.* at 13.

[26] That some cases may have been filed or amended against Publix by plaintiffs where it had sub-5% market shares, Opp. at 34 (listing 11 cases), does not make it inappropriate for Plaintiffs here to use the recognized 5% benchmark as support for amendment.

[27] Publix also challenges the appropriateness of using market share for the entire 2006-2019 period without breaking out the earlier-produced 2006-2014 and later-produced 2015-2019 data.  Opp. at 32.  Since Plaintiffs' proposed claims cover this full time-period, using market share for this period is appropriate.  To the extent Publix uses the two periods to show that four Plaintiffs could have sued earlier based on its 5%+ market share in their jurisdictions during 2006-2014, Opp. at 35, the issue is now moot because all four of those Plaintiffs—Ocala City, FL; Deltona City, FL; Daytona Beach City, FL;

3270255.8

The development of cases against pharmacy dispensers in previous bellwethers also supports good cause to permit the present amendments. Because bellwether Plaintiffs did not pursue dispensing claims before CT1B and CT3, no discovery on dispensing proceeded until after the CT3 amendments. That discovery was vital to the CT3 trial verdict against pharmacy defendants CVS, Walgreens, and Walmart, and supports similar claims against other chain pharmacies, including Publix. In denying pharmacy defendants' post-trial motion for judgment as a matter of law, the Court noted "Plaintiffs presented evidence of Defendants' dispensing of large quantities of highly addictive drugs in the Counties, while repeatedly failing to take legally-required, effective measures to identify and resolve 'red flags' prior to dispensing, and failing to document any due diligence with respect to those red flags." CT3 Op. and Order on Rule 50(b) Motion (Dkt. #4295) at 4; *see also id.* at 6-19 (detailing evidence that supported defendants' liability). The facts elicited in those proceedings in 2021 and 2022 are indicative of other chain pharmacies' conduct and are thus relevant to claims against Publix. In particular, it was only after seeing and analyzing the dispensing data produced by other pharmacies in discovery that Plaintiffs understood how this information could be used to determine the extent of a defendant's improper dispensing and thus establish liability.[28]

---

and Lynn Haven City, FL—have withdrawn from the motion. *See* Ex. 2 (Plaintiffs withdrawn from Publix motion).

[28] Plaintiffs note that the pharmacy defendants involved in CT3 and CT4 had also been the subject of DEA enforcement activities, which was not the case for Publix. In the absence of information about how dispensing data might be used, the DEA enforcement

Nor could Plaintiffs, exercising reasonable diligence, have garnered the necessary information from other sources.  The CT1 bellwether Plaintiffs expressly chose not to bring dispensing claims.[29]  The CT3 bellwether Plaintiffs first brought dispensing claims in May 2020, well after the March 2019 amendment deadline.  Only through discovery in those cases and in CT4 did Plaintiffs have access to information that the pharmacies dispensed hundreds of thousands of prescriptions with "red flags" that raised (or should have raised) suspicion as to their liability.

The history of the Cobb County case further illustrates the material differences between what Plaintiffs knew *about Publix* in March 2019 and what they discovered later.  Cobb County filed a short-form complaint that, as discussed, incorporated the common factual allegations from the Summit County Complaint.  Case No. 1:18-op-45817, Dkt. #6 at 1.  Cobb County stated that "[h]aving reviewed the relevant ARCOS data," which consisted of reports provided "[p]ursuant to the Court's November 8, 2018 Order Regarding Plaintiff's Motion for Modification of CMO-1 (Dkt. 1106)," it was adding certain pharmacy defendants, including Publix, but only in their capacities as *distributors*.  *Id.* at 2-3, 37-38 (including Publix among the "Additional Distributor Defendants").

Cobb County further amended its complaint in July 2021 as authorized by the Court, and this time added *dispensing* claims against Publix (and others) based in part

---

activities provided plaintiffs with an additional basis to add those dispensing defendants.

