**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | MDL No. 2804 |
| *Masiowski v. AmerisourceBergen Drug Corp., et al.*, No. 18-op-45985 | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |

**PLAINTIFF MASIOWSKI'S OMNIBUS REPLY TO DEFENDANTS' OPPOSITION TO MICHAEL MASIOWSKI'S MOTION FOR LEAVE TO AMEND; AND MOTION TO ADOPT ARGUMENTS TO BE RAISED BY THE PEC IN THEIR REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS TO ADD THE PBM DEFENDANTS**

Before the Court is Plaintiff Masiowski's Motion for Leave to Amend[1] to add various Defendants central to Plaintiff Masiowski's claims and sustained damages. The PBM Defendants, on January 1, 2025, filed a Joint Motion To Strike And Joint Opposition To Michael Masiowski's Motion For Leave To Amend [Doc. 5878] stating that Plaintiff "Masiowski has failed … to make the showings required under Federal Rules of Civil Procedure 15 and 16 for leave to amend his complaint.". *Id* at page 2.

Similarly[2] before the Court is the Distributor Defendants' Opposition [Doc. 5901] to Plaintiff Masiowski's Corrected Motion for Leave to Amend, and the Manufacturer Defendants' Joinder [Doc. 40 in 1:18-op-45985-DAP]. Defendants argued that Plaintiff Masiowski's Amended Exhibit A was untimely. The Court has already granted Defendants' motions to strike

---

[1] Pl. Masiowski's Mot. for Leave to Amend, [Doc. 33], No. 18-op-45985-DAP.
[2] Plaintiff has already filed his Reply to the Pharmacy Defendants In Support Of His Motion For Leave To Amend [Doc. 5790]. Plaintiff hereby realleges and reincorporates his arguments raised therein.

Plaintiff's Amended Exhibit A [Doc. 5933] and should therefore deem these arguments as moot. Distributor and Manufacturing Defendants also challenge Plaintiff's Amended Complaint filed concurrently with his Motion for Leave to Amend [ECF 33, 1:18-op-45985], and Corrected Motion [ECF 5582].

Last, two Defendants that Plaintiff Masiowski has sought to amend to add (Smith Drug Company and Aphena Pharma) have not filed oppositions to his motion, and the Court should therefore deem his motion unopposed and grant his requested relief.

In sum, Plaintiff Masiowski has demonstrated good cause in moving to amend to add the PBM Defendants, and is within his right to add amended allegations against the Distributor Defendants and Manufacturer Defendants, as the nature and circumstances surrounding the litigation against all Defendants in the MDL has substantively changed since the March 16, 2019, deadline. Moreover, the PBM Defendants are not prejudiced by Plaintiff Masiowski's proposed amendment, nor are the Manufacturer and Distributor Defendants prejudiced by Plaintiff's Amended Complaint. For these reasons this Court should grant Plaintiff Masiowski's Motion.

## I. The PBM Defendants Are Not And Will Not Be Prejudiced By Plaintiff's Proposed Amendment, and Plaintiff Maswioski Could Not Have Met The Court's 2019 Deadline.

As argued by the PEC in their Omnibus Motions For Leave to Amend to Add Express Scripts ("ESI") [Doc. 5548] and OptumRx, Inc. ("OptumRx") [Doc. 5547] (collectively "The PBM Defendants"), leave should be granted now because new information, not available to any amending plaintiff, including Plaintiff Masiowski, until long after the deadline for amendment

had passed, [3] is central to the allegations against the PBM Defendants in this MDL. The new information was provided by the PBMs in discovery *Jefferson County v. Dannie E. Williams, M.D.*, et al., (the "JeffCo Action"), litigated in state court in Missouri. The vast majority of document production in that case was made in 2022 and 2023, but was not produced in the MDL until January, 2023.

