# EXHIBIT 9
## TO

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS'
MOTIONS TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

# EXHIBIT 7
## TO

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*PBM Bellwether Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**NOTICE OF DEPOSITION REGARDING OPTUM DEFENDANTS PROJECTS RELATED TO PURDUE PHARMA PURSUANT TO RULE 30(B)(6) AND DOCUMENT REQUEST PURSUANT TO RULE 30(B)(2) AND RULE 34 TO DEFENDANTS**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Optum Defendants on a date, time and location to be determined at the mutual convenience of the parties. The deposition will be recordedstenographically, by video, and through instant visual display of testimony by means of LiveNote or other similar technology, before a notary public or other person authorized to administer oaths pursuant to Fed. R. Civ. P. 28(a). The deposition will be conducted in accordance with the protocol(s) established by the Court.

Pursuant to Fed. R. Civ. P. 30(b)(6), Optum Defendants shall designate and produce a representative or representatives, as may be required, who are knowledgeable and prepared to testify fully on behalf of OptumInsight concerning the topics identified in **Schedule A** below.

1

Pursuant to Fed. R. Civ. P. 30(b)(2) and 34 Optum Defendants shall produce all documents identified in **Schedule B**, for the purposes of inspection and/or photocopying no later than seven days (7 days) prior to the deposition.

**Duty to Designate**

By designating a representative, Optum Defendants indicate its representative(s) has authority to state on its behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

**Duty to Substitute**

If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, Optum Defendants must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.

**Duty to Prepare**

The testimony elicited in the deposition represents Optum Defendants' knowledge, not the individual deponent's knowledge. OptumInsight must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if Optum Defendants' designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.

"Reasonably available" information includes all Documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

2

# SCHEDULE A
## (Optum Defendants)

**DEFINITIONS**

This section sets forth specific definitions applicable to certain words and terms used herein. Unless words or terms have been given a specific definition in this section or in a specific request, each word or term shall be given its usual and customary dictionary definition, except where a word or term has a specific customary and usage definition in your trade and industry. In that case, the word or term shall be interpreted in accordance with the specific customary and usage definition.

1. "Action" refers to *In re National Prescription Opiate Litigation*, No. 17-md- 2804 (N.D. Ohio).

2. "Concerning," "Concerns," "Relating To" and "Referring To" and derivations thereof each mean reflecting, concerning, relating to, referring to, describing, discussing, evidencing, addressing or constituting in any way.

3. "Controlled Substance(s)" has the definition provided by the CSA (defined below), 21 U.S.C. §802(6).

4. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term. In all events, the definition of "Document" shall include "Communications" including, but not limited to, electronic communications such as email and other electronic messaging systems.

5. "Project" means any proposal, inquiry, sales attempt, marketing attempt, statement of work and/or work performed by OptumInsight for or on behalf of a manufacturer of opioids related to Controlled Substances and the sharing, licensing and/or sale of **any data** by an Optum entity for or on behalf of a manufacturer of opioids and/or OptumRx and its predecessors.

3

6. "You" or "Your" or Optum Defendants or "OptumInsight" means OptumInsight Inc., and all predecessor entities and subsidiaries including but not limited to:

    a. Ingenix Pharmaceutical Services, Inc. and all predecessor and successor entities, subsidiaries and divisions such as i3 Drug Safety Division of Ingenix Pharmaceutical Services, Inc.;

    b. Innovus Research, Inc. and all predecessor and successor entities, subsidiaries and divisions;

    c. i3 Innovus and all predecessor and successor entities, subsidiaries and divisions;

    d. i3 Canada and all predecessor and successor entities and divisions;

    e. CanReg, Inc., and all predecessor and successor entities and divisions;

    f. OptumInsight (Canada) Inc., and all predecessor and successor entities and divisions;

    g. QualityMetric Incorporated and all predecessor and successor entities, subsidiaries and divisions;

    h. i3 QualityMetric;

    i. Health Technology Analysts Pty Limited, dba "HT Analysts", and all predecessor and successor entities, subsidiaries and divisions.;

    j. ChinaGate (Hong Kong) Ltd., and all predecessor and successor entities, subsidiaries and divisions;

    k. ChinaGate Company Limited and all predecessor and successor entities, subsidiaries and divisions;

    l. Ingenix;

4

    m. Ingenix Medical Education; and

    n. OptumInsight Life Sciences, Inc., and all predecessor and successor entities, subsidiaries and divisions.

7. Optum Defendants additionally means all entities outlined above and all officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other persons or entities acting on its behalf or controlled by it.

8. Purdue means Purdue Pharma, L.P. and all predecessor and successor entities, subsidiaries and divisions.

9. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the 30(b)(6) topic all subject matters that might otherwise be construed to be outside of its scope

10. The terms "all," any" and "each" shall be construed as encompassing "any and all."

**RELEVANT TIME PERIOD**

Except as otherwise specified, the Relevant Time Period applicable to the Subject Matters for Testimony is 1996 to 2019, inclusive.

