**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br>THIS DOCUMENT RELATES TO:<br><br>*Track 22: City of Ogdensburg v. Purdue Pharma L.P.*, No. 19-op-45852 | ) MDL 2804<br>)<br>) Case No. 1:17-md-2804<br>)<br>) Judge Dan Aaron Polster<br>)<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF OPTUMINSIGHT, INC'S AND OPTUMINSIGHT LIFE SCIENCES, INC.'S MOTION TO DISMISS <u>FOR LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    I.    THE COURT LACKS RICO JURISDICTION OVER OPTUMINSIGHT AND OPTUMINSIGHT LIFE SCIENCES............................................................. 4

    II.    THE COURT LACKS PENDENT PERSONAL JURISDICTION OVER THE CITY'S STATE-LAW CLAIMS. ................................................................... 11

    III.    THE COURT SHOULD DENY THE CITY'S REQUEST FOR JURISDICTIONAL DISCOVERY. ..................................................................... 13

CONCLUSION ............................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anthony v. Van Over*,
  No. 3:22-cv-416, 2023 U.S. Dist. LEXIS 176603 (E.D. Tenn. Sept. 27, 2023)..................5, 11

*C.H. v. United States*,
  818 F. App'x 481 (6th Cir. 2020) ...............................................................................14

*Canaday v. Anthem Cos.*,
  9 F.4th 392 (6th Cir. 2021) ......................................................................................11, 12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)....................................................................................................15

*E&M Props. v. RazorGator, Inc.*,
  No. 08-10377, 2008 U.S. Dist. LEXIS 33384 (E.D. Mich. Apr. 23, 2008).................5

*Graham Med. Techs., LLC v. Vilex in Tenn., Inc.*,
  No. 15-13372, 2016 U.S. Dist. LEXIS 71084 (E.D. Mich. June 1, 2016) ................15

*In re Aegean Marine Petroleum Network, Inc.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021)........................................................................11

*Integrity Express Logistics, LLC v. Borstelmann*,
  No. 1:23-cv-166, 2023 U.S. Dist. LEXIS 188094 (S.D. Ohio Oct. 19, 2023) .........14

*McLean v. U.S. Conf. of Catholic Bishops*,
  No. 18-cv-3175, 2019 U.S. Dist. LEXIS 76617 (D. Minn. May 7, 2019)................14

*Miller Indus. Towing Equip. v. NRC Indus.*,
  No. 1:19-CV-00095, 2020 U.S. Dist. LEXIS 67365 (E.D. Tenn. Apr. 16, 2020)....15

*Nottingham-Spirk Design Assocs. v. HALO Innovations, Inc.*,
  603 F. Supp. 3d 561 (N.D. Ohio 2022)......................................................................14

*Ohio Cnty. Comm., et. al., v. Express Scripts, Inc., et al.*,
  No. 5:24-cv-142 (N.D. W.Va. Dec. 23, 2024), ECF No. 140..................................10

*United States v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) .................................................................................12

## INTRODUCTION

The City of Ogdensburg has a problem. Despite access to well over a year of merits discovery from OptumInsight, Inc. and OptumInsight Life Sciences, Inc., the City still fails to identify *any* basis for exercising specific or general jurisdiction over either entity. The City does not—and cannot—argue that OptumInsight or OptumInsight Life Sciences[1] is at home in New York or that either is subject to general jurisdiction there. Nor does the City argue that it has alleged specific jurisdiction over OptumInsight or OptumInsight Life Sciences consistent with New York's long-arm statute or the Fourteenth Amendment's Due Process Clause. Instead, eschewing traditional methods of establishing personal jurisdiction, the City tries to smuggle its claims against OptumInsight and OptumInsight Life Sciences through a back door. The City argues that the Court has personal jurisdiction over its RICO claim against OptumInsight and OptumInsight Life Sciences because the RICO statute authorizes nationwide service of process. And then, because it claims the Court has personal jurisdiction over OptumInsight and OptumInsight Life Sciences for its RICO claim, the City asks the Court to exercise pendent personal jurisdiction over those entities for each of its various state law-claims. Both arguments are wrong.

