UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |
| | *Leave to file granted 7/11/2025 by Polster, J.* |

**GENERIC MANUFACTURERS' SUR-REPLY IN OPPOSITION TO OMNIBUS MOTIONS FOR LEAVE TO AMEND AND MEMORANDUM OF LAW IN SUPPORT (ECF NOS. 5550-54)**

1

**TABLE OF CONTENTS**

I. Amending Plaintiffs Concede Their Only Basis for Amendment Is a Sham. ...................... 4

II. Amending Plaintiffs Are Engaging in Improper Burden-Shifting and Misrepresenting the Amendment Standard. ............................................................... 7

III. Permitting Amendment Six Years Past the Final Deadline Prejudices the Generic Manufacturers. ....................................................................................................... 8

    A. Amending Plaintiffs Improperly Place Responsibility for Notice on the Generic Manufacturers—While Ignoring Their Own Duties. ................................ 9

    B. The Change in Circumstances Accompanying Plaintiffs' Six-Year Delay Is Highly Prejudicial. ........................................................................................ 10

    C. Granting Leave to Amend Will Hinder the MDL's Efficiency and Eventual Finality. ......................................................................................................... 11

IV. Amending Plaintiffs Fail to Assert Case-Specific Allegations. ........................................ 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 13
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 13
*Botnick v. Zimmer Inc.*,
  Civ. A. No. 1:03-cv-1794, 2004 WL 2668803 (N.D. Ohio Nov. 19, 2004) ............. 11
*Chapman v. Gen. Motors LLC*,
  No. 219CV12333TGBDRG, 2023 WL 8007337 (E.D. Mich. Nov. 17, 2023) ........ 10
*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) ............................................................................ 7, 8, 13
*Leary v. Daeschner*,
  349 F.3d 888 (6th Cir. 2003) ...................................................................................... 8
*Ross v. Am. Red Cross*,
  567 F. App'x 296 (6th Cir. 2014) ............................................................................... 8
*Shane v. Bunzl Distrib. USA, Inc.*,
  275 F. App'x 535 (6th Cir. 2008) ........................................................................... 7, 8
*United States v. Brancatelli*,
  No. 1:23-CV-1804, 2024 WL 4107214 (N.D. Ohio Sept. 6, 2024) ........................... 6

**Rules**

Fed. R. Civ. P. 11 ............................................................................................................. 13
Fed. R. Civ. P. 11(b) ........................................................................................................ 13
Fed. R. Civ. P. 15 ............................................................................................................... 7
Fed. R. Civ. P. 15(a)(2) ..................................................................................................... 8
Fed. R. Civ. P. 16 ............................................................................................................... 7
Fed. R. Civ. P. 16(b) .......................................................................................................... 7
Fed. R. Civ. P. 16(b)(4) ......................................................................................... 7, 8, 13

The Generic Manufacturers[1] jointly file this Sur-Reply in Opposition to Amending Plaintiffs' Motions for Leave to Amend (ECF Nos. 5550-54) (the "Motions") and in Response to Plaintiffs' Reply to Joint and Individual Oppositions of Aurolife, KVK-Tech, Lupin, and Tris Pharma to Motions for Leave to Amend (ECF No. 6171) (the "Reply").[2]

I. **Amending Plaintiffs Concede Their Only Basis for Amendment Is a Sham.**

Amending Plaintiffs continue to ask this Court to excuse their years-long delay in asserting claims against the Generic Manufacturers because of their supposed inability to perform purported market share calculations that they still do not (and likely cannot) explain.  Defying the Federal Rules of Civil Procedure, Sixth Circuit precedent, and multiple orders of this Court, Amending Plaintiffs reaffirm that the sole basis for their proposed amendments is the Generic Manufacturers' 2015 to 2019 purported market share based on ARCOS data.  Indeed, Amending Plaintiffs state in no uncertain terms that their claims "depend on" this data.  Reply at 12.  But in their haste to assign liability to each Generic Manufacturer solely for participating in the opioid market, Amending Plaintiffs make a striking admission: ***"[T]he accuracy of the [market share] computations is irrelevant to this motion."***  *Id.* at 23 (emphasis added).

