# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 17-md-2804 |
| *Saint Elizabeth Medical Center, Inc. d/b/a St. Elizabeth Healthcare v. AmerisourceBergen Drug Corporation, et al.;* Case No. 18-op-46046 | Judge Dan Aaron Polster |

## PHARMACY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE RICO ALLEGATIONS FROM THE SECOND AMENDED COMPLAINT

In their Memorandum in Opposition to Motion to Strike RICO Allegations from Second Amended Complaint, ECF No. 6205 (hereafter "Resp."), Plaintiff does not dispute either of the core legal premises of the Motion to Strike. Namely, (1) that Rule 12(f) permits the Court to strike claims in an amended complaint if they exceed the scope of the amendment the Court permitted, *see In re Keithley Instruments, Inc., Derivative Litig*., 599 F. Supp. 2d 908, 913 (N.D. Ohio 2009), and (2) that the Court never granted Plaintiff leave to include a RICO claim in its Second Amended Complaint, *see* Case No. 17-md-02804 ECF No. 6012, March 11, 2025 Case Mgmt. Ord. for Hospital Bellwether Case at 1-2 (hereinafter, "CMO" or "ECF 6012"). Nor does Plaintiff dispute that it previously agreed to the language the parties submitted to the Court for approval and entry of the original Case Management Order. That language limits Plaintiff to the three claims it identified in its sworn Plaintiff Fact Sheet, none of which is RICO.

Instead of engaging with these straightforward matters, Plaintiff attempts to muddy the dispute with irrelevant procedural history and a September 2024 email ruling from Special Master Cohen in a different MDL bellwether case, with different plaintiffs, that severed and

stayed certain claims under different circumstances. *See* Resp. at 6-7. Here, this Court expressly refused to allow *this Plaintiff* to unilaterally include a RICO claim in its Second Amended Complaint. Plaintiff does not and cannot explain how Special Master Cohen's order in another case could possibly have severed or stayed a claim that Plaintiff was never authorized to plead in the first instance.

Plaintiff also attempts to argue that the Court lacks authority to hold Plaintiff to its own representations during the bellwether selection process. Resp. at 8. Not surprisingly, Plaintiff cannot cite a single case to support its position. And indeed, the case law demonstrates that the Court has full authority to prevent Plaintiff from going back on its sworn representations now that CVS Pharmacy, Inc., Walgreen Co., Walgreen Eastern Co., Inc., and Walmart Inc. (the "Pharmacy Defendants") have relied on those representations in agreeing to the selection of Plaintiff's case as a bellwether case. The Court should grant the Motion to Strike.[1]

## A. THE COURT SHOULD STRIKE THE RICO CLAIMS, WHICH PLAINTIFF DID NOT HAVE LEAVE TO INCLUDE IN ITS SECOND AMENDED COMPLAINT

As Pharmacy Defendants explained in their Motion to Strike, Federal Rule of Civil Procedure 12(f) allows the Court to strike any "immaterial" or "impertinent" matter from a pleading. Fed. R. Civ. P. 12(f). When an amended complaint exceeds the scope of the amendment the court permitted, the court may strike those claims under Rule 12(f). *See Keithley*, 599 F. Supp. 2d at 913. Plaintiff does not dispute this fundamental point of law. Nor does

---

[1] Unrelated to Plaintiff's RICO allegations, Plaintiff also argues that plaintiffs St. Claire Medical Center and Highlands Hospital have "never voluntarily dismissed any claims in No. 18-op-46046" despite jointly proposing language to the contrary in the Parties' proposed Case Management Order on February 3, 2025. ECF no. 6205 at 4, n. 4. In fact, these plaintiffs' claims are subject to a bar under the Pharmacy Defendants' negotiated national settlements. *See* ECF No. 5179, Appendix A at 96; ECF No. 5325, Appendix A; ECF No. 5136, Appendix A at 39; and ECF No. 5136-2 at 27; ECF 5128, Appendix A at 40, 72.

Plaintiff challenge the well-settled fact that at this point in the litigation, Federal Rule of Civil Procedure 15 required it to obtain leave of Court before amending its complaint. *See* Fed. R. Civ. P. 15(a)(2) (leave of court required before complaint can be amended).

