**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Judge Dan Aaron Polster |
| *Saint Elizabeth Medical Center, Inc. v. AmerisourceBergen Drug Corp.,* Case No. 18-OP-46046 "Track 23" | ) ) ) ) ) ) | **ORDER REGARDING RICO CLAIM** |

The Pharmacy Defendants move to strike from Plaintiff's Second Amended Complaint the RICO claim (Count II) and all RICO-related allegations. *See* docket no. 47 (also filed at MDL docket no. 6157). Plaintiff filed a response and Defendants filed a reply. *See* docket nos. 50 and 56. For the reasons stated below, the motion to strike is **GRANTED**.[1]

\* \* \* \* \*

The Plaintiff in this action, Saint Elizabeth Medical Center, filed two opioid-related cases against the same Pharmacy Defendants. Both cases ended up in this MDL. The "First Lawsuit," case no. 18-OP-46046 (which is the instant case), was originally filed in Kentucky federal court and then transferred to the MDL. The "Second Lawsuit," case no. 20-OP-45060, was originally filed in Kentucky state court, removed to Kentucky federal court, and then transferred to the MDL. Notably,

---

[1] After Plaintiff failed to timely respond to the Pharmacy Defendants' motion to strike, the Court entered an Order granting the motion as unopposed. However, the Court subsequently granted Plaintiff's motion to vacate that Order, based on excusable neglect. *See* non-document orders dated June 16 and June 23, 2025. Accordingly, the Court now rules on the motion to strike based on the merits, rather than procedural default.

the original complaint in the First Lawsuit included a claim for RICO; the original complaint in the Second Lawsuit did not.

In 2024, the Court announced its intention to pick a Hospital case for bellwether trial and directed the parties to either agree on a bellwether case or submit picks and strikes. *See* docket no. 5754. The Court also directed the parties to file a joint proposed case management order, once the case was chosen. *Id.* The parties agreed the First Lawsuit would serve as the bellwether case. The parties then came to agreement regarding most—but not all—of the language for a proposed case management order. The Court resolved the parties' differences and entered a Case Management Order ("CMO") designating the First Lawsuit for bellwether trial and setting various deadlines. *See* docket no. 44 (also entered at MDL docket no. 6012).

The Court's CMO stated that, if Plaintiff wanted to amend the complaint in its First Lawsuit—which is now this bellwether case—it had to:

> file a Second Amended Complaint (the "Hospital Bellwether Complaint") . . . , which shall be consistent with Hospital Bellwether Plaintiff's January 14, 2024 certified Plaintiff Fact Sheet and the Parties' January 13, 2025 letter to the Court, including that the claims to be litigated in Plaintiff's Hospital Bellwether Complaint against Defendants will be on an individual basis and will be limited to **public nuisance, conspiracy** and **Kentucky's Consumer Protection Act** (K.R.S. 367.120). The claims against all other defendants named in the Hospital Bellwether Complaint will be severed pursuant to Fed. R. Civ. P. 42(b) and stayed pending further Order.

CMO at 1-2 (emphasis added).[2] The Court also addressed the Second Lawsuit, as follows:

> Hospital Bellwether Plaintiff also is a plaintiff in the separate MDL case pending at Case No. 20-op-45060. Hospital Bellwether Plaintiff will dismiss without prejudice its claims in that case . . . , as Plaintiff is pursuing its claims in this bellwether case. Plaintiff shall not refile the dismissed claims and shall litigate its claims only in

---

[2] The Parties' January 13, 2025 letter to the Court made no mention of which claims Plaintiffs would pursue.

this bellwether case.

*Id.* at 2.[3] All of the above-quoted provisions were agreed to by the parties—it was not language where the parties submitted competing versions for the Court to resolve.

Earlier, the Court had made known it intended to pick a Hospital Plaintiff's case as a bellwether only if the Plaintiff agreed to try three or fewer causes of action. The Court has consistently taken a similar approach with other, earlier bellwether cases.[4] The reason the Court methodically employs this procedure is to "create a manageable, workable trial," "regardless of which allegations, claims, or defendants" the plaintiff includes in its complaint. Docket no. 5319 at 4-5.

Accordingly, in November of 2023, the Court directed each Hospital Plaintiff to submit a Hospital Fact Sheet, which asked the following question: "Please identify three or fewer causes of action on which Plaintiff intends to proceed in a Bellwether Case (if selected)." Fact Sheet at 4 (docket no. 5257). Plaintiff in this case provided the following answer in its January 14 Fact Sheet:

> Plaintiff intends to proceed in a Bellwether Case (if selected) with the following causes of action:
> 1. Public Nuisance
> 2. Conspiracy

---

[3] Plaintiff did dismiss its claims in the Second Lawsuit. *See* case no. 20-OP-45060, docket no. 111.

[4] *See, e.g.*, docket no. 2990 (Order in Track 2 severing all but the Big Three Distributor Defendants, and accepting voluntary dismissal of all claims except public nuisance); docket no. 3315 (Order bifurcating and staying certain claims and defendants in Track 3, effectively severing all but the Big Three Pharmacy Defendants and all claims except public nuisance); docket no. 3750 at 3 (Order bifurcating and staying claims in Tracks 7 through 11, so that plaintiffs would be "proceeding only against Pharmacy Defendants on the public nuisance cause of action in the five new bellwether trials"); docket no. 5319 (allowing amendment of complaints in Tracks 12 through 15—the four PBM bellwether cases—but noting the Court would likely sever and stay claims before suggesting remand for trial); docket no. 5666 at 2 n.2 (Order confirming that, in Tracks 16 through 19—the four TPP bellwether cases—all claims would be severed and stayed except conspiracy, consumer fraud, and state and federal RICO).

