UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) |
| | ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster |
| Track 12: *City of Rochester v. Purdue Pharma, L.P.* Case No. 19-op-45853 | ) ) **ORDER DENYING OPTUMINSIGHT** ) **DEFENDANTS' MOTIONS TO** ) **DISMISS FOR LACK OF PERSONAL** ) **JURISDICTION** |
| Track 22: *County of Ogdensburg, NY v. Purdue Pharma L.P.* Case No. 19-op-44825 | ) ) ) |

Before the Court are the OptumInsight Defendants' Motions to Dismiss for Lack of Personal Jurisdiction.[1] Docket nos. 5368 (Track 12) and 6128 (Track 22). Plaintiffs filed Responses.[2] Docket nos. 5449 (Track 12) and 6216 (Track 22). Defendants filed Replies. Docket nos. 5494 (Track 12) and 6224 (Track 22). Defendants assert the Court lacks personal jurisdiction over them and urge the Court to dismiss Plaintiffs' claims against them. For the following reasons, both Motions to Dismiss are **DENIED**.[3]

---

[1] Initially, there were nine moving Optum-family defendants: (1) UnitedHealth Group ("UHG"); (2) Optum, Inc.; (3) OptumInsight, Inc.; (4) OptumInsight Life Sciences, Inc.; (5) OptumRx Discount Card Services, LLC; (6) Optum Perks, LLC; (7) OptumHealth Care Solutions, LLC; (8) OptumHealth Holdings, LLC; and (9) Optum Health Networks, Inc. However, upon agreed stipulation of the parties, all the moving defendants except OptumInsight, Inc. and OptumInsight Life Sciences, Inc. ("Defendants") were dismissed from the PBM bellwether cases. *See* docket nos. 5535 (Track 12) and 6125 (Track 22). Therefore, the only remaining moving Defendants are OptumInsight, Inc. and OptumInsight Life Sciences, Inc.

[2] Plaintiff Ogdensburg County filed its response under seal. *See* docket no. 6169 (redacted version at docket no. 6181). Later, upon agreement by the parties, Ogdensburg filed a revised response, also under seal. *See* docket no. 6188 (redacted version at 6216). In this Order, the Court cites to the publicly available redacted revised response.

[3] Because both Plaintiffs are New York municipalities, the motions and arguments, as well as the Defendant-specific allegations in both amended complaints, are substantially identical. Therefore, unless otherwise indicated, the Court refers and cites only to the briefing and complaint in the Track 22 case. The Court's reasoning and conclusions, however, apply with equal force to both cases.

**Background**

In these two bellwether cases, the New York Plaintiffs, City of Rochester (Track 12) and County of Ogdensburg (Track 22), bring suit against two pharmacy benefits managers ("PBMs")—OptumRx, Inc. and Express Scripts—as well as related members of each PBMs' broader corporate family. Plaintiffs assert claims for public nuisance, violation of RICO (18 U.S.C. § 1961 *et seq*), and violation of various New York consumer protection statutes.

Relevant to the instant motions, defendant OptumRx, Inc.—which does not challenge the Court's personal jurisdiction over it—is primarily a PBM which provides formulary and utilization management ("UM") services. The two moving Defendants, which are members of the Optum corporate family, provide various ancillary or supporting services—in this instance, data analytics.

**Personal Jurisdiction**

MDL Transferee Courts analyze issues of federal law under the law of the Circuit in which they sit. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-02804, 2019 WL 2468267, at *10 n.15 (N.D. Ohio Apr. 1, 2019) (docket no. 1499) (citing *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003)), *report and recommendation adopted in relevant part*, No. 1:17-MD-2804, 2019 WL 3737023, at *2–3 (N.D. Ohio June 13, 2019) (docket no. 1680).

Federal courts exercise two primary kinds of personal jurisdiction: general and specific. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction exists only if a defendant can be "fairly regarded as at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[matic] . . . bases for general jurisdiction.'" *Id.* Neither

2

Plaintiff alleges that either Defendant is at home in New York.[4] Thus, the Court cannot exercise general jurisdiction over the Defendants.

