UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>PBM Cases | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

**REPLY SUPPORTING OPTUMRX, INC.'S
<u>MOTION TO PROHIBIT *EX PARTE* COMMUNICATIONS</u>**

OptumRx seeks "an order prohibiting *ex parte* communications between *the Special Masters and the Court*." ECF No. 6246 at 1 (emphasis added). That motion is grounded in established principles regarding *ex parte* communications between judges and specials masters. It is understood that "[e]x parte communications between a master and the court present troubling questions" (Fed. R. Civ. P. 53 advisory committee's notes to 2003 amendments) and "undermine[] confidence in the impartiality of the court" (*United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992)). Those concerns are particularly acute when a special master and the district court communicate *ex parte* about special master rulings that the parties are entitled to appeal *de novo* to the district court.

It is odd, then, that even as OptumRx's motion is directed to the Court and the Special Masters, the PEC has *opposed* OptumRx's motion, apparently confirming that it has an interest in these judicial *ex parte* communications. Then again, the PEC openly acknowledges a long history of *ex parte* discussions with the Special Masters—tracing back to the MDL's earliest days. *See, e.g.*, ECF No. 6084 at 16; *see also* ECF No. 5487 at 78:20–85:1 (statement by PEC that a request by Special Master Cohen to speak with the parties *ex parte* "is not an improper ex parte request"

and "[w]e have been doing this six, seven years"). OptumRx, by contrast, has never communicated *ex parte* with any Special Master or the Court.

OptumRx filed this motion in response to a misdirected email from Special Master Cohen intended for the Court. In the email, the Special Master "report[ed]" on the success of a "gambit" related to a discovery ruling issued against OptumRx, which he said "worked" because "[w]e" (the Special Master and the Court) would not receive an objection to the ruling. ECF No. 6246-1 at 3. In an affidavit offered in response to OptumRx's motion, Special Master Cohen suggests that the "gambit" was a simple meet-and-confer directive intended to *benefit* OptumRx. ECF No. 6250 ¶¶ 5–7. The record shows otherwise. The directive came on the heels of a disproportionately burdensome discovery ruling and an extraordinarily short compliance deadline that OptumRx explained would be "functionally impossible" to meet. ECF No. 6222; ECF No. 6246-2 at 4. Although the special master appointment order provides a default 21 days for parties to file objections to the Special Masters' rulings (and allows the Special Masters to *extend*, not shorten, objection deadlines) (ECF No. 69 at 4 n.2; *see also* Fed. R. Civ P. 53(f)(2)), Special Master Cohen unilaterally shortened OptumRx's objection deadline to just two business days (ECF No. 6222 at 2). After OptumRx pleaded for relief, including the default 21 days to object, Special Master Cohen granted only an additional 3 days to object and encouraged the parties to confer. Those events effectively compelled OptumRx to scramble to strike a deal with the PEC instead of objecting to the Special Master's ruling. Special Master Cohen's post-hoc explanation—which came only after OptumRx challenged the *ex parte* communications—does not undermine OptumRx's motion or justify the intended *ex parte* communication.

In any case, Special Master Cohen should not have sent an *ex parte* email to the Court regarding a discovery ruling to which OptumRx had a right object. Those kinds of *ex parte*

2

communications would be troubling in any litigation and have no place in this one. The Court should instead adhere to longstanding rules of professional conduct, fundamental fairness, and due process and enter an order prohibiting *ex parte* communications between the Special Masters and the Court regarding the Special Masters' rulings.

## ARGUMENT

I.  **THE GOVERNING RULES PROHIBIT *EX PARTE* COMMUNICATIONS ABOUT SPECIAL MASTER RULINGS THAT THE COURT MAY REVIEW.**

The Code of Judicial Conduct is clear: Special masters "should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."[1] Code of Conduct for United States Judges, Canon 3(A)(4); *see* Fed. R. Civ. P. 53 advisory committee's notes to 2003 amendments ("Masters are subject to the Code of Conduct for United States Judges, with exceptions spelled out in the Code."). That includes *ex parte* communications with the presiding judge. Indeed, the advisory committee notes to Rule 53 are replete with warnings against those *ex parte* communications given judges' supervision of, and ultimate decision-making authority over, special masters. *See* Fed. R. Civ. P. 53 advisory committee's notes to 2003 amendments (*ex parte* communications between special masters and the court "[o]rdinarily" are "prohibited" so that "parties know where authority is lodged at each step of the proceedings"); *id.* ("Ex parte communications between a master and the court present troubling questions.").

