```
 1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION AT CLEVELAND

 3      -------------------------------X
        IN RE:                         :    Case No. 1:17-md-2804
 4                                     :
        NATIONAL PRESCRIPTION          :
 5      OPIATE LITIGATION              :
                                       :    Wednesday, September 10,
 6                                     :    2025
                                       :
 7                                     :
                                       :
 8                                     :    STATUS CONFERENCE
                                       :
 9      -------------------------------X

10

11

12                        TRANSCRIPT OF PROCEEDINGS

13

14            BEFORE THE HONORABLE DAN AARON POLSTER

15

16               SENIOR UNITED STATES DISTRICT JUDGE

17

18

19

20      Official Court Reporter:       Heather K. Newman, RMR, CRR
                                       United States District Court
21                                     801 West Superior Avenue
                                       Court Reporters 7-189
22                                     Cleveland, Ohio 44113
                                       (216) 357-7035
23

24

25      Proceedings recorded by mechanical stenography; transcript
        produced by computer-aided transcription.
```

```
 1    APPEARANCES:

 2    For the Plaintiffs Executive Committee:

 3          SPANGENBERG, SHIBLEY & LIBER
            BY:   PETER H. WEINBERGER, ESQ.
 4          1001 Lakeside Avenue, Suite 1700
            1900 East Ninth Street
 5          Cleveland, Ohio 44114
            (216) 696-3232
 6
            FARRELL & FULLER
 7          BY:   PAUL FARRELL, JR., ESQ.
            270 Munoz Rivera Avenue, Suite 201
 8          San Juan, PR 00918
            (939) 293-8244
 9
      On behalf of OptumRX:
10
            ALSTON & BIRD
11          BY:   BRIAN D. BOONE, ESQ.
            1120 South Tryon Street, Suite 300
12          Charlotte, NC 28203
            (704) 444-1000
13
      On behalf of Express Scripts:
14
            QUINN EMANUEL URQUHART & SULLIVAN, LLP
15          BY:   JONATHAN COOPER, ESQ.
            1300 I Street, NW, Suite 900
16          Washington, DC 20005
            (202) 538-8000

17

18                        *   *   *   *   *

19

20

21

22

23

24

25
```

```
 1        CLEVELAND, OHIO; WEDNESDAY, SEPTEMBER 10, 2025; 1:10 P.M.
 2                              --oOo--
 3                        P R O C E E D I N G S
```

4           THE COURT:  All right.  Good afternoon.
5   Please be seated.
6           There's about as many people as we had at the very
7   beginning eight years ago.
8           All right.  Well, this is our regular status
9   conference with PEC, the plaintiffs, and the two PBMs.
10          We've got the bellwethers moving forward.  I --
11  everyone's working cooperatively.  I think Special Master
12  Cohen has scheduled a discovery conference, has moved it
13  from this afternoon to tomorrow here in the courtroom.
14          I just had a few issues to discuss.  There really
15  wasn't anything burning from the status reports.
16          Special Master Cohen advised me that one of the issues
17  that has surfaced is the issue of authenticity of a
18  substantial number of documents that the plaintiffs received
19  in discovery from Purdue.  So counsel's represented that
20  these documents existed in Purdue's files.  And the
21  document, on its face, reflects either that it was sent by
22  Purdue to one of the two PBMs or received from Purdue, sent
23  by one of the two PBMs and the PBMs have diligently searched
24  and they can't find any evidence of the document in their
25  files.

1  So, this is my suggestion, because it makes no sense
2  to spend a lot of time and money now litigating it, or even
3  worse, tie up the judge who's going to have to try these
4  cases and -- in trial time or jury time, whatever, on
5  authenticity.
6  Ballpark, how many documents are we talking about in
7  this category, in other words, where the plaintiffs received
8  it from Purdue, the PBMs have looked and said, hey, we can't
9  find any record of having received it or sent it?
10  MR. BOONE: Your Honor, I think it's --
11  THE COURT: Are we talking a hundred? A
12  thousand? A hundred thousand? What -- Brian, what do you
13  think?
14  MR. BOONE: I think it's down to seven, for
15  OptumRx, that's in dispute.
16  THE COURT: Just seven documents?
17  MR. BOONE: Just seven, yeah.
18  THE COURT: Well, that's pretty small.
19  MR. COOPER: Your Honor, this is
20  Jonathan Cooper for Express Scripts.
21  Similarly for Express Scripts, my understanding is
22  that it's a handful of documents that the PEC has raised
23  with Express Scripts that we have been unable to
24  authenticate.
25  THE COURT: All right. Well, I thought it was

