UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*City of Rochester* v. *Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*City of Ogdensburg* v. *Purdue Pharma, L.P.*, No. 1:19-op-45852 (Track 22) | MDL No. 2804<br><br>Case No. 1:17-md-2804-DAP<br><br>Judge: Dan Aaron Polster |

**OPTUMRX, INC.'S OBJECTION TO SPECIAL MASTER RULING DENYING OPTUMRX, INC'S MOTION FOR A PROTECTIVE ORDER REGARDING THE DEPOSITION OF DAVID CALABRESE**

In accordance with the Appointment Order (ECF No. 69), OptumRx, Inc. objects to the attached Special Master ruling denying OptumRx's motion for a protective order regarding the deposition of David Calabrese, which is noticed to occur on October 9, 2025.[1] Plaintiffs have refused to reasonably coordinate Mr. Calabrese's deposition in order to set up a situation where Mr. Calabrese will have to sit for deposition twice. Indeed, notwithstanding that the very same firm involved in Mr. Calabrese's MDL deposition for the PEC also represents Jefferson County in its related action against OptumRx, those same lawyers now ask that the Court bless their plan to take two bites at the apple: first, when the PEC deposes Mr. Calabrese this coming Thursday, and

---

[1] The Appointment Order provides that "any party may file an objection to an order, finding, report, ruling, or recommendation by the Special Masters," including "any formal order, finding, report, ruling, or recommendation on the record before a court reporter," within 21 calendar days. Appointment Order at 4. Here, given upcoming deadlines, the Special Master ordered objections to his October 6 ruling be filed by 5:00 p.m. on the same day.

second, when their co-counsel in Jefferson County goes back for seconds to depose Mr. Calabrese again at some undetermined point in the future.  That should not be allowed.

The PEC's and Jefferson County's gamesmanship is all the more galling given OptumRx's efforts to ensure that both the PEC and Jefferson County could take Mr. Calabrese's deposition this coming Thursday in a coordinated manner.  Promptly after receiving Jefferson County's cross-notice, OptumRx negotiated in good faith with Jefferson County to ensure that it could take Mr. Calabrese's testimony at his upcoming deposition, seemingly overcoming several points of dispute amongst the parties.  OptumRx and Jefferson County met and conferred twice last week, each offered compromised positions that appeared acceptable to the other, and OptumRx was of the understanding that the parties had reached an agreement in principle last Wednesday, pending a formal agreement in writing.  Nonetheless, Jefferson County waited until late Friday to renege on that agreement, insisting that it be able to sit on the sidelines during this Thursday's deposition and later be able to require Mr. Calabrese to sit for deposition a second time.  Only then did OptumRx take the position that Mr. Calabrese's deposition should be rescheduled to allow for appropriate coordination.

Although there would be no prejudice to plaintiffs from delaying Mr. Calabrese's deposition, plaintiffs have continued to insist that the deposition move forward now and reserve the right to depose Mr. Calabrese later in the Jefferson County action.  There is no basis for that position.  Indeed, as OptumRx has explained to plaintiffs repeatedly since Friday, the parties should postpone Mr. Calabrese's deposition until a single deposition is coordinated.  That decision was appropriate, both procedurally and substantively.  OptumRx provided its notice of postponement four days in advance of the deposition, as permitted by the governing deposition protocol.  (ECF No. 643 at 2.)  And it is well established that duplicative depositions "are

-2-

disfavored because of the cost and burden, and because they provide the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information." *Weddington* v. *City of Detroit*, 2022 WL 16856085, at *1 (E.D. Mich. Nov. 10, 2022) (cleaned up).

Special Master Cohen denied OptumRx's motion for a protective order and held that Mr. Calabrese's deposition should go forward this Thursday, as originally scheduled. OptumRx respectfully objects. Because good cause exists for a protective order, OptumRx respectfully requests that the Court order that Mr. Calabrese's October 9 deposition is postponed until after it is properly coordinated to avoid waste and duplication.

## BACKGROUND

When Jefferson County's case was remanded to Missouri state court over a month ago, the county's counsel was well aware that Mr. Calabrese's deposition was scheduled for October 9. But the county waited until September 25 to cross-notice Mr. Calabrese's deposition—one day after Motley Rice entered appearances in the *Jefferson County* case. (Ex. 1 (Cross-Notice).) OptumRx promptly scheduled a meet and confer with Jefferson County two business days later, Monday, September 29.

