UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 1:17-md-2804-DAP |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 1:19-op-45853 (Track 12) | Judge: Dan Aaron Polster |
| *City of Ogdensburg v. Purdue Pharma, L.P.*, No. 1:19-op-45852 (Track 22) | |

**PLAINTIFFS' OPPOSITION TO OPTUMRX, INC.'S OBJECTION TO SPECIAL MASTER RULING DENYING OPTUMRX, INC.'S MOTION FOR A PROTECTIVE ORDER REGARDING THE OCTOBER 9, 2025 DEPOSITION OF DAVID CALABRESE**

Plaintiffs City of Rochester and City of Ogdensburg hereby oppose Defendant OptumRx, Inc.'s Objection (Dkt. #6309) to Special Master Cohen's October 6, 2025 ruling denying Optum's request for a protective order cancelling Plaintiffs' October 9, 2025 deposition of Optum's Chief Clinical Officer, David Calabrese.

Special Master Cohen ruled correctly. Optum argues that a protective order is necessary to prevent Mr. Calabrese from being deposed twice, when he has not even been deposed *once* in this MDL or any other opioids case. The "second" deposition Optum says it is trying to prevent would be by Jefferson County, Missouri ("JeffCo"), a non-party to this MDL over which and over whose state-court case this Court lacks jurisdiction. Indeed, while it has actively encouraged coordination of discovery across MDL and state-court opioid cases, "this Court has also recognized that state courts are independent

jurisdictions,'" so that "no party waives any jurisdictional rights . . . with regard to discovery" even where it "agree[s] to coordinate with the MDL, including participating in MDL depositions that are cross-noticed in state cases." Protocol for State and Federal Court Coordination (Dkt. #1029) ("Coordination Protocol") at 1 (quoting Order Establishing Deposition Protocol (Dkt. #643) ("Deposition Protocol") at 4). Here, JeffCo tried but could not reach an agreement with Optum to coordinate a single deposition of Mr. Calabrese. These efforts having failed, the Court does not have authority to compel JeffCo to participate by cross-notice in Mr. Calabrese's MDL deposition. Nor does it have any basis to prevent or indefinitely delay Plaintiffs Rochester and Ogdensburg from taking this deposition, first noticed five months ago on May 10, 2025, of a critical witness who has spoken openly and candidly about the harms of the opioid epidemic.

Accordingly, Special Master Cohen's ruling denying a protective order to cancel or postpone Plaintiffs' deposition of Mr. Calabrese should be affirmed.

## BACKGROUND

Jefferson County withdrew its cross notice of Mr. Calabrese based on multiple factors specific to the Jefferson County case. These included a state court stipulation and order involving mail order pharmacy discovery that has no MDL analog; the County's concerns that OptumRx's proposed terms for Mr. Calabrese's deposition would improperly expand the stipulation's reach and that the County would be afforded insufficient time for questioning; and the overarching fact that, at least to date, the County does not have access to tens of thousands of documents that were produced by the PBMs in the MDL but not in Jefferson County. These are issues in the state court litigation

2

before presiding Judge Rathert.  Jefferson County is *not* asking this Court to weigh in on or substantively address them.

Rather, Plaintiffs provide this background solely to assist the Court in understanding the context in which this dispute arose, to rebut OptumRx's accusations of gamesmanship, and to underscore that the discussions surrounding Jefferson County's cross-notice took place against a complex state court backdrop that included pending and unresolved motions before Judge Rathert. Jefferson County withdrew its cross-notice to protect its rights, not to drag this Court into the issues in that case.

That said, here is what happened: Jefferson County was first scheduled to depose OptumRx witness David Calabrese (both in his personal capacity and as a corporate deponent on a designated issue) on January 25, 2024.  On December 1, 2023, however, Optum and state court co-Defendant Express Scripts, Inc. removed that case to federal court.  While both the Eastern District of Missouri and the Eighth Circuit ultimately concluded that removal was improper, the case remained in federal court for over eighteen months until the case was finally remanded six weeks ago, on August 27, 2025.

While the case was in federal court, the PBMs engaged in MDL bellwether discovery.  The PBMs have produced tens of thousands of documents in the MDL that they also should have but did not produce in the Jefferson County state-court case. These include thousands of documents from Mr. Calabrese's custodial file.

