UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>*Allamakee County v Purdue Pharma, et al.*, 1:18-op-45983-DAP (Track 24)<br><br>and<br><br>*Emmet County, Iowa v. Purdue Pharma L.P., et al.*, 4:21-op-45051-DAP (Track 25) | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND AND SUPPLEMENT THE COMPLAINTS OF HY-VEE BELLWETHER PLAINTIFFS ALLAMAKEE COUNTY, IOWA AND EMMET COUNTY, IOWA**

The Plaintiffs' Executive Committee, together with Plaintiff Allamakee County, Iowa, and Emmet County, Iowa ("Plaintiffs"),[1] submit this reply memorandum in further support of Plaintiffs' motion under Fed. R. Civ. P. 15 for leave to amend their complaints against bellwether Defendants Hy-Vee, Inc. ("Hy-Vee"), Amber Enterprises, Inc. d/b/a Amber Specialty Pharmacy ("AEI"), HYVACS, LLC d/b/a Hy-Vee Pharmacy Solutions ("HYVACS"), Redbox RX, LLC ("Redbox"), and Vivid Clear RX, Inc. ("VCRX") (together, "Defendants").[2]

---

[1] Plaintiff Emmet County is one of nineteen plaintiffs named in *Appanoose County, et al. v. Allergan, PLC, et al.*, Case No. 1:21-op-45051-DAP.

[2] In light of the averments in the declarations of Travis Hoover and Nataniel Allen relating to Redbox—in particular their statement that all drugs dispensed through redboxrx.com are in fact dispensed by Hy-Vee—Plaintiffs do not intend to pursue claims against Redbox RX, LLC and will pursue any claims arising from drugs dispensed through Redbox against Hy-Vee.

1

**INTRODUCTION**

Defendants' opposition to Plaintiffs' motions to amend is largely founded on facts outside the pleadings, namely, a hearsay declaration containing statements regarding what Hy-Vee claims certain dispensing data purportedly shows regarding the market shares of HYVACS and AEI. However, the underlying data has never been subjected to critical analysis. Nor has the adequacy of the scope of the query used by Hy-Vee's unnamed "data analyst" at AEI been subjected to the crucible of the adversary process. As the Court no doubt appreciates, access to *all* relevant dispensing data, both in terms of temporal and geographic scope, as well as critical analysis of the data, are essential prerequisites to factual determinations regarding the significance of Defendants' contributions to the opioid epidemic in Plaintiffs' communities.

Defendants' opposition is also founded on statements about the interrelationships among the Defendants. But AEI, HYVACS, and VCRX have failed to file their corporate disclosure statements, in violation of Rule 3.13 of the Local Rules of this District and this Court's order regarding corporate disclosure statements. Doc # 553 (June 5, 2018). And, of course, Plaintiffs have had no meaningful opportunity for discovery of the added defendants. Without discovery or the required disclosures, Plaintiffs are limited to public sources of information, which are necessarily incomplete. As the Court has recognized, such information is necessary to make factual determinations regarding intercompany relationships, and such fact-intensive inquiries are best left for determination at the trial of the primary defendant.

**STATEMENT OF FACTS**

**Hy-Vee, Inc.**

Defendant Hy-Vee, Inc. is an Iowa corporation with its principal place of business in West Des Moines, Iowa. Through its various subsidiaries and affiliated entities, Hy-Vee conducts

business as both a distributor and a pharmacy.[3] Hy-Vee operates more than 240 supermarkets across Iowa and the adjoining and surrounding states of Illinois, Missouri, Kansas, Nebraska, South Dakota, Minnesota, and Wisconsin. Of those supermarkets, approximately 150 are located in Iowa.[4] At least one is located in Emmet County.[5] Most, if not all, Hy-Vee supermarkets contain a pharmacy.[6] While Hy-Vee does not currently own or operate any pharmacies in Allamakee County, it owns and operates the Oelwein Dollar Fresh Hy-Vee store and pharmacy in Fayette County, which borders Allamakee.[7] Hy-Vee also owns and operates Hy-Vee stores and pharmacies in nearby Fillmore County, Minnesota and La Crosse County, Wisconsin. Hy-Vee has distributed and sold prescription opioids throughout the mid-western United States, including in Iowa, and, given the rural nature of Emmet and Allamakee Counties and presence of Hy-Vee pharmacies in neighboring counties, likely sold and dispensed to Plaintiffs' residents.[8]

