UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) | **CASE NO. 1:17-MD-2804** |
| | ) | **SPECIAL MASTER COHEN** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| *"PBM Bellwether Cases"* | ) ) | |
| | ) | **RULING REGARDING** |
| | ) | **THIRD-PARTY DISCOVERY FROM** |
| | ) | **WEGMANS AND KINNEY** |

The Court has selected two cases for bellwether trials against the PBM defendants: *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853; and *City of Ogdensburg v. Purdue Pharma, L.P.*, No. 19-op-45852.  In connection with Discovery Agenda Item Number 457, the PBMs seek to compel production of certain information from two third-parties: Wegmans and Kinney.

Wegmans operates 17 groceries with in-store pharmacies in the Rochester area, which lies within Monroe County, New York.  Wegmans was the largest pharmacy purchaser of all MDL-8 opioids in the City of Rochester from 2014-2019, responsible for purchasing over 30% of total dosage units.  Similarly, Kinney operates one drug store in the Ogdensburg area, which lies within St. Lawrence County, New York.  Kinney was the largest pharmacy purchaser of all MDL-8 opioids in the City of Ogdensburg from 2014-2019, responsible for purchasing about 44% of total dosage units.

In July of 2024, the PBMs issued a subpoena to Wegmans; the subpoena included 12 document requests. In May of 2025, the PBMs issued a subpoena to Kinney; the subpoena included 14 document requests. Over the following months, the parties negotiated regarding the scope of

production. The PBMs and Wegmans were able to agree on the scope of production for only a few of the Requests. The PBMs and Kinney were able to agree on the scope of production for every Request except Request No. 2, which sought production of Drug Utilization Review Data ("DUR Data"). DUR Data can reveal the extent to which a pharmacy is looking for and addressing prescription "red flags."

The parties ultimately reached impasse and the PBMs asked the Special Master to issue an order compelling Wegmans and Kinney to produce the requested documents. The parties (mostly PBMs and Wegmans) submitted over 1,500 pages in support of their positions, tracing their disputes and negotiations from July of 2024 through today. The undersigned read all of these materials and issued informal rulings via three emails. Wegmans then asked that these rulings be formalized, so it could object.[1] This is the formal *Ruling*.

The Special Master will not address in this *Ruling* each one of the many arguments and sub-arguments Wegmans offered in its various submissions, except to note that the Special Master did read and consider every one of them. Instead, the Special Master: (1) briefly explains below why he rejects three of the principal assertions that Wegmans raised repeatedly; (2) addresses another overarching issue, which is temporal scope; and (3) sets out the precise ruling for each of the disputed Requests.

*   *   *   *   *

The first assertion Wegmans raises repeatedly is that the information sought by the PBMs

---

[1] Neither the PBMs nor Kinney asked for the rulings to be formalized—only Wegmans did. *See* docket no. 69 at 5 ("If a Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter.").

is simply not relevant to the litigation. For example, Request No. 4 asks Wegmans to produce documents showing its dispensing policies and any guidance it provided to Rochester pharmacy personnel regarding opioids. Wegmans insists that "the only relevant documents responsive to Request No. 4 would be the PBMs' own documents and policies." Agenda Exh. 457V at PDF p.5900. But this is certainly not correct. The PBMs are entitled to show a jury what actions were taken and not taken by the largest dispenser of opioids in Rochester. This evidence is relevant to causation and potential allocation of fault. These actions include:

> (i) what guidance Wegmans provided on identifying and navigating red flags; (ii) what Wegmans believed constituted proper diligence prior to dispensing; (iii) how pharmacists interacted with Wegmans' internal DUR systems (e.g., for processing cash claims); and (iv) the steps and options available to Wegmans' personnel to verify the legitimacy of prescriptions, such as NY PMP data and other measures.

Letter from Anthony Alden to Special Master at 16 (Dec. 9., 2025). Wegmans' argument that documents responsive to Request No. 4 will yield only information irrelevant to any issue in the PBM bellwether cases is not well-taken. And Wegmans' relevance arguments in connection with the PBMs' other Requests are equally infirm.

The second assertion Wegmans makes repeatedly are mostly-vague references to the burden and expense of production, which Wegmans contends outweigh its likely benefit. With few exceptions, Wegmans did not even attempt to make a particularized showing of the putative burden. Thus, Wegmans' burden arguments do not provide grounds for a ruling that Wegmans need not respond at all to a Request. Still, the Special Master did take burden into account in the rulings set forth below, by narrowing the scope of what Wegmans must produce. For example, Request No. 1 originally demanded 34 data fields of Wegmans' dispensing data, but the Special Master concludes

Wegmans must produce only 8 data fields. This narrowing of scope should mitigate Wegmans' burden.

