# EXHIBIT C

**quinn emanuel** trial lawyers | los angeles, ca

865 S. Figueroa St., 10th Floor Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3159

WRITER'S DIRECT DIAL NO.
**(213) 443-3159**

WRITER'S EMAIL ADDRESS
ANTHONYALDEN@QUINNEMANUEL.COM

December 9, 2025

**VIA EMAIL**

David R. Cohen
Special Master
david@specialmaster.law

Re:     *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) –
        *City of Rochester v. Purdue Pharma L.P.*, No. 19-op-45853 (Track 12)
        PBM Defendants' Reply In Support of Their Request to Compel Wegmans Food Markets,
        Inc. and Kinney Drugs to Produce Responsive Materials

Dear Special Master Cohen,

        The PBM Defendants submit this reply in support of their request that Wegmans Food Markets, Inc. ("Wegmans") and KPH Healthcare Services, Inc. d/b/a Kinney Drugs ("Kinney")[1] be ordered to produce data and documents responsive to the subpoenas issued to them.  Over the course of 30 pages, Wegmans (and Kinney, through its adoption of Wegmans' letter) advances arguments that this Court has already rejected, plays fast and loose with the facts, and proffers new arguments that hold no merit.  The core of the dispute is that Wegmans and Kinney have the data and documents, and they can readily produce them, but they simply do not want to.  That is not a valid ground to refuse to comply with a subpoena.

I.      **Wegmans and Kinney Misstate the Relevant Facts**

        Wegmans' and Kinney's letters are riddled with factual inaccuracies designed to bolster their case for withholding important evidence.  Four such misstatements merit a response up-front because they bear on the evaluation of the PBM Defendants' requests.

        A.      **Wegmans Has 17 Rochester Pharmacy Locations.**

        After months of meeting and conferring, Wegmans now uses the assertion that it "only has one pharmacy location within the City" as a basis to refuse compliance.[2]  Wegmans has never raised this argument before—not in its responses and objections, not in any discovery letter, and

---

[1]     Unless otherwise indicated, this reply incorporates the defined terms in the PBM Defendants' Motion to Compel dated November 7, 2025.

[2]     *See* Wegmans Response at 10.

not on a meet and confer. The reason is simple: the claim is highly misleading at best, if not outright false. Wegmans' own website refers to its *17 Rochester locations* (*see* Appendix A, Figure 1)—11 of which specifically list a Rochester address (*see id.*, Figure 2). Even Wegmans' own press releases refer to its "Rochester Stores."[3] That some of these "Rochester Stores" lie just outside the formal City boundary is irrelevant, particularly where Wegmans itself admits that much of the claimed opioid use in the City is attributable to individuals who acquire opioids outside it.[4] The fact remains that, from 2014 to 2019, Wegmans was the largest pharmacy purchaser of all MDL-8 opioids in the City of Rochester and played an important role in providing access to opioids in the City.

**B.     The Geographic Scope of the Wegmans Subpoena Is Monroe County.**

Wegmans seeks to limit the scope of its production to the City of Rochester, rather than Monroe County. The Special Master has already rejected this argument, directing Walgreens, CVS, and Walmart (the "Other Pharmacies") to produce DUR data for Monroe County in its "Ruling on ESI Subpoenae to [Other] Pharmacies," dated July 28, 2025 (the "Prior DUR Order"). This makes even more sense here, given that Wegmans itself contends that most of its self-described "Rochester stores" lie just outside the City's technical boundary. In fact, Wegmans already represented to the Special Master and the PBM Defendants that it would produce certain categories of documents for both the City of Rochester *and Monroe County*. *See, e.g.*, PBM Defs.' Ex. 4, Wegmans email to Special Master Cohen dated January 14, 2025: (with regard to Request No. 8, "Wegmans will collect and produce responsive documents, if any, *for the City of Rochester and Monroe County.*") (emphasis added); with regard to Request No. 9 ("Wegmans will collect and produce DEA Form 106's *for its stores in the City of Rochester and Monroe County.*") (emphasis added); with regard to Request Nos. 10–11 ("We are in the process of exploring the burden and feasibility of collecting documents—if any—reflecting instances when law enforcement made inquiries to Wegmans about prescribers and/or patients *in the City of Rochester and Monroe County.*") (emphasis added).

Wegmans repeatedly quotes one letter from the PBM Defendants to argue that they agreed to narrow the geographic scope of the entire subpoena to the City of Rochester.[5] Again, this is highly misleading. The quote on which Wegmans relies was *expressly limited to a single request* (Request No. 5), which the PBM Defendants are not pursuing in this motion. The PBM Defendants

---

[3]    *See* Wegmans Press Release, "*Wegmans Expands Curbside Grocery Pickup to All Rochester Stores*" (Feb. 21, 2019), https://www.wegmans.com/news-media/press-releases/wegmans-expands-curbside-grocery-pickup-to-all-rochester-stores.

[4]    *See* Wegmans Response at 8 (arguing the proper scope of the subpoena should be based on the allegation that "[p]eople from outside of the community [are] traveling to parts of the city to buy and use opioids as well as commit crimes – and the residents and businesses are suffering the consequences."). Wegmans' position also conflicts with the multiple-page narrative in which Wegmans touts its robust connection to the City of Rochester and the "important role" it plays in Rochester's "economy and health care system." *Id.* at 3.

[5]    *See* Wegmans Response at 9 n. 11 (quoting from the PBM Defendants' December 23, 2024 Letter).

have never agreed to limit the scope of the disputed requests to the City of Rochester, as opposed to Monroe County.

### C.    The Temporal Scope of the Subpoenas Is Based on the Court's Orders.

Wegmans and Kinney assert that the PBM Defendants "provide no justification" for seeking certain documents back to 1996.[6]  The justification is simple:  this Court has ruled that the time period for most discovery in these tracks starts in 1996, and the PBM Defendants are entitled to discovery covering the same period to develop its defenses.  *See* Dkt. 5408 ("Because the temporal scope of discovery required by Special Master Cohen's ruling (beginning January 1, 1996) is reasonably likely to lead to admissible evidence, the value of which substantially outweighs any increased burden on the PBM Defendants, the Court overrules the PBM Defendants' objection and affirms Special Master Cohen's order as to temporal scope.")[7]  Nonetheless, as discussed below, in their attempts to reach informal agreement, the PBM Defendants have repeatedly offered to narrow the temporal scope of certain requests.

### D.    Wegmans Knows the Documents Sought are Relevant.

Wegmans makes various arguments about the relevance of the documents sought by the PBM Defendants.  While the relevance of each request is detailed in the section below addressing individual requests, it is worth remembering that, at the outset, Wegmans made no such arguments.  Over a year ago, Wegmans asked the PBM Defendants to provide search terms to identify documents relevant to the litigation, in order to "***assist Wegmans in its review efforts to ascertain what precise documents and communications Express Scripts and Optum may or may not need to help aid their respective defenses***."[8]  Tellingly, Wegmans' counsel only began asserting meritless relevance objections after informing the PBM Defendants that Wegmans' General Counsel had decided to take a "much more aggressive" approach.

## II.    Individual Requests

### A.    Request 2: DUR Data and Documents

Wegmans and Kinney ignore this Court's Prior DUR Order and mischaracterize both the facts and the law in their arguments opposing production of their DUR data and documents.[9]  This

---

[6]  *See* Wegmans Response at 10.

[7]  Wegmans argues the temporal scope of the subpoena should extend only until July 2024. *See id.*  The PBM Defendants never agreed to a July 2024 cutoff.  The subpoena itself seeks documents through the "present."

[8]  *See* PBM Defs. Reply Ex. 1 (Wegmans Email to PBM Defendants dated August 27, 2024) (emphasis added).

[9]  Wegmans' inaccurate claim that the PBM Defendants refused to provide them with five categories of documents exemplifies Wegmans' attempts to raise extraneous issues throughout the parties' meet and confers to delay the parties' progress.  *See* Wegmans Response at 12.  First, the PBM Defendants promptly provided both Wegmans and Kinney with lightly-redacted versions of

Court should direct Wegmans and Kinney to produce these DUR materials, particularly considering they have more market share in Rochester and Ogdensburg than the Other Pharmacies that were previously directed to produce these same materials under the Court's Prior DUR Order.[10]

### 1. The Requested DUR Data and Documents Are Relevant.

Wegmans argues that its data and documents are irrelevant because "the City's claims rest on the PBMs' *independent* duty to exercise their corresponding responsibility in dispensing prescriptions."[11] As an initial matter, PBMs do not dispense prescriptions—pharmacies do—and thus the PBM Defendants have no corresponding responsibility. Contrary to Wegmans' repeated mischaracterizations, PBMs do not even "approve" prescriptions—they approve only claims for insurance coverage of prescription medications; the responsibility for appropriate dispensing of those medications lies first with the physician prescribing the medications and then with the pharmacies and pharmacists that dispense them.

