# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*City of Rochester v. Purdue Pharma L.P.*, Case No. 19-op-45853 (Track 12) | MDL No. 2804<br><br>Case No. 1:17-MD-2804<br><br>Judge Dan Aaron Polster |

### PBM DEFENDANTS' OPPOSITION TO WEGMANS' OBJECTIONS TO SPECIAL MASTER COHEN'S DISCOVERY RULING

After multiple rounds of briefing and a hearing, Special Master Cohen issued a ruling, Dkt. No. 6387 ("Ruling"), directing Wegmans Food Markets, Inc. ("Wegmans") to produce a targeted set of materials responsive to the third-party subpoena the PBM Defendants issued over 17 months ago. Wegmans' repeated suggestion that Special Master Cohen insufficiently analyzed the issues, or was "misled," is baseless and simply underscores the lengths to which Wegmans will go to avoid producing relevant evidence. The Ruling aligns with the Court's prior discovery decisions, including as to other pharmacies, and none of Wegmans' arguments warrant a departure therefrom. The Court should overrule Wegmans' Objections at Dkt. No. 6393 ("Objections").

## BACKGROUND

### A.  The PBM Defendants' 2024 Subpoena to Wegmans

Wegmans is a large regional grocery chain headquartered in Rochester, New York. ARCOS data reveals that Wegmans was the largest pharmacy purchaser of MDL-8 opioids in the Rochester area from at least 2014 through 2019, and was responsible for purchasing over 30% of the total dosage units in Rochester during that time.[1] Given the significant connection between

---

[1] *See* Ruling at 1.

Wegmans and opioid dispensing in Rochester, the PBM Defendants subpoenaed Wegmans on July 25, 2024, seeking 12 discrete categories of documents.[2]

B. **Wegmans' Refusal to Comply After Months of Negotiations**

Rather than provide a protracted recounting of the parties' now 17-month-long negotiation history, the PBM Defendants offer a streamlined version of the key points below:

- After the parties spent five months conferring about the Subpoena, Wegmans asked the PBM Defendants to provide search terms so it could conduct a search for responsive materials.[3] But Wegmans then reversed course and stated that it would not produce materials in response to most of the PBM Defendants' requests.

- This change in position prompted the PBM Defendants to seek relief, and during the ensuing hearing, the Special Master concluded that Wegmans needed to produce *some* documents and ordered it to make proposals.[4] The PBM Defendants accepted several of these proposals and asked for clarification (or sent a counterproposal) for the others.[5]

- After additional meet and confers and weeks of Wegmans dragging its feet, in November 2025, Wegmans confirmed it would not produce dispensing data or drug utilization review ("DUR") data[6] beyond a read-only sample of only two prescriptions. By this point, more than a year after the PBMs served their subpoena, Wegmans still had not produced a single document,[7] including those it had expressly agreed to produce 10

---

[2] *See* Ex. 1 (07.25.2024 Subpoena to Wegmans).

[3] *See* Ex. 2 (Wegmans 08.27.2024 email to PBM Defs.) (requesting search terms to "assist Wegmans in its review efforts to ascertain what precise documents and communications [the PBM Defendants] may or may not need to help aid their respective defenses").

[4] *See* Ex. 3 at 53:24-54:8; 55:13–15 (2025.01.06 Status Conference); *see also* Ex. 4 (Special Master 12.20.24 email to PBM Defs. and Wegmans).

[5] *See* Ex. 5 (PBM Defs.' 02.28.2025 Ltr. to Wegmans).

[6] Many pharmacies have DUR programs that analyze information and send alerts to pharmacists about issues concerning a prescription that may require further attention prior to dispensing. The DUR data sought here would reflect the DUR information sent to the pharmacist and what the pharmacist did (or did not do) in response. *See also* Ex. 6 at 1-2 (ESI Motion to Compel Walgreens Production) (providing additional detail).

