# Exhibit 3

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4
                 ~~~~~~~~~~~~~~~~~~~~
 5
 6    IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
      OPIATE LITIGATION
 7                                    Case No.
                                      17-md-2804
 8
                                      Judge Dan Aaron
 9    This Document Relates To:       Polster
10    City of Rochester v. Purdue
      Pharma, L.P.
11    No. 19-op-45853 (Track 12)
12    County of Webb, Texas v.
      Purdue Pharma, L.P.
13    No. 18-op-45175 (Track 15)
14
                 ~~~~~~~~~~~~~~~~~~~~
15
16       Remote Status Conference Call Before
             Special Master David Cohen
17
18               January 6, 2025
19                  2:00 p.m.
20
21
22
23
24
25          Renee L. Pellegrino, RPR
```

Page 2

1   REMOTE APPEARANCES:

2

3      Peter H. Weinberger, Esq.

4      Joshua Agins, Esq.

5      Anthony Alden, Esq.

6

7           (Several participants not listed)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1            SPECIAL MASTER COHEN:  So the
 2   reason that we're all on the phone together
 3   today is that the PBMs have issued a non-party
 4   subpoena to Wegmans, which is a food and
 5   grocery store in the Rochester area that I
 6   think the parties all agree is the largest
 7   supplier of opioids to the Rochester area, and
 8   Wegmans is not wanting to respond with
 9   production of discovery requested by subpoena.
10   There are 12 categories, and the parties have
11   exchanged quite a bit of information, which
12   I've reviewed, and sent me position papers,
13   which I've reviewed.  I've tried to read
14   everything at least twice, but there's a lot
15   there.
16            So what we're going to do is
17   address, I think, the two critical elements to
18   the question of whether and the extent to
19   which Wegmans should produce to the PBMs the
20   subpoena requested information, and as the
21   parties have identified, those elements are
22   the relevance of the information sought and
23   the burden on Wegmans.  And I think that we
24   can probably do that for each of the 12
25   categories of documents that the PBMs request.
```

1           I will add that, as the parties

2    know, I sent this morning a case which stands

3    generally for the proposition that one of the

4    ways the Court can address the burden question

5    if the subpoenaed party asserts that the

6    burden is excessive is to have some of that

7    burden relieved by the requesting party paying

8    for the production, and so as we go through

9    these, I want to hear from the parties on how

10   that works, whether that can work here, the

11   extent to which we can use that tool.

12           And rather than go in numerical

13   order, I think I want to touch on some of what

14   I consider may be the easier categories first,

15   and -- I'm just looking at the subpoena.  One

16   second.  So I guess I want to start with what

17   I think might be the simplest, which is

18   category 12, and this is where the PBMs ask

19   Wegmans to produce contracts and agreements

20   that they have with any manufacturer or

21   distributor regarding any of the opioid drugs.

22   And I assume, given what I've read, that

23   Wegmans may not have any contracts with

24   manufacturers but certainly does with

25   distributors.  I don't know that.  I'm

Page 5

1   guessing it.  And my guess also is that as
2   opposed to, for example, dispensing data, that
3   the burden on locating and producing those
4   contracts is much, much lower on Wegmans, but
5   nonetheless I'd like to hear, I guess, first
6   from the PBMs, and I'll probably ask the PBMs
7   to go first every time, to explain to me the
8   relevance of those documents, and then you
9   could touch on burden, and then I'll hear from
10  Wegmans.
11          So, again, please identify
12  yourself for the record, and I'd like to hear
13  from the PBMs.
14          MR. ALDEN:  Good afternoon,
15  Special Master Cohen.  Anthony Alden for the
16  Express Scripts Defendants.  And Happy New
17  Year to everyone.
18          With respect to request number 12,
19  I think we tried to lay out the relevance in
20  our December 13 letter, which is essentially
21  that one of the Plaintiffs' core allegations
22  in the case is that the PBM Defendants were
23  motivated to overlook, if you like, alleged
24  excessive opioid use in prescriptions as a
25  result of contractually provided financial

Page 6

1    incentives between the manufacturers.  As part
2    of our superceding causation and apportionment
3    defenses, we think we're entitled to know
4    whether the largest dispenser of opioids in
5    Rochester was subject to some alleged
6    incentives, and those contracts would go to
7    that question.  And, you know, obviously if
8    Wegmans was receiving rebates and financial
9    incentives with respect to the dispensing of
10   opioids, that would feed into our defense that
11   it is indeed -- you know, that Wegmans was
12   that superseding cause or liability should be
13   apportioned to Wegmans.  So that's the reason
14   that we'd like to have these agreements.
15              SPECIAL MASTER COHEN:  Before I
16   hear from Wegmans, let me ask you, so at least
17   with respect to public nuisance -- and I think
18   this -- what I'm about to say applies to many,
19   if not all, of the categories.  With respect
20   to public nuisance, assuming -- and I think
21   it's -- I'm not sure how good an assumption it
22   is, but assuming that New York law is similar
23   to Ohio law and that New York jury
24   instructions would be similar to Ohio jury
25   instructions on public nuisance -- and I

```
                                            Page 7
 1    understand that that's up on appeal in New
 2    York, but nonetheless the jury instructions in
 3    the MDL trial talked about -- I don't have the
 4    exact words in front of me, but being a
 5    substantial factor that contributes to the
 6    public nuisance.  And there was a lot of
 7    discussion in that trial about the extent to
 8    which it mattered whether other folks
 9    contributed to the public nuisance as far as
10    liability, and indeed even as to damages.  If
11    someone is a substantial factor that
12    contributes to a public nuisance, they can be
13    liable and they can be liable for all of the
14    nuisance, for abating all of that nuisance,
15    even if there are other actors who also
16    substantially contributed.
17             If that's true -- and I'm not
18    certain it is in New York, but let's assume
19    for a moment it is.  If that's true, then how
20    does what you're asking for become relevant?
21    It seems to me it isn't relevant.
22             MR. ALDEN:  Well, I would say we
23    don't think it's true, but regardless of
24    whether it's true, we're facing not just a
25    public nuisance claim, we're facing RICO
```

```
                                        Page 8
 1    claims, and it's certainly relevant as to
 2    those claims whether the Plaintiffs -- it's
 3    relevant to whether Plaintiffs can establish
 4    proximate causation.
 5              SPECIAL MASTER COHEN:  Okay.  May
 6    I hear from Wegmans?
 7              MR. AGINS:  Thank you, Special
 8    Master Cohen.  My name is Josh Agins.  I'm
 9    with the law firm Hodgson Russ in Rochester,
10    New York and I represent Wegmans Food Markets,
11    Inc.
12              I think you just put your finger
13    on what we view as the dispositive threshold
14    issue of relevance.  And as we have been
15    writing now for several months, by and large
16    the requests are not relevant because there is
17    no superseding cause defense for a public
18    nuisance claim in New York.
19              Before we even get to that issue,
20    there's the question of whether Wegmans'
21    dispensing conduct even constitutes a public
22    nuisance.  And as you know from our papers, we
23    have an appeal pending to the New York State
24    appellate division on that very issue.  No
25    appellate court in New York has ruled that
```

```
                                            Page 9
 1    dispensing opioids or other similar conduct
 2    can constitute a public nuisance.  To the
 3    contrary, the appellate division has held in a
 4    case called Sturm that --
 5              SPECIAL MASTER COHEN:  I assure
 6    you you don't need to repeat anything in your
 7    papers.  I promise.  I've read it.  But let me
 8    jump off.  So let's say you're correct.  Let's
 9    say that the appellate courts in New York
10    conclude that you are correct and there is no
11    public nuisance claim for dispensing opioids,
12    you know -- and I don't know what that would
13    do to the Plaintiffs' case in the MDL.  But
14    let's say that that happens.  As counsel
15    opposite points out, there's still other
16    claims, and it's certain that for those other
17    claims there would be an apportionment of
18    liability in some way.
19              MR. AGINS:  That's a negligence --
20              SPECIAL MASTER COHEN:  Go ahead.
21              MR. AGINS:  I'm sorry to
22    interrupt.  That's a negligence claim.  I
23    think the answer would be no.  Under Article
24    16 under New York law there would not be
25    apportionment.  There would be joint and
```

Page 10

```
 1   several liability for economic harm.  There
 2   would not be an apportionment of any sort
 3   under New York law.  And even if there were
 4   some tangential argument to apportionment,
 5   then the question becomes what is that
 6   tangential relevance and how does it weigh
 7   against the immense burden.
 8              Now, I know we're not getting to
 9   burden yet, and I don't think we get past
10   relevance, but under New York law the PBMs
11   have not articulated why there would be an
12   apportionment, they have not cited any
13   authority for that either in their prior
14   submissions or in the e-mail from two hours
15   ago.  And, you know, our position on this --
16   and I know, Special Master Cohen, we're going
17   to go through these, but our position on this
18   would be that if apportionment as a matter of
19   New York law is going to be the justification
20   that opens the door to this type of discovery,
21   that is a critical issue under New York law
22   and that should be briefed fully and decided
23   on.
24              MR. ALDEN:  Special Master, this
25   is Anthony Alden from Express Scripts, for the
```

Page 11

1    Express Scripts Defendants.

2             I don't think there's any argument

3    or can be any dispute with respect to

4    proximate cause, though.  I mean, that is an

5    element of the remaining claims, and so, you

6    know, even -- you know, I am not prepared on

7    this call to cite you case law on

8    apportionment under New York law.  Regardless,

9    I don't think there can be a dispute that

10   proximate cause is an element of the remaining

11   claims and we are entitled to dispute

12   proximate cause at trial based on third-party

13   evidence from the widest distributor of

14   opioids in Rochester.

15             MR. AGINS:  Let me say two things

16   about that.

17             And, again, this is Josh Agins for

18   Wegmans.

19             Number one, let me speak a little

20   bit to this notion that Wegmans is a large

21   dispenser of opioids in Rochester, New York,

22   because I think it would be helpful in this

23   context to have some context for that.

24             Wegmans is an integral part of the

25   community of Rochester, New York and has been

```
                                        Page 12
 1   for a century.  It's the third largest
 2   employer.  It's one of the most longstanding
 3   successful companies in this city.
 4               SPECIAL MASTER COHEN:  Again --
 5               (Simultaneous speaking.)
 6               SPECIAL MASTER COHEN:  -- CVS and
 7   Walgreens and Walmart has done and it's off
 8   topic.  I'm telling you it's not helpful to
 9   me, especially since you wrote almost exactly
10   those same words in your letter.
11               MR. AGINS:  And to the point of
12   proximate cause, you know, the PBMs have in
13   their correspondence mentioned that as a
14   concept, and they say, well, we're not
15   prepared to cite any case law.  We've cited
16   case law to the contrary.  Unless they're
17   going to take the position that the
18   superseding cause, meaning Wegmans' conduct,
19   completely cuts off their liability, in order
20   to do that analysis, you would have to look at
21   the allegations in the complaint, the City of
22   Rochester's complaint against the PBMs.  And
23   they want to do everything except talk about
24   the allegations in that complaint.
25               The core allegations against the
```

Page 13

```
 1   PBMs is that they created the supply.  It's a
 2   marketing-based allegation; their
 3   collaboration allegedly with Purdue and other
 4   manufacturers creating demand; their alleged
 5   efforts to proliferate opioids to maintain
 6   their rebate revenue, their decisions with
 7   respect to prior authorization and formularies
 8   and all the rest.  That's the nature of the
 9   allegations.  Wegmans' dispensing conduct has
10   nothing to do with those allegations.  It
11   can't go to the issue of proximate cause.  And
12   they have never wanted to have a meaningful
13   discussion about those allegations.
14              SPECIAL MASTER COHEN:  I agree
15   with you that those allegations are very much
16   a part of the complaint, but there are also
17   allegations about the mail order pharmacy
18   aspect of their business.
19              I'm sorry.  Did you want to say
20   something?
21              MR. ALDEN:  I'm sorry.  I didn't
22   mean to interrupt.  This is Anthony Alden from
23   Quinn Emanuel for Express Scripts.
24              I just wanted to state a point,
25   which is that what Mr. Agins said is simply
```

Page 14

 1    not true.  I mean, there are paragraphs and

 2    paragraphs in the complaint about the mail

 3    order pharmacies as well as, you know, the

 4    PBMs' alleged failure to, you know, do

 5    anything in the face of prescriptions by

 6    third-party pharmacies, which would include

 7    Wegmans.  I mean, we're facing red flag

 8    analyses that we need to respond to, and, you

 9    know, we need the documents and data to be

10    able to respond to those analyses, and the

11    data that Wegmans and documents that Wegmans

12    produces is critical because they're the ones

13    who dispensed a large proportion of the

14    opioids in Rochester.

15                SPECIAL MASTER COHEN:  Let me turn

16    to burden and ask Wegmans to explain to me

17    what the burden would be if the Court were to

18    comply with the subpoena request for category

19    number 12.

20                MR. AGINS:  So putting aside the

21    objection to relevance, I think if number

22    12 -- there are a couple of words in number 12

23    that I think throw this off a little bit, but

24    if number 12 is limited to contracts with

25    distributors, you know, subject to whatever

Page 15

1   third-party notice requirements or
2   confidentiality requirements may be in those
3   contracts, I would agree with the sentiment
4   expressed earlier.  As I sit here right now, I
5   don't know that it's particularly burdensome
6   for us to pull those contracts.  You know, I
7   take issue with some of the other language in
8   paragraph 12 because, frankly, I'm not sure
9   what it's referring to, you know, or other
10  documents, for example.  But if we're talking
11  about contracts with distributors, that is a
12  discrete, ascertainable, identifiable thing
13  that I would not argue is particularly
14  burdensome.
15              SPECIAL MASTER COHEN:  Do you mean
16  to be saying, the way you worded that, that
17  you would -- you said distributors.  You
18  didn't include manufacturers.  I'm trying to
19  understand if you were doing shorthand or you
20  are being purposefully uninclusive of any
21  manufacturer contracts.
22              MR. AGINS:  That was not -- I was
23  not trying to intentionally exclude something.
24  My understanding is that the contracts are
25  with distributors, but my answer would be the

Page 16

```
 1   same whether it's distributors or
 2   manufacturers.
 3               SPECIAL MASTER COHEN:  And my
 4   understanding is that in the back and forth,
 5   although it didn't lead to very much
 6   agreement, there was an agreement that this
 7   would be limited and all of these would be
 8   limited to, quote, unquote, the drug scope,
 9   and it wouldn't include any other opioids,
10   that that was true for all of them.
11               All right.  I think I've heard
12   enough on number 12.
13               Let me jump to -- and I assure you
14   that the ones I'm picking are not necessarily
15   the easy ones.  They're just kind of the way
16   I'm thinking about things.  So number 2 talks
17   about documents that Wegmans and its
18   pharmacists used or considered that it
19   received -- they received from the PBMs, you
20   know, at the point of sale or any other time
21   when they were dispensing opioids.  And I'm
22   going to ask the PBMs to respond to this.
23               So if I understand what you're
24   asking for, you're saying we sent Wegmans and
25   other pharmacies communications, documents, et
```

Page 17

1   cetera that we believe they should have

2   considered, they were supposed to consider

3   when dispensing opioids, and they may have

4   been, you know, broad policy statements or

5   they may have been patient-specific

6   information.  But whatever.  We sent them a

7   bunch of stuff.  And we want to know now to

8   what extent did you consider the stuff that we

9   sent you when we were discussing, again,

10  whether it was, you know, a broad policy

11  statement or patient-specific information.

