# Exhibit 5

# ALSTON & BIRD

555 Fayetteville St, Suite 600
Raleigh, NC 27601
919-862-2200 | Fax: 919-862-2260

Ryan P. Ethridge          Direct Dial: **+1 919 862 2283**          Email: **ryan.ethridge@alston.com**

February 28, 2025

**VIA E-MAIL**
**JAGINS@HOGSDONRUSS.COM**

Josh Agins

Re:     PBM Defendants' Subpoena to Wegmans

Dear Mr. Agins,

I write on behalf of Express Scripts, Inc. and OptumRx, Inc. (collectively, the "PBM Defendants") in response to your January 14, 2025 email and January 29, 2025 letter. Your January 14, 2025 email contains Wegmans Food Market's belated proposals in response to only some of the requests for documents contained in the Subpoena the PBM Defendants served over six months ago. Your January 29, 2025 letter addresses the remainder of the PBM Defendants' document requests, but it contains no meaningful compromise proposals and simply reiterates the same positions Wegmans has taken before, including at the hearing itself, along with newly raised excuses attempting to justify Wegmans' continued refusal to produce critical responsive evidence. That it took Wegmans almost a full month to simply re-hash its past positions is yet further evidence of its gamesmanship and transparent attempt to delay. Nonetheless, in keeping with the Special Master's directives to attempt to compromise, we set forth herein the PBM Defendants' response on each request.

**Request No. 1 (As Narrowed By the PBM Defendants' Prior Compromise Proposals)**: **Dispensing data reflecting all drugs within the Drug Scope, that You dispensed in the [City of Rochester] from January 1, 2006 to present. The data should include the following [34] fields: [fields omitted]**

As we have explained, the PBM Defendants need Wegmans' dispensing and point-of-sale ("POS") data to adequately defend themselves against the City of Rochester's claims and to counter the Plaintiffs' "Red Flag analysis." The MDL Court previously ordered the Pharmacy Defendants to produce the same 34 fields of "transactional dispensing data" the PBM Defendants requested from Wegmans—which the Special Master determined was

Alston & Bird LLP                                                                                                    www.alston.com

Atlanta | Brussels | Century City | Charlotte | Chicago | Dallas | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

February 28, 2025
Page 2

"as few data fields as absolutely necessary, while still allowing: (1) Plaintiffs to undertake their 'Red Flag analysis,' and (2) Defendants to counter Plaintiffs' conclusions." (Dkt. 3106 at 2).

Here, the PEC has confirmed that Plaintiff's experts intend to use dispensing data (including from the PBM Defendants' home-delivery pharmacies ("HDPs")) to present red-flag analyses against the PBM Defendants, as to both (1) prescriptions dispensed by the PBM Defendants' HDPs, and (2) prescriptions dispensed by third-party pharmacies, such as Wegmans. (1/6/2025 Hearing Tr. at 19-20). The PBM Defendants have dispensing data for their HDPs (which they have produced)—representing less than 0.5% of the opioids dispensed in Rochester during the relevant period. To adequately defend against the Plaintiff's non-HDP red-flag analysis, however, they need a more complete picture, and representative sample, of the prescription opioids dispensed in Rochester. Dispensing data from Wegmans—which dispensed approximately 30% of all opioids in Rochester during the relevant time—provides exactly that.

Thus, the PBM Defendants seek Wegmans' highly material dispensing and POS data, and they limited their request to the same 34 data fields the Special Master previously determined made up the narrowest possible data production that would allow the Plaintiffs to undertake, and the Defendants to counter, their red-flag analysis. Wegmans contends that producing this data would entail an extraordinary cost burden, but it still has not provided any supporting information sufficient to enable the PBM Defendants to consider how to alleviate any such burden. (1/6/2025 Hearing Tr. at 41). Nevertheless, in the spirit of compromise, and to further alleviate any ostensible burden, the PBM Defendants are willing to drop the following 11 data fields from Request No. 1 in the Subpoena:

