# Exhibit 6

**quinn emanuel** trial lawyers | los angeles, ca

865 S. Figueroa St., 10th Floor Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3159

WRITER'S DIRECT DIAL NO.
**(213) 443-3159**

WRITER'S EMAIL ADDRESS
ANTHONYALDEN@QUINNEMANUEL.COM

June 6, 2025

**VIA EMAIL**
david@specialmaster.law

Re:     *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) - *City of Rochester v. Purdue Pharma L.P.*, No. 19-op-45853 (Track 12); *City of Ogdensburg v. Purdue Pharma, L.P.*, No. 19-op-45852 (Track 22):
        Walgreen Co.'s Failure to Produce Responsive Data

Dear Special Master Cohen,

        I write on behalf of the Express Scripts Defendants ("Express Scripts") to request an order compelling Walgreens Co. ("Walgreens") to produce Drug Utilization Review ("DUR") data. Despite several meet and confers, and Express Scripts' repeated attempts at compromise, Walgreens refuses to produce the requested data even though it is directly relevant to Express Scripts' defenses in this case. Walgreens' continued refusal to produce the data leaves Express Scripts with no option but to seek relief from the Court.

**I.      Background**

        Walgreens is no stranger to opioid litigation. Walgreens was a defendant in prior MDL tracks where it produced more than two million documents. Walgreens has reached several settlements arising from its role in dispensing opioids, including a $5.7 billion settlement with several states,[1] a $100 million class action settlement with various third-party payors,[2] and a $350 million settlement with the Department of Justice just last month for allegedly filling unlawful opioid prescriptions and submitting false claims.[3] █████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████

        DUR programs are used by PBMs such as Express Scripts to flag for pharmacists certain health and safety issues with prescriptions that pharmacists submit for insurance coverage, including for the prescription opioids at issue in this litigation. Before filling a prescription, pharmacists receive various messages or alerts from PBMs through DUR programs. These DUR

---

        [1]    *See* Settlement Agreement with Multiple States

        [2]    *See* Notice Regarding Class Action Settlement

        [3]    *See* DOJ Announcement of Settlement

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE COUNTY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

programs analyze certain information about the prescription, patient, and prescriber, and in turn send alerts to pharmacy personnel about issues that may require further attention from the pharmacist before the pharmacist fills the prescription.[4]  For example, if a patient sought an early refill of an opioid prescription at a pharmacy, the DUR program could flag that timing for the pharmacist.  The pharmacist could then ignore the alert, or address it and enter information into the pharmacy's system memorializing how the alert was addressed.  In this example, the pharmacist may call the prescriber and determine that there is a legitimate reason for the patient to receive an early refill.

Walgreens (and other pharmacies) store these DUR alerts, as well as data about how the pharmacist did or did not address the alert, as the case may be.  The data connected with these programs, referred to as DUR data, accordingly reflects both: (1) what prescription-level information was provided by the PBMs to pharmacy personnel; and (2) how pharmacy personnel addressed these messages (*e.g.*, whether it was resolved, ignored, or overridden).

Express Scripts seeks the production of Walgreens' DUR data in New York to respond to Plaintiffs City of Rochester and City of Ogdensburg's red flag analyses.  For instance, the City of Rochester asserts that ███████████████████████████████████████████████████████ ███████████████████████  But Walgreens likely *did undertake additional diligence* for at least some of these prescriptions.  Walgreens' DUR data will provide evidence of the diligence performed by Walgreens in response to DUR alerts.

## II.    The Disputed Request

On June 5, 2024, Express Scripts issued a document subpoena to Walgreens (enclosed herewith), containing only two requests.  The below request is the only request in dispute at this time:

> Request 2: Documents sufficient to show how You and any pharmacists (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, Express Scripts and OptumRx) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, 1996, to present. Your response should include documents responsive at both the pharmacy and individual employee level, and should include any pertinent policies, procedures, directives, or guidance.

While Walgreens was willing to produce documents reflecting its dispensing policies, it objected to the production of DUR data on various grounds.  As explained below, this data is plainly relevant, and Walgreens's objections lack any merit.

