UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| All cases | |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF ISSUE RULING FOUR REGARDING THE SUFFICIENCY OF CLAIMS AND ALLEGATIONS**

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 6

I.    The Common Factual Allegations in the Exemplar Complaints and the *Summit County* Complaint Constitute "Defendant-Specific Factual Allegations of Misconduct." ................................................. 7

    A.    The Exemplar Complaints Detail Misconduct That Applies Equally to the Existing Defendants and the Proposed Defendants. ........................................................................ 7

    B.    The Court Also Failed to Account for the Fact that Many or All of Plaintiffs' Existing Pleadings Already Incorporate Allegations of Misconduct Common to All Proposed Defendants. ...................................................................... 14

II.    Plaintiffs Reasonably Understood the Amendment Order to Permit Reliance on Factual Allegations Common to All Chain Pharmacies and Generic Manufacturers. .......................................................... 17

III.    Plaintiffs Do Not Seek "Yet Another, Future Amendment." .................... 20

CONCLUSION .................................................................................................... 23

3448908.4

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Beydoun v. Sessions,*
    871 F.3d 459 (6th Cir. 2017) ............................................................................4, 11

*Hale v. Enerco Grp., Inc.,*
    2011 WL 49545 (N.D. Ohio Jan. 5, 2011) (Polster, J.) .......................................10

*Johnson v. Dollar Gen. Corp.,*
    2007 WL 2746952 (E.D. Tenn. Sept. 20, 2007) ....................................................6

*In re Nat'l Prescription Opiate Litig.,*
    2019 WL 2468267 (N.D. Ohio Apr. 1, 2019), *adopted in relevant part by*
    2019 WL 3737023 (N.D. Ohio June 13, 2019) ............................................ *passim*

*In re Nat'l Prescription Opiate Litig.,*
    2020 WL 425916 (N.D. Ohio Jan. 27, 2020).........................................................15

*Rodriguez v. Tenn. Laborers Health & Welfare Fund,*
    89 F. App'x 949 (6th Cir. 2004) .............................................................................6

**Federal Rules**

Fed. R. Civ. P. 8..........................................................................................................13

Fed. R. Civ. P. 9(b).....................................................................................................13

Fed. R. Civ. P. 15.................................................................................................. *passim*

Fed. R. Civ. P. 54(b)....................................................................................................6

Fed. R. Civ. P. 59(e) ....................................................................................................6

3448908.4

Amending plaintiffs who seek to add the proposed chain pharmacy defendants and generic manufacturer defendants ("Plaintiffs")[1] seek partial reconsideration of this Court's Issue Ruling Four Regarding the Sufficiency of Claims and Allegations (Dkt. #6428) with respect to Plaintiffs' motions for leave to amend ("MLAs").[2]

## PRELIMINARY STATEMENT

While Plaintiffs appreciate that reconsideration applies only in rare circumstances, they respectfully submit this is one of them.  In Issue Ruling Four, the Court mostly rejected the proposed defendants' argument that Plaintiffs' MLAs are "insufficient to put defendants on notice of the claims against them."  Dkt. #6428 at 4.  The Court determined the proposed defendants' insistence "that 'the failure to supply a proposed amended complaint is, by itself, grounds to deny leave [to] amend'" was "not well-taken," and

---

[1] The PEC's position is that Issue Ruling Four could affect, at most, proposed defendants that are not named in an Exemplar Complaint (as defined *infra* n.3). Those include chain pharmacies Ahold Delhaize, Costco, Discount Drug Mart ("DDM"), Publix, Target, and Winn-Dixie, as well as generic manufacturers Alvogen, Aurolife, KVK-Tech, and Tris Pharma; the Court expressly held Issue Ruling Four does not mandate the denial of any MLAs as to Lupin (Dkt. #6428 at 7 n.6).  The plaintiffs seeking leave to add these defendants are listed in the exhibits to the reply briefs in support of the respective motions for leave to amend (Dkt. ##6171; 6211-6214), with the exception of those who have withdrawn from the motions since the replies were filed.  *See, e.g.*, Dkt. #6474 (PEC's Stmt. on Issue Ruling Four) at 2; Dkt. #6474-2.  Of the remaining proposed defendants, Express Scripts, Optum, and Albertsons agree that Issue Ruling 4 does not require the denial of any MLAs as to them, and Publix's position is that Issue Ruling 4 does not apply to all but four of the MLAs as to it.  The PEC has not taken a position as to whether Issue Ruling 4 does or does not apply to the four cases Publix has identified.

[2] Unless otherwise indicated, all emphasis in this brief is added, and all internal citations and quotation marks have been omitted.  Additionally, unless otherwise indicated, references to "Dkt." or "MDL Dkt." are to the docket in No. 1:17-md-2804, and page references to all docket entries reflect the documents' internal pagination.

