**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) | **MDL 2804** |
| | ) | |
| | ) | **Case No. 1:17-md-2804** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| *ALL THIRD PARTY PAYOR ACTIONS* | ) | |

**THIRD PARTY PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS BETWEEN THE TPP PLAINTIFFS AND DEFENDANTS ALLERGAN, JANSSEN, TEVA, CVS, WALGREENS, AND WALMART AND DIRECTION OF NOTICE UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(e)**

Third Party Payor Plaintiffs Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund ("Class Representatives" or "TPP Plaintiffs"), on behalf of themselves and the proposed Settlement Class[1] they represent, respectfully move this Court to enter an Order:

---

[1]  Unless otherwise noted, capitalized terms herein have the definitions set forth in the four Settlement Agreements.

- Preliminarily approving the proposed settlements with Defendants Allergan, Janssen, Teva, CVS, Walgreens, and Walmart, totaling $180 million, as likely to be found fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, and making the requisite preliminary findings;

- Directing notice to be sent to potential Class Members in the form and manner set forth in the Settlement Agreements and herein;

- Setting deadlines for class notice to be sent and for the timing, form, and content of any exclusions or objections in the form and manner set forth in the Settlement Agreements and herein;

- Appointing A.B. Data, Ltd. ("A.B. Data") to serve as the Notice and Claims Administrator;

- Appointing Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund as Settlement Class Representatives;

- Appointing Paul J. Geller and Mark J. Dearman of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), Elizabeth J. Cabraser and Eric B. Fastiff of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"), and James R. Dugan, II of The Dugan Law Firm, APLC ("The Dugan Firm") as Interim Settlement Class Counsel and appointing Mr. Geller, Ms. Cabraser, and Mr. Dugan as Interim Co-Lead Settlement Class Counsel;

• Setting a hearing date and schedule for final approval of the settlements, certification of the Settlement Class, and consideration of Interim Settlement Class Counsel's motion for award of fees, costs, expenses, charges, and Settlement Class Representative service awards; and

• Staying the TPP Actions pending in MDL 2804 as to Defendants Allergan, Janssen, Teva, CVS, Walgreens, and Walmart (the "Settling Defendants")[2] and their subsidiaries and affiliates, staying the Actions brought by the TPP Bellwether Plaintiffs and Settlement Class Representatives as to the Settling Defendants and their subsidiaries and affiliates, until the Court renders a final decision regarding the approval of the Settlement, and enjoining all Settlement Class Members from filing, commencing, prosecuting, continuing, litigating, intervening in, or participating as class members in any action asserting Released Claims against any Released Entities in any forum or jurisdiction, unless and until such Settlement Class Member has timely excluded itself from the Settlement Class.

Plaintiffs' [Proposed] Orders Granting Third Party Payor Plaintiffs' Motion for (1) Preliminary Approval of Class Action Settlement, and (2) Direction of Notice Under Federal Rule of Civil Procedure 23(e) ("Preliminary Approval Orders") are separately submitted with this motion. The Settling Defendants do not oppose entry of the Preliminary Approval Orders.

This motion is supported by the following memorandum of points and authorities and the accompanying Joint Declaration of Paul J. Geller and Elizabeth J. Cabraser and Exhibits thereto ("Joint Declaration" or "Joint Decl."), including: the Class Action Settlement Agreement among Third Party Payors and the Allergan Defendants (Exhibit A), the Class Action Settlement

---

[2] Each Settling Defendant is defined here as set forth in Section I of its respective Settlement Agreement.

Agreement among Third Party Payors and the Janssen Defendants (Exhibit B), the Class Action Settlement Agreement among Third Party Payors and the Teva Defendants (Exhibit C), and the Class Action Settlement Agreement among Third Party Payors and CVS, Walgreens, and Walmart Defendants (Exhibit D) (collectively, Exhibits A-D are "Settlement Agreements" or "Agreements"); the Declaration of Dr. Meredith Rosenthal, submitted as Exhibit E to the Joint Declaration (and Exhibit F to the prior Joint Declaration in Support of Third Party Payor Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Direction of Notice Under Federal Rule of Civil Procedure 23(e), ECF 5614-7); and the Declaration of Eric J. Miller, which is attached as Exhibit I to the Joint Declaration.

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I. INTRODUCTION ...............................................................................................................1

II. BACKGROUND ..................................................................................................................2

    A. Summary of the Litigation and Procedural History.................................................2

    B. Settlement Negotiations ..........................................................................................4

III. PROPOSED SETTLEMENT ..............................................................................................5

    A. Proposed Class........................................................................................................5

    B. Settlement Consideration and Plan of Allocation...................................................6

    C. Release ....................................................................................................................7

    D. Class Notice Program and Opt-Out Right ..............................................................7

    E. Attorneys' Fees and Expenses and Service Awards ...............................................8

IV. ARGUMENT .....................................................................................................................10

    A. Legal Standard on Granting Preliminary Approval and Disseminating Notice to the Settlement Class ...............................................................................10

    B. The Court Will Be Able to Certify the Proposed Class for Settlement Purposes upon Final Approval................................................................................10

        1. The Class Meets the Rule 23(a)(1)-(4) Requirements ...............................11

            a. Rule 23(a)(1): the Class Is Sufficiently Numerous.........................11

            b. Rule 23(a)(2): the Class's Claims Present Common Questions of Law and Fact ................................................................11

            c. Rule 23(a)(3): Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims ..............................12

            d. Rule 23(a)(4): Class Representatives and Interim Class Counsel Have Protected and Will Protect the Class's Interests ............................................................................................13

        2. The Settlement Class Satisfies Rule 23(b)(3) and (c)(4) ...........................15

            a. Common Issues of Law and Fact Predominate.............................15

b. Class Treatment Is Superior to Other Available Methods for the Resolution of Class Members' Claims ...............................16

3. The Class Is Ascertainable .........................................................................17

4. The Court Should Appoint Class Counsel Under Rule 23(g)(3) ...............18

C. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2) .............19

1. Rule 23(e)(2)(a): Interim Lead Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class ............20

2. Rule 23(e)(2)(B): the Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Conducted Under an Experienced Mediator Well-Acquainted with Opioids Litigation ............21

3. Rule 23(e)(2)(C): the Relief Provided to the Class Is Adequate ..............22

a. The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation ..........23

b. The Proposed Plan of Allocation, Including the Method of Processing Class Members' Claims, Is Effective .........................24

c. The Terms Relating to Attorneys' Fees Are Reasonable ...............25

d. No Side Agreements Influenced This Settlement .........................26

4. Rule 23(e)(4)(D): the Settlement Treats Class Members Equitably in Relation to One Another ......................................................................26

D. The Class Notice and Notice Program Meet the Requirements of Rule 23(c) ...............................................................................................................28

E. Actions as to the Settling Defendants Should Be Stayed Pending the Court's Final Decision on the Proposed Settlement ...........................................29

V. CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................10, 15, 16

*Amos v. PPG Indus., Inc.*,
2015 WL 4881459 (S.D. Ohio Aug. 13, 2015)........................................................23

*Bailey v. Great Lakes Canning, Inc.*,
908 F.2d 38 (6th Cir. 1990) ....................................................................................19

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) ............................................................................13, 16

*Brent v. Midland Funding, LLC*,
2011 WL 3862363 (N.D. Ohio Sep. 1, 2011)......................................................8, 26

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ..................................................................22

*Clark v. Pizza Baker, Inc.*,
2022 WL 16554651 (S.D. Ohio Oct. 31, 2022).......................................................19