[29] *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020).

on further analysis of the then-available ARCOS data.  The County alleged, for example:

> The 22 Publix pharmacies in the County purchased and
> dispensed more than 17 million dosage units of oxycodone
> and hydrocodone from 2006 to 2014, the years for which
> ARCOS data is available.  The volume of opioids it shipped
> into, and dispensed from locations in, the County is so high
> as to raise a red flag that not all of the prescriptions being
> ordered could be for legitimate medical uses.  During that
> same time frame, Publix dispensed approximately 12% of
> the oxycodone and hydrocodone in the County.

Dkt. #3787 ¶ 473.  Cobb County thus added allegations in 2021 based on information

that it lacked as of March 2019.[30]  The same is true of Plaintiffs here.  Given the facts

detailed above and in Plaintiffs' opening briefs, whether Plaintiffs reviewed or were

even aware of complaints filed on or before March 16, 2019 has no bearing on whether

good cause exists for the present amendments against Publix.

Finally, as this Court has emphasized, it is "incorrect[]" to "treat[] the time at

which certain information became available to [the movant] as dispositive of diligence,

rather than as a factor to be considered."  *NOCO*, 2022 WL 1803039, at *2.  While the

dispensing-related market share information the PEC disseminated in May 2019 was

valuable, the additional information that emerged through discovery and trials in

bellwether cases, as well as the PEC's dissemination of ARCOS data for 2015-2019 in

---

[30] Discovery in the Cobb County case subsequently uncovered extensive information
about Publix's actionable distribution and dispensing conduct that helped fuel its
sharply increasing opioid sales after 2014, which did not become public until Cobb
County's summary judgment motion was unsealed in May 2024.  Dkt. #5437-1 (filed
May 13, 2024); *see also* Mot. at 4-7, 10-12 (discussing Publix discovery).

September 2023, was essential for Plaintiffs' proposed claims against Publix.[31]  Those developments support a finding that Plaintiffs acted with reasonable diligence in seeking to amend in April 2024.

This is especially so given the highly complex nature of this litigation.  Courts recognize, even in cases far less "complex and multi-faceted" than these, that "it is understandable that some discovery might be necessary in order for the parties to appreciate fully the scope of claims and defenses, and indeed, to fully understand the relationships among the various entities."  *L.H. v. Red Roof Inn, Inc.*, No. 22-CV-625-CHB-RSE, 2025 WL 714385, at *16 (W.D. Ky. Mar. 5, 2025).  That Plaintiffs sought to amend after new facts emerged through discovery and trials in litigation of this complexity and magnitude was reasonable.

That these cases have been stayed for the past seven years also bears on Plaintiffs' diligence.  It was reasonable for Plaintiffs to seek to amend in April 2024 given the absence of other activity in these cases since well before even the March 2019 deadline for earlier-transferred cases.  *See FastTrac Transp., LLC v. Pedigree Techs., LLC*, No. 22-cv-53, 2023 WL 3226185, at *9 (D.N.D. Mar. 7, 2023) (observing "there is not a clear test for when a party is diligent enough to establish good cause" and "whether to allow amendment of a scheduling order is a fact-specific decision which involves

---

[31] Publix's assertion that, "[i]f adequate reports could not have been timely provided by the PEC, it was incumbent on Movants and the PEC to seek an appropriate extension [of the March 16, 2019 deadline] to facilitate timely decisions to amend under a new deadline," Opp. at 30, thus is incorrect.  The PEC could not foresee in 2019 whether or when the information Plaintiffs rely upon for their dispensing-based claims would become available.  When this information became available in 2023 and 2024, the PEC promptly moved for a new amendment deadline.

considerable exercise of the court's discretion.").

In short, all Plaintiffs exercised reasonable diligence in pursuing claims against Publix.  They therefore have met their burden under Rule 16.

### C. Publix Identifies No Cognizable Prejudice It Would Suffer If the Court Permits the Amendments.[32]

Because "all amended pleadings result in at least some prejudice to the non-moving party who will have to defend the claims on the merits," the relevant question for this motion is whether Publix has identified "*unique harm* that justifie[s] denying the Motion."  *NOCO*, 2022 WL 1803039, at *3.  It is not enough to claim that there is prejudice because of "years of delay" (Opp. at 36).  Publix comes nowhere close to demonstrating cognizable prejudice.