As shown in the Rochester Amended Pleading, the documents produced in discovery in the JeffCo Action provide key information that is central to the claims the Amending Plaintiffs seek to add. This information includes details about the wealth of data the Optum and Express Scripts Defendants have at their disposal; the use they actually made of that data; the fact that the Express Scripts Defendants knew at least by 2007 that prior authorization ("PA") was one of the (if not the) most effective ways to reduce inappropriate opioid use, but did not offer plans with PA for opioids until 2017; details of their rebate agreements that show how the Express Scripts Defendants were paid to ensure unfettered access to prescription opioids; how changes in the formulary restrictions and utilization management tools that the Express Scripts Defendants offered were in fact effective in limiting the supply of opioids; and how the Express Scripts Defendants delayed implementing those restrictions specifically for the purpose of maintaining high rebate payments from opioid manufacturers; details of their rebate agreements that show how manufacturer rebates were conditioned on the Optum Defendants ensuring unfettered access to prescription opioids; how changes in the formulary restrictions and utilization management

---

[3] The CMO deadline was the later of March 16, 2019, or 90 days from the date a case was transferred into the MDL. As discussed in the text, the specific operative date for plaintiffs with deadlines after March 16, 2019, is irrelevant: the JPML stopped transferring cases into the MDL in April 2022 and the new information that gives rise to this motion was not made available in the MDL until January of 2023 at the earliest.

tools that the Optum Defendants did not offer until mid-2017 and 2018 were in fact effective in limiting the supply of opioids and could have been implemented long before.

Plaintiff Masiowski, similarly to other amending plaintiffs, did not have access to this information until the PBMs DR-22 production in this litigation, which did not begin until January 2023. Because Plaintiff Masiowski could not, even with due diligence, have met the deadline to amend his complaint to add claims against the PBM Defendants prior to the Court's 2019 deadline, this Court should find that Plaintiff Masiowski has demonstrated "good cause" within the meaning of Rule 16, and that his motion to amend is proper under Rule 15, and should grant his motion to amend.[4]

### a. Despite his Diligence, Plaintiff Masiowski Could Not Have Met the Original Deadline.

Plaintiff readily meets the diligence test for amending the scheduling order to permit amended pleadings: the information on which he seeks to base his amended pleadings was simply not available until the applicable deadline for amendment had passed. *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, No. 2:17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline."). This was so

---

[4] The PEC provides a complete factual background regarding the information gained in the JeffCo case in [Doc. 5547] at pages 3-7.

because discovery from the PBM Defendants in the JeffCo Action revealed a wealth of information not previously available. The new evidence was critical in demonstrating the role of the PBM Defendants in creating, contributing to, and maintaining the opioid crisis. Although *some* information about the PBM Defendants' role was, of course, previously available, the extent to which the PBM Defendants colluded with Purdue to maintain free availability of prescription opioids without regard to the interest of PBM's clients, the lives covered by those clients, or the public was not known or understood (and even now may not be fully understood). Similarly, the extent of the data and knowledge that the Optum Defendants had was also not known.

Further, as alleged in the Rochester Amended Pleadings (and as argued by the PEC in their Omnibus Motions to Amend to Add the PBM Defendants), the PBMs repeatedly misrepresented their role in the opioid crisis, and further represented that they were working to ensure that opioids were prescribed and dispensed only for safe use. *See* Rochester Amended Pleading ¶ 699. This made it particularly difficult for Plaintiffs similarly situated to Plaintiff Masiowski to learn of the involvement of the PBMs in perpetuating the Opioid crisis.

The information and relevant facts underlying Plaintiff Masiowski's allegations against the PBM Defendants were not made available to him until 2023; this was approximately four years after Plaintiff's deadline to amend. This demonstrates that Plaintiff Masiowski could not, even with the exercise of utmost diligence, have met the Court's original 2019 deadline. This is sufficient to meet the "diligence" prong of the "good cause" analysis. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment

deadline set in the scheduling order."); *Rapp* 2021 WL 4713394, at \*3–4; *Fijalkowski*, 2018 WL 1835444, at \*2; *Joseph*, 2017 WL 5953119, at \*2.