**MATTERS FOR TESTIMONY**

**PROJECTS:** Any contract, agreement, proposal, inquiry, sales attempt, statement of work and/or work performed by Optum Defendants for or on behalf of an opioid manufacturer including Purdue related to Controlled Substances and Pain Management as well as the specific Optum corporate entity responsible for each of the above and the sharing, sale or licensing of any data from any Optum entity for or on behalf of an opioid manufacturer and to OptumRx and its predecessors.

1. All contracts or agreements and all Projects (as defined above) and contracts or agreements for Projects including, **but not limited to[1]**, Projects formally identified and/or colloquially identified as follows:

   a. Hydrocodone or "HCD" Clinical;

   b. Profiling the Oxycontin Patient: OXY 5015;

   c. Identification of Non-malignant Uncontrolled Chronic Pain Sufferers Using Elements of Claims Data: A Multi-state Approach;

   d. LOW BACK PAIN - Pain Management;

   e. "UnitedHealthcare--Managing Chronic Pain Associated with Lower Back Pain";

   f. "UnitedHealthcare Chronic Pain Ed";

   g. Identifying and Educating Physicians Treating Patients With Sub-Optimally Treated Chronic Pain;

   h. Chronic pain programming, monographs, newsletters, CME programs, trainings, dinner series, lectures conducted with Purdue, including:

      i. "Communicating to Enhance Collaboration and Outcomes";

---

[1] Plaintiffs specifically reserve the right to update this notice to include additional Projects identified through additional discovery produced in the PBM MDL prior to the deposition.

6

    ii. "United Behavioral Health Chronic Pain and Addiction Teleconference series";

    iii. "United Behavioral Health Chronic Pain and Addiction CME Website";

    iv. "United Behavioral Health Chronic Pain and Addiction Monograph";

    v. "Chronic Pain Management" proposal and accompanying programs; "Low Back Pain Management" proposal and accompanying programs; "Low Back Pain" Educational campaign that included both CME teleconferences for physicians, live dinner meetings, half day seminars, a CME website and trainings;

    vi. "Low Back Pain" HECON study;"Chronic Pain Newsletter and Dinner Meetings" proposal by Ingenix to Purdue.

i. Disease Management Programs;

j. "Utilization Characteristics of Long Acting Opioids";

k. "Utilization Characteristics of Long- and Short- Acting Opioids";

l. Innovus "OXY4003" Study;

m. A Usual Care, Multicenter, Open-label, Randomized, 4-month Parallel Group Trial To Compare the Impact of Therapy With OxyContin (Controlled Release Oxycodone) vs. Usual Care (Percocet) on Health Outcomes and Resource Utilization in Subjects with Moderate to Severe Osteoarthritis Pain of the Hip or Knee;

n. Opioid Class REMS Study (PUR0071);

o. Epidemiology using a claims database to assess the impact of reformulated OxyContin on patient safety (Statement of Work #1 dated April 20, 2010) and/or "Opioid Respiratory Depression Study" "PUR0067";

7

p.  "Opioid Respiratory Depression Study- WO #2 (PUR0067) (Parent Incident #1708994/ Contract #61811/ Project #95305)";

q.  "Creation of a Claims-based Algorithm to Identify Respiratory Depression"; Statistical support of ISS/ISE- "BUP225-ISEINGX020";

r.  "Oxycontin Dispensing Characteristics" "040623 PUR0072-95329 (epi)";

s.  "QualityMetric- SOW4- PainPRO Analysis (Aaron Yarlas) O83505. 96151";

t.  "Oxy Risk Program (OPUR0069)";

u.  "MW RFI (PUR0061)";

v.  Zolpidem 8 Hour Dosing Study (PUR0068);

w.  RFI (PUR0064);

x.  Integrated Summary of Safety (ISS) Medical Writing Project;

y.  A scientific exchange to provide input on clinical data analysis leading to opportunities in market acceptance, market access and reimbursement issues for Butrans (Statement of Work #2 dated August 5, 2010);

z.  Claims database study to:

   i.  Assess changes in the prescribing of OxyContin to patients with comorbidities contraindicated in contraindications section of the label and prescribing of high-dose formulations to opioid-naïve patients;

   ii. Determine before and after implementation of the REMS what proportion of patients are prescribed the 60 mg and 80 mg dosage forms of OxyContin and have:

      1. Had no prior opioid prescription recorded in the claims database (opioid-naïve); and

8

    2. Had a prior prescription for opioid analgesics that ended shortly before the prescription of the 60 or 80 mg dose of OxyContin (opioid-tolerant);

  iii. Count the number of unique individuals prescribed OxyContin, the number of prescriptions of OxyContin by dosage form (10 mg to 80 mg), and the average duration of prescriptions for OxyContin in three-month periods before and after implementation of the REMS in a claims database. (Statement of Work #3 dated January 20, 2011. Also labeled with heading of Statement of Work #4);

aa. Statement of Work #5 effective September 13, 2011 between Purdue Pharma L.P. and QualityMetric Incorporated;

bb. Statement of Work #6 effective September 20, 2011 between Purdue Pharma L.P. and Quality Metric Incorporated;

cc. Overdose Rates in Patients Taking OxyContin;

dd. Incidence and Predictors of Opioid Overdose and Death among ER/LA Opioid Analgesics Users as Measured by Diagnoses and Death Records;

ee. Payor Strategies for the Pain and Sleep Disturbance Therapeutic Areas;

  i. "Partnership for Health Economics Outcomes Research" Proposal for Purdue Pharma by OptumInsight (OptumInsight Proposal Number 099135) including but not limited to ;"OxyContin Aspirational Value Proposition";

  ii. "Evidence Generation Plain for OxyContin";

  iii. Oxycontin Event Mapping;