The City's reliance on RICO's nationwide-service-of-process provision fails. The City does not dispute that, to establish RICO jurisdiction, the City must adequately allege that OptumInsight and OptumInsight Life Sciences participated in the so-called "Formulary & UM" RICO enterprise alleged in the complaint. Yet the City's Amended Complaint does not include a single allegation connecting OptumInsight and OptumInsight Life Sciences to the alleged RICO enterprise, let alone allegations showing that they operated or managed a criminal enterprise or

---

[1] Although the City's complaint asserts claims against ten entities, collectively, the UHG/Optum Family Defendants, the City voluntarily dismissed its claim against all entities except OptumRx, Inc. (which does not challenge personal jurisdiction), OptumInsight, Inc., and OptumInsight Life Sciences, Inc. *See* Dkt. 6125.

engaged in a pattern of racketeering. The City's RICO allegations focus exclusively on formulary, utilization-management, and dispensing activities—alleged activities relating only to OptumRx, Inc., a separate legal entity that is not challenging personal jurisdiction. Those alleged activities have nothing to do with OptumInsight and OptumInsight Life Sciences, and the City offers no allegations or arguments to the contrary. The City does not allege—or even argue—that OptumInsight and OptumInsight Life Sciences "structure formulary offerings," "perform cDUR benefit services," "pocket[] . . . rebates and other fees," or "dispens[e] prescription opioids[.]" Ogdensburg Am. Compl. ¶ 636.[2] In short, the City offers nothing to justify applying RICO's nationwide-service-of-process provision to OptumInsight and OptumInsight Life Sciences.

Recognizing that its RICO allegations are deficient, the City initially tried to manufacture a jurisdictional argument by filing an opposition brief that contained multiple objectively false descriptions of the evidence in the case. For instance, in its original May 30 opposition, the City told the Court that "[d]iscovery has confirmed that Optum entities had access to OptumInsight's vast data," representing that an OptumRx witness had "confirmed that OptumRx had access to patient data and from that data Optum and UnitedHealthcare could 'tighten up opioids.'" *See* Dkt. 6181-1, May 30, 2025 Opp. Br. at 15–16 n.9 (citations omitted). The City presumably thought that creating a connection between OptumRx (which is not challenging jurisdiction) and the two OptumInsight entities would help its jurisdictional argument. That effort would have failed in any event, but it did not matter because the PEC's characterization of the testimony was false. Indeed, the witness never testified that OptumRx "had access to OptumInsight's vast data." *Id.* The witness testified multiple times that OptumRx did not have access to medical claims data. *See* Dkt. 6181-

---

[2] So far as OptumInsight and OptumInsight Life Sciences can tell, the City never filed its Amended Complaint as a standalone document on the MDL docket. For purposes of this brief, when referring to the Amended Complaint, OptumInsight and OptumInsight Life Sciences will refer to the Amended Complaint attached as Exhibit 1 to the City's opposition brief. *See* Dkt. 6216-2.

2

3, Lahman Tr. at 353:14–20, 354:2–6, 355:7–11, and 357:11–14.[3]

OptumInsight and OptumInsight Life Sciences confronted the City about its misrepresentations, and the City was forced to withdraw its opposition to remove *multiple* misstatements. But instead of simply striking the false statements, the PEC used the additional time to inject *new* arguments and evidence into its "corrected" filing. But none of those untimely additions changes the analysis. If anything, the City's gamesmanship and months-long effort to manufacture jurisdiction from a record that does not support it confirms the weakness of the City's argument. There is no jurisdiction over OptumInsight and OptumInsight Life Sciences. The City knows it, and its filings show it.

The City's reliance on pendent personal jurisdiction for its state-law claims also fails for multiple reasons. The Sixth Circuit has never authorized the exercise of pendent personal jurisdiction. But even if the Sixth Circuit recognized the doctrine, it would not cover the City's state-law claims because its RICO claim fails to establish jurisdiction in the first instance and does not share a common nucleus of operative fact with the state-law claims against OptumInsight or OptumInsight Life Sciences.