This Court should not countenance Amending Plaintiffs' *admission that they do not and did not need the 2015 to 2019 ARCOS data to assert claims against the Generic Manufacturers.*

---

[1] The "Generic Manufacturers" are Aurobindo Pharma USA, Inc. ("APUSA") and Aurolife Pharma LLC ("Aurolife," collectively, "Aurobindo"); KVK-Tech, Inc. ("KVK-Tech"); Lupin Pharmaceuticals, Inc. ("Lupin Pharmaceuticals"); and Tris Pharma Inc. ("Tris Pharma").

[2] In their Reply, Amending Plaintiffs refer to a pending settlement with Alvogen, Inc. ("Alvogen") and state that they "expect to withdraw the motions they have filed against Alvogen once the settlement is finalized[.]"  Reply at 1, n. 1.  Accordingly, Alvogen is not included within the definition of "Generic Manufacturers" for purposes of this Sur-Reply.

Their admission means that each and every one of Amending Plaintiffs' Motions is premised upon a marker of liability that is, by Amending Plaintiffs' own admission, entirely artificial.[3]

If Amending Plaintiffs do not need confirmation of any market share percentage before asserting claims against the Generic Manufacturers, then nothing prevented them from filing suit as soon as they had notice of the Generic Manufacturers' participation in the market. Tellingly, that information was available to them by *no later than* 2018, when DEA produced ARCOS data for the 2006 to 2014 time period.[4] Thus, Amending Plaintiffs' assertion that "the information on which they seek to base their amended pleadings was not available until September 2023" is belied by their very own admissions. ECF No. 5553 at 6.

In an effort to defend their lack of diligence, Amending Plaintiffs try to draw a distinction between notice to the PEC and notice to Amending Plaintiffs. *See, e.g.*, Reply at 10 ("Plaintiffs note, at the outset, that they were provided *no* information about the JOGMs prior to March 2019, because none of the JOGMs had more than a 5% market share in any of these Plaintiffs' jurisdictions.") (emphasis in original). This Court should reject this made-up distinction. Nothing prevented the PEC, as representatives of both governmental and private entities, from sharing information with counsel for Amending Plaintiffs about entities that had less than 5% market share between 2006 and 2014. Though Amending Plaintiffs suggest this data was "subject to protective order and not made public" (ECF No. 5565 at 13) and that "the PEC was precluded from providing

---

[3] If Amending Plaintiffs claim that this admission was an inadvertent mistake or taken out of context, it is not. Amending Plaintiffs doubled down on their duplicity in their replies as to other defendants' oppositions. *See* ECF No. 6213 at 26 ("[W]hether market share data was required to amend. . . . is irrelevant."); 6211 at 42 ("At no time has this Court held or even suggested that a 5% market share is a requirement for asserting claims against any proposed defendant[.]").

[4] The 2006 to 2014 ARCOS data attributes sales of opioid products to Aurolife as early as 2012, to KVK-Tech as early as 2009, to "Lupin" as early as 2011 (notably, before Lupin Pharmaceuticals even existed), and to Tris Pharma as early as 2014.

5

plaintiffs with information about entities with less than 5% market share" (ECF No. 5553 at 7), this Court has always *permitted* sharing of ARCOS data. See ECF Nos. 167 at 1 ("disclosure may be made to the governmental Plaintiffs . . . for this litigation and/or law enforcement purposes"); 397 at 3 ("[U]se of the ARCOS database shall be limited to this litigation[.]"); 668 at 2-3 ("As ordered earlier, disclosure of ARCOS data may be made to the governmental Plaintiffs[.]"); 1545 at 9 ("The MDL Counsel are hereby authorized to transfer the data identified herein and subsequently provide access to counsel[.]"). Nowhere do Amending Plaintiffs identify any order in which the PEC was "*precluded*" from sharing the 2006 to 2014 ARCOS data with counsel for Amending Plaintiffs.[5]

Moreover, even if the PEC was precluded from sharing 2006 to 2014 ARCOS data with counsel for Amending Plaintiffs – which it was not – Amending Plaintiffs still do not explain why certain *other* MDL cases should have put the Generic Manufacturers on notice of their potential liability, but did not provide Amending Plaintiffs notice at the same time. See Reply at 15-17.

As set forth in the Generic Manufacturers' Opposition to Amending Plaintiffs' Motions for Leave to Amend (ECF No. 5899) ("Opp."), Amending Plaintiffs must establish that their original deadline for amendment "could not reasonably have been met despite due diligence[.]" Opp. at 4 (citing *United States v. Brancatelli*, No. 1:23-CV-1804, 2024 WL 4107214, at *2 (N.D. Ohio Sept.