Tellingly, throughout the five pages of "procedural history" at the outset of its Response, Plaintiff does not cite an order granting Plaintiff leave to include a claim that was not included in its Plaintiff Fact Sheet to its Second Amended Complaint ("SAC"). That is not surprising, because the Court has never entered any such order. To the contrary, and as the Pharmacy Defendants lay out in detail in their Motion to Strike, the Court has entered orders expressly *forbidding* this. *See* ECF No. 6012 at 1-2 (requiring Second Amended Complaint to "be consistent with the [Plaintiff's] . . . certified Plaintiff Fact Sheet," providing that "Plaintiff shall not further amend its complaint absent leave of Court or stipulation of the Parties, and severing and staying claims against "all other defendants"), Ex. A, Apr. 16, 2025 Email Correspondence between Special Master D. Cohen and Parties at 4 (stating that "Judge Polster . . . asked me to convey" that Plaintiff had "explicitly agreed on which claims would be tried" in the bellwether, was "bound by its prior agreement" and should "proceed accordingly, including submission by [Plaintiff] of an appropriate SAC."), ECF No. 6157 at ¶¶ 2-5. The Court could grant the Motion to Strike on this basis alone.

Plaintiff argues that an email Special Master Cohen sent months before his April 16, 2025 email, in another case, somehow grants it leave to sever and stay a RICO claim. *See* Resp. at 6-7. That argument must fail, first and foremost, because it puts the severance cart before the amendment horse. Only properly pled claims can be severed, and only those claims that Plaintiff had leave to plead are properly pled. *See* Fed. R. Civ. P. 42(b), 15, and 16. *See also* ECF No. 6157 at ¶¶ 10-11. Even Plaintiff does not claim that the September email gives Plaintiff leave to

amend its complaint to plead a RICO claim. That is dispositive here, where at least two orders forbid Plaintiff from pleading a RICO claim in its SAC. *See* Ex. A at 4 and ECF No. 6012 at 1-2.

Moreover, this Court's CMO (which the parties negotiated and jointly submitted) and Special Master Cohen's April 2024 email, which are both more recent and specific to this matter, must logically govern over a prior order issued in other cases under other circumstances. *Cf. In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (interpreting administrative order consistent with statutory construction canon that the specific governs the general). And again, those orders make clear that in *this* case, Plaintiffs may only plead the claims in their Plaintiff Fact Sheet. *See* Ex. A at 4 and ECF No. 6012 at 1-2.

Equally important, the CMO makes clear that the claims to be severed are claims against "**all other** defendants"—*i.e.*, Defendants *other than* Pharmacy Defendants—and expressly requires Plaintiff to litigate its claims against Pharmacy Defendants "only in this bellwether case." ECF No. 6012 at 2 (emphasis added). *See also* ECF No. 6157, Motion to Strike, at ¶ 11. In other words, that Order does not allow Plaintiff to plead or sever a RICO claim. Plaintiff attempts to obfuscate that key language by arguing that the order allows it to sever claims against (as Plaintiff puts it) "defendants." Resp. at 8. That Plaintiff must resort to mischaracterizing the CMO to make its argument speaks volumes.

Thus, the TPP bellwether CMO (on which Plaintiff entirely relies on in its opposition) is irrelevant to this dispute. Even if that order did have some marginal relevance (it does not), the circumstances in this case and the TPP bellwethers are materially different, such that the Court should decline to follow it. In this case, because the bellwether selection was made by agreement of the Parties based on certain representations by Plaintiff, the Court has ordered Plaintiff to abide by its sworn agreement on which claims it would bring. Ex. A at 4 ("[I]t is clear that

Hospitals agreed with Pharmacies on which case would be the bellwether, and explicitly agreed on which claims would be tried. . . . [Plaintiff] is bound by its prior agreement[.]"). That is reflected in the CMO, which expressly identifies those claims that could be pled in this case, clearly severs only claims against "other defendants" and instructs Plaintiff to litigate all of its claims during the bellwether case. ECF No. 6012 at 2. By contrast, the TPP bellwethers were not jointly agreed upon by the parties but instead selected by a picks and strikes process. Neither party agreed to the other party's bellwether selection; they merely chose to use their strikes on other selections. Indeed, in contrast to the negotiated language in the CMO in *this* case, when the Court wished to allow severance of certain causes of action in the TPP case, it said so directly in an amended CMO. ECF No. 5666 at 2, n.2 ("The Court made a case management decision to sever the TPP Bellwether Plaintiffs' claims other than" specific claims, including RICO).

The CMO in *this* bellwether case expressly contemplates that to the extent the Plaintiff is "differently situated than prior MDL plaintiffs," the Court's prior rulings might "warrant a different outcome."  ECF No. 6012 at 3. So it is here. And to the extent Plaintiff believed the language in *this case's* CMO did not reflect its understanding of the parties' agreements regarding which claims Plaintiff could add to its amended complaint, it could have proposed language mirroring that of the TPP bellwether instead of agreeing upon the language provided to the Court in this CMO. It did not do so. Asking the Court to follow the TPP bellwether CMO instead of the CMO negotiated and entered in *this* case is nonsensical.