        3. Kentucky's Consumer Protection Act (K.R.S. 367.120)

*Id.* at 14-15. Plaintiff did not list RICO, or any of the other several claims it had asserted in its then-pending Complaints.[5]

    Plaintiff's declared intention in its January 14 Fact Sheet is consistent with the agreed provision contained in the CMO, stating that "the claims to be litigated in Plaintiff's Hospital Bellwether Complaint . . . will be limited to public nuisance, conspiracy and Kentucky's Consumer Protection Act (K.R.S. 367.120)." CMO at 2. To repeat, the parties agreed to this CMO provision.

    As noted above, the CMO states that, *if* Plaintiff files a Second Amended Complaint, it "shall [also] be consistent with Hospital Bellwether Plaintiff's January 14, 2024 certified Plaintiff Fact Sheet." CMO at 1-2. Plaintiff proceeded to file a Second Amended Complaint in the instant case asserting claims for **conspiracy** (Count I), **RICO** (Count II), and **nuisance** (Count III). *See* docket no. 45 at 161-78. The complaint did not assert a claim for violation of Kentucky's Consumer Protection Act.

---

[5]     Plaintiff submitted a single, January 14 Fact Sheet for both the First Lawsuit and Second Lawsuit. *See* Fact Sheet at 2 ("MDL Docket Number: **1:20-op-45060. Plaintiff is also named in 1:18-op-46046.**") (bold in original). At the time, the pending complaint in the First Lawsuit listed seven claims for relief, including RICO, *see* case no. 18-OP-46046, docket no. 33 at 303-332; and the pending complaint in the Second Lawsuit also listed seven claims for relief, but did not include RICO, *see* case no. 20-OP-45060, docket no. 1-1 at 296-326.

    Plaintiff later submitted an *Amended* Fact Sheet dated Feb. 14, 2025, but the CMO refers specifically and only to the January 14 Fact Sheet, not the *Amended* one. The *Amended* Fact Sheet provided a different answer to the Court's question about the three causes of action: "Plaintiff intends to proceed in a Bellwether Case (if selected) with the following causes of action: 1. Public Nuisance 2. Conspiracy 3. Racketeering Influenced and Corrupt Organizations Act ('RICO') 18 U.S.C. §§ 1961-1968." *Amended* Fact Sheet at 14.

    It appears Plaintiff submitted the *Amended* Fact Sheet after the parties jointly submitted their proposed CMO. Given that the CMO (in language agreed to by the parties) refers explicitly to the January 14 Fact Sheet and not the *Amended* Fact Sheet, it is the three causes of action that Plaintiff listed in that former Fact Sheet that control. And, of course, once Plaintiff filed its Second Amended Complaint without including a claim for violation of Kentucky's Consumer Protection Act, Plaintiff cannot pursue that claim.

Defendants move to strike from the Second Amended Complaint Plaintiffs' RICO claim and RICO-related allegations, arguing the inclusion of the RICO claim is contrary to the above-quoted provisions in the CMO and the Plaintiff's intention stated in the January 14 Fact Sheet.

In response, Plaintiff notes the Fact Sheet asked Plaintiff on which claims it *"intends to proceed"* in a bellwether case, and asserts this is a different question than what claims the Plaintiff might *state in its complaint*. Similarly, Plaintiff notes the CMO refers to claims the Plaintiff will "*litigate*"—not which claims the Plaintiff will *plead*. Plaintiff argues the RICO claim should not be stricken, it should be severed and stayed, just as the Court has done in other cases—*see* footnote 4.

This argument fails because the CMO states that, if Plaintiff files a Second Amended Complaint, the "claims to be litigated *in Plaintiff's Hospital Bellwether Complaint*" will be limited to public nuisance, conspiracy and Kentucky's Consumer Protection Act. Including a RICO claim—or any other claim beyond the listed three—"in Plaintiff's Hospital Bellwether Complaint" is explicitly disallowed by the Court's Order and the parties' own, agreed language. This makes immaterial what the Court has done in other cases.

Moreover, the CMO explicitly addresses severance and stay of claims, stating that "claims against all other defendants named in the Hospital Bellwether Complaint will be severed pursuant to Fed. R. Civ. P. 42(b) and stayed pending further Order." If Plaintiff believed it should be allowed to state a RICO claim against Pharmacy Defendants in its Second Amended Complaint and have it severed and stayed, then Plaintiff could have negotiated this provision. The CMO's silence on this point, despite addressing severance of claims otherwise, adds additional weight against Plaintiff's position.

If an amended complaint exceeds the scope of amendment the Court permitted, the Court may strike the excess under Fed. R. Civ. P. 12(f). *See In re Keithley Instruments, Inc., Derivative Litig.*,

599 F. Supp. 2d 908, 913 (N.D. Ohio 2009) (holding the plaintiff's "new causes of action must be stricken because their inclusion in the [amended complaint] far exceeded the scope of leave granted by the Court"). Plaintiff negotiated with Pharmacy Defendants and agreed to the CMO provision stating that, if it filed a Second Amended Complaint in this case, the document would include, at most, only three listed claims. To now allow otherwise would deprive the Pharmacy Defendants of the benefit of that bargain. *See In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 926 (6th Cir. 2022) (it would be "fundamentally unfair" not to "hold [defendant] to the terms of the contract [limiting which persons could bring suit] that it negotiated [with plaintiffs] and has received the benefit of").

Accordingly, the Pharmacy Defendants' motion to strike Plaintiff's RICO claim (Count II) and RICO allegations from the Second Amended Complaint is **GRANTED**. Defendants are thus required to file a responsive pleading only as to Count I and Count III in Plaintiff's Second Amended Complaint.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 15, 2025