Specific personal jurisdiction permits a court to assert personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014); *accord Ford*, 592 U.S. at 359–60. Ascertainment of minimum contacts is a fact-based inquiry, and Courts may permit limited jurisdictional discovery or hold an evidentiary hearing to determine whether a defendant has sufficient contacts with a forum for the court to exercise jurisdiction over it. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Rather than authorize jurisdictional discovery and analyze minimum contacts, however, Plaintiffs assert the Court can and should instead exercise personal jurisdiction through RICO's nationwide service provision.[5]

In the Sixth Circuit, "[u]nder Federal Rule of Civil Procedure 4(k)(1)(C), '[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute.'" *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 438 (6th Cir. 2022) (citing *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 395–96 (6th Cir. 2021)). "Indeed, Congress can authorize nationwide service of process in a regulatory statute permitting

---

[4] OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are organized under Delaware law. OptumInsight, Inc. has its principal place of business in Minnesota and OptumInsight Life Sciences, Inc. has its principal place of business in Massachusetts.

[5] In previous instances in this MDL where a defendant challenged this Court's personal jurisdiction over it, the Court permitted limited jurisdictional discovery. *See, e.g.*, Docket nos. 1512, *adopted in part and reversed in part*, docket no. 1542; and 3180. Here, Plaintiffs similarly request that, if the Court concludes it cannot exercise personal jurisdiction based on RICO's nationwide service of process provision, the Court should hold Defendants' motions in abeyance and permit jurisdictional discovery into Defendants' suit-related contacts with the forum. As set forth below, however, the Court concludes it does have personal jurisdiction over Defendants via RICO's nationwide service provision, 18 U.S.C. § 1965(b), so jurisdictional discovery to establish minimum contacts with the forum is unnecessary.

claimants to sue a defendant in any of the federal district courts in the country." *Id.* In *Peters*, the Sixth Circuit found that, "[w]hen a plaintiff brings a civil RICO action in a district court where personal jurisdiction can be established over at least one defendant, nationwide summonses can be served on other defendants if required by the ends of justice." *Peters*, 40 F.4th at 440 (citing *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006)). The Sixth Circuit explicitly adopted the "forum-state approach" and held that 18 U.S.C. § 1965(b) of the RICO statute "governs service over out-of-district defendants." *Id.* at 441.

Plaintiffs assert, and Defendants do not refute, that the Court has personal jurisdiction over at least one RICO defendant, OptumRx, Inc. Indeed, OptumRx, Inc. did not challenge the Court's exercise of personal jurisdiction over it and has therefore waived any argument otherwise. *See* Fed. R. Civ. P. 12(h)(l)(b)(ii) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . include it in a responsive pleading"); *King v. Taylor*, 694 F.3d 650, 656 (6th Cir. 2012) ("By operation of the Federal Rules of Civil Procedure, a defendant who files a motion under Rule 12, yet fails to raise in that motion the defense of insufficient service of process, forever 'waives' that defense."). Accordingly, the Court can exercise jurisdiction over the moving Defendants "if required by the ends of justice." *Peters*, 40 F.4th at 440.

**The Ends of Justice**

In *Peters*—when it adopted the "forum-state approach" articulated by the Tenth Circuit in *Cory*—the Sixth Circuit did not analyze the meaning of the "ends of justice" language from § 1965(b). S*ee id.* at 440 n.4 ("We need not, and therefore do not, delve into the meaning of § 1965(b)'s 'ends of justice' language."). In *Cory* itself, the Tenth Circuit also declined to offer a specific definition for the "ends of justice," concluding instead that "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." C*ory v. Aztec Steel Bldg., Inc.*, 468

4

F.3d 1226, 1232 (10th Cir. 2006). However, courts in this district have used the ends-of-justice standard described in *Peters* and *Cory* to analyze whether to exercise personal jurisdiction over an out-of-state defendant. *See, e.g., Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, No. 3:09-cv-1584, 2010 WL 8 19063, at *5 (N.D. Ohio Mar. 9, 2010); *Doe v. Varsity Brands, LLC*, No. 1:22-cv-02139, 2023 WL 4935933, at *16 (N.D. Ohio Aug. 2, 2023).

In *Rexam*, the court identified several factors other courts have considered when conducting an ends-of-justice analysis. *See Rexam*, 2010 WL 8 19063, at *5 (citing cases). Those factors include: "the desirability of having the whole action litigated in one court, the cost of the delay involved in transferring the case to another forum, and the general balance of hardships between plaintiff and defendant." *Id.* (cleaned up). Other courts within this district continue to use the *Rexam* factors. *See Varsity Brands*, 2023 WL 4935933, at *16.