The PEC nonetheless suggests that the Code of Judicial Conduct and the ABA's Model Code of Judicial Conduct permit those types of *ex parte* communications between the Special

---

[1] Although there are limited exceptions to this rule for *ex parte* communications that are "authorized by law" or for non-substantive conversations about "scheduling, administrative, or emergency" issues "when the circumstances require it" (Code of Conduct for United States Judges, Canon 3(A)(4)), neither exception applies here.

3


Masters and the Court. That is wrong. The commentary to Canon 3(A)(4) suggests only that a judge may "consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities." Code of Conduct for United States Judges, Canon 3(A)(4) commentary;[2] *see also* ABA Model Code Jud. Conduct, Rule 2.9(A)(3) (similar). That commentary does not sanction *ex parte* communications between the judge and a special master when the judge is directly responsible *for reviewing* the special master's ruling. Indeed, in reciting the ABA Model Code, the PEC omits a key portion of ABA Model Rule 2.9(A)(3), which emphasizes that, in communicating "with court staff and court officials," a judicial officer must "*not* abrogate the responsibility personally to decide the matter." ABA Model Code Jud. Conduct, Rule 2.9(A)(3) (emphasis added). Just as an appellate court should not have *ex parte* discussions with a district court about matters on appeal (*see, e.g.*, *Rexford v. Brunswick-Balke-Collender Co.*,

---

[2] The PEC purports to quote the commentary to Canon 3(A)(4) (ECF No. 6251 at 2), but its block quote is inaccurate. The PEC's quotation reads as follows:

> The **proscription against** communications concerning a proceeding includes communications from lawyers, law teachers, and **other persons** who are not participants in the proceeding**, except to the limited extent permitted**. **It does not preclude a judge from consulting** with other judges**,** or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities.

ECF No. 6251 at 2 (misquoted language in bold). The commentary actually says:

> The **restriction on ex parte** communications concerning a proceeding includes communications from lawyers, law teachers, and **others** who are not participants in the proceeding. **A judge may consult** with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. **A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision. A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts.**

Code of Judicial Conduct, Canon 3(A)(4) commentary (language missing from the PEC's quotation in bold).

4

228 U.S. 339, 344 (1913)), a district judge must also refrain from *ex parte* discussions with special masters about rulings that the district judge may review.

The PEC also claims that the special master appointment order permits the types of *ex parte* communications that OptumRx asks this Court to prohibit. That is incorrect.[3] The order allows the Special Masters to communicate *ex parte* with the Court regarding (1) "logistics," (2) "the nature of [the Special Masters'] activities," (3) "management of the litigation," (4) "other procedural matters," and (5) "to assist the Court with legal analysis of the parties' submissions." ECF No. 69 at 3. None of those things encompasses special master rulings appealable to the Court, which are substantive matters that should be discussed only with counsel for all parties present.[4]

Nor do the cases the PEC cites support its position. The objection deemed "frivolous" in *Johnson v. SmithKline Beecham Corp.* was an objection to the volume of one special master's *ex parte* communications with the Court—there was no objection to the nature of the communications or any analysis by the Court regarding their propriety. 2025 WL 2233676, at *9 (E.D. Pa. Aug. 5, 2025). And contrary to the PEC's characterizations, none of its other cited cases endorses or

---

[3] OptumRx was not a party to the MDL when the Court entered the appointment order, nor would OptumRx have consented to the order had it been a party at the time. Rule 53's drafters made clear that "[c]are must be taken to make the order as precise as possible" because it "is vitally important in informing the master and the parties about the nature and extent of the master's duties and authority." Fed. R. Civ. P. 53 advisory committee's notes to 2003 amendments. The appointment order fails to meet that standard. It uses vague language permitting the Special Masters "to communicate ex parte with the Court at their discretion" about a wide variety of topics that relate to and bear on substantive matters. ECF No. 69 at 3. That blanket authorization invites doubt rather than providing clear guardrails to protect litigants and ensure a fair forum. Rule 53 warns that *ex parte* communications between special masters and judges present "troubling" concerns; the appointment order accentuates those concerns.

[4] The PEC's citation to Rule 53's advisory committee notes is also inapposite. The PEC emphasizes that "[a] master assigned to help coordinate multiple proceedings, for example, may benefit from off-the-record exchanges with the court about logistical matters." ECF No. 6251 at 2 n.1 (quoting Fed. R. Civ. P. 53 advisory committee's notes to 2003 amendments). But OptumRx's motion is about *ex parte* communications regarding rulings that the parties can appeal to the Court and that the Court must itself then adjudicate—matters that are substantive.