1  a large number.
2       All right.  This is my suggestion.  I mean, that --
3  all right.  I'm not -- I'm not suggesting that Optum or
4  Express Scripts stipulate to the authenticity of a document
5  that they -- you know, they can't verify, but I am going to
6  require that you provide to Special Master Cohen any
7  evidence that you have that the document is not authentic.
8       You know, if you say, for example, all right, this is
9  the form OptumRx used in 2010, and this document's in a
10 different form and it doesn't look like anything we
11 created -- all right -- well, whatever.  If you have any
12 affirmative evidence that the document's not authentic, you
13 provide it to Special Master Cohen for each of the seven to
14 10 documents, whatever, and if you have made -- made any
15 such showing, then the plaintiffs can respond in any way
16 they can and Special Master Cohen will make his ruling.
17      And for any of the documents for which Optum or
18 Express Scripts doesn't have anything affirmatively to show
19 it wasn't authentic, Special Master Cohen will look at what
20 the PEC has provided and he'll make his ruling and that will
21 be that.
22      All right.  I think that's, you know, simplest way to
23 do it and I -- somehow I thought it was a large number of
24 information.  I'm actually glad it's a small number.  So,
25 we'll just do it that way.

1	MR. FARRELL: Your Honor, this is
2	Paul Farrell.
3	THE COURT: Yes, Paul.
4	MR. FARRELL: How are you?
5	THE COURT: Okay.
6	MR. FARRELL: I think the body of documents,
7	at least from what I understand on the Optum side, is
8	broader than a couple, but it belies -- there's another
9	problem here. You're not going to preside over the
10	bellwether this time and so you won't be making the
11	evidentiary decisions and based on --
12	THE COURT: Well, I'm suggesting
13	Special Master Cohen is going to make the authenticity.
14	This is not admissibility. All right. I have no
15	idea -- I mean, the plaintiffs, if they want to use it, have
16	to have a valid basis that it's admissible and if there's an
17	objection to admissibility, Optum or, you know, Express
18	Scripts can raise that with the trial judge. But
19	authenticity, Special Master Cohen's going to make his
20	decision and that will be that.
21	MR. FARRELL: And so based on what I'm hearing
22	from you, you believe that a ruling by this Court on
23	authenticity would be binding on a remand court at trial.
24	THE COURT: All right. Paul, look. . . the
25	transferee judge is not legally bound to accept any of my

1    rulings.  If he or she wants to say Polster's an idiot and
2    I'm not going to follow anything he said and I'm going to do
3    it all myself, that judge has the right to do it.  He can
4    reject every *Daubert* ruling I make.  He can redo every
5    dispositive motion ruling I make.  He can say, I don't care
6    what Polster or Cohen said on authenticity, I'm going to
7    look at -- you know, if -- if OptumRx objects to a
8    plaintiffs' document or the plaintiffs object to Optum's
9    document, I'm going to revisit it.  Okay?
10        But on the other hand, if he says I think Polster and
11   Special Master Cohen did a pretty good job and I'm following
12   them, they can do it.  Okay?
13        So I'm -- it will be like any other ruling I make.
14            MR. COOPER:  Your Honor, this is
15   Jonathan Cooper for Express Scripts.
16            THE COURT:  Yes, Jonathan.
17            MR. COOPER:  Just for the record, Express
18   Scripts objects to rulings by this Court on anything going
19   to trial, admissibility, which, in our view, would include
20   authenticity.  So --
21            THE COURT:  Well, you can object.
22            MR. COOPER:  -- I understand your ruling --
23            THE COURT:  You can object.
24            MR. COOPER:  -- but I just want to put our
25   objection on the record to that.