During the September 29 meet and confer, the parties made good progress toward an agreement that would allow the county to examine Mr. Calabrese at his October 9 deposition. The county's counsel asked for two hours combined to ask questions on behalf of the City of Martinsville and Jefferson County, but made clear that he likely would not need all that time. The county's counsel also agreed that any re-production of MDL documents would need to be subject to the July 19, 2022 stipulation entered in *Jefferson County*, which states: "The County will not seek discovery focused primarily on the dispensing activities of any Optum Entity. OptumRx may withhold from production any document or information focused primarily on the dispensing

-3-

activities of any Optum Entity and may redact from an otherwise responsive document information focused primarily on the dispensing activities of any Optum Entity." (Ex. 2 ¶ 6 (7/19/2022 Stipulation).)

The parties met and conferred again on October 1. During that meet and confer, OptumRx laid out a proposal that would allow Mr. Calabrese's deposition to go forward on October 9. *First*, OptumRx's counsel agreed to deem Mr. Calabrese's custodial file from the MDL reproduced into *Jefferson County*, subject to July 19, 2022 stipulation barring production of documents related to dispensing. The county's counsel agreed to that condition during the meet and confer. *Second*, OptumRx's counsel requested that the county agree to depose Mr. Calabrese only once and not seek to reopen the deposition. The county's counsel also agreed to that condition, so long as the PEC's questioning (within the bounds of the stipulation) would be deemed part of the *Jefferson County* record. OptumRx agreed. *Third*, OptumRx proposed that the City of Martinsville and Jefferson County combined take one hour of testimony, so as to avoid extending the deposition to such an extent that may require a second day, which would be particularly hard to schedule on such short notice. The county's counsel made clear that he did not anticipate needing a full two hours to question Mr. Calabrese, but asked for a "little bit of good-faith flexibility" if he went slightly over one hour. Again, OptumRx agreed. The parties ended the meet and confer agreeing that they were in the same "ballpark" and generally "on the same page." That same day (Wednesday, October 1), OptumRx's counsel sent a written proposal closely tracking the parties' meet-and-confer discussion, including "the understanding that counsel will in good faith allow a modest extension of up to 10 additional minutes of questioning on the record." (Ex. 3 (10/1/2025 Email from C. Strumph).)

The county did not respond to OptumRx's written proposal until late in the day on Friday, October 3.  When the county did respond, it did not make any effort to negotiate the terms of the proposal (which it had all but agreed to on October 1),  and instead flatly stated:  "In light of all the circumstances, including re proposed timing, we are going to pull the Calabrese cross-notice for Jeff Co.  We reserve all rights to take the dep separately for Jeff Co." (Ex. 3 (10/3/2025 Email from J. Conrod).)

OptumRx responded the next morning at 8:59 a.m., expressing surprise at the county's backtracking after having agreed in principle several days ago.  (Ex. 3 (10/4/2025 Email from B. Boone).)  OptumRx further reiterated that it would "not agree to proceed with Mr. Calabrese's deposition next week if Jefferson County takes a position that could result in his having to sit for a second deposition." (*Id.*)  In an effort to reach a resolution so that Mr. Calabrese's deposition could go forward, OptumRx offered the county the rest of the day to reconsider its position, explaining that, if the county did not withdraw its reservation of rights to depose Mr. Calabrese for a second time, OptumRx would "have no choice but to postpone Mr. Calabrese's deposition until after these issues are resolved." (*Id.*)

The county responded late that same day (Saturday, October 4), doubling down on its position and citing pretextual concerns.  *First*, despite previously stating that he did not require two full hours of examination time and requesting only a "little bit of good-faith flexibility" to go slightly over one hour if needed, the county's counsel now claimed that he had "emphasized that time was a key issue during all our discussions."  (Ex. 3 (10/4/2025 Email from J. Conrod).) *Second*, the county claimed for the first time that OptumRx's proposal did not "actually and literally track the stipulations" (*id.*), even though OptumRx's written proposal expressly stated that the "July 19, 2022 Joint Stipulation and Consent Order is attached and incorporated into this

-5-

agreement" (Ex. 3 (10/1/2025 Email from C. Strumph)).  Despite those two minor issues, the county did not propose revisions to OptumRx's written proposal or in any way try to negotiate a compromise.  Rather, the county stated that it preferred to "see how the deposition of Mr. Calabrese unfolds in the MDL and then decide whether to depose him in JeffCo."  (Ex. 3 (10/4/2025 Email from J. Conrod).)