Indeed, in one notable omission from its Jefferson County production, OptumRx did not produce and instead marked as "nonresponsive" an audio recording of Mr. Calabrese speaking to OptumRx employees about the history of the opioid epidemic and

3

OptumRx activities related to opioids.[1]  The County only discovered this omission because Optum did produce the recording in the MDL.

Shortly after remand, the County raised this issue with the PBMs and filed a Motion for Sanctions.  The County is seeking, *inter alia*, complete production of the PBMs' MDL documents into the Jefferson County case (at least insofar as the documents did not relate specifically to New York or the bellwether jurisdictions).

The state court set a hearing for September 23, 2025 to address, among other things, the County's Motion.  The MDL deposition of Mr. Calabrese had already been set for October 9.  Therefore, under applicable MDL protocols requiring cross notices to be served 14 days prior to an MDL deposition, the County was obligated to issue any cross notice two days after the hearing, or September 25. Given the uncertainty about the MDL document production issue and the fact that the cross-notice deadline would not arrive until after the hearing, the County did not cross notice the Calabrese deposition before the September 23 hearing.

At the September 23 hearing, the state court heard extensive argument on the MDL documents issue. The court, however, did not rule at the hearing.  Instead, Judge Rathert (the presiding state court judge) asked each of the parties to submit their competing proposed orders on the Motion within 10 days.[2]

---

[1] A transcript of the audio/video recording is attached as <u>Exhibit A</u>.
[2] The parties submitted competing proposed orders this past Friday, October 3. As of the filing of this response, Judge Rathert has not ruled on Optum's (or Express Scripts') obligation to produce MDL discovery in the state court case.

4

Thus, as of the September 25 deadline to serve a cross notice, Jefferson County was (*and still is*) faced with uncertainty regarding the extent to which it would be able to use any MDL-produced documents in Mr. Calabrese's deposition.  Nonetheless, the County decided to serve the cross notice (Dkt. #6309-1) and try to negotiate a compromise to permit it to participate in the MDL deposition (indeed, the cross notice itself contains reservation of rights language stating that it is contingent upon the County reaching an agreement with OptumRx as to these outstanding issues (*id.* at 1-2)).  Upon serving the cross notice on September 25,[3] the County asked for an immediate meet and confer.  The County and OptumRx counsel then held two separate remote conferences.

The County was initially willing to compromise on production of all MDL documents and move forward with only production of Mr. Calabrese's MDL custodial file. But given that it had previously been scheduled to take Mr. Calabrese's full deposition, the County's position was that it also should have a reasonable amount of time to question Mr. Calabrese.  *See* Johan Conrod email (Dkt. #6309-3) at 1.

During the first meet and confer, the County therefore proposed that, in addition to Optum agreeing to produce all of Mr. Calabrese's MDL documents in the Jefferson County case, the County should be permitted to have an additional two hours to question

---

[3] OptumRx suggests that there is a suspicious correlation between the timing of the cross notice and the appearance of the Motley Rice firm in the case. Objection at 3.  That is not accurate. The Motley Rice pro hac vice motions actually were filed on September 18, in advance of the September 23 hearing. Judge Rathert just happened to grant those motions on September 24, the day before the County served the cross notice. The correlation between Judge Rathert's grant of the motions on September 24 and the service of the cross notice on the protocol deadline of September 25 was pure happenstance.

Mr. Calabrese (i.e., in addition to the time used by PEC counsel). Also, since the County's counsel would also be covering the deposition for the City of Martinsville (Virginia) case, the County proposed that the two hours be shared between those two state court cases.[4]

During the second meet and confer (held the morning of October 1), Optum responded orally to the County's proposal. It stated that it would send an email later that day with its official written statement of proposed terms (which would be the actual offer), but that generally speaking Optum would agree to produce Mr. Calabrese's MDL documents subject to an existing stipulation and order in the Jefferson County case that limits discovery of dispensing and mail order pharmacy materials.

Counsel for the County agreed that the stipulation applied, at least to the extent OptumRx's proposal actually tracked the stipulation and did not try to expand its scope.