In addition, Hy-Vee distributed and dispensed substantial quantities of prescription opioids in other states and other counties, and some of those drugs were likely diverted from those other states and counties to Emmet County and Allamakee County. Defendants failed to take meaningful action to stop this diversion despite their knowledge of it and thus contributed substantially to the diversion problem.[9] According to Hy-Vee's website, of which the Court can take judicial notice,[10]

---

[3] Proposed Complaint ("PC") ¶ 59. Except as otherwise noted, the cited paragraph numbers in both proposed complaints are the same.
[4] PC ¶ 60.
[5] *Id.*
[6] *Id.*
[7] Allamakee PC ¶ 62.
[8] *Id.*
[9] Allamakee PC ¶ 85; Emmett PC ¶ 83.
[10] *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) ("the statements at issue are [defendant's] own assertions, not potentially unfamiliar information posted on third-party websites"); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *1 (E.D. Mo. Jan. 15, 2016) (judicially noticing a party's website); *League of United Latin Am.*

3

the purpose of Hy-Vee's subsidiaries is "[t]o support [Hy-Vee's] retail operations."[11] Hy-Vee acquired or established AEI, HYVACS, Redbox, and VCRX "to help [Hy-Vee] fulfill our mission of being the most economical supplier of goods and services for [its] stores."[12]

**Amber Enterprises, Inc. d/b/a Amber Specialty Pharmacy and HYVACS, LLC d/b/a Hy-Vee Pharmacy Solutions**

AEI is a Nebraska corporation with its principal place of business in Omaha, Nebraska.[13] It was incorporated on February 8, 1989.[14] Hy-Vee acquired AEI in 2010, and AEI became a wholly-owned subsidiary of Hy-Vee in 2014.[15] AEI is a specialty pharmacy focusing on specific areas, including neurological conditions, an areas in which the use of opioids is common.[16] Plaintiffs seek to hold AEI responsible for its actions prior to its acquisition—and not just since it was acquired by Hy-Vee.

HYVACS is an Iowa limited liability company with its principal place of business in Omaha, Nebraska.[17] It was formed on October 21, 2009.[18] HYVACS is a wholly-owned subsidiary

---

*Citizens of Iowa v. Pate*, 950 N.W.2d 204, 212 (Iowa 2020) ("we may take judicial notice of data posted to [Secretary of State] website"); *State ex rel. Ohio Republican Party v. FitzGerald*, 2015-Ohio-5056, ¶ 18, 145 Ohio St. 3d 92, 95, 47 N.E.3d 124, 128 (taking judicial notice of defendant's "own website").

[11] Hy-Vee website, https://www.hy-vee.com/corporate/our-company/subsidiaries/ [last viewed 10/24/25].

[12] *Id.*

[13] PC ¶ 45.

[14] https://www.nebraska.gov/sos/corp/corpsearch.cgi [last viewed 10/28/25].

[15] AEI website, https://www.amberpharmacy.com/about/ [last viewed 10/24/25].

[16] AEI website, https://www.amberpharmacy.com/specialties/ [last viewed 10/24/25].

[17] PC ¶ 49.

[18] https://sos.iowa.gov/search/business/summary.aspx?q=A09miyzl8rgS_AKOqpw7Bkt6hRSdurBoAWh8gBaPXgoAIqXnT5j_NiCZaDOBE_FSKXpNHBLW6LZoq3mRppiiWyrVDG1Jdk2cl3Tagk3CSNNWv66qTGoyOri1fYh-Pkepy0pFwpW4jajiMz2Mr-NozNIIf41UxdAPPPgsMnsROD8GLfp2-iHykPJlQqogW7Oq_SshYOG82xjpQRXApFfs9uwWBPuBpbwmvbpJoLoQ6kRyVoqsVuVPULvJyESBd-73OXdHt-

of Hy-Vee.[19] Defendants do not deny that Hy-Vee manages HYVACS as its sole member under Iowa law.[20] HYVACS is a specialty pharmacy that treats chronic conditions, including arthritis, areas in which the use of opioids is common.[21] Plaintiffs seek to hold HYVACS responsible for its actions since it was formed in 2009.