Finally, the third assertion Wegmans makes repeatedly is that the geographic scope of the Requests should be confined to the City of Rochester (there is only one Wegmans store within City limits) and not a larger area, like: (a) Monroe County (which surrounds Rochester and has 17 stores), or (b) the greater Rochester metropolitan area, which includes Rochester and its suburbs, spanning Monroe, Genesee, Livingston, Ontario, Orleans, and Wayne Counties (which contain a total of about 21 stores); or even (c) the entire State of New York (which contains about 50 stores). But it is beyond dispute that Wegmans' activity in its stores serving the entire Rochester area is relevant. Evidence in other cases has shown that opioid prescriptions dispensed in a given store often "migrate" to areas nearby and even far away, for numerous reasons. Indeed, if Wegmans were a party-defendant, the Court's general rule would be that the geographic scope of discovery would be the entire State of New York. Accordingly, the rulings below provide that the geographic scope for each Request is Monroe County, unless the parties clearly and explicitly agreed otherwise.[2]

Before turning to the individual Requests, the Special Master also addresses temporal scope. The Court has repeatedly ruled in all MDL bellwether cases that the relevant temporal scope is January 1, 1996 to the present. Wegmans has presented no convincing argument to change that

---

[2] In their communications with each other, both Wegmans and PBMs sometimes referred to all of the stores in Monroe County as "Rochester stores," or stores "in the City of Rochester." Indeed, Wegmans still does so on its own website and in press releases. Wegmans now asserts that, when the PBMs used these shorthand phrases, they knowingly agreed to accept production of documents related only to the single Wegmans store inside City limits. This assertion is untenable.
  Nonetheless, the PBMs did explicitly and clearly agree that, for Request Nos. 5, 6, and 7, they would accept only the City of Rochester and not all of Monroe County as the geographic scope. *See* Exh. 457C, Agenda PDF page 4796, n.4. Accordingly, that agreement applies to those Requests.

decision in the two PBM bellwether cases. In particular, the Special Master rejects the contention that the Court should modify the temporal scope just for Wegmans, because it is not a party to the litigation; the Court has repeatedly imposed the same temporal scope on other non-parties, especially those with large opioid prescription market-share. Accordingly, ***except as noted***, the required temporal scope is January 1, 1996 to the present for all of the Requests. That said, the parties apparently explicitly agreed otherwise with regard to certain Requests; this *Ruling* does not abrogate those agreements.[3]

Having set out the general explanations above, the Special Master now documents formal rulings for each of the Requests at issue. Rulings on Request Nos. 6, 8, and 9 are addressed first, because the parties reached complete or nearly-complete agreement on them; and rulings on Request Nos. 1 and 2 are addressed last, as they are the ones most hard-fought.

**Request Nos. 6, 8, and 9**

The parties appear to have reached compromise agreements on Request Nos. 6, 8, and 9. *See* Alden Letter (Nov. 7, 2025) at 3. Specifically, in response to Request No. 6, Wegmans has agreed to "search for any written policies describing when, and under what circumstances, its pharmacist would consult with the NY PMP, and would agree to produce such policies, if any;" in response to Request No. 8, which seeks information regarding actions taken against employees related to opioid dispensing, Wegmans has agreed to collect and produce responsive documents from 2006 through July 2024 for employees in the City of Rochester; and in response to Request No. 9, Wegmans has

---

[3] For example, the PBMs agreed that the temporal scope of Request No. 4 is "from January 1, 2006 to December 31, 2019." *See* Exh. 457B, Agenda PDF page 4787-88. That scope holds.

5

agreed to "to produce DEA Form 106s for the City of Rochester during the period of January 1, 2006 to the date of the subpoena." The PBMs have accepted these narrowed productions in the interest of compromise, with the additional concession that the geographic scope for Request No. 6 is the City of Rochester and not Monroe County.

The Special Master accepts these agreements, clarifies that the geographic scope for Request Nos. 8 and 9 is Monroe County, and directs Wegmans to promptly produce the promised documents.

* * * * *

With regard to Request Nos. 4, 7, 10, 11, and 12, the Special Master generally agrees that the PBMs are entitled to receive the documents they request, but narrowed as set forth below.

**Request No. 4**

Wegmans shall produce guidance, directives, publications, alerts, notices, presentations, or other materials concerning prescription opioids provided to employees working in its Monroe County stores. This includes materials Wegmans provided to its personnel about interacting with PBMs, including: (i) what guidance Wegmans provided on identifying and navigating red flags; (ii) what Wegmans believed constituted proper diligence prior to dispensing; (iii) how pharmacists interacted with Wegmans' internal DUR systems (e.g., for processing cash claims); and (iv) the steps and options available to Wegmans' personnel to verify the legitimacy of prescriptions, such as NY PMP data and other measures. For this Request, Wegmans is required to search for and produce material that it distributed broadly to multiple employees, as opposed to (for example) an email sent only to an individual employee.