Regardless, the Other Pharmacies made the same argument and the Special Master correctly rejected it. As Express Scripts previously explained in connection with the Other Pharmacies' refusal to produce this data, Express Scripts' (and OptumRx's) Answers expressly reserve the right to apportion blame to Wegmans and Kinney (and other retail pharmacies) should the evidence merit it.[12] The requested data also goes directly to causation. For example, Rochester

---

the PBM Defendants' briefing against the Other Pharmacies (only redacting what they believed may contain the Other Pharmacies' confidential information), and Wegmans also confirmed it reached out to the Other Pharmacies to obtain their briefing. Second, the briefing leading up to this Court's October 2, 2025 discovery ruling on the PBM Defendants' remuneration information did not need to be provided because it is irrelevant. Regardless, Wegmans appears to have secured the Court's discovery rulings and docket entries on the issue. Third, the PBM Defendants sought to provide New York Prescription Monitoring Program ("NY PMP") data to Wegmans, but New York Bureau of Narcotics Enforcement ("BNE") denied their request for its approval to share its data. Fourth, there was no need to provide Wegmans with a copy of the protective order that precludes access to BNE's NY PMP data because Wegmans knows what data it submitted to the NY PMP and has access to NY PMP data, and the unique information the PBM Defendants seek from Wegmans is data that cannot be accessed from the PMP. Fifth, the PBM Defendants did not (and could not) provide expert reports concerning EnterpriseRx's reporting capabilities because their experts have created no such reports, and the PBM Defendants have never represented that any such reports exist.

[10] Contrary to Kinney's assertion that the Subpoena should apply only to its single store in Ogdensburg, the PBM Defendants never limited the scope of the Subpoena in this way. Consistent with this Court's prior DUR order, the PBM Defendants seek all DUR data from Kinney for prescriptions dispensed at any of its locations in St. Lawrence County.

[11] *See* Wegmans Response at 12 (emphasis added).

[12] *See* Track 12, Dkt. 146 (OptumRx Answer) at 175–77, ¶ 55(d); Dkt. 150 (Express Scripts Answer) at 107, ¶ 36(v); *see also City of Ogdensburg, NY v. Purdue Pharma LP*, No. 19-

or Ogdensburg might contend that Express Scripts (and OptumRx) should not have processed an insurance claim without additional diligence where the prescription was refilled too soon.  But Wegmans' or Kinney's internal data might show that its pharmacist discussed with the patient and verified that she had misplaced her prior prescription, thus necessitating an early refill.  In that example, Wegmans' or Kinney's own actions establish that Express Scripts' (and OptumRx's) purported lack of diligence did not cause any harm.  This critical internal data is thus highly relevant to establishing breaks in the chain of causation underpinning Plaintiffs' claims, which are not just for public nuisance but also negligence, false advertising, and violation of the RICO Act.

2.  *The Language of the Request Covers DUR Data.*

Wegmans and Kinney argue that the language of the PBM Defendants' Request No. 2 is not worded broadly enough to encompass the same data the Special Master ordered the Other Pharmacies to produce.  The Other Pharmacies raised this exact argument, nearly *verbatim*, and the Court rejected it.[13]  The same reasoning applies here where the language of the Requests is effectively identical.[14]

| Request No. 2 to Other Pharmacies | Request No. 2 to Wegmans & Kinney |
|---|---|
| "Documents sufficient to show how You and any pharmacists (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, Express Scripts and OptumRx) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, 1996, to present. Your response should include documents responsive at both the pharmacy and individual | "Documents sufficient to show how You and any pharmacists **employed by You** (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, **the Defendants**) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, 1996, to present. Your response should include documents responsive at both the pharmacy and individual |

op-45852 ("Track 22"), Dkt. 134 (OptumRx Answer) at 110–11, ¶ 51(d); Dkt. 136 (Express Scripts Answer) at 91, ¶ 36(t)(ii).

[13]  *See* Nonparty Pharmacies' June 30, 2025 Submission at 4; *see also* Express Scripts Reply Brief ISO Motion to Compel Production of Documents from Walgreens at 1–2.

[14]  Wegmans tries to avoid the fact that the Court already ruled on this argument by asserting, without any basis, that the "National Pharmacies agreed, as a compromise, to permit the PBMs to expand the scope of the request after the fact."  *See* Wegmans Response at 14.  This is (rather obviously) belied by the fact that the Other Pharmacies advanced the exact same argument in their briefing in an attempt to avoid production, and accordingly produced their DUR data only following this Court's order.

| employee level, and should include any pertinent policies, procedures, directives, or guidance." | employee level, and should include any pertinent policies, procedures, directives, or guidance." (emphasis added) |
|---|---|

Contrary to Wegmans' assertion, the PBM Defendants explained their position to Wegmans during the parties' meet and confers: the language "sufficient to show how You and any pharmacists employed by You (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers" applies at the *individual pharmacist and communication* level. In other words, Request No. 2 seeks DUR data sufficient to show how Wegmans and Kinney and their pharmacists addressed (or did not address) each point-of-sale communication from a PBM. If the PBM Defendants had only sought to understand Wegmans' and Kinney's processes at a general level, they would have limited their request to only "policies, procedures, directives, or guidance." The inclusion of a request for other documents at the level of the individual pharmacist and point-of-sale communication was intended to cover more specific documents.

In fact, contrary to what they say now, Wegmans and Kinney have *always understood* that Request No. 2 calls for this prescription-level data. On February 28, 2025, the PBM Defendants stated that Request No. 2 seeks "[D]ata showing how Wegmans' personnel in its City of Rochester stores responded to POS communications . . . . This data should include any notes (free-text or structured) entered by Wegmans' personnel in connection with Wegmans' <u>internal</u> drug utilization and prescription review process, as well as all data fields necessary to link this internal review data to the dispensing data addressed above in connection with Request #1."[15] Wegmans even previously argued that Express Scripts should explain "what steps it took to 'look' for [DUR data] or why it was unable to harvest *any* cDUR information for the **tens of thousands (or more) Wegmans prescriptions** that it adjudicates every single year," because Wegmans was entitled "to understand the scope of the efforts the PBMs undertook to harvest some of the **very same information** that they are requesting from Wegmans."[16] If Wegmans had genuinely understood that Request No. 2 effectively asked for only two examples out of its tens of thousands of such communications, why would it have asked the PBM Defendants to confirm their search for all DUR data before agreeing to perform its own parallel search?

The fact is that both Wegmans and Kinney have always understood that Request No. 2 seeks DUR data at the prescription level. Indeed, Wegmans produced the sample data for "two exemplar prescriptions" in response to the PBM Defendants' request, and with the explicit understanding that the PBM Defendants would use the data to evaluate whether the scope could be narrowed.[17] Despite several months of discussing the sample, Wegmans never suggested its

---

[15]  *See* PBM Defs. Ex. 6 (PBM Defendants' Letter to Wegmans dated February 28, 2025) at 3.

[16]  *See* Wegmans Response App'x A (Correspondence to PBM Defendants dated May 30, 2025) at 88 (emphases added).

[17]  *Id.*

exemplar prescriptions would satisfy Request No. 2; in fact, it recognized it would not do so, by repeatedly urging the PBM Defendants not to insist upon additional data.[18]

In any event, Wegmans and Kinney have waived their right to object on this basis. The PBM Defendants offered to send a supplemental subpoena to Wegmans months ago, but Wegmans did not insist on one.[19]  Nor has Kinney ever raised this objection, despite the parties discussing the production of its full DUR dataset dating back to their first meet and confer in July.  More fundamentally, sustaining Wegmans' and Kinney's objection on this basis would only cause the PBM Defendants to serve another subpoena, resulting in delay and additional wasted time and resources.

        3.       *The PBM Defendants' Request for DUR Data Concerning Prescriptions Filled in Monroe and St. Lawrence Counties Is Narrowly Tailored.*

Wegmans and Kinney argue that the PBM Defendants' request for all DUR data is overbroad because it "far exceeds what the PBMs could possibly need to defend themselves against the City of Rochester in Track 12."[20]  They take out of context two of the Court's statements to support this position.

*First*, they argue that the geographic scope of the PBM Defendants' request is inconsistent with the Court's generic statement during a January 6, 2025 hearing that "it is rarely the case that someone is going to get every bit of what they want.  What they're entitled to get is enough to

---

    [18]   Wegmans and Kinney argue that the PBM Defendants' prior communications limited the scope of the subpoena to "only documents *sufficient to show* how Wegmans communicates with the PBMs at the POS."  *See* Wegmans Response at 13.  This is once again false.  For example, Wegmans cites the following excerpt:  "*To be clear:* the Request does not seek communications with PBMs, but rather *documents sufficient to show Wegmans' use and reaction to such communications.*"  *Id.* (citing Wegmans Response, Ex. 8 at 2).  However, Wegmans omits the immediately preceding sentence, which proves that the PBM Defendants did not narrow the request:  "The PBM Defendants stated that they would not provide specific communications because the PBM Defendants do not intend to limit the Request to a specific set of communications."  Wegmans Response, Ex. 8 at 2.  Likewise, Wegmans selectively quotes an email stating that the PBM Defendants seek "data memorializing *the way* Kinney Drugs' personnel interacted with point-of-sale ("POS") communications from PBMs for opioid prescriptions filled in New York."  *See* Wegmans Response at 13.  The language alone makes clear that this request seeks DUR data, which is confirmed by the fact that when this email was sent to Kinney on July 15, 2025, the PBM Defendants were litigating the same requests—and facing the same arguments—with the Other Pharmacies.  In fact, just 30 days' later, the PBM Defendants noted that Request No. 2 would "include both POS communications with PBMs and internal DUR due diligence by Kinney prior to dispensing.  You indicated that ***Kinney is unwilling to produce this data statewide.***"  *See* PBM Defs.' Reply Ex. 2 (PBM Defendants Email to Kinney) (emphasis added).