[7] Wegmans made its first production the night before the PBM Defendants' Reply was due to Special Master Cohen in December 2025 (*i.e.*, 17 months after the Subpoena was served).

2

months earlier.[8] Based on the upcoming discovery deadline and Wegmans' delays, the PBM Defendants filed a motion to compel (the "Motion") with Special Master Cohen.[9]

### C. Special Master Cohen's DUR Data Ruling as to Other Pharmacies

In the months preceding the PBM Defendants' Motion against Wegmans, Express Scripts separately moved to compel DUR data from Walgreens, CVS, and Walmart (together the "Other Pharmacies"), which operate in Rochester but with a smaller market share than Wegmans. After extensive briefing, Special Master Cohen ordered the Other Pharmacies to produce DUR data.[10] Unlike Wegmans, the Other Pharmacies did not object to the ruling and produced their DUR data.[11]

### D. Special Master Cohen's Ruling as to Wegmans

Despite Special Master Cohen's ruling on DUR data with respect to the Other Pharmacies—which the PBM Defendants provided to Wegmans, along with redacted versions of Express Scripts' briefs—Wegmans argued that it was somehow entitled to a different result, while parroting the same arguments made by the Other Pharmacies, which the Special Master squarely rejected. Unsurprisingly, Special Master Cohen similarly rejected nearly all of Wegmans' arguments. *See* Ruling at 3 ("Wegmans' argument that documents [concerning Wegmans' opioid dispensing policies and guidelines] will yield only information irrelevant to any issue in the PBM bellwether cases is not well-taken. And Wegmans' relevance arguments in connection with the PBMs' other Requests are equally infirm."). Wegmans now recycles those same arguments here.

---

[8] *See* Ex. 7 (Wegmans' 01.14.2025 email to PBM Defs.).

[9] *See* Ex. 8 (PBM Defs.' Motion). Wegmans' assertion that the parties had not reached impasse is specious. Given Wegmans' perpetual foot-dragging, and the upcoming fact-discovery cut-off, the PBM Defendants sent multiple warnings that they would seek relief if agreement was not promptly reached. *See, e.g.*, Ex. 13 (PBM Defs.' 10.09.2025 email to Wegmans).

[10] *See* Ex. 11 (Special Master Email Order - Other Pharmacies).

[11] Though Wegmans' briefing to Special Master Cohen was joined by another pharmacy (KPH Healthcare Services, Inc. d/b/a Kinney Drugs), Kinney Drugs did not object to the Ruling.

**LEGAL STANDARD**

"The Court reviews *de novo* objections to the Special Master's legal conclusions and will set aside a ruling on a procedural matter only for abuse of discretion."[12] Ordinarily, a ruling on the scope of discovery is a procedural matter, and thus subject to an abuse of discretion standard. *See, e.g.*, *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020) ("[W]here a party objects to a Special Master's ruling on a procedural matter, such as the scope of discovery . . . the Court reviews the ruling only for abuse of discretion."); *Liberty Ford Lincoln Mercury, Inc. v. Ford Motor Co.*, 2023 WL 4991718, at *2 (N.D. Ohio Aug. 4, 2023).

**ARGUMENT**

**I. THE SPECIAL MASTER WAS CORRECT AS TO GEOGRAPHIC SCOPE**

Wegmans seeks to limit its production to the one store it claims lies within Rochester's technical city limits. The Ruling rejected this "untenable" position, finding Wegmans' dispensing of opioids in the "entire Rochester area is relevant."[13] Special Master Cohen was correct.

*First*, Wegmans itself touts on its own website that it has 17 "Rochester" stores, and that 11 of these stores have a Rochester address.[14] This is because, at minimum, these stores lie within the greater Rochester metropolitan area. It is thus unsurprising that Wegmans' counsel itself has referred to Wegmans' "pharmac***ies***"—plural—in the City of Rochester.[15]

*Second*, this Court previously rejected the PBM Defendants' arguments to limit the geographic scope of discovery in this case "to the bellwether jurisdictions and their contiguous in-

---

[12] Dkt. No. 3545 at 3 (citing Dkt. No. 69 at 5; Fed. R. Civ. P. 53(f)(5)).