12          But it seems to me that the PBMs,

13  A, know what they sent, or should; and, B, can

14  pretty easily infer what Wegmans did by

15  looking at what was dispensed.  So, in other

16  words, if a patient covered by the PBMs came

17  in and got a prescription -- with a

18  prescription I should say, and Wegmans filled

19  it, well, you know that they filled it.  You

20  know that they filled it, let's say, despite

21  whatever it is you sent them.  So I'm not sure

22  why you need it.

23          MR. ALDEN:  This is Anthony Alden

24  again with the Express Scripts Defendants, and

25  I'll let the Optum Defendants weigh in if they

Page 18

1   want to.

2           The reason we need it is because

3   we don't know -- we need to know what

4   decisions Wegmans made.

5           For example, let's say a

6   point-of-sale communication came from the PBMs

7   or a PBM.  First of all, not even necessarily

8   the Defendant PBMs, but let's say it came from

9   a third-party PBM, and said, you know, we're

10  flagging this prescription because it comes

11  from a patient who has had two refills within

12  the past 30 days, right.  Wegmans then goes

13  ahead and fills the prescription.  It may be

14  that Wegmans did an investigation and

15  determined that it was perfectly appropriate

16  to fill that prescription.  The patient may

17  have -- or the doctor may have said, you know

18  what, yes, this patient is having an excessive

19  amount of back pain resulting from surgery, we

20  are going to -- you should go ahead and fill

21  the prescription.  On the other hand, Wegmans

22  may have done nothing and simply filled the

23  prescription, right.  Those are two very

24  different scenarios, the first of which would

25  potentially be defense to a red flag -- to a

Page 19

```
 1   red flag accusation that is being made by the
 2   Plaintiffs concerning that prescription.  The
 3   second would not necessarily.  And so it is
 4   important for us to know what action, if any,
 5   Wegmans took prior to dispensing that
 6   prescription.  That is information that is
 7   used by our experts in the red flag analysis
 8   to respond to Plaintiffs' allegations.
 9               SPECIAL MASTER COHEN:  Well, the
10   red flag analysis allegations are made against
11   your mail order pharmacy practices, not -- as
12   I understand the allegations, not, you know,
13   your activity as an owner of data or as a PBM.
14               MR. WEINBERGER:  Can I interrupt
15   for a second?  This is Peter Weinberger for
16   the PEC.
17               That's not a correct statement,
18   Special Master Cohen.
19               SPECIAL MASTER COHEN:  Okay.
20               MR. WEINBERGER:  We are --
21               (Simultaneous speaking.)
22               MR. WEINBERGER:  -- a red flag
23   analysis.  The point-of-sale analysis that
24   should -- that should have been done by the
25   PBMs at the time that they are contacted for
```

Page 20

1    purposes of payment approval, there is a red

2    flag analysis that we provided with respect to

3    that.

4             SPECIAL MASTER COHEN:  Okay.

5    Thank you for clarifying that.

6             Wegmans, do you want to respond?

7             MR. AGINS:  Thank you.  This is

8    Josh Agins again for Wegmans.

9             Our understanding all along -- and

10   we've asked questions about this of the

11   PBMs -- has been that they have all of the

12   point-of-sale information.

13            And the question that Mr. Alden

14   articulated a few moments ago about, you know,

15   what did the pharmacist do with that

16   prescription, was it filled and was it a

17   prescriber called or what was the rationale,

18   all of that is recorded in their POS system,

19   all of it.  And, in fact, if you look at the

20   prescriber -- the pharmacist manual, the PBM

21   pharmacist manual, it lays out chapter and

22   verse all of the ways that the dispensing

23   pharmacist interacts with that POS system, and

24   all of the actions taken, and even the

25   rationale for those actions is recorded in

Page 21

1    that system.  The claim is not being submitted

2    to the PBM and they won't review it or approve

3    it or pay for it unless that claim is

4    complete.

5              So our understanding all along has

6    been that they have all of that POS

7    information, and we've asked them repeatedly

8    to show us something that explains why they

9    wouldn't have it or be more concrete about

10   what they don't have.  But our understanding

11   is they've got all of it.  And, in fact, in

12   the CMO documentation for the second

13   bellwether in New York, there's an indication

14   there that they've produced all of this data

15   already and it's already being analyzed by the

16   Plaintiffs.  So our view was that was

17   confirmation that they've got all of the

18   information for point of sale that could be

19   relevant to number 2.

20             And then there's this other

21   concept I think built into number 2 about

22   other communications outside of the

23   point-of-sale system.  And we asked the same

24   question that you asked a moment ago, Special

25   Master Cohen, what are those communications,

Page 22

1    you know, and can you identify them for us.

2              So we don't see what more there is

3    here on number 2.

4              MR. ALDEN:  Special Master, may I

5    respond to that briefly?

6              SPECIAL MASTER COHEN:  Go ahead.

7              MR. ALDEN:  We don't -- I mean,

8    the -- this is Anthony Alden again.  The

9    notion that the PBMs have Wegmans' rationale

10   for dispensing opioids is wrong.  We don't

11   have it.  If Wegmans, for example, has notes

12   as to why a pharmacist overrode a red flag, we

13   don't have that, they have it, and we need

14   that data to be able to properly respond to

15   Plaintiffs' allegations.

16             Now, if they want to tell us they

17   don't maintain any data, any data responding

18   to point-of-sale communications, that's one

19   thing, but that's not what they've said, and

20   they have data that shows their internal

21   responses to our red flag communications that

22   we don't have and they need to produce it.

23   Again, it's important to us to be able to

24   respond.

25             If they have policies, procedures

Page 23

1   or manuals -- again, I don't know if they do

2   or not.  That's something that they know.  I

3   don't know that.  And so we need those

4   policies, procedures and manuals that talk

5   about how they should respond to point-of-sale

6   communications, which I would assume, in terms

7   of those documents, would not be burdensome to

8   collect.  I assume they would be centrally

9   maintained.

10          SPECIAL MASTER COHEN:  I wanted to

11  turn to that briefly and ask you, Josh, about

12  the burden of collecting and producing

13  information that is the subject of number 2,

14  which may be different depending upon what

15  we're talking about.  If they're centrally --

16  you know, if they're centralized documents,

17  pharmacist manuals, whatever it is that you

18  may have, that would, I assume, be different

19  than data entered into a system by a

20  pharmacist when a pharmacist is filling a

21  script regarding what red flag, you know,

22  analysis they undertook, what they decided and

23  why.

24          MR. AGINS:  You know, I'm not in a

25  position -- and I'm looking at number 2.  I'm

Page 24

1   not in a position to talk in great detail

2   about policies because the dispenser handbook

3   that is part of our contracts with the PBMs

4   lay out in great detail the steps that a

5   pharmacist takes to submit a claim to a PBM,

6   these two PBMs.  Those documents certainly

7   would not be burdensome to collect, but I

8   suspect the PBMs have those.

9             So beyond that, I don't -- I don't

10  see relevance to other policies of Wegmans

11  pharmacy that go beyond the claims they submit

12  to the PBMs because ultimately what number 2

13  seems to be talking about is Wegmans'

14  interactions with the PBMs.

15            SPECIAL MASTER COHEN:  I'm not

16  sure it is that limited.  I think that what

17  they're going after is Wegmans' activity

18  vis-a-vis filling scripts for patients

19  regardless of whether those are PBM-covered

20  patients or not.

21            Are you saying that Wegmans

22  wouldn't have any manuals or documents like

23  that except those received by the PBMs --

24  excuse me, received from the PBMs?

25            MR. AGINS:  I am not saying that,

Page 25

1    but what I am saying is I'm not in a position

2    to speak about that because my understanding

3    and interpretation of number 2 always has

4    been, and I think the parties' communications

5    have confirmed this, that number 2 is about

6    Wegmans' interactions with the PBMs.  That has

7    been the focus of the discussion.  So I'm not

8    saying there's not policies beyond that, but

9    I'm not in a position to talk about them.

10                SPECIAL MASTER COHEN:  Upon

11   looking more carefully at number 2, I think I

12   agree with you.

13                Okay.  Let me jump to number 5,

14   and on this one the parties were talking past

15   each other a bit, not unusual, not surprising,

16   but this one especially I just didn't

17   understand why there was any argument.  This

18   one asks about suspicious orders.

19                My understanding from what Wegmans

20   wrote is we're not a distributor, we have no

21   suspicious order obligation, we don't know

22   anything about suspicious orders, we ain't got

23   any, and it would be pretty simple to say

24   that, but somehow the communications back and

25   forth -- like I said, people kept talking past

Page 26

1  each other, PBMs wanted something more,

2  something more clear -- I'm not sure what they

3  wanted, actually -- and/or Wegmans wasn't

4  clear enough about it not having anything

5  responsive to that request.

6          So I'm going to start with

7  Wegmans.  It's kind of a yes-or-no question.

8  If yes, it might be, you know, yes comma but

9  or yes comma and.  But just yes or no, do you

10  have any suspicious orders that you know

11  about?

12          MR. AGINS:  The answer is no, and

13  if we weren't clear -- I wish we had

14  articulated it as clearly as you just did,

15  because for the reasons you just said, we're

16  not a distributor, we don't receive orders or

17  have suspicious orders, right, so we have

18  always taken the position that we have nothing

19  with respect to paragraph 5.

20          SPECIAL MASTER COHEN:  All right.

21  Let me ask the PBMs.  Are we good on that?  Do

22  you need something more than that?  It sounds

23  pretty clean to me.

24          MR. ALDEN:  Yeah.  This is Anthony

25  Alden again on behalf of Express Scripts.

1          I think the only clarification we

2   would want is just -- and, again, I don't need

3   to push this hard.  If the answer is the same,

4   the answer is the same, which is, you know, we

5   wanted to make sure that the way that they

6   were defining suspicious order was not nearly

7   the statutory definition, that any form of

8   notification that an order -- that a

9   prescription was suspicious -- if they had

10  some kind of an internal system for flagging,

11  you know, prescriptions that they shouldn't be

12  making, for example, or, you know, tracked

13  patients that had received -- that they

14  believe were receiving an unusual amount of

15  opioids, things like that, we would want that

16  information.  Now, if they don't have any of

17  that, great.  That ends the inquiry.  We just

18  wanted to make sure that we weren't defining

19  the words "suspicious orders" too narrowly.

20          SPECIAL MASTER COHEN:  Well, I

21  mean, you used suspicious orders with capital

22  S capital O, and that is a defined term that's

23  been understood to mean something very certain

24  and specific throughout this litigation, and

25  it sounds to me like you're trying to expand

Page 28

1    the meaning of that.

2              MR. ALDEN:  If I can respond to

3    that.

4              I don't think that's true.  The

5    definition that we used in the subpoena,

6    subsection 3, is what you define as a

7    suspicious order for purposes of your work.

8    So if they tell us, you know, that they don't

9    do that, they don't track suspicious orders,

10   consider it, then that's fine, I don't need to

11   push it.  I just wanted to make sure that that

12   aspect of the definition was included.

13             SPECIAL MASTER COHEN:  All right.

14   I think that will be simple.

15             Number 6, it occurs to me that,

16   again, same story.  Wegmans essentially says

17   we don't have access to ARCOS data, we didn't

18   do any analyses of ARCOS data.  What more is

19   there to talk about?

20             So let me start again by asking

21   Wegmans, is it that simple?

22             MR. AGINS:  It is that simple.  We

23   don't have access to ARCOS data.  And I will

24   point out in fairness --

25             SPECIAL MASTER COHEN:  That's all

Page 29

1    I wanted to hear.  That's all I wanted to
2    hear.
3            So PBMs, despite some sort of
4    caveat that Josh was just going to add, they
5    don't have access to ARCOS data.  What more do
6    you need to know?
7            MR. ALDEN:  What about -- this is
8    again Anthony Alden.  What about data from the
9    New York PMP?
10           SPECIAL MASTER COHEN:  I'll let
11   you answer that, Josh.
12           MR. AGINS:  Yeah.  No.  Thank you.
13   And that was -- I was just going to point out
14   that it does contain the reference to the PMP.
15   The PMP, to the extent pharmacists consult the
16   PMP, the documentation of that, if it's not in
17   the PBM's POS system -- and in many instances
18   it would be if it's a PBM prescription -- it
19   would be script-level information, drilling
20   down into a prescription to see whether
21   there's an annotation on it, and that gets
22   into issues of protected health information,
23   immense burden of collecting script-level
24   information, and that -- so that's an entirely
25   separate discussion.

```
 1            SPECIAL MASTER COHEN:  So let's
 2    jump into the hard one, which is number 1,
 3    which is data.
 4            Actually, before we do that, let
 5    me just ask another one that I think is quick.
 6    So is the analysis of category number 4, which
 7    asks for communications that Wegmans had with
 8    its pharmacists, any -- substantially
 9    different than the analysis of number 2?  I
10    mean, for both of them it's like, okay, what
11    did you tell your pharmacists and what did
12    they do with it.  And number 2 had to do with
13    information received from the PBMs.  Number 4
14    has to do with really almost any -- everything
15    else, information that Wegmans
16    (unintelligible) from any other source or
17    created to its pharmacist.  So just from a
18    question of relevance and burden, which is
19    what we've been talking about, do you have any
20    instruction that you would give me that the
21    analysis for number 2 and number 4 are
22    different?
23            MR. ALDEN:  This is Anthony Alden
24    again for the Express Scripts Defendants.
25            The answer to that question is
```