1. Dosage form [Subpoena ¶ 1(e)]
2. Dispensing pharmacist [Subpoena ¶ 1(i)]
3. Diagnostic code [Subpoena ¶ 1(n)]
4. Control / Non Control ratio [Subpoena ¶ 1(r)]
5. Refill indicator (whether the Rx is a refill or the original) [Subpoena ¶ 1(x)]
6. Prescriber Specialty [Subpoena ¶ 1(y)]
7. DEA Schedule (Same as Control/Non-Control) [Subpoena ¶ 1(dd)]
8. Dispense Hour [Subpoena ¶ 1(ee)]
9. Dispense Minute [Subpoena ¶ 1(ff)]
10. Drop Off Hour [Subpoena ¶ 1(gg)]
11. Drop Off Minute [Subpoena ¶ 1(hh)]

In addition, the PBM Defendants also included a Prescription Number field in the HDP dispensing data they produced, and they would request that Wegmans do the same. Please confirm Wegmans will produce such data, or we intend to seek a ruling from Special Master Cohen.

February 28, 2025
Page 3

**Request No. 2 (As Narrowed By the PBM Defendants' Prior Compromise Proposals)**: Documents sufficient to show how You and any pharmacists employed by You (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, the Defendants) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, [2006], to present. Your response should include documents responsive at both the pharmacy and individual employee level, and should include any pertinent policies, procedures, directives, or guidance.

To clarify a point of confusion in your January 14, 2025 email, this Request is *not* limited to "'health/safety' communications issued by ESI and/or Optum outside the POS." The subject matter of the Request plainly includes POS communications. In this regard, while we appreciate Wegmans' belated agreement to produce Provider Manual and Payor Sheets, this is insufficient because (among other reasons) Wegmans acknowledges it may be "contractually prohibited" from producing such documents for any PBMs except the PBM Defendants. To be clear, the PBM Defendants request that Wegmans produce these documents for all PBMs, and they believe Wegmans' agreements with these PBMs likely include notice provisions that would allow for disclosure as required by court order or after a notice period. In either case, such documents would not reflect Wegmans' internal drug utilization and prescription review processes, beyond what it submits to PBMs.

Nonetheless, we believe compromise can be reached if Wegmans agrees to produce (1) its centrally-maintained policies, procedures, directives and guidance from January 1, 2006 to the present, concerning how Wegmans' personnel (to include those in its Rochester stores) should respond to POS communications from PBMs; and (2) data showing how Wegmans' personnel in its City of Rochester stores responded to POS communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and health and safety issues (such as concurrent drug utilization review or CDUR messages), concerning opioids from January 1, 2006, to the present. This data should include any notes (free-text or structured) entered by Wegmans' personnel in connection with Wegmans' internal drug utilization and prescription review process, as well as all data fields necessary to link this internal review data to the dispensing data addressed above in connection with Request #1. Please confirm Wegmans will produce such materials, or we intend to seek a ruling from Special Master Cohen

**Request No. 3: (As Narrowed By the PBM Defendants' Prior Compromise Proposals)**: ~~All Documents and Communications Concerning~~ [A]ny literature, publications, presentations, analyses, studies, reports, guidelines, directives, announcements, recommendations, pamphlets, circulars, notices, or other materials provided by any drug manufacturer to You regarding the efficacy, addictive qualities,

February 28, 2025
Page 4

**and/or safety of any drugs within the Drug Scope, or any other Opioids, from January 1, 1996 to ~~present~~ [December 31, 2019].**

As stated in our previous correspondence, the PBM Defendants are willing to narrow the timeframe in this request to those data and documents ranging from January 1, 2006, to December 31, 2019. Further, contrary to your suggestion, the PBM Defendants do not know what communications Wegmans had with opioid manufacturers and thus, as stated repeatedly, are not in a position to identify such communications for Wegmans. Accordingly, Wegmans' vague and largely meaningless offer to "attempt to determine the burden of harvesting those communications" "if the PBMs will identify specific manufacturer communications that are material and relevant to the issues in Track 12" makes no sense. Nonetheless, in the spirit of compromise, the PBM Defendants agree to hold this Request in abeyance pending their ongoing discussions with Wegmans regarding the scope of the Subpoena, without waiving (and expressly preserving) their ability to revisit this Request and demand production of responsive documents.