---

[4]   *See* Academy of Managed Care Pharmacy description of DUR data

### III.    The Documents Sought by Express Scripts Are Relevant

DUR data is facially relevant.  The Court has made clear both in the PBM tracks and in other tracks that the scope of data discovery is broad. *See, e.g.*, ECF No. 5408 (Order Regarding PBM Defendants' Objection to Discovery Order at 1–2) ("Federal Rule of Civil Procedure 26(b) sets forth a broad scope of discovery . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."); *see also* ECF No. 3089 (Order Denying Motion for Stay at 2) (denying restrictions to temporal and geographic scope and noting "the [Pharmacy] Defendants' quest for mandamus to address this Court's rulings on scope of discovery is quixotic").

Express Scripts' request for DUR data seeks a discrete category of information that is highly relevant to its defenses.  The Plaintiffs allege that Express Scripts is responsible for the opioid crisis in part because it purportedly did not undertake sufficient diligence before approving claims submitted by pharmacists for insurance coverage of prescriptions for opioids written by prescribers.   The City of Rochester's red flag analysis identifies ███████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████████████, which allegedly should not have been filled without additional diligence.  But Walgreens DUR data may show such diligence in response to Express Scripts' DUR messages.  Alternatively, if the data reflects that Walgreens personnel were ignoring Express Scripts' DUR messages, this would show that Walgreens was disregarding attempts by Express Scripts to conduct utilization review.

Express Scripts' DUR efforts went beyond industry standards, but Express Scripts (and others providing DUR alerts) are at the mercy of pharmacies, including Walgreens, to properly address DUR messages.  This DUR data is the only way to determine whether the second largest pharmacy in Rochester heeded the PBMs' alerts, or whether Walgreens ignored alerts about particular opioid prescription fills.  Walgreens recently settled a lawsuit with the Department of Justice *for just this*—allegations that management routinely pressured pharmacists to fill opioid prescriptions regardless of DUR alerts from PBMs and other issues.[5]  Express Scripts is entitled to know if the same is true for the specific opioid prescriptions contained in Plaintiffs' red flag analyses.

In fact, Walgreens has effectively conceded that the requested DUR data is relevant.



---

[5]    Walgreens recently reached a $350 million settlement with the Department of Justice stemming from allegations that Walgreens ignored reports from pharmacy personnel that management pressured them to fill opioid orders regardless of concerns or issues identified with prescriptions (*see, e.g.*, fn. 3 at ¶¶ 240, 242, 243, 245, 248).

█ ████████████████████████████████████████████

## IV.    Walgreens Objections Are Meritless

Walgreens has argued that it will not produce DUR data because it is not relevant and because it would impose an undue burden.  As detailed above, the information sought is clearly relevant to Express Scripts' defenses.

Walgreens' burden objection is similarly baseless.  Walgreens argues that the DUR data would need to be manually reviewed to redact any patient health information ("PHI"), which would be time-consuming and expensive.  This is false.  The protective order allows third parties, such as Walgreens, to produce documents containing PHI without redaction.  If Walgreens wishes to review and redact the data before production, it can do so, but it cannot use that self-imposed burden as an excuse to avoid production.  *See Adams v. Symetra Life Ins. Co.*, 2020 WL 1275721, at *3 (D. Ariz. Mar. 17, 2020) ("The target of a subpoena duces tecum cannot excuse non-compliance by pointing to a self-created burden."), *objections sustained in part and overruled in part*, 2020 WL 6469949 (D. Ariz. Nov. 3, 2020).

Further, Express Scripts offered several options aimed at reducing Walgreens' self-imposed burden—each one was rejected.  For example, Express Scripts proposed that Walgreens use software to identify and redact PHI.  Walgreens conceded the usefulness of software but asserted that it is imperfect.  But given the protection afforded by the Protective Order, perfection is not the standard.  *See Diaz v. Chapters Health Sys., Inc.*, 2020 WL 3250177, at *2 (M.D. Fla. Apr. 9, 2020) (granting motion to compel third-party subpoena recipient to produce data about customers that may otherwise be subject to privacy laws because "[e]ven if there is a privacy interest, the information is protected by a confidentiality agreement approved by this Court.").