1

likewise overruled their objection that a plaintiff's incorporation of an Exemplar Complaint is insufficient "if the plaintiff is of one category (*e.g.*, a third-party payor) and incorporates by reference an Exemplar Complaint filed by a plaintiff of another category (*e.g.*, a municipality)."  *Id.* at 4, 8.[3]  But the Court held Plaintiffs cannot rely on a combination of "jurisdiction-specific claims from the underlying operative complaint" in their respective cases, "insubstantial" defendant-specific factual allegations in the MLAs, and "generalized, non-defendant-specific allegations of wrongful conduct from the incorporated Exemplar Complaints."  Dkt. #6428 at 5.  The Court reasoned that "with regard to many of the proposed new defendants, the ***totality*** of these proposed claims and allegations simply do not identify or even suggest misconduct specific to that defendant."  *Id.* (emphasis in original).  The Court further stated that its prior order allowing Plaintiffs to seek leave to amend "cannot be read to permit plaintiffs to rely on Exemplar Complaints that contain ***general*** factual allegations of misconduct against certain named defendants broadly, but no ***specific*** factual allegations whatsoever that the proposed new defendant violated the CSA [Controlled Substances Act] or engaged in other prohibited conduct."  *Id.* at 6 (emphasis in original).  Plaintiffs believe the Court's holding misconstrues their MLAs in three respects.

---

[3] For purposes of this motion, "Exemplar Complaints" consist of (i) the complaint filed on July 14, 2021 in *Cobb County v. Purdue Pharma, LP, et al.*, MDL Dkt. #3787 ("*Cobb County* Complaint"), for proposed claims against most of the chain pharmacies; (ii) the complaint filed on July 14, 2021 in *Tarrant County v. Purdue Pharma, LP, et al.*, MDL Dkt. #3789 ("*Tarrant County* Complaint"), for proposed claims against Albertsons; and (iii) the complaint filed on March 21, 2020 in *City and County of San Francisco, et al. v. Purdue Pharma, LP, et al.*, No. 3:18-cv-07591-CRB, N.D. Cal. Dkt. #128 ("*San Francisco* Complaint"), for proposed claims against generic manufacturers.

3448908.4

*First*, the Court minimized the significance of the "general factual allegations" in the Exemplar Complaints—specifically, the *Cobb County* and *Tarrant County* Complaints with respect to the chain pharmacies and the *San Francisco* Complaint with respect to the generic manufacturers.  Those complaints, in addition to allegations from the second amended complaint in *The County of Summit, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090 ("*Summit County* Complaint")—which are incorporated into the *Cobb County* and *Tarrant County* Complaints as well as the short-form complaints that most (if not all) of these Plaintiffs previously filed—detail misconduct that applies to the proposed defendants *to the same extent* as to the corresponding defendants already named in those pleadings.  In other words, those *are* "defendant-specific factual allegations of misconduct" (Dkt. #6428 at 7 n.6); it is just that they apply equally to all similarly situated defendants.  It is therefore appropriate that in the MLAs themselves, Plaintiffs highlight "opioid-related, market-share information derived from 'new' ARCOS data" regarding proposed defendants (*id.* at 3); that information goes beyond the common factual allegations and is particular to each new defendant.  But the Court isolated Plaintiffs' market-share allegations from the common allegations in the Exemplar Complaints and in the *Summit County* Complaint, and concluded that in numerous instances "there are no other specific factual allegations in the motion for leave to amend or the Exemplar Complaint indicating the defendant engaged in any prohibited conduct" (*id.* at 7). Plaintiffs submit that was wrong.

In this regard, Issue Ruling Four conflicts with the Court's prior rejection of other defendants' argument "that where multiple defendants are alleged to have engaged [in]

the same pattern of conduct or conspired in a fraudulent scheme, . . . a plaintiff must reiterate its allegations against each defendant individually." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 2468267, at \*13 (N.D. Ohio Apr. 1, 2019), *adopted in relevant part by* 2019 WL 3737023, at \*3 (N.D. Ohio June 13, 2019).  That reasoning applies equally here, especially because many or all Plaintiffs already incorporate the *Summit County* allegations against "National Chain Pharmacies" and "Marketing Defendants" (which include generic manufacturers) in their existing pleadings.  Those same allegations apply to the chain pharmacies and generic manufacturers Plaintiffs seek to add.  Their motions should not turn on whether they have expressly stated in a document that, for example, Ahold Delhaize will be added to the list of "National Chain Pharmacies."  The MLAs make that clear, and the proposed defendants cannot credibly claim they do not understand the nature of the proposed claims, particularly given the long history of this litigation and the many similar claims the Court has addressed.  Plaintiffs have, in short, provided the proposed defendants and the Court with "***the substance*** of the proposed amendment"—which is all Rule 15 requires.  Dkt. #6428 at 4 (emphasis in original) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).

*Second*, Plaintiffs respectfully disagree that the May 2024 Order allowing them to file the MLAs (Dkt. #5455, "Amendment Order") "cannot be read" to permit reliance on the Exemplar Complaints in the manner Plaintiffs did.  Dkt. #6428 at 6.  As relevant here, the Amendment Order directed Plaintiffs to provide "any plaintiff-specific factual allegations" pertinent to each case and "any jurisdiction-specific claims" Plaintiffs propose to add or dismiss for each case.  Dkt. #5455 at 2.  Plaintiffs did so.  The Order did

4

not speak to "defendant-specific factual allegations of misconduct," Dkt. #6428 at 7 n.6, let alone suggest Plaintiffs cannot rely on allegations of misconduct common to *all* similarly situated chain pharmacies or generic manufacturers regardless whether they are named in the Exemplar Complaints.  The MLAs thus include "enough specificity so the Defendant knows exactly what [Plaintiffs] are proposing to allege what they did or didn't do that violated the law." Dkt. #5471 at 25:1-4.  Having reasonably construed the Court's directives, Plaintiffs should not now be held to a standard they did not believe applied and that was not set forth in the Amendment Order.