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) ..................................................................................11

*Florida Health Sciences Center, North Broward Hospital District v. CVS, Walmart, and Walgreens*,
No. 19-018882 (Fla. 17th Cir. Ct.).........................................................................24

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ............................................................................22, 25

*Geier v. Sundquist*,
372 F.3d 784 (6th Cir. 2004) ..................................................................................25

*Gordon v. Dadante*,
2008 WL 1805787 (N.D. Ohio Apr. 18, 2008),
*aff'd*, 336 F. App'x 540 (6th Cir. 2009)..................................................................24

*Harsh v. Kalida Mfg., Inc.*,
2021 WL 4145720 (N.D. Ohio Sep. 13, 2021)...................................................21, 27

*Hawes v. Macy's Inc.*,
2023 WL 8811499 (S.D. Ohio Dec. 20, 2023) ........................................................27

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) .................................................................................................16

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................................................13

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
2011 WL 2313866 (E.D. La. June 9, 2011), *aff'd sub nom. on other
grounds Germano v. Baldwin*, No. 12-31017 (5th Cir. Jan. 28, 2014)....................................30

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2020 WL 1180550 (D. Kan. Mar. 10, 2020) ..........................................................................11

*In re Lidoderm Antitrust Litig.*,
2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ...........................................................................11

*In re Loestrin 24 FE Antitrust Litig.*,
410 F. Supp. 3d 352 (D.R.I. 2019)...........................................................................................11

*In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*,
MDL No. 2996 (N.D. Cal.)............................................................................................ *passim*

*In re Nat'l Prescription Opiate Litig.*,
2021 WL 320754 (N.D. Ohio Feb. 1, 2021) ...........................................................................11

*In re Nat'l Prescription Opiate Litig.*,
440 F. Supp. 3d 773 (N.D. Ohio 2020)......................................................................................3

*In re Nexium (Esomeprazole) Antitrust Litig.*,
297 F.R.D. 168 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015)........................................11

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
335 F.R.D. 1 (E.D.N.Y 2020) ...................................................................................................11

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers
of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ....................................................................................19, 20, 21

*McKnight v. Erico Int'l Corp.*,
655 F. Supp. 3d 645 (N.D. Ohio 2023)......................................................................... *passim*

*Moeller v. Week Publ'ns, Inc.*,
649 F. Supp. 3d 530 (E.D. Mich. 2023)...................................................................................19

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ............................................................................................13

*Pfaff v. Whole Foods Mkt. Grp. Inc.*,
2010 WL 3834240 (N.D. Ohio Sep. 29, 2010)........................................................................16

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ........................................................................8, 25

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  2010 WL 2490989 (N.D. Ohio June 15, 2010)..................................................11, 28

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ...........................................................................17

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ...........................................................................13

*Snelling v. ATC Healthcare Servs. Inc.*,
  2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) ......................................................11

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ...........................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)........................................................................................16

*Waggoner v. U.S. Bancorp*,
  2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) ....................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................12

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) .......................................................................15, 17

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 12 .........................................................................................................20
  Rule 23 ................................................................................................ *passim*

## SECONDARY AUTHORITIES

4 Herbert B. Newberg & William B. Rubenstein, *Newberg and Rubenstein on Class
  Actions* (6th ed. 2022)
    §13:49 ......................................................................................................20, 22
    §13:50 .........................................................................................................21
    §13:56 .........................................................................................................26

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund, respectfully submit this Memorandum of Points and Authorities in support of their Motion for Preliminary Approval of Class Action Settlements between the TPP Plaintiffs and Defendants Allergan, Janssen, Teva, CVS, Walgreens, and Walmart (the "Settling Defendants") and request entry of each [Proposed] Order Granting Third Party Payor Plaintiffs' Motion for (1) Preliminary Approval of Class Action Settlement, and (2) Direction of Notice Under Federal Rule of Civil Procedure 23(e).

## I.    INTRODUCTION

The Settlement Agreements, once approved by this Court, will provide significant compensation to the proposed Settlement Class and will resolve claims by TPP Plaintiffs and other Class Members against Settling Defendants.  Collectively, the Settlement Agreements total $180 million, inclusive of expenses, fees, and costs, including without limitation any common benefit assessment owed pursuant to the Ongoing Common Benefit Order in MDL No. 2804 (ECF 4428). The following is a summary of the key financial terms:

- Allergan Settlement Agreement: $10 million total to be paid into the agreed Escrow Account, as detailed in the Allergan Settlement Agreement;

- Janssen Settlement Agreement: $40 million paid into the agreed Escrow Account, as detailed in the Janssen Settlement Agreement;

- Teva Settlement Agreement: $45 million total to be paid into the agreed Escrow Account, as detailed in the Teva Settlement Agreement;

- Pharmacies Settlement Agreement: $85 million total to be paid into the agreed Escrow Account, as detailed in the Pharmacies Settlement Agreement.

The Settling Defendants will advance a portion of their respective Settlement Amounts sufficient to cover the Notice and Administrative Costs, but in no event greater than $1,000,000 per each of the four Agreements. After the Effective Date, the Settlement Amount shall not be subject to reduction and no funds may be returned to the Settling Defendants.

Valid claims will be paid pursuant to a fair and equitable Plan of Allocation, developed by a preeminent expert familiar with the opioids litigation, which takes into account each Class Member's estimated spend on opioids and opioid-related treatment, services, and procedures, consistent with prior settlements. *See* the Declaration of Dr. Meredith Rosenthal, submitted as Exhibit E to the Joint Declaration ("Rosenthal Declaration"). This is the same allocation model the Court approved when it considered the TPP settlement with the Distributor Defendants. *See* ECF 5614-7.

The settlement compensates Class Members for their claims for amounts paid and/or costs incurred for opioids and/or for treatment, services, or procedures related to the use of, misuse of, addiction to, and/or overdose from opioids. Under the Plan of Allocation, any Class Member filing a valid claim will be paid its net allocative share, after final judgment. As noted, the proposed Plan of Allocation is the same plan this Court previously approved. *See* ECF 5869 at 3 (finding "the Plan of Allocation treats Settlement Class Members equitably relative to one another"). There, not a single Class Member objected to the Plan. *See* ECF 5694 at 8.

## II.     BACKGROUND

### A.     Summary of the Litigation and Procedural History

The TPP Actions (this "Litigation") allegedly arise from the nationwide opioid crisis with which this Court is all too familiar. TPP Plaintiffs are private benefit plans that provide health and

welfare benefits to members and their families, including reimbursement for the costs of prescription opioids and opioid-related medical claims.  TPP Plaintiffs allege that the opioid industry's practices uniquely harmed TPPs by causing them to pay for prescription opioids rather than for safer, non-addictive, and lower-cost prescription drugs (including over-the-counter pain relievers) that would have been used otherwise, and to pay for opioid addiction-related treatment that followed.

TPP Plaintiffs and other potential Class Members first filed cases in late 2017 through early 2019, the vast majority of which were centralized in this MDL.  On February 21, 2020, the Court denied in part Marketing Defendants', Distributor Defendants', and Pharmacy Defendants' motions to dismiss the Corrected Unredacted Amended Complaint brought by the TPP "briefing bellwether" Plaintiffs: Cleveland Bakers and Teamsters Health and Welfare Fund  and Pipe Fitters Local Union No. 120 Insurance Fund.  *See In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773 (N.D. Ohio 2020).  The Court also subsequently denied certain defendants' motions to certify the *Cleveland Bakers* motion-to-dismiss Order for interlocutory appeal.  *See* ECF 3289.