The inclusion of the proposed claims and allegations cannot impose any *additional* discovery or briefing burden on Publix, which thus far has faced *no* discovery or motions in Plaintiffs' cases.  *See Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) ("In focusing on [plaintiff's] 16-month delay in filing its motion to amend, the court overlooked the fact that the action had been dormant for 13 of those months," and despite a grant of partial judgment on the pleadings, "the remainder of the case was at its earliest stage of pretrial activity," as "[t]he discovery

---

[32] Undue prejudice to the non-movant is a factor with respect to amending a scheduling order under Rule 16 and with respect to granting leave to amend under Rule 15.  The Rule 16 analysis focuses on the prejudice, if any, of allowing amendment beyond the time set forth in the scheduling order, while the Rule 15 analysis focuses on the prejudice, if any, of allowing amendment at the present time.  But that is a distinction without a difference because these cases have been stayed since before the amendment deadline.  Publix will thus suffer no cognizable prejudice from the amendments, whether viewed through the lens of Rule 16 or Rule 15.

34

cut-off and trial dates had not been set.").  Publix cannot show that it would be in any different position had it been added as a defendant in March 2019 rather than now. That should end the analysis.

Publix summarily asserts it will be prejudiced if amendment is allowed because some Plaintiffs did not implement litigation holds, Opp. at 37-39; the passage of time "no doubt" diminished the memories of unspecified witnesses, *id.* at 39-40; and amendment is "at cross-purposes with the Court's resolution goals," *id.* at 40.  But Publix provides no credible basis to support these claims, none of which withstands scrutiny.

*First*, Publix asserts it "will need to perform otherwise unnecessary, case-specific, extensive discovery to assess the status of legal holds and the degree to which plaintiffs without legal holds spoliated relevant evidence[.]"  Opp. at 38.  But such "unsupported speculations do not rise to the level of articulable prejudice."  *Kanagy*, 2020 WL 1275289, at *2; *see also Hedrick v. OhioHealth Corp.*, No. 19-cv-1326, 2020 WL 13659064, at *4 (S.D. Ohio Oct. 8, 2020) (granting leave to amend answer where argument in opposition was "not well-developed and relie[d] exclusively on speculation.").  Further, as discussed above, "[t]his Court has already stated that whether a plaintiff implemented a litigation hold is not a precondition to allowing amendment."  Dkt. #5766 at 1; *see also* Dkt. #5517.

*Second*, Publix contends it is prejudiced because "the memories of potential key witnesses . . . about relevant events and matters . . . have *no doubt* faded or been lost to time . . . ."  Opp. at 39-40.  This argument, too, is pure speculation.  Publix does not identify any key witness whose testimony has been lost.  Moreover, Publix ignores that

35

testimony of key witnesses has been obtained without incident in the CT8 Cobb County bellwether case. *E.g.*, Plaintiff's Summary Judgment Exhibits 16, 19, 21, 23, 30, 32-35 (Dkt. #5593-17, 20, 22, 24, 31, 33-36) (excerpts of transcripts of depositions of Publix witnesses). Once again, Publix points to no *actual* loss of evidence.

*Third*, Publix does not demonstrate how allowing these amendments would be "counterproductive to the efficient resolution of the MDL" and "at cross-purposes with the Court's resolution goals" (Opp. at 40). Presumably the opposite is true: allowing Plaintiffs to assert claims will provide more clarity as to Publix's potential exposure, which may help Plaintiffs and Publix define the contours of a global resolution. While Publix states that it "has had significant success resolving cases at the local level with authorities who understand and appreciate Publix's historical role in their communities," *id.*, allowing leave to amend would not prevent Publix from continuing to do so. Publix's argument is that disallowing these claims will make the litigation resolve faster, but that is not a legitimate basis to deny leave to amend.