Defendants' assertion that because there existed litigation against them at the time of the Court's original amendment deadline does not demonstrate a lack of diligence on the part of Plaintiff Masiowski. The actions filed by the bellwether plaintiffs (and by Jefferson County) named dozens of defendants and were focused primarily on the activities of manufacturers, distributors, and dispensers. Allegations pertaining to the PBM Defendants in those early complaints were of necessity somewhat scant and did not include any of the important information that later became available in the JeffCo Action. The legal theories set forth in those complaints were tailored to the claims against other defendants; the applicability of those theories to OptumRx and Express Scripts was not fully articulated. Indeed, it was for that reason that, once they were designated, all four PBM bellwethers sought to amend their pleadings pursuant to the scheduling order. The allegations concerning the PBM Defendants in the amended pleadings they ultimately filed were quite different from those in their original complaints.

As courts have recognized, a party need not be *perfectly* diligent to meet the Rule 16 test; rather, the Court need only determine that the party has been diligent *enough*. *J&R Passmore*, 2024 WL 111661, \*2 (although plaintiffs had not been perfectly diligent, they had been diligent enough to satisfy Rule 16); *see also Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 460 (S.D. Ohio 2021) ("While the parties dispute when Plaintiff discovered the information underlying her Third Amended Complaint, the timeline shows that Plaintiff was diligent enough."); *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 WL 210801, at \*2 (N.D. Ohio Jan. 14, 2020) ("The due

diligence requirement does not impose on a plaintiff the burden to exhaust all avenues to discover information that may serve as the basis of a claim."").

Moreover, this Court has held that a diligent plaintiff may reasonably wait for the fruits of discovery to identify additional defendants. *O'Neal*, 2020 WL 210801, *2; *Hammock v. Rogers*, No. 1:17-cv-1939, 2018 WL 8414482, at *6 (N.D. Ohio Dec. 17, 2018) (good cause shown where plaintiff's "ability to name new parties was somewhat hamstrung by the amount of time it took to get the names of the proposed additional defendants through discovery"); *York v. Lucas Cnty., Ohio*, No. 3:13 cv 1335, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later"). Given the sparse nature of information about the Express Scripts and OptumRx Defendants in the pleadings filed by other parties prior to the deadline in CMO1, Plaintiff has not lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

### b. The Express Scripts Defendants Will Suffer No Undue Prejudice If Plaintiffs Are Permitted to Amend

It should be readily apparent that the Express Scripts and OptumRx Defendants will suffer no prejudice from the filing of the amended complaint at issue here. That is because Plaintiff's cases has been stayed since the original deadline for the filing of amended pleadings. There has been no discovery, no motion practice, no litigation of any kind. The PBM Defendants will be in the exact same position, with respect to Plaintiff's case, that they would have been in had the cases been stayed with the Express Scripts Defendants already in them. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a

delayed amended pleading are "whether the assertion of the new claim or defense would. . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute. . . ."). *Cf. Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and dispositive motion deadlines had passed, and a motion for summary judgment had been filed, amendment to add a different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions").

This is especially true because the PBM Defendants have known since the formation of this MDL that they were defendants in some cases before this Court. Nor could the PBM Defendants rely on the relatively small number of cases in this MDL in which they were named defendants to estimate the likely scope of their liability. That is so because the statute of limitations has not run on claims against them. Moreover, if leave to amend is not granted, Plaintiff can simply file their claims against the PBM Defendants in new stand-alone cases, as opposed to benefitting from the convenience of a coordinated litigation within the MDL Court. *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.")

The PBM likewise argue that they will suffer prejudice if the Court grants Plaintiff's Motion because of an absence of a litigation hold in Plaintiff Masiowski's case. As articulated by the PEC, the Court noted that "implementation of a litigation hold is not a strict precondition for

allowing amendment," but that "a defendant may want to address the topic in response to a motion to amend." [Doc. 5517 at 2]. Plaintiff Masiowski, similar to the PEC, recognizes that document preservation may be a serious issue, but this question should play no role on these motions to amend. In particular, the prejudice that is relevant to Rule 16 is prejudice that arises from allowing amendment past the original CMO deadline. Other than the brief window allowing amendments noted above, these cases have been stayed. Thus, the status of document preservation is the same now as it would have been if the Express Scripts and OptumRx Defendants had been added as defendants in March 2019. Any prejudice that would arise from a failure properly to preserve documents during the time the cases have been stayed (even if there were any such failure) thus does not arise from the timing of the amended complaint, but rather from the fact that a stay was in place both before and after the amendment deadline. Thus, while the concerns of the Court on this issue as they pertain to the bellwether process, the failure to issue a litigation hold cannot be a proper factor in the denial of leave to amend under Rule 16 or Rule 15.  Moreover, Plaintiff Masiowski, as a putative class representative, is under continuing obligations to absent class members to maintain all relevant documentation concerning the impact the opioid crisis had on him and all other similarly situated class members.