9

    iv.    Semi-Structured Payer Interview Project, including but not lmitied to Interview Guide for OxyContin and Presentation of Payer Interview Results;OxyContin Product Information Review;

    v.    Butrans Database Study and Publications;

    vi.    Butrans and HYD Technical Expert Panel;

    vii.    Butrans Event Map, Value Proposition, and Evidence Generation Plan;

    viii.    Oxycontin Database Study and Publications;

    ix.    OxyContin and Targin Technical Expert Panel;

    x.    Oxycontin Event Map, Value Proposition, and Evidence Generation Plan;

    xi.    Targin Rapid Payer Insights for Protocol Development;

    xii.    Targin Value Proposition and Evidence Generation Plan;

ff. Ingenix Pharmaceutical Services Master Services Agreement dated December 29, 2003;

gg. Master Consultant Services Agreement dated April 20, 2010;

hh. Amended and Restated Master Consultant Services Agreement between Purdue Pharma L.P. and QualityMetric Incorporated dated March 30, 2011;

ii. Amendedment #1 to Amended and Restated Mster Conslutant Services Agreement Dated March 30, 2011 between Purdue Pharma, L.P. and Qualitymetric, Inc., and related Statements of Work dated February 27, 2012;

jj. Services to assist Purdue to understand patient disenrollment from Medicare Advantage Part D (MAPD) and Medicare Prescription drug plans (PDPs) that discontinued coverage of extended-release oxycodone (OXY-ER) in 2013;

10

kk. "Hope Butrans in Fibromylagia Patients" Statement of Work effective July 14, 2013 between Purdue Pharma L.P. and OptumInsight Life Sciences, Inc.;

ll. November 8, 2016 Statement of Work under "Amended And Restated Master Consultancy Services Agreement" between Purdue Pharma L.P. and OptumInsight Life Sciences, Inc., (f/k/a/ QualityMetric Inrocporated);

mm. "Pain Clinical SmartFile" Proposal;

nn. Optum EMR database and "Purdue Opioid Abuse" proposal;

oo. Optum Proposal to Purdue for Oxycontin "PASS Study" of the "fatal and non-fatal overdose in a commercially insured population";

pp. "Evidence Generation Plan for ONU," a combination of oxycodone and naloxone;

qq. OptumInsight Clinformatics Datamart proposal to Purdue (OI63055).


## SCHEDULE B

1. All Documents which deponent(s) consulted, reviewed or plans to consult to prepare in preparation for his/her/their deposition has relied upon or will reply upon for testimony on the above deposition topics, including but not limited to any notes made during interviews with persons knowledgeable regarding above-outlined topics.

2. Current curriculum vitae or resume of the deponent(s).

3. Personnel file of the deponent(s).

11

Dated: September 6, 2024

Respectfully submitted

*s/ Michael E. Elsner*
Michael E. Elsner
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
melsner@motleyrice.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

Paul T. Farrell, Jr.
FARRELL & FULLER
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

12

**Counsel for City of Rochester, New York**

Hunter J. Shkolnik
Paul J. Napoli
NS PR LAW SERVICES, LLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(787) 493-5088
hunter@nsprlaw.com
pnapoli@nsprlaw.com

Salvatore C. Badala
Shayna E. Sacks
Joseph L. Ciaccio
Maria Fleming
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road
Melville, New York 11747
(212) 397-1000
sbadala@napolilaw.com
ssacks@napolilaw.com
jciaccio@napolilaw.com
mfleming@napolilaw.com

Frank Gallucci
PLEVIN & GALLUCCI
55 Public Square, Suite 2222
Cleveland, Ohio 44113
(216) 861-0804
fgallucci@pglawyer.com


**Counsel for County of Webb, Texas**
THE CICALA LAW FIRM PLLC
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

13

SANFORD HEISLER SHARP, LLP
Kevin Sharp
Christine Dunn
Jonathan Tepe
James Hannaway
Kasi Wautlet
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com
cdunn@sanfordheisler.com
jtepe@sanfordheisler.com
jhannaway@sanfordheisler.com
kwautlet@sanfordheisler.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2024, this NOTICE OF DEPOSITION REGARDING OPTUM DEFENDANTS PROJECTS RELATED TO PURDUE PHARMA has been served via electronic mail on the following:

optum.opioid.team@alston.com
MDL2804discovery@motleyrice.com
pbm@listserv.motleyrice.com

/s/ *Michael E. Elsner*
Michael E. Elsner

14