Understanding the flaws in the first two arguments, the City closes by asking the Court for "jurisdictional discovery." But the City does not explain why the Court should allow it to continue to fish for a basis to exercise jurisdiction over OptumInsight and OptumInsight Life Sciences. The

---

[3] Although the City removed these statements in its revised opposition, it added a footnote where it argues that "[d]iscovery *suggests* that other Optum entities could also have obtained access to [OptumInsight's] vast data *had they wished to*." Dkt. 6216-1, Revised Opp. at 16 n.10 (emphasis added). Even accepting that *argument* (which is not in the complaint) as true, the possibility that "Optum entities" could *potentially* access OptumInsight data if they "wished to" does nothing to establish a substantial connection between the two OptumInsight entities and New York, nor does it render OptumInsight and OptumInsight Life Sciences members of the so-called "Formulary & UM Enterprise" alleged in the complaint. But regardless, the cited documents do not even support the City's argument. Neither suggests that other non-OptumInsight entities could "access" OptumInsight data. Instead, the documents merely discuss the OptumInsight entities data capabilities. *See* Dkt. 6216-5, Exhibit 4 at OPTUM_MDL_000003489; Dkt. 6216-6, Exhibit 5 at OPTUMRX_MDL_007529945.

City relies exclusively on RICO's nationwide-service-of-process provision, which would not require any additional "jurisdictional" discovery. And even if discovery could inform the analysis, the City has access to well over a year and counting of merits discovery from OptumInsight and OptumInsight Life Sciences and has not identified anything showing that either has suit-related contacts creating a substantial connection with New York. The City will not develop that evidence through additional "jurisdictional discovery."

The Court should deny the City's request for jurisdictional discovery and dismiss the claims against OptumInsight and OptumInsight Life Sciences for lack of personal jurisdiction.

## ARGUMENT

OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are not subject to RICO jurisdiction because the City does not allege that they participated in the alleged "Formulary & UM Enterprise" that is central to the RICO claim. Without that anchor, the City's request that the Court exercise pendent personal jurisdiction—a judge-made doctrine that the Sixth Circuit has never authorized—also fails. Finally, the City's speculation that it might one day identify evidence proving jurisdiction does not justify delaying resolution of this motion—especially since both OptumInsight and OptumInsight Life Sciences have been participating in full-blown merits discovery for well over a year.

**I.  THE COURT LACKS RICO JURISDICTION OVER OPTUMINSIGHT AND OPTUMINSIGHT LIFE SCIENCES.**

In its brief, the City relies exclusively on RICO's nationwide-service-of-process provision, a theory that the City originally pleaded only "[i]n the alternative," to establish personal jurisdiction over OptumInsight and OptumInsight Life Sciences. *See* Am. Compl ¶ 95 ("In the alternative, the Court has personal jurisdiction over all Defendants under 18 U.S.C. § 1965(b) as to the City's RICO claims and pendent personal jurisdiction over all Defendants as to the City's

4

other claims, all of which arise out of a common nucleus of operative facts."). But to meet its burden under that "alternative" theory, the City must show that "'the ends of justice' require an exercise of personal jurisdiction." *Anthony v. Van Over*, No. 3:22-cv-416, 2023 U.S. Dist. LEXIS 176603, at *10 (E.D. Tenn. Sept. 27, 2023). "An inadequately pleaded RICO claim against an out-of-district Defendant cannot support a finding that the 'ends of justice' require exercising personal jurisdiction." *Id.* at *16; *see also E&M Props. v. RazorGator, Inc.*, No. 08-10377, 2008 U.S. Dist. LEXIS 33384, at *20 (E.D. Mich. Apr. 23, 2008) ("To assert personal jurisdiction over Preferred Tickets for six causes of action, only two of which are federal in nature, based on inadequately pleaded RICO claims, would not serve 'the ends of justice.'"). Here, the City's RICO allegations are insufficient to support exercising personal jurisdiction over OptumInsight or OptumInsight Life Sciences.

The City, the author of its complaint, alleges a RICO claim arising out of a so-called "Formulary & UM Enterprise." But the City's RICO allegations concerning a purported "Formulary & UM Enterprise" describe only alleged activities related to OptumRx, a different legal entity that does not challenge personal jurisdiction. None of the City's allegations related to the so-called Formulary & UM Enterprise bear any connection to OptumInsight or OptumInsight Life Sciences.