---

[5] Amending Plaintiffs cite the Court's November 8, 2018 Order Regarding Plaintiffs' Motion for Modification of CMO-1 (ECF No. 1106) in support of their claim that they were precluded from sharing information about entities with less than 5% market share. ECF No. 5553 at 7. That Order required the PEC to produce reports reflecting the names of all labelers who manufactured and/or labeled more than 5% of the market share, but it did *not* preclude the PEC from also providing additional information. See ECF No. 1106. Indeed, in their subsequent Second Amended Notice of ARCOS Disclosure, the PEC gave notice of a procedure by which they would share "the entirety of the unprocessed ARCOS data previously produced in this litigation by the DEA" with "all counsel for State Attorneys General, counties, cities, municipalities, [and] Native American Tribes[.]" ECF No. 1612 at 1 (filed May 7, 2019).

6

6, 2024)).  Amending Plaintiffs' acknowledgment that their 2015 to 2019 market share calculation is "irrelevant" to the Motions precludes them from arguing that the March 2019 amendment deadline could not have been met with due diligence.  For this reason alone, the Court should deny Amending Plaintiffs' Motions.

**II.      Amending Plaintiffs Are Engaging in Improper Burden-Shifting and Misrepresenting the Amendment Standard.**

Amending Plaintiffs – who solely shoulder the responsibility of convincing this Court that they were justified in prolonged, nationwide inaction – improperly attempt to shift their burden under Rules 15 and 16 to the Generic Manufacturers.  Without citation to any authority, Amending Plaintiffs write: "Once the movant surpasses the amendment deadline inquiry, any additional time lapse in moving for leave to amend falls under Rule 15's 'undue delay' analysis, which turns on whether the ***non-movant can demonstrate***" prejudice.  Reply at 3 (emphasis added).  This is wrong.

Once Amending Plaintiffs ignored this Court's then already-extended pleading deadline of March 16, 2019 (*see* ECF No. 1106), Amending Plaintiffs faced the higher threshold of demonstrating "good cause" for the Court to then re-write its scheduling order.  *See* Fed. R. Civ. P. 16(b)(4); *In re Nat'l Prescription Opiate Litig.,* 956 F.3d 838, 843 (6th Cir. 2020) ("[T]he Counties [needed to] show[] 'good cause' for their failure to make the amendments 19 months earlier."); *Shane v. Bunzl Distrib. USA, Inc.,* 275 F. App'x 535, 536 (6th Cir. 2008) (once a pleading deadline passes, a movant "must meet the higher threshold for modifying a schedule order found in Rule 16(b)").

As movants seeking to amend their complaints after the deadline to do so, ***Amending Plaintiffs*** must establish that amendment at this late stage will not prejudice the Generic Manufacturers; it is not the Generic Manufacturers' burden to prove a negative (*i.e.*, that the

7

Generic Manufacturers will *not* be prejudiced by the proposed amendment). *See Ross v. Am. Red Cross,* 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)) ("[T]he *plaintiff* must show . . . that the opposing party will not suffer prejudice by virtue of the amendment.") (emphasis added).  Amending Plaintiffs now attempt to shrug off and invert their burden in a misguided attempt to persuade the Court that their gross inaction should lead to a further scheduling amendment.

And, Amending Plaintiffs are wrong to say that their burden somehow lightened after they drove past the pleading deadline.  Before March 17, 2019, Amending Plaintiffs were permitted to amend by leave of Court and where "justice so require[d]."  Fed. R. Civ. P. 15(a)(2).  After that date, their burden heightened to establishing good cause for their noncompliance and demonstrating a lack of prejudice to the Generic Manufacturers.  *See* Fed. R. Civ. P. 16(b)(4); *Nat'l Prescription Opiate Litig.*, 956 F.3d at 843; *Shane*, 275 F. App'x at 536.  Amending Plaintiffs' suggestion that their burden somehow *diminished* after the Court's deadline was in their rear-view mirror is not the law, and so erroneous that it would perversely incentivize parties to not act diligently approaching a court-ordered deadline so as to reap some kind of reward from such inaction on the other side.

Of course, as discussed *supra* at 4-7 and in prior briefing (*see* Opp. at 5-10), Amending Plaintiffs were definitionally *not* diligent – among other things, stalling until 2023 to request 2015 to 2019 ARCOS data while ignoring other viable avenues of information available to them.  The Motions should be denied.