Because the Court has not granted Plaintiff leave to amend its complaint to add a RICO claim (and in fact has repeatedly declined to grant such permission), the Court should grant the Pharmacy Defendants' Motion to Strike.

> **B.     PLAINTIFF HAS  NOT SHOWN GOOD CAUSE WHY IT SHOULD BE ALLOWED TO PLEAD A CLAIM IT PROMISED, UNDER OATH, NOT TO PLEAD**

In its Response, Plaintiff also does not contest that Federal Rule of Civil Procedure 16 does not allow amendment of the CMO to grant Plaintiff leave to amend its complaint absent good cause shown. Fed. R. Civ. P. 16(b)(3), (4) (CMO deadline to amend pleadings may only be modified for "good cause shown"). Plaintiff has not remotely shown "good cause" to amend the CMO to allow it to plead a claim that it swore in its fact sheet it did not intend to bring. *See* Ex. B, Jan. 14, 2024 Plaintiff Fact Sheet at 14-15 (averring that Plaintiff "intends to proceed in a Bellwether Case (if selected) with" three causes of action, none of which are RICO). Indeed, it does not even attempt to do so.

Plaintiff also has not provided any reason to overturn Special Master Cohen's order requiring Plaintiff to abide by the representations it made during the bellwether selection process. The time to object to the on-point April 16 Order—which expressly forbids Plaintiff from pleading a RICO claim—has long since passed. *See* Case No. 17-md-02804 ECF No. 69, Jan. 11, 2018 Order at 5. As such, the Court should find that any objection to the order is permanently waived and cannot be revived now. *Id.* at 4.

Unable to meet Rule 16's "good cause" standard, Plaintiff attempts to turn the standard on its head, arguing that *the Pharmacy Defendants* must show "good cause" to "dismiss[] and stri[ke]" a RICO claim Plaintiff never had permission to plead in the first place. Resp. at 7. Tellingly, Plaintiff cannot cite a single authority for that proposition. In any event, the Pharmacy Defendants have shown "good cause," namely holding Plaintiff to the representations it made in order to have its case be chosen as a bellwether, and its agreement to the express language of the CMO. *See* Ex. A at 4  ("[I]t is clear that Hospitals agreed with Pharmacies on which case would be the bellwether, and explicitly agreed on which claims would be tried [and] is bound by its prior agreement."). The Court should not modify the CMO.

### C. PLAINTIFF IS ESTOPPED FROM CHANGING ITS POSITION ON WHICH CLAIMS IT WILL BRING AGAINST PHARMACY DEFENDANTS

Plaintiff's final argument is that holding it to its own representations is somehow tantamount to a "dismissal" that the Court "has no authority" to grant. *See* Resp. at 8-9. Plaintiff is wrong. It is *Plaintiff* who dropped the RICO claim in order to have its case selected as a bellwether. *Allowing* Plaintiff to add a RICO claim now that its case has been selected as a bellwether would be inequitable and unjust.

As this Court has recognized, Defendants relied on Plaintiff's voluntary and sworn representations in its Plaintiff Fact Sheet regarding the claims it would bring against the Pharmacy Defendants when agreeing to the selection of Plaintiff's case as a bellwether. *See* Ex. B at 14-15 (averring that Plaintiff "intends to proceed in a Bellwether Case (if selected) with three causes of action, none of which are RICO, and that it "will proceed in the capacity of an individual Plaintiff in the Bellwether Case and not as a class representative");[2] Ex. A at 4 ("[I]t is clear that Hospitals agreed with Pharmacies on which case would be the bellwether, and explicitly agreed on which claims would be tried. . . . [Plaintiff] is bound by its prior agreement"). As counsel for Walgreens explained, the Pharmacy Defendants intentionally chose a case that did not involve a RICO claim, in part because "hospital plaintiffs represented by the same lawyers have already brought RICO claims against the same Defendants in multiple other courts, including the Florida case set for trial in September." Ex. A at 5.  Thus, in the Pharmacy Defendants' view, "[i]t would serve little purpose for the parties and the Court to devote

---

[2] In its Response, Plaintiff incorrectly states that the three causes of action it identified in its Plaintiff Fact Sheet were nuisance, Kentucky Consumer Protection Act ("KCPA") violations, and unjust enrichment. Resp. at 3. In fact, the three claims were nuisance, KCPA, and conspiracy. *See* Ex. B at 15. In any event, the salient point for purposes of this motion is that RICO was not an identified claim.