The Defendants argue that finding personal jurisdiction over them would not meet the ends of justice because "the City's Amended Complaint does not include a single allegation connecting OptumInsight and OptumInsight Life Sciences to the alleged RICO enterprise." Reply at 1. Defendants further assert "the City's RICO allegations are insufficient to support exercising personal jurisdiction" over them, and "[a]n inadequately pleaded RICO claim against an out-of-district Defendant cannot support a finding that the 'ends of justice' require exercising personal jurisdiction." *Id.* at 5 (quoting *Anthony v. Van Over*, No. 3:22-CV-416, 2023 WL 6307960, at *5 (E.D. Tenn. Sept. 27, 2023)).

In arguing Plaintiffs failed to adequately allege their RICO claim against them, Defendants read Plaintiffs' complaints very narrowly. For example, Defendants: (1) assert "the City does not

5

mention OptumInsight or OptumInsight Life Sciences anywhere in its RICO count,"[6] *id.* at 6; (2) assume that the "Formulary and UM Enterprise" label (created by Plaintiffs) must dictate the entirety of the conduct Plaintiffs may plead in support of their RICO allegations, *see id.*; and (3) define terms, for example "PBM data," more narrowly than allowed by a more natural reading of the Complaint. *Id.* at 8.

Defendants are entitled to interpret Plaintiffs' complaint whichever way they choose, including in a light that favors their positions and arguments. However, the Court may not do so. Instead, the Court reads the Complaint as a whole and, for present purposes, "must view the pleadings and affidavits in a light most favorable to the plaintiff." *Peters*, 40 F.4th at 437–38 (quoting *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021)).

So viewed, the Court concludes the ends of justice are served by exercising personal jurisdiction over the Defendants. Plaintiffs' complaints each allege the moving Defendants were part of the same RICO conspiracy as the other defendants over which the Court does certainly have personal jurisdiction. For example, Plaintiffs allege that each moving Defendant: (1) comprises "Optum's data, research, and consulting arm, [which] . . . collects, processes, sells and profits from the vast data" collected from OptumRx's managed lives, Complaint (docket no. 6216-2) at ¶ 197; (2) "engages in data analytics," *id.* at ¶ 157; (3) "work[ed] together [with other PBM Defendants and Opioid Enterprise Manufacturers] on disseminating the Opioid Enterprise Manufacturers' marketing messages about prescription opioids," *id.* at ¶ 609; (4) used "the U.S. Mail or interstate wire facilities in furtherance of the fraudulent scheme, [and] agreed to provide

---

[6] The Court notes that Plaintiffs' Complaint "repeats, re-alleges, and incorporates each and every allegation set forth in all other paragraphs of these Supplemental and Amended Allegations . . . as if fully set forth herein" into the paragraphs alleging their RICO cause of action. Complaint (docket no. 6212-1) at ¶ 782.

the Opioid Enterprise Manufacturers with . . . prescribing data," *id.* at ¶ 677; and (5) "also provided the Opioid Enterprise Manufacturers with PBM data." *Id.* at 679.

Together, these allegations paint a picture of the moving Defendants working closely with OptumRx and opioid manufacturers in furtherance of the overarching goal of the alleged "Formulary & UM Enterprise—*i.e.*, the unrestricted increase in prescribing and dispensing of prescription opioids for the profit of the Opioid Enterprise Manufacturers and the PBM Defendants." *Id.* at ¶ 670. These allegations are sufficient to conclude the ends of justice support the exercise of jurisdiction over the moving Defendants.[7] As another court in this district put it: "It would not serve the ends of justice to require separate trials in different fora against parties who . . . both have close involvement in the events underlying the plaintiff's case." *Suarez Corp. Indus. v. McGraw*, 71 F. Supp. 2d 769, 778 (N.D. Ohio 1999). Accordingly, the Court concludes it can exercise personal jurisdiction over Defendants through RICO's nationwide service provision.

**Group Pleading**

To streamline their Complaints, Plaintiffs grouped and referred to the two OptumInsight Defendants together when describing the allegations against them.[8] *See* Complaint at ¶ 157. Defendants argue this shorthand convention constitutes impermissible group pleading, which further supports their contention that Plaintiffs fail to connect OptumInsight and OptumInsight Life Sciences to the alleged RICO enterprise.

---

[7] The Court adds that the moving Defendants have been participating in merits discovery and share the same counsel with OptumRx, Inc. Accordingly, dismissing them from the bellwether cases would create significant delays and the balance of hardships also favors retaining jurisdiction over them.

[8] Plaintiffs used the same shorthand convention in their Response. *See* Response at 14, n.8 ("as in the amended complaint, this brief uses 'Optumlnsight' to refer to both Optumlnsight, Inc. and Optumlnsight Life Sciences, Inc.").