5

authorizes *ex parte* communications between judges and special masters as to special master rulings. On the contrary, in two of those cases, the courts expressly prohibited any type of *substantive ex parte* communications. *See In re Welding Rod Prods. Liability Litig.*, 2004 WL 3711622, at *3–4 (N.D. Ohio Nov. 10, 2004) (authorizing the special master to communicate *ex parte* about logistical issues but prohibiting any *ex parte* communications that "address the merits of any substantive issue"); *United States ex rel. Taylor v. Healthcare Assocs. of Tex. LLC*, 2023 WL 11987209, at *2 (N.D. Tex. Sept. 14, 2023) (permitting *ex parte* communications on "any matter" within the scope of "logistics" and "other appropriate procedural matters").[5]

## II. SPECIAL MASTER COHEN'S AFFIDAVIT DOES NOT ALLIEVATE CONCERNS ABOUT THE IMPROPER *EX PARTE* COMMUNICATIONS.

Special Master Cohen's affidavit omits the facts that warrant the relief OptumRx seeks. On July 10, 2025, Special Master Cohen ruled in favor of the Plaintiffs on a discovery dispute. ECF No. 6222. That ruling ordered OptumRx to, among other things, provide an interrogatory-like response setting out various details about its clinical program offering (including offer date, acceptance date, price, and more) over a 30-year period for more than 80 clients in Rochester. ECF No. 6222 at 2. Plaintiffs requested that information for the first time in a letter sent to Special Master Cohen on July 9, 2025 with the agenda for an upcoming hearing. Special Master Cohen gave OptumRx two weeks to comply with his ruling and only two full business days—instead of

---

[5] In the three other cases, the courts violated Rule 53 by not identifying the scope of permissible special master *ex parte* communications. *See In re Flint Water Cases*, 2018 WL 11290659, at *2 (E.D. Mich. July 31, 2018) (authorizing special master *ex parte* communications "at any time"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 13694961, at *2 (S.D.N.Y. Dec. 29, 2020) (authorizing special master *ex parte* communications "as he deems appropriate"); *Moussouris v. Microsoft Corp.*, 2017 WL 1652910, at *1 (W.D. Wash. May 2, 2017) (authorizing *ex parte* communications between special masters and the court "without restriction"); *see also* Fed. R. Civ. P. 53(b)(2)(B) (requiring the appointment order to state "the circumstances, if any, in which the master may communicate ex parte with the court or a party"). Those decisions are entitled to no credit or deference.

6

the 21 calendar days provided for in the special master appointment order[6]—to file an objection with the Court. *Id.*

OptumRx's counsel immediately wrote to Special Master Cohen asking to be heard at the hearing scheduled for the next afternoon, explaining that compliance with the ruling was "functionally impossible" and that OptumRx "would have no choice but to file an objection" with the Court. ECF No. 6246-2 at 4. The following day, at the hearing, OptumRx's counsel explained the issues with the ruling that would make compliance impossible, asked Special Master Cohen to modify his ruling, and asked at minimum that he give OptumRx the full 21 days to object. *See, e.g.*, ECF No. 6250-1 at 118:19–125:4, 140:15–140:20. Special Master Cohen refused to modify his ruling and gave OptumRx just three additional days to file an objection. *Id.* at 129:18–130:2, 137:5–10. Special Master Cohen also directed OptumRx to meet-and-confer with the PEC regarding the dispute during the pendency of the objection window. *Id.* at 133:25–134:7.

Facing that disproportionately burdensome discovery order, an impossible compliance deadline, and a short time frame to object, OptumRx was forced to scramble over the weekend to strike a deal with Plaintiffs to secure an extension of OptumRx's deadline to comply with Special Master Cohen's ruling (with significant caveats as to what OptumRx could actually do to comply). ECF No. 6246-2 at 3. That arrangement has imposed an enormous burden on OptumRx and has required hundreds of hours from OptumRx's attorneys.