1           THE COURT: The judge wants to follow it, he
2   can follow it, or he or she can follow it. Okay?
3           MR. BOONE: And I'll make the same objection
4   for OptumRx, Your Honor.
5           THE COURT: Okay. Fine.
6           MR. WEINBERGER: Your Honor, this is
7   Pete Weinberger.
8       So, you see what we're dealing with, and so I have a
9   solution to that, and that is that we're going to use, at
10  the appropriate time, fairly soon, an offensive motion in
11  limine on these issues and have -- so that the Court can
12  issue a formal ruling, understanding that the trial --
13  ultimately the trial judge can accept or reject that.
14      But we -- we -- the -- part of the purpose of the MDL,
15  and working up the case before the MDL judge, is to provide
16  the parties some certainty in terms of --
17          THE COURT: Well, I agree, and so that's why I
18  want to do it this way and so Special Master Cohen, if
19  there's a contest, you know, whatever, he'll make a ruling
20  and if -- and if either OptumRx isn't happy with it, they
21  can appeal it to me. If the plaintiffs aren't happy, they
22  can appeal it to me and I'll make a ruling and I'll have a
23  ruling on it and, again, it will be there and if the
24  transferee judge wants to follow it, it's there. If he
25  wants to revisit it, like any other -- any other ruling I

1       make, the transferee judge can choose to revisit it.  All
2       right?
3              I mean, even a dispositive motion, a *Daubert* motion --
4       all right? -- the transferee judge can say, you know, either
5       I think it's wrong or I don't -- I don't -- I want to
6       revisit it and make my own decision.  Judge is free to do
7       it.  But they'll be a ruling so. . . we'll just follow that.
8                    MR. BOONE:  I just want to put on the record,
9       it's their burden to authenticate the documents, not our
10      burden to disprove the authenticity of the documents.
11                   THE COURT:  Well, they have authenticated --
12      Mr. -- Brian, it's -- prima facie, it has been
13      authenticated.  If it has -- it's been authenticated by
14      Purdue.  Purdue's represented, we found this document in our
15      files.  The document, on its face, shows that it either came
16      from your client or Express Scripts or was sent by Purdue to
17      your client or Express Scripts.  So they made a prima facie
18      showing.  All right?
19             Now, if you have anything to show that it's not
20      authentic, you put it forward and then they can respond.  If
21      you don't, then Special Master Cohen will make his ruling.
22             And if you think his ruling is wrong, you can appeal
23      it to me, like you've appealed certain other ones, and I'll
24      make a de novo review.  Okay?
25             You're correct, but they've -- in my opinion, they've

1    made a prima facie showing of authenticity.  If the
2    document, on its face, doesn't show that it came from
3    OptumRx, they don't have a showing that, you know -- I mean,
4    it may be authentic from Purdue, but it's -- but there's no
5    basis to believe that it came from OptumRx, just wave a
6    document from Purdue, but presumably the document itself
7    shows that it either was sent by your client or was sent by
8    Purdue to your client.
9         So they've got the prima facie showing, so that's how
10   we'll do that.
11        All right.  The motions for leave to amend, this is
12   what I plan to do:
13        I'm going to issue a series of I'll call them
14   amendment rulings dealing with specific objections that the
15   PBMs have made, one or both of them have made.  I'll go back
16   a step.
17        Everyone knows or should have known that I'm not going
18   to allow 800 amendments adding the PBMs, nor am I going to
19   allow zero.  Okay?  And if I did one or the other, the
20   Sixth Circuit would reverse me in a heartbeat.  So that
21   isn't going to happen.  Some will be allowed and some will
22   be disallowed.  All right?  And, you know, probably no one's
23   going to be happy.
24        So what I'm going to do is make a series of -- issue a
25   series of rulings and then I'm going to request that the

1   parties apply those rulings, which will result in the
2   plaintiffs withdrawing some of their motions and the
3   defendants withdrawing some of their objections and then
4   we'll be left with some number and that's what we'll have.
5       And I have no idea what that number's going to be.
6   It's not going to be 800, it's not going to be zero, but,
7   again, there isn't any way that any such ruling would be
8   affirmed, so -- and I think everyone knows that. So
9   that's -- will be my request and then we'll -- left with
10  some number and that will be that.
11      And we'll issue these rulings as soon as I'm satisfied
12  they're the best I can make.
13      I always raise the possibility of settlement. I'm
14  doing it again.
15      I know the parties, you know, so far have shown no
16  real interest and they want to keep litigating. That's
17  fine. We've got the best lawyers in the country on both
18  sides, so that's fine, but trust me, neither the plaintiffs
19  nor the PBMs can litigate their way out of this. At the end
20  of the day, somewhere down the road, there will be some
21  resolution, like there has been with every other --
22  virtually every other defendant, or at least there are
23  discussions. Okay? This seems to be the only I'll call
24  category of defendants -- there are two -- where there
25  aren't even discussions, but I think there should at least

1    be discussions.