Given the county's refusal to negotiate, at 6:50 a.m. the very next morning, on October 5, OptumRx informed the PEC and the county's counsel that it was taking Mr. Calabrese's October 9 deposition off the calendar because "Mr. Calabrese will not sit for his deposition until coordination issues are resolved."  (Ex. 4 (10/5/2025 Email from B. Boone).)  The PEC objected to Special Master Cohen, and OptumRx immediately moved for a protective order.  (Ex. 4 (10/5/2025 Email from M. Elsner); Ex. 4 (10/5/2025 Email from B. Boone).)

Special Master Cohen denied OptumRx's motion, ruling that "the MDL deposition will go forward as scheduled," and "[t]he question of the extent to which Mr. Calabrese may be deposed twice can be addressed later, especially by the state court judge."  (Ex. 4 (10/6/2025 Email from SM Cohen).)

**ARGUMENT**

**I.     PLAINTIFFS' GAMESMANSHIP IS AN IMPROPER ATTEMPT TO TAKE TWO DEPOSITIONS OF MR. CALABRESE WITHOUT LEAVE OF COURT.**

There is good cause to grant OptumRx's motion for a protective order because the undue burden and expense imposed on OptumRx and Mr. Calabrese by plaintiffs' failure to coordinate discovery far outweighs any potential prejudice to plaintiffs that a delay in taking Mr. Calabrese's deposition could possibly cause.  Rule 26 of the Federal Rules of Civil Procedure provides the court "must" limit discovery "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c).  Further, under Rule 26(c), a "court may, for good cause, issue and order to protect a party . . . from annoyance . . . oppression, or undue burden or expense," including by issuing an order "forbidding" certain discovery or "specifying the terms . . . for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A)-(B). Thus, the Court has "broad discretion to determine whether a protective order is appropriate and what degree of protection is required." *B.P.* v. *City of Johnson City*, 2024 WL 4817142, at *3 (E.D. Tenn. Nov. 18, 2024).

Here, plaintiffs are seeking to game the system in order to and take two depositions of Mr. Calabrese in matters where discovery has been coordinated and plaintiffs are represented by the same counsel pursuing a national strategy of litigation against OptumRx. The Federal Rules of Civil procedure expressly forbid the taking of duplicative depositions without leave of court. Fed. R. Civ. P. 30(a)(2)(A)(ii). Thus, "[a]n order which results in one deposition rather than two in cases which share factual and legal elements is a sound exercise of the discretion and responsibility the civil rules extend to trial judges." *Rowe* v. *Heritage Auto. Grp.*, 2018 WL 3458356, *1 (D. Vt. July 18, 2018) (ordering "joint depositions" in coordinated cases where "[t]he same lawyers appear" in both cases, "[t]he defendant is the same," and the claims "share common elements," because "[i]t would be inefficient to require plaintiff's counsel to depose defendant's employees twice").

Courts have recognized two key considerations underpinning the rule against duplicative depositions, both of which counsel in favor of a protective order here. As an initial matter, "second depositions are disfavored because of the cost and burden." *Weddington* v. *City of Detroit*, 2022 WL 16856085, at *1 (E.D. Mich. Nov. 10, 2022); *see also Presideo Components, Inc.* v. *Am. Technical Ceramics Corp.*, 2009 WL 861733, at *4-5 (S.D. Cal. Mar. 25, 2009) (rejecting an effort

to take a second deposition where the party failed to demonstrate the "benefit . . . would outweigh the burden and expense"). They also are "disfavored" because they "provide the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last." *Weddington*, 2022 WL 16856085, at *1 (cleaned up); *accord State Farm Mutual Auto. Ins. Co.* v. *New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008). That is exactly what plaintiffs seek to do here.

Although plaintiffs have tried to characterize *Jefferson County* and the MDL as "unrelated" cases, that could not be further from the truth. Both cases involve the same defendant, many of the same legal claims, and same plaintiffs' counsel. Counsel for the county even acknowledged the gamesmanship at play here, expressly stating that it was choosing to "see how the deposition of Mr. Calabrese unfolds in the MDL and then decide whether to depose him in JeffCo." (Ex. 3 (10/4/2025 Email from J. Conrod).)