Optum's counsel then proposed that County and Martinsville together would only have one hour for questioning. Counsel for the County responded that the proposed time limit was problematic. Counsel further noted that Optum had been involved with him in a number of depositions, both previously in Jefferson County and via MDL cross notices for Martinsville; that Optum counsel knew there had never been any abuse of an agreed limit, and in fact knew that most of the time questioning did not even fill the time allowed.

---

[4] The City of Martinsville has consistently cross noticed and participated in MDL PBM depositions over the last few months. PBM counsel and Martinsville counsel have agreed in all of these depositions that Martinsville will be afforded one additional hour for questioning beyond the PEC's 7 hours. These depositions have generally proceeded without incident, at least as to the time allotted for Martinsville. Thus, the two hour joint time period proposed by the County was not an unreasonable departure from the existing standard treatment of Martinsville's cross notices, nor was it a proposal that would be applicable to all MDL depositions.

Thus, County counsel emphasized that the request for a full two hours was not meant to unnecessarily drag out the deposition. Rather, it was an attempt to ensure sufficient time to ask necessary questions and not be unfairly cut off, particularly since Mr. Calabrese had already been scheduled to be deposed in Jefferson County prior to removal. Thus, whatever time limit applied, there needed to be accompanying "good faith flexibility." County counsel, however, never agreed to a one-hour limit.

OptumRx counsel responded by stating that they always aspired to act in good faith and would be flexible. But throughout the conference they emphasized that their written email would contain the controlling terms of their proposal.

Late in the afternoon of October 1, OptumRx sent an email with the official terms. First, the terms did not actually track the dispensing stipulation in the case and instead were crafted in a manner that would expand the stipulation's preclusive reach.[5] Second,

---

[5] While admittedly tedious to explain, this is an important factor (albeit one unique to Jefferson County, and an issue that would be addressed by Judge Rathert if necessary). The stipulation and order at issue were entered in July 2022 and carve out certain discovery and documents "focused primarily on the dispensing activities" of Optum entities. This stipulation was heavily negotiated and was specifically crafted to avoid a situation where Optum claimed a document that referenced dispensing was not discoverable even if it also discussed opioid issues generally (i.e., broader "relating to dispensing" wording was not employed because of this overbreadth concern). Counsel for the County personally discussed this issue with Optum counsel at the time they negotiated the stipulation because another PBM in the case had previously attempted to exclude from discovery documents that extensively discussed general issues involving opioids but included some minor references to dispensing and mail order.
  Contrary to OptumRx's description of the parties' negotiations, there is no dispute that OptumRx's October 1 email proposal did not use the actual terms of the stipulation – instead, it proposed carving out any documents "related to" dispensing from Mr. Calabrese's MDL document production and deposition, which was precisely the type of language that the stipulation *did not* use because of its potential for abuse.

7

the official proposed terms reiterated the one-hour limitation, with the only caveat being that OptumRx agreed to permit an additional ten minutes if necessary, but no more.

Upon due consideration, the County determined that this was too much compromise.  Thus, rather than object to Optum's overly expansive characterization of the stipulation and try to continue to negotiate for more time (all under the continuing cloud of uncertainty regarding production of the remainder of the OptumRx MDL production beyond Mr. Calabrese's custodial documents), the County concluded that the better course was simply to withdraw the cross notice and re-assess whether it would need any further questioning of Mr. Calabrese in the Jefferson County case after the MDL deposition was concluded.

Optum's motion to the Special Master for a protective order to postpone the MDL deposition, the Special Master's denial of same, and Optum's objection thereto followed.

## **LEGAL STANDARD**

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).  "The burden of establishing good cause for a protective order rests with the movant."  *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. May 24, 2001).  "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements."  *Id.* (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)) (internal quotation marks and citation omitted).

## ARGUMENT

Optum does not satisfy its burden for a protective order preventing or indefinitely delaying Plaintiffs' deposition of Mr. Calabrese, whom Optum does not dispute is a source of relevant information. Instead, Optum tries to flip the burden onto Plaintiffs by misstating the procedural posture in which its objection appears. *See* Objection at 8 ("Plaintiffs' failure to coordinate and desire to take a second bite at the apple *do not constitute good cause to allow a second deposition* of Mr. Calabrese.") (emphasis added). No question of a "second deposition" is presented here because Plaintiffs (and all opioid litigation plaintiffs) have never had a *first* deposition of Mr. Calabrese. In this procedural posture, Rule 26 clearly places the burden on Optum to demonstrate good cause to prohibit or indefinitely delay this first deposition of Mr. Calabrese.