Defendants admit that AEI and HYVACS dispensed opioids in Iowa but claim that—in the period 2017 to 2025 at least—they dispensed very little in Iowa and none in Allamakee or Emmet Counties. Those claims are based on facts outside the pleadings, however, and at this stage the Court cannot accept them as complete or accurate statements. For example, Defendants say that AEI and HYVACS use WellSky Care Ten ("WellSky") as their "*primary* pharmacy management system."[22] But they do not disclose what *other* pharmacy management systems they currently use—or formerly used. Nor do they disclose the period or periods of time covered by WellSky; the earliest prescription they report is dated 2017, but AEI and HYVACS have been in existence since 1989 and 2009, respectively.

**Vivid Clear RX, Inc.**

VCRX is a Nebraska corporation with its principal place of business in Omaha, Nebraska.[23] It is a subsidiary of Hy-Vee, Inc. and is a pharmacy benefit manager. While the proposed complaint

---

CokOP6QGUAfG8aR8r0vJ7YG1oH2RTRuHISaTLcuAtLB9LJI6xqTChyzWHpIEGW8WSY8o 7vLI9u4qQj35oddXk0T0UUW8uWtskVc0ko2rxuSdHcxWqWPk0hZryz0    [last    viewed 10/28/25].

[19] HYVACS website, https://www.hvrxsolutions.com/about/ [last viewed 10/24/25].

[20] Under Iowa Code § 489.407(1), unless an LLC's operating agreement expressly provides that it is manager-managed, it is deemed member-managed. Hy-Vee does not contend that its operating agreement contains any such provision; nor does it identify any manager of HYVACS other than itself.

[21] HYVACS website, https://www.hvrxsolutions.com/ [last viewed 10/24/25].

[22] Hoover Decl. ¶ 3 (emphasis added).

[23] Nebraska Secretary of State website, https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=2009131985 [last viewed 10/24/25].

5

does not allege details regarding VCRX, amendment to include the facts necessary to hold VCRX would not, contrary to Defendants' assertion, be futile. If allowed to do so, Plaintiffs can plead additional facts that will support claims against VCRX based on its involvement in the distribution and dispensing of opioids *by its affiliates*.[24]

VCRX it claims to be a "partner" of both AEI and HYVACS.[25] Specifically, it claims that "[a]s a preferred partner to [AEI] and HYVACS, we are able to provide our clients and their employees with the best specialty pharmacy services and specialty treatments available."[26] Thus, the opioids distributed by AEI and HYVACS were distributed with the assistance of their "partner" VCRX. Further, publicly available facts indicate VCRX is entirely under the control of Hy-Vee. According to the records of the Nebraska Secretary of State,[27] the officers and directors of VCRX are Jessica Ringena, President and Director (who is also Senior Vice President of Hy-Vee, and who also served as a Senior Vice President and President of AEI); Michael P. Jurgens, Secretary & Director (who is an attorney employed by Hy-Vee);[28] and Andrew Schreiner, Treasurer & Director (who is senior vice president, chief financial officer, and treasurer of Hy-Vee).[29] If permitted, Plaintiffs would allege these additional facts in support of their claims against VCRX.

---

[24] Plaintiffs do not intend to pursue claims against VCRX as a PBM.

[25] VCRX website, https://www.vividclearrx.com/news/vivid-clear-rx-is-proud-to-partner-with-the-2020-specialty-pharmacy-of-the-year [last viewed 10/24/25].

[26] *Id*.

[27] https://www.nebraska.gov/sos/corp/corpsearch.cgi?acct-number=2009131985 [last viewed 10/24/25].