**Request No. 7**

Wegmans shall conduct a reasonable search of centrally-maintained sources (not custodian searches) for, and produce, documents relating to investigations concerning the diversion, abuse, misuse, or trafficking of opioids within the City of Rochester. It shall produce all Documents and Communications concerning internal investigations or reporting to any law enforcement or regulatory body from 2006 through July 2024 concerning improper prescribing by prescribers in City of Rochester, or opioid abuse/diversion in City of Rochester.[4]

**Request Nos. 10, 11**

Wegmans shall produce: (a) documents reflecting instances when law enforcement made inquiries to Wegmans about prescribers and/or patients in Monroe County; and (b) audits or other documents concerning any investigation by state or federal agencies into policies or practices related to the dispensing of opioids, and which would have applied to its stores in Monroe County. This includes any criminal, regulatory, or administrative action or sanction with respect to Wegman's dispensing policies and practices that would have applied to any of its stores in Monroe County.

**Request No. 12**

Wegmans shall produce all of its contracts and agreements with any manufacturer or distributor of opioids, unless such contract or agreement clearly does not include, or expressly excludes, all of Wegmans' stores in Monroe County.

---

[4] As noted earlier, the geographic and temporal scope of Request No. 7 is narrower than the general rulings, given the PBMs' agreements.

\* \* \* \* \*

**Request No. 1**

The PBMs offered a compromise and now seek production by Wegmans of certain dispensing data, specifically: eight specified data fields; only cash claims; only Monroe County; and only Relevant Drugs. As narrowed, this information is relevant and does not impose an unreasonable burden. Wegmans is directed to produce this data.

**Request No. 2**

Regarding the PBMs' request for DUR data, the Special Master accepts Wegmans' (and Kinney's) representations that, after undertaking a reasonable investigation, they conclude that they: (a) have never extracted DUR information from their records into a bulk data set, (b) do not know how to do so, and (c) do not believe it can even be done. The Special Master further notes that Wegmans (and Kinney) use the EnterpriseRx pharmacy management system, while the "Big 3 Pharmacies" use proprietary systems (*e.g.*, Walmart uses Connexus, CVS uses RxConnect, Walgreens uses Intercom Plus); so the fact that the Big 3 Pharmacies have produced DUR data does not mean Wegmans and Kinney can do so.

Accordingly, the undersigned declines to order Wegmans (or Kinney) to respond to Request No. 2 with additional production of DUR data.

However, this ruling is conditioned on Wegmans' (and Kinney's) undertaking immediate, reasonable efforts to facilitate the production of this data from McKesson, which provides EnterpriseRx and maintains a data warehouse. The PBMs have stated they will subpoena McKesson

for Wegmans' (and Kinney's) DUR data if necessary. The PBMs should do so. Wegmans (and Kinney) shall not obstruct or delay this process; further, Wegmans (and Kinney) must each work urgently and in good faith with PBMs and McKesson to determine the easiest / fastest / best / least expensive mechanism for the DUR data to be produced (if it can be). This mechanism may still include the use by Wegmans of directions from McKesson that *do* make it possible for Wegmans to extract DUR information from their records into a bulk data set. (The same goes for Kinney.)

In sum, Wegmans (and Kinney) and PBMs and McKesson should work together (and not against each other) as much as possible to reach a solution that allows the requested DUR data to be produced.

PBMs should continue to consider shouldering some or all of the cost of DUR data production, if it is indeed possible.

*   *   *   *   *

**Objections**

Wegmans and the PBMs have each already submitted numerous position statements, including earlier letters to each other offering arguments on each Request and suggestions of compromise. In light of this copious background, together with the fast-approaching discovery deadline, the Special Master directs that any objections to this *Ruling* must be filed on or before noon on December 29, 2025, and responses to objections must be filed on or before noon on January 8, 2026. No replies are allowed. *See Order* at 2–3, n.6 (docket no. 3527) (confirming the Special Master may set deadlines for briefing of an objection, including an objection deadline shorter than 21 days).

For the parties' edification, the Special Master notes that the Court does not usually receive

9

copies of letters to the Special Master or other materials submitted in connection with a Discovery Agenda.  Accordingly, the parties may want to submit these materials to the Court as exhibits to their objection briefing.

**RESPECTFULLY SUBMITTED,**

               **/s/ David R. Cohen**
               **David R. Cohen**
               **Special Master**

**Dated:** December 17, 2025