    [19]   Request No. 1 indisputably calls for data at the prescription level.

    [20]   *See* Wegmans Response at 14.

understand the lay of the land."[21]  Of course, the Special Master already expressly addressed the proper geographic scope for data production by third-party pharmacies when it ruled that the Other Pharmacies must produce DUR data on a county-wide basis (*i.e.*, for Monroe County and St. Lawrence County), rejecting those pharmacies' attempts to limit these requests to city-only data, while also denying ESI's bid to obtain state-wide data.[22]  Consistent with that order, the PBM Defendants here seek to have Wegmans and Kinney produce their DUR data for Monroe and St. Lawrence Counties, rather than for the entire State of New York.

*Second*, Wegmans and Kinney argue that because the CMO in this case required the Plaintiffs to identify the prescriptions that they allege the PBM Defendants can be held liable for, these are the only relevant prescriptions in this litigation.[23]  But this argument reflects a misunderstanding of Plaintiffs' claims and the PBM Defendants' defenses.  Plaintiffs seek to hold the PBM Defendants liable for all the alleged impacts of the entire alleged opioid crisis in Rochester and Ogdensburg.  The PBM Defendants are thus entitled to understand the sources of opioids in the Cities and the extent to which other players (including pharmacies) were involved.  Given Wegmans' and Kinney's prominent role in dispensing opioids in Rochester and Ogdensburg, the PBM Defendants are entitled to information concerning the extent and nature of their opioid dispensing, and the steps they took before dispensing.

### 4. The PBM Defendants Do Not Have the Requested Data or Documents.

Wegmans argues that the PBM Defendants "already have the majority of this data" because:  (a) the PBM Defendants adjudicate a significant number of Wegmans' and Kinney's claims; and (b) the PBM Defendants' "consultants have already conducted a review of Wegmans' DUR data from the transactions that they adjudicated."[24]  But this too is an argument made by the Other Pharmacies that the Special Master rejected.[25]  As Express Scripts explained in depth in its prior briefing[26]—which was provided to Wegmans—the PBM Defendants do not have Wegmans' and Kinney's (i) "independent, internal DUR records"; (ii) "DUR data related to other PBMs"; and (iii) DUR data related to claims not paid for with insurance (*i.e.*, cash claims).[27]  This data is

---

[21]  *See* PBM Defs.' Ex. 2 (January 6, 2025 Hearing Transcript) at 35:20–23.

[22]  *See* Special Master Cohen Order dated July 28, 2025.

[23]  *See* Wegmans Response at 14–15.

[24]  *See* Wegmans Response at 15.

[25]  *See* Nonparty Pharmacies' June 30, 2025 Submission at 3.

[26]  *See* Express Scripts' July 3 Reply to Walgreens at § II (titled "Express Scripts Does Not Have The DUR Data It Seeks.")

[27]  Special Master's July 28, 2025 Ruling on ESI Subpoena to Pharmacies.  Wegmans repeatedly suggests that the PBM Defendants seek only DUR messages sent to Wegmans' pharmacies.  This too is a mischaracterization.  The PBM Defendants seek not just messages sent to Wegmans and Kinney, but also: (i) messages sent back to the PBM Defendants; (ii) messages sent to and from other PBMs; and (iii) data from the pharmacies' internal DUR systems, including for cash claims.  The Other Pharmacies tried to impose a similar limitation after the Court ordered production of their DUR data, and the Court correctly rejected it.  *See* Special Master Cohen Order

available only to Wegmans and Kinney.  And, contrary to Wegmans' misleading claim, the PBM Defendants have never indicated that their consultants "had already conducted a review of Wegmans' DUR data."  Rather, Express Scripts indicated that its consultants' review was limited to available DUR messages that only Express Scripts sent to and received from Wegmans.  Express Scripts does not have "Wegmans' DUR data" and thus has never reviewed it.

> ### 5.  *Wegmans' and Kinney's Burden Arguments Are Inconsistent and Unsubstantiated.*

Wegmans and Kinney make three arguments as to purported burden.  Each fails.

*First*, Wegmans (and Kinney by incorporation) argue that they do "not maintain a data set of bulk DUR data records in the ordinary course of business."[28]  This is a sleight of hand.  Wegmans and Kinney concede that they *do maintain* "all DUR alerts, clinical edits, and clinical messages" in the ordinary course of business; it's just that this data is purportedly kept "as part of the individual prescription record."[29]  As the PBM Defendants previously explained, this is different from the parties' dispute concerning remuneration data, which would have required Express Scripts to "create an entirely artificial allocation methodology for this litigation" and "require ESI to undertake calculations and access data fields in ways it never normally does."[30]  By contrast, Wegmans and Kinney do not need to create any data or undertake any calculations to produce the DUR data.  They simply object to producing data they already have.[31]

*Second*, Wegmans claims, alternatively, that it "does not even know if it is possible" to extract the DUR data and that it "is not able to extract the DUR data documentation in bulk."[32]  But it cannot be both.  If, after all these months, Wegmans *still* genuinely does not know whether it can extract the DUR data, it should be ordered to find out immediately and report back.  The law requires as much:

---

dated July 28, 2025; *see also* Special Master Cohen Order dated August 20, 2025 (agreeing that the Other Pharmacies' request for clarification concerning the scope of responsive communications sought to "relitigate decided issues").

[28]  *See* Wegmans Response at 16.

[29]  *Id.*

[30]  *See* Dkt. 6307 at 6.

[31]  Wegmans and Kinney oddly cite a provision in the PBM Bellwether CMO, which provides that "PBM defendants shall begin providing to Plaintiff, on a rolling basis, a list of data fields included in their claims data, rebate and administrative fee data, and mail order pharmacy dispensing data, along with data dictionaries or other available descriptions of databases and each field." Dkt No. 5282 at 6.  But that provision does not refer to the production of ***data***; instead, it refers only to the identification of available data fields and descriptions of those fields.  And as the rest of that CMO section clarifies, this provision simply aims to ensure that the parties understand what specific data fields refer to, given data fields are often cursory and not self-explanatory.  This has nothing to do with the production of the underlying data.

[32]  *See* Wegmans Response at 16.

Parties are not excused from this obligation because their data systems are complex, making it difficult to map exactly where data resides. Nor is a party excused from this obligation because a workable solution is not immediately apparent. "A party responding to a document request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control."[33]

Alternatively, if Wegmans is saying that it *cannot* pull the DUR data without having a pharmacist go prescription-by-prescription, this claim should be treated with extreme skepticism for several reasons. First, Wegmans is a sophisticated multi-billion-dollar company with thousands of employees that, even in its letter, promotes itself as using the "latest digital tools that allow customers to interact with pharmacy teams."[34] The notion that Wegmans cannot figure out how to extract targeted data fields held in an advanced software platform is not credible. Second, Wegmans previously promised to provide the PBM Defendants with an affidavit substantiating the alleged burden, but then reneged. Instead, Wegmans has provided a carefully worded document that does not directly answer whether it can extract the data or not. Third, Wegmans' claim that it took a pharmacist "approximately 15 minutes to complete this process for each exemplar prescription" is misleading because Wegmans exemplars contain *more information* than the PBM Defendants seek.[35] The exemplar documents Wegmans produced show Wegmans' entire workflow, from placing the order to dispensing the drug. This is not what the PBM Defendants seek. They seek only the DUR data for opioid prescriptions in Monroe and St. Lawrence Counties, for which Wegmans has offered no estimate of burden. Fourth, Wegmans states that it "must manually screenshot the screens with DUR information from within the prescription record."[36] But if that is the case, Wegmans should simply produce the prescription record. While this is more than what the PBM Defendants seek, they have no issue accepting more information if producing less would be more burdensome.[37]

In short, even now it is unsubstantiated that Wegmans and Kinney would incur any real burden in producing the requested DUR data. Given their inconsistent representations, and the lengths to which they have gone to avoid producing the data—including refusing to *even ask their software vendor (McKesson) if it can be done*—before the Special Master considers accepting their unsubstantiated burden assertions, each should be ordered to provide a client declaration that sets out in plain terms how the data could most easily be produced, an estimate of the time and/or cost

---

[33]  *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 418 (S.D. Cal. 2018).

[34]  *See* Wegmans Response at 4.

[35]  *Id.* at 20.

[36]  *Id.* at 16.

[37]  Wegmans claims that some pre-2019 DUR information was "hand-written on paper scripts, scanned, and uploaded as an image to Wegmans' pharmacy management software" and "[t]hat handwriting cannot be exported as a data field." Wegmans Response at 16. But the resolution here is simple: Wegmans can simply produce those electronic images.

to produce it, and an explanation of the basis for their estimates.  This is what Wegmans promised to produce months ago.  If it turns out that Wegmans and Kinney truly cannot export the DUR data or a dataset inclusive of it, the PBM Defendants are prepared to subpoena McKesson for it but would ask the Special Master to make clear that Wegmans and Kinney may not obstruct or delay the production in any way.[38]

*Third*, Wegmans (and Kinney via incorporation) argue that they would be "required to redact confidential and employee/patient information in [their] DUR data records."[39]  But the Other Pharmacies already made this argument, and it was rejected because the Protective Order expressly protects both PHI and PII.  That "Wegmans is not a party to the MDL" is irrelevant.[40]  The Protective Orders in the MDL protect productions by parties and third parties alike[41]; indeed, many third parties have produced PHI and PII in the MDL over the years under the confidentiality provisions of the Protective Orders.  This would obviate any need for Wegmans to redact information under 45 C.F.R. § 164.502(b)(1) or otherwise.[42]  And, as the Special Master has already held with respect to the Other Pharmacies, Wegmans or Kinney "can choose to redact PHI instead, but must do so at their own expense; and they cannot delay production because of redaction any more than is fully necessary."[43]

---

[38]  That Wegmans and Kinney object even to McKesson producing the DUR data further evidences that their refusals have nothing to do with purported burden.  *See* Wegmans Response at 17.  Wegmans contends that it "should not be compelled to reallocate its vendor resources away from clinical needs to prioritize the creation of data sets that serve no legitimate purpose and are requested solely for litigation."  *See* Wegmans App'x A ¶ 91.  Of course, Wegmans offers no basis to believe that resources would need to be "reallocated."  It is the vendor—McKesson—that would know whether it has the resources to produce the data, not Wegmans.