[13] Ruling at 4, n.2.

[14] *See* Wegmans Website, *Find a Grocery Store Near You* (https://www.wegmans.com/stores#ny); *see also* Ruling at 4 n.2; Ex. 9 at 2 (PBM Defs. Reply).

[15] *See, e.g.*, Ex. 10 at 4, 7 (Wegmans' 10.24.2025 Ltr. to PBM Defs.) (emphasis added).

4

state counties" and instead upheld Special Master Cohen's order of a "state-wide discovery scope."[16] Thus, the Special Master noted that, "if Wegmans were a party-defendant, the Court's general rule would be that the geographic scope of discovery would be the entire State of New York." Nonetheless, the Special Master limited discovery for Wegmans to "Monroe County" (the County in which Rochester lies), except for requests for which "the parties clearly and explicitly agreed otherwise."[17] Given that the Court adopted a state-wide geographic scope of discovery for this case,[18] there is no merit to Wegmans' contention that a county-wide scope is overbroad.

*Third*, Plaintiff Rochester has repeatedly alleged an opioid crisis in Monroe County to support its claims.[19] Wegmans itself recognizes that the City characterizes the scope of the alleged opioid crisis as "[p]eople from outside of the community [] traveling to parts of the city to buy and use opioids as well as commit crimes – and the residents and businesses [in the City] are suffering the consequences."[20] Accordingly, and consistent with the Special Master's observation, the City *does in fact* allege that people from outside the City are travelling to Rochester to use opioids.

*Fourth*, Wegmans itself has agreed to produce certain categories of documents for Monroe County, not just Rochester, thus acknowledging the relevance of County-wide discovery.[21]

---

[16] Dkt. No. 5409 at 1.

[17] Ruling at 4.

[18] Based on this geographic scope, the City has requested (and obtained) statewide DUR and dispensing data from the PBM Defendants' pharmacies. The PBM Defendants seek data as comparable as possible to enable various comparative analyses to support their defenses.

[19] *See, e.g.*, Complaint, Dkt. No. 5346-1 ¶ 65 ("Plaintiff City of Rochester is located within Monroe County, and Monroe County's [drug overdose death] rate in 2020 was 36.7, which exceeded the statewide average of 25.4 deaths per 100,000 population."); *id.* ¶ 67 ("The burden of the opioid crisis has been particularly heavy in Monroe County."); *id.* ¶ 75 ("Opioid overdose deaths in Monroe County, in which Rochester is the largest city, rose from . . . 2019 to . . . 2021.").

[20] Objections at 7–8 (citation and emphasis omitted).

[21] *See* Ex. 9 (PBM Defs.' Reply at 2-3) (collecting citations reflecting instances in which Wegmans so agreed).

*Finally*, limiting Wegmans' production to one store would be inconsistent with the County-wide productions by the Other Pharmacies,[22] resulting in a patchwork of datasets with different geographic scopes that would hamper the PBM Defendants' defenses. It makes no sense that the Other Pharmacies—whose share of the prescription-opioid-dispensing market in Rochester is smaller than Wegmans—would produce data with a broader geographic scope than the market leader.  The Court should affirm the Special Master's ruling as to geographic scope.[23]

## II. THE SPECIAL MASTER WAS ALSO CORRECT AS TO TEMPORAL SCOPE

Wegmans objects that Special Master Cohen's decision to impose a temporal scope of January 1, 1996, to the present is overbroad. But Wegmans does not and cannot dispute that both the Court and Special Master Cohen have "repeatedly ruled in all MDL bellwether cases that the relevant temporal scope is January 1, 1996 to the present," including the PBM bellwether cases.[24] Special Master Cohen has repeatedly ordered other third parties to produce documents through the

---

[22] *See* Ex. 11 (Special Master Email Order - Other Pharmacies).