Page 31

```
 1   they are slightly different.  Number 2 goes to
 2   responses to communications both at the
 3   pharmacy and corporate level.  Number 4 goes
 4   to directed or instruction given to -- by
 5   Wegmans to its employees concerning opioids
 6   and documents within the drug scope.
 7              So what we're looking for in
 8   number 4 -- and, again, I think we've tried to
 9   make clear, and I'll make it clear again -- I
10   am not looking -- I don't believe we are
11   looking for every e-mail ever sent to a
12   Wegmans employee concerning an opioid
13   prescription.  What we would be looking for
14   are more, you know, whether it's Rochester
15   storewide or a company-wide directive or
16   instruction or alert as outlined in the
17   subpoena concerning dispensing opioids that
18   would have applied to dispensing opioids in
19   Rochester.
20              And so, again, if they undertake a
21   reasonable search and say we never issued any
22   such guidance or directives, you know, to our
23   employees, then that's the answer, but, you
24   know, we think that they would be capable of
25   undertaking a reasonable search.
```

Page 32

1           I just do want to add on -- I
2    apologize -- on request number 6 that that
3    doesn't just go to use of ARCOS or PMP data,
4    but also communications with those agencies.
5    I just didn't want that to get lost, but I
6    realize we're now on your question as to
7    number 4, and I hope that explains the
8    distinction.
9           SPECIAL MASTER COHEN:  Anthony,
10   explain this to me as succinctly as you can.
11   Let's say that I ruled you get everything you
12   want, okay, that Wegmans has to, you know,
13   really drop its kimono and give you everything
14   that you've asked for, all of the
15   communications it's received from these other
16   entities, what it did, its prescription data,
17   the works.  Now it's time for trial.  You
18   know, how do you use it, assuming that it
19   tells you everything you hope it tells you,
20   right?  In other words, it's really kind of
21   best case.  What does that look like at trial?
22   And, obviously, I'm asking a very hypothetical
23   question.  I have no reason to believe that
24   that's how I would rule or that the data would
25   be so wonderful for you, that the information

```
                                    Page 33
 1    would be so wonderful for you.  I'm not there
 2    at all, but I just want to understand what it
 3    is -- kind of why you want all this best case.
 4              MR. ALDEN:  Well, look -- again,
 5    Anthony Alden speaking -- I don't -- I am not
 6    really a trial lawyer so please don't take
 7    what I'm saying as the final word on this,
 8    buy, you know, for example, as I mentioned
 9    before, on the dispensing data and the
10    point-of-sale communication data, that is data
11    that is going to go to our experts who are
12    going to build it into a response to
13    Plaintiffs' red flag analysis.  And I expect,
14    for example, that if -- if the results show
15    that, and you know, bear this out that -- the
16    expert would make some kind of a presentation
17    that said we've analyzed Plaintiffs' red flag
18    presentation, we've analyzed (unintelligible)
19    data, we've analyzed the third-party data, and
20    as to Wegmans we have determined that -- you
21    know, as to Plaintiffs' red flag analysis we
22    have determined that 30 percent of the
23    prescriptions identified by Plaintiffs were
24    issued by Wegmans.  We've also determined that
25    as to whatever, 29 percent of those
```

Page 34

1   prescriptions -- 75 percent of those
2   prescriptions, there was a point-of-sale
3   communication warning Wegmans as to the
4   prescription of the opioids; and we have
5   determined, based on our analysis of Wegmans'
6   data, that as to 80 percent of those red flag
7   analysis, there was no subsequent follow-up at
8   all.  That would be an example of how we would
9   use those particular sets of data.  And --
10                SPECIAL MASTER COHEN:  That didn't
11  take me all the way to the end.  Comma and
12  therefore what?  Comma and therefore we should
13  be held liable?  Comma and therefore Wegmans
14  is responsible for X percent?
15                MR. ALDEN:  Both.  And, therefore,
16  Plaintiffs have not established proximate
17  cause as to X percentage of prescriptions that
18  they've identified, and that the liability
19  should be apportioned to Wegmans.
20                SPECIAL MASTER COHEN:  Okay.  Let
21  me go to number 1.  It's the hard one.  And
22  part of the reason it's the hard one is
23  because I think it's obvious to everybody on
24  the call that the burden question is more
25  difficult with respect to production of data.

Page 35

1   I'm sure that even the PBMs would be first in
2   line if I said, you know, is it expensive and
3   hard to produce data -- the PBMs would say
4   hell yes.  So -- and this is in part why I
5   sent the case law that stands for the
6   proposition that sometimes that issue, the
7   burden issue, can be addressed by shift in
8   cost.
9           So, again, here's part of what
10  occurs to me.  At least some -- in fact, maybe
11  most of the data that the PBMs are asking for
12  they already have, which is to say for every
13  patient that's covered by the PBMs -- and
14  that's two out of three of the big boys -- not
15  Caremark, but it's got to be a substantial
16  fraction -- for all of those patients, the
17  PBMs know what the prescriptions are already.
18  They helped determine whether there was
19  coverage for those.  And I've said many times,
20  look, it is rarely the case that someone is
21  going to get every bit of what they want.
22  What they're entitled to get is enough to
23  understand the lay of the land.
24          And so with regard to this data, I
25  guess my central question is, for the PBMs,

Page 36

1   why don't you already have enough data to
2   understand it just by virtue of what you
3   already have part 1 and part 2?  How do you
4   respond to the burden question, which I think
5   in the case of category 1 is, you know, the
6   most easily made out by Wegmans.
7              MR. ALDEN:  This is Anthony Alden
8   again for the Express Scripts Defendants.
9              So we only have data with respect
10  to our individual PBM customers.  We do not
11  have data that pertains to if they're not a
12  customer.  We do not have data, for example,
13  on cash purchases.  We would not have data on
14  state-funded programs.  And so there is an
15  allegation -- the central allegation, the
16  predicate allegation in this case is that
17  there was an opioid epidemic.  Wegmans was
18  responsible we think for 30 percent of the
19  prescriptions of opioids.  We need to see what
20  that looked like because we can't tell what
21  the full picture is just from our own data.
22  And, look, if -- I'm happy to have
23  conversations with Wegmans about the burden
24  involved in producing that data.  Right now
25  all I have is a few lines from an attorney

```
                                            Page 37
 1   letter.  I'm happy to have a conversation
 2   about it.  I'm happy to have a conversation
 3   about ways we could potentially try to
 4   minimize it, but there is data that we don't
 5   have, and we think that we're entitled --
 6   given the core allegations of the case, that
 7   there is an epidemic, we're entitled to see
 8   the prescriptions of opioids in the city.
 9              SPECIAL MASTER COHEN:  Tell me a
10   little bit more about -- and you may not know
11   more about an e-mail that I received just
12   prior to this tele-con suggesting that, for
13   settlement purposes, you believe Wegmans has
14   produced this data, that it's not true that
15   they have never produced data in connection
16   with opioid litigation.
17              MR. ALDEN:  I would actually, you
18   know, respectfully refer that to Wegmans'
19   counsel.  All I know is what was in the
20   letter, which seemed to be, from my reading of
21   the letter, that Wegmans had been ordered to
22   produce data for mediation purposes in New
23   York in at least one New York case.  The scope
24   of that I don't know.
25              SPECIAL MASTER COHEN:  All right.
```

```
                                            Page 38
 1    Let me ask Wegmans' counsel, Josh, to respond.
 2                 MR. AGINS:   Josh Agins for
 3    Wegmans.
 4                 I'll pick up on that last point.
 5    I appreciate the opportunity to clarify that.
 6                 The phrase "dispensing data" in
 7    that letter is probably, unfortunately, a bit
 8    of a misnomer.  In the Akin's pharmacy case,
 9    which was commenced in Yates County and
10    pending in front of Justice Koba, the Court
11    conducted some settlement negotiations with
12    all of the parties and directed all of the
13    pharmacy Defendants to produce some, quote,
14    unquote, dispensing data.  None of that had
15    anything to do with what the PBMs are asking
16    us to produce.  The dispensing data that was
17    produced for settlement purposes in the Akin's
18    case was total MME numbers by plaintiff,
19    meaning what is the total MME dispensed by
20    each pharmacy in each of the plaintiff
21    municipalities, so City of Rochester, how many
22    MMEs did Wegmans and each of the other
23    pharmacies produce for the drugs that were at
24    issue in the Yates County case, which is a
25    narrower set of drugs than the PBMs are asking
```

Page 39

```
 1    us for.  So it's entirely apples and oranges,
 2    and I suspect that probably clears it up.
 3              As for the bigger issue, this is
 4    another one where our position would be if
 5    these general arguments about apportionment or
 6    superseding cause are going to justify this
 7    type of non-party discovery, we really would
 8    like to have that issue briefed thoroughly,
 9    because it is a huge burden, and I recognize
10    that we have not, for example, provided the
11    PBMs with a lengthy, detailed, factual
12    declaration to outline that burden, but, quite
13    frankly, they know the burden.  It is a
14    tremendous burden.
15              And I will point out that the
16    limited data that was produced, these total
17    MME counts that was produced in the Akins
18    case, took us months to pull in a manner that
19    we felt confident was reliable for purposes of
20    producing it to the plaintiffs in that
21    context.  And that took months.  And that was
22    raw numbers.  It wasn't any of the dispensing
23    fields that the PBMs are requesting here.
24              SPECIAL MASTER COHEN:  Are the
25    same plaintiffs --
```

```
                                          Page 40

 1                  (Simultaneous speaking.)

 2                  SPECIAL MASTER COHEN:  One second,

 3      Josh.

 4                  Are the same plaintiffs as are --

 5      I guess I should put it this way:  Is

 6      Rochester suing you in state court also?

 7                  MR. AGINS:  The City of

 8      Rochester --

 9                  (Simultaneous speaking.)

10                  SPECIAL MASTER COHEN:  Yeah.  Go

11      ahead.

12                  MR. AGINS:  Sorry to interrupt.

13                  The short answer is yes.  The City

14      of Rochester sued Wegmans in that one case

15      that I referred to earlier, the Akin's case;

16      however, the plaintiffs in that case are in

17      the process of trying to discontinue that

18      case, including the City of Rochester.

19                  SPECIAL MASTER COHEN:  Why do you

20      suppose that is, to avoid the appellate issue?

21                  MR. AGINS:  Well, I'd be

22      speculating a little bit, but I -- frankly, we

23      feel like that's an issue that should be

24      decided by the appellate division.

25                  SPECIAL MASTER COHEN:  Right.  I
```

Page 41

1    think I remember you saying that there was an

2    offer to dismiss without prejudice and you

3    said no thank you.  But that's who we're

4    talking about?

5                MR. AGINS:  Yes.  The City of

6    Rochester is among that plaintiff group.  It's

7    three dozen or so plaintiffs that sued Wegmans

8    and some small, you know, mom-and-pop local

9    regional pharmacies, nothing like the -- you

10   know, the national dispenser/distributor

11   pharmacies that have been part of the MDL.

12               MR. ALDEN:  Special Master, this

13   is Anthony Alden again.  Could I just say one

14   thing, which is, you know, this data is

15   sufficiently important to us, the PBM

16   Defendants, that I am willing to have a

17   conversation with Mr. Agins about how we would

18   be able to alleviate the burden, and if there

19   is a cost burden, for him to provide

20   information as to what the cost burden would

21   be for us to consider.  We are open to having

22   that conversation.  I don't think we have

23   sufficient information right now, but this is

24   data that we feel is sufficiently important so

25   that would be something that we are willing to

Page 42

```
 1   consider if we get that information.
 2              SPECIAL MASTER COHEN:  What do you
 3   think about Josh's suggestion that there be
 4   some briefing, perhaps even on an expedited
 5   basis, with regard to -- and I've being using
 6   apportionment loosely, right.  I mean, there
 7   are a lot of related doctrines, but ultimately
 8   what they have to deal with is are there other
 9   entities that may have an obligation or a
10   share in the liability, whether you call it
11   nuisance -- excuse me, whether you call it
12   apportionment or joint and several liability
13   or anything else.  What about that; that is to
14   say, what about briefing that issue?
15              MR. ALDEN:  You know -- this is
16   Anthony Alden again -- I don't -- I don't
17   think it's necessary.  I think the standard of
18   relevance is sufficiently broad that we have
19   met our relevance easily.  I don't think at
20   this stage we are required -- and I don't
21   think the Plaintiffs have ever been required
22   to explain how they -- you know, or would say
23   that they should be required to explain how
24   they intend to use evidence at trial.  I think
25   that this is -- you know, we have sufficiently
```

Page 43

1   articulated what the relevance is to obtaining

2   data on opioid prescriptions from the largest

3   opioid prescriber in Rochester, and we've

4   indicated we're willing to have a conversation

5   with them about burden, and, you know,

6   provided they can articulate it.  And so, you

7   know, frankly, we've been through rounds of --

8   months of letter writing and briefing and, you

9   know, we would just -- you know, I think we've

10  sufficiently established relevance and we,

11  frankly, just need to get on with getting the

12  documents.

13          SPECIAL MASTER COHEN:  Let me jump

14  to some of these other categories.

15          Number 3 is essentially materials

16  provided by manufacturers regarding the drugs

17  to Wegmans.  Let me start by asking Wegmans

18  about burden, do you think that that's

19  something that's hard to do.  And then the

20  other question I have is -- for PBMs it's

21  really more why do you need that, why do you

22  need it from Wegmans.  Most of it, almost all

23  of it, has already been produced into the MDL.

24  And so you pretty much know what the

25  manufacturers sent.  The only thing that

Page 44

1  getting it from Wegmans would add is, you

2  know, kind of a final crossing of the T

3  showing that they, in fact, got it as opposed

4  to the inference that they got it.

5           But I'll go with, you know, asking

6  Wegmans first what, you know, the burden is in

7  gathering that.

8           MR. AGINS:  Thank you.  Josh Agins

9  for Wegmans.

10          So it would depend on -- on what

11 the data is.  To your point, we've said, okay,

12 what are the communications, and we presume

13 that given their active participation in the

14 MDL, the PBMs have some of these

15 communications readily available to them, they

16 have a plan for them, and they are

17 significant.  If that's the case, tell us what

18 those are.  And if the question were can you

19 confirm that you received these and when and

20 who received them, that may not be

21 particularly burdensome, but, you know, to

22 take request number 3 as written and to say

23 give us all documents and communications

24 concerning those without even identifying

25 those for us, that is a monumental burden, and

Page 45

```
1   that's sort of where we left it, but that is
2   one of the requests where, you know, I think
3   there's room for meaningful conferral efforts
4   if the PBMs could come back to us and say here
5   are the communications that we think matter,
6   and then we would have an ability to either
7   search for those communications or at least
8   have a better sense of what that burden might
9   look like.
10           SPECIAL MASTER COHEN:  All right.
11  So what I'm hearing is that it would be a lot
12  easier for you to answer a multiple choice
13  question than an essay, and I think that makes
14  sense.
15           Go ahead, Anthony.
16           MR. ALDEN:  If I could just
17  respond to that.  I mean, look, I don't know
18  what Wegmans received so I can't tell him -- I
19  cannot tell Wegmans what, you know -- what to
20  look for.  What I can say is we're not looking
21  for every communication -- if Mr. Agins were
22  to come to me and say, look, we would be
23  required to search 50 custodians over a
24  13-year period, I think our response would be
25  no, we're not looking for that.  On the other
```

Page 46

1    hand, if there was a person responsible, or

2    people, a handful of people that had been

3    responsible for communicating with the

4    manufacturers over the relevant period, that's

5    a different question, right.  We've provided

6    them search terms at their request and that

7    would be a different conversation.