**Request No. 4 (As Narrowed By the PBM Defendants' Prior Compromise Proposals)**: ~~All Documents and Communications Concerning~~ [A]ny guidance, directives, instructions, publications, alerts, notices, presentations, or other materials You provided to Employees Concerning ~~any drugs within the Drug Scope, or any other~~ Opioids, from January 1, ~~1996~~ [2006] to ~~present~~ [December 31, 2019].**

As stated in our previous correspondence, the PBM Defendants are willing to narrow the timeframe in this request to those data and documents ranging from January 1, 2006 to December 31, 2019. Further, your assertion that this Request "effectively seeks every communication between Wegmans and its pharmacists" is plainly wrong given that it is limited on its face to communications about a small subset of drugs. We have narrowed this further in our prior compromises to a limited set of documents and a specific subject matter. In the interest of compromise, we are willing to limit the subject matter further to responsive materials related to prescription opioids provided to employees working in your Rochester stores. Please advise if Wegmans agrees to this greatly reduced scope, or we intend to seek a ruling from the Special Master.

**Request No. 5:  Documents sufficient to show all Suspicious Orders You identified or for which you received notice in the Monroe County Region, from January 1, 2006 to present.**

Given Wegmans' representation that it has no responsive documents, even taking into account the Subpoena's broad definition of the phrase, "Suspicious Order," the PBM Defendants agree that this Request has been resolved.

**Request No. 6**: **All Documents and Communications Concerning Your use, review, or analysis of ARCOS data, data from the New York Prescription Monitoring Program, or other data relating to Suspicious Orders, including all Communications to or from the U.S. Drug Enforcement Agency or the New York Prescription**

February 28, 2025
Page 5

**Monitoring Program Concerning any drug within the Drug Scope, or any other Opioid, from January 1, 2006 to present.**

Contrary to your assertion, Request No. 6 was not resolved at the hearing. You have represented that Wegmans does not "use, review, or analy[ze] ARCOS data . . . or other data relating to Suspicious Orders." But the Request also seeks "data from the New York Prescription Monitoring Program" ("New York PMP"), as well as "Communications to or from the U.S. Drug Enforcement Agency or the New York [PMP] Concerning any drug within the Drug Scope, or any other Opioid, from January 1, 2006 to present." Wegmans has failed to address these portions of the Request, although it confirmed at the hearing that it possesses "script-level information" reflecting the extent to which its "pharmacists consult the [New York] PMP." (Hearing Tr. at 29).

In the spirit of compromise, the PBM Defendants are willing to limit this portion of the Request to the following categories of Documents and Communications relating solely to opioids: (1) prescription-level information reflecting Wegmans pharmacists' use, review, or analysis of New York PMP data while filling or dispensing an Opioid prescription; (2) its centrally maintained policies, procedures, directives and guidance from January 1, 2006 to the present, concerning how Wegmans' personnel in its Rochester stores should use, review, or analyze New York PMP data while filling or dispensing an opioid prescription; (3) any centrally maintained activity logs or similar materials reflecting Wegmans personnel's use, review or analysis of New York PMP data while filling or dispensing an opioid prescription; and (4) Communications to or from the U.S. Drug Enforcement Agency or the New York PMP concerning opioids, from January 1, 2006 to the present. Please confirm Wegmans will produce such Documents and Communications, or we intend to seek a ruling from Special Master Cohen.

**Request No. 7 (As Narrowed By the PBM Defendants' Prior Compromise Proposals)**: **All Documents and Communications Concerning efforts of any kind by You to identify, investigate, or report to any national, state, or local governments, agencies, boards, institutions, associations, law enforcement bodies, health departments, or drug taskforces Concerning any of the following regarding any drug within the Drug Scope, or any other Opioid, from January 1, 1996 to present: (a) improper prescribing or failing to prescribe by doctors or other prescribers in the Monroe County Region; (b) doctor-shopping, forgery, or counterfeiting of prescriptions by patients in the [the City of Rochester] (c) diversion, abuse, misuse, diversion, trafficking; or (d) any other concerns Concerning potentially improper or illegal prescriptions.**