Express Scripts also asked Walgreens to provide a cost estimate for the PHI review.  Depending on the cost and review method employed, Express Scripts may be willing to agree to some cost shifting.  But Walgreens has refused to provide even this.  *See Chao v. Loc. 951, United Food & Com. Workers Int'l Union*, 2006 WL 2380609, at *2 (N.D. Ohio Aug. 15, 2006) (finding no undue burden because "conclusory statements, in the absence of supporting evidence, do not warrant the refusal to enforce a validly issued subpoena"); *see also Doe v. United States*, 253 F.3d 256, 269 (6th Cir. 2001) (overruling objection by subpoena recipient because the recipient only offered "a general and conclusory statement as to why this request constitutes an undue burden").

Walgreens is the second largest pharmacy chain in the United States; it had $147.7 billion in sales in 2024.[7]  It certainly has the resources to produce this single category of highly relevant data ████████████████, and doing so will not impose an undue burden—particularly if it cooperates with Express Scripts and pursues any of ESI's proposals with respect to producing subject to the confidentiality order, using software to redact PHI, or providing an estimate so that

---

[7]    *See* Walgreens News Release

ESI could evaluate a cost-sharing solution.  Walgreens should be ordered to produce the requested DUR data by July 1, 2025, because depositions are ongoing.

Sincerely,

/s/ Anthony Alden

Anthony Alden


cc:     Counsel of Record

        Counsel for Walgreens

# ATTACHMENT  A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| In re: National Prescription Opiate Litigation | ) |
|---|---|
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 1:17-MD-2804 |
| | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Walgreens Co., c/o Corporation Service Company,
1201 Hays Street, Tallahassee, FL 32301-2525

_(Name of person to whom this subpoena is directed)_

✔ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Quinn Emanuel<br>191 N. Wacker Drive., Suite 2700<br>Chicago, IL 60606 | Date and Time:<br><br>07/05/2024 5:00 pm |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/04/2024

_CLERK OF COURT_

OR

_____          /s/ Patrick King
Signature of Clerk or Deputy Clerk                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Express Scripts, Inc. _____, who issues or requests this subpoena, are:

Patrick King, Quinn Emanuel, 700 Louisiana St., Ste. 3900, Houston TX 77002, patrickking@quinnemanuel.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:17-MD-2804

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**HIGHLY CONFIDENTIAL**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| This document relates to: | **Case No.: 1:17-MD-2804** |
| | **Judge Dan Aaron Polster** |
| *City of Rochester v. Purdue Pharma, L.P., No. 19-op-45853 ("Track 12"); Lincoln County and the City of Independence v. Richard Sackler, M.D., No. 20-op-45069 ("Track 13"); City of Independence, Missouri v. Williams, No. 19-op-45371 ("Track 14"); County of Webb, Texas v. Purdue Pharma, L.P.,  Case No. 18-op-45175 (Track 15)* | |

## SCHEDULE A TO SUBPOENA

### DEFINITIONS

Unless otherwise indicated in the specific Requests for the Production of Documents below, the following definitions apply to each Request:

"City of Independence Region" means the City of Independence, Missouri, as well as all counties in Missouri encompassing or bordering on counties encompassing the City of Independence, including Cass County, Johnson County, Lafayette County, Ray County, Clay County, and Platte County, Missouri, including all municipalities, cities, and towns within this area.

"City of Rochester Region" means the City of Rochester, New York, as well as all counties in New York encompassing or bordering on counties encompassing the City of Rochester, including Monroe County, Genesee County, Livingston County, Ontario County, Orleans, County, and Wayne County, New York, including all municipalities, cities, and towns within this area.

"Document" or "Documents" means any information stored in a medium from which the information can be obtained. A Document includes (but is not limited to) any calendar, chart, communication, data, data compilation, database, diary, draft, drawing, electronically stored information, email, fax, floppy disk, graph, hard drive, image, index, instant message, letter, log, magnetic tape, memorandum, note, optical disk, photograph, report, sound recording, spreadsheet, storage device, text message, voicemail, writing, or any other category covered by Federal Rule of Civil Procedure 34(a)(1)(A). Any copy of a Document that differs in any respect from the original of a Document constitutes a separate Document.