*Third*, the Court misconstrued Plaintiffs' reference to its "prior use of the short-form amendment process in 2019," which did not require "defendant-specific allegations," as a request for "yet another, future amendment to clarify and fully state their allegations and claims," in contrast to the Amendment Order's directive "that '[t]his will be [non-bellwether] plaintiffs' final opportunity to amend their complaints.'" Dkt. #6428 at 7 n.5 (alterations in original) (quoting Dkt. #5455 at 2).  Plaintiffs do not seek another opportunity to amend their complaints; rather, the point is only that the Exemplar Complaints, as well as the *Summit County* Complaint, contained sufficient allegations common to all of the proposed defendants to apprise them of the bases of their liability.  The only "future" action Plaintiffs contemplate is formally adding the new defendants to their respective cases by filing individual amended pleadings if and when the MLAs are granted—a procedure the Court deemed proper in Issue Ruling Four.  *See id.* at 3-5.  Just as Rule 15 does not require Plaintiffs to provide those proposed pleadings

now, it likewise does not mandate that Plaintiffs do more than refer to allegations of misconduct common to all chain pharmacies and generic manufacturers, respectively.

Plaintiffs therefore request that the Court revisit Issue Ruling Four and hold that Plaintiffs properly relied on allegations from the Exemplar Complaints, together with additional defendant-specific allegations in the MLAs as well as factual allegations previously incorporated into Plaintiffs' existing pleadings, to support the proposed amendments with respect to chain pharmacies and generic manufacturers.

## ARGUMENT

District courts "have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). This standard "obviously vests significant discretion in district courts." *Id.* at 959 n.7. While courts often apply the factors that inform motions under Rule 59(e) to alter or amend a judgment—i.e., "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice," *id.* at 959—these are not exclusive. Because "Rule 54(b) does not proscribe any standards or bases for revisions" and this District does not have a local rule addressing reconsideration, such motions are purely "at the Court's discretion." *Johnson v. Dollar Gen. Corp.*, 2007 WL 2746952, at *2 (E.D. Tenn. Sept. 20, 2007). Reconsideration is warranted to revisit the Court's holding that Plaintiffs failed to comply with Rule 15 and the Amendment Order in relying on Exemplar Complaints "that do[] not even name the

6

proposed new defendant" and allegations in the MLAs that did not, in the Court's view, contain "defendant-specific factual allegations of misconduct" (Dkt. #6428 at 7 n.6).

I.      **THE COMMON FACTUAL ALLEGATIONS IN THE EXEMPLAR COMPLAINTS AND THE *SUMMIT COUNTY* COMPLAINT CONSTITUTE "DEFENDANT-SPECIFIC FACTUAL ALLEGATIONS OF MISCONDUCT."**

The Court determined that because "[a]n Exemplar Complaint that does not even name the proposed new defendant obviously contains no defendant-specific factual allegations," *id.*, the allegations incorporated from Exemplar Complaints that do not name the proposed chain pharmacy or generic manufacturer defendants do not sufficiently inform them of the substance of the amendment.  But the Court misconstrued the nature and significance of the Exemplar Complaints' allegations, and overlooked that Plaintiffs' existing complaints also incorporate factual allegations that detail wrongdoing by all similarly situated pharmacies and generic manufacturers.

A.      **The Exemplar Complaints Detail Misconduct That Applies Equally to the Existing Defendants and the Proposed Defendants.**

As an initial matter, Plaintiffs argued the Exemplar Complaints' allegations that apply to all similarly situated existing and proposed defendants are defendant-specific. *E.g.*, Dkt. #5550 at 1 (stating that if permitted to amend, Plaintiffs "would supplement their existing pleadings with claims substantially similar to those asserted against manufacturers in the [*San Francisco* Complaint] . . . and *additional* defendant specific facts, including those detailed [in the MLA]"); Dkt. #5569 at 1 (stating that if permitted to amend, Plaintiffs "would supplement their existing pleadings with claims substantially similar to those asserted against chain pharmacies in the [*Cobb County* Complaint] . . . and

add *additional* defendant specific facts, including those detailed [in the MLA]"). The Court nonetheless interpreted the MLAs as relying on "***general*** factual allegations of misconduct against certain named defendants broadly, but no ***specific*** factual allegations whatsoever that the proposed new defendant violated the CSA or engaged in other prohibited conduct."  Dkt. #6428 at 6 (emphasis in original).  Respectfully, that misreads both the Exemplar Complaints and Plaintiffs' motions, and is contrary to the Court's prior holding as to "group pleading."  *See Nat'l Prescription Opiate*, 2019 WL 3737023, at *3.

The Exemplar Complaints provide detailed factual allegations that are common to all chain pharmacy and generic manufacturer defendants.  Those *same allegations* apply equally to the proposed chain pharmacy and generic manufacturer defendants.