For several years after, the Court adjudicated other cases in this MDL, most prominently government subdivisions' cases against defendants throughout the opioid supply chain.  But in 2023, the Court returned to the TPP cases.  Following a months-long bellwether selection, on October 25, 2023, the Court entered an Order identifying four bellwether cases brought by TPP Plaintiffs ("TPP Bellwether Plaintiffs").  *See* ECF 5225.  Throughout January and February 2024, TPP Bellwether Plaintiffs issued subpoenas to numerous third parties to obtain prescription and medical transaction data, and on February 15, 2024, TPP Bellwether Plaintiffs served their Amended Complaints.

On May 30, 2024, the Distributor Defendants filed a Joint Motion to Sever and Stay

proceedings in order to negotiate settlement documentation, which the Court granted. ECF 5470. The parties briefed the class settlement, while MDL 2804 actions as to the Settling Distributors were stayed. ECF 5616 at 7. Ultimately, this Court granted final approval of the class settlement with Distributor Defendants on January 15, 2025. ECF 5869.

Meanwhile, litigation proceeded against the Settling Defendants. In spring 2024, the parties extensively negotiated the scope and fields for the medical and pharmacy claims data that the TPP Bellwether Plaintiffs had subpoenaed, culminating with the Court's entry of the Order Governing the Production of Medical and Pharmacy Data on May 29, 2024. ECF 5468. Between summer and fall 2024, following briefing, the Court made two key determinations: it clarified its intention to hear the bellwethers as individual cases; and it severed claims other than federal RICO and state law analogs, conspiracy, and consumer fraud causes of action. *See* ECF 5675. In November 2024, the parties exchanged proposed search terms, and in January 2025, the parties began serving formal written discovery. Efforts continued to obtain claims data and negotiate deficiencies, including through heightened coordination with Special Master David Cohen. In April 2025, the Court ordered third parties to whom claims data subpoenas were issued to provide certain medical and pharmacy output fields. *See* ECF 6061. Through fall 2025 and early 2026, the parties extensively negotiated, briefed, and argued ESI and data productions and written discovery.

### B. Settlement Negotiations

On January 21, 2025, Janssen and PEC members of the Court-appointed Settlement Negotiating Committee (Paul J. Geller and Elizabeth J. Cabraser), with their partners Mark J. Dearman, Dory P. Antullis, Eric B. Fastiff, and Dan Drachler, as well as PEC-Member James R. Dugan, II, and outside counsel for large insurers mediated TPP claims. Allergan and Mr. Geller, Ms. Cabraser, Mr. Dugan, their colleagues, and outside counsel for large insurers, also agreed to

mediate TPP claims on February 12, 2025.  These mediations took place before Mr. Fouad Kurdi, who has successfully mediated previous opioids settlements, including the TPP class settlement in *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, MDL No. 2996 (N.D. Cal.) and the aforementioned TPP-Distributors Settlement in this MDL.  The parties participated in a series of telephonic discussions and information exchanges, which culminated in an in-person mediation (Allergan) in Boca Raton, Florida and a Zoom mediation (Janssen) with Mr. Kurdi.  Although no settlement was reached on those days, Mr. Kurdi continued to work with the parties.  In tandem with these negotiations, proposed Interim Co-Lead Counsel negotiated a settlement with Teva—which purchased the related Actavis Generic Entities in 2016—and with the Settling Pharmacies, via Mr. Kurdi as an intermediary.

On November 26, 2025, Allergan, Teva, and proposed Interim Class Counsel accepted a mediator's proposal from Mr. Kurdi.  On February 6, 2026, the Settling Pharmacies and proposed Interim Class Counsel accepted Mr. Kurdi's mediator's proposal.  And in March 2026, Janssen and proposed Interim Class Counsel also accepted a mediator's proposal from Mr. Kurdi.  Those proposals represent the instant settlements, which are the result of those extensive, informed, and arm's-length negotiations.

## III.    PROPOSED SETTLEMENT

### A.    Proposed Class

The Settlement is conditioned upon the certification at final approval, for settlement purposes only, of the following Class (the "Settlement Class"):

> All entities that: (i) paid and/or were reimbursed for Products manufactured, marketed, sold, distributed, or dispensed by any of the Defendants and/or Alleged Opioid Enterprise Members for purposes other than resale; and/or (ii) paid or incurred costs for treatment, services, or procedures related to the use of, misuse of, addiction to, and/or overdose from Products and other opioid drugs, on behalf of individual beneficiaries, insureds, and/or members, during the time period from January 1, 1996 to

- 5 -

the date of entry of the Preliminary Approval Order(s).  For clarity, the Class includes, but is not limited to: (a) private contractors of Federal Health Employee Benefits plans; (b) plans for self-insured local governmental entities that have not settled claims in MDL No. 2804; (c) managed Medicaid plans; (d) plans operating under Medicare Part C and/or D; (e) Taft-Hartley plans; and (f) ERISA plans.  For the avoidance of doubt, all Plaintiffs identified in Exhibits B to the Settlement Agreements are included in the Class.  Exhibits B are non-exhaustive lists and do not purport to identify all members of the Class.

Excluded from the Class are:

1. (a) all federal governmental entities and all state and local governmental entities whose claims have been released by a prior settlement with the Settling Defendants; (b) PBMs; (c) consumers; and (d) fully insured plan sponsors.

   For the avoidance of doubt, entities that own an interest, even a controlling interest, in a PBM, are not excluded from the Class, unless they are otherwise excluded; and

2. (a) the Settling Defendants and their subsidiaries, affiliates, and controlled persons; (b) officers, directors, agents, servants, or employees of any Settling Defendant, and the immediate family members of any such persons; and (c) persons and entities named as Defendants in any of the Actions coordinated under or Parallel to MDL No. 2804, unless such persons or entities are only Defendants due to a counter-claim or cross-claim by other Defendant(s).

## B.    Settlement Consideration and Plan of Allocation

The individual Settlement Agreements with the Settling Defendants contemplate a total recovery of $180 million, which, together with any interest that accrues, constitutes the Settlement Funds.  After the Effective Date, no portion of the Settlement Funds will revert to the Settling Defendants.  *See* Joint Decl. Exs. A-C, §IV.A.2; Ex. D, §IV.A.3.  Payment of the Settlement Amount by the Settling Defendants will not be considered: (1) an admission, concession, or evidence of liability or wrongdoing; or (2) a waiver or any limitation of any defense otherwise available to the Settling Defendants.

TPP Plaintiffs' proposed Plan of Allocation among members of the proposed Settlement

Class was developed by Dr. Meredith Rosenthal. Dr. Rosenthal's qualifications and the Plan of Allocation are summarized and detailed in the Rosenthal Declaration. *See* ECF 5614-7.

### C. Release

In exchange for the settlement consideration, Settling Defendants will receive from the Settlement Class a release for claims based on, arising out of, or in any way relating to or concerning the Covered Conduct, as set forth in the Settlement Agreements, including claims that allege opioid drug manufacturers misrepresented the risks and safety of long-term prescription opioid use and pharmacies filled opioid prescriptions that were not written for legitimate medical purposes. Joint Decl. Exs. A-D, §§IV.A, IX. The Released Claims cover any and all Claims, including Unknown Claims, against any Released Entity, whether they were actually asserted or could have been asserted in this or any proceeding, that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct, as set forth by the Settlement Agreements, which does not include breach of contract or other commercial claims arising in the ordinary course of business between a Releasor and the Settling Defendants that are wholly unrelated to the Released Claims.