In short, the only "prejudice" Publix will suffer is the need to participate in discovery (when the stay is lifted) and otherwise defend against Plaintiffs' claims. But those are burdens *any* defendant faces in litigation; they do not constitute the type of specific, individualized harm necessary to preclude amendment. That is especially true where, as here, Publix already has litigated similar claims in related proceedings. *See In re Nat'l Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022) (no cognizable prejudice where "the only prejudice Meijer identifies is its litigation costs," which is "prejudice that Meijer has known it could suffer since it was

36

added to the MDL in 2019").  Moreover, this generalized "prejudice" does not arise from the filing of amendments now rather than by the amendment deadline.[33]

## CONCLUSION

For the above reasons and those detailed in Plaintiffs' opening briefs, the Court should grant the motion for leave to amend (Dkt. #5570) for the Plaintiffs listed in Exhibit 1 to this Reply.  To implement such leave, Plaintiffs respectfully request that the Court issue an order directing that:

1.      Each Plaintiff is permitted to amend its respective Complaint to add Publix as a defendant;

2.      After the Court rules on Plaintiffs' other pending motions for leave to amend, each Plaintiff will, within 30 days of the Court's final motion-to-amend-ruling, submit to the Court a proposed order identifying all defendants against which the Plaintiff has been granted leave to amend  (the "Proposed Order Deadline");

3.      Within 14 days of the Proposed Order Deadline, Plaintiffs and the additional defendants will meet and confer regarding a process for the form and submission of amended

---

[33] In the Conclusion to its opposition, Publix requests affirmative relief against *current* Plaintiffs who are not part of this motion.  *See* Opp. 41 ("First" request for relief, seeking dismissal of "existing MDL cases as to Publix where Publix did not operate a pharmacy in the applicable jurisdiction"); *id.* at 43 ("Eighth" request for relief, seeking dismissal of claims against Publix from TPP Class Action Complaint (Dkt. #5697).  The Court should reject these requests in an opposition to a motion for affirmative relief against non-moving parties as improper.  *See, e.g.*, *Waseleski v. City of Brooklyn*, No. 23-cv-548, 2024 WL 4287834, at *6 (N.D. Ohio Sept. 25, 2024) ("[A] party who seeks affirmative relief must file a motion seeking that relief; burying a request for relief in an opposition is improper.").  The Court also should reject Publix's first request because the cases it seeks to dismiss are stayed, *see* Dkt. #6124 (Order Denying Publix's Motion to Enforce Court Order) at 1 n.1, and because the Court now has denied Publix's request for this exact relief in its separately-filed motion.  *Id.* at 1-3.

pleadings to incorporate the additional defendants and claims, and will submit a proposal (or, if necessary, competing proposals) to the Court; and

4.    The Court will then issue an order setting the form of amended pleadings and deadline to file them.

Dated:  July 2, 2025                              Respectfully submitted,

                                                  /s/ Jayne Conroy
                                                  Jayne Conroy
                                                  SIMMONS HANLY CONROY
                                                  112 Madison Avenue, 7th Floor
                                                  New York, NY 10016
                                                  (212) 784-6400
                                                  jconroy@simmonsfirm.com

                                                  Joseph F. Rice
                                                  MOTLEY RICE LLC
                                                  28 Bridgeside Blvd.
                                                  Mt. Pleasant, SC 29464
                                                  (843) 216-9000
                                                  (843) 216-9290 (Fax)
                                                  jrice@motleyrice.com

                                                  Paul T. Farrell, Jr., Esq.
                                                  FARRELL & FULLER LLC
                                                  270 Munoz Rivera Avenue, Suite 201
                                                  San Juan, PR  00918
                                                  (304) 654-8281
                                                  paul@farrellfuller.com

                                                  *Plaintiffs' Co-Lead Counsel*

                                                  /s/ Peter H. Weinberger
                                                  Peter H. Weinberger (0022076)
                                                  SPANGENBERG SHIBLEY &LIBER
                                                  1001 Lakeside Avenue East, Suite 1700
                                                  Cleveland, OH 44114
                                                  (216) 696-3232
                                                  (216) 696-3924 (Fax)
                                                  pweinberger@spanglaw.com

                                                  *Plaintiffs' Liaison Counsel*

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

3270255.8