### c. PBM Defendants Raise Two Issues Regarding "Futility": One Relates to Personal Jurisdiction and the Other Relates to the Statue of Limitations on the RICO Cause of Action

Although Plaintiff may not have pled with specificity, the PBM Defendants' presence in South Carolina is obvious and prevalent. PEBA, South Carolina Retirement Systems and State Health Plan, uses Express Scripts. "Our [South Carolina Blue Cross Blue Shield] pharmacy benefits are managed by Optum Rx." See attached composite Exhibit A. If Plaintiff's Amended Complaint is approved by the Court, Plaintiff will add the allegations to satisfy this concern.

### d.  Plaintiff's RICO Claims Are Timely

As detailed above, Plaintiff could not have been aware of his claims against the PBM Defendants prior to 2023.  As such, Plaintiff is well within the 4-year RICO statute of limitation period. Therefore, Plaintiff's amendment is not futile.

### e.  Amendment Of The Pleadings Is Proper Under Rule 15

Under Rule 15, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *see J&R Passmore*, 2024 WL 111661, at *1, a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15. In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors – bad faith and futility of amendment -- are not subsumed within the Rule 16 "good cause" analysis. *See Brumbalough v. Camelot Care Ctrs., Inc*., 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15). Neither is applicable here. There is continuing litigation against the PBM Defendants, and thus Defendants cannot show that permitting amendment here will be futile. Nor is there any suggestion of bad faith with respect to Plaintiff Masiowski. Because Plaintiff has shown good cause under Rule 16 and because it is in the interest of justice to permit them to amend their pleadings in order to add the OptumRx and Express Scripts Defendants, the requirements of Rule 15 are also satisfied.

## II. The Court Should Deny The Manufacturer And Distributor Defendants' Motions

Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)). Accordingly, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [it] ought to be afforded an opportunity to test his claim on the merits." *Id*. The grant or denial of leave to amend is within this Court's discretion, and:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Id. The Rules are to be construed "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1.

The Manufacturer and Distributor Defendants challenge Plaintiff's amended allegations against them as being untimely. Defendants make no reference to the continuing litigation against them in the MDL and wealth of additional information uncovered since the Court's original amendment deadline that informs Plaintiff's amended allegations against them. These amended allegations are made in good faith, cause no undue delay or prejudice that would unduly burden Defendants.

Moreover, there is good cause to allow these amended allegations as they support Plaintiff's claim and do not cause legal prejudice to the Defendants.

The Court should grant Plaintiff's Motion with respect to Plaintiff's amended allegations against the Manufacturer and Distributor Defendants.

### III. Conclusion

Based on all the above, Plaintiff requests that this Court grant Plaintiff's Motion for Leave to Amend.


Dated: July 2nd, 2025.

Respectfully submitted,

*/s/ Paul S. Rothstein*
Attorney Paul S. Rothstein
Florida Bar Number: 310123
Attorney Paul S. Rothstein, P.A.
626 N.E. 1st Street
Gainesville, FL 32601
(352) 376-7650
(352) 374-7133
E-Mail: psr@rothsteinforjustice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2025, I electronically filed the foregoing PLAINTIFF MASIOWSKI'S OMNIBUS REPLY TO DEFENDANTS' OPPOSITION TO MICHAEL MASIOWSKI'S MOTION FOR LEAVE TO AMEND; AND MOTION TO ADOPT ARGUMENTS TO BE RAISED BY THE PEC IN THEIR REPLY BRIEFS IN SUPPORT OF THEIR MOTIONS TO ADD THE PBM DEFENDANTS with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Paul S. Rothstein*
Paul S. Rothstein