Instead, the City alleges that the conduct underpinning the Formulary & UM Enterprise includes negotiating and contracting for rebates from opioid manufacturers, giving manufacturers' products favorable placement on formularies, foregoing utilization management controls limiting how opioids were used by plan members, assisting manufacturers' formulary-related pull-through marketing efforts, and dispensing opioids through mail-order pharmacies without investigating potentially fraudulent claims. *See* Am. Compl. ¶ 636. The City further alleges that the racketeering

5

activity included communicating about formulary changes, exchanging rebates, and negotiating contracts, all by U.S. Mail and interstate wire (*see id.* ¶ 685) and violating the controlled substances act through their mail-order pharmacies. *See id.* ¶ 688. But of the remaining Optum Defendants, only OptumRx negotiates for rebates from manufacturers. Only OptumRx offers formularies to its clients. And only OptumRx dispenses opioids through its mail-order pharmacy.

The City does not mention OptumInsight or OptumInsight Life Sciences anywhere in its RICO count. Rather, in a completely separate section of the complaint hundreds of paragraphs apart, the City alleges that "OptumInsight" (undifferentiated) "partnered with various opioid manufacturers to create studies, marketing, educational programs, and even identifying algorithms to simultaneously downplay[] opioids' addictive properties and expand its use and availability throughout the country[.]" *Id.* ¶ 159. The City does not—and cannot—point to any allegation even remotely suggesting that those activities are connected to the so-called "Formulary & UM Enterprise" or New York. And the City fails to offer any explanation for how any activities involving OptumInsight or OptumInsight Life Sciences relate to the underlying predicate acts of racketeering alleged in the complaint.

Despite the "Formulary and UM" label, the City now argues that the alleged RICO enterprise is not limited to formulary and utilization management or activities allegedly undertaken by OptumRx. The City argues that the alleged enterprise also includes OptumInsight's and OptumInsight Life Sciences' alleged "services" for opioid manufacturers related to "research, data, consulting, and marketing[.]" Opp at 14–15. But that argument appears only in the City's overlength brief; it appears nowhere in the Amended Complaint's RICO allegations. The City's efforts in its opposition brief to force OptumInsight and OptumInsight Life Sciences into the Formulary & UM Enterprise fail for several reasons.

6

First, the City argues that "OptumInsight" (undifferentiated) is a member of the alleged enterprise because it "provided the data that manufacturers needed to precisely target and track prescribers for drug detailing[.]" Opp. at 15 (citing Am. Compl. ¶¶ 344–345, 355, & 649–50); *see also* Opp. at 17 ("First, Plaintiff alleges that the Moving Defendants directly supported the formulary scheme with data that enabled pull-through marketing touting opioids' beneficial formulary placement.").[4] But the allegations that the City cites for that proposition don't say what the City says they say. And in any event, even if they did, they still wouldn't be sufficient to plead that OptumInsight or OptumInsight Life Sciences are members of the alleged Formulary & UM Enterprise.

For starters, the City does not cite a single allegation from the section of the Amended Complaint captioned "Formation of the Formulary & UM Enterprise" to support this argument. *See* Am. Compl. ¶¶ 605–635. For good reason: there is no allegation in that section that even remotely relates to OptumInsight or OptumInsight Life Sciences. Instead, the City cites Paragraphs 649 and 650 from the section describing the alleged "Common Purpose" of the Formulary & UM Enterprise. But those paragraphs simply refer to "data" allegedly received by the manufacturers to support so-called "pull through" marketing. Am. Compl. ¶¶ 649–650. There is nothing in those paragraphs saying, or even remotely suggesting, that the "data" came from OptumInsight or OptumInsight Life Sciences. Because it didn't.

On the contrary, the City alleges that the manufacturers received "favorable formulary placement" and "*PBM data*" in exchange for "rebates and higher fees" and that the manufacturers reviewed that "*PBM data*" to "'pull through' the formulary placement." *Id.* OptumInsight and OptumInsight Life Sciences are not PBMs. *Compare* Am. Compl. ¶ 160 (describing "OptumRx"

---

[4] Unless otherwise noted, references to the City's opposition brief—"Opp." for short—refer to the revised opposition that the City filed on June 17, 2025. *See* Dkt. 6216-1.