**III.     Permitting Amendment Six Years Past the Final Deadline Prejudices the Generic Manufacturers.**

Amending Plaintiffs attempt to obfuscate a simple reality – they sat on their hands for more than *six years* before taking any action to add the Generic Manufacturers to these cases.  Amending

8

Plaintiffs have not – in either the Motions or their Reply – presented *any* reasonable justification for this apparent lack of diligence. Their Reply purports to provide only three responses to the Generic Manufacturers' prejudice concerns: (1) "[t]he passage of time alone does not establish prejudice[,]" (2) "speculation concerning litigation holds likewise does not demonstrate prejudice[,]" and (3) "missing PFSs similarly demonstrate[] no prejudice[.]" Reply at 14, 17, 19. None of these arguments resolves the certainty of prejudice the Generic Manufacturers will suffer, not only to those who have had little-to-no prior involvement in this litigation, but to all the Generic Manufacturers.

### A. Amending Plaintiffs Improperly Place Responsibility for Notice on the Generic Manufacturers—While Ignoring Their Own Duties.

Notice and prejudice are related. Amending Plaintiffs simply try to offload the issue of prejudice by shifting the burden of notice onto the Generic Manufacturers. *See id.* at 15-16 ("Several JOGM Defendants separately argue that they are prejudiced by lack of notice due to the insufficiency of prior MDL cases against them . . . . [T]he [Generic Manufacturers] are presumed to have knowledge of the public filings issued in this MDL on related opioid manufacturer claims[.]"). In plain words, Amending Plaintiffs contend that because the Generic Manufacturers lawfully manufactured opioids, they should have been on notice of this litigation, and kept up to date with the filings and events in this complex litigation—and somehow should have anticipated Amending Plaintiffs' lack of diligence in seeking leave to amend. This fanciful argument turns the law on its head and imposes heavy burdens on the Generic Manufacturers – not to mention *all* defending litigants – that simply do not exist.

It is not a defendant's burden to monitor all litigation, occurring anywhere, that could possibly relate to it in some unknown way at some unidentified time. The argument that manufacturing opioids imposes a duty to spend time and money monitoring all opioid-related

9

litigation is grounded in neither law nor common sense. There have been over ***6,000 filings*** in this litigation over the course of nearly eight years. Amending Plaintiffs' contention that even non-parties to this litigation (whom Amending Plaintiffs ***chose*** not to name by the March 2019 deadline to amend) are required to stay abreast of all filings in this MDL, if adopted, would be a significant change in the law.

But two fundamental flaws in Amending Plaintiffs' theory stand out. First, even ***if*** the Generic Manufacturers took it upon themselves to monitor this litigation, that duty would not continue for more than six years ***after*** the amendment deadline passed and Amending Plaintiffs chose to ***not join*** them as defendants. Any such imagined duty would have ended when the amendment deadline passed. Second, if the mere act of lawfully manufacturing opioids is enough to put a manufacturer on notice of potential claims against it in this litigation, then Amending Plaintiffs consequently had sufficient notice to name the Generic Manufacturers in these cases in 2019, regardless of the availability of ARCOS data.

### B. The Change in Circumstances Accompanying Plaintiffs' Six-Year Delay Is Highly Prejudicial.

Amending Plaintiffs lean heavily on the assertion that the "passage of time alone does not establish prejudice." Reply at 14. However, it is not the passage of time ***itself*** that creates prejudice, but rather the multitude of ***changed circumstances*** between this Court's original deadline of March 16, 2019 and the intervening six years when Amending Plaintiffs finally chose to file their Motions. The world did not freeze for those six years, not even for those cases the Court stayed. To the contrary, over the course of more than six years, memories undoubtedly faded, evidence spoliation has likely occurred, and witnesses who were once available will undoubtedly have become unavailable. *See Chapman v. Gen. Motors LLC*, No. 2:19-CV-12333-TGB-DRG, 2023 WL 8007337, at *5 (E.D. Mich. Nov. 17, 2023) (prejudice exists "as memories

10

fade and witnesses and evidence become unavailable through the passage of time"). Amending Plaintiffs offer no solution, nor can they.