resources to testing the same claims again in this Court's bellwether rather than claims that are not already being litigated elsewhere." *Id.*[3]

Allowing Plaintiff to secure Pharmacy Defendants' agreement on bellwether selection based on a set of representations—then reverse course on those representations once the selection had been made—would be contrary to federal court practice and basic notions of fairness. If nothing else, it would prejudice Pharmacy Defendants by depriving them of the opportunity to make an informed selection regarding which bellwether they would choose. *Cf. In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, No. 2:19-MD-02921-BRM, 2022 WL 3211421 at *4 (D.N.J. Aug. 9, 2022) (affirming the Special Master's order compelling the Defendant to produce discovery because, "Plaintiffs will not be able to make an informed decision in selecting bellwether cases without it."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2010 WL 4024778, at *4 (S.D. Ill. Oct. 13, 2010) (granting the parties flexibility on the bellwether selection process until "they feel they are best able to make an informed decision regarding this issue of bellwether selection."). Allowing Plaintiff to reverse course on such a material issue after the case has already been selected as a bellwether will have unfairly deprived the Pharmacy Defendants of key information during the bellwether selection process and as such irrevocably diminished the Pharmacy Defendants' rights and the fairness of the selection process.

Prejudice aside, Plaintiff is equitably estopped from reneging on its earlier agreement. Estoppel relief is generally granted "to protect the integrity of the judicial process and prevent

---

[3] To that end, it is irrelevant that Plaintiff had previously pled a RICO claim. *See* Resp. at 2-3. What is important is that, in order to secure its selection as a bellwether, Plaintiff made representations regarding what claims it would pursue moving forward—a subject uniquely within Plaintiff's knowledge.

parties from "playing 'fast and loose' with the courts."" *See Boler Co. v. Watson & Chalin Mfg., Inc.*, 372 F. Supp. 2d 1013, 1020 (N.D. Ohio 2004), amended (Mar. 28, 2005) (discussing judicial estoppel). Equitable estoppel requires "a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment." *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1056 (6th Cir. 2015).

Those elements are amply met here. Defendants detrimentally relied on Plaintiff's assertion as to the claims it would plead when selecting a bellwether, without the knowledge of Plaintiff's intention to later add RICO claims it had foresworn. The Sixth Circuit has previously held in MDL contexts that, with respect to agreements between the parties as to what claims can be brought, courts should "hold [the party] to the terms of the contract that it negotiated and has received the benefit of[.]" *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 926 (6th Cir. 2022). Here, Plaintiff reached a fairly negotiated agreement with the Pharmacy Defendants as to what claims it would bring, and received the benefit of selection as a bellwether and corresponding expedited trial schedule. It cannot now be allowed to renege on the terms of its agreement while maintaining the benefit of the bellwether selection. It certainly should not be allowed to claim unfair harm by being held to its own representations. Rather, the original agreement must be enforced, including the limitation on the claims Plaintiff is allowed to plead. That is the only fair result.

For these reasons, Plaintiff's assertion that not allowing it to amend its complaint is tantamount to dismissing its RICO claim (Resp. at 8, n.7) is, at best, a gross distortion of the truth. In fact, if anyone "dismissed" Plaintiff's RICO claim it was Plaintiff itself—voluntarily, and for the purpose of inducing the Pharmacy Defendants to agree to its selection as a

bellwether. Holding Plaintiff to its litigation strategy is neither unfair nor unjust, and it is certainly well within the Court's authority. *See, e.g. Solis v. Lincoln Electric Co*., No. 1:04-CV-17363, 2006 WL 266530, at *4-6 (N.D. Ohio Feb. 1, 2006) (denying motion to change venue on the ground that court would not "annul[] the plaintiffs' agreement" to remain in current venue).

WHEREFORE, the Pharmacy Defendants respectfully request the Court to grant their Motion to Strike.

Dated:  July 14, 2025

Respectfully submitted,

*/s/  Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
110 North Wacker, Suite 4800
Chicago, IL 60606
Phone: (312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

*/s/  Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Jean K. Tinkham
Michael A. Nance
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
jean.tinkham@bartlitbeck.com
michael.nance@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*

*/s/  Eric R. Delinsky*
Eric R. Delinsky

Alexandra W. Miller
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Phone: (202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com
phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2025, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which caused all parties or counsel of record to be served

Dated:  July 14, 2025

Respectfully submitted,

/s/   Tara A. Fumerton
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
110 North Wacker, Suite 4800
Chicago, IL 60606
Phone: (312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

Counsel for Walmart Inc.