This Court already addressed and rejected similar group pleading arguments in this MDL. *See In re Opiate Litig.*, 2019 WL 3737023, at *2–3 (docket no. 1680).

Defendants assert Plaintiffs never make any specific allegation against either Defendant independently. Thus, Defendants argue, Plaintiff cannot "establish that the Court has jurisdiction over each Defendant individually for each claim." Reply at 10. The cases cited by Defendants in support of this proposition, however, are all distinguishable. For example, in *Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *4 (S.D.N.Y. Mar. 8, 2023), the court found it could not assess the jurisdictional arguments based on the non-particularized allegations in the plaintiff's complaint.[9] The *Plusgrade* plaintiff grouped and referred to multiple defendants together in the Complaint, as the Plaintiffs have done here. However, the *Plusgrade* plaintiff also alleged unique and discreet actions that could only have been carried out by one member of the alleged group, yet did not identify with particularity which group member carried out any discreet act.

Here, by contrast, Plaintiffs allege a continuing course of conduct with multiple, repeatable acts, attributable to both Defendants. *See, e.g.*, Complaint at ¶ 354 ("from the early 2000s until 2015, OptumInsight, a sister company of OptumRx, also helped Purdue generate clinical studies, educational materials, and marketing programs to downplay the addictive properties of OxyContin and expand its use throughout the country"); ¶ 356 ("For example, in 2000 and 2001, OptumInsight (then known as Ingenix) worked with Purdue to develop algorithms and studies to identify chronic pain patients."); ¶ 362 ("From 2011 through at least 2015, Purdue and OptumInsight worked together to build a comprehensive, multi-step 'aspirational statement' and 'evidence-generated'

---

[9] The other case cited by Defendants, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111 (S.D.N.Y. 2021), is a securities litigation case where "group pleading" is a specific term of art that is not applicable to the present motion. *See In re Opiate Litig.*, 2019 WL 3737023, at *2–3.

strategies."); ¶ 369 ("From 2003 to at least 2012, OptumInsight conducted similar studies for other opioid manufacturers.").

The Defendants are punctilious in their briefing about keeping separate the identities and functions of each Optum corporate subsidiary, and suggest Plaintiffs' failure to meet the same standard in their complaints is a fatal weakness. But the Court concludes, as it did before, that, "where multiple defendants are alleged to have engaged in the same pattern of conduct or conspired in a fraudulent scheme," a plaintiff need not "reiterate its allegations against each defendant individually." *In re Opiate Litig.*, 2019 WL 2468267, at *13. Requiring a plaintiff to do so would "exponentially increase the length of pleadings while adding no substantive value." *Id.* Thus, Plaintiffs' use of the term "OptumInsight" to refer to both Defendants simultaneously does not amount to impermissible group pleading and does not provide a basis to dismiss for lack of personal jurisdiction.

**Pendent Personal Jurisdiction**

Having found the Court can assert personal jurisdiction over the moving Defendants with respect to Plaintiffs' RICO claims, the Court must next determine whether it may also exercise pendent personal jurisdiction over the Defendants with respect to Plaintiffs' state-law claims. There are two types of pendent personal jurisdiction: pendent-claim and pendent-party. *See Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 401 (6th Cir. 2021). "Pendent *claim* personal jurisdiction says that a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." *Id.* at 401 (emphasis in original). "Pendent *party* personal jurisdiction recognizes that a court's exercise of personal jurisdiction over one defendant as to a

particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs." *Id.* (emphasis in original).

The Sixth Circuit held in *Canaday* that pendent ***party*** personal jurisdiction does not exist. *See id.* ("If pendent party personal jurisdiction exists, *Bristol-Myers* should have come out the other way.") *Id*. (citing *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017)). However, because it was irrelevant to the holding, the Sixth Circuit's opinion in *Canaday* did not explicitly authorize or reject the application of pendent ***claim*** personal jurisdiction.