In his intended *ex parte* communication to the Court, Special Master Cohen described his ruling as a "gambit"—which is defined as "a calculated move," a move "to gain an advantage in

---

[6] The appointment order gives parties 21 calendar days to file an objection to any ruling by the Special Masters. ECF No. 69 at 4; *see* Fed. R. Civ P. 53(f)(2). Although the appointment order allows the Special Masters to *extend* that 21-day deadline to a longer period (*see* ECF No. 69 at 4 n.2), the order does not authorize the Special Masters to *shorten* the deadline.

position." *Gambit*, Merriam-Webster, https://www.merriam-webster.com/dictionary/gambit (last visited Aug. 20, 2025); *see also Gambit*, Oxford English Dictionary (2d ed. 1989, updated Mar. 2025) ("A plan, stratagem, or ploy that is calculated to gain an advantage, esp. at the outset of a contest, negotiation, etc."). And in his affidavit, Special Master Cohen admits that his ruling was intended "to prevent the Court from having to spend scarce judicial resources on considering an objection." ECF No. 6250 ¶ 6. That conduct—engaging in tactical moves to gain an advantage over OptumRx and place OptumRx in a position of procedural unfairness to keep OptumRx from seeking review of the ruling—is inappropriate for any judicial officer. *See* Code of Conduct for United States Judges, Canon 3(A)(4) commentary (judges and special masters "may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts"); Code of Conduct for United States Judges, Canon 3(A)(4)(b) (explaining that "no party [should] gain a procedural, substantive, or tactical advantage as a result of [an] ex parte communication").

Whatever Special Master Cohen's proffered explanation, he should not have held *ex parte* discussions with the Court about his "gambit." What is more, the email refers to the "gambit" as if the Court already knows what Special Master Cohen is speaking about, indicating that other *ex parte* conversations likely preceded it.[7] Special Master Cohen gave a "report" about how "pleased" he was that the "gambit" "worked" and that "*We*"—referring to both the Court and the Special Master "will not be receiving an objection to *my* ruling." ECF No. 6246-2 at 2 (emphasis added). It is unreasonable to construe that correspondence as having nothing to do with the substance of the underlying dispute. That communication, and others like it, are prohibited.

---

[7] In his affidavit, Special Master Cohen admits that he contacted the Court about these matters before sending his "gambit" email. ECF No. 6250 ¶ 9.

8

In his late-filed affidavit, Special Master Cohen explains that the word "gambit" in his email was a reference to his directive that the OptumRx meet-and-confer with the PEC about the discovery ruling during OptumRx's objection window. ECF No. 6250 ¶¶ 5–7. He suggests that the "gambit" was meant "to obtain *for OptumRx* what it wanted"—which, he claims, was to avoid the need to lodge an objection with the Court.[8] *Id.* ¶¶ 5–6 (emphasis in original). No reasonable observer would credit that explanation. The transcript from the hearing confirms that the Special Master's overwhelmingly burdensome discovery ruling with a "functionally impossible" date of compliance coupled with an objection period dramatically shorter than the default period under the Federal Rules and the appointment order formed the "gambit."

## CONCLUSION

Rules against *ex parte* communications exist for a reason. The Court should grant OptumRx's motion and issue a standing order prohibiting *ex parte* communications between the Special Masters and the Court regarding the Special Masters' rulings. OptumRx again reiterates that it does not consent—and expressly objects—to any *ex parte* communications.

---

[8] In support of that assertion, Special Master Cohen points to a statement by OptumRx's counsel asking Special Master Cohen to modify his ruling (ECF No. 6250 ¶ 2)—but that statement is presented wildly out-of-context from the chain of events that prompted it. The only reason OptumRx's counsel asked Special Master Cohen to modify his ruling was because it imposed a disproportionate discovery burden on OptumRx and ordered OptumRx to provide information to the PEC on a timeline that was "functionally impossible." ECF No. 6246-2 at 4. In other words, inasmuch as OptumRx's counsel sought to "eliminate [OptumRx's] need to file an objection," it reflected OptumRx's need for a modification of the underlying ruling *itself*. OptumRx obviously did not "want" to be forced into short-fuse negotiations with the PEC over a weekend to meet the Special Master's abbreviated objection deadline.

Dated: August 27, 2025.

                                          Respectfully submitted,

                                          */s/ Brian D. Boone*
                                          Brian D. Boone
                                          **ALSTON & BIRD LLP**
                                          1120 South Tryon Street, Suite 300
                                          Charlotte, NC 28203
                                          (704) 444-1000
                                          brian.boone@alston.com

                                          D. Andrew Hatchett
                                          **ALSTON & BIRD LLP**
                                          1201 West Peachtree Street NW, Suite 4900
                                          Atlanta, GA 30309
                                          (404) 881-7000
                                          andrew.hatchett@alston.com

                                          *Attorneys for OptumRx, Inc.*