2    So, again, you know, if the parties want me to do it,
3    I'm happy to do it. Mr. Borden's happy to do it.
4    Fouad Kurdi and Eric Green have done Yeoman's work, and
5    there may be other people out there, so I'm just -- I will
6    continue to raise it because at the end of the day, I
7    believe it's going to happen.

8    And the parties need to understand that I'm not going
9    to keep this MDL open indefinitely. I'm trying mightily to
10   wind it down. If I were better or smarter, it would have
11   been over already, but I'm not. But I'm working at it, and
12   it will happen, and once that happens, it will be very, very
13   difficult for these parties to fashion any sort of a global
14   settlement because you'll have a whole lot of different
15   federal judges around the country, each with one case. And
16   none of them are going to be -- have the wherewithal or the
17   interest or the ability to bring everyone together and do a
18   global settlement. They can talk about their individual
19   case, but that is -- no one's going to want to settle one
20   case. So the opportunity to do it -- and I'm looking at the
21   plaintiffs and the defendants -- you know, you've got a
22   window of opportunity, but that window isn't going to be
23   open indefinitely, and I want everyone to know that.

24   All right. That covers what I had other than
25   scheduling our next session, and I know there really wasn't

1   anything else that I saw from either side's status report,
2   but we've got all these fine lawyers here and if there's
3   anything that either side thinks they want to raise with me
4   now, the floor is open.
5          (Brief pause in proceedings.)
6               THE COURT:  I'm always hesitant to say that
7   because I'm not sure what might come up, but I think any
8   judge who didn't would be foolish so. . .
9          All right.  This is a big expense and inconvenience
10  for everyone to come in.  Now, I know you're actually going
11  to be sitting with Special Master Cohen, but my guess is, as
12  important as those issues are, it probably doesn't require
13  the personal appearance of. . . I haven't counted up -- we
14  probably have 40 lawyers here.  So I'm suggesting the next
15  one be by Zoom unless someone feels we should be in person.
16         All right.  I figured that so. . . doing ballpark
17  60 days, which seems to work, so I think we'll stick with
18  that.
19         I'm suggesting Friday morning, November 7th, at
20  10:45 -- or maybe we'll make it 11:00 -- maybe 11 o'clock.
21  11 o'clock will be easier to remember -- Friday,
22  November 7th.
23         And then we'll have status reports, noon on Wednesday,
24  the 5th.  Two days in advance has worked out well.
25         Okay.  Well, this was quick but, again, I appreciate

1   everyone's working very hard and working, you know,
2   professionally.
3          Obviously you've got issues and, you know, this is,
4   you know, the big leagues, so the -- and this is high stakes
5   litigation. I understand you're not going to agree on
6   everything, but at least people seem to be working
7   professionally, which is important.
8          Okay. Well, I didn't have anything else, so last
9   call.
10         I don't want someone to walk out saying, "Darn it, I
11  wanted to raise something and I didn't," because it will be
12  till November 7th we have an opportunity.
13              SPECIAL MASTER COHEN: I'm going to keep them
14  here for a couple hours, Judge. They'll have another
15  chance.
16              THE COURT: Are you meeting today too?
17              SPECIAL MASTER COHEN: Yes.
18              THE COURT: Oh. It's today and tomorrow?
19              SPECIAL MASTER COHEN: Yes.
20              THE COURT: Oh, okay. Fine.
21        All right. Well, then, my part's adjourned.
22              COURTROOM DEPUTY: All rise.
23      (Proceedings adjourned at 1:28 p.m.)
24  ///
25  ///

```
 1                    C E R T I F I C A T E

 2        I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
 3   prepared from my stenotype notes.

 4        /s/ Heather K. Newman                    9-10-2025
          HEATHER K. NEWMAN, RMR, CRR                 DATE
```