Plaintiffs' failure to coordinate and desire to take a second bite at the apple do not constitute good cause to allow a second deposition of Mr. Calabrese. Plaintiffs' duplicative and wasteful approach contravenes this Court's consistent directive that parties in this large MDL coordinate to avoid inefficiencies. (*See* ECF No. 1029 (Protocol for State and Federal Coordination).) Indeed, courts managing complex litigations such as this one routinely emphasize the need to coordinate and avoid just this sort of duplication. *See, e.g.*, *In re Daily Harvest, Inc. Prods. Liab. Litig.*, 2023 WL 3144171, at *1 (S.D.N.Y. Apr. 28, 2023) ("the parties are to work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of discovery and to promote the efficient and speedy resolution of the [MDL and Coordinated Actions]"); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 13820855, at *2 (S.D.N.Y. Feb. 23, 2015) ("[A] witness may be deposed only once in either the MDL Proceeding or any Coordinated Action unless otherwise

agreed to by the parties in writing or authorized by an order of the MDL Court upon a showing of good cause by the party seeking the additional deposition.").

**II. SCHEDULING MR. CALABRESE'S DEPOSITION AFTER PLAINTIFFS' COORDINATION ISSUES HAVE BEEN RESOLVED WOULD AVOID SIGNIFICANT BURDEN TO MR. CALABRESE AND OPTUMRX WITH NO PREJUDICE TO PLAINTIFFS.**

"A motion under Rule 26(c) to limit discovery requires the district court to balance the interests at issue, and to compare the hardship on both parties if the motion is either granted or denied. In making its determination, the court must consider the nature and magnitude of the hardship imposed on each party by the order." *York* v. *Am. Med. Sys., Inc.*, 1998 WL 863790, at *4 (6th Cir. Nov. 23, 1998) (affirming order granting protective order where opposing party "provided no statement or support for any hardship he would suffer from the grant of protective order"); *see Vaughan* v. *City of Shaker Heights*, 2014 WL 172522, at *4 (N.D. Ohio Jan. 13, 2004) ("In deciding whether to grant a protective order, a district court must balance the parties' competing interests and compare the hardships of granting or denying the request."). Here, the Court should grant OptumRx's motion for protective order given the clear imbalance of burden and prejudice.

Forcing Mr. Calabrese to sit through two depositions in such highly related cases will impose a massive burden on Mr. Calabrese and OptumRx. Mr. Calabrese is a senior executive with significant time constraints, who cannot easily schedule two full days of deposition (not to mention related preparation time) to accommodate plaintiffs' failure to coordinate. Preparing for and attending two separate depositions also would be an unduly costly and inefficient waste of resources for OptumRx. (*See* ECF No. 1029 at 1 ("This Court's goal is to engage in a cooperative effort to coordinate, to the extent practicable, parallel and overlapping proceedings in the federal and state cases in order to reduce costs and avoid unnecessary duplication of effort.").)

On the other side of the ledger, postponing Mr. Calabrese's deposition until after plaintiffs' coordination issues have been resolved will not prejudice anyone.  Jefferson County apparently is in no rush to take Mr. Calabrese's deposition—it has confirmed three times in the past three days that it has no interest in deposing Mr. Calabrese on the previously scheduled date of October 9.  (Ex. 3 (10/3/2025 Email from J. Conrod); Ex. 3 (10/4/2025 Email from J. Conrod); Ex. 4 (10/5/2025 Email from J. Conrod).)  And although the PEC has maintained that it wants to depose Mr. Calabrese on October 9, it has does not even pretend that it would suffer prejudice if it were required to wait a reasonable period of time to do so.  (*See* Ex. 4 (10/5/2025 Email from M. Elsner).)  Nor could it:  the Court recently extended the discovery schedules in the Rochester and Ogdensburg bellwethers by four months (ECF Nos. 6284, 6285), giving the PEC ample time to resolve its coordination issues with Jefferson County (which will not be a heavy lift, given that the county is represented by Motley Rice) before discovery closes in Track 12 on February 20, 2026.

The Court should not allow plaintiffs to unduly burden Mr. Calabrese and OptumRx with a second deposition.  There is plenty of time to resolve these issues in an orderly manner and schedule a single, coordinated deposition.  That is the only approach that would realize the efficiencies that this Court has encouraged throughout this MDL litigation.