Nor do this Court's Orders encouraging coordination of discovery depositions across opioids cases support Optum's request. *Cf.* Objection at 8 (citing Coordination Protocol). To the contrary, the Court has repeatedly recognized the limits of its jurisdiction with respect to state-court parties and cases (*see* Coordination Protocol at 1; Deposition Protocol at 4), even as it has sought to "engage in a cooperative effort to coordinate, to the extent practicable, parallel and overlapping proceedings in the federal and state cases in order to reduce and avoid unnecessary duplication of effort." Coordination Protocol at 1. Thus, while it has facilitated an extensive process for coordinating depositions, the Court has left it up to state courts whether and to what extent to permit a subsequent deposition of a witness even where (unlike here) the state-court plaintiff participates in the MDL proceedings:

> Once a deposition of a defendant party-affiliated witness . . . has already been cross-noticed and taken in the federal MDL, if a state court plaintiff who is also represented by MDL counsel believes good cause exists for taking that witness's deposition again in the state court case, the state-court plaintiff shall provide notice to the applicable defendant and meet and confer . . . . If the parties are unable to resolve the issues through a meet and confer, *the parties remain free to raise the issue with the state court judge presiding over the state case.*

Coordination Protocol at 10 (emphasis added). Here, where JeffCo has tried but was unable to reach agreement with Optum for participation through cross-noticing, there is no question that Optum's only remedy to prevent any purportedly "second" deposition by JeffCo must be obtained through the state court presiding over the JeffCo case. The Coordination Protocol provides no support whatsoever for Optum's gambit to prevent a "second" deposition by JeffCo by blocking or delaying the *first* deposition of Mr. Calabrese by Plaintiffs herein.

Nor does any of the case law Optum cites support its request that this federal MDL court compel a state-court party's participation by suspending one or more MDL parties' discovery rights. In *Weddington v. City of Detroit*, 2022 WL 16856085 (E.D. Mich. Nov. 10, 2022), *see* Objection at 3, 7, 8, the district court denied the defendants' motion to take a second deposition of the same plaintiff in the same single case. 2022 WL 16856085, at *1-2; *see also Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 2009 WL 861733, at *1 (S.D. Cal. March 25, 2009) (same) (cited at Objection at 7-8) *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008) (same) (cited at Objection at 8); *cf. Rowe v. Heritage Automotive Grp., Inc.*, 2018 WL 3458536, at *1 (D. Vt. July 18, 2018) (allowing participation in joint depositions by a second plaintiff "in another employment

10

discrimination action against Heritage *pending before this court[.]*") (emphasis added) (cited at Objection at 7). None of these rulings reached out to parties in other courts.

Indeed, even the few complex coordinated litigation cases Optum cites do not support a federal court's unilateral compulsion of a state-court plaintiff's participation in federal multidistrict litigation discovery. In *In re Daily Harvest, Inc. Prods. Liab. Litig.*, 2023 WL 3144171 (S.D.N.Y. April 28, 2023), *see* Objection at 8, the court addressed coordinated depositions across both federal MDL cases and additional cases in unspecified "other courts" by issuing a "Coordination Order," which another court in a "Related Action" could *also adopt*, making that action a "Coordinated Action." 2023 WL 3144171, at *1. Thus, a plaintiff in a case in another court only became bound to provisions in the MDL court's Coordination Order when the other court also adopted and could enforce them. *See also In re General Motors LLC Ignition Switch Litig.*, 2015 WL 13820855, at *1 (S.D.N.Y. Feb. 23, 2015) (MDL court addressing coordination of depositions across cases pending in other federal and state courts by entering a "Joint Coordination Order," whereby "[t]he Court anticipates most *Related Actions will adopt* the Joint Coordination Order and thereby become coordinated with the MDL Proceeding (the 'Coordinated Actions').") (emphasis added) (cited at Objection at 8-9).