[28] New York State attorney registration. https://opengovny.com/attorney/3057551 [last viewed 10/24/25].

[29] Hy-Vee website, https://www.hy-vee.com/corporate/news-events/news-press-releases/three-executives-promoted-to-new-leadership-roles-at-hyvee/ [last viewed 1/24/25].

**ARGUMENT**

Under Fed. R. Civ. P. 15, courts "should freely give leave when justice so requires." This Court previously ruled that MDL plaintiffs chosen as bellwethers—like these Plaintiffs—have the right to amend their complaints. Doc. #5319 (Feb. 20, 2024); *see also In re Nat'l Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236, at *1 (6th Cir. 2022). In particular, Plaintiffs may amend to add additional members of an already-named defendant family, and Hy-Vee is an existing defendant. Doc. #6026 (Mar. 17, 2025) (allowing amendment to add claims against an affiliate of an existing defendant); Doc. #5319 at 1 (allowing amendment to add claims against related family defendants). Indeed, to serve as a representative bellwether case against all Hy-Vee entities, it is important that all of the appropriate Hy-Vee family entities be included. *See* Manual for Complex Litigation, Fourth, § 22.315, at 360 (2004) ("If . . . bellwether trials or test cases[] are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases. . . . The more representative the test cases, the more reliable the information about similar cases will be.").

Defendants do not suggest there has been undue delay, bad faith or a dilatory motive in seeking amendment. Nor do they contend that they would suffer any unfair prejudice from the proposed amendments, or that trials of Plaintiffs' claims against Defendants will be unmanageable. Indeed, they would not. *See* Doc. #5319 at 3-5. And contrary to Defendants' assertions, Plaintiffs state cognizable claims against each of them.

**I.   DEFENDANTS' MARKET-SHARE ARGUMENTS ARE NEITHER APPROPRIATE NOR DISPOSITIVE AT THIS STAGE**

Defendants do not deny that the proposed complaints state multiple claims of wrongdoing against Hy-Vee for its conduct in the distribution and dispensing of opioids. Nor does Hy-Vee contend *its* distribution and dispensing in Allamakee and Emmet Counties are either zero or *de*

7

*minimis*. Rather, Defendants oppose the proposed amendments only to the extent Plaintiffs seek to add four of Hy-Vee's wholly-owned subsidiaries. But their opposition—based on untested market-share arguments—relies on purported facts outside the pleadings.

On a motion for leave to amend, the Court must accept the allegations of the proposed complaints as true and may not rely on factual assertions extrinsic to the pleadings. *See Carmona v. 4-Bros. Transp. LLC*, 731 F. Supp. 3d 1046, 1052 (N.D. Ill. 2024) (on a motion for leave to amend, consideration of "evidence external to the proposed amended complaint … is typically inappropriate"). For example, in the Ogdensburg bellwether (Track 22), the Court granted Ogdensburg leave to amend despite the PBMs' contention that the number of opioid prescriptions filled by their pharmacy entities was exceedingly small. Doc. #6026 (Mar. 17, 2025). Indeed, Defendants' market-share argument here is *weaker* than the PBMs' challenge against Ogdensburg—in Track 22, the PBMs had produced their nationwide dispensing data; by contrast, these Plaintiffs have had no opportunity to test the accuracy and completeness of Defendants' market-share contentions through discovery and the adversary process. In that regard, it is important to note that Defendants' market share data are circumscribed both temporally and geographically. They are limited to prescriptions shipped to addresses in Iowa, excluding counties in other states that may have been a source of opioids in Plaintiffs' communities. Defendants' submissions also fail to disclose how far back in time their analysis goes or what historical data is even available on the database that was queried. For example, the submission for AEI has no entries before 2017, and the submission for HYVACS has none before 2021.

The question whether Defendants' "market activities in [Plaintiffs' communities] were so insignificant as to be unworthy of the court's or a jury's attention and resources" is an issue for summary judgment—after a full development of the factual record—or trial. *See* Doc. #2559 at 5

8

(Sept. 3, 2019) (denying motion for summary judgment of Henry Schein, Inc. and its affiliate). It is not the province of a motion to dismiss.