[39]  *See* Wegmans Response at 19.

[40]  *Id.*

[41]  *See* Dkt. No. 441 (Protective Order) ¶ 3 ("Third parties who so elect may avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order and thereby become a Producing Party for purposes of this Protective Order.").

[42]  The regulation cited by Wegmans and Kinney includes a provision entitled, "Permitted Disclosures," which allows for the production of this information subject to a court order (and in certain cases, even in the absence of a court order).  *See* 45 C.F.R. § 164.512 (e)(i).  This is why courts routinely reject Wegmans' argument.  *See, e.g., Ruggles v. WellPoint, Inc.*, 2010 WL 11570681, at *14–15 (N.D.N.Y. Dec. 28, 2010) ("[N]either HIPAA nor its rules and regulations impeded the disclosure of non-parties' personal health information when protected by a court order; rather, it permits such disclosure.").

[43]  *See* Special Master Cohen Order dated July 28, 2025.

6.     *That Wegmans or Kinney Believe The DUR Data Would Be Unreliable Is Irrelevant.*

Wegmans and Kinney also contend that producing "DUR data without the full dispensing log" would render the DUR data "unreliable", which in turn makes it "not relevant."[44] This argument is meritless for several reasons.

*First*, if Wegmans and Kinney believe that there is additional relevant information, the PBM Defendants welcome its production.  Wegmans confirmed that it maintains its full prescription records in the ordinary course of business, and it should produce it given its representation that it is a "complete, comprehensive record of each prescription Wegmans fills."[45]

*Second*, any concerns about the reliability of the data go, at most, to issues of admissibility at trial, not to discoverability at the record-development phase.  Wegmans offers no authority for the proposition that a third-party can withhold evidence solely on the basis of its own self-serving belief that it would be unreliable without more.  The sole case Wegmans cites, *Foley v. Town of Marlborough*, 2022 WL 3716505 (D. Conn. Aug. 29, 2022), is inapposite.  There, the court held that the requested information could be obtained from other means, and merely noted *in dicta* that "it is not even clear that the data provided would be reliable" because of gaps and overrides.  *Id.* at *33.  Here, the data is not available elsewhere, and neither Wegmans nor Kinney contend their DUR data has gaps or has been overridden.

In sum, most of Wegmans' and Kinney's burden objections have already been rejected by this Court, and the remainder should be rejected now.  DUR data is critical evidence that the PBM Defendants need to develop their defenses.

## B.     Request 1: Targeted Dispensing Data for Only Cash Claims

Wegmans' justifications for attempting to withhold a limited set of dispensing data (only eight fields; only cash claims; only Monroe County; only Relevant Drugs) largely recycle the same arguments it makes for withholding DUR data and fail for the same reasons.

*First*, Wegmans argues that the PBM Defendants' receipt of data from the New York Prescription Monitoring Program ("NY PMP") "moots Request No. 1 in its entirety."[46]  But, as the PBM Defendants explained to Wegmans, the NY PMP data does not contain all data for cash claims dispensed at Wegmans, which is why—*at Wegmans' request*—the PBM Defendants narrowed Request No. 1 to seek eight fields for only cash claims.  It is not clear why Wegmans

---

44    *See* Wegmans Response at 19.

45    *See* PBM Defs. Ex. 12 (Wegmans Email to PBM Defendants dated October 16, 2025 at 2–3 ("As we have discussed, the official prescription record as it is made and kept in the ordinary course of Wegmans' business resides in the EnterpriseRx Pharmacy Management System as a complete, comprehensive record of each prescription Wegmans fills.").

46    Wegmans Response at 22.

asked the PBM Defendants to identify the data they did not already receive from the NY PMP if Wegmans intended to simply refuse to produce any dispensing data at all.

*Second*, Wegmans argues that cash purchases are "irrelevant to the City of Rochester's claims against the PBMs" because such purchases are not included in the City's red flag analysis.[47] But Wegmans already conceded that dispensing data is relevant,[48] and confirmed the same regarding dispensing data for cash claims when it agreed to search for and produce it.[49] Moreover, the Other Pharmacies already made this argument,[50] and the Special Master rejected it.[51] Given the alleged opioid epidemic in Rochester and Ogdensburg, Wegmans' and Kinney's outsized roles in dispensing opioids in Rochester and Ogdensburg, respectively, the PBM Defendants' lack of involvement in cash fills, and the Plaintiffs' allegations concerning cash payments for prescription opioids, the PBM Defendants are entitled to basic information about the volume of opioids paid for in cash, by whom, when, and for how much money.  In any event, Wegmans' speculation about how the PBM Defendants will use this cash-claim data is not a valid objection.  *See Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("[D]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.") (citation omitted); *Apel v. Murphy*, 70 F.R.D. 651, 654 (D.R.I. 1976) ("Ordinarily, in ruling on a discovery motion, the Court will not determine whether a claim in the complaint, if proved, would have a bearing on the ultimate outcome of the action, it being sufficient that the matter to be explored is relevant to the issues made by the pleadings.").

Wegmans also recycles its prior argument that its conduct—and hence any information about its conduct—is irrelevant because the PBM Defendants could still be a proximate cause for the alleged public nuisance.[52]  But the requested dispensing data is not relevant solely because of its pertinence to Wegmans' diligence or lack thereof.  As noted above, the PBM Defendants seek only basic facts about cash purchases, such as the medications dispensed, their strength, dispensing

---

[47]  *Id.* at 23.

[48]  PBM Defs. Reply Ex. 3 (Wegmans Email to PBM Defendants dated October 3, 2024) ("Wegmans will produce data, to the extent it is responsive and within Wegmans custody and control, after application of relevant search terms and a limitation on the temporal scope as demanded in our Objections previously served and confirmed in my email of August 27.  Once we receive and analyze the proposed search terms and, we will discuss with our client and get back to you on a timeline for producing responsive data.").

[49]  *See* PBM Defs. Ex. 12 (Wegmans Email to PBM Defendants dated October 9, 2025) at 5 ("Wegmans will begin to explore whether it is feasible to respond to the revised [cash claims] data request that you presented below.  As we understand it, the PBMs obtained what they need to analyze non-cash transactions and are now requesting data fields relating to cash transactions.  *We will explore whether Wegmans maintains its prescription information in that fashion, and if so, the feasibility of producing it.*") (emphasis added).

[50]  *See* Nonparty Pharmacies' July 10, 2025 Submission at 1, fn. 2.

[51]  *See* Special Master Cohen Order dated July 28, 2025 (ordering production of DUR data from the Other Pharmacies).

[52]  Wegmans Response at 23–24.

dates, and payment amounts. This information could be used to evaluate the potential impact of discount programs operated by manufacturers and distributors, for example. The data are thus relevant irrespective of whether they shed light on Wegmans' diligence (or lack thereof) or proximate causation.

In any event, neither the PBM Defendants nor the Court can evaluate whether Wegmans is an intervening cause without seeing its data. We are not required to simply accept its *ipse dixit* denials. Moreover, public nuisance is not Rochester's only claim. Wegmans knows this, but it wholly fails to address any of these other claims—namely, claims for negligence, false advertising, and violation of the RICO Act.[53] Dispensations of prescription opioids into Monroe and St. Lawrence County for cash—*i.e.*, prescriptions that the PBM Defendants had nothing to do with—are directly relevant to Plaintiffs' nuisance and non-nuisance claims, and to the PBM Defendants' defenses, because they pertain to Plaintiffs' alleged injuries from oversupply, abuse, and misuse of prescription opioids in their respective jurisdictions.

*Third*, Wegmans again argues that the eight data fields requested would present "an incomplete and unreliable picture of the decision-making process employed by Wegmans in dispensing prescriptions."[54] But, as explained above, Wegmans is welcome to produce more dispensing data should it wish to provide what it considers to be a "complete picture."

*Fourth*, and relatedly, Wegmans objects that the requested data "would be used in a misleading manner that could damage Wegmans' reputation in its home."[55] But Wegmans fails to explain how the basic data fields about cash prescriptions could be used in a misleading manner or provide any evidence to support its baseless accusation that the PBM Defendants intend to do so. Nor does Wegmans offer any authority that its speculative concern about its reputation is a valid reason to withhold important evidence,[56] which is not surprising given that the law supports the exact opposite conclusion. *See Parker v. Delmar Gardens of Lenexa, Inc.*, 2017 WL 1650757, at *5 (D. Kan. May 2, 2017) (holding that "conclusory claims of annoyance, harassment, and embarrassment are not sufficient to satisfy an objecting party's burden when seeking a protective order," and finding that even "when weighing the potential for abuse, courts tend to resolve the issue on the side of the broad nature of discovery, and the concept that information is not required to be admissible at trial to be discoverable.") (emphasis omitted).