[23] Wegmans' lone case citation has no relevance here. *See City of Ecorse v. U.S. Steel*, 2007 WL 4239263 (E.D. Mich. Dec. 3, 2007).  There, the City sought fees that the defendant had not paid as part of its construction projects. After noting that the "Plaintiff agreed to . . . limit the request in scope to projects within the City of Ecorse," the court found that discovery into projects outside of the City was not relevant. *Id.* at *1. By contrast, the PBM Defendants have never agreed to a similar limitation, nor would they given Plaintiffs' claims.

[24] Ruling at 4; *see, e.g.*, Dkt. No. 5408 at 1 ("Because the temporal scope of discovery required by Special Master Cohen's ruling (beginning January 1, 1996) is reasonably likely to lead to admissible evidence. . . the Court overrules the PBM Defendants' objection and affirms Special Master Cohen's order as to temporal scope.").

6

present, and Wegmans makes no argument as to why it should be treated any differently.[25] The Court should overrule Wegmans' objection as to temporal scope.[26]

### III. THE SPECIAL MASTER CORRECTLY REJECTED WEGMANS' RELEVANCE ARGUMENTS

Wegmans recycles the same relevance arguments that were thoroughly briefed and rejected by Special Master Cohen.[27] In short, Wegmans contends that the Court disfavors third-party discovery of pharmacies and that its conduct and documents are irrelevant by definition because, "under New York law, the PBMs would be held liable for the creation and participation of a public nuisance, irrespective of any third-party culpability."[28] These arguments miss the mark.

*First*, contrary to Wegmans' assertion, the PBM Defendants have repeatedly explained the relevance of the requested discovery to Rochester's claims and the PBM Defendants' defenses.

---

[25] Wegmans' Objection misrepresents the contents of a letter from the PBM Defendants. In that letter, the PBM Defendants said they "have produced data from 2009 (Express Scripts) and 2010 (OptumRx) through 2019." But these were just the dates for which the PBM Defendants could locate data from their affiliated mail order pharmacies. The letter did not contend the discovery period was so limited.

[26] Wegmans submitted a chart it claims reflects Special Master Cohen's rulings regarding geographic and temporal scope. *See* Objections, Ex. E. This chart includes interpretations that do not reflect the record, and the Court should affirm what the Special Master actually ordered. For example, regarding temporal scope, Wegmans asserts that Request No. 12 (which it does not even ask this Court to address in its Objections) was limited by agreement and by the Special Master to 2006 forward. This is inaccurate. Wegmans cites the PBM Defendants' Motion for this point, but the Motion makes clear this is not the case. *Id.* at 9-10. Nor did the Special Master say differently. Ruling at 5 ("[E]xcept as noted, the required temporal scope is January 1, 1996 to the present for all of the Requests."). Wegmans' arguments about geographic scope contain similar discrepancies. For example, Wegmans suggests the PBM Defendants agreed to limit Request No. 4 to the "City of Rochester" pharmacies in an attempt to distinguish it from the Special Master's Ruling on "Monroe County" locations. As is addressed elsewhere in this motion, Wegmans' geographic scope arguments were rejected and there is nothing inconsistent about the Ruling.

[27] Wegmans' suggestion (Objections at 12) that it had an insufficient opportunity to brief its relevance arguments is disingenuous. Over 17 months, Wegmans has submitted over 30 single-spaced pages of briefing (and several more emails) with no limit set by the Special Master.

[28] Objections at 12.