8              And so, you know, again, I agree

9    with you, this is probably not one of our

10   central requests, but all we've heard today is

11   no, and if the answer would be, look, you

12   know, there are at least five people, we're

13   willing to do limited searches to look for

14   communications, then that may be one thing; if

15   the answer is there are 50 people or we can't

16   do it at all, that's a different thing.  But

17   we don't know.

18              MR. AGINS:  If I could just

19   briefly -- this is Josh Agins for Wegmans.  If

20   I could briefly respond to that.

21              The search terms -- and I don't

22   think, Special Master Cohen, you need the

23   search terms, but they don't meaningfully

24   narrow anything.  The search terms for

25   paragraph 3 are drug scope within 20 of addict

Page 47

1   or E-F-F-I-C or safe and manufacturer or

2   distributor or RDC or Rochester Drug

3   Cooperative.  It's basically using a very

4   broad category to try to justify very broad

5   e-mail searches of Wegmans pharmacy without

6   any real rationale as to what we're shooting

7   for, why it's relevant, or how we could

8   meaningfully pare it down.  And, as I've said,

9   we've asked them to identify the

10  communications.

11          MR. ALDEN:  Can I respond to that?

12  This is Anthony Alden again.

13          What we want and the rationale has

14  been articulated multiple times.  Wegmans

15  asked for search terms.  The way this normally

16  works is you provide search terms and then

17  they come back and say, look, these search

18  terms are going to be too broad because we'd

19  have to run them over 15 people and here's

20  what we would get as a result or an estimate.

21  But we got nothing.  So they asked for search

22  terms and simply said no, they're too broad,

23  we're not giving you anything.

24          So what normally happens, and I

25  believe what should happen here, is they take

Page 48

1     our search terms, they identify the people who

2     would have this, and they come to us and say,

3     look, given the number of people, it would be

4     too burdensome for us, we would propose X, or

5     maybe it's five people and maybe there are

6     5,000 documents and they say that's fine,

7     we'll do Y, we'll do that.  But they have not

8     made the effort to do it because they've just

9     refused to produce any of these documents.

10              So I'm happy to have a

11    conversation about scope and burden, but it

12    has to be based on information, not just

13    simply we haven't provided a relevance

14    rationale, which we have.

15              MR. AGINS:  This is Josh Agins.

16              (Simultaneous speaking.)

17              MR. AGINS:  I'm sorry.

18              SPECIAL MASTER COHEN:  Go ahead.

19              MR. AGINS:  Josh Agins for

20    Wegmans.

21              I was going to say I think it's

22    strong to say that Wegmans asked for search

23    terms.  I mean, within the context of a

24    conferral, there was a discussion about search

25    terms, and we said if you have narrow search

Page 49

1   terms, we'll take a look at them.  So it's a
2   little different than saying please send us a
3   bunch of very broad search terms that we'll
4   agree to run without even seeing them.  So I
5   just want to clarify that.
6             But number 3 in particular would
7   be much more straightforward if the PBMs would
8   identify the communications at issue, because
9   unless we know what communications we're
10  talking about, we can't even begin to have a
11  meaningful discussion about custodians or
12  search terms.
13            MR. ALDEN:  I can -- this is
14  Anthony Alden.  I can identify them for you
15  right now.  They're listed.  We want the
16  communications, publications, presentations,
17  analysis, reports, guidelines, directives,
18  announcements, recommendations, pamphlets,
19  circulars and notices to Wegmans by a
20  manufacturer regarding the efficacy, addictive
21  quality or safety of any --
22            SPECIAL MASTER COHEN:  I don't
23  think it's helpful right now to just reread
24  the language from the subpoena which you've
25  been arguing about for four to six months.

Page 50

1    Let's move on.

2              So the parties themselves in the

3    discussion kind of lumped together numbers 8,

4    9, 10 and 11, and I think of 7 as more or less

5    similar, and these all go to communications

6    that Wegmans has received or made to others,

7    including its own employees, about, you know,

8    opioid-related issues, investigations, doctor

9    shopping.  It's what have you said internally

10   and externally about this opioid mess.

11             And I guess I'll start by asking

12   Wegmans to address, you know, all of those.  I

13   think -- you can tell me if I'm wrong -- that

14   they can be addressed together, but both with

15   regard to our two standards, relevance and

16   burden.  And I guess I'm more focused on

17   burden.  I think I understand the arguments

18   that the PBMs would make about relevance.

19             MR. AGINS:  I'm sorry.  Special

20   Master Cohen, would you say those numbers

21   again?

22             SPECIAL MASTER COHEN:  Sure.  It's

23   basically all the ones that are left, which

24   are 7, 8, 9, 10, 11.  And just to repeat, I

25   think of these as all somewhat related because

Page 51

```
 1   they all go to internal or external
 2   communications made or received by Wegmans
 3   about opioid prescribing, investigations that
 4   they undertook, investigations that the DEA
 5   may have undertaken of them; you know,
 6   conversations that Wegmans had with its own
 7   employees about it.  They're all loosely
 8   related.
 9              MR. AGINS:  So I won't reiterate
10   what we've said, unless you would like us to
11   get into it, but what we've said about
12   relevance on these in writing.
13              Wegmans' prescribing conduct has
14   nothing to do with the claims by the City of
15   Rochester against the PBMs.  And the fact that
16   Wegmans dispenses prescriptions in the City of
17   Rochester is not enough.  So we would not
18   agree that these are relevant.
19              I can speak to the burden issue,
20   and just as a general point, the concept of
21   running broad search terms over custodian
22   sets, we haven't had any discussions with the
23   PBMs about custodians, and in one of the early
24   calls we asked, well, how did you identify
25   custodians.  They have never come to us and
```

Page 52

1    said here's an example of a custodian we'd

2    like you to run these terms on.  So doing

3    broad-brush e-mail discovery is an immense

4    burden.  We haven't calculated that at this

5    point because we haven't had a discussion of

6    custodians, but it is going to be an immense

7    burden to do that e-mail discovery.  And the

8    PBMs know that.  They've engaged in that type

9    of discovery as a party.  As a non-party

10   that's not the type of discovery we should be

11   participating in.

12            But having said that, there are

13   discrete elements of some of these where, as

14   opposed to identifying a broad concept, we

15   probably could identify documents or files

16   that are discernible and have a discussion

17   about those.

18            So, as an example, number 7 asks

19   about, you know, interactions -- essentially

20   interactions with law enforcement in Monroe

21   County.  And that would be an example where we

22   could go to someone and ask about files of

23   interactions with, for example, local law

24   enforcement or the DEA.  And I'm not

25   suggesting we would agree to get into

Page 53

```
 1   broad-based e-mail discovery about that, but
 2   in terms of identifying when Wegmans has
 3   interacted with law enforcement about local
 4   prescribers in Rochester, that is a
 5   discernible thing that I think we can have a
 6   meaningful conferral effort on.  But we
 7   haven't reached that point because it's always
 8   been, well, we want all of it, and our
 9   relevance argument for why we should get it is
10   very broad brush, and so we haven't had
11   conferral efforts mature to the point where
12   we've discussed these sorts of discrete types
13   of documents that we might be able to produce
14   with a moderate level of burden.
15                  SPECIAL MASTER COHEN:  Right.
16                  So what you've just put your thumb
17   on is a communications problem, and I think
18   it's real, and I saw it in the e-mails, each
19   side waiting for the other to concede
20   something.  And here's how I think that that
21   can be bridged.  Here's how I suggest you move
22   forward.  So -- and I have a couple more
23   points I want to make after this, but this is
24   important.  As I said in the beginning, and as
25   I now conclude, I think that there is
```

Page 54

1    something more than nothing that Wegmans is

2    going to have to produce; that is to say that

3    the subpoena isn't asking for only irrelevant

4    matters or only matters regarding which the

5    burden is too onerous.  There are some

6    communications, documents, there are some

7    responsive materials that Wegmans should

8    produce in response to the subpoena.

9                Now, the question is what should

10   it produce.  So, Josh, you just suggested

11   that, you know, with regard to, I think it was

12   number 7 you were talking about, yeah, we can,

13   for example, go to X custodian and ask about Y

14   sort of documents that fall within this

15   category.  You've never really said that

16   before.  You've only said none of it is

17   relevant and it's too broad.  Well, the only

18   way to get past that is to figure out what is

19   relevant, what isn't too broad.  And so what I

20   suggest may be a first step, even while you

21   wait for a ruling from the Court, is to say,

22   okay, as to number 7, here is what I propose

23   we give you.  How is that?  And the PBMs may

24   say, you know what, we're good.  That's

25   enough.  That will give us 80 percent of what

Page 55

```
 1   we're hoping to get and we're never going to
 2   get 100 percent.  So we'll take that.  We're
 3   good to go.  Run it.  Number 7 is done.
 4   Because if you're waiting for the PBMs to come
 5   to you with a narrowing, part of the problem
 6   with that is that they can't do it because
 7   they don't know what you know.  You're the one
 8   that I think needs to say here's how I propose
 9   I answer that narrower than what you wanted
10   but it should be enough, and then you start a
11   negotiation with something on the table as to
12   each one of these things.
13            So I really want you, Josh, to
14   take the first step and come back with a
15   concrete suggestion.  Some of them may still
16   be, you know what, there just isn't anything
17   we can do that wouldn't be extremely onerous.
18   But some of them you said during this call you
19   can do.  You can at least make a suggestion
20   here's something we can give you, let us know
21   if this is good, if this is enough, and start
22   a negotiation.
23            The other thing that I think that
24   the PBMs need to do is -- so, Anthony, you
25   said, in particular with respect to category
```

Page 56

1  1, this is important.  We really, really,
2  really think that we need this.  This isn't --
3  you know, some of them aren't that important.
4  This one is.  In fact, it's so important we're
5  willing to consider paying for it.  I think it
6  would be helpful to identify the ones that are
7  that important and you're willing to pay for
8  because the Court and I will take that into
9  account.  If you say, for example -- I'm just
10  picking a random number -- number 9 is really
11  important.  We really want that.  They say
12  it's an extreme burden to do because of X, Y,
13  Z and they should have to actually say what X,
14  Y and Z are.  Okay.  We get that.  We know
15  that doing that is expensive.  We've had to do
16  it ourselves.  But we really, really want it.
17  We're willing to pay for it.  That's something
18  the Court needs to know.
19        So despite your -- you know, your
20  history of, frankly, kind of not being willing
21  to talk with each other, you're both talking
22  past each other and saying the same thing over
23  and over.  It doesn't help.  I'm suggesting
24  that if you get on the phone with each other
25  and think to yourself every time you open your

Page 57

1    mouth what is the solution, not what is the
2    problem, what is the solution that we can come
3    to, how can we solve this, what if we do this,
4    is that a solution?  No.  Okay.  Well, what if
5    we do that?  You need to come up with
6    alternative possibilities instead of just
7    saying no, no, no, not good enough.
8              Now, I've heard a lot.  I can
9    issue an order that nobody would like --
10   certainly nobody would like all of it -- that,
11   in my discretion, chooses things -- and, you
12   know, I'm seeing the word "appeal" used in
13   some of these documents.  It's hard for me to
14   believe that there would be any successful
15   appeal of a discovery matter that is within my
16   discretion as long as I am not
17   (unintelligible).  Usually I'm not.  But what
18   ends up happening then is folks get something
19   they don't like as opposed to something that
20   they negotiated and are okay with.  That's
21   where this is headed.
22             So I'll end with that.  You know,
23   that's just kind of where I see things, and I
24   will start one by one going through this and
25   saying yes, no, yes, no, but in the meantime I

Page 58

1    think it would be great if you could call me

2    up and say number 4 is moot, for example,

3    we've figured out how to deal with it.  If you

4    absolutely just are in complete disagreement

5    on something, then I'll make a call.

6                    Any thoughts or suggestions or

7    comments?

8                    MR. ALDEN:  I'm sorry.  This is

9    Anthony Alden.

10                   Look, I think we're fine to do

11   that, to give it one -- you know, one last

12   shot.  I'm very conscious of the time here

13   with an April 25 fact discovery deadline, but

14   I do think it important that we know quickly

15   from Wegmans what it is willing to do on each

16   of these topics.  I think that will then

17   inform, you know, whether we need to go back

18   to you quickly and say, look, there is no --

19   we're just not going to be able to reach

20   agreement on this, we would like a ruling, or

21   as to these five, you know, we'd like a

22   ruling, but as to the remaining seven we would

23   like to keep negotiating.  I would be open to

24   that, and I would also be open to telling

25   based on that which, you know, if there is,

```
 1   you know, a substantiated burden, we would be
 2   willing to pay for it, or at least depending
 3   on what the cost burden is.
 4            SPECIAL MASTER COHEN:  Josh, when
 5   do you think you can get something to Anthony?
 6   And I'm not even asking for on every single
 7   one of these categories, maybe just the -- you
 8   know, I'm choosing again kind of a random
 9   number -- the five easiest ones, the five ones
10   where you think you know what, here's how I
11   think we can solve this.  This gives you a lot
12   of what you want.  We can do it without a
13   terrible burden or whatever.  And do that
14   fairly quickly.  How soon can you do that?
15            MR. AGINS:  I think we could
16   provide that list by the end of this week,
17   possibly Monday, but we would endeavor to do
18   it by the end of the week.
19            SPECIAL MASTER COHEN:  And you can
20   roll it out.  There might be two that you can
21   do by the end of the day.  I don't mean to
22   push you any harder.  I'm just saying because
23   I think that's fine.  That seems reasonably
24   quick.  But you can roll it out.  You can say,
25   look, here's two that here's what we can do.
```

```
                                                   Page 60
 1    That should be enough.  And et cetera.  And
 2    get to the easy ones first.  Get to the ones
 3    that you can resolve.  And the stuff at the
 4    end that you can't resolve, if there is any, I
 5    will.
 6                Any other thoughts, comments,
 7    suggestions?
 8                All right, folks.  Look, it's not
 9    easy.  This stuff is hard.  I appreciate
10    everybody's hard work.  You know, as I was
11    reading everybody's position papers, I thought
12    these guys are good.  They're very good
13    writers.  They're very concise.  They're very,
14    you know, to the point on both sides.  So I
15    commend you for that.  And we'll keep working
16    to get it done.
17                So thank you all for your time.
18                MR. ALDEN:  Thank you for your
19    time.
20                MR. AGINS:  Thank you very much.
21
22      (Status conference concluded at 3:18 p.m.)
23                     - - - - -
24
25
```

Page 61

1                          CERTIFICATE

2

3

4              I, Renee L. Pellegrino, RPR, do

5     hereby certify that as such Reporter I took

6     down in Stenotypy all of the proceedings had

7     in the foregoing transcript; that I have

8     transcribed my said stenotype notes to the

9     best of my ability into typewritten form as

10    appears in the foregoing transcript; that said

11    transcript is the complete form of the

12    proceedings had in said cause and constitutes

13    a true and correct transcript therein.