Your January 29, 2025 letter states that, "[a]s suggested during the Status Conference, Wegmans would be willing to search its archives for interactions with regulators and law enforcement about local prescribers in Rochester." This proposal is both ambiguous and too narrow. The proposal is ambiguous because we do not know what you intend by the phrase "search its archives" or what types of documents those archives contain. Please explain. The proposal is too narrow because it addresses only sub-part (a) of the Request,

February 28, 2025
Page 6

while ignoring the remaining subparts.  In the interest of compromise, however, the PBM Defendants are willing to drop subparts (b) and (d) and narrow sub-part (c) as follows: "diversion, abuse, misuse, or trafficking of Opioids within the City of Rochester."  Please advise whether Wegmans will now produce documents in response to this significantly narrowed request.

**Request No. 8:  All Documents and Communications Concerning all actions (including fines, suspensions, revocations, terminations, voluntary agreements not to practice, resignations, and letters or other formal warnings or notices) taken by You against any current or former Employee Concerning any drug within the Drug Scope, or any other Opioid, including for the prescribing, dispensing, failure to prescribe, failure to dispense, diversion, or misuse of any drug within the Drug Scope, or any other Opioids, from January 1, 1996 to present.**

Wegman's has agreed to "collect and produce responsive documents, if any, for the City of Rochester and Monroe County.  Wegmans will redact any confidential employee and patient information."  Wegmans' representation resolves this Request, subject to reserving the right to request the production of specific unredacted documents (or less-redacted versions).

**Request No. 9 (As Narrowed By the PBM Defendants' Prior Compromise Proposals): Documents sufficient to show all instances of theft, loss, or diversion of any drug within the Drug Scope, or any other Opioids, from any facility owned, operated, supported by, serviced by, or affiliated with You in the [City of Rochester], from January 1, 1996 to present.**

Wegmans states that it "will collect and produce DEA Form 106's for its stores in the City of Rochester and Monroe County."  We appreciate this representation and believe this Request can be resolved if Wegmans also produces any DEA Form 106's for any facility it services in the City of Rochester.

**Request No. 10:  All Documents and Communications Concerning any Investigation or other inquiry conducted by any state or federal office, agency, department, committee, or program (including the DEA, the Federal Bureau of Investigation, a United States Attorney or representative thereof, any government-level department or agency within the State of New York), or any state board (including the New York Medical Board, New York Board of Pharmacy, New York Dental Board, New York Nursing Board, or any medical examiner's office in New York) into any of Your practices related to the prescribing, ordering, dispensing, distributing, administering, or diversion of any drug within the Drug Scope, or any other Opioids, from January 1, 1996 to present.**

**Request No. 11:  Documents sufficient to identify any regulatory, civil, or criminal actions or investigation Concerning any drug within the Drug Scope, or any other**

February 28, 2025
Page 7

**Opioids, to which you were a party or participated in any manner, from January 1, 1996 to present.**

In your January 14, 2025 email, you represent that "Wegmans has never been the subject of any criminal or regulatory fine or administrative action with respect to its dispensing policies in the City of Rochester or Monroe County." We request confirmation that this representation is intended to include any type of criminal, regulatory, or administrative action or sanction with respect to Wegman's dispensing policies and practices that would have applied to any of its stores in the City of Rochester.

The same letter also states that, "We are in the process of exploring the burden and feasibility of collecting documents – if any – reflecting instances when law enforcement made inquiries to Wegmans about prescribers and/or patients in the City of Rochester and Monroe County." Please advise as to whether Wegmans intends to produce these documents.

Provision of the requested confirmation and production of these documents would resolve Request Nos. 10 and 11.

**Request No. 12: All Documents reflecting contracts, agreements, orders, or other formal documents between You and any manufacturer or distributor of any drug within the Drug Scope, or any other Opioids, from January 1, 1996 to present.**

Wegmans has now agreed to collect and produce all responsive "contracts with manufacturers and distributors." While this is narrower than the scope of the Request, the PBM Defendants are willing to accept this production in the interest of compromise.

************************

Please let us know when you are available next week to discuss next steps on these narrowed proposals, given the April 25, 2025 fact discovery deadline.

Sincerely,

Ryan P. Ethridge

cc: Counsel for Express Scripts, Inc. (via email)