"Drug Scope" means the MDL-8 opioids (Fentanyl, Hydrocodone, Hydromorphone, Morphine, Oxycodone, Oxymorphone, Tapentadol, and Methadone) as well as the Relevant Benzodiazepines

**HIGHLY CONFIDENTIAL**

(Alprazolam, Chlordiazepoxide, Clobazam, Clonazepam, Clorazepate, Diazepam, Estazolam, Flurazepam, Lorazepam, Midazolam, Oxazepam, Quazepam, Temazepam, and Triazolam) and Relevant Muscle Relaxers (Carisoprodol, Cyclobenzaprine, Orphenadrine, and Tizanidine).

"Lincoln County Region" means Lincoln County, Missouri, as well as all counties in Missouri bordering on Lincoln County, including the Counties of Pike, Montgomery, Warren, and Saint Charles, including all municipalities, cities, and towns within these counties.

"Suspicious Order(s)" means any order of drugs within the Drug Scope that (i) You believe, suspect, or contend should have been reported to the United States Drug Enforcement Administration ("DEA") or state authorities, the New York, or Texas Medical Boards, Missouri Board of Healing Arts, the Missouri, New York, or Texas Boards of Pharmacy, the Missouri, New York, or Texas Dental Boards, as "suspicious" within the meaning of 21 C.F.R. § 1301.74(b), (ii) is referred to in a Document as "suspicious" within the meaning of 21 C.F.R. § 1301.74(b), or (iii) that You define as a suspicious order for purposes of Your work.

"Webb County Region" means Webb County, Texas, as well as all counties in Texas bordering on Webb County, including the Counties of Zapata, Jim Hogg, Duval, McMullen, La Salle, Dimmit, and Maverick, including all municipalities, cities, and towns within these counties.

"You," and "Your" means Walgreen Co., as well as any affiliated entities that own or operate pharmacies in the City of Independence Region, the City of Rochester Region, the Lincoln County Region, or the Webb County Region.

## <u>INSTRUCTIONS</u>

A.    Produce all documents in the manner in which they are maintained in the usual course of Your business or organize and label the documents to correspond with the categories in this Schedule A. A request for a document shall be deemed to include a request for any and all physical or electronic file folders within which the document was contained, all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself, and for any electronic document any metadata contained in the document, in the file system on which the document is stored, and/or in any active directory, SQL, LDAP, or other indices or databases that provide access, access control, or other security or index information concerning the document.

B.    If and to the extent documents are maintained in a database or other electronic format, produce along with the document(s) software that will enable access to the electronic document(s) or database as You would access such electronic document(s) or database in the ordinary course of Your business.

C.    Produce documents in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

**HIGHLY CONFIDENTIAL**

D.    Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

E.    Documents attached to each other should not be separated.

F.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this subpoena.

G.    In producing documents and other materials, You are requested to furnish all documents or things in Your possession, custody or control, regardless of whether such documents or materials are possessed directly by You or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by Your attorneys or their agents, employees, representatives or investigators.

H.    If You object to any part of any request, state fully in writing the nature of the objection. Notwithstanding any objections, nonetheless comply fully with the other parts of the request to which you are not objecting.

I.    Unless otherwise stated explicitly herein with regard to a particular document request, each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.  The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

J.    Responsive electronic documents shall be produced as both (a) native files, including, if necessitated by Paragraph B, the software You used to create and/or view the responsive electronic documents, as well as (b) multi-page, 300dpi group IV TIFF images with extension ".tif" and (c) full text files comprising extracted text (for documents amenable to text extraction) or OCR text files (otherwise), named after the first bates number of the document, with extension ".txt" and (d) a load file with a ".dat" file extension and ASCII 020 and 254\ delimiters for column break and text qualifier. The first line shall be the header with field names and each subsequent line shall contain the fielded data for each document.  The load file shall\ include the following metadata, where available:

| Field | Description |
| --- | --- |
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |

**HIGHLY CONFIDENTIAL**

| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
|---|---|
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| Email Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |

This instruction – which concerns in part the preparation of a load file that includes metadata – is separate from, and in addition to the directions in:

Instruction A, which requires that You produce native files with all file, file= system, index, and access control metadata intact -and

Instruction B, which requires, for particular electronic documents, the production of software You use(d) in Your ordinary course of business to create and review the native electronic documents.