The *Cobb County* Complaint, for example, details numerous ways in which all of the named chain pharmacies violated the CSA or otherwise acted unlawfully.  Among other things, the complaint alleges:

- "According to the CDC, opioid prescriptions, as measured by number of prescriptions and morphine milligram equivalent ('MME') per person, tripled from 1999 to 2015.  In 2015, on an average day, more than 650,000 opioid prescriptions were dispensed in the U.S.  Not all of these prescriptions were legitimate.  Yet Defendants systemically ignored red flags that they were fueling a black market, and failed to maintain effective controls against diversion at both the wholesale and retail pharmacy level. Instead, they put profits over the public health and safety.  Despite their legal obligations as registrants under the CSA, the Chain Pharmacies allowed widespread diversion to occur—and they did so knowingly."

- "Upon information and belief, this problem was compounded by the Chain Pharmacies' failure to adequately train their pharmacists and pharmacy technicians on how to properly and adequately handle prescriptions for opioid painkillers, including what constitutes a proper inquiry into whether a prescription is legitimate and what measures and/or actions to take when a prescription is identified as potentially illegitimate."

8

- "Upon information and belief, the Chain Pharmacies also failed to put in place effective policies and procedures to prevent their stores from facilitating diversion and selling into a black market, and to conduct adequate internal or external reviews of their opioid sales to identify patterns regarding prescriptions that should not have been filled, or if they conducted such reviews, they failed to take any meaningful action as a result."

- "Upon information and belief, even where Chain Pharmacies enacted policies and procedures to prevent stores from facilitating diversion and selling into a black market, such policies were merely window-dressing and were not employed in any meaningful way."

- "Upon information and belief, the Chain Pharmacies also failed to effectively respond to concerns raised by their own employees regarding inadequate policies and procedures regarding the filling of opioid prescriptions.  Instead, Chain Pharmacies put in place policies that required and rewarded speed and volume over safety and the care necessary to ensure that narcotics were distributed and sold lawfully.  Defendants consistently put profits over safety in their distribution and sale of prescription opioids."

- "The Chain Pharmacies were, or should have been, fully aware that the quantity of opioids being distributed and dispensed by them was untenable, and in many areas patently absurd.  But they did not take meaningful action to investigate or to ensure that they were complying with their duties and obligations under the law with regard to controlled substances."

Dkt. #3787, ¶¶ 105-10.  While those allegations do not refer to a particular chain pharmacy defendant, they are common to *all* of the chain pharmacy defendants.  It is these and other common factual allegations that Plaintiffs intend to assert against the proposed chain pharmacy defendants.

"While Plaintiffs have made allegations that multiple Defendants have engaged in the same conduct, those allegations are plausible and raise a reasonable expectation that discovery will reveal evidence to support their claims."  *Hale v. Enerco Grp., Inc.*, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011) (Polster, J.).  Thus, notwithstanding that the proposed

defendants are not named in the *Cobb County* or *Tarrant County* Complaint, they "have adequate notice of Plaintiffs' claims and the grounds upon which they rest." *Id.* Whether the Exemplar Complaints or Plaintiffs' MLAs *also* contain allegations regarding particular existing or proposed defendants does not detract from the significance of the numerous detailed allegations common to all of them. The Court did not appropriately account for the latter in assessing the balance "between efficiency in the MDL and maintenance of an individual party's rights in each case." Dkt. #6428 at 8.[4]

The same is true with respect to the generic manufacturers. The *San Francisco* Complaint alleges in detail that the named generic manufacturer defendants (as well as other "Marketing Defendants"), among other things:

- "turned to the marketing techniques first pioneered by Arthur Sackler to create a series of misperceptions in the medical community and ultimately reverse the long-settled understanding of the relative risks and benefits of opioids";

- "promoted, and profited from, their misrepresentations about the risks and benefits of opioids for chronic pain even though they knew that their marketing was false and misleading," including because they "had access to scientific studies, detailed prescription data, and reports of adverse events, including reports of addiction, hospitalization, and deaths—all of which made clear the harms from long-term opioid use and that patients were suffering from addiction, overdoses, and death in alarming numbers";

- knowingly misrepresented that (a) "[t]he risk of addiction from chronic opioid therapy is low"; (b) "[t]o the extent there is a risk of addiction, it can be easily identified and managed"; (c) "[s]igns of addictive behavior are

---

[4] The *Cobb County* and *Tarrant County* Complaints include allegations regarding particular defendants based on discovery available to those plaintiffs. *See, e.g.*, Dkt. #3787, ¶¶ 186-502. Plaintiffs appreciate those allegations cannot be deemed to apply to any other party, meaning that where an allegation says (for example) "Walgreens," the Court will not read it to say "Winn-Dixie." Allegations against all "Chain Pharmacies," on the other hand, apply equally to all existing and proposed chain pharmacy defendants.

10

'pseudoaddiction,' requiring more opioids"; (d) "[o]pioid withdrawal can be avoided by tapering"; (e) "[o]pioid doses can be increased without limit or greater risks"; (f) "[l]ong-term opioid use improves functioning"; (g) "[a]lternative forms of pain relief pose greater risks than opioids"; (h) "OxyContin provides twelve hours of pain relief"; and (i) "[n]ew formulations of certain opioids successfully deter abuse"; and

- disseminated those misrepresentations "through various channels, including through advertising, sales representatives, purportedly independent organizations the Marketing Defendants funded and controlled, 'Front Groups,' so-called industry 'Key Opinion Leaders,' and Continuing Medical Education ('CME') programs."