### D. Class Notice Program and Opt-Out Right

Potential Class Members will be notified by the methods ordered by the Court, and notice to the Class and the costs of administration will be funded from the Settlement Funds. Joint Decl. Exs. A-D, §§V.D., VII.A.6, B.1. Proposed Interim Class Counsel propose the same plan of notification that was already approved and successfully delivered notice in the Distributors' Settlement. They ask the Court to re-appoint A.B. Data as Notice and Claims Administrator. A.B. Data is a nationally recognized, highly experienced notice and claims administrator that has on numerous occasions provided email or direct mail notice to TPPs, including recently in the TPP class settlement in *McKinsey* and the TPP-Distributors Settlement in this MDL. For a description

of A.B. Data's qualifications and experience, see the accompanying Declaration of Eric J. Miller, Joint Decl. Ex. I.  A.B. Data will provide direct notice to potential Class Members through a combination of mail, email, and internet publication of the Settlement and of every potential Class Member's right to opt out.  The proposed Class Notice will also be posted on the dedicated TPP Settlement website [https://tppopioidsettlement.com/].  For any opt out that is submitted to the Notice and Claims Administrator, A.B. Data will create a single automatic forwarding email or otherwise ensure that each Settling Party timely receives the opt out.  The content of the proposed Notice clearly articulates the terms of the Settlements and Class Members' rights and options in plain, easily understood language.  *See* Joint Decl. Exs. F-G.  If the Court grants final approval, each Class Member that submits a valid and timely claim form will receive a distribution in accordance with the Plan of Allocation.

### E.      Attorneys' Fees and Expenses and Service Awards

Pursuant to Fed. R. Civ. P.  23(h) and this Court's May 9, 2022 Ongoing Common Benefit Order (ECF 4428), Plaintiffs intend to apply to the Court for attorneys' fees in an amount not to exceed 20% of the Settlement Funds, plus all reimbursable costs and service awards.  *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) (attorneys' fees may be properly awarded as a "percentage of the fund method"). [3]  This amount is below what is routinely approved by the Sixth Circuit.  *See, e.g.*, *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023) (approving attorneys' fees amounting to 32.6% of the settlement fund); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *19 (N.D. Ohio Sep. 1, 2011) (collecting cases).  Moreover, the amount awarded by the Court will include the common benefit obligations due under the Court's common benefit-related Orders, which shall be allocated by the Fee Panel

---

[3]     Unless otherwise noted, all emphasis is added and citations are omitted.

among qualified applicants: firms that: (1) represent litigating TPPs against the Settling Defendants (parallel to requirements in prior governmental entity settlements); and (2) did work that inured to the common benefit. The fee award net of the common benefit assessment shall be allocated by Co-Lead Class Counsel among counsel who have performed authorized work for the benefit of the Settlement Class.

The proposed Class Representatives and their undersigned counsel have vigorously pursued this Litigation since 2017. Joint Decl. ¶¶6-11. Each has been integral to the successful prosecution of this Litigation—six of seven of these proposed Class Representatives are serving as either TPP Bellwether Plaintiffs or TPP briefing bellwethers. As will be further described in a declaration to be filed in conjunction with Interim Class Counsel's request for an award of attorneys' fees, reimbursement of expenses, and service awards, the TPP Plaintiffs participated extensively by researching their claims before filing complaints and amended complaints, briefing motions to dismiss, completing plaintiff fact sheets, producing sensitive data and documents, and regularly communicating with their retained counsel regarding the status and strategy of the Litigation. *Id.* ¶¶23-25. After successfully settling with Distributors, this work has continued via the active litigation in Tracks 16-19. *Id.* ¶11. In light of these continued efforts, Interim Class Counsel will seek an order from the Court awarding $50,000 to the four Class Representatives that are TPP Bellwether Plaintiffs, and a service award of $10,000 for the three other Class Representatives. The application for attorneys' fees and expenses and service awards will be posted on the Settlement website. The award to each Class Representative is in recognition of the time, effort, and expense each incurred pursuing claims that benefited the Settlement Class.

Any fees, expenses, and service awards ordered by this Court shall be deducted and paid from the Settlement Funds. Joint Decl. Exs. A-D, §§VIII.B, F.

IV.     **ARGUMENT**

A.     **Legal Standard on Granting Preliminary Approval and Disseminating Notice to the Settlement Class**

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the appropriateness of a proposed class action settlement and creates a three-stage process for approval.  First, a court must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2); and (ii) certify the settlement class after the final approval hearing.  *See* Fed. R. Civ. P. 23(e)(1)(B); Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (standard for directing notice is whether the court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal").  Second, a court must direct to the proposed settlement class a notice describing the terms of the proposed settlement and the definition of the proposed class in order to give class members an opportunity to object or opt out.  *See* Fed. R. Civ. P. 23(c)(2)(B) and (e)(1), (5).  Third, after a hearing, the Court may grant final approval of the proposed settlement by certifying the settlement class and finding that the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).

B.     **The Court Will Be Able to Certify the Proposed Class for Settlement Purposes upon Final Approval**

Certification of a settlement class is a two-step process: First, the Court must find that the proposed settlement class satisfies the requirements of Rule 23(a) for settlement purposes; and second, the Court must find that a class action may be maintained under an appropriate provision of Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  This TPP Class is similar to TPP classes that numerous courts, including this Court, have certified for litigation or for settlement under Rule 23(b)(3).  *See, e.g.*, ECF 5616 at 3-4 (preliminary approval of TPP class settlement with Distributors); ECF 5869 at 2 (final approval of same); *McKinsey*, No. 3:21-md-

02996-CRB (N.D. Cal. Apr. 8, 2024), ECF 702 (preliminary approval order); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y 2020); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. 2019); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015).  As in those cases, the proposed class here readily satisfies the Rule 23(a)(1)-(4) and (b)(3) certification requirements for settlement purposes, and the Court will easily be able to certify the nationwide TPP Settlement Class.

### 1. The Class Meets the Rule 23(a)(1)-(4) Requirements

Federal Rule of Civil Procedure 23(a) requires numerosity, commonality, typicality, and adequacy.  Additionally, the Sixth Circuit has adopted an implicit ascertainability requirement for classes certified under Rule 23(b)(3).  *See In re Nat'l Prescription Opiate Litig.*, 2021 WL 320754, at *3 (N.D. Ohio Feb. 1, 2021) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).

### a. Rule 23(a)(1): the Class Is Sufficiently Numerous

Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  The Class contains over 40,000 TPPs—a number that easily satisfies numerosity.  *See* ECF 5869 at 2 (TPP-Distributors' Final Approval Order); *Snelling v. ATC Healthcare Servs. Inc.*, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (a class of 40 or more is sufficiently numerous); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010) (1,800-member class satisfied numerosity).