7

as the arm of Optum that provides PBM and pharmacy dispensing services"), *with* ¶ 159 (describing "OptumInsight" and not suggesting that it is a PBM or that it provides PBM services). And there is no allegation in the complaint suggesting that OptumInsight or OptumInsight Life Sciences provided "PBM data" to anyone. *Compare* Am. Compl. ¶ 356 (alleging that "OptumInsight (then known as Ingenix)" could "mine *UHC's* claim data" but never suggesting use of OptumRx or PBM data (emphasis added)). Nor do OptumInsight or OptumInsight Life Sciences offer formularies, provide "favorable formulary placement," receive "rebates and . . . fees" from drug manufacturers, engage or review "pull-through" marketing, or do anything else bound up in Paragraphs 649 and 650. In short, those paragraphs, which do not mention either OptumInsight or OptumInsight Life Sciences, certainly do not suggest that OptumInsight or OptumInsight Life Sciences are part of the alleged "Formulary & UM Enterprise."

The City's mischaracterization of Paragraphs 344 and 345 is worse. The City suggests that those allegations (which are not in the RICO count) show that OptumInsight and OptumInsight Life Sciences participated in the alleged enterprise because they show that "OptumInsight provided manufacturers lists of *pain* clients and prescribers." Opp. at 15 (emphasis added). But Paragraph 344 does not mention OptumInsight or OptumInsight Life Sciences. Nor does it talk about "pain clients" (whatever that means). Instead, the allegation in the complaint (which is what matters) says that "Express Scripts" and "Optum" have "provided multiple opioid manufacturers with lists of all their *plan* clients as well as the names of physicians who were participating in the plan's provider networks." Am. Compl. ¶ 344 (emphasis added). That allegation (and the reference to "Optum") could only refer to OptumRx because only OptumRx is a PBM and only OptumRx provides services for health plans. OptumInsight and OptumInsight Life Sciences, in contrast, do not have "[health] plan clients" and there is no allegation in the complaint suggesting they would

8

be able to provide lists of physicians participating in any "plan client['s]" provider networks. The City's attempt to suggest that those allegations somehow relate to OptumInsight or OptumInsight Life Sciences is unsupported. Paragraph 345 does not mention OptumInsight, OptumInsight Life Sciences, or OptumRx but refers to Endo's efforts to market Opana. Am. Compl. ¶ 345.

Paragraph 355 (which is not in the RICO count) alleges that "OptumInsight" performed research and created algorithms for Purdue. That paragraph does not mention or even allude to the exchange of data and formulary placement, pull-through marketing, or drug detailing, which is not surprising since it comes hundreds of paragraphs before the City's RICO count and allegations. The City fails to explain how this allegation relates to the alleged Formulary & UM Enterprise.

Next, the City pivots to OptumInsight's and OptumInsight Life Sciences' alleged work for opioid manufacturers, citing allegations that "OptumInsight" created marketing plans, performed studies, developed educational programs, and identified algorithms for Purdue and other, unnamed manufacturers. *See* Opp. at 15–17. But the cited allegations are not contained in the RICO count and have no connection to the RICO claim. For instance, there are no allegations that "OptumInsight" created any "marketing plans" on behalf of the enterprise. The marketing-related allegations in the City's RICO count concern *pull-through* marketing, which, by the City's own definition, involves an exchange of "data and unfettered formulary placement" for "higher rebates and other fees" and is thus plainly unrelated to OptumInsight or OptumInsight Life Sciences. *See* Am. Compl. ¶¶ 649–650. Likewise, there is nothing in the RICO count about the research, studies, or educational programs that OptumInsight or OptumInsight Life Sciences allegedly offered to Purdue or any other manufacturer. And none of those alleged activities would have any connection to the alleged predicate acts of racketeering, which are tethered to formulary, rebate, and dispensing activities allegedly undertaken only by OptumRx. *See* Am. Compl. ¶¶ 685, 698 (listing

9

alleged RICO predicates).

The City next argues that orders from this Court and the Northern District of West Virginia denying motions to dismiss RICO claims under Federal Rule of Civil Procedure 12(b)(6) mean that OptumInsight and OptumInsight Life Sciences jurisdictional challenge also fails. Opp. at 19–21. The City casts OptumInsight's and OptumInsight Life Sciences' arguments as merits issues that should be addressed under—and informed by—Rule 12(b)(6). But the City's own authorities undermine that argument.