The prejudice to defendants who are not active in this litigation, have settled out, or have had very little involvement up to this point is compounded. For example, Tris Pharma is not an active defendant in any case in this litigation and years ago settled out of the one and only case in which it was ever named. Tris Pharma, having taken this Court's directive early on to settle, had no reason to expend *any* resources preserving evidence or following the thousands of motions and orders in this MDL. Moreover, other Generic Manufacturers had almost no presence in the MDL at the time the Motions were filed; at that time, Lupin Pharmaceuticals (with two cases), Aurolife (with one case), and APUSA (with zero cases) likewise had no reason or opportunity to participate meaningfully in these proceedings. By contrast, Amending Plaintiffs have been fully involved in this MDL from day one and, with the benefit of the PEC procedure established by the Court, have had the benefit of coordinated motion practice, discovery, rulings, and access to developed experts. Amending Plaintiffs' Reply wholly fails to address the Generic Manufacturers' inability to defend themselves because of this imbalance, nor do they propose any measures to mitigate such substantial prejudice.

### C. Granting Leave to Amend Will Hinder the MDL's Efficiency and Eventual Finality.

"Deadlines are set for a reason." *Botnick v. Zimmer Inc.*, Civ. A. No. 1:03-CV-1794, 2004 WL 2668803, at *2 (N.D. Ohio Nov. 19, 2004). The deadline here, March 16, 2019, has long since passed. Over the course of those six years, this Court has narrowed and moved this litigation toward resolution. The current Motions represent a significant expansion of this MDL, run contrary to the Court's work, and will hinder it if granted. The interests of justice require finality – otherwise this litigation will continue with no end in sight.

11

Take Tris Pharma as an example of the futility of settlement and the regenerative-forever nature of this MDL. Settlement gave Tris Pharma no assurances that Plaintiffs would not unceremoniously drag it back in to the MDL, negating one of the driving motivations of settlement.[6] As for Lupin Pharmaceuticals (two cases), Aurolife (one case at the time the Motions were filed) and APUSA (zero cases at the time the Motions were filed), Amending Plaintiffs' Motions represent a potential vast expansion of their involvement when the MDL should be ending. As to KVK-Tech, Amending Plaintiffs' Motion seeks to expand KVK-Tech's involvement in the MDL by several hundred cases. Amending Plaintiffs have offered no explanation as to how amending their complaints to add multiple defendants to hundreds of cases does not seriously disrupt the progress toward the eventual and desired closure of this MDL.

## IV. Amending Plaintiffs Fail to Assert Case-Specific Allegations.

Incredibly, Amending Plaintiffs argue they do not need to provide any case-specific reasons for amendment because of an alleged lack of "material difference across the cases with respect to diligence, prejudice, particularity, or . . . alleged futility." *See* Reply at 24. Under Amending Plaintiffs' theory, the Generic Manufacturers' lawful manufacturing of opioids over a multi-year span makes all cases materially identical, and the requirement for case-specific facts irrelevant. Amending Plaintiffs' theory runs directly afoul of Sixth Circuit precedent and this

---

[6] This risk is very real. One plaintiff had previously named Tris Pharma as a defendant in a single case in this MDL. *See* Tris Pharma Opp. at 1 (ECF No. 5887). Tris Pharma settled out of this litigation, and since the deadline to seek leave to amend complaints had passed in March 2019, reasonably believed it would not be added back into this litigation. *See id*. As another example of this risk, the prospect of Aurobindo resolving just two political subdivision cases currently pending against it (and ending its involvement in this MDL) is vastly different than the prospect of resolving 174 cases to bring this MDL to closure. Amending Plaintiffs' efforts to dramatically expand the scope of this MDL is fundamentally untimely, prejudicial to the subject defendants, and actively impeding the Court's efforts to bring the litigation to an end through any disposition.

Court's orders requiring a *case-by-case showing* of good cause *for each case* in which they seek to add any defendant.[7]

Amending Plaintiffs believe they are not required to comply with these basic pleading rules. *See id.* at 23-25. They instead rely on "substantially similar" claims in the *City of San Francisco* complaint. *See id.* at 25. But Plaintiffs cannot hand-wave over vague references to bellwether pleadings when the facts for each Generic Manufacturer are fundamentally different.

*City of San Francisco* involved brand manufacturers or manufacturers of brand and generic opioids against whom Plaintiffs made specific allegations regarding each defendant's marketing campaign dating back decades. Here, the Generic Manufacturers manufactured *only generic opioids*, which they do not market or promote. Amending Plaintiffs do not explain how they intend to assert plausible claims like those in *City of San Francisco* other than to say they will look for marketing materials in discovery. *See id.* at 29. But Amending Plaintiffs cannot get to discovery without pleading facts based on a reasonable inquiry that make out, in the first instance, a plausible cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Rule 11 obligates Amending Plaintiffs to perform a reasonable inquiry to ensure their factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b). Here, no Amending Plaintiff offers *any* factual contentions about marketing or promotion of opioids in *any* of their jurisdictions – because they cannot.