In *Canaday*, the Sixth Circuit wrote, "no federal statute or rule authorizes pendent claim or pendent party personal jurisdiction." *Id.* at 401–02. The court then quoted Wright & Miller's Federal Practice Treatise: "Since there is no federal statute on this subject, it seems clear that if it exists, pendent personal jurisdiction must be a creature of federal common law, or 'judge made,' as one court put it." *Id.* at 402 (quoting 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1069.7 (4th ed. 2021)). The Sixth Circuit did not, however, go on to say whether such federal common law exists in in the Sixth Circuit. *See, e.g., Varsity Brands*, 2023 WL 4935933, at *17 ("the [Sixth Circuit] stopped short of holding that pendent claim personal jurisdiction did not exist within the Sixth Circuit."); *Anthony*, 2023 WL 6307960, at *5 ("While other Circuits have addressed this issue and recognized the application of pendent personal jurisdiction, the Sixth Circuit has not taken a position on this doctrine, and this Court declines to . . . apply it here.") (citing *Canaday*, 9 F.4th at 402).

The PBMs urge the Court to interpret the Sixth Circuit's language as conclusive that pendent ***claim*** personal jurisdiction is not authorized in the Sixth Circuit. However, the Court declines to do so for at least three reasons:

First, the rationale behind a court's exercise of pendent claim personal jurisdiction remains just as strong now as before *Canaday*. *See J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 659 (N.D. Ohio 2019) ("it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions.") (quoting *Capitol Specialty Ins. Corp. v. Splash Dogs LLC*, 801 F.Supp.2d 657, 667 (S.D. Ohio 2011)).

Second, most other circuits permit the use of pendent claim personal jurisdiction over related state-law claims arising out of a common nucleus of operative facts. *See United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002) ("the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction") (collecting cases).

Third, courts in this district have permitted pendent claim personal jurisdiction after the Sixth Circuit's holding in *Canaday*. *See, e.g., Smith v. Swaffer*, No. 1:21-CV-2095, 2023 WL 35151, at *3 (N.D. Ohio Jan. 4, 2023) ("The Court exercises pendent personal jurisdiction over Mr. Swaffer with respect to those [pendent] claims. For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.").

Having found the exercise of pendent claim personal jurisdiction is *available* in the Sixth Circuit, it remains true that, for the Court to *exercise* that jurisdiction over state-law claims, those claims must arise out of the same common nucleus of operative facts. *See J.M. Smucker*, 420 F. Supp. 3d at 658 ("Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising

11

out of the same nucleus of operative facts."). The moving Defendants argue the state-law claims do not arise out of a common nucleus of operative facts. But, as described above, Defendants interpret Plaintiffs' complaint far more narrowly and unfavorably than the Court must. When viewed through the proper lens, the Complaint alleges facts sufficient to conclude that Plaintiffs' state-law claims arise out of the same common nucleus of operative facts as their RICO claims.

The thrust of both the RICO and state-law claims is that moving Defendants supported the Opioid Enterprise Manufacturers' efforts to fraudulently market prescription opioids. For example, Plaintiffs allege: "OptumInsight partnered with various opioid manufacturers to create studies, marketing, educational programs, and even identifying algorithms to simultaneously downplaying [*sic*] opioids' addictive properties and expand its use and availability throughout the country, including in New York," Complaint at ¶ 159; "OptumInsight was producing [studies] for Purdue to further legitimize the proliferation of opioids without adequate controls throughout the United States," *id.* at ¶ 370; "The nexus between data and detailing helped drive the formation of the common purpose of the Formulary & UM Enterprise," *id.* at ¶ 649; and "[T]he PBM Defendants once again supported the Opioid Enterprise Manufacturers' fraudulent marketing regarding prescription opioids," *id.* at ¶ 650.

And, with respect to their state-law claims, Plaintiffs further allege: "The PBM Defendants added [*sic*], abetted, and/or otherwise colluded and conspired with opioid manufacturers to commit the wrongful acts and practices which are 'deceptive or misleading in a material way [in violation of NY Gen. Bus. Law § 349],'" *id.* at ¶ 841; and "Defendants violated New York General Business Law § 350, because they engaged in false advertising in the conduct of a business, trade or commerce in this state," *id.* at ¶ 852.

Because these allegations arise out of a common nucleus of operative facts, the Court easily concludes it can exercise pendent claim personal jurisdiction over the OptumInsight Defendants with respect to Plaintiffs' state-law claims.

**Conclusion**

The Court finds it does have personal jurisdiction over the OptumInsight Defendants under RICO's nationwide service of process provision, and does have pendent claim personal jurisdiction over the related state-law claims. Accordingly, moving Defendants' Motions to Dismiss (docket nos. 5368 (Track 12) and 6128 (Track 22)) are **DENIED**.

        **IT IS SO ORDERED.**

          /s/ Dan Aaron Polster  July 28, 2025
          **DAN AARON POLSTER**
          **UNITED STATES DISTRICT JUDGE**