### III. OPTUMRX'S DECISION TO POSTPONE MR. CALABRESE'S DEPOSITION COMPLIED WITH THE GOVERNING MDL DISCOVERY PROTOCOLS.

The MDL Order Establishing Deposition Protocol states that "[o]nce a deposition has been scheduled, except upon agreement of counsel for the noticing party and the deponent, or upon leave of the Court, it shall not be taken off the calendar, postponed, or rescheduled fewer than three (3) calendar days in advance of the date upon which the deposition has been scheduled to occur."

(ECF No. 643 at 2.)² Mr. Calabrese's deposition was scheduled for October 9. OptumRx emailed the PEC to take down Mr. Calabrese's deposition at 6:50 a.m. ET on October 5—four days before the deposition. OptumRx provided that notice within the timeframe permitted under the deposition protocol.

As if that were not enough, the PEC was on notice of the issues surrounding Mr. Calabrese's deposition even earlier. Motley Rice appeared as counsel of record for Jefferson County one day before Jefferson County cross-noticed Mr. Calabrese's deposition. In its cross-notice, Jefferson County made a series of demands and threatened to keep the deposition open (or retake the deposition) if those demands were not met. Counsel for OptumRx met and conferred with Jefferson County twice (on September 29 and October 1) to discuss those issues and offer compromises to resolve the dispute. OptumRx made various concessions in good faith in order to secure an agreement to a single deposition, but made clear throughout that it would not agree to Mr. Calabrese being subject to two depositions.

On Wednesday, October 1, OptumRx sent a proposal to counsel for Jefferson County largely agreeing to Jefferson County's demands related to Mr. Calabrese's deposition. OptumRx believed that the parties had reached an agreement. But Jefferson County waited until late Friday to reject OptumRx's proposal, pull down its cross-notice, and shut down any negotiation between the parties. Motley Rice, as co-counsel for Jefferson County, cannot claim surprise or prejudice that OptumRx was forced to postpone Mr. Calabrese's deposition.

The MDL Protocol for State and Federal Court Coordination (ECF No. 1029) obligates "the partes, their counsel, and their law firms" to engage in a "cooperative effort to coordinate . . .

---

² "All depositions noticed or property cross noticed in th[e] MDL are subject to this deposition protocol." (ECF No. 643 at 1.)

-12-

parallel and overlapping proceedings in the federal and state cases in order to reduce costs and avoid unnecessary duplication of effort." (ECF No. 1029 at 1, 2.) OptumRx was doing just that when Jefferson County's counsel and the PEC shut down those negotiations and threatened to take a second deposition of Mr. Calabrese. The PEC should not be rewarded for that gamesmanship. They should be ordered to meet and confer and to avoid the need for duplicative depositions.

## CONCLUSION

For the reasons set forth above, the Court should sustain OptumRx's objection to the Special Master's discovery ruling and grant OptumRx's motion for protective order.

Respectfully submitted this 6th day of October, 2025.

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Robert J. Giuffra Jr.* |
| Brian D. Boone | Robert J. Giuffra Jr. |
| Emily C. McGowan | Sharon L. Nelles |
| ALSTON & BIRD LLP | Nicole W. Friedlander |
| 1120 South Tryon Street, Suite 300 | Jeffrey T. Scott |
| Charlotte, NC 28203 | Matthew J. Porpora |
| Telephone: (704) 444-1000 | SULLIVAN & CROMWELL LLP |
| brian.boone@alston.com | 125 Broad Street |
| emily.mcgowan@alston.com | New York, NY 10004 |
| | Telephone: (212) 558-4000 |
| Andrew Hatchett | giuffrar@sullcrom.com |
| Caroline Rawls Strumph | nelless@sullcrom.com |
| ALSTON & BIRD LLP | friedlandern@sullcrom.com |
| 1201 W. Peachtree St. NW, Suite 4900 | scottj@sullcrom.com |
| Atlanta, GA 30309 | porporam@sullcrom.com |
| Telephone: (404) 881-7000 | |
| andrew.hatchett@alston.com | Kamil R. Shields |
| caroline.strumph@alston.com | SULLIVAN & CROMWELL LLP |
| | 1700 New York Avenue N.W. |
| | Suite 700 |
| | Washington, DC 20006 |
| | Telephone: (202) 956-7500 |
| | shieldska@sullcrom.com |

*Attorneys for OptumRx, Inc.*