In sum, none of the cases Optum cites did what it is asking the Court to do here—condition MDL Plaintiffs' discovery rights on a state-court plaintiff's participation in MDL discovery in the *absence* of any state-court order requiring this. Instead, this Court got it exactly right when it recognized that any dispute relating to a state-court plaintiff's cross-noticing of an MDL deposition "will be governed by the law of [the]state in which

11

the cross-notice is served *and subject to the jurisdiction of the state court responsible for the case*." Coordination Protocol at 9 (emphasis added). The Court cannot or else should not condition Plaintiffs Rochester and Ogdensburg's discovery deposition rights in their bellwether cases on the participation of a state-court plaintiff over whom the Court correctly recognizes that it lacks jurisdiction.

Finally, Optum's argument for a protective order based on the Deposition Protocol (Dkt. #643) fares no better. Optum argues that the Deposition Protocol allows it to unilaterally cancel or delay noticed depositions up to three days in advance. Objection at 11 ("Optum Rx emailed the PEC to take down Mr. Calabrese's deposition at 6:50 a.m. ET on October 5---four days before the deposition. OptumRx provided that notice within the timeframe permitted under the deposition protocol."). It does not.

The Deposition Protocol provides that: "Once a deposition has been scheduled, except upon agreement of counsel for the noticing party and the deponent, or upon leave of the Court, it shall not be taken off the calendar, postponed, or rescheduled fewer than three (3) calendar days in advance of the date upon which the deposition has been scheduled to occur." Deposition Protocol at 2. The Protocol must be read in conjunction with Rule 30, under which: "A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition . . . ." Fed. R. Civ. P. 30(b)(1). Rule 30 makes the deposing party's notice of deposition controlling as to when the deposition will occur and does not permit an opposing party or deponent to unilaterally override it. The Deposition Protocol thus must be read in this light so that its "shall not be taken off the calendar"

12

provision refers to the noticing party's right to take the deposition off the calendar on three or more days' notice. It does not give Optum a unilateral right to pull down its own witnesses' depositions at will, as Optum argues it does here. Nor could it do so without undermining the integrity of these proceedings by allowing Optum to continually delay discovery and run out the calendar without affording Plaintiffs the opportunity to satisfy their burdens of proof on their claims.[6]

## CONCLUSION

For all of the reasons set forth, the Court should overrule Optum's objection to the Special Master's ruling denying a protective order and allow Plaintiffs to proceed with their deposition of Mr. Calabrese on October 9, 2025.

Dated: October 7, 2025

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

---

[6] The lack of merit aside, Optum also has waived this argument by failing to raise it in its request for a protective order to Special Master Cohen. *See* Special Master Cohen Emails (Dkt. #6309-4) at 3 (Oct. 5, 2025, 10:20am email of Brian Boone); *see generally* Order Regarding Optum's Objection to Discovery Ruling 14, Part 34 (Dkt. #6031) at 3 ("For many years, it has been the practice of this MDL Court not to consider 'new . . . legal theories [submitted] to the Court' in an objection to a discovery ruling that have not first been presented to the Special Master for his consideration.") (quoting Dkt. # 1349 at 2); *id.* at 3-4 ("The Court is, therefore, reluctant to simply ignore evidence that might establish the existence of the privilege, solely because Optum failed to adhere to this Court's long-established procedures. Instead, the Court will permit Optum to provide— this one *final* time—to Special Master Cohen, the detail and context he needs to undergo the analysis of the documents that Optum seeks.").

13

        Joseph F. Rice
        MOTLEY RICE
        28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
        (843) 216-9000
        (843) 216-9290 (Fax)
        jrice@motleyrice.com
        *Plaintiffs' Co-Lead Counsel*

        Paul T. Farrell, Jr.
        FARRELL & FULLER
        270 Munoz Rivera Avenue, Suite 201
        San Juan, PR  00918
        (304) 654-8281
        paul@farrellfuller.com
        *Plaintiffs' Co-Lead Counsel*

        *s/ Peter H. Weinberger*
        Peter H. Weinberger (0022076)
        SPANGENBERG SHIBLEY & LIBER
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH 44114
        (216) 696-3232
        (216) 696-3924 (Fax)
        pweinberger@spanglaw.com
        *Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 7, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and may be obtained by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

        */s/Peter H. Weinberger*
        Peter H. Weinberger