Defendants will be free to argue at summary judgment or trial that the volume of their dispensing is relevant to their liability and that the volume of their dispensing was too low to support liability. But their factual assertions of dispensing volume provide no basis at this stage to deny amendment to bring such claims in the first place. *See Operating Eng'rs Loc. 324 Health Care Plan v. Mid Mich. Crushing & Recycling, LLC*, No. CV 10-12987, 2012 WL 13018246, at *1 (E.D. Mich. Feb. 13, 2012) ("Whether the defense actually applies is for later proceedings."); *All Pro Brace, LLC v. United States Dep't of Health & Hum. Servs.*, No. 1:21-CV-00896, 2022 WL 17067459, at *3 (N.D. Ohio Nov. 17, 2022) (stating court's preference to address substantive arguments "on a dispositive motion, rather than on a Motion to Amend," even if amendments "*may* ultimately prove futile") (citing *Lipman v. Cuyahoga County*, No. 1:18-CV-2985, 2021 WL 9037960, at *1 (N.D. Ohio June 21, 2021)).

Defendants argue this Court has "voiced skepticism" about claims against entities with zero or *de minimis* opioid market share, citing Doc. #1377 n.2 (Feb. 15, 2019). But "voicing skepticism"—almost seven years ago—about whether such claims *will ultimately prevail* is hardly the same as barring them at the pleading stage. Doc. #1377, upon which Defendants rely, referred back to Doc. #1106 (Nov. 8, 2018), in which, when additional ARCOS data had become available, the Court instructed the PEC to submit data reflecting which defendants had market shares above 5% so the data could be used by plaintiffs to amend their complaints. Neither of those orders said that there was a 5% threshold to bring an action—or indeed any particular threshold. The more recent orders relating to Ogdensburg (Doc. #6026) and Henry Schein (Doc. #2559) make clear that no such threshold has been established. Indeed, in CT3 the Court entered judgment against

defendants with significantly less than 5% market share. *See* Doc. #4614 (CT3 final judgment); Doc. #4203 (Walmart arguing its 3.15% dispensing was too low for liability).

Defendants also point out that in 2021, the Court directed that the PEC begin dismissing with prejudice claims against pharmacy defendants with zero percent market share in the relevant jurisdictions. *See* Doc. #3688 at 2. The Defendants are not zero percent market share defendants in the markets relevant to these actions, so the Court's prior directive has no bearing on the present claims (even notwithstanding that Defendants' market-share arguments are not properly raised at this stage).

## II. DEFENDANTS' CHALLENGES TO SPECIFIC CLAIMS OR BASES OF LIABILITY ALSO FAIL

In addition to their general market-share arguments, Defendants contend that Plaintiffs cannot assert claims against VCRX and that Hy-Vee is not subject to liability as an alter ego of its subsidiaries. They are wrong on both counts.

### A. Plaintiffs State Cognizable Claims under Iowa Law Against VCRX.

Plaintiffs plausibly allege VCRX's liability under Iowa law. Iowa follows the Restatement (Second) of Torts regarding the imposition of liability on those who act in concert with a primary wrongdoer, which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

10

Restatement (Second) of Torts § 876 (1979); *see also Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994), *as amended on denial of reh'g* (Dec. 15, 1994); *Tubbs v. United Cent. Bank, N.A., Des Moines*, 451 N.W.2d 177, 182 (Iowa 1990). The proposed complaints sufficiently allege these elements with respect to VCRX.

Plaintiffs intend to pursue VCRX because its parent company, Hy-Vee, caused it to knowingly participate with its "partners" AEI and HYVACS in the wrongful distribution and dispensing of opioids by its affiliates.[30] These allegations are sufficient at the pleading stage to state claims against VCRX on the basis of acting in concert with AEI and HYVACS.