---

[53] *See* Wegmans Response, Ex. 3 at pp. 257–98.

[54] *See* Wegmans Response at 25.

[55] *Id.*

[56] Wegmans cites to cases which stand only for the general (and inapplicable) rule that courts have the ability to issue protective orders to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense" and which address markedly different facts. Wegmans Response at 26. *But see generally In re Ohio Execution Protocol Litig.*, 845 F.3d 231 (6th Cir. 2016) (upholding a protective order to prevent disclosure of source of drugs used for lethal injections); *Guercia v. Equinox Holdings, Inc.*, 2013 WL 2156496 (S.D.N.Y. May 20, 2013) (quashing subpoena for the plaintiff's employment records).

*Finally*, Wegmans contends that Judge Polster has somehow disfavored third-party discovery directed to causation and apportionment. That is incorrect. Each of MDL Dkt. Nos. 3246, 5168 and 5265 on which Wegmans relies concerned adding third-party defendants, which could obviously impact the length and complexity of trial. Here, the PBM Defendants have never stated any intention to implead either Wegmans or Kinney—they seek only discovery. Judge Polster and several other courts have allowed defendants to introduce evidence on the issue of apportionment, including from third parties. For example, this Court held:

> Upon careful consideration of the evidence and equities in this case, the Court finds it is reasonable and fair to allocate one-third of the recoverable abatement costs to the Pharmacy Defendants for the harm caused by improper dispensing conduct in the Counties. This allocation takes into account the fact that all three categories of actors along the pharmaceutical supply chain—that is, manufacturers, distributors, and dispensers of prescription opioids—contributed to the nuisance in the Counties, and it would be inequitable to hold these Defendants liable for more than a one-third share.

Dkt. No. 4611 at 57; *see also Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, 2025 WL 1707625, at *45 (Md. Cir. Ct. June 12, 2025) ("Defendants also complain that the jury failed to apportion any or sufficient liability to pharmacies and bad-faith prescribers. . . . The failure to apportion some liability to these actors may have been due to the Court's erroneous instruction on apportionment. The Court agrees with Defendants that apportionment to these actors was appropriate . . . .").

In response to Wegmans' request, the PBM Defendants significantly narrowed the scope of Request No. 1 to only eight data fields for only cash purchases of only the Relevant Drugs in Monroe County. This is not data the PBM Defendants already have, is plainly relevant, and would not be an undue burden for Wegmans to produce. It should be directed to do so.

## C. Request No. 4: Dispensing Policies and Guidance Provided to Rochester Personnel Regarding Opioids

Wegmans contends that the PBM Defendants "have never done anything to limit the scope of this Request."[57] This is demonstrably false. In their February 28, 2025 letter, the PBM Defendants agreed to limit this Request to guidance, directives, publications, alerts, notices, presentations or other materials (not "all Documents and Communications") concerning prescription opioids provided to employees working in its Monroe County stores (not all employees) from January 1, 2006 (not 1996) to December 31, 2019 (not the present).[58] The PBM Defendants have repeatedly emphasized they are not looking for every email that mentioned opioids, but rather guidance and policy-type documents given to Rochester employees that would have applied to dispensing opioids.

---

[57] Wegmans Response at 27.

[58] *See* PBM Defs. Ex. 6.

Wegmans does not contend this narrowed scope would be unduly burdensome, but instead makes the same meritless relevance arguments discussed above. What Wegmans told the employees in its 17 "Rochester stores" about dispensing prescription opioids is directly relevant to liability and causation. For example, if Wegmans was telling its employees to ignore alerts from PBMs—as evidence shows some other pharmacies did—that would plainly be relevant to causation. Perhaps this is why every other pharmacy subpoenaed to date—including Kinney[59]—has produced these records without a fuss.

Wegmans offers to produce policies or procedures that "its pharmacy department has on POS communications from the PBMs."[60] But the PBM Defendants need to know more than just what Wegmans told its personnel about interacting with PBMs, including (i) what guidance Wegmans provided on identifying and navigating red flags; (ii) what Wegmans believed constituted proper diligence prior to dispensing; (iii) how pharmacists interacted with Wegmans' internal DUR systems (e.g., for processing cash claims); and (iv) the steps and options available to Wegmans' personnel to verify the legitimacy of prescriptions, such as NY PMP data and other measures.

Wegmans' policies and guidance pertaining to the dispensing of prescription opioids in Rochester are clearly relevant. The Court should reject Wegmans' narrowing and order Wegmans to produce responsive materials as every other pharmacy has already done.

### D.     Request 7: Efforts to Investigate Improper Prescriptions or Diversion

At the January 6, 2025 hearing, and again in emails sent later that month, Wegmans stated that it "would be willing to search its archives for interactions with regulators and law enforcement about local prescribers in Rochester."[61] Wegmans made this offer because it knows that documents concerning the improper prescription and diversion of opioids in Rochester is relevant to liability and causation. Yet, in response to the PBM Defendants' attempt to negotiate a compromise, Wegmans did not move toward the middle, but instead narrowed its position even further—offering to produce only "official forms" used by only one of its "Rochester stores" to track instances when law enforcement or regulators inquired regarding prescribers or patients.

This is obviously insufficient. Wegmans has offered no detail about what these forms show, but they are unlikely to reveal who or what Wegmans was investigating, what prompted the investigation, what the investigation revealed, whether Wegmans reported any wrongdoing, and any steps taken (or not taken) by Wegmans to address it. Contrary to Wegmans' unfounded rhetoric, the PBM Defendants are not asking Wegmans to "go through the burdensome process of

---

[59]   See KPH000001 ("Controlled Substance Monitoring and Dispensing Policy"). CVS, Walgreens, Walmart, Kmart, Rite Aid, and Price Chopper have likewise produced their dispensing policies.

[60]   Wegmans Response at 28.

[61]   See PBM Defs. Ex. 5 (Wegmans Letter to PBM Defendants dated January 29, 2025) at 4.

sifting through emails and other documentation from the past 20 years."[62]  Rather, the PBM Defendants simply want Wegmans to conduct a reasonable search of centrally-maintained sources (not custodian searches) for documents relating to investigations concerning the diversion, abuse, misuse, or trafficking of opioids within Monroe County.

### E.  Requests 10 and 11: Legal and Regulatory Actions Against Wegmans

On January 14, 2025, Wegmans' counsel represented to the PBM Defendants that "Wegmans has never been the subject of any criminal or regulatory fine or administrative action with respect to its dispensing policies in the City of Rochester or Monroe County."[63]  In response, the PBM Defendants sought confirmation that Wegmans' representation was "intended to include any type of criminal, regulatory, or administrative action or sanction with respect to Wegmans' dispensing policies and practices that would have applied to any of its stores in the City of Rochester."[64]  But rather than answer this straightforward question, Wegmans pivoted to offering to produce "any documents or communications concerning regulatory fines imposed or administrative actions against" *one of its pharmacies* in the City of Rochester with respect to its opioid dispensing policies from January 1, 2006 to the date of the subpoena, to the extent any such documents exist.[65]

Wegmans' abrupt about-face is revealing.  It suggests that Wegmans has indeed faced criminal, regulatory, or administrative action or sanction with respect to its dispensing policies and practices that would have applied to its Rochester stores, and has been making carefully crafted representations and proposals deliberately designed to hide this fact.  The Court should not allow such obfuscation.  Wegmans' Rochester stores collectively purchased an average of six million opioid units per year from 2006 to 2019, and the PBM Defendants are entitled to find out whether any questions were raised when Wegmans dispensed them into Monroe County, including what actions Wegmans took (or did not take) in response to them.

### F.  Request 12: Contracts Between Wegmans and Manufacturers/Distributors

Wegmans asserts in its response that it will now produce all manufacturer and distributor agreements, but will excise from production any agreements that it concludes are "inapplicable to the pharmacy in the City."[66]  Given that Wegmans has more than one store in Rochester, this limitation is inappropriate.  Wegmans should be directed to produce all contracts and agreements

---

[62]  Wegmans Response at 28.

[63]  *See* PBM Defs. Ex. 4 (Wegmans Email to PBM Defendants dated January 14, 2025).

[64]  *See* PBM Defs. Ex. 6 (PBM Defendants Letter to Wegmans dated February 28, 2025) at 7.

[65]  *See* PBM Defs. Ex. 7 (Wegmans Letter to PBM Defendants dated October 24, 2025) at 7 (emphasis added).  Wegmans' use of the plural "pharmacies" underscores the misleading nature of its current claim it has only one pharmacy in Rochester.

[66]  *See* Wegmans Response at 29.

17

with any manufacturer or distributor of opioids unless such contract or agreement expressly excludes any of Wegmans' stores in Monroe County.

<div align="center">*       *       *</div>

After months and months of negotiations, and raising every argument in the book, Wegmans and Kinney must now be ordered to produce the same categories of documents and data every other subpoenaed pharmacy has produced.  The delay is prejudicing the PBM Defendants' ability to prepare their defenses.