7

Express Scripts' and OptumRx's Answers expressly reserve the right to apportion blame to retail pharmacies like Wegmans and to argue that they were the cause of any public nuisance in Rochester.[29] Moreover, the requested discovery could directly undercut Rochester's liability theories. For example, the City might contend that Express Scripts and OptumRx should not have processed an insurance claim without additional diligence about whether the prescription was refilled too soon. But Wegmans' internal data might show that its pharmacist's discussion with the patient confirmed that she had misplaced her prior prescription or that she had another reasonable explanation necessitating an early refill. In that example, Wegmans' documents and data alone would establish that Express Scripts' and OptumRx's purported lack of diligence did not cause any harm. This internal data is thus highly relevant to establishing breaks in the causal chain underpinning Rochester's various claims.[30] Wegmans has cited no authority to the contrary.

*Second*, Wegmans focuses almost exclusively on the PBM Defendants' defenses to the public nuisance claim, but this is not Rochester's only claim; the City also asserts claims for (among other things) negligence, false advertising, and a RICO violation.[31] Even as to the public nuisance claim, however, Wegmans errs by arguing that "the PBMs would be held liable for the creation and participation of [sic] a public nuisance, irrespective of any third-party culpability." *See People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 202 (N.Y. App. Div. 2003) (rejecting the argument that defendants can be liable for contributing to a nuisance "no matter how far removed from defendants' lawful business practices the harm is felt"); *see also City of New*

---

[29] *See, e.g.*, Express Scripts' Amended Answer, Dkt. No. 5712 at 11–12 ¶ 34; *see also id.* at 107 ¶ 36(v); OptumRx's Answer, Dkt. No. 5669 at 177 ¶ d.

[30] For this reason, Wegmans' contention that only "'opioid manufacturers,' not retail pharmacies" are relevant to this case is incorrect. *See* Objections at 13.

[31] *See* Complaint, Dkt. No. 5346-1 ¶¶ 784–869.

8

*York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 351-52 (E.D.N.Y. 2008) (explaining that, in the context of a public nuisance claim, "proximate causation demands a reasonable connection between defendants' alleged actions and the harm that followed"). Neither the PBM Defendants nor the Court can evaluate whether Wegmans' conduct is an intervening cause without seeing its data. They are not required to simply accept Wegmans' *ipse dixit* denials.

*Third*, during the parties' initial discussions, Wegmans never pressed a relevance objection. To the contrary, Wegmans stated that it "will produce data, to the extent it is responsive and within Wegmans custody and control, after application of relevant search terms and a limitation on the temporal scope as demanded in our Objections previously served and confirmed in my email of August 27."[32] Only later, after Wegmans decided to adopt a more aggressive position, did it begin questioning the obvious relevance of the PBM Defendants' requests.

*Finally*, the notion that the Court's prior rulings counsel against the requested discovery is incorrect. Each of MDL Dkt. Nos. 3246, 5168, and 5265, on which Wegmans relies, concerned impleading third-party defendants, which could obviously impact the length and complexity of a trial. The dispute here, by contrast, is solely about discovery, not impleader. The Court has frequently ordered the production of opioid data from other "industry actors who have caused, contributed to, or maintained the nuisance" alleged by Plaintiffs.[33]

## IV. WEGMANS IDENTIFIES NO ERRORS IN THE SPECIAL MASTER'S RULINGS ON INDIVIDUAL REQUESTS

Wegmans' Objections are virtually identical to the arguments it raised to Special Master Cohen. Objections such as these that "merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper, and the Court may consider such repetitive

---

[32] Ex. 12 (Wegmans' 10.03.2024 Email to PBM Defs.).

[33] Dkt. No. 5115 at 14.

9

arguments waived." *McKnight v. Bobby*, 2024 WL 2186494, at *44 (S.D. Ohio May 15, 2024) (quotation omitted). The PBM Defendants thoroughly developed their responsive arguments in their prior briefing,[34] and they incorporate those arguments here.