14

15

16

17

18

19              Renee L. Pellegrino,

20              Notary Public, within and for the

21              State of Ohio

22

23    My commission expires October 12, 2025.

24

25

**[1 - akin's]**                                                           Page 1

| 1 | 3 | a | |
|---|---|---|---|
| **1** 30:2 34:21<br>36:3,5 56:1<br>**10** 50:4,24<br>**100** 55:2<br>**11** 50:4,24<br>**12** 1:11 3:10,24<br>4:18 5:18<br>14:19,22,22,24<br>15:8 16:12<br>61:23<br>**13** 5:20 45:24<br>**15** 1:13 47:19<br>**16** 9:24<br>**17** 1:7<br>**18** 1:13<br>**19** 1:11 | **3** 28:6 43:15<br>44:22 46:25<br>49:6<br>**30** 18:12 33:22<br>36:18<br>**3:18** 60:22<br>**4**<br>**4** 30:6,13,21<br>31:3,8 32:7<br>58:2<br>**45175** 1:13<br>**45853** 1:11<br>**5**<br>**5** 25:13 26:19<br>**5,000** 48:6<br>**50** 45:23 46:15 | **aaron** 1:8<br>**abating** 7:14<br>**ability** 45:6<br>61:9<br>**able** 14:10<br>22:14,23 41:18<br>53:13 58:19<br>**absolutely** 58:4<br>**access** 28:17,23<br>29:5<br>**account** 56:9<br>**accusation** 19:1<br>**action** 19:4<br>**actions** 20:24<br>20:25<br>**active** 44:13<br>**activity** 19:13<br>24:17 | **agencies** 32:4<br>**agins** 2:4 8:7,8<br>9:19,21 11:15<br>11:17 12:11<br>13:25 14:20<br>15:22 20:7,8<br>23:24 24:25<br>26:12 28:22<br>29:12 38:2,2<br>40:7,12,21<br>41:5,17 44:8,8<br>45:21 46:18,19<br>48:15,15,17,19<br>48:19 50:19<br>51:9 59:15<br>60:20<br>**ago** 10:15<br>20:14 21:24 |
| **2** | **6** | **actors** 7:15 | **agree** 3:6 13:14 |
| **2** 16:16 21:19<br>21:21 22:3<br>23:13,25 24:12<br>25:3,5,11 30:9<br>30:12,21 31:1<br>36:3<br>**20** 46:25<br>**2025** 1:18<br>61:23<br>**2227** 61:18<br>**25** 58:13<br>**2804** 1:6,7<br>**29** 33:25<br>**2:00** 1:19 | **6** 1:18 28:15<br>32:2<br>**7**<br>**7** 50:4,24 52:18<br>54:12,22 55:3<br>**75** 34:1<br>**8**<br>**8** 50:3,24<br>**80** 34:6 54:25<br>**9**<br>**9** 50:4,24 56:10 | **actually** 26:3<br>30:4 37:17<br>56:13<br>**add** 4:1 29:4<br>32:1 44:1<br>**addict** 46:25<br>**addictive** 49:20<br>**address** 3:17<br>4:4 50:12<br>**addressed** 35:7<br>50:14<br>**afternoon** 5:14 | 15:3 25:12<br>46:8 49:4<br>51:18 52:25<br>**agreement** 16:6<br>16:6 58:20<br>**agreements**<br>4:19 6:14<br>**ahead** 9:20<br>18:13,20 22:6<br>40:11 45:15<br>48:18<br>**ain't** 25:22<br>**akin's** 38:8,17<br>40:15 |

**akins** 39:17
**alden** 2:5 5:14
  5:15 7:22
  10:24,25 13:21
  13:22 17:23,23
  20:13 22:4,7,8
  26:24,25 28:2
  29:7,8 30:23
  30:23 33:4,5
  34:15 36:7,7
  37:17 41:12,13
  42:15,16 45:16
  47:11,12 49:13
  49:14 58:8,9
  60:18
**alert** 31:16
**allegation** 13:2
  36:15,15,16
**allegations**
  5:21 12:21,24
  12:25 13:9,10
  13:13,15,17
  19:8,10,12
  22:15 37:6
**alleged** 5:23 6:5
  13:4 14:4
**allegedly** 13:3
**alleviate** 41:18
**alternative**
  57:6
**amount** 18:19
  27:14
**analyses** 14:8
  14:10 28:18

**analysis** 12:20
  19:7,10,23,23
  20:2 23:22
  30:6,9,21
  33:13,21 34:5
  34:7 49:17
**analyzed** 21:15
  33:17,18,19
**annotation**
  29:21
**announcements**
  49:18
**answer** 9:23
  15:25 26:12
  27:3,4 29:11
  30:25 31:23
  40:13 45:12
  46:11,15 55:9
**anthony** 2:5
  5:15 10:25
  13:22 17:23
  22:8 26:24
  29:8 30:23
  32:9 33:5 36:7
  41:13 42:16
  45:15 47:12
  49:14 55:24
  58:9 59:5
**apologize** 32:2
**appeal** 7:1 8:23
  57:12,15
**appearances**
  2:1

**appears** 61:10
**appellate** 8:24
  8:25 9:3,9
  40:20,24
**apples** 39:1
**applied** 31:18
**applies** 6:18
**apportioned**
  6:13 34:19
**apportionment**
  6:2 9:17,25
  10:2,4,12,18
  11:8 39:5 42:6
  42:12
**appreciate** 38:5
  60:9
**appropriate**
  18:15
**approval** 20:1
**approve** 21:2
**april** 58:13
**arcos** 28:17,18
  28:23 29:5
  32:3
**area** 3:5,7
**argue** 15:13
**arguing** 49:25
**argument** 10:4
  11:2 25:17
  53:9
**arguments**
  39:5 50:17
**article** 9:23

**articulate** 43:6
**articulated**
  10:11 20:14
  26:14 43:1
  47:14
**ascertainable**
  15:12
**aside** 14:20
**asked** 20:10
  21:7,23,24
  32:14 47:9,15
  47:21 48:22
  51:24
**asking** 7:20
  16:24 28:20
  32:22 35:11
  38:15,25 43:17
  44:5 50:11
  54:3 59:6
**asks** 25:18 30:7
  52:18
**aspect** 13:18
  28:12
**asserts** 4:5
**assume** 4:22
  7:18 23:6,8,18
**assuming** 6:20
  6:22 32:18
**assumption**
  6:21
**assure** 9:5
  16:13
**attorney** 36:25

**authority** 10:13
**authorization**
  13:7
**available** 44:15
**avoid** 40:20

**b**

**b** 17:13
**back** 16:4
  18:19 25:24
  45:4 47:17
  55:14 58:17
**based** 11:12
  13:2 34:5
  48:12 53:1
  58:25
**basically** 47:3
  50:23
**basis** 42:5
**bear** 33:15
**beginning**
  53:24
**behalf** 26:25
**believe** 17:1
  27:14 31:10
  32:23 37:13
  47:25 57:14
**bellwether**
  21:13
**best** 32:21 33:3
  61:9
**better** 45:8
**beyond** 24:9,11
  25:8

**big** 35:14
**bigger** 39:3
**bit** 3:11 11:20
  14:23 25:15
  35:21 37:10
  38:7 40:22
**boys** 35:14
**bridged** 53:21
**briefed** 10:22
  39:8
**briefing** 42:4
  42:14 43:8
**briefly** 22:5
  23:11 46:19,20
**broad** 17:4,10
  42:18 47:4,4
  47:18,22 49:3
  51:21 52:3,14
  53:1,10 54:17
  54:19
**brush** 52:3
  53:10
**build** 33:12
**built** 21:21
**bunch** 17:7
  49:3
**burden** 3:23
  4:4,6,7 5:3,9
  10:7,9 14:16
  14:17 23:12
  29:23 30:18
  34:24 35:7
  36:4,23 39:9
  39:12,13,14

41:18,19,20
  43:5,18 44:6
  44:25 45:8
  48:11 50:16,17
  51:19 52:4,7
  53:14 54:5
  56:12 59:1,3
  59:13
**burdensome**
  15:5,14 23:7
  24:7 44:21
  48:4
**business** 13:18
**buy** 33:8

**c**

**c** 47:1
**calculated** 52:4
**call** 1:16 11:7
  34:24 42:10,11
  55:18 58:1,5
**called** 9:4 20:17
**calls** 51:24
**capable** 31:24
**capital** 27:21
  27:22
**carefully** 25:11
**caremark**
  35:15
**case** 1:7 4:2
  5:22 9:4,13
  11:7 12:15,16
  32:21 33:3
  35:5,20 36:5

36:16 37:6,23
  38:8,18,24
  39:18 40:14,15
  40:16,18 44:17
**cash** 36:13
**categories** 3:10
  3:25 4:14 6:19
  43:14 59:7
**category** 4:18
  14:18 30:6
  36:5 47:4
  54:15 55:25
**causation** 6:2
  8:4
**cause** 6:12 8:17
  11:4,10,12
  12:12,18 13:11
  34:17 39:6
  61:12
**caveat** 29:4
**central** 35:25
  36:15 46:10
**centralized**
  23:16
**centrally** 23:8
  23:15
**century** 12:1
**certain** 7:18
  9:16 27:23
**certainly** 4:24
  8:1 24:6 57:10
**certificate** 61:1
**certify** 61:5

**cetera**  17:1
  60:1
**chapter**  20:21
**choice**  45:12
**chooses**  57:11
**choosing**  59:8
**circulars**  49:19
**cite**  11:7 12:15
**cited**  10:12
  12:15
**city**  1:10 12:3
  12:21 37:8
  38:21 40:7,13
  40:18 41:5
  51:14,16
**claim**  7:25 8:18
  9:11,22 21:1,3
  24:5
**claims**  8:1,2
  9:16,17 11:5
  11:11 24:11
  51:14
**clarification**
  27:1
**clarify**  38:5
  49:5
**clarifying**  20:5
**clean**  26:23
**clear**  26:2,4,13
  31:9,9
**clearly**  26:14
**clears**  39:2
**cmo**  21:12

**cohen**  1:16 3:1
  5:15 6:15 8:5,8
  9:5,20 10:16
  12:4,6 13:14
  14:15 15:15
  16:3 19:9,18
  19:19 20:4
  21:25 22:6
  23:10 24:15
  25:10 26:20
  27:20 28:13,25
  29:10 30:1
  32:9 34:10,20
  37:9,25 39:24
  40:2,10,19,25
  42:2 43:13
  45:10 46:22
  48:18 49:22
  50:20,22 53:15
  59:4,19
**collaboration**
  13:3
**collect**  23:8
  24:7
**collecting**
  23:12 29:23
**come**  45:4,22
  47:17 48:2
  51:25 55:4,14
  57:2,5
**comes**  18:10
**comma**  26:8,9
  34:11,12,13

**commenced**
  38:9
**commend**
  60:15
**comments**  58:7
  60:6
**commission**
  61:23
**communicating**
  46:3
**communication**
  18:6 33:10
  34:3 45:21
**communicati...**
  16:25 21:22,25
  22:18,21 23:6
  25:4,24 30:7
  31:2 32:4,15
  44:12,15,23
  45:5,7 46:14
  47:10 49:8,9
  49:16 50:5
  51:2 53:17
  54:6
**community**
  11:25
**companies**  12:3
**company**  31:15
**complaint**
  12:21,22,24
  13:16 14:2
**complete**  21:4
  58:4 61:11

**completely**
  12:19
**comply**  14:18
**con**  37:12
**concede**  53:19
**concept**  12:14
  21:21 51:20
  52:14
**concerning**
  19:2 31:5,12
  31:17 44:24
**concise**  60:13
**conclude**  9:10
  53:25
**concluded**
  60:22
**concrete**  21:9
  55:15
**conduct**  8:21
  9:1 12:18 13:9
  51:13
**conducted**
  38:11
**conference**
  1:16 60:22
**conferral**  45:3
  48:24 53:6,11
**confident**  39:19
**confidentiality**
  15:2
**confirm**  44:19
**confirmation**
  21:17

confirmed 25:5
connection
  37:15
conscious
  58:12
consider 4:14
  17:2,8 28:10
  41:21 42:1
  56:5
considered
  16:18 17:2
constitute 9:2
constitutes
  8:21 61:12
consult 29:15
contacted
  19:25
contain 29:14
context 11:23
  11:23 39:21
  48:23
contracts 4:19
  4:23 5:4 6:6
  14:24 15:3,6
  15:11,21,24
  24:3
contractually
  5:25
contrary 9:3
  12:16
contributed 7:9
  7:16
contributes 7:5
  7:12

conversation
  37:1,2 41:17
  41:22 43:4
  46:7 48:11
conversations
  36:23 51:6
cooperative
  47:3
core 5:21 12:25
  37:6
corporate 31:3
correct 9:8,10
  19:17 61:13
corresponden...
  12:13
cost 35:8 41:19
  41:20 59:3
counsel 9:14
  37:19 38:1
counts 39:17
county 1:12
  38:9,24 52:21
couple 14:22
  53:22
court 1:1 4:4
  8:25 14:17
  38:10 40:6
  54:21 56:8,18
courts 9:9
coverage 35:19
covered 17:16
  24:19 35:13
created 13:1
  30:17

creating 13:4
critical 3:17
  10:21 14:12
crossing 44:2
custodian
  51:21 52:1
  54:13
custodians
  45:23 49:11
  51:23,25 52:6
customer 36:12
customers
  36:10
cuts 12:19
cvs 12:6