K.  Responsive paper documents shall be scanned and produced electronically along with an appropriate load file as described in subsections (b), (c), and (d) of Paragraph J.

## DOCUMENTS REQUESTED

1) Dispensing data reflecting all drugs within the Drug Scope that You dispensed in the City of Independence Region, City of Rochester Region, Lincoln County Region, and Webb County Region from January 1, 2006 to present.  The data should include the following fields:

   a) Drug name

4

**HIGHLY CONFIDENTIAL**

b) NDC number

c) Date filled

d) Quantity dispensed

e) Dosage form

f) Days' supply

g) Prescriber's name

h) Prescriber's DEA number

i) Dispensing pharmacist

j) Patient Zip Code

k) Patient ID # (Unique ID)

l) Quantity prescribed

m) Number of refills authorized (if any)

n) Diagnostic code

o) Method of payment

p) Patient paid amount

q) Whether prescription covered by third-party payor

r) Control / Non Control ratio

s) Pharmacy DEA #

t) Pharmacy Store #

u) Pharmacy address (at the zip code level or finder)

v) Prescriber address (at the zip code level or finder)

w) Prescription Date written

x) Refill indicator (whether the Rx is a refill or the original)

y) Prescriber Specialty

z) Rejection Indicator (Whether the pharmacy rejected to fill)

**HIGHLY CONFIDENTIAL**

aa) Prescriber's NPI Number

bb) Patient DOB Year (or age)

cc) DEA Override

dd) DEA Schedule (Same as Control/Non-Control)

ee) Dispense Hour

ff) Dispense Minute

gg) Drop Off Hour

hh) Drop Off Minute

2) Documents sufficient to show how You and any pharmacists (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, Express Scripts and OptumRx) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, 1996, to present.  Your response should include documents responsive at both the pharmacy and individual employee level, and should include any pertinent policies, procedures, directives, or guidance.

**HIGHLY CONFIDENTIAL**

Dated: June 4, 2024

By:   _/s/ Patrick King_
Patrick King
patrickking@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
700 Louisiana St., Suite 3900
Houston, TX 77002
Telephone: 713.221.7000

*Attorney for Defendants Express Scripts, Inc., Express Scripts Administrators, LLC, Express Scripts Specialty Distribution Services, Inc., Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., Medco Health Solutions, Inc., and Evernorth Health, Inc*

**HIGHLY CONFIDENTIAL**

## <u>AFFIDAVIT</u>

STATE OF _____ )

COUNTY OF_____ )

       Before me, the undersigned authority, personally appeared_____, who, being by me duly sworn, deposed as follows:

       My name is _____. I am of sound mind, capable of making this Affidavit, and I am personally acquainted with the facts stated herein:

       I am the duly authorized Custodian of Records for Walgreen Co. Attached hereto are _____ pages of records relating to Walgreen Co. These _____ pages of records are kept by Walgreen Co. in the regular course of business, and it was the regular course of business of Walgreen Co. or an employee or representative of Walgreen Co. with knowledge of the act, event, condition, opinion, or diagnosis recorded to make a record or transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion, or diagnosis. The records attached hereto are the originals or exact duplicates of the originals.

_____

Affiant, Custodian of Records

       IN WITNESS WHEREOF I have hereunto subscribed my name and affixed my official seal this _____ day of _____, 2024.