*San Francisco* Compl. ¶¶ 225-30.  Similar to the *Cobb County* and *Tarrant County* Complaints vis-à-vis the proposed chain pharmacy defendants, Plaintiffs' references to the *San Francisco* Complaint's common factual allegations alerted the proposed generic manufacturer defendants to the nature of the claims against them.  In all instances, "the Court and the proposed defendant[s] 'have before [them] the substance of the proposed amendment."  Dkt. #6428 at 6 (second alteration in original) (quoting *Beydoun*, 871 F.3d at 469).

In addition to misconstruing the significance of the common factual allegations, the Court's determination that those allegations are too "general" to apprise the proposed defendants of the bases of the amendments is at odds with its rejection of prior pleading challenges.  This discrepancy further supports reconsideration of Issue Ruling Four.

In moving to dismiss Muskogee (Creek) Nation's complaint, numerous defendants—including chain pharmacies and generic manufacturers—"challenge[d] the propriety of what they characterize[d] as 'group pleading.'"  *Nat'l Prescription Opiate*, 2019 WL 2468267, at *13.  The pharmacies, for example, argued the complaint "includes

11

some (though not all) of the [Pharmacy] Defendants in its references to 'Distributor Defendants'—a group that includes 14 different defendants," and "fails to make any specific allegations about any of the [Pharmacy] Defendants' conduct as distributors, relying exclusively on improper group pleading and allegations about *other* defendants." Dkt. #928-1 at 4 (emphasis in original). The generic manufacturers likewise argued the complaint "lumps them together with five other, separate brand manufacturers under the name 'Marketing Manufacturer Defendants,' and then asserts hundreds of conclusory allegations about alleged improper marketing practices against that fictitious group, without distinction." Dkt. #929-1 at 11. They contended that in doing so, the complaint failed to "'provid[e] any factual allegations that specify separate acts,'" in violation of governing pleading principles. *Id.* (quoting *Kurek v. Ohio Dep't of Dev. Disabilities*, 2017 WL 1555930, at *6 (N.D. Ohio Jan. 20, 2017)).

Magistrate Judge Ruiz rejected those arguments, determining the complaint "provide[d] fair notice of the claims sufficient to permit the Defendants to understand and respond to them." 2019 WL 2468267, at *13. In this regard, the Nation "allege[d] that each of the groups it identifies share common regulatory and legal obligations and have breached their respective duties by undertaking the same variety of misconduct." *Id.* at *14. With respect to the pharmacies, for example, the complaint included "allegations pertaining to their complained-of misconduct and its consequences; the duties imposed on the Pharmacy Defendants . . . by federal and state laws and regulations; their alleged failure to comply with those obligations; and the consequences of that alleged misconduct." *Id.* And with respect to the generic manufacturers, the Nation alleged

12

"they participated in and supported a fraudulent scheme by funding, contributing content, and controlling the [Key Opinion Leaders] and front groups, by engaging in an association-in-fact with those persons and entities to effectuate its common purpose of increasing profits by expanding the opioid market," and "rather than act in accordance with their duties," they "aggressively marketed their generic opioid products to drug distributors, prescription benefit managers, formularies, insurance companies, and other third parties to increase their own market share among generics." *Id.*

In light of these and other allegations, Judge Ruiz concluded defendants "ha[d] not met their burden to demonstrate that the [complaint] fails to give them fair notice of Plaintiff's claims against each of them or the grounds upon which they rest." *Id.* In upholding that determination, the Court rejected defendants' assertion "that Plaintiffs are required to separately reiterate their allegations against each defendant individually." *Nat'l Prescription Opiate*, 2019 WL 3737023, at *3. The Court further held the complaint satisfied Rule 8, as well as Rule 9(b)'s particularity requirement to the extent the claims sounded in fraud. *Id.* at *2.

In Issue Ruling Four, by contrast, the Court faulted Plaintiffs for relying on substantially similar allegations to apprise the proposed chain pharmacy and generic manufacturer defendants of the amendments. By the Court's reasoning, had Plaintiffs simply cut and pasted the common allegations from the Exemplar Complaints into their MLAs, their motions would comply with Rule 15 and the Amendment Order. But that requirement "would exponentially increase the length of pleadings while adding no substantive value." *Nat'l Prescription Opiate*, 2019 WL 3737023, at *3. The Court's ruling

13

thus conflicts with its prior (correct) rulings with respect to what is necessary to "strike[] the appropriate balance between simplicity and particularity."  *Id.* at \*2.

This is especially so given that, as the Court has observed, "because there's been so much litigation, everyone sees and knows what the claims look like"; there are "plenty of public nuisance claims" and "plenty of RICO claims."  Dkt. #5471 at 24:14-17. The proposed defendants thus cannot credibly argue they are unable to discern what Plaintiffs allege against them.