### b. Rule 23(a)(2): the Class's Claims Present Common Questions of Law and Fact

Commonality requires that class members share common questions of law or fact.  *See*

Fed. R. Civ. P. 23(a)(2).  To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke." *McKnight*, 655 F. Supp. 3d at 656-57 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, all Class Representatives' and Settlement Class Members' claims turn primarily on alleged violations of RICO, negligence, and civil conspiracy—federal claims with a nationwide body of operative law, including a series of Supreme Court decisions, that are familiar to the Court and have informed the Court's prior TPP-related pretrial Orders.  Underlying these claims is a core set of common questions about, *inter alia*: (i) Settling Defendants' alleged conduct of a RICO enterprise through a pattern of violative acts, including mail and wire fraud, in deliberate disregard of federal and state law duties related to controlled substances in order to maximize profits from the manufacturing, prescribing, and selling of prescription opioids; and (ii) whether Settling Defendants' alleged conduct and collaboration with other opioid industry actors caused or contributed to the alleged harm to TPPs' business and property (economic loss).  The answers to these questions will be the same across the TPP Class because these liability-related questions relate to each Settling Defendant's alleged knowledge and conduct, not circumstances unique to any individual TPP, and are central to each Class Member's claims.  ECF 5869 at 2 (TPP-Distributors' Final Approval Order).  They are thus questions that can be fairly resolved, whether through litigation or settlement, for all Class Members at once.  *Id*.  Rule 23(a)(2) is met, and, given the significance of each of these common questions, Rule 23(c)(4) is also met.

> c.  **Rule 23(a)(3): Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims**

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of

other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  Here, the typicality requirement is satisfied for the same reasons that TPPs' claims meet the commonality requirement.  ECF 5869 at 2 (TPP-Distributors' Final Approval Order).  Specifically, TPPs' claims arise from Settling Defendants' same alleged conduct and from the same legal duties they allegedly had to put appropriate control systems in place to guard against the diversion and abuse of opioid drugs, creating a clear nexus between Class Representatives' claims and those of the TPP Class Members. Rule 23(a)(3) is satisfied.  ECF 5869 at 2 (TPP-Distributors' Final Approval Order).

### d. Rule 23(a)(4): Class Representatives and Interim Class Counsel Have Protected and Will Protect the Class's Interests

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit articulates two criteria for determining adequacy: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *McKnight*, 655 F. Supp. 3d at 657 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976)).  Put another way, the adequacy of class representation is "determine[d by] whether class counsel are qualified, experienced and generally able to conduct the litigation, and . . . [by] whether the class members have interests that are not antagonistic to one another." *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)).

The proposed Class Representatives are: Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees

- 13 -

District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund. These Representatives have no interests antagonistic to Class Members, and they will continue to protect the Class's interests in overseeing administration of the settlement and through any appeals. The Class Representatives, which include named Plaintiffs in actions centralized in this MDL, understand their duties, have agreed to consider the interests of absent Class Members, and have reviewed and uniformly endorse the Settlement Agreements' terms. Joint Decl. ¶¶23-25. They have also participated actively in the case, including by researching their claims before filing complaints and amended complaints, engaging in plaintiff-side discovery by producing confidential documents and claims data, and communicating with their counsel regarding the strategy, status, and settlement of the Litigation. Each proposed Class Representative has expressed continued willingness to protect the Class until the Settlement is approved and its administration completed. *Id.*

Moreover, as demonstrated throughout this Litigation, the proposed Interim Class Counsel have undertaken the ongoing pleading, briefing, investigative, discovery work, effort, and expense of the TPP Litigation in this MDL. They have demonstrated their willingness to devote whatever resources were necessary to reach a successful outcome throughout the more than eight years since filing their clients' complaints. They, too, satisfy Rule 23(a)(4). Proposed Interim Class Counsel's successes, experience, and work in the MDL are described in the Joint Declaration at ¶¶26-32.

In the instant case, Mr. Geller, Ms. Cabraser, Mr. Dugan, Mr. Dearman, and Mr. Fastiff all actively participated in the settlement negotiation process, the 2025 mediations, and the prosecution of TPP Plaintiffs' claims. Mr. Geller and Ms. Cabraser are Court-appointed members of both the PEC and the Settlement Negotiating Committee (*see* ECF 37, 118), and they have

- 14 -

worked together to negotiate and implement multiple global settlements in this MDL.  Ms. Cabraser as Lead Counsel, and Ms. Cabraser and Mr. Geller as Settlement Class Counsel, are also actively engaged in the administration and distribution of the Court-approved class settlement on behalf of a class of TPPs in *McKinsey*.  Mr. Dugan is also on the PEC and was designated by the Court to exclusively represent the interests of TPPs.  ECF 37.  Moreover, certain large insurers had and have their own representation for purposes of the settlement negotiation, assuring adequacy of representation for all Class members' interests.

### 2. The Settlement Class Satisfies Rule 23(b)(3) and (c)(4)

#### a. Common Issues of Law and Fact Predominate

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (cleaned up).

Here, the Class is maintainable under Rule 23(b)(3), as common questions turning on generalized proof predominate over questions affecting only individual members.  ECF 5869 at 2. TPPs' claims depend, first and foremost, on common questions regarding Settling Defendants' alleged deliberate disregard of federal and state law duties related to controlled substances in order to maximize profits from the sale of prescription opioids; Settling Defendants' alleged conduct in conspiring with actors across the opioid industry to maximize profits from the sale of prescription opioids; and whether Settling Defendants' alleged conduct and collaboration with other opioid industry actors caused or contributed to TPPs' alleged harm.  TPP Plaintiffs allege a common and unifying injury, which, like every other Class Member's injury, allegedly arises from the inordinate increase in opioid sales and diversion that occurred throughout the country, beginning

after the 1996 launch of OxyContin.  These questions can be resolved using the same evidence for all TPPs and thus are the precise type of predominant question that makes a class-wide adjudication worthwhile.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]") (cleaned up).  And, while the extent of Class Members' damages may vary in degree, that dissimilarity does not defeat a finding of predominance for the Class.  *See McKnight*, 655 F. Supp. 3d at 658 (citing *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020)); ECF 5869 at 2.

Importantly, the predominance analysis in the settlement context need not consider manageability because "the proposal is that there be no trial[,]" and hence manageability considerations are no hurdle to certification.  *Amchem*, 521 U.S. at 620.

> **b.      Class Treatment Is Superior to Other Available Methods for the Resolution of Class Members' Claims**

Superiority requires courts to consider whether a class action is a better method than individual litigation to adjudicate a claim.  *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, 2010 WL 3834240, at *7 (N.D. Ohio Sep. 29, 2010) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit . . . in which the costs of enforcement in an individual action would exceed the expected individual recovery.") (cleaned up).  Class treatment here is far superior to the litigation of thousands of individual TPP Actions, particularly from an efficiency and resource perspective.  ECF 5869 at 2.  "One factor to consider in determining whether the superiority requirement of Rule 23(b)(3) is satisfied are 'the difficulties likely to be encountered in the management of a class action.'"  *Beattie*, 511 F.3d at 567 (quoting Fed. R. Civ. P. 23(b)(3)).  If TPP Class Members had to bring individual lawsuits against the Settling Defendants, each Class Member would have to prove the same wrongful

conduct to establish liability and would offer the same evidence.  Given that TPP Class Members number in the tens of thousands, there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results.  Moreover, some TPPs are quite small; their damages may be significant to their own bottom lines, but these damages are smaller compared to the costs of litigating and trying cases against the major pharmaceutical manufacturers and three of the largest pharmacies in the United States.

Thus, Class-wide resolution of TPP Class Members' claims, especially when they are against a group of Defendants (here, all Settling Defendants), is clearly favored over other means of adjudication, and the superiority factor is met.  ECF 5869 at 2.