For instance, when Judge Bailey overruled the defendants' motion to dismiss the RICO claims brought by several West Virginia subdivisions, he recognized that he still would have to decide if the allegations were sufficient to establish jurisdiction over OptumInsight and OptumInsight Life Sciences. Order on Motion to Dismiss for Failure to State a Claim, *Ohio Cnty. Comm., et. al., v. Express Scripts, Inc., et al.*, No. 5:24-cv-142 (N.D. W.Va. Dec. 23, 2024), ECF No. 140 at 42–43 ("This Court first notes that there is a pending Motion to Dismiss for lack of Jurisdiction with respect to the Optum entities. Because briefing on [that motion] is not due [yet,] this Court will address the current arguments under the assumption that it has personal jurisdiction, as of right now, over the Optum entities." (citation omitted)).[5] In other words, Judge Bailey understood that the jurisdictional analysis is separate and distinct from the analysis under Rule 12(b)(6), and that allegations surviving a challenge under Rule 12(b)(6) may still fail to establish jurisdiction over a defendant.

That makes sense. To allege personal jurisdiction, a plaintiff must establish that the Court has jurisdiction over each Defendant individually for each claim. It cannot simply lump them all

---

[5] Recognizing that their claims were futile, the West Virginia subsidiaries later dismissed the UHG/Optum Family Defendants. *See* ECF Nos. 152, 153, 154, 155, 156, 158, 159, 160, 161, 162, 165, 168 (dismissing all UHG and Optum family of defendants); ECF Nos. 149, 150 (dismissing OptumRx); ECF Nos. 157 (dismissing "UNITED HEALTH GROUP, INC.").

10

together. *See In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."). As courts in this Circuit have held, a complaint that "never *specifically* allege[s] any single act of racketeering engaged in by" a moving defendant fails to establish that "exercising personal jurisdiction over [that] Defendant [] under the RICO SOP is required by the 'ends of justice.'" *See Anthony*, 2023 U.S. Dist. LEXIS 176603, at *14–15 (emphasis added). Other than grouping all defendants together under a single "PBM Defendant" label and alleging that the "PBM Defendants formed . . . the Formulary & UM Enterprise," there is no connection between OptumInsight and OptumInsight Life Sciences (entities that are not PBMs and do not offer PBM services) and the alleged RICO enterprise.

## II. THE COURT LACKS PENDENT PERSONAL JURISDICTION OVER THE CITY'S STATE-LAW CLAIMS.

The City's suggestion that the Court should exercise pendent personal jurisdiction over its state-law claims also fails.

The Sixth Circuit has never authorized the exercise of pendent personal jurisdiction: "[O]ur court has never recognized this exception to these due-process limitations" and "[w]e see no good reason to do so now." *Canaday v. Anthem Cos.*, 9 F.4th 392, 401 (6th Cir. 2021). "No federal statute or rule authorizes pendent claim or pendent party personal jurisdiction." *Id.* at 402. Indeed, "[n]o such law exists—not in 28 U.S.C. § 1367, not in the supplemental-jurisdiction statute, not in the Federal Rules of Civil Procedure." *Id.*

The City argues that in *Canaday*, the Sixth Circuit "did acknowledge, however, that pendent personal jurisdiction was usually applied in cases involving a nationwide service of process provision, such as RICO." Opp. at 22 (emphasis omitted). But the Court's comment about

11

situations where *other* courts have recognized the doctrine is not an endorsement of the practice. Although some Circuit Courts may have adopted the doctrine of pendent jurisdiction and applied it in cases involving federal laws with nationwide-service-of-process provisions, the Sixth Circuit is not one of them. *See Canaday*, 9 F.4th at 401. Pendent personal jurisdiction does not exist in the Sixth Circuit.

Second, even if the Sixth Circuit had authorized pendent personal jurisdiction, the doctrine still would not apply here. If the Court finds that the City has not alleged facts sufficient to justify nationwide service of process (*see* Argument Section I, above), then there is no federal anchor to which the City's other claims can "append." *See Canaday*, 9 F.4th at 402 (explaining that where recognized, pendent-claim jurisdiction requires a federal anchor claim).