Additionally, KVK-Tech, Aurobindo, Tris Pharma and Lupin Pharmaceuticals only began selling opioids in 2009, 2012, 2014, and 2016, respectively, after the period of alleged wrongful

---

[7] *See* Fed. R. Civ. P. 16(b)(4); *Nat'l Prescription Opiate Litig.*, 956 F.3d at 845 ("[A] district court's decision whether to grant a motion to amend in an individual case depends on the record in that case and not others."); May 22, 2024 Hr'g. Tr. 17:25-18:3 (ECF No. 5471) (requiring a case-by-case showing of good cause for any plaintiff seeking leave to amend).

conduct that forms the basis of the claims in the *City of San Francisco* bellwether complaint. Amending Plaintiffs offer no answer on this timing issue, and do not explain how KVK-Tech, Aurobindo, Tris Pharma, or Lupin Pharmaceuticals could have participated in or contributed to the creation of the alleged opioid epidemic, let alone address how any of the Generic Manufacturers' conduct—limited to lawful, comparatively minimal sales of generic medications beginning in 2009, 2012, 2014, or 2016 (or later), decades after the alleged marketing schemes forming the basis for the claims in that bellwether complaint – could ever meet the causation and liability theories in *City of San Francisco*. Again, it is because they cannot.

For these reasons and those set forth in the Generic Manufacturers' oppositions, Amending Plaintiffs fail to meet the Sixth Circuit's and this Court's requirement for a case-by-case showing of good cause. The Motions should be denied.

## **CONCLUSION**

For the foregoing reasons, and those stated in the Generic Manufacturers' Opposition to Omnibus Motions for Leave to Amend and Memorandum of Law in Support (ECF No. 5899), Lupin Pharmaceuticals' Supplemental Briefing in Opposition to Omnibus Motion for Leave to Amend (ECF No. 5884), Tris Pharma, Inc.'s Supplemental Opposition to Omnibus Motion for Leave to Amend to Add Tris Pharma, Inc. and Memorandum of Law in Support (ECF No. 5887), Aurobindo Pharma USA, Inc.'s and Aurolife Pharma, LLC's Supplemental Response in Opposition to the PEC's Motion to Amend (ECF No. 5889), and Defendant KVK-Tech, Inc.'s Opposition to Amending Plaintiffs' Omnibus Motion for Leave to Amend to Add KVK-Tech, Inc. (ECF No. 5900), the Motions should be denied.

14

DATED: July 13, 2025                              Respectfully Submitted,

/s/ Kevin M. Bandy
Paul J. Cosgrove
Kevin M. Bandy
**UB GREENSFELDER LLP**
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Tel.: 513.698.5000
pcosgrove@ubglaw.com
kbandy@ubglaw.com


*Attorneys for Defendants Aurobindo Pharma USA, Inc. and Aurolife Pharma, LLC*

/s/ Thomas E. Rice
Thomas E. Rice
**BAKER STERCHI COWDEN & RICE LLC**
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Tel.: 816.471.2121
rice@bakersterchi.com

*Attorney for Defendant KVK-Tech, Inc.*

/s/ Katy E. Koski
James W. Matthews
Katy E. Koski
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199
Tel.: 617.342.4000
jmatthews@foley.com
kkoski@foley.com

*Attorneys for Defendant Lupin Pharmaceuticals, Inc.*

/s/ Terry M. Henry
Terry M. Henry
Fiona Steele
**BLANK ROME LLP**
One Logan Square

15

130 North 18th Street
Philadelphia, PA 19103
Tel.: 215.569.5500
Terry.Henry@blankrome.com
Fiona.Steele@blankrome.com

*Attorneys for Specially Appearing Defendant Tris Pharma, Inc.*

## CERTIFICATE OF SERVICE

I, Katy E. Koski, hereby certify that the foregoing was filed on July 13, 2025 through the ECF filing system and will be sent electronically to all counsel of record identified as registered participants on the associated Notice of Electronic Filing.

*/s/ Katy E. Koski*
Katy E. Koski, Esq.