### B. Plaintiffs Sufficiently Allege Alter Ego Liability as to Hy-Vee.

Hy-Vee's attempt to strike the alter ego allegations in paragraph 325 of the proposed complaints is of limited significance, because Hy-Vee will continue to be a defendant based on its own dispensing regardless of whether it is subject to liability as an alter ego of its subsidiaries. In any event, alter ego liability entails fact-intensive inquiries best left for determination at the trial. *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 641 (N.D. Cal. 2020) ("this Court will reserve this alter-ego determination until after the parties have the benefit of a full trial record") (citing *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3553892, at *6 (N.D. Ohio Aug. 5, 2019) ("it is most efficient to combine the evidentiary hearing on these personal jurisdiction issues with the Track One trial")).

If the Court chooses to address the issue now, there is a plausible basis to hold Hy-Vee for the wrongful conduct of its wholly-owned subsidiaries. Under Iowa law:

> A corporate entity is the alter ego of a person if (1) the person influences and governs the entity; (2) a unity of interest and ownership exists such that the corporate entity and the person cannot be separated; and (3) giving legal effect to

---

[30] VCRX website, https://www.vividclearrx.com/news/vivid-clear-rx-is-proud-to-partner-with-the-2020-specialty-pharmacy-of-the-year [last viewed 10/24/25].

11

the fictional separation between the corporate entity and the person would "sanction a fraud or promote injustice."

*HOK Sport, Inc. v FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (citing *Frank McCleary Cattle Co. v. C.A. Sewell*, 73 Nev. 279, 317 P.2d 957, 959 (1957)), *cited with approval in Grand Lodge of Iowa of the Indep. Order of Odd Fellows v. Osceola Lodge No. 18*, 178 N.W.2d 362, 368 (Iowa 1970). The management and control that Hy-Vee exercised over each of its wholly-owned subsidiaries, and the fact that those subsidiaries exist for the purpose of "support[ing] [Hy-Vee's] retail operations,"[31] is sufficient at the pleading stage to satisfy the "control" element of alter ego liability. Further, the claims alleged against each of those subsidiaries suffice to plead the "wrongdoing" element of alter ego liability as to Hy-Vee.[32]

---

[31] Hy-Vee website, https://www.hy-vee.com/corporate/our-company/subsidiaries/ [last viewed 10/24/25].

[32] Defendants argue that Plaintiffs cannot be prejudiced by having the alter ego allegations stricken because "[i]f, in discovery, Plaintiffs uncover facts that would support piercing of the corporate veil, they can seek leave to amend their complaints." Opp. Br. at 5. Of course, if the complaints proceed without any allegations of alter ego liability, Hy-Vee will doubtless refuse to engage in any discovery relating to the issue, and even if Plaintiffs nevertheless were to uncover overwhelming evidence to support alter ego liability, Hy-Vee would doubtless oppose any future amendment on the ground that it had been prejudiced by not having been put on notice *in the complaints* of Plaintiffs' intention to seek to impose alter ego liability.

## Conclusion

The PEC and Plaintiffs Allamakee County and Emmett County respectfully request that the Court grant leave for Plaintiffs to file the proposed complaints against all Defendants other than Redbox. To the extent (if at all) the Court determines that the allegations against any Defendant are insufficient, Plaintiffs respectfully seek leave to address the insufficiency through further amendment.

Dated: October 31, 2025

    Respectfully submitted,

    *Plaintiffs' Co-Lead Counsel*

    Jayne Conroy
    SIMMONS HANLY CONROY
    112 Madison Avenue, 7th Floor New York, NY 10016
    (212) 784-6400
    jconroy@simmonsfirm.com

    and

    Joseph F. Rice
    MOTLEY RICE
    28 Bridgeside Blvd.
    Mt. Pleasant, SC 29464
    (843) 216-9000
    jrice@motleyrice.com

    and

    Paul T. Farrell, Jr., Esq.
    FARRELL & FULLER LLC
    270 Munoz Rivera Ave., Suite 201
    San Juan, PR 00918
    (304) 654-8281
    paul@farrellfuller.com

    *Plaintiffs' Liaison Counsel*

/s/ Peter Weinberger
       Peter Weinberger
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue, E, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

/s/ Peter Weinberger
Peter Weinberger