Sincerely,

Anthony P. Alden

Encl.

cc:     Counsel of Record
        Counsel for Wegmans
        Counsel for Kinney

<div align="center">18</div>

## Appendix A

Figure 1, available at: https://www.wegmans.com/stores



Figure 2, available at: https://www.wegmans.com/stores



# EXHIBIT 1

| | |
|---|---|
| **From:** | Zawodzinski, Jr., James J. <JZawodzi@hodgsonruss.com> |
| **Sent:** | Tuesday, August 27, 2024 11:10 AM |
| **To:** | Dan Humphrey; David Graham; Lindsay Weber; Badley, Alicia; Roshan Rama; Daily Guerrero; Finkel, Rachel |
| **Cc:** | Agins, Joshua; Galvin, Jodyann; Wells, Claire |
| **Subject:** | RE: Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc. |
| **Attachments:** | Wegmans - Express Scripts - Responses and Objections - Final(65606968.1).pdf; Wegmans - Express Scripts - Enclosure Letter to Daniel Humphrey.pdf |

**[EXTERNAL EMAIL from jzawodzi@hodgsonruss.com]**



Thanks, all, for a productive meeting this morning.

This email confirms that Wegmans will not produce documents responsive to Requests Nos. 5 and 6.

With respect to Request Nos. 1, 2, 3, 4, 7, 8, 9, 10, 11, and 12, issuing counsel will provide a brief description of why the requested documents are relevant to the Litigation, a limited and appropriate set of search terms to narrowly-tailor any forthcoming production, and the governing confidentiality order. Wegmans asks for a description of the relevance of each of these Requests because it is not readily apparent why much of the requested information is relevant to the claims in the MDL Litigation and, given Wegmans' status as a non-party, Wegmans is not obligated to respond without more. For example, the all-encompassing terms "All", "Documents", and/or "Communications" in several of these requests are overly broad and, when paired with terms like "or any other Opioids" as requested, would return a universe of documents and communications that are irrelevant to and outside the scope of the claims in the Litigation. To avoid these types of situations, Wegmans requests that issuing counsel prepare brief relevancy points regarding each request that would, together with specific set of search terms, assist Wegmans in its review efforts to ascertain what precise documents and communications Express Scripts and Optum may or may not need to help aid their respective defenses. Wegmans will work cooperatively and in good faith with issuing counsel to pair down the requested documents and communications as needed, understanding that Wegmans' objections are preserved as set forth in the attached Responses and Objections and that issuing counsel has agreed to limit the temporal scope of any search to 2020—present.

Please let me know if you'd like to discuss further. I look forward to receiving your responses and to our next call on 9/10. Enjoy Armenia, Dan!

Thank you,

James

**From:** Zawodzinski, Jr., James J.
**Sent:** Tuesday, August 27, 2024 8:48 AM
**To:** Dan Humphrey
**Cc:** Patrick King ; Galvin, Jodyann ; Agins, Joshua ; Wells, Claire
**Subject:** Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc.

Dan,

Please see the attached correspondence enclosing Wegmans Food Markets, Inc.'s Responses and Objections to Express Scripts' Subpoena Duces Tecum.

Regards,

**James J. Zawodzinski, Jr. (he/him/his)**
Senior Associate
Hodgson Russ LLP

**Tel:**  716.848.1595

Fax:  716.819.4765



Twitter | LinkedIn | website | e-mail

The Guaranty Building | 140 Pearl Street, Suite 100 | Buffalo, NY 14202
Tel: 716.856.4000 | map
90 Linden Oaks, Suite 110 | Rochester, NY 14625
Tel: 585.613.3919 | map
605 Third Ave, Suite 2300 | New York, NY 10158
Tel: 212.751.4300 | map

*This message may contain confidential information that is protected by the attorney-client privilege or otherwise. If you are not the intended recipient, you are notified that any disclosure, copying, or use of the contents of this message is strictly prohibited. If this message has been received by you in error, please notify the sender immediately by e-mail and delete the original message. Thank you.*

# EXHIBIT 2

| From: | Roshan Rama |
| Sent: | Friday, August 15, 2025 10:34 AM |
| To: | Zach Mattison |
| Cc: | Anthony Alden; David Graham; Dana Henshaw; QE-ESI-3PSubpoenas; AB Optum 3P Subpoenas; Cory Schoonmaker |
| Subject: | RE: Express Scripts/Optum Subpoena to Kinney Drugs |

Zach:

Thank you for discussing with your client and meeting to discuss the outstanding subpoena to Kinney Drugs last week. We are writing to memorialize our discussion. Please let us know if you disagree with any aspect of our summary.

During our call, we discussed each of the requests in turn.

1.  Request No. 1: As previously conveyed, we are reserving our rights, but we agree to hold off on this request because we have recently received dispensing data from the New York PDMP that we anticipate will be sufficient.

2.  Request No. 2: We explained that what we are looking for is data memorializing the way Kinney Drugs' personnel interacted with point-of-sale ("POS") communications from PBMs for the Relevant Drugs filled in New York. This would include both POS communications with PBMs and internal DUR due diligence by Kinney prior to dispensing.  You indicated that Kinney is unwilling to produce this data statewide. We discussed limiting the data by geographic scope (i.e., St. Lawrence County only). You still objected to producing this information on the grounds that production would require review by a HIPAA lawyer.  We pointed out the protective order in this case expressly covers confidential health information, but you mentioned the risk of a data leak as causing concern.  We intend to revert on this issue.

3.  Request No. 3: You represented that Kinney has no responsive documents to this Request, as the manufacturers have not communicated with Kinney Drugs regarding opioids since the 1990s.

4.  Request No. 2 & Request Nos. 4, 5 & 7 (policies component): For these requests, you stated that Kinney has only ever had a single policy and procedure document setting forth Kinney's policies and procedures relating to dispensing controlled substances. You indicated that historical versions of this document are unavailable and that it is unlikely those policies exist within email communications, as they are housed on the company's intranet. You indicated, however, that it is possible the person(s) responsible for such document may have historical versions in his/her emails, and you agreed to check with Kinney.

5.  Request No. 6:  You represented that, based on a reasonable search, Kinney is aware of only a single prescriber that was investigated for issuing suspicious prescriptions in New York, and you agreed to produce documents relating to such investigation.   You stated that Kinney has no broader list of prescribers responsive to this Request.

6.  Request No. 7 (communications with DEA/NY PMP component):  You represented that Kinney has DEA audits that it will produce after completing redactions and review. But you noted that Kinney does not have any additional responsive communications for Request No. 7.

7.  Request Nos. 8, 9, 11, and 12: For these requests, you represented that Kinney has no responsive documents other than (1) documents concerning the investigation of the single prescriber discussed above, (2) documents concerning the investigation and termination of a traveling pharmacist, and (3) the documents discussed above concerning DEA audits.

8.  Request No. 10: You stated that the only responsive documents to this Request would be Form D-6s that Kinney will produce.

9.  Request 13: You stated that Kinney Drugs has not received any rebates from manufacturers of opioids. You also indicated that while Kinney has received discounts, those discounts are not specific to opioids. Instead, all pricing is standardized regardless of drug class.

10. Request 14: You indicated that the only responsive document Kinney has is a basic, tri-fold flyer on opioids that was identified through your searches of information. You indicated that you intend to produce this document.

We look forward to your production. Do you have an estimate for when you intend to produce the above documents, and any other additional documents? Thank you for your time.

Best regards,

**Roshan Rama**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Roshan Rama
**Sent:** Thursday, July 31, 2025 11:37 AM
**To:** Zach Mattison <zmattison@sugarmanlaw.com>
**Cc:** Anthony Alden <anthonyalden@quinnemanuel.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>; QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Thank you, Zach. I will send a calendar invite for noon next Wednesday.

Best regards,

**Roshan Rama**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Zach Mattison <zmattison@sugarmanlaw.com>
**Sent:** Thursday, July 31, 2025 9:51 AM
**To:** Roshan Rama <roshanrama@quinnemanuel.com>
**Cc:** Anthony Alden <anthonyalden@quinnemanuel.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>; QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** Re: Express Scripts/Optum Subpoena to Kinney Drugs

[EXTERNAL EMAIL from zmattison@sugarmanlaw.com]

 **This message needs your attention**
- Some Recipients have never replied to this person.

I can do before 2

-Zach.

> On Jul 31, 2025, at 12:39 PM, Roshan Rama <roshanrama@quinnemanuel.com> wrote:
>
> Thank you. Can you do anytime from 12-2:30 pm ET next Wednesday? I will send a calendar invite.
>
> **From:** Zach Mattison <zmattison@sugarmanlaw.com>
> **Sent:** Wednesday, July 30, 2025 5:13:42 PM
> **To:** Roshan Rama <roshanrama@quinnemanuel.com>; Anthony Alden <anthonyalden@quinnemanuel.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
> **Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
> **Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs
>
> [EXTERNAL EMAIL from zmattison@sugarmanlaw.com]
>
> I have spoken with them, if you would like to propose dates for next week.
>
> **From:** Roshan Rama <roshanrama@quinnemanuel.com>
> **Sent:** Wednesday, July 30, 2025 2:02 PM
> **To:** Anthony Alden <anthonyalden@quinnemanuel.com>; Zach Mattison <zmattison@sugarmanlaw.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
> **Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-

optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Zach:

We need to push this forward. Have you discussed with your board? Please let us know this week.