### A. Request No. 2: DUR Data and Documents

Wegmans advances four arguments to avoid producing—or even *cooperating* in the production of—DUR data. Special Master Cohen rejected most of these arguments when raised by the Other Pharmacies and again by Wegmans. The Court should reach the same conclusion.[35]

*First*, Wegmans argues that the Special Master's directive requiring it to cooperate with McKesson to produce its own DUR data amounts to an improper mandatory injunction. This is nonsense. Wegmans admits that McKesson holds the requested *Wegmans'* data. Wegmans has contractual rights and control of it. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008) (explaining that "[t]he Sixth Circuit and other courts have held that documents are deemed to be within the 'control' of a party if it 'has the legal right to obtain the documents on demand,'" including "contractual provisions that confer a right of access to the requested materials") (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)). Ordering Wegmans to cooperate with McKesson is thus nothing more than a routine discovery order requiring a subpoena target to facilitate the production of its own data. Wegmans cites no authority—and the PBM Defendants have found none—characterizing such an order as an improper mandatory injunction.

The sole case on which Wegmans relies—*Parents' Committee of Public School 19 v. Community School Board of Community School District No. 14 of the City of New York*, 524 F.2d 1138, 1141–42 (2d Cir. 1975)—says nothing about whether a court can order a subpoena recipient

---

[34] *See* Ex. 8 (PBM Defs.' Mot.); Ex. 9 (PBM Defs. Reply).

[35] *See* Ex. 9 (PBM Defs.' Reply at 3–12); *see also* Ex. 11 (Special Master Email Order - Other Pharmacies).

10

to cooperate with the entity holding its own documents to have them produced. It held only that the district court should not have issued an order that amounted to an "irreversibly final" injunction without first making findings of fact and conclusions of law. *Id*. Because the Special Master did not issue an injunction (and did not purport to do so), the case is inapposite.

*Second*, Wegmans contends that "Special Master Cohen impermissibly re-wrote Request No. 2 to require production of *all* Wegmans' DUR data going back decades," rather than only documents "*sufficient to show* how Wegmans communicates with the PBMs at the POS [point of sale]."[36] This argument is both incorrect and disingenuous. It is incorrect because Request No. 2 seeks DUR data sufficient to show how Wegmans responded to *each* POS message (as opposed to *all* documents and data concerning Wegmans' response to *each* POS message).[37] The argument is disingenuous because Wegmans' prior correspondence shows it always understood Request No. 2 to seek prescription-level DUR data, and despite the PBM Defendants' invitation, Wegmans never insisted on a subpoena with revised language despite 17 months of negotiations.[38] Wegmans has known all along that the PBM Defendants seek prescription-level DUR data; in raising this objection now, it seeks to elevate form over substance and cause delay.

*Third*, Wegmans asserts that "neither the Ruling nor the PBMs ever articulated any basis to support their contention that they *need all* DUR messages (as opposed to DUR messages *sufficient to show* how Wegmans communicates with the PBMs at the POS)."[39] This is false. The PBM Defendants have repeatedly explained that DUR data is important to responding to the City's red flag analysis and its claims more broadly. This is specifically true with regard to Wegmans,

---

[36] Objections at 10.

[37] *See* Ex. 9 (PBM Defs. Reply at 5–6).

[38] *See* Ex. 9 (PBM Defs. Reply at 6–7).

[39] Objections at 10.

which is the largest purchaser of prescription opioids in the Rochester area and dispensed hundreds of thousands of prescription opioid claims that the Plaintiffs' analysis red-flagged.[40] The PBM Defendants need access to Wegmans' prescription-level data to respond to these allegations. In addition, Wegmans' DUR data is highly relevant to evaluating other potential causes of the alleged opioid crisis in Rochester, including (i) prescriptions processed by other PBMs; (ii) data related to prescriptions paid for in cash (*i.e.*, without any insurance coverage processed by a PBM); and (iii) prescriptions paid for by the government. This data goes both to causation and the scope of the PBM Defendants' purported liability.