**d**

damages 7:10
dan 1:8
data 5:2 14:9
  14:11 19:13
  21:14 22:14,17
  22:17,20 23:19
  28:17,18,23
  29:5,8 30:3
  32:3,16,24
  33:9,10,10,19
  33:19 34:6,9
  34:25 35:3,11
  35:24 36:1,9
  36:11,12,13,21
  36:24 37:4,14
  37:15,22 38:6
  38:14,16 39:16

41:14,24 43:2
  44:11
david 1:16
day 59:21
days 18:12
dea 51:4 52:24
deadline 58:13
deal 42:8 58:3
december 5:20
decided 10:22
  23:22 40:24
decisions 13:6
  18:4
declaration
  39:12
defendant 18:8
defendants
  5:16,22 11:1
  17:24,25 30:24
  36:8 38:13
  41:16
defense 6:10
  8:17 18:25
defenses 6:3
define 28:6
defined 27:22
defining 27:6
  27:18
definition 27:7
  28:5,12
demand 13:4
depend 44:10
depending
  23:14 59:2

| | | | e |
|---|---|---|---|
| **despite** 17:20 | **discussed** 53:12 | **distributors** | **e** 10:14 31:11 |
| 29:3 56:19 | **discussing** 17:9 | 4:25 14:25 | 37:11 47:1,5 |
| **detail** 24:1,4 | **discussion** 7:7 | 15:11,17,25 | 52:3,7 53:1,18 |
| **detailed** 39:11 | 13:13 25:7 | 16:1 | **earlier** 15:4 |
| **determine** | 29:25 48:24 | **district** 1:1,2 | 40:15 |
| 35:18 | 49:11 50:3 | **division** 1:3 | **early** 51:23 |
| **determined** | 52:5,16 | 8:24 9:3 40:24 | **easier** 4:14 |
| 18:15 33:20,22 | **discussions** | **doctor** 18:17 | 45:12 |
| 33:24 34:5 | 51:22 | 50:8 | **easiest** 59:9 |
| **different** 18:24 | **dismiss** 41:2 | **doctrines** 42:7 | **easily** 17:14 |
| 23:14,18 30:9 | **dispensed** | **document** 1:9 | 36:6 42:19 |
| 30:22 31:1 | 14:13 17:15 | **documentation** | **eastern** 1:3 |
| 46:5,7,16 49:2 | 38:19 | 21:12 29:16 | **easy** 16:15 60:2 |
| **difficult** 34:25 | **dispenser** 6:4 | **documents** | 60:9 |
| **directed** 31:4 | 11:21 24:2 | 3:25 5:8 14:9 | **economic** 10:1 |
| 38:12 | 41:10 | 14:11 15:10 | **efficacy** 49:20 |
| **directive** 31:15 | **dispenses** 51:16 | 16:17,25 23:7 | **effort** 48:8 53:6 |
| **directives** | **dispensing** 5:2 | 23:16 24:6,22 | **efforts** 13:5 |
| 31:22 49:17 | 6:9 8:21 9:1,11 | 31:6 43:12 | 45:3 53:11 |
| **disagreement** | 13:9 16:21 | 44:23 48:6,9 | **either** 10:13 |
| 58:4 | 17:3 19:5 | 52:15 53:13 | 45:6 |
| **discernible** | 20:22 22:10 | 54:6,14 57:13 | **element** 11:5 |
| 52:16 53:5 | 31:17,18 33:9 | **doing** 15:19 | 11:10 |
| **discontinue** | 38:6,14,16 | 52:2 56:15 | **elements** 3:17 |
| 40:17 | 39:22 | **door** 10:20 | 3:21 52:13 |
| **discovery** 3:9 | **dispositive** 8:13 | **dozen** 41:7 | **emanuel** 13:23 |
| 10:20 39:7 | **dispute** 11:3,9 | **drilling** 29:19 | **employee** 31:12 |
| 52:3,7,9,10 | 11:11 | **drop** 32:13 | **employees** 31:5 |
| 53:1 57:15 | **distinction** 32:8 | **drug** 16:8 31:6 | 31:23 50:7 |
| 58:13 | **distributor** | 46:25 47:2 | 51:7 |
| **discrete** 15:12 | 4:21 11:13 | **drugs** 4:21 | **employer** 12:2 |
| 52:13 53:12 | 25:20 26:16 | 38:23,25 43:16 | |
| **discretion** | 41:10 47:2 | | |
| 57:11,16 | | | |

**endeavor** 59:17
**ends** 27:17
  57:18
**enforcement**
  52:20,24 53:3
**engaged** 52:8
**entered** 23:19
**entirely** 29:24
  39:1
**entities** 32:16
  42:9
**entitled** 6:3
  11:11 35:22
  37:5,7
**epidemic** 36:17
  37:7
**especially** 12:9
  25:16
**esq** 2:3,4,5
**essay** 45:13
**essentially** 5:20
  28:16 43:15
  52:19
**establish** 8:3
**established**
  34:16 43:10
**estimate** 47:20
**et** 16:25 60:1
**everybody**
  34:23
**everybody's**
  60:10,11
**evidence** 11:13
  42:24

**exact** 7:4
**exactly** 12:9
**example** 5:2
  15:10 18:5
  22:11 27:12
  33:8,14 34:8
  36:12 39:10
  52:1,18,21,23
  54:13 56:9
  58:2
**except** 12:23
  24:23
**excessive** 4:6
  5:24 18:18
**exchanged** 3:11
**exclude** 15:23
**excuse** 24:24
  42:11
**expand** 27:25
**expect** 33:13
**expedited** 42:4
**expensive** 35:2
  56:15
**expert** 33:16
**experts** 19:7
  33:11
**expires** 61:23
**explain** 5:7
  14:16 32:10
  42:22,23
**explains** 21:8
  32:7
**express** 5:16
  10:25 11:1

  13:23 17:24
  26:25 30:24
  36:8
**expressed** 15:4
**extent** 3:18
  4:11 7:7 17:8
  29:15
**external** 51:1
**externally**
  50:10
**extreme** 56:12
**extremely**
  55:17

**f**

**f** 47:1,1
**face** 14:5
**facing** 7:24,25
  14:7
**fact** 20:19
  21:11 35:10
  44:3 51:15
  56:4 58:13
**factor** 7:5,11
**factual** 39:11
**failure** 14:4
**fairly** 59:14
**fairness** 28:24
**fall** 54:14
**far** 7:9
**feed** 6:10
**feel** 40:23 41:24
**felt** 39:19

**fields** 39:23
**figure** 54:18
**figured** 58:3
**files** 52:15,22
**fill** 18:16,20
**filled** 17:18,19
  17:20 18:22
  20:16
**filling** 23:20
  24:18
**fills** 18:13
**final** 33:7 44:2
**financial** 5:25
  6:8
**fine** 28:10 48:6
  58:10 59:23
**finger** 8:12
**firm** 8:9
**first** 4:14 5:5,7
  18:7,24 35:1
  44:6 54:20
  55:14 60:2
**five** 46:12 48:5
  58:21 59:9,9
**flag** 14:7 18:25
  19:1,7,10,22
  20:2 22:12,21
  23:21 33:13,17
  33:21 34:6
**flagging** 18:10
  27:10
**focus** 25:7
**focused** 50:16

**folks**  7:8 57:18
  60:8
**follow**  34:7
**food**  3:4 8:10
**foregoing**  61:7
  61:10
**form**  27:7 61:9
  61:11
**formularies**
  13:7
**forth**  16:4
  25:25
**forward**  53:22
**four**  49:25
**fraction**  35:16
**frankly**  15:8
  39:13 40:22
  43:7,11 56:20
**front**  7:4 38:10
**full**  36:21
**fully**  10:22
**funded**  36:14

**g**

**gathering**  44:7
**general**  39:5
  51:20
**generally**  4:3
**getting**  10:8
  43:11 44:1
**give**  30:20
  32:13 44:23
  54:23,25 55:20
  58:11

**given**  4:22 31:4
  37:6 44:13
  48:3
**gives**  59:11
**giving**  47:23
**go**  4:8,12 5:7
  6:6 9:20 10:17
  13:11 18:20
  22:6 24:11
  32:3 33:11
  34:21 40:10
  44:5 45:15
  48:18 50:5
  51:1 52:22
  54:13 55:3
  58:17
**goes**  18:12 31:1
  31:3
**going**  3:16
  10:16,19 12:17
  16:22 18:20
  24:17 26:6
  29:4,13 33:11
  33:12 35:21
  39:6 47:18
  48:21 52:6
  54:2 55:1
  57:24 58:19
**good**  5:14 6:21
  26:21 54:24
  55:3,21 57:7
  60:12,12
**great**  24:1,4
  27:17 58:1

**grocery**  3:5
**group**  41:6
**guess**  4:16 5:1
  5:5 35:25 40:5
  50:11,16
**guessing**  5:1
**guidance**  31:22
**guidelines**
  49:17
**guys**  60:12

**h**

**h**  2:3
**hand**  18:21
  46:1
**handbook**  24:2
**handful**  46:2
**happen**  47:25
**happening**
  57:18
**happens**  9:14
  47:24
**happy**  5:16
  36:22 37:1,2
  48:10
**hard**  27:3 30:2
  34:21,22 35:3
  43:19 57:13
  60:9,10
**harder**  59:22
**harm**  10:1
**headed**  57:21
**health**  29:22

**hear**  4:9 5:5,9
  5:12 6:16 8:6
  29:1,2
**heard**  16:11
  46:10 57:8
**hearing**  45:11
**held**  9:3 34:13
**hell**  35:4
**help**  56:23
**helped**  35:18
**helpful**  11:22
  12:8 49:23
  56:6
**history**  56:20
**hodgson**  8:9
**hope**  32:7,19
**hoping**  55:1
**hours**  10:14
**huge**  39:9
**hypothetical**
  32:22

**i**

**identifiable**
  15:12
**identified**  3:21
  33:23 34:18
**identify**  5:11
  22:1 47:9 48:1
  49:8,14 51:24
  52:15 56:6
**identifying**
  44:24 52:14
  53:2

**immense** 10:7
29:23 52:3,6
**important** 19:4
22:23 41:15,24
53:24 56:1,3,4
56:7,11 58:14
**incentives** 6:1,6
6:9
**include** 14:6
15:18 16:9
**included** 28:12
**including** 40:18
50:7
**indicated** 43:4
**indication**
21:13
**individual**
36:10
**infer** 17:14
**inference** 44:4
**inform** 58:17
**information**
3:11,20,22
17:6,11 19:6
20:12 21:7,18
23:13 27:16
29:19,22,24
30:13,15 32:25
41:20,23 42:1
48:12
**inquiry** 27:17
**instances** 29:17
**instruction**
30:20 31:4,16

**instructions**
6:24,25 7:2
**integral** 11:24
**intend** 42:24
**intentionally**
15:23
**interacted** 53:3
**interactions**
24:14 25:6
52:19,20,23
**interacts** 20:23
**internal** 22:20
27:10 51:1
**internally** 50:9
**interpretation**
25:3
**interrupt** 9:22
13:22 19:14
40:12
**investigation**
18:14
**investigations**
50:8 51:3,4
**involved** 36:24
**irrelevant** 54:3
**issue** 8:14,19
8:24 10:21
13:11 15:7
35:6,7 38:24
39:3,8 40:20
40:23 42:14
49:8 51:19
57:9

**issued** 3:3
31:21 33:24
**issues** 29:22
50:8

**j**

**january** 1:18
**joint** 9:25
42:12
**josh** 8:8 11:17
20:8 23:11
29:4,11 38:1,2
40:3 44:8
46:19 48:15,19
54:10 55:13
59:4
**josh's** 42:3
**joshua** 2:4
**judge** 1:8
**jump** 9:8 16:13
25:13 30:2
43:13
**jury** 6:23,24
7:2
**justice** 38:10
**justification**
10:19
**justify** 39:6
47:4

**k**

**keep** 58:23
60:15
**kept** 25:25

**kimono** 32:13
**kind** 16:15 26:7
27:10 32:20
33:3,16 44:2
50:3 56:20
57:23 59:8
**know** 4:2,25
6:3,7,11 8:22
9:12,12 10:8
10:15,16 11:6
11:6 12:12
14:3,4,9,25
15:5,6,9 16:20
17:4,7,10,13,19
17:20 18:3,3,9
18:17 19:4,12
20:14 22:1
23:1,2,3,16,21
23:24 25:21
26:8,10 27:4
27:11,12 28:8
29:6 31:14,22
31:24 32:12,18
33:8,15,21
35:2,17 36:5
37:10,18,19,24
39:13 41:8,10
41:14 42:15,22
42:25 43:5,7,9
43:9,24 44:2,5
44:6,21 45:2
45:17,19 46:8
46:12,17 49:9
50:7,12 51:5

52:8,19 54:11
54:24 55:7,7
55:16,20 56:3
56:14,18,19
57:12,22 58:11
58:14,17,21,25
59:1,8,10
60:10,14
**koba**  38:10

**l**

**l**  1:25 61:4,19
**l.p.**  1:10,12
**land**  35:23
**language**  15:7
49:24
**large**  8:15
11:20 14:13
**largest**  3:6 6:4
12:1 43:2
**law**  6:22,23 8:9
9:24 10:3,10
10:19,21 11:7
11:8 12:15,16
35:5 52:20,23
53:3
**lawyer**  33:6
**lay**  5:19 24:4
35:23
**lays**  20:21
**lead**  16:5
**left**  45:1 50:23
**lengthy**  39:11

**letter**  5:20
12:10 37:1,20
37:21 38:7
43:8
**level**  29:19,23
31:3 53:14
**liability**  6:12
7:10 9:18 10:1
12:19 34:18
42:10,12
**liable**  7:13,13
34:13
**limited**  14:24
16:7,8 24:16
39:16 46:13
**line**  35:2
**lines**  36:25
**list**  59:16
**listed**  2:7 49:15
**litigation**  1:6
27:24 37:16
**little**  11:19
14:23 37:10
40:22 49:2
**local**  41:8
52:23 53:3
**locating**  5:3
**long**  57:16
**longstanding**
12:2
**look**  12:20
20:19 32:21
33:4 35:20
36:22 45:9,17

45:20,22 46:11
46:13 47:17
48:3 49:1
58:10,18 59:25
60:8
**looked**  36:20
**looking**  4:15
17:15 23:25
25:11 31:7,10
31:11,13 45:20
45:25
**loosely**  42:6
51:7
**lost**  32:5
**lot**  3:14 7:6
42:7 45:11
57:8 59:11
**lower**  5:4
**lumped**  50:3