_____

Notary Public

My Commission Expires:

_____

# ATTACHMENT  B

**HIGHLY CONFIDENTIAL**

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | **MDL No. 2804** |
| This document relates to: | **Case No. 1:17-MD-2804** |
| | **Judge Dan Aaron Polster** |

*City of Rochester v. Purdue Pharma, LP., No. 19-op-45853 ("Track 12"); Lincoln County and the City of Independence v. Richard Sackler, M.D., No. 20-op-45069 ("Track 13"); City of independence, Missouri v. Williams, No. 19-op-45371 ("Track 14"); County of Webb, Texas v. Purdue Pharma, LP., Case No. 18-op-45175 ("Track 15")*

## WALGREENS' RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT 1NSPECTION OF PREMISES

Pursuant to Federal Rule of Civil Procedure 45, Walgreen Co. ("Walgreens") hereby responds and objects to Express Scripts, Inc.'s ("Express Scripts") Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (the "Subpoena"), issued on June 5, 2024 in the above-captioned matter, as follows:

### GENERAL OBJECTIONS

1.      By responding to this Subpoena, Walgreens does not waive any objections that it may have to the admission into evidence of any documents or things produced in response to the Subpoena, on any applicable grounds. Walgreens reserves the right to object on any ground at any time to a request for further responses to the Subpoena, as well as the right to revise, correct, add to, supplement, or clarify any of the objections or responses contained herein at any time.

2.      Walgreens objects to the Subpoena to the extent it purports to impose obligations or burdens on Walgreens that go beyond those imposed by the Federal Rules of Civil Procedure

1

**HIGHLY CONFIDENTIAL**

and any applicable local rules, court orders, or discovery rulings entered in this action (referred to collectively as "Discovery Rules"). Walgreens will comply with the Discovery Rules but assumes no further obligations in responding to the Subpoena.

3.    Walgreens interprets the Subpoena as not seeking the production of privileged documents. To the extent the Subpoena was intended to seek information or documents that are protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege or protection ("privileged information"), Walgreens objects to the production or disclosure of such privileged information and has already withheld or intends to withhold any such privileged information responsive to the Subpoena and states that it will comply with the Discovery Rules governing privileged information. The inadvertent disclosure of privileged information or documents in response to the Subpoena shall not be deemed a waiver of any privilege or right as to the privileged information inadvertently disclosed or any other information or documents relating to the subject matter of any inadvertently disclosed privileged information.

4.    Walgreens' investigation and discovery are ongoing as to all matters referred to in the Subpoena. Walgreens' responses are based upon information that has been collected and reviewed to date for the purpose of responding to the Subpoena, and they are not prepared from the personal knowledge of any single individual. Walgreens reserves the right to amend and supplement these responses as discovery and this litigation proceed.

5.    Walgreens objects to the Definitions of "You" or "Your" on the grounds that they are overly broad, vague, and seek to extend the Subpoena beyond the Walgreens entity that is named on the Subpoena. For purposes of its responses, Walgreens will consider "You" or "Your" to mean Walgreen Co., and will respond with regard to information and documents in its possession, custody, or control.

**HIGHLY CONFIDENTIAL**

6.      Walgreens objects to the Definition of "Suspicious Order(s)" as vague and ambiguous and to the extent that it differs from or extends beyond the Definition of "Suspicious Order" that appears in 21 C.F.R. § 1301.74.

7.      Walgreens objects to the Subpoena to the extent it seeks production of hard-copy documents. The process of searching for, locating, identifying, and producing hard-copy documents would be hugely burdensome, extremely time consuming and expensive, and not proportional to the needs of this case. Walgreens has already produced voluminous documents that are responsive to the Subpoena in other, similar litigation on numerous occasions. Thus, unless otherwise specified, Walgreens objects to the production of any as yet un-produced documents that may only exist in hard-copy form and does not agree to collect and produce hard-copy documents in response to these requests.

8.      Walgreens objects to the Subpoena to the extent that it is duplicative of documents and discovery already produced in other cases and which Express Scripts has access to in this case.

9.      All agreements to produce documents are contingent upon those documents being maintained in the ordinary course of business and capable of being located following a Reasonable Search. Walgreens defines Reasonable Search as a search for documents responsive to the Subpoena limited, unless otherwise specified, to electronic documents possessed by the custodians agreed upon with Express Scripts pursuant to the Court's discovery orders. If no agreement is reached after the parties have fulfilled their duties to meet and confer pursuant to the Court's discovery orders, Walgreens reserves its right to seek protection or otherwise raise the issue with the Court.