**B.  The Court Also Failed to Account for the Fact that Many or All of Plaintiffs' Existing Pleadings Already Incorporate Allegations of Misconduct Common to All Proposed Defendants.**

Plaintiffs have made clear "that *if* the Court grants any individual plaintiff leave to amend its complaint, that plaintiff would then 'file supplemental and amended allegations that will add to, but not supersede or replace, the plaintiff's existing operative pleading.'"  Dkt. #6428 at 3 (emphasis in original) (quoting Dkt. #5565 (Pls.' Roadmap) at 3).  In many (if not all) cases, Plaintiffs' operative pleadings include short-form complaints they filed by March 2019, which "incorporat[e] as if fully set forth [t]herein [their] own prior pleadings and, if indicated . . ., the common factual allegations identified and the RICO causes of action included in the Corrected Second Amended Complaint and Jury Demand" filed by bellwether plaintiff Summit County, Ohio in May 2018 ("*Summit County* Complaint") and any future amendments to that pleading.  *E.g., Douglas County v. Purdue Pharma L.P., et al.*, No. 1:17-op-45107, Case Dkt. #9 (N.D. Ohio Mar. 15, 2019).  Accordingly, as of March 2019 the operative pleadings in those cases incorporated the common allegations in the *Summit County* Complaint.  Those included allegations

about "National Retail Pharmacies," which encompassed all of the retail pharmacies named in the *Summit County* Complaint and were not limited to particular entities.[5]

With respect to the pharmacies, the *Summit County* Complaint alleges, among other things:

- "National retail pharmacy chains earned enormous profits by flooding the country with prescription opioids.  They were keenly aware of the oversupply of prescription opioids through the extensive data and information they developed and maintained as both distributors and dispensaries.  Yet, instead of taking any meaningful action to stem the flow of opioids into communities, they continued to participate in the oversupply and profit from it."

- "The National Retail Pharmacies developed and maintained extensive data on opioids they distributed and dispensed.  Through this data, National Retail Pharmacies had direct knowledge of patterns and instances of improper distribution, prescribing, and use of prescription opioids in communities throughout the country . . . .  They used the data to evaluate their own sales activities and workforce.  On information and belief, the National Retail Pharmacies also provided Defendants with data regarding, *inter alia*, individual doctors in exchange for rebates or other forms of consideration.  The National Retail Pharmacies' data is a valuable resource that they could have used to help stop diversion, but failed to do so."

- "Upon information and belief, the National Retail Pharmacies failed to analyze: (a) the number of opioid prescriptions filled by individual pharmacies relative to the population of the pharmacy's community; (b) the increase in opioid sales relative to past years;

---

[5] Those "National Retail Pharmacies" included DDM, one of the proposed defendants here.  In denying DDM's subsequent motion for summary judgment in *Summit County* and other bellwether cases, the Court held plaintiffs "presented evidence sufficient to establish a triable issue of fact regarding the adequacy of DDM's suspicious order monitoring system" and "submitted evidence upon which a jury could reasonably conclude that DDM's distribution of opioids . . . contributed substantially to Plaintiffs' alleged harms."  *In re Nat'l Prescription Opiate Litig.*, 2020 WL 425916, at *2 (N.D. Ohio Jan. 27, 2020).  This is even more reason why DDM has ample notice of the substance of the presently moving Plaintiffs' claims against it.

3448908.4

(c) the number of opioid prescriptions filled relative to other drugs; and (d) the increase in annual opioid sales relative to the increase in annual sales of other drugs."

- "Upon information and belief, the National Retail Pharmacies also failed to conduct adequate internal or external audits of their opioid sales to identify patterns regarding prescriptions that should not have been filled and to create policies accordingly, or if they conducted such audits, they failed to take any meaningful action as a result."

- "Upon information and belief, the National Retail Pharmacies also failed to effectively respond to concerns raised by their own employees regarding inadequate policies and procedures regarding the filling of opioid prescriptions."

- "The National Retail Pharmacies were, or should have been, fully aware that the quantity of opioids being distributed and dispensed by them was untenable, and in many areas patently absurd; yet, they did not take meaningful action to investigate or to ensure that they were complying with their duties and obligations under the law with regard to controlled substances."

*Summit Cty.* Compl. ¶¶ 607, 609-10, 623-26.  Plaintiffs adopted these and other allegations common to all chain pharmacies, and incorporated the allegations into their operative pleadings through short-form complaints.[6]  Plaintiffs likewise adopted the allegations in the *Summit County* Complaint common to all generic manufactures (which are among the "Marketing Defendants" in that complaint).  *See* Dkt. #513, ¶¶ 174-496 (detailing "[t]he Marketing Defendants' Multi-Pronged Scheme to Change Prescriber Habits and Public Perception and Increase Demand for Opioids," including specific unlawful conduct).

---

[6] Summit County eventually chose not to pursue dispensing claims against the National Retail Pharmacies.  But the allegations about their dispensing conduct remained in the *Summit County* Complaint and were incorporated by the presently moving Plaintiffs through their short-form complaints.