### 3.    The Class Is Ascertainable

In the Sixth Circuit, Rule 23(b)(3) classes must meet an implied ascertainability requirement, *see Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 466 (6th Cir. 2017), and include a class definition that is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member [of the proposed class,]" *Young*, 693 F.3d at 538.  Here, Class Members can be identified based on their status as TPPs that provide healthcare and pharmacy benefits to eligible participants and beneficiaries and paid for prescription drugs or for opioid-related treatment, services, and procedures for beneficiaries of their plans between January 1, 1996 and the date of entry of the Preliminary Approval Orders.  A.B. Data has identified class members under numerous TPP litigation and settlement class definitions, is thoroughly familiar with TPPs, and has successfully notified such classes and administered their claims in prior litigation ***and in this one.  See*** Interim Settlement Class Counsel's Notice of Filing Declaration of Dissemination of Notice Per Order Dated September 3, 2024, ECF 5662, 5662-1.

For the reasons set forth above, TPP Plaintiffs respectfully submit that the Court will—

after notice issues and Class Member input is received—"likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

### 4. The Court Should Appoint Class Counsel Under Rule 23(g)(3)

A court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). The Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Finally, Rule 23(g)(4) requires that class counsel "fairly and adequately represent the interests of the class."

At the outset of the MDL, as part of a competitive application process, the Court chose members of the PEC due to their qualifications, experience, and commitment to the successful prosecution of this Litigation. *See* ECF 34, 37 (Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee; Order). The criteria that the Court considered in appointing Mr. Geller, Ms. Cabraser, and Mr. Dugan to the PEC and, subsequently, in appointing Mr. Geller and Ms. Cabraser to the Settlement Negotiating Committee, align with the considerations set forth in Rule 23(g). As noted above, Lieff Cabraser, Robbins Geller, The Dugan Firm and other firms representing TPPs in the MDL have undertaken an enormous amount of work, effort, and expense on behalf of the TPP Settlement Class. Joint Decl. ¶¶6-13, 26. Mr. Geller, Mr. Dearman, Ms. Cabraser, Mr. Fastiff, and Mr. Dugan should be appointed Interim Class Counsel under Rule 23(g)(3), with Mr. Geller, Ms. Cabraser, and Mr. Dugan further designated Interim Co-Lead Class Counsel, to conduct the necessary steps in the Settlement approval process.

C.      **The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)**

Before preliminarily approving a settlement agreement and ordering notice be provided to the class, a court must determine it will likely be able to find that the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Clark v. Pizza Baker, Inc.*, 2022 WL 16554651, at \*3 (S.D. Ohio Oct. 31, 2022) (quoting *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)).  A court may approve a proposed class settlement only "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see also McKnight*, 655 F. Supp. 3d at 661.

The Sixth Circuit has identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate, including: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").  The 2018 amendment to Rule 23(e)(2) "did not replace any such factors [a circuit provided,]" *Moeller v. Week Publ'ns, Inc.*, 649 F. Supp. 3d 530, 541 n.1 (E.D. Mich. 2023), and sought "to focus the court and lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal[,]" *McKnight*, 655 F. Supp. 3d at 661 (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).  Accordingly, the proper standard for approval of a class settlement under Rule 23(e)(2) begins with and requires the considerations listed in the Rule. *See id.* ("[T]he factors identified in *UAW* might have relevance on any particular set of facts.  Where they do not, there is

- 19 -

no occasion to consider them.").

While all of the *UAW* factors may not be relevant to the facts at issue here, TPP Plaintiffs note that the settlement does nonetheless satisfy them, as well as the Rule 23(e)(2) factors.

### 1. Rule 23(e)(2)(a): Interim Lead Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class

Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." 4 Herbert B. Newberg & William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §13:49 (6th ed. 2022). Here, Proposed Interim Class Counsel have prosecuted this action and its fair resolution with vigor and dedication since filing their clients' complaints and have fought hard to protect the interests of the Class, as evidenced by the significant compensation available through the proposed settlement. Proposed Interim Class Counsel undertook significant efforts to uncover the facts to prosecute and refine the Class claims, including by engaging in robust Rule 12 motion practice—researching, drafting, and filing thorough and successful opposition briefs to Defendants' motion to dismiss and certify the Order for appeal in the *Cleveland Bakers* case. Likewise, the Class Representatives played an integral role in the Litigation by closely consulting with counsel. Joint Decl. ¶25. And, when called upon to participate in the bellwether process, each Class Representative provided the sensitive information, documents, and claims data necessary to inform the selection of trial bellwethers. *Id*. The Class Representatives amended their complaints to conform with the best new evidence in the MDL, briefed important issues related to the Court's management of these cases, served numerous subpoenas, negotiated production of claims data, and/or served discovery requests, negotiated custodians and search terms, worked with vendors to gather electronic and hard copy documents, and vigorously pursued

- 20 -

discovery from Defendants.  *Id.* ¶¶9-11, 25.

Moreover, the Class Representatives have each worked with counsel to review and evaluate the terms of the proposed Settlement Agreements, and each believes that the settlements are fair, reasonable, and adequate for the many reasons explained herein.  Each Representative has also expressed its continued willingness to protect the Settlement Class until the Settlements are approved and the administration completed.  *Id.* ¶¶24-25.

### 2. Rule 23(e)(2)(B): the Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Conducted Under an Experienced Mediator Well-Acquainted with Opioids Litigation

Rule 23(e)(2)(B) requires that the parties negotiate the settlement at arm's length.  *See* Fed. R. Civ. P. 23(e)(2)(B).  "This inquiry aims to root out . . . 'collusive settlements.'"  *Newberg* §13:50; *UAW*, 497 F.3d at 631.  "Courts presume the absence of fraud or collusion unless there is evidence to the contrary."  *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, at *4 (N.D. Ohio Sep. 13, 2021).  Here, resolution was clearly produced by way of good faith, informed, and arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions.

At each stage of the Litigation, the parties engaged in the adversarial process.  Prior to settling, the parties exchanged briefing across several cases, including the *Cleveland Bakers* case, other TPP bellwether cases, and the numerous case tracks in the MDL (as well as in state courts) that inform the parties' understanding of their strengths and weaknesses. Settling Defendants have already engaged in significant discovery for many years through prior case tracks of the MDL, while TPP Plaintiffs have provided initial and instructive claims data and documents.  And TPP Bellwether Plaintiffs actively negotiated with third parties to produce significant pharmacy and medical claims data.  Where so much information has been exchanged, "a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases

and hence that the settlement's value is based upon such adequate information." *Newberg* §13:49.

Moreover, there were multiple mediations, interspersed with and following years of active litigation, ultimately culminating in settlements over a number of months with the various Settling Defendants.  Joint Decl.  ¶¶12-13.  The mediations proved successful only after hard-fought negotiations stretched into 2026, while reducing the settlements to writing.  *Id*. ¶13.  Throughout this process, the parties' discussions benefitted from the involvement of Fouad Kurdi, an able mediator with substantial experience guiding earlier major Opioids settlements.  *Id.*

Settlements resulting from formal mediations conducted by experienced mediators indicate the absence of fraud or collusion.  *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (finding a "formal mediation session" weighed against the possibility of fraud or collusion); *Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of, *inter alia*, "an involved mediation before an experienced mediator").  Furthermore, the proposed settlements do not include any indication of collusive negotiations: attorneys' fees and service awards were not pre-arranged through a "clear sailing" agreement—there is no clear sailing provision here—and no portion of the Settlement Funds will revert to Settling Defendants even if this Court awards no fees.  Joint Decl. Exs. A-C, §IV.A.2; Ex. D, §IV.A.3.  In sum, the absence of markers suggesting collusion "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable."  *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).

### 3. Rule 23(e)(2)(C): the Relief Provided to the Class Is Adequate

In assessing whether the relief is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required

to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C).