Third, where the doctrine is recognized outside of the Sixth Circuit, district courts have discretion not to apply it when the pendent claim turns on different facts. *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002). The City's state-law claims against OptumInsight and OptumInsight Life Sciences and their RICO claim against OptumRx rest on separate—not common—factual allegations. As discussed above, the City's alleged RICO enterprise concerns PBM-related activities, including rebate negotiations with drug manufacturers and formulary tiering decisions. *See, e.g.*, Am. Compl. ¶ 636. But the allegations concerning OptumInsight and OptumInsight Life Sciences are distinct. The City does not allege that OptumInsight or OptumInsight Life Sciences is a PBM. The City does not allege that OptumInsight or OptumInsight Life Sciences negotiated rebates with opioid manufacturers. The City does not allege that OptumInsight or OptumInsight Life Sciences offered formularies that included opioids. On the contrary, the City's claims against OptumInsight and OptumInsight Life Sciences focus on alleged studies or educational programs that "OptumInsight" supposedly conducted for opioid

12

manufacturers. By the City's own theory, those services are not part of the alleged "Formulary & UM Enterprise" and the facts and evidence related to those theories are distinct from the evidence related to OptumRx.

### III. THE COURT SHOULD DENY THE CITY'S REQUEST FOR JURISDICTIONAL DISCOVERY.

The City also asks the Court to "hold [this motion] in abeyance while personal jurisdiction discovery proceeds[.]" Opp. at 24. The City does so even after the Court explained that "you had a year to do whatever discovery you wanted" into OptumInsight's and OptumInsight Life Sciences' contacts with New York. Dkt. 6152, Status Conference Tr. 11:8–9. As the Court instructed, "here [the case] is a year later, so if you feel you need to do specific jurisdictional discovery, you need to spell out exactly what it is you need to take over what period of time you are going to do it so I can understand it, and so Optum Rx [sic] can respond." *Id.* at 13:3–7. Despite the Court's directive, the City fails to identify what discovery it still needs and to explain why that discovery will change the jurisdictional analysis. The City's request for even more discovery is meritless.

At the outset, there is no need to hold the jurisdictional motion in abeyance. The only basis for exercising jurisdiction over OptumInsight and OptumInsight Life Sciences that the City offers is RICO's nationwide-service-of-process provision. But RICO jurisdiction does not apply here and no "jurisdictional" or merits discovery will inform or alter that conclusion.

Otherwise, the City's own briefing confirms that it has not made the necessary threshold showing that OptumInsight and OptumInsight Life Sciences may have contacts with New York that could give rise to the City's claims under the traditional minimum-contacts framework. A plaintiff does not get jurisdictional discovery simply because it asks for it. The Sixth Circuit has made clear that "[a] plaintiff is not entitled to discovery if [it] cannot, at a minimum, offer any

13

factual basis for [its] allegations and give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *C.H. v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (cleaned up) (collecting cases); *see also Nottingham-Spirk Design Assocs. v. HALO Innovations, Inc.*, 603 F. Supp. 3d 561, 571–72 (N.D. Ohio 2022) (applying *C.H. v. United States* to a request for personal jurisdiction-related discovery and denying request for jurisdictional discovery where "Plaintiff has not identified with any specificity how discovery might support a finding of personal jurisdiction"). Here, the City did not even try to argue that its allegations establish a substantial connection between OptumInsight and OptumInsight Life Sciences and the forum state or otherwise satisfy traditional due-process requirements. Instead, the City relies solely on its alternative RICO and pendent personal jurisdiction theories—theories that do not depend on jurisdictional discovery.

A review of the "jurisdictional discovery" requests attached to the City's opposition brief further confirms that the City cannot identify a need for discovery that is reasonably tailored to the jurisdictional issues raised in OptumInsight and OptumInsight Life Science's motion. *See Integrity Express Logistics, LLC v. Borstelmann*, No. 1:23-cv-166, 2023 U.S. Dist. LEXIS 188094, at *6 (S.D. Ohio Oct. 19, 2023) ("[A] plaintiff may not engage in a fishing expedition untethered from the legal claims at issue"; instead "jurisdictional discovery requests must relate to jurisdictional questions[.]"); *McLean v. U.S. Conf. of Catholic Bishops*, No. 18-cv-3175, 2019 U.S. Dist. LEXIS 76617, at *11–12 (D. Minn. May 7, 2019) (denying jurisdictional discovery where plaintiffs' requests were not "specific, focused and tailored to their assertions concerning general and specific personal jurisdiction," and instead demonstrated that plaintiffs were "simply casting about for contacts with Minnesota"). Many of the requests seek to establish *any* connection with the forum, regardless of how small or whether that connection relates in any way to the underlying claims.