Best regards,

**Roshan Rama**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Roshan Rama
**Sent:** Thursday, July 24, 2025 7:29 AM
**To:** Anthony Alden <anthonyalden@quinnemanuel.com>; Zach Mattison <zmattison@sugarmanlaw.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Zach:

We are writing to see if you were able to follow up with your board, so we could continue our discussion of the subpoena to Kinney Drugs.

Thank you,

**Roshan Rama**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Anthony Alden <anthonyalden@quinnemanuel.com>
**Sent:** Wednesday, July 16, 2025 1:16 PM
**To:** Zach Mattison <zmattison@sugarmanlaw.com>; Roshan Rama <roshanrama@quinnemanuel.com>; David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Thank you

**From:** Zach Mattison <zmattison@sugarmanlaw.com>
**Sent:** Wednesday, July 16, 2025 10:08 AM
**To:** Roshan Rama <roshanrama@quinnemanuel.com>; David Graham
<davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Cory Schoonmaker <cschoonmaker@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

[EXTERNAL EMAIL from zmattison@sugarmanlaw.com]

Good afternoon,

     I have not yet met with my Board to review these issues.  I plan to do that shortly.  Once that is done, I will contact you to set up a second call.

     Thanks.  -Zach.

**From:** Roshan Rama <roshanrama@quinnemanuel.com>
**Sent:** Tuesday, July 15, 2025 10:17 AM
**To:** David Graham <davidgraham@quinnemanuel.com>; Zach Mattison
<zmattison@sugarmanlaw.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer
D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

 **IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender roshanrama@quinnemanuel.com**

You don't often get email from roshanrama@quinnemanuel.com. Learn why this is important

Zach:

Thank you for meeting to discuss the outstanding subpoena to Kinney Drugs. We are writing to memorialize our discussion. Please let us know if you disagree with any aspect of our summary.

As an initial matter, you indicated that Kinney's document retention policy is seven years.  Can you kindly advise whether this policy applies to all documents and communications, and whether Kinney maintains any forms of archives or back-ups.

During our call, we discussed each of the requests in turn.

1. Request 1: While reserving our rights, we agreed to hold off on this request because we have recently received dispensing data from the New York PDMP that we anticipate will be sufficient.

1. Request 2: We discussed at least two components to this request that you intend to discuss with your client:

1. 1) Policies and procedures relating to Kinney Drugs' interactions with point-of-sale ("POS") communications from PBMs.  You stated that Kinney does not maintain historic version of policies and procedures but rather updates the active documents over time.  Kinney would thus have no versions of its policies and procedures other than those still in effect.  Please advise, however, whether Kinney would have historical versions of policies and procedures in emails when such policies were sent or received.

2. 2) Data memorializing and relating to the way Kinney Drugs' personnel interacted with point-of-sale ("POS") communications from PBMs for opioid prescriptions filled in New York.

We affirmed our interest in documents and data commensurate with the discovery period in the case (1996-present) and we ask you advise as to how far back your client maintains documents and data, as discussed above.

1. Request 3: We are interested in any responsive communications with manufacturers regarding opioids entity wide. You indicated that no such communications have occurred since the 1990s but would confirm with your client.

1. Request 4: We are interested in any responsive communications to employees concerning opioids.   You agreed to confirm with your client that it has no responsive documents.

1. Request 5: Like Request No. 2, you stated that Kinney would have only current versions of any responsive policies and procedures and you would check with whether it would agree to produce them.  Please advise, however, whether Kinney would have historical versions of policies and procedures in emails when such policies were sent or received.

1. Request 6: We are particularly interested in specific prescribers in St. Lawrence County for whom you refused to fill prescriptions of opioids. You agreed to look into this with your client.

1. Request 7: We are particularly interested in policies and procedures concerning the use of ARCOS and PMP data and communications to and from the DEA and New York PMP. You agreed to look into this with your client.

1. Requests 8, 11 and 12: For each of these requests, you represented that Kinney Drugs has no responsive documents because it has not investigated or reported any opioid misuse, diversion, or trafficking or been the subject of or participated in any criminal or regulatory proceeding concerning opioids.

1. Request No. 9:  You stated that Kinney has no responsive documents because it has never taken any action against a current or former employee in Ogdensburg concerning opioids.

1. Request No. 10:  We did not specifically discuss this request but please advise if Kinney has any responsive documents.

1. Request 13: We are particularly interested in any contracts pursuant to which Kinney received any payments from manufacturers and distributors of in-scope drugs. You agreed to look into this with your client.

1. Request 14: We are interested in any actions the Ogdensburg location has taken to prevent Opioid abuse, which you agreed to look into with your client.

After you have a chance to speak with your client, we agreed to reconvene. Does it make sense to speak on Monday the 21st? We are available from 1:30 pm until 2:30 pm and from 3:00 pm - 3:30pm ET. If those times do not work, can you please propose times that do on Tuesday the 22nd or Wednesday the 23rd? We will then coordinate on our end to find a time that works.

We reserve all rights, and we do not intend for the above notes to limit or narrow the contents of the subpoena, which speaks for itself.

Best regards,

**Roshan Rama**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** David Graham <davidgraham@quinnemanuel.com>
**Sent:** Monday, June 30, 2025 7:46 PM
**To:** Zach Mattison <zmattison@sugarmanlaw.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Thank you Zach. Just sent the invite.

David Graham
Associate
quinn emanuel urquhart & sullivan, llp
Address: 3100 McKinnon Street, Suite 1125/Dallas, TX 75201
Office: 469.902.3614 | Cell: 520.909.5229
Email: davidgraham@quinnemanuel.com

---

**From:** Zach Mattison <zmattison@sugarmanlaw.com>
**Sent:** Monday, June 30, 2025 5:05 PM
**To:** David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

**[EXTERNAL EMAIL from zmattison@sugarmanlaw.com]**

---

We can do Thursday that 10th at 2 pm.

---

**From:** David Graham <davidgraham@quinnemanuel.com>
**Sent:** Monday, June 30, 2025 6:03 PM

**To:** Zach Mattison <zmattison@sugarmanlaw.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Can we do the same times proposed on Thursday (12, 1, or 2 ET)?

**David Graham**
Associate
quinn emanuel urquhart & sullivan, llp
Address: 3100 McKinnon Street, Suite 1125/Dallas, TX 75201
Office: 469.902.3614 | Cell: 520.909.5229
Email: davidgraham@quinnemanuel.com

**From:** Zach Mattison <zmattison@sugarmanlaw.com>
**Sent:** Monday, June 30, 2025 4:39 PM
**To:** David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

**[EXTERNAL EMAIL from zmattison@sugarmanlaw.com]**

My team is already scheduled for another meeting on Wednesday starting at 12 p.m., and our office is closed on Thursday for the holiday.  What is your availability next week?

**From:** David Graham <davidgraham@quinnemanuel.com>
**Sent:** Monday, June 30, 2025 8:20 AM
**To:** Zach Mattison <zmattison@sugarmanlaw.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Hi Zach, following up on the below. Thank you in advance.

**David Graham**
Associate
quinn emanuel urquhart & sullivan, llp
Address: 3100 McKinnon Street, Suite 1125/Dallas, TX 75201
Office: 469.902.3614 | Cell: 520.909.5229
Email: davidgraham@quinnemanuel.com

**From:** David Graham
**Sent:** Wednesday, June 25, 2025 3:34 PM
**To:** Zach Mattison <zmattison@sugarmanlaw.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

Hi Zach,

We are available next week on Wednesday at 12 or 1 ET, or on Thursday at 12, 1, or 2 ET. Let us know which times work and I will circulate a calendar invite.

Thank you,

**David Graham**
Associate
quinn emanuel urquhart & sullivan, llp
Address: 3100 McKinnon Street, Suite 1125/Dallas, TX 75201
Office: 469.902.3614 | Cell: 520.909.5229
Email: davidgraham@quinnemanuel.com

**From:** Zach Mattison <zmattison@sugarmanlaw.com>
**Sent:** Wednesday, June 25, 2025 10:30 AM
**To:** David Graham <davidgraham@quinnemanuel.com>; Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** RE: Express Scripts/Optum Subpoena to Kinney Drugs

<mark>[EXTERNAL EMAIL from zmattison@sugarmanlaw.com]</mark>

Good morning,
      I am out of the office this week handling another matter in NYC.  If you want to propose some dates, I will check with my subpoena team and see what works best for everyone's schedule.

      Thanks.  -Zach.

**From:** David Graham <davidgraham@quinnemanuel.com>
**Sent:** Tuesday, June 24, 2025 10:20 AM
**To:** Dana Henshaw <dhenshaw@sugarmanlaw.com>
**Cc:** QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>; AB Optum 3P Subpoenas <ab-optum-3psubpoenas@alston.com>; Zach Mattison <zmattison@sugarmanlaw.com>; Alexandra Calhoun <acalhoun@sugarmanlaw.com>; Jennifer D'Alfonso <jdalfonso@sugarmanlaw.com>
**Subject:** Express Scripts/Optum Subpoena to Kinney Drugs

 **IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender davidgraham@quinnemanuel.com**

You don't often get email from davidgraham@quinnemanuel.com. Learn why this is important

Hi Dana,

Sending again with a subject line. We received the attached responses and objections to the subpoena issued by Express Scripts and Optum to Kinney Drugs. Can you please let us know some times later this week when you are available to discuss your objections and search for responsive documents?