*Finally*, Wegmans' contention that Special Master Cohen "reversed himself" on the scope of Request No. 2 after a hearing on January 6, 2025, is incorrect and irrelevant. The comment to which Wegmans refers (Ex. 3 at 24:9-25:12) did not concern DUR data. It concerned DUR policies and Wegmans' policies more broadly, which are sought in Request No. 4 and discussed below. More fundamentally, however, at the time of the January 2025 hearing, Special Master Cohen had not yet received the additional briefing that was subsequently submitted by the Other Pharmacies and Wegmans. It is unfair to impugn the Special Master's Ruling based on extemporaneous comments made before the record was fully developed.

### B. Request No. 1: Targeted Dispensing Data for Cash Claims

With respect to dispensing data, Special Master Cohen ordered Wegmans to produce only "eight specified data fields; only cash claims; only Monroe County; and only Relevant Drugs."[41]

---

[40] Wegmans' assertion that the City has "identified 250 allegedly improper prescriptions on which its claims are based (along with "100 individuals in the City" who were allegedly injured due to the PBMs' actions)" is incorrect. Both the City and the Court order Wegmans cites make clear that the 250 referenced prescriptions are only a sample and not the entire universe of prescription claims the City contends are problematic. *See* Dkt. 6240 at 2-3 ("I conclude PBMs are entitled to an order directing Rochester to produce a ***sample*** of the information requested.").

[41] Ruling at 8.

12

Wegmans again argues that "[d]ispensing information about prescriptions Wegmans patients paid for in cash are, by definition, not relevant to the PBMs." This is quite obviously wrong.

Prescriptions dispensed to patients who pay with cash remain highly relevant to the PBM Defendants' defenses, even though they are not processed through insurance by the PBM Defendants. ARCOS data shows that Wegmans was the single largest purchaser of MDL-8 opioids in the Rochester area from 2014 through 2019,[42] but it is unclear how many of those units it dispensed for cash, and whether those units caused or contributed to an alleged opioid crisis in Rochester. Such information is highly relevant to the PBM Defendants' defenses. For example, in response to the City's allegation that "Plaintiffs' communities were being flooded with an oversupply" of prescription opioids, Wegmans' data could show the extent to which this "flooding" was the result of dispensing by Wegmans without any PBM involvement. Indeed, in prior bellwether tracks, Plaintiffs and their experts have argued that "all opioid prescriptions where the patient paid cash"—*i.e.*, prescriptions that were not processed by PBMs—are "suspicious."[43]

Wegmans has made no credible showing that producing this limited set of data would be unduly burdensome. The Special Master's Ruling should be affirmed.

C. **Request No. 4: Policies and Guidance Relevant to Dispensing Opioids**

Special Master Cohen ordered Wegmans to "produce guidance, directives, publications, alerts, notices, presentations, or other materials concerning prescription opioids provided to employees working in its Monroe County stores."[44] Wegmans once again objects on relevance grounds.[45] But those requested documents are plainly relevant to the PBM Defendants' defenses,

---

[42] *See* Ruling at 1.

[43] Dkt. No. 3949 at 4 n.7.

[44] Ruling at 6.

[45] Objections at 12.

including their defenses that other actors may be the cause of, or responsible for, in whole or in part, any alleged opioid crisis in Rochester.[46] For example, if Wegmans told employees to ignore alerts from PBMs or instructed that additional diligence was not required—as evidence shows some pharmacies did—that would be relevant to causation. Given that Wegmans was the largest purchaser of MDL-8 opioids in the Rochester area for many years, the PBM Defendants are entitled to see what Wegmans was telling its own employees to do prior to dispensing those drugs.

Wegmans complains that "the PBMs have no evidence or reason to believe Wegmans ever directed its employees to ignore alerts from the PBMs."[47] But Wegmans alone possesses and controls such evidence. And regardless, evidence that Wegmans instructed its employees to address PBM alerts would also be relevant because it would undermine Plaintiffs' contention of inadequate diligence. The Court should overrule Wegmans' Objections.