**m**

**made**  18:4 19:1
19:10 36:6
48:8 50:6 51:2
**mail**  10:14
13:17 14:2
19:11 31:11
37:11 47:5
52:3,7 53:1
**mails**  53:18
**maintain**  13:5
22:17
**maintained**
23:9

**make**  27:5,18
28:11 31:9,9
33:16 50:18
53:23 55:19
58:5
**makes**  45:13
**making**  27:12
**manner**  39:18
**manual**  20:20
20:21
**manuals**  23:1,4
23:17 24:22
**manufacturer**
4:20 15:21
47:1 49:20
**manufacturers**
4:24 6:1 13:4
15:18 16:2
43:16,25 46:4
**marketing**  13:2
**markets**  8:10
**master**  1:16 3:1
5:15 6:15 8:5,8
9:5,20 10:16
10:24 12:4,6
13:14 14:15
15:15 16:3
19:9,18,19
20:4 21:25
22:4,6 23:10
24:15 25:10
26:20 27:20
28:13,25 29:10
30:1 32:9

| | | **n** | negotiating |
|---|---|---|---|
| 34:10,20 37:9 | **mentioned** | | 58:23 |
| 37:25 39:24 | 12:13 33:8 | **name** 8:8 | **negotiation** |
| 40:2,10,19,25 | **mess** 50:10 | **narrow** 46:24 | 55:11,22 |
| 41:12 42:2 | **met** 42:19 | 48:25 | **negotiations** |
| 43:13 45:10 | **minimize** 37:4 | **narrower** | 38:11 |
| 46:22 48:18 | **misnomer** 38:8 | 38:25 55:9 | **never** 13:12 |
| 49:22 50:20,22 | **mme** 38:18,19 | **narrowing** 55:5 | 31:21 37:15 |
| 53:15 59:4,19 | 39:17 | **narrowly** 27:19 | 51:25 54:15 |
| **materials** 43:15 | **mmes** 38:22 | **national** 1:6 | 55:1 |
| 54:7 | **moderate** 53:14 | 41:10 | **new** 5:16 6:22 |
| **matter** 10:18 | **mom** 41:8 | **nature** 13:8 | 6:23 7:1,18 |
| 45:5 57:15 | **moment** 7:19 | **nearly** 27:6 | 8:10,18,23,25 |
| **mattered** 7:8 | 21:24 | **necessarily** | 9:9,24 10:3,10 |
| **matters** 54:4,4 | **moments** 20:14 | 16:14 18:7 | 10:19,21 11:8 |
| **mature** 53:11 | **monday** 59:17 | 19:3 | 11:21,25 21:13 |
| **md** 1:7 | **monroe** 52:20 | **necessary** | 29:9 37:22,23 |
| **mdl** 1:6 7:3 | **months** 8:15 | 42:17 | **non** 3:3 39:7 |
| 9:13 41:11 | 39:18,21 43:8 | **need** 9:6 14:8,9 | 52:9 |
| 43:23 44:14 | 49:25 | 17:22 18:2,3 | **normally** 47:15 |
| **mean** 11:4 | **monumental** | 22:13,22 23:3 | 47:24 |
| 13:22 14:1,7 | 44:25 | 26:22 27:2 | **northern** 1:2 |
| 15:15 22:7 | **moot** 58:2 | 28:10 29:6 | **notary** 61:20 |
| 27:21,23 30:10 | **morning** 4:2 | 36:19 43:11,21 | **notes** 22:11 |
| 42:6 45:17 | **motivated** 5:23 | 43:22 46:22 | 61:8 |
| 48:23 59:21 | **mouth** 57:1 | 55:24 56:2 | **notice** 15:1 |
| **meaning** 12:18 | **move** 50:1 | 57:5 58:17 | **notices** 49:19 |
| 28:1 38:19 | 53:21 | **needs** 55:8 | **notification** |
| **meaningful** | **multiple** 45:12 | 56:18 | 27:8 |
| 13:12 45:3 | 47:14 | **negligence** 9:19 | **notion** 11:20 |
| 49:11 53:6 | **municipalities** | 9:22 | 22:9 |
| **meaningfully** | 38:21 | **negotiated** | **nuisance** 6:17 |
| 46:23 47:8 | | 57:20 | 6:20,25 7:6,9 |
| **mediation** | | | 7:12,14,14,25 |
| 37:22 | | | |

8:18,22 9:2,11
42:11
**number** 5:18
11:19 14:19,21
14:22,24 16:12
16:16 21:19,21
22:3 23:13,25
24:12 25:3,5
25:11,13 28:15
30:2,6,9,12,13
30:21,21 31:1
31:3,8 32:2,7
34:21 43:15
44:22 48:3
49:6 52:18
54:12,22 55:3
56:10,10 58:2
59:9
**numbers** 38:18
39:22 50:3,20
**numerical** 4:12

**o**

**o** 27:22
**objection** 14:21
**obligation**
25:21 42:9
**obtaining** 43:1
**obvious** 34:23
**obviously** 6:7
32:22
**occurs** 28:15
35:10

**october** 61:23
**offer** 41:2
**ohio** 1:2 6:23
6:24 61:21
**okay** 8:5 19:19
20:4 25:13
30:10 32:12
34:20 44:11
54:22 56:14
57:4,20
**onerous** 54:5
55:17
**ones** 14:12
16:14,15 50:23
56:6 59:9,9
60:2,2
**op** 1:11,13
**open** 41:21
56:25 58:23,24
**opens** 10:20
**opiate** 1:6
**opioid** 4:21
5:24 31:12
36:17 37:16
43:2,3 50:8,10
51:3
**opioids** 3:7 6:4
6:10 9:1,11
11:14,21 13:5
14:14 16:9,21
17:3 22:10
27:15 31:5,17
31:18 34:4
36:19 37:8

**opportunity**
38:5
**opposed** 5:2
44:3 52:14
57:19
**opposite** 9:15
**optum** 17:25
**oranges** 39:1
**order** 4:13
12:19 13:17
14:3 19:11
25:21 27:6,8
28:7 57:9
**ordered** 37:21
**orders** 25:18,22
26:10,16,17
27:19,21 28:9
**outline** 39:12
**outlined** 31:16
**outside** 21:22
**overlook** 5:23
**overrode** 22:12
**own** 36:21 50:7
51:6
**owner** 19:13

**p**

**p.m.** 1:19 60:22
**pain** 18:19
**pamphlets**
49:18
**papers** 3:12
8:22 9:7 60:11

**paragraph**
15:8 26:19
46:25
**paragraphs**
14:1,2
**pare** 47:8
**part** 6:1 11:24
13:16 24:3
34:22 35:4,9
36:3,3 41:11
55:5
**participants**
2:7
**participating**
52:11
**participation**
44:13
**particular** 34:9
49:6 55:25
**particularly**
15:5,13 44:21
**parties** 3:6,10
3:21 4:1,9 25:4
25:14 38:12
50:2
**party** 3:3 4:5,7
11:12 14:6
15:1 18:9
33:19 39:7
52:9,9
**past** 10:9 18:12
25:14,25 54:18
56:22

| | | | |
|---|---|---|---|
| **patient** 17:5,11 | **pec** 19:16 | **pharmacy** | 38:4 39:15 |
| 17:16 18:11,16 | **pellegrino** 1:25 | 13:17 19:11 | 44:11 51:20 |
| 18:18 35:13 | 61:4,19 | 24:11 31:3 | 52:5 53:7,11 |
| **patients** 24:18 | **pending** 8:23 | 38:8,13,20 | 60:14 |
| 24:20 27:13 | 38:10 | 47:5 | **points** 9:15 |
| 35:16 | **people** 25:25 | **phone** 3:2 | 53:23 |
| **pay** 21:3 56:7 | 46:2,2,12,15 | 56:24 | **policies** 22:25 |
| 56:17 59:2 | 47:19 48:1,3,5 | **phrase** 38:6 | 23:4 24:2,10 |
| **paying** 4:7 56:5 | **percent** 33:22 | **pick** 38:4 | 25:8 |
| **payment** 20:1 | 33:25 34:1,6 | **picking** 16:14 | **policy** 17:4,10 |
| **pbm** 5:22 18:7 | 34:14 36:18 | 56:10 | **polster** 1:9 |
| 18:9 19:13 | 54:25 55:2 | **picture** 36:21 | **pop** 41:8 |
| 20:20 21:2 | **percentage** | **plaintiff** 38:18 | **pos** 20:18,23 |
| 24:5,19 29:18 | 34:17 | 38:20 41:6 | 21:6 29:17 |
| 36:10 41:15 | **perfectly** 18:15 | **plaintiffs** 5:21 | **position** 3:12 |
| **pbm's** 29:17 | **period** 45:24 | 8:2,3 9:13 19:2 | 10:15,17 12:17 |
| **pbms** 3:3,19,25 | 46:4 | 19:8 21:16 | 23:25 24:1 |
| 4:18 5:6,6,13 | **person** 46:1 | 22:15 33:13,17 | 25:1,9 26:18 |
| 10:10 12:12,22 | **pertains** 36:11 | 33:21,23 34:16 | 39:4 60:11 |
| 13:1 14:4 | **peter** 2:3 19:15 | 39:20,25 40:4 | **possibilities** |
| 16:19,22 17:12 | **pharma** 1:10 | 40:16 41:7 | 57:6 |
| 17:16 18:6,8 | 1:12 | 42:21 | **possibly** 59:17 |
| 19:25 20:11 | **pharmacies** | **plan** 44:16 | **potentially** |
| 22:9 24:3,6,8 | 14:3,6 16:25 | **please** 5:11 | 18:25 37:3 |
| 24:12,14,23,24 | 38:23 41:9,11 | 33:6 49:2 | **practices** 19:11 |
| 25:6 26:1,21 | **pharmacist** | **pmp** 29:9,14,15 | **predicate** 36:16 |
| 29:3 30:13 | 20:15,20,21,23 | 29:16 32:3 | **prejudice** 41:2 |
| 35:1,3,11,13,17 | 22:12 23:17,20 | **point** 12:11 | **prepared** 11:6 |
| 35:25 38:15,25 | 23:20 24:5 | 13:24 16:20 | 12:15 |
| 39:11,23 43:20 | 30:17 | 18:6 19:23 | **prescriber** |
| 44:14 45:4 | **pharmacists** | 20:12 21:18,23 | 20:17,20 43:3 |
| 49:7 50:18 | 16:18 29:15 | 22:18 23:5 | **prescribers** |
| 51:15,23 52:8 | 30:8,11 | 28:24 29:13 | 53:4 |
| 54:23 55:4,24 | | 33:10 34:2 | |

| | | | q |
|---|---|---|---|
| **prescribing** 51:3,13 | **proceedings** 61:6,12 | **provide** 41:19 47:16 59:16 | **quality** 49:21 |
| **prescription** 1:6 17:17,18 18:10,13,16,21 18:23 19:2,6 20:16 27:9 29:18,20 31:13 32:16 34:4 | **process** 40:17 **produce** 3:19 4:19 22:22 35:3 37:22 38:13,16,23 48:9 53:13 54:2,8,10 | **provided** 5:25 20:2 39:10 43:6,16 46:5 48:13 **proximate** 8:4 11:4,10,12 12:12 13:11 34:16 | **question** 3:18 4:4 6:7 8:20 10:5 20:13 21:24 26:7 30:18,25 32:6 32:23 34:24 35:25 36:4 43:20 44:18 45:13 46:5 54:9 |
| **prescriptions** 5:24 14:5 27:11 33:23 34:1,2,17 35:17 36:19 37:8 43:2 51:16 | **produced** 21:14 37:14,15 38:17 39:16,17 43:23 **produces** 14:12 **producing** 5:3 23:12 36:24 39:20 | **public** 6:17,20 6:25 7:6,9,12 7:25 8:17,21 9:2,11 61:20 **publications** 49:16 **pull** 15:6 39:18 | **questions** 20:10 **quick** 30:5 59:24 **quickly** 58:14 58:18 59:14 **quinn** 13:23 **quite** 3:11 39:12 |
| **presentation** 33:16,18 **presentations** 49:16 **presume** 44:12 **pretty** 17:14 25:23 26:23 43:24 | **production** 3:9 4:8 34:25 **programs** 36:14 **proliferate** 13:5 **promise** 9:7 **properly** 22:14 **proportion** 14:13 | **purchases** 36:13 **purdue** 1:10,12 13:3 **purposefully** 15:20 **purposes** 20:1 28:7 37:13,22 38:17 39:19 | **quote** 16:8 38:13 |
| **prior** 10:13 13:7 19:5 37:12 | | | r |
| **probably** 3:24 5:6 38:7 39:2 46:9 52:15 | **propose** 48:4 54:22 55:8 **proposition** 4:3 35:6 | **push** 27:3 28:11 59:22 **put** 8:12 40:5 53:16 **putting** 14:20 | **random** 56:10 59:8 **rarely** 35:20 **rather** 4:12 **rationale** 20:17 20:25 22:9 47:6,13 48:14 **raw** 39:22 **rdc** 47:2 |
| **problem** 53:17 55:5 57:2 **procedures** 22:25 23:4 | **protected** 29:22 | | |

reach 58:19
reached 53:7
read 3:13 4:22
 9:7
readily 44:15
reading 37:20
 60:11
real 47:6 53:18
realize 32:6
really 30:14
 32:13,20 33:6
 39:7 43:21
 54:15 55:13
 56:1,1,2,10,11
 56:16,16
reason 3:2 6:13
 18:2 32:23
 34:22
reasonable
 31:21,25
reasonably
 59:23
reasons 26:15
rebate 13:6
rebates 6:8
receive 26:16
received 16:19
 16:19 24:23,24
 27:13 30:13
 32:15 37:11
 44:19,20 45:18
 50:6 51:2
receiving 6:8
 27:14

recognize 39:9
recommendat...
 49:18
record 5:12
recorded 20:18
 20:25
red 14:7 18:25
 19:1,7,10,22
 20:1 22:12,21
 23:21 33:13,17
 33:21 34:6
refer 37:18
reference 29:14
referred 40:15
referring 15:9
refills 18:11
refused 48:9
regard 35:24
 42:5 50:15
 54:11
regarding 4:21
 23:21 43:16
 49:20 54:4
regardless 7:23
 11:8 24:19
regional 41:9
reiterate 51:9
related 42:7
 50:8,25 51:8
relates 1:9
relevance 3:22
 5:8,19 8:14
 10:6,10 14:21
 24:10 30:18