10.      Walgreens incorporates its general objections, and objections to definitions and instructions, from all other responses served in this litigation. All responses below are subject to

**HIGHLY CONFIDENTIAL**

and without waiving any objections.


## OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**Request No. 1**: Dispensing data reflecting all drugs within the Drug Scope that You dispensed in the City of Independence Region, City of Rochester Region, Lincoln County Region, and Webb County Region from January 1, 2006 to present. The data should include the following fields:

a)  Drug name

b)  NDC number

c)  Date filled

d)  Quantity dispensed

e)  Dosage form

f)  Days' supply

g)  Prescriber's name

h)  Prescriber's DEA number

i)  Dispensing pharmacist

j)  Patient Zip Code

k)  Patient ID # (Unique ID)

l)  Quantity prescribed

m) Number of refills authorized (if any)

n)  Diagnostic code

o)  Method of payment

p)  Patient paid amount

q)  Whether prescription covered by third-party payor

r)  Control / Non Control ratio

4

**HIGHLY CONFIDENTIAL**

    s)  Pharmacy DEA #

    t)  Pharmacy Store #

    u)  Pharmacy address (at the zip code level or finder)

    v)  Prescriber address (at the zip code level or finder)

    w)  Prescription Date written

    x)  Refill indicator (whether the Rx is a refill or the original)

    y)  Prescriber Specialty

    z)  Rejection Indicator (Whether the pharmacy rejected to fill)

    aa) Prescriber's NPI Number

    bb) Patient DOB Year (or age)

    cc) DEA Override

    dd) DEA Schedule (Same as Control/Non-Control)

    ee) Dispense Hour

    ff)  Dispense Minute

    gg) Drop Off Hour

    hh) Drop Off Minute

**Response to Request No. 1**: In addition to its General Objections, Walgreens objects to this Request because it is overbroad and unduly burdensome. It asks for information regarding thirty-four different statistics related to dispensing data. Walgreens does not understand the relevance of these requests to the Plaintiffs' claims or Express Scripts' defenses in this case given the collection burden and that many of these statistics are not kept in the ordinary course of business.

       Subject to and without waiving its Objections, Walgreens states that it will meet and confer regarding Express Scripts' request and the burden involved in responding to their request.

**HIGHLY CONFIDENTIAL**

**<u>Request No. 2</u>**: Documents sufficient to show how You and any pharmacists (or other employees involved in dispensing drugs within the Drug Scope) do or do not consider, use, respond to, or interact with communications received from pharmacy benefit managers (including, but not limited to, Express Scripts and OptumRx) at the point of sale, including, but not limited to, communications regarding plan coverage limits (such as prior authorizations, step edits, and quantity limits) and communications regarding health and safety issues (such as concurrent drug utilization review or CDUR messages), from January 1, 1996, to present. Your response should include documents responsive at both the pharmacy and individual employee level, and should include any pertinent policies, procedures, directives, or guidance.

**<u>Response to Request No. 2</u>**: In addition to its General Objections, Walgreens objects to this Request on the grounds that the requested information is not relevant to Plaintiffs' claims or Express Scripts' defenses and that responding to the Request would be unduly burdensome. To the extent that Express Scripts is interested in the Pharmacy Benefit Manager ("PBM") Defendants' communications with Walgreens, Express Scripts can obtain those documents from itself and the other PBM Defendants.

Subject to and without waiving its Objections, Walgreens directs Express Scripts to Walgreens' Responses to Requests for Admission Nos. 3-5, 7-8, and 10-19 in the Jefferson County, Missouri case, in which Walgreens provides information regarding the process for its interactions with PBMs.

Dated: June 20, 2024

Respectfully submitted,

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Matthew Ford
Michael A. Nance
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654

6

**HIGHLY CONFIDENTIAL**

Tel.: (312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
matthew.ford@bartlitbeck.com
michael.nance@bartlitbeck.com

*Counsel for Walgreen Co.*