These allegations are no less "defendant-specific" with respect to the proposed defendants than they were regarding the existing defendants.  For instance, in the paragraphs cited above, Summit County did not allege that CVS in particular engaged in the specified misconduct, but rather that all of the "National Retail Pharmacies" did (just as Cobb County alleged all of the "Chain Pharmacies" named in its complaint did).[7] Thus, in addition to referencing the Exemplar Complaints in their MLAs, Plaintiffs already allege detailed facts regarding all chain pharmacies and generic manufacturers in their existing pleadings.  This further undermines the Court's determination that the proposed defendants were "not provided with adequate notice of the claims and allegations against [them]."  Dkt. #6428 at 5.  The proposed defendants need look no further than *Plaintiffs' existing allegations*, as further elaborated in the subsequently filed Exemplar Complaints and in the MLAs.  That is surely enough to satisfy "Rule 15's liberal amendment standard," *id.* at 6, as well as the Amendment Order.

## II. PLAINTIFFS REASONABLY UNDERSTOOD THE AMENDMENT ORDER TO PERMIT RELIANCE ON FACTUAL ALLEGATIONS COMMON TO ALL CHAIN PHARMACIES AND GENERIC MANUFACTURERS.

Issue Ruling Four provides that in addition to running afoul of Rule 15, Plaintiffs' reliance on "Exemplar Complaints that contain **general** factual allegations of misconduct against certain named defendants broadly" failed to satisfy "the procedural requirements

---

[7] As noted above, the *Cobb County* and *Tarrant County* Complaints, in particular, also contain detailed allegations regarding the conduct of particular defendants based on information elicited through discovery.  But the level of detail available after discovery is not required for a motion for leave to amend against a new defendant in cases where discovery has not yet even begun.

17

this Court imposed as a condition of lifting its moratorium." Dkt. #6428 at 6 (emphasis in original). But the Court held Plaintiffs to a standard neither expressed nor implied in the Amendment Order.

The Amendment Order does not speak to the manner in which Plaintiffs could provide the proposed defendants with notice of the claims and allegations against them. Indeed, the Order does not address "defendant-specific factual allegations" (Dkt. #6428 at 7 n.6) at all. It directs only that Plaintiffs must provide—in addition to a list of all cases seeking to add each defendant and "good cause for the proposed amendments," which are not at issue here—"any *plaintiff-specific* factual allegations" and "any *jurisdiction-specific claims*." Dkt. #5455 at 2. Plaintiffs complied with those requirements. *E.g.*, Dkt. #5550 at 4 (MLA referencing jurisdiction-specific facts in attached exhibit, similar to other MLAs); Dkt. #5550-1 (exhibit presenting table of plaintiffs seeking leave to amend, including the proposed defendant's relevant market share in each jurisdiction, similar to exhibits filed with other MLAs). On the other hand, the Order does not mention any "defendant-specific" requirement, let alone suggest the Exemplar Complaints' factual allegations regarding all chain pharmacies and generic manufacturers are not sufficiently "defendant-specific."

In further explaining the process for how the MLAs would proceed, moreover, the Court said "there has to be enough specificity so the Defendant knows exactly what [Plaintiffs] are proposing to allege what they did or didn't do that violated the law." Dkt. #5471 at 25:1-4. As detailed in Section I above, the Exemplar Complaints provide abundant and detailed allegations regarding exactly that. Repeating the same common

18

allegations that are made against the grouped chain pharmacies or generic manufacturers in the Exemplar Complaints, while merely inserting the name of each proposed defendant, would not have added any material substance to the proposed amendment.

The Court's characterization of the common factual allegations in the Exemplar Complaints also conflicts with its other determination in Issue Ruling Four that Plaintiffs need not submit proposed complaints with their MLAs. In rejecting the proposed defendants' argument that the absence of proposed complaints deprives them of notice of the claims, the Court explained Plaintiffs' approach is sufficient "especially . . . in the broad context of this MDL, where each existing complaint is hundreds of pages long and gives every defendant a substantial and particularized understanding of plaintiffs' claims and allegations." Dkt. #6428 at 4. Yet the Court then went on to conclude that these proposed defendants cannot discern the substance of the proposed amendment by looking at the detailed and particularized allegations in the Exemplar Complaints, simply because those pleadings do not name these entities. Plaintiffs respectfully submit that ruling does not reflect the realities of this long-running and extensive litigation—which, as the Court has emphasized, includes "plenty of public nuisance claims" and "plenty of RICO claims." Dkt. #5471 at 24:16-17. It blinkers those realities to assume, as Issue Ruling Four does, that a proposed chain pharmacy or generic manufacturer defendant does not understand the nature of Plaintiffs' claims based on the same claims and allegations these or other plaintiffs have brought against other chain pharmacies and generic manufacturers.

Indeed, if the only thing missing from Plaintiffs' MLAs is to say, for example, "Plaintiffs allege Ahold Delhaize is liable for public nuisance for the same reasons alleged in ¶¶ [ ] of the *Cobb County* Complaint," that is both overly formalistic and easily remediable.  That the MLAs do not contain such statements should not be dispositive.

### III.  PLAINTIFFS DO NOT SEEK "YET ANOTHER, FUTURE AMENDMENT."

Finally, the Court misconstrued Plaintiffs' reliance on Exemplar Complaints that do not name the proposed defendants as envisioning "yet another, future amendment to clarify and fully state their allegations and claims."  Dkt. #6428 at 7 n.5.  Plaintiffs fully appreciate the Court's prior admonition that the present motions represent the "final opportunity to amend their complaints," Dkt. #5455 at 2, and have proceeded accordingly, providing hundreds of pages of briefing and accompanying submissions to apprise the Court and the proposed defendants of the claims and allegations Plaintiffs intend to assert.  Plaintiffs have thus abided by the Court's directive.  The Court's suggestion that Plaintiffs impermissibly seek "to clarify and fully state their allegations and claims" later, Dkt. #6428 at 7 n.5, does not appropriately account for the information contained in the Exemplar Complaints, Plaintiffs' existing pleadings, and the MLAs.