> **a.      The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation**

Under Rule 23(e), the strength of Plaintiffs' claims must be weighed against "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23 (e)(2)(C)(i).  These cases are the definition of complex; this settlement avoids the clear obstacles present in litigating and trying these cases, and it assures that TPP Plaintiffs timely receive compensation only several years after filing.

While TPP Plaintiffs believe their case is a strong one, almost all class actions involve a high level of risk, expense, and complexity, which is at least in part why judicial policy so strongly favors resolving class actions through settlement.  *See Amos v. PPG Indus., Inc.*, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (collecting cases).  Here, the MDL Court has ruled that the TPP Bellwether cases may not proceed with class allegations; thus, the TPP Bellwether cases will be faced with individual trials without the possibility of aggregate resolution.  Their judgments or settlements may be informative—but not dispositive—of the many other TPP cases that will remain pending in the MDL and in state courts.  Those too, would then need to be litigated and tried, and at least one is likely to seek to proceed as a class case—again with all the inherent complexity, substantial cost, and risk.

Moreover, the Court has yet to rule on any dispositive motion regarding the new TPP Bellwether Amended Complaints.  TPP Plaintiffs have already survived motions to dismiss RICO, negligence, and conspiracy claims in this Court in *Cleveland Bakers*, but the TPP Bellwether Plaintiffs here would have to ultimately ***prove*** that Settling Defendants violated RICO and related claims, flooding the country with an oversupply of dangerous narcotics, and ***prove*** causation and damages to TPPs, which would be subject to multiple vigorous defenses from Settling Defendants, including *Daubert* and summary judgment challenges, prior to surely challenging trials.  The

reality of litigation risk and uncertainty regarding opioids-related claims is illustrated by the trajectory of litigation by hospital plaintiffs' RICO claims against the Settling Pharmacies in Florida, which has thus far featured a jury trial that ended in a December 2025 mistrial and a May 2026 directed verdict for the Settling Pharmacies. *Florida Health Sciences Center, North Broward Hospital District v. CVS, Walmart, and Walgreens*, No. 19-018882 (Fla. 17th Cir. Ct.).

The settlement benefits here are impressive given the inherent uncertainties of continued litigation and the inevitable delay that would accompany it.  Settlement, by its very nature, does not require full recovery of actual damages, and a compromise of potential recovery in exchange for certain and timely provision of the benefits is an unquestionably reasonable outcome.  *See Gordon v. Dadante*, 2008 WL 1805787, at *13 (N.D. Ohio Apr. 18, 2008) ("[D]ue to the risks of litigation and the costs of litigation in time and money, a reasoned settlement need not necessarily rise to the level of 100% of the actual damages figure."), *aff'd*, 336 F. App'x 540 (6th Cir. 2009).  And even if TPP Plaintiffs achieved a successful judgment, the years of delay in achieving that result, on top of the years all TPPs have been stayed from litigating their claims, would only further injure TPP Plaintiffs and Class Members.  Settlement is the more prudent and expeditious route.  Lastly, the settlement serves the public interest in resolving a nationwide class action to benefit TPPs and conserve the Court's resources by properly avoiding trial and appeals in this already long-standing MDL.

### b.    The Proposed Plan of Allocation, Including the Method of Processing Class Members' Claims, Is Effective

This consideration requires the Court to ensure, *inter alia*, that claims processing: (1) facilitates filing legitimate claims; and (2) is not unduly demanding.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  Class Members must also be treated equitably relative to each other.  Dr. Rosenthal's proposed Plan of Allocation is based on neutral, objective

criteria, is the product of extensive and informed investigation and analysis, and will ensure a fair distribution of the Settlement Funds.  *See* Joint Decl. Ex. E.  Dr. Rosenthal is a preeminent TPP testifying economic expert, and she is thoroughly familiar with the operation of the healthcare industry and the TPPs' role and costs in the delivery of healthcare to their beneficiaries.

Further, the Notice and Claims Administrator is highly qualified. A.B. Data has demonstrated success in administering numerous national TPP settlements.  *See* Joint Decl. Ex. I. TPPs' enthusiasm and support for similar national settlements are encouraging, and Proposed Class Counsel expect comparably few opt-outs and a high participation.  So, there is little risk of money remaining after distribution, and there will be no reversions of the Settlement Funds to Settling Defendants; all money, net of fees and costs, shall be distributed to the Class.

### c.       The Terms Relating to Attorneys' Fees Are Reasonable

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Gascho*, 822 F.3d at 279.  A reasonable attorneys' fee is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers."  *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (cleaned up).  Attorneys' fees may be properly awarded as a "percentage of the fund method."  *Rawlings*, 9 F.3d at 516.  Under this method, class counsel are awarded a percentage of the settlement benefits they secured for the benefit of class members.  *Gascho*, 822 F.3d at 279.

Here, Proposed Interim Class Counsel will apply under Rule 23(h) for attorneys' fees of up to 20% of the $180 million Settlement Funds, with such application inclusive of the common benefit assessment due under the Court's Ongoing Common Benefit Order (ECF 4428), plus all reimbursable costs and service awards. Joint Decl. ¶¶32, 35.  This request is at or below the range regularly approved in common fund settlements in this Circuit.  *See, e.g.*, *McKnight*, 655 F. Supp.

- 25 -

3d at 663 (approving attorneys' fees at 32.6% of settlement fund); *Brent*, 2011 WL 3862363, at *19 (fee equal to 29% of the settlement amount) (collecting cases); *see also* ECF 5869 at 13 (approving request for attorneys' fees of 20% and awarding costs of litigation subject to Court's common benefit-related orders).  Proposed Interim Class Counsel will file their fee application with the supporting basis for their request, at least 40 days in advance of the Objection Deadline, and the fee application will be posted on the docket and the Settlement website.  Any attorneys' fees and expenses awarded will be paid from the Settlement Funds only after the Court grants final approval and the judgments become final.  The common benefit portion of any fees awarded shall be allocated by the existing Fee Panel amongst qualified applicants, which are the firms that represent litigating TPPs against the Settling Defendants and did work that inured to the common benefit.  The remaining amount awarded shall be allocated by Interim Co-Lead Class Counsel with any appeals to such allocation going to Special Master Cohen.

The Court's ultimate decision as to whether to award fees, costs, and service awards does not impact or terminate the underlying Settlement Agreements.

### d.     No Side Agreements Influenced This Settlement

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  Here, the only such agreement is the settlement itself.  Accordingly, there is no risk that "related undertakings . . . may have influenced the terms of the settlement[,]" and this sub-factor supports the adequacy of relief. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

### 4.     Rule 23(e)(4)(D): the Settlement Treats Class Members Equitably in Relation to One Another

This factor "ensure[s] that similarly situated class members are treated similarly." *Newberg* §13:56.  In evaluating the fairness of a class settlement, Ohio district courts also ensure

that the distribution of settlement proceeds is equitable. "Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate." *Harsh*, 2021 WL 4145720, at \*7 (establishing a "distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members"); *see also Hawes v. Macy's Inc*., 2023 WL 8811499, at \*12 (S.D. Ohio Dec. 20, 2023) (finding that a settlement structure was equitable where, "while the distribution scheme may not treat [class] members strictly equally, it does treat them equitably . . . because it is reasonable to allocate . . . funds . . . based on . . . the strength of their claims on the merits") (cleaned up).

Here, similarly to *Harsh*, each qualified claimant's share of the settlement is "based upon their calculated damages," turning on actual claims data and ARCOS data. *See Harsh*, 2021 WL 4145720, at \*7. No Class Member receives preferential treatment under the Settlement. Every Class Member is entitled to a *pro rata* portion of the Settlement Funds based on the Plan of Allocation, which provides that any Class Member that files a valid claim prior to the end of the claims period, after final approval by the district court and absent pending appeals, will be paid its net allocative share. As Dr. Rosenthal explains, "a fixed settlement to compensate TPPs for overcharges related to opioid marketing should be allocated in a way that reflects the relative burden of opioid overuse borne by individual TPPs. This relative burden can be approximated by comparison of TPPs' estimated spending on opioids and the health care sequelae of opioid addiction (*e.g.*, emergency department visits for opioid overdose)." Joint Decl. Ex. E ¶11.

The Plan of Allocation allows TPPs to file claims using the most complete set of data available to them—claims data or enrollment data. *Id.* ¶¶12-16 (claims), ¶21 (enrollment).[4] And

---

4    If a TPP submitted claims in the prior Distributors class settlement, they may rely on their previously submitted data here.

it provides a set of calculations that converts the data into a single estimate of money spent by a TPP on prescription opioids or medical sequalae.  *Id.* ¶¶22-26.  If a Class Member's data is incomplete (*i.e.*, in earlier years of the Class Period), Dr. Rosenthal provides a method for estimating money spent using ARCOS data.  *Id.* ¶¶17-20.  The Plan of Allocation takes into account only data-based factors to create comparable spending figures that can be used to calculate each TPP claimant's share of the Settlement Funds.  *E.g.*, *id.* ¶27.  Each Class Member's share is thus tied to the actual harm they suffered as a result of Settling Defendants' alleged conduct.

Last, the to-be-requested service awards for the named Class Representatives are also fair, reasonable, and adequate.  Such awards are common in class action settlements and are routinely approved "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Rotuna*, 2010 WL 2490989, at *7.

### D.     The Class Notice and Notice Program Meet the Requirements of Rule 23(c)

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."  In a Rule 23(b)(3) settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Notice Program constitutes the best practicable notice under the circumstances of this case.  Joint Decl. Ex. I ¶9.  The Proposed Notice Program is identical to that successfully implemented in the Distributors Settlement.  *See* ECF 5662, 5662-1.  It provides for notice to be distributed by: (i) direct mail notice to verified and up-to-date contacts for Class Members, *id.* ¶¶10-11; (ii) direct email notice to the appropriate individuals on behalf of known Class Members where mail addresses are unavailable, *id.* ¶12; (iii) internet publication, *id.* ¶¶13; and (iv) earned media, *id.* ¶¶14-15.  Additionally, the proposed Notice Program provides for the creation and maintenance of a dedicated Settlement website [https://tppopioidsettlement.com/],

where TPPs can review the Settlement Agreements; detailed notice materials, including the Notice itself; key deadlines; the Preliminary Approval Orders when and if they are entered; and the briefs and declarations in support of preliminary approval, final approval, and attorneys' fees, once they are filed with the Court. *Id.* ¶16. The TPP Settlement website will also be cross-linked from the National Opioids settlement website.

The Notice uses "plain English" to inform TPPs of, among other things: the nature of the Class claims; the essential terms of the Settlement; the date, time, and place of the Final Approval Hearing; how to object or opt-out of the Settlement and the deadline to do so; and the binding effect of the settlement on Class Members. *Id.* ¶18. The proposed Notice includes contact information for Class Counsel, instructions on how to access the case docket via PACER or in-person at any of the Court's locations, and a note to advise Class Members to check the Settlement website or the Court's PACER site to confirm that any dates have not changed. *See* Joint Decl. Exs. F (Long-Form Notice), G (Postcard/Email Notice). The Notices also contain information regarding counsel's request for fees and expenses, along with the URL of the Settlement website where the fee brief and other important case documents will be available.

The combination of these multiple forms of clear, direct Notice is designed to provide the most comprehensive notice to the Class. Thus, the Notice satisfies the specific requirements of Rule 23(c)(2)(B), comports with the requirements of due process, and apprises Class Members that "the court will exclude from the class any member who requests exclusion" and complies with the procedures to opt out as set forth in the Settlement Agreements. Fed. R. Civ. P. 23(c)(2)(B)(v). The notice, exclusion, and objection procedures are equivalent to those approved and successfully implemented in *McKinsey* and in MDL 2804. *McKinsey*, ECF 702; MDL 2804, ECF 5616.

**E.  Actions as to the Settling Defendants Should Be Stayed Pending the Court's Final Decision on the Proposed Settlement**

- 29 -

This Court has exercised its case management authority as MDL 2804 Transferee Judge to conduct a TPP bellwether selection process and to stay the other TPP Actions pending in the MDL proceedings.  That stay should continue in effect throughout the Rule 23(e) class action settlement approval process to allow it to proceed in an orderly fashion and to allow the Settling Parties and Class Members to focus on resolution, rather than ongoing litigation.  The Distributor Settlement having been approved, these Settlement Agreements are the final piece to full resolution of the TPP Actions.  Accordingly, the Settling Parties request a continuing stay of all MDL 2804 proceedings, and a stay of the Class Representatives' cases and the TPP Bellwether Plaintiffs' cases.  Moreover, in aid of the Court's jurisdiction, the Settling Parties request that the Court enjoin all Settlement Class Members from filing, commencing, prosecuting, continuing, litigating, intervening in, or participating as class members in any action asserting Released Claims against any Released Entities in any forum or jurisdiction, unless and until such putative Settlement Class Member has timely excluded itself from the Settlement Class.  *See* ECF 5616 at 7; *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866, at \*7 (E.D. La. June 9, 2011) (district court upheld entry of stay in order preliminarily approving class settlement), *aff'd sub nom. on other grounds Germano v. Baldwin*, No. 12-31017 (5th Cir. Jan. 28, 2014), ECF 149.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that preliminary approval of the settlement be granted, pursuant to the criteria and procedures of Rule 23(e), and in accordance with the terms set forth herein.

**Certificate of Compliance with Local Rule 7.1(f)**

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that the Memorandum in Support of Third Party Payor Plaintiffs' Motion for Preliminary Approval of Class Action Settlements and Direction of Notice Under Federal Rule of Civil Procedure 23(e) complies with the page limitations (30) established for complex track cases.

DATED:  June 12, 2026

Respectfully submitted,

*/s/ Paul J. Geller*

Paul J. Geller
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750 3000
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com

*Interim Settlement Class Counsel; Counsel for Cleveland Bakers and Teamsters Health and Welfare Fund, and Pipe Fitters Local Union No. 120 Insurance Fund*

*/s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
Eric B. Fastiff
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
efastiff@lchb.com

*Interim Settlement Class Counsel; Counsel for Pioneer Telephone Cooperative, Inc. Employee Benefits Plan, and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan*

/s/ James R. Dugan
James R. Dugan, II
**THE DUGAN LAW FIRM, APLC**
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
jdugan@dugan-lawfirm.com

*Interim Settlement Class Counsel; Counsel for
United Food and Commercial Workers Health and
Welfare Fund of Northeastern Pennsylvania and
Sheet Metal Workers Local No. 25 Health &
Welfare Fund*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Ave. East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Jayne Conroy
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
**MOTLEY RICE**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
**FARRELL & FULLER LLC**
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
Telephone: (304) 654-8281
paul@farrelfuller.com

*Plaintiffs' Co-Lead Counsel*

- 32 -

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 12, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

By: */s/Peter H. Weinberger*
Peter Weinberger

- 33 -