14

For example, the City proposes asking OptumInsight and OptumInsight Life Sciences to identify all "offices, employees, physicians, medical directors and/or case managers in the bellwether states." Dkt. 6216-8, Ex. 7, Interrogatory No. 2 and 5. But the City has never argued that OptumInsight or OptumInsight Life Sciences is "at home" New York or otherwise subject to general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (in most cases, a company's "place of incorporation and principal place of business" are the only things that satisfy general jurisdiction). They aren't. *See* Am. Compl. ¶¶ 153, 156. And the fact that one of them might have a single employee (or even many employees) in the state does nothing to establish whether they have contacts with the State that give rise to the opioid-related public-nuisance claims.

Inasmuch as the City is trying to establish suit-related contacts with the forum, it also has not explained what discovery it needs or why additional discovery might reveal that OptumInsight or OptumInsight Life Sciences is subject to specific jurisdiction in New York. The City speculates that because "OptumInsight is registered to do business in New York," holds a license in the State, and has an office in Buffalo, "[t]here is ample basis to expect that discovery would further demonstrate the Moving Defendants' connections with New York." Opp. at 24. But the City fails to connect those limited contacts to its claims against OptumInsight and OptumInsight Life Sciences, or to explain why discovery into those general contacts might reveal suit-related contacts with New York. "[I]t is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where . . . the plaintiff makes only speculative allegations[,]" or argument, about contacts with the forum. *Miller Indus. Towing Equip. v. NRC Indus.*, No. 1:19-CV-00095, 2020 U.S. Dist. LEXIS 67365, at *15 (E.D. Tenn. Apr. 16, 2020). Because the City's argument that discovery might reveal such contacts is pure speculation disconnected from any plausible allegations, the request for jurisdictional discovery should be denied. *See Graham Med. Techs.*,

15

*LLC v. Vilex in Tenn., Inc.*, No. 15-13372, 2016 U.S. Dist. LEXIS 71084, at *5–6 (E.D. Mich. June 1, 2016) ("Plaintiff's contention that discovery may reveal a basis for jurisdiction is mere speculation and falls short of the showing required.").

Even if the Court is inclined to overlook these threshold failures, the City does not need jurisdictional discovery to investigate suit-related contacts. The parties have been engaged in full-on merits discovery for well over a year (and counting). The few requests that seek "suit-related" information are subsumed by ongoing merits discovery—which OptumInsight and OptumInsight Life Sciences are participating in under the protection of a court-ordered stipulation ensuring that they do not waive their jurisdictional arguments by doing so. *See* Dkt. 5834 at 3–4. Jurisdictional discovery is a tool that allows limited discovery from a party that is not otherwise participating in discovery. That is not the case here. Despite access to discovery from OptumInsight and OptumInsight Life Sciences, the City still fails to explain why additional discovery might reveal contacts between those Defendants and the forum that could give rise to jurisdiction. Given that failure, the Court should deny the City's request for even more discovery and OptumInsight and OptumInsight Life Sciences should be dismissed.

## CONCLUSION

The Court should dismiss the City's Amended Complaint against OptumInsight and OptumInsight Life Sciences for lack of personal jurisdiction.

Dated:  July 11, 2025

                                                      Respectfully submitted,

                                                      */s/ Brian D. Boone*
                                                      Brian D. Boone
                                                      Emily C. McGowan
                                                      Brandon C.E. Springer
                                                      **ALSTON & BIRD LLP**
                                                      Vantage South End

1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
Bradley Harder
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com
bradley.harder@alston.com
caroline.strumph@alston.com


*Attorneys for OptumInsight, Inc. and OptumInsight Life Sciences, Inc.*

17