Thank you,

9

**David Graham**
Associate
**quinn emanuel urquhart & sullivan, llp**
Address: 3100 McKinnon Street, Suite 1125/Dallas, TX 75201
Office: 469.902.3614 | Cell: 520.909.5229
Email: davidgraham@quinnemanuel.com

# EXHIBIT 3

| **From:** | Zawodzinski, Jr., James J. <JZawodzi@hodgsonruss.com> |
|---|---|
| **Sent:** | Thursday, October 3, 2024 8:27 AM |
| **To:** | Dan Humphrey; David Graham; Lindsay Weber; Badley, Alicia; Roshan Rama; Daily Guerrero; Finkel, Rachel; Andrews, Ashton |
| **Cc:** | Agins, Joshua; Galvin, Jodyann; Wells, Claire; QE-ESI-3PSubpoenas |
| **Subject:** | RE: Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc. |

<div style="background:yellow">[EXTERNAL EMAIL from jzawodzi@hodgsonruss.com]</div>

Hi Dan,

Thanks for sending the governing confidentiality order over and for confirming your team is putting together search terms.

With respect to Request No. 1, Wegmans did not simply agree to produce the data demanded.  Wegmans will produce data, to the extent it is responsive and within Wegmans custody and control, after application of relevant search terms and a limitation on the temporal scope as demanded in our Objections previously served and confirmed in my email of August 27.  Once we receive and analyze the proposed search terms and, we will discuss with our client and get back to you on a timeline for producing responsive data.

Thank you,
James

**From:** Dan Humphrey <danielhumphrey@quinnemanuel.com>
**Sent:** Wednesday, October 2, 2024 8:02 PM
**To:** Zawodzinski, Jr., James J. <JZawodzi@hodgsonruss.com>; David Graham <davidgraham@quinnemanuel.com>; Lindsay Weber <lindsayweber@quinnemanuel.com>; Badley, Alicia <Alicia.Badley@alston.com>; Roshan Rama <roshanrama@quinnemanuel.com>; Daily Guerrero <dailyguerrero@quinnemanuel.com>; Finkel, Rachel <Rachel.Finkel@alston.com>; Andrews, Ashton <ashton.andrews@alston.com>
**Cc:** Agins, Joshua <JAgins@hodgsonruss.com>; Galvin, Jodyann <JGalvin@hodgsonruss.com>; Wells, Claire <CWells@hodgsonruss.com>; QE-ESI-3PSubpoenas <qe-esi-3psubpoenas@quinnemanuel.com>
**Subject:** RE: Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc.

<div style="color:white;background:red;text-align:center">**External Email - Use Caution**</div>

Hi James,

We are working on compiling search terms for you to run over Wegman's documents. In the meantime, you previously agreed that you would produce the data sought by Request No. 1 to the subpoena. Please let us know when you intend to produce that data. Also, see attached the governing confidentiality order for your review. Let us know if you would like to discuss.

Best,
Dan

**From:** Dan Humphrey
**Sent:** Wednesday, August 28, 2024 11:20 AM
**To:** Zawodzinski, Jr., James J. <JZawodzi@hodgsonruss.com>; David Graham <davidgraham@quinnemanuel.com>; Lindsay Weber <lindsayweber@quinnemanuel.com>; Badley, Alicia <Alicia.Badley@alston.com>; Roshan Rama <roshanrama@quinnemanuel.com>; Daily Guerrero <dailyguerrero@quinnemanuel.com>; Finkel, Rachel <Rachel.Finkel@alston.com>
**Cc:** Agins, Joshua <JAgins@hodgsonruss.com>; Galvin, Jodyann <JGalvin@hodgsonruss.com>; Wells, Claire <CWells@hodgsonruss.com>
**Subject:** RE: Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc.

Hi James,

A few things in your note below do not reflect my recollection of the call. Please see below some clarifying points:

First, we do not agree that *if* Wegman's has documents responsive to Requests Nos. 5 & 6 that it should not produce them. As I stated on the call, I had only briefly skimmed your letter that we received this morning. It appeared on first blush that some of your objections stated that Wegmans had no documents responsive to certain requests. Upon a closer read, it appears that is not necessarily the case and in those instances where Wegmans claims to lack documents, it is not objecting to the actual language in the subpoena. For example, with respect to Request No. 5, your objection was that you were under no obligation to identify, report, or refuse to ship suspicious orders. The Request, however, asks for documents to show all "Suspicious Orders You identified *or for which you received notice* . . ." (emphasis added). If Wegmans has documents responsive to Request Nos. 5 & 6, it is necessary for them to produce such documents.

Second, we agree to produce search terms and the governing confidentiality order. We disagree that we must explain the specific relevance or that any law requires as such. If you have authority to the contrary, please let us know.

Third, we did not agree to limit the temporal scope of any search to 2020-present. Instead, we explained that ARCOS data is available prior to 2020. To the extent that would help resolve some of the objections you raised, we would be willing to consider narrowing those Requests directed toward ARCOS data to that time frame.

If you agree with the above, we will begin compiling search terms that we think will be necessary to capture responsive documents.

Sincerely,
Dan

---

**From:** Zawodzinski, Jr., James J. <JZawodzi@hodgsonruss.com>
**Sent:** Tuesday, August 27, 2024 12:10 PM
**To:** Dan Humphrey <danielhumphrey@quinnemanuel.com>; David Graham <davidgraham@quinnemanuel.com>; Lindsay Weber <lindsayweber@quinnemanuel.com>; Badley, Alicia <Alicia.Badley@alston.com>; Roshan Rama <roshanrama@quinnemanuel.com>; Daily Guerrero <dailyguerrero@quinnemanuel.com>; Finkel, Rachel <Rachel.Finkel@alston.com>
**Cc:** Agins, Joshua <JAgins@hodgsonruss.com>; Galvin, Jodyann <JGalvin@hodgsonruss.com>; Wells, Claire <CWells@hodgsonruss.com>
**Subject:** RE: Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc.

**[EXTERNAL EMAIL from jzawodzi@hodgsonruss.com]**

Thanks, all, for a productive meeting this morning.

This email confirms that Wegmans will not produce documents responsive to Requests Nos. 5 and 6.

With respect to Request Nos. 1, 2, 3, 4, 7, 8, 9, 10, 11, and 12, issuing counsel will provide a brief description of why the requested documents are relevant to the Litigation, a limited and appropriate set of search terms to narrowly-tailor any forthcoming production, and the governing confidentiality order.  Wegmans asks for a description of the relevance of each of these Requests because it is not readily apparent why much of the requested information is relevant to the claims in the MDL Litigation and, given Wegmans' status as a non-party, Wegmans is not obligated to respond without more.  For example, the all-encompassing terms "All", "Documents", and/or "Communications" in several of these requests are overly broad and, when paired with terms like "or any other Opioids" as requested, would return a universe of documents and communications that are irrelevant to and outside the scope of the claims in the Litigation.  To avoid these types of situations, Wegmans requests that issuing counsel prepare brief relevancy points regarding each request that would, together with specific set of search terms, assist Wegmans in its review efforts to ascertain what precise documents and communications Express Scripts and Optum may or may not need to help aid their respective defenses.

Wegmans will work cooperatively and in good faith with issuing counsel to pair down the requested documents and communications as needed, understanding that Wegmans' objections are preserved as set forth in the attached Responses and Objections and that issuing counsel has agreed to limit the temporal scope of any search to 2020—present.

Please let me know if you'd like to discuss further.  I look forward to receiving your responses and to our next call on 9/10.  Enjoy Armenia, Dan!

Thank you,
James

---

**From:** Zawodzinski, Jr., James J.
**Sent:** Tuesday, August 27, 2024 8:48 AM
**To:** Dan Humphrey <danielhumphrey@quinnemanuel.com>
**Cc:** Patrick King <patrickking@quinnemanuel.com>; Galvin, Jodyann <JGalvin@hodgsonruss.com>; Agins, Joshua <JAgins@hodgsonruss.com>; Wells, Claire <CWells@hodgsonruss.com>
**Subject:** Case No. 1:17-MD-2804 - Ohio Opiate Litigation - Wegmans Food Markets, Inc.

Dan,

Please see the attached correspondence enclosing Wegmans Food Markets, Inc.'s Responses and Objections to Express Scripts' Subpoena Duces Tecum.

Regards,

**James J. Zawodzinski, Jr. (he/him/his)**
Senior Associate
Hodgson Russ LLP

**Tel:**  716.848.1595
**Fax:**  716.819.4765



Twitter  | LinkedIn  | website  | e-mail

The Guaranty Building ┊ 140 Pearl Street, Suite 100 ┊ Buffalo, NY 14202
Tel: 716.856.4000 ┊ map

90 Linden Oaks, Suite 110 ┊ Rochester, NY 14625
Tel: 585.613.3919 ┊ map

605 Third Ave, Suite 2300 ┊ New York, NY 10158
Tel: 212.751.4300 ┊ map

*This message may contain confidential information that is protected by the attorney-client privilege or otherwise. If you are not the intended recipient, you are notified that any disclosure, copying, or use of the contents of this message is strictly prohibited. If this message has been received by you in error, please notify the sender immediately by e-mail and delete the original message. Thank you.*

*This message may contain confidential information that is protected by the attorney-client privilege or otherwise. If you are not the intended recipient, you are notified that any disclosure, copying, or use of the contents of this message is strictly prohibited. If this message has been received by you in error, please notify the sender immediately by e-mail and delete the original message. Thank you.*