D. Requests 7, 10, and 11: Investigations and Legal/Regulatory Actions

After extensive briefing, Special Master Cohen ordered Wegmans to produce (a) centrally-maintained documents "concerning the diversion, abuse, misuse, or trafficking of opioids within the City of Rochester"; (b) "documents reflecting instances when law enforcement made inquiries to Wegmans about prescribers and/or patients in Monroe County"; and (c) "audits or other documents concerning any investigation by state or federal agencies into policies or practices related to the dispensing of opioids, and which would have applied to its stores in Monroe County."[48] Once again, Wegmans asserts in a conclusory fashion that these documents are irrelevant.[49] Once again, it is wrong.

---

[46] *See* Ex. 9 (PBM Defs. Reply at 15–16).

[47] Objections at 15.

[48] Ruling at 7.

[49] Objections at 15.

14

As the largest dispenser of opioids in the Rochester area for many years, Wegmans' knowledge of opioid diversion, abuse, misuse, or trafficking and what it did (or did not do) to address those issues is highly relevant to the PBM Defendants' defenses. If a law enforcement body or regulatory agency raised questions about Wegmans' dispensing practices, the PBM Defendants are entitled to find out what the allegations were, whether they were substantiated, and whether Wegmans did anything in response. These issues go to the extent of the alleged problem in Rochester and who caused it or had responsibility for it.

Wegmans fails to substantiate any undue burden. Special Master Cohen correctly found that it "did not even attempt to make a particularized showing of the putative burden."[50] That decision was correct and, certainly, no abuse of discretion.

## CONCLUSION

Wegmans has spent the last 17-plus months refusing to produce data and documents that are central to the PBM Defendants' defenses. After extensive briefing, Special Master Cohen ordered Wegmans to produce discovery that is relevant to both the City's claims and the PBM Defendants' defenses and that is proportional to the needs of this case. The PBM Defendants request that the Court overrule Wegmans' Objections.

---

[50] Ruling at 3; *see also Chao v. Loc. 951, United Food & Com. Workers Int'l Union*, 2006 WL 2380609, at *2 (N.D. Ohio Aug. 15, 2006) (rejecting undue burden argument because "conclusory statements, in the absence of supporting evidence, do not warrant the refusal to enforce a validly issued subpoena") (citation omitted).

Respectfully submitted this 12th day of January, 2026.

| | |
|---|---|
| */s/ Ryan P. Ethridge* | */s/ Jonathan G. Cooper* |
| Ryan P. Ethridge | Michael J. Lyle |
| Ryan.ethridge@alston.com | Jonathan G. Cooper |
| N.C. Bar No. 38147 | **QUINN EMANUEL URQUHART &** |
| **ALSTON & BIRD LLP** | **SULLIVAN, LLP** |
| 555 Fayetteville St., Suite 600 | 555 13th Street NW, Suite 600 |
| Raleigh, NC 27601 | Washington, D.C. 20004 |
| Tel: (919) 862-2200 | T: (202) 538-8000 |
| | mikelyle@quinnemanuel.com |
| Brian D. Boone | jonathancooper@quinnemanuel.com |
| brian.boone@alston.com | |
| **ALSTON & BIRD LLP** | Anthony P. Alden |
| Vantage South End | anthonyalden@quinnemanuel.com |
| 1120 South Tryon Street, Suite 300 | **QUINN EMANUEL URQUHART &** |
| Charlotte, NC 28203 | **SULLIVAN, LLP** |
| Tel: (704) 444-1000 | 865 South Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017 |
| | Tel: (213) 443-3000 |
| *Attorneys for OptumRx, Inc.* | |
| | *Attorneys for Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); and Express Scripts Specialty Distribution Services, Inc.* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of January, 2026, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

*/s/Jonathan Cooper*
Jonathan Cooper