42:18,19 43:1
43:10 48:13
50:15,18 51:12
53:9
relevant 7:20
 7:21 8:1,3,16
 21:19 46:4
 47:7 51:18
 54:17,19
reliable 39:19
relieved 4:7
remaining 11:5
 11:10 58:22
remember 41:1
remote 1:16 2:1
renee 1:25 61:4
 61:19
repeat 9:6
 50:24
repeatedly 21:7
reporter 61:5
reports 49:17
represent 8:10
request 3:25
 5:18 14:18
 26:5 32:2
 44:22 46:6
requested 3:9
 3:20
requesting 4:7
 39:23
requests 8:16
 45:2 46:10

required 42:20
 42:21,23 45:23
requirements
 15:1,2
reread 49:23
resolve 60:3,4
respect 5:18
 6:9,17,19 11:3
 13:7 20:2
 26:19 34:25
 36:9 55:25
respectfully
 37:18
respond 3:8
 14:8,10 16:22
 19:8 20:6 22:5
 22:14,24 23:5
 28:2 36:4 38:1
 45:17 46:20
 47:11
responding
 22:17
response 33:12
 45:24 54:8
responses
 22:21 31:2
responsible
 34:14 36:18
 46:1,3
responsive 26:5
 54:7
rest 13:8
result 5:25
 47:20

resulting  18:19
results  33:14
revenue  13:6
review  21:2
reviewed  3:12
  3:13
rico  7:25
right  15:4
  16:11 18:12,23
  26:17,20 28:13
  32:20 36:24
  37:25 40:25
  41:23 42:6
  45:10 46:5
  49:15,23 53:15
  60:8
rochester  1:10
  3:5,7 6:5 8:9
  11:14,21,25
  14:14 31:14,19
  38:21 40:6,8
  40:14,18 41:6
  43:3 47:2
  51:15,17 53:4
rochester's
  12:22
roll  59:20,24
room  45:3
rounds  43:7
rpr  1:25 61:4
rule  32:24
ruled  8:25
  32:11

ruling  54:21
  58:20,22
run  47:19 49:4
  52:2 55:3
running  51:21
russ  8:9

**s**

s  27:22
safe  47:1
safety  49:21
sale  16:20 18:6
  19:23 20:12
  21:18,23 22:18
  23:5 33:10
  34:2
saw  53:18
saying  15:16
  16:24 24:21,25
  25:1,8 33:7
  41:1 49:2
  56:22 57:7,25
  59:22
says  28:16
scenarios  18:24
scope  16:8 31:6
  37:23 46:25
  48:11
script  23:21
  29:19,23
scripts  5:16
  10:25 11:1
  13:23 17:24
  24:18 26:25

  30:24 36:8
search  31:21,25
  45:7,23 46:6
  46:21,23,24
  47:15,16,17,21
  48:1,22,24,25
  49:3,12 51:21
searches  46:13
  47:5
second  4:16
  19:3,15 21:12
  40:2
see  22:2 24:10
  29:20 36:19
  37:7 57:23
seeing  49:4
  57:12
seemed  37:20
seems  7:21
  17:12 24:13
  59:23
send  49:2
sense  45:8,14
sent  3:12 4:2
  16:24 17:6,9
  17:13,21 31:11
  35:5 43:25
sentiment  15:3
separate  29:25
set  38:25
sets  34:9 51:22
settlement
  37:13 38:11,17

seven  58:22
several  2:7 8:15
  10:1 42:12
share  42:10
shift  35:7
shooting  47:6
shopping  50:9
short  40:13
shorthand
  15:19
shot  58:12
show  21:8
  33:14
showing  44:3
shows  22:20
side  53:19
sides  60:14
signature  61:18
significant
  44:17
similar  6:22,24
  9:1 50:5
simple  25:23
  28:14,21,22
simplest  4:17
simply  13:25
  18:22 47:22
  48:13
simultaneous
  12:5 19:21
  40:1,9 48:16
single  59:6
sit  15:4

**six**  49:25
**slightly**  31:1
**small**  41:8
**solution**  57:1,2
  57:4
**solve**  57:3
  59:11
**somewhat**
  50:25
**soon**  59:14
**sorry**  9:21
  13:19,21 40:12
  48:17 50:19
  58:8
**sort**  10:2 29:3
  45:1 54:14
**sorts**  53:12
**sought**  3:22
**sounds**  26:22
  27:25
**source**  30:16
**speak**  11:19
  25:2 51:19
**speaking**  12:5
  19:21 33:5
  40:1,9 48:16
**special**  1:16 3:1
  5:15 6:15 8:5,7
  9:5,20 10:16
  10:24 12:4,6
  13:14 14:15
  15:15 16:3
  19:9,18,19
  20:4 21:24

22:4,6 23:10
24:15 25:10
26:20 27:20
28:13,25 29:10
30:1 32:9
34:10,20 37:9
37:25 39:24
40:2,10,19,25
41:12 42:2
43:13 45:10
46:22 48:18
49:22 50:19,22
53:15 59:4,19
**specific**  17:5,11
  27:24
**speculating**
  40:22
**stage**  42:20
**standard**  42:17
**standards**
  50:15
**stands**  4:2 35:5
**start**  4:16 26:6
  28:20 43:17
  50:11 55:10,21
  57:24
**state**  8:23
  13:24 36:14
  40:6 61:21
**statement**
  17:11 19:17
**statements**
  17:4

**states**  1:1
**status**  1:16
  60:22
**statutory**  27:7
**stenotype**  61:8
**stenotypy**  61:6
**step**  54:20
  55:14
**steps**  24:4
**store**  3:5
**storewide**
  31:15
**story**  28:16
**straightforward**
  49:7
**strong**  48:22
**stuff**  17:7,8
  60:3,9
**sturm**  9:4
**subject**  6:5
  14:25 23:13
**submissions**
  10:14
**submit**  24:5,11
**submitted**  21:1
**subpoena**  3:4,9
  3:20 4:15
  14:18 28:5
  31:17 49:24
  54:3,8
**subpoenaed**
  4:5
**subsection**  28:6

**subsequent**
  34:7
**substantial**  7:5
  7:11 35:15
**substantially**
  7:16 30:8
**substantiated**
  59:1
**successful**  12:3
  57:14
**succinctly**
  32:10
**sued**  40:14 41:7
**sufficient**  41:23
**sufficiently**
  41:15,24 42:18
  42:25 43:10
**suggest**  53:21
  54:20
**suggested**
  54:10
**suggesting**
  37:12 52:25
  56:23
**suggestion**  42:3
  55:15,19
**suggestions**
  58:6 60:7
**suing**  40:6
**superceding**
  6:2
**superseding**
  6:12 8:17
  12:18 39:6

[supplier - track]                                                          Page 18

| | | | |
|---|---|---|---|
| **supplier** 3:7 | **takes** 24:5 | 60:17,18,20 | **thinking** 16:16 |
| **supply** 13:1 | **talk** 12:23 23:4 | **thing** 15:12 | **third** 11:12 |
| **suppose** 40:20 | 24:1 25:9 | 22:19 41:14 | 12:1 14:6 15:1 |
| **supposed** 17:2 | 28:19 56:21 | 43:25 46:14,16 | 18:9 33:19 |
| **sure** 6:21 15:8 | **talked** 7:3 | 53:5 55:23 | **thoroughly** |
| 17:21 24:16 | **talking** 15:10 | 56:22 | 39:8 |
| 26:2 27:5,18 | 23:15 24:13 | **things** 11:15 | **thought** 60:11 |
| 28:11 35:1 | 25:14,25 30:19 | 16:16 27:15 | **thoughts** 58:6 |
| 50:22 | 41:4 49:10 | 55:12 57:11,23 | 60:6 |
| **surgery** 18:19 | 54:12 56:21 | **think** 3:6,17,23 | **three** 35:14 |
| **surprising** | **talks** 16:16 | 4:13,17 5:19 | 41:7 |
| 25:15 | **tangential** 10:4 | 6:3,17,20 7:23 | **threshold** 8:13 |
| **suspect** 24:8 | 10:6 | 8:12 9:23 10:9 | **throw** 14:23 |
| 39:2 | **tele** 37:12 | 11:2,9,22 | **thumb** 53:16 |
| **suspicious** | **tell** 22:16 28:8 | 14:21,23 16:11 | **time** 5:7 16:20 |
| 25:18,21,22 | 30:11 36:20 | 21:21 24:16 | 19:25 32:17 |
| 26:10,17 27:6 | 37:9 44:17 | 25:4,11 27:1 | 56:25 58:12 |
| 27:9,19,21 | 45:18,19 50:13 | 28:4,14 30:5 | 60:17,19 |
| 28:7,9 | **telling** 12:8 | 31:8,24 34:23 | **times** 35:19 |
| **system** 20:18 | 58:24 | 36:4,18 37:5 | 47:14 |
| 20:23 21:1,23 | **tells** 32:19,19 | 41:1,22 42:3 | **today** 3:3 46:10 |
| 23:19 27:10 | **term** 27:22 | 42:17,17,19,21 | **together** 3:2 |
| 29:17 | **terms** 23:6 46:6 | 42:24 43:9,18 | 50:3,14 |
| | 46:21,23,24 | 45:2,5,13,24 | **took** 19:5 39:18 |
| **t** | 47:15,16,18,22 | 46:22 48:21 | 39:21 61:5 |
| | 48:1,23,25 | 49:23 50:4,13 | **tool** 4:11 |
| **t** 44:2 | 49:1,3,12 | 50:17,25 53:5 | **topic** 12:8 |
| **table** 55:11 | 51:21 52:2 | 53:17,20,25 | **topics** 58:16 |
| **take** 12:17 15:7 | 53:2 | 54:11 55:8,23 | **total** 38:18,19 |
| 33:6 34:11 | **terrible** 59:13 | 56:2,5,25 58:1 | 39:16 |
| 44:22 47:25 | **texas** 1:12 | 58:10,14,16 | **touch** 4:13 5:9 |
| 49:1 55:2,14 | **thank** 8:7 20:5 | 59:5,10,11,15 | **track** 1:11,13 |
| 56:8 | 20:7 29:12 | 59:23 | 28:9 |
| **taken** 20:24 | 41:3 44:8 | | |
| 26:18 | | | |

| | | | |
|---|---|---|---|
| tracked  27:12 | **u** | united  1:1 | 56:11,16 59:12 |
| transcribed  61:8 | ultimately  24:12 42:7 | unquote  16:8  38:14 | wanted  13:12  13:24 23:10 |
| transcript  61:7  61:10,11,13 | under  9:23,24  10:3,10,21  11:8 | unusual  25:15  27:14 | 26:1,3 27:5,18  28:11 29:1,1  55:9 |
| tremendous  39:14 | understand  7:1  15:19 16:23 | use  4:11 5:24  32:3,18 34:9  42:24 | wanting  3:8 |
| trial  7:3,7  11:12 32:17,21  33:6 42:24 | 19:12 25:17  33:2 35:23  36:2 50:17 | used  16:18 19:7  27:21 28:5  57:12 | warning  34:3 |
| tried  3:13 5:19  31:8 | understanding  15:24 16:4 | using  42:5 47:3 | way  9:18 15:16  16:15 27:5  34:11 40:5 |
| true  7:17,19,23  7:24 14:1  16:10 28:4  37:14 61:13 | 20:9 21:5,10  25:2,19 | usually  57:17 | 47:15 54:18 |
| | understood  27:23 | **v** | ways  4:4 20:22  37:3 |
| try  37:3 47:4 | undertake  31:20 | v  1:10,12 | we've  12:15  20:10 21:7 |
| trying  15:18,23  27:25 40:17 | undertaken  51:5 | verse  20:22  view  8:13 21:16 | 30:19 31:8  33:17,18,19,24 |
| turn  14:15  23:11 | undertaking  31:25 | virtue  36:2  vis  24:18,18 | 43:3,7,9 44:11  46:5,10 47:9 |
| twice  3:14 | undertook  23:22 51:4 | **w** | 51:10,11 53:12  56:15 58:3 |
| two  3:17 10:14  11:15 18:11,23  24:6 35:14  50:15 59:20,25 | unfortunately  38:7 | wait  54:21  waiting  53:19  55:4 | webb  1:12 |
| | uninclusive  15:20 | walgreens  12:7 | week  59:16,18 |
| type  10:20 39:7  52:8,10 | unintelligible  30:16 33:18  57:17 | walmart  12:7  want  4:9,13,16  12:23 13:19 | wegmans  3:4,8  3:19,23 4:19  4:23 5:4,10 6:8 |
| types  53:12 | | 17:7 18:1 20:6  22:16 27:2,15 | 6:11,13,16 8:6  8:10,20 11:18 |
| typewritten  61:9 | | 32:1,5,12 33:2  33:3 35:21  47:13 49:5,15  53:8,23 55:13 | 11:20,24 12:18  13:9 14:7,11  14:11,16 16:17  16:24 17:14,18  18:4,12,14,21 |

19:5 20:6,8
22:9,11 24:10
24:13,17,21
25:6,19 26:3,7
28:16,21 30:7
30:15 31:5,12
32:12 33:20,24
34:3,5,13,19
36:6,17,23
37:13,18,21
38:1,3,22
40:14 41:7
43:17,17,22
44:1,6,9 45:18
45:19 46:19
47:5,14 48:20
48:22 49:19
50:6,12 51:2,6
51:13,16 53:2
54:1,7 58:15
**weigh**   10:6
  17:25
**weinberger**   2:3
  19:14,15,20,22
**wide**   31:15
**widest**   11:13
**willing**   41:16
  41:25 43:4
  46:13 56:5,7
  56:17,20 58:15
  59:2
**wish**   26:13
**wonderful**
  32:25 33:1

**word**   33:7
  57:12
**worded**   15:16
**words**   7:4
  12:10 14:22
  17:16 27:19
  32:20
**work**   4:10 28:7
  60:10
**working**   60:15
**works**   4:10
  32:17 47:16
**writers**   60:13
**writing**   8:15
  43:8 51:12
**written**   44:22
**wrong**   22:10
  50:13
**wrote**   12:9
  25:20

| **x** |
| --- |

**x**   34:14,17 48:4
  54:13 56:12,13

| **y** |
| --- |

**y**   48:7 54:13
  56:12,14
**yates**   38:9,24
**yeah**   26:24
  29:12 40:10
  54:12
**year**   5:17 45:24
**york**   6:22,23
  7:2,18 8:10,18

8:23,25 9:9,24
10:3,10,19,21
11:8,21,25
21:13 29:9
37:23,23

| **z** |
| --- |

**z**   56:13,14