It is also inconsistent with the Court's determination that Plaintiffs need not provide proposed complaints now—which accords with "Rule 15, as interpreted by the Sixth Circuit."  *Id.* at 4.  There is no question that if and when the Court grants the MLAs, Plaintiffs will need to file amended pleadings in each case that incorporate the new defendants.  Permitting Plaintiffs to apprise the proposed defendants of the substance of the amendment now by referencing allegations in Exemplar Complaints that are common

to similarly situated existing defendants likewise comports with the Federal Rules and the Court's understandable insistence on finality in amending.

The only future aspect of Plaintiffs' approach to the MLAs will be to formalize what the motions, including through their references to Exemplar Complaints, already make clear. That will include adding the new defendants' names to Plaintiffs' existing pleadings and designating them as among the groups of chain pharmacy or generic manufacturer defendants (whether identified as "National Chain Pharmacies," "Marketing Defendants," or similar monikers) to which the common allegations already apply. Those are not "future amendment[s]," *id.*; they are the inevitable result of *this* amendment process. There is thus no tension between Plaintiffs' approach to the MLAs and the Court's directive that these motions represent Plaintiffs' final opportunity to seek leave to amend.

Plaintiffs' approach to the MLAs also reflects the same appropriate balance between efficiency and notice to defendants that the Court previously struck in allowing amendments in 2019 through short-form complaints. Indeed, in authorizing that process, the Court rejected defendants' argument that the short-form complaint "does not meet [Plaintiffs'] burden under the Federal Rules to plead allegations of fraud with particularity with respect to each amending plaintiff." Dkt. #1282 at 2. The Court explained that its "review of the incorporated sections of the Summit County Second Amended Complaint convince[d] the Court that to the extent those sections incorporate any allegations of fraud they apply with sufficient particularity to all plaintiffs and are sufficient to put any named defendant"—i.e., any defendant the plaintiffs intended to

add—"on notice of the alleged fraudulent behavior." *Id.* The Court accordingly directed that the short-form complaint must "either (i) state that the newly added defendants appear in the ARCOS data reviewed or (ii) contain factual allegations sufficient to state a claim against any newly named defendant that does not appear in the ARCOS data," and further provided:

> The Short Form may also incorporate by reference the common facts and/or RICO claims alleged in the Summit County pleadings and/or incorporate by reference the pleadings in the plaintiff(s)'s existing complaint on file at the time that said plaintiff files the Short Form. . . In the Short Form, plaintiff(s) may state that their existing complaint and the Summit County pleadings are incorporated by reference and that statement will be effective as if those allegations, including material under seal, were fully set forth therein.

*Id.* at 4. The Court thus expressly recognized the significance of "the common facts" included in the *Summit County* pleadings in notifying newly added defendants of the basis of the claims against them. But Issue Ruling Four does the opposite.

That the short-form process occurred in the MDL's second year rather than "its ninth," Dkt. #6428 at 7 n.5, is not a tenable basis to deem that process irrelevant to evaluating Plaintiffs' approach to the MLAs. For one thing, given the general moratorium the Court issued in 2018, there has been no discovery, other material litigation, or the ability to amend in these cases for approximately seven years. Further, *unlike* the short-form process, which allowed for "purported deficiencies with the complaints [to] be addressed" when cases are set for trial, Dkt. #1282 at 3, Plaintiffs' reliance on the Exemplar Complaints' common allegations is not a means of delaying the resolution of "deficiencies." Rather, it embodies what the Court previously recognized:

that allegations common to existing and proposed defendants of the same type (pharmacies, generic manufacturers, or others)—as reflected in the Exemplar Complaints and the *Summit County* Complaint—suffice to put the new defendants "on notice of the alleged fraudulent [or otherwise unlawful] behavior." *Id.* at 2.

## CONCLUSION

For the foregoing reasons, the Court should reconsider Issue Ruling Four to the extent it denied Plaintiffs' MLAs if they "presented no defendant-specific factual allegations, in either the Exemplar Complaint or the motion itself, that the defendant engaged in prohibited conduct." Dkt. #6428 at 9-10. The Court should hold instead that Plaintiffs have satisfied Rule 15 and the Amendment Order with respect to all of the proposed defendants based on (1) the allegations in Plaintiffs' existing operative pleadings, including allegations from the *Summit County* Complaint where incorporated; plus (2) the common allegations in the Exemplar Complaints; plus (3) the additional defendant-specific allegations in the MLAs (along with the plaintiff- and jurisdiction-specific information in the MLAs and accompanying exhibits).


Dated:  March 5, 2026                    Respectfully submitted,

                                         */s/ Jayne Conroy*
                                         Jayne Conroy
                                         SIMMONS HANLY CONROY
                                         112 Madison Avenue, 7th Floor
                                         New York, NY 10016
                                         (212) 784-6400
                                         jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 5, 2026, I caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger