**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**

This document relates to:

*City of Rochester v. Purdue Pharma*, *L.P.*, No. 19-op-45853 ("Track 12")

*City of Ogdensburg v. Purdue Pharma, L.P.,* No. 19-op-45852 ("Track 22")

**MDL No. 2804**

**Case No.: 1:17-MD-2804**

**Judge Dan Aaron Polster**

**MEMORANDUM SUPPORTING OPTUMHEALTH DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. THE COURT LACKS GENERAL JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS. ..... 4

II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS. ..... 5

A. The Court lacks jurisdiction over the OptumHealth Defendants under New York's long-arm statute. ..... 5

B. The Court lacks specific jurisdiction over the OptumHealth Defendants as a matter of federal due process. ..... 6

III. THE COURT LACKS RICO JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS. ..... 10

IV. PENDENT JURISDICTION DOES NOT EXTEND JURISDICTION TO PLAINTIFFS' STATE-LAW CLAIMS. ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anthony v. Van Over*,
2023 WL 6307960 (E.D. Tenn. Sep. 27, 2023) ....................13

*Aybar v. Aybar*,
177 N.E.3d 1257 (N.Y. 2021) ....................8

*Canaday v. Anthem Cos.*,
9 F.4th 392 (6th Cir. 2021) ....................4, 14

*Christie v. Hyatt Corp.*,
2024 WL 2387513 (E.D.N.Y. May 23, 2024) ....................8

*Conn v. Zakharov*,
667 F.3d 705 (6th Cir. 2012) ....................3, 7, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................4, 5

*Doe v. Varsity Brands, LLC*,
2023 WL 4935933 (N.D. Ohio Aug. 2, 2023) ....................14

*Edwardo v. Roman Catholic Bishop of Providence*,
66 F.4th 69 (2d Cir. 2023) ....................5

*Hall v. Trivest Partners, L.P.*,
178 F.4th 986 (6th Cir. 2026) .................... passim

*In re Aegean Marine Petroleum Network, Inc. Secs. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ....................1

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) ....................4

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ....................7

*Int'l Techs. Consultants v. Euroglas S.A.*,
107 F.3d 386 (6th Cir. 1997) ....................3

*Kalama v. Matson Navigation Co, Inc.*,
875 F.3d 297 (6th Cir. 2017) ....................4

*Nat'l Union Fire Ins. Co. of Pitt., Pa. v. UPS Supply Chain Sols, Inc.*,
74 F.4th 66 (2d Cir. 2023) ....................5, 6

*Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*,
40 F.4th 432 (6th Cir. 2022) ....................4

*Rexam Healthcare Packaging, Inc. v. Osiris Medical, Inc.*,
2010 WL 819063 (N.D. Ohio Mar. 9, 2010) ....................3

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................1

*Walden v. Fiore*,
571 U.S. 277 (2014).................... passim

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)....................4

*Williams v Beemiller, Inc.*
130 N.E.3d 833 (N.Y. 2019) ....................7

*World Depot Corp. v. Onofri*,
2017 WL 6003052 (D. Mass. Dec. 4, 2017)....................14

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................7

**STATUTES**

18 U.S.C. § 1965(b) ....................10, 11

N.Y. C.P.L.R. § 302(a)(1)....................5

## INTRODUCTION

This Court lacks personal jurisdiction over OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (the **OptumHealth Defendants**). Plaintiffs lump those three OptumHealth Defendants together under the single moniker "OptumHealth" without pleading which entity allegedly did what. *E.g.* Dkt. 5346-1 (**Rochester Am. Compl.**) ¶ 186; Dkt. 6504 (**Ogdensburg Am. Compl.**) ¶ 184. That is improper. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (jurisdictional requirements "must be met as to each defendant over whom a . . . court exercises jurisdiction."); *In re Aegean Marine Petroleum Network, Inc. Secs. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("[G]roup pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."). But even if the Court credits Plaintiffs' improper group pleading, the allegations and record do not establish that "OptumHealth" (undifferentiated) has a substantial, suit-related connection with New York sufficient to confer personal jurisdiction on this Court. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Plaintiffs' sole substantive allegation against "OptumHealth" is that it partnered with Purdue to expand the use of prescription opioids through a former employee, Dr. Michael Rosen. Dr. Rosen worked for OptumHealth Care Solutions, LLC, not the other two OptumHealth Defendants. And there are no allegations or evidence concerning either of the other two OptumHealth Defendants, let alone allegations or evidence creating a substantial connection to New York. *See* Rochester Am. Compl. ¶ 373; Ogdensburg Am. Compl. ¶ 371. Beyond that, the Rosen allegation suggests, at most, a connection with Purdue—not with New York. And now, after more than two years of discovery, the record is clear that the OptumHealth Defendants lack the minimum contacts with New York needed for personal jurisdiction in the State.

Nor can RICO's jurisdictional provision save Plaintiffs' claims. *See* Rochester Am. Compl. ¶ 97; Ogdensburg Am. Compl. ¶ 95. Although this Court previously applied RICO's jurisdictional provision to extend personal jurisdiction over two other non-resident defendants, the Sixth Circuit has since held that a plaintiff cannot use RICO to force a non-resident defendant to litigate in a forum with which the defendant lacks minimum contacts, unless the ends of justice *require* it. *Hall v. Trivest Partners, L.P.*, 178 F.4th 986, 991 (6th Cir. 2026). The facts and allegations concerning the OptumHealth Defendants are separate and unique from the PBM-focused allegations against Optum Rx, and the claims against the OptumHealth Defendants can be separately litigated in a forum that has personal jurisdiction over them. This Court cannot force the OptumHealth Defendants to defend against Plaintiffs' claims in a New York forum.

## BACKGROUND

The OptumHealth Defendants previously joined OptumInsight, Inc. and OptumInsight Life Sciences, Inc. (the **OptumInsight Defendants)**, and multiple other defendants, in moving to dismiss Rochester's amended complaint for lack of personal jurisdiction. Dkt. 5368. But at the Court's urging, Rochester voluntarily dismissed the OptumHealth Defendants before the Court ruled on the motion. *See* Dkt. 6235 (**Order**) at n.1. In Track 22, Ogdensburg likewise voluntarily dismissed the OptumHealth Defendants, this time before those entities filed motions to dismiss. *See id*. As a result, this Court has never ruled on the OptumHealth Defendants' jurisdictional defenses. But despite their status as non-parties, for the last two years, the OptumHealth Defendants have participated in discovery in the bellwether tracks without waiving their right to assert jurisdictional defenses should Plaintiffs try to reinstate claims against them. Dkt. 6541-1; 6541-2.

Unlike the OptumHealth Defendants, Plaintiffs did not voluntarily dismiss the OptumInsight Defendants from Tracks 12 and 22. In its Order denying the motion to dismiss the

OptumInsight Defendants, the Court reasoned that even if the Court lacked specific personal jurisdiction over those defendants under a traditional minimum-contacts framework, it would "serve the ends of justice" to force them to litigate in a common forum because "Plaintiffs' complaints each allege the moving Defendants were part of the same RICO conspiracy as the other defendants over which the Court does certainly have personal jurisdiction." Order at 6. The Court relied on factors discussed in *Rexam Healthcare Packaging, Inc. v. Osiris Medical, Inc.*, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9, 2010), and found that "dismissing [OptumInsight] from the bellwether cases would create significant delays and the balance of hardships also favors retaining jurisdiction over them." Order at 7 n.7. The Court found that convenience and Optum Rx's contacts with New York justified exercising jurisdiction over the OptumInsight entities.

A few weeks ago, the Sixth Circuit issued a decision in *Hall* that significantly narrowed RICO's jurisdictional reach, holding that, among other things, "interests of convenience cannot 'require,' for purposes of [RICO's jurisdictional provision], that a defendant be haled into a district in which it lacks minimum contacts." 178 F.4th at 992.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing personal jurisdiction over non-resident defendants. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Early in a case, a plaintiff need make only a prima facie showing that the court has personal jurisdiction. But "where, as here, 'the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction,' the prima facie 'proposition loses some of its significance.'" *Id.* (quoting *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). And after a defendant properly supports its motion to dismiss with evidence, the plaintiff "may no longer stand on his pleadings" but must show "specific facts"

establishing that the court has jurisdiction. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437–38 (6th Cir. 2022).

An MDL court "can exercise personal jurisdiction to the same extent that the transferor court could." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020). Accordingly, a transferee court must determine if the transferor court would have personal jurisdiction over defendants. *Kalama v. Matson Navigation Co, Inc.*, 875 F.3d 297, 308 (6th Cir. 2017). Here, that means this Court must decide if a New York court could exercise personal jurisdiction over the OptumHealth Defendants.

## ARGUMENT

Plaintiffs cannot establish that the OptumHealth Defendants are subject to personal jurisdiction in New York. The OptumHealth Defendants are not at home in New York and are not otherwise subject to general jurisdiction. And there are no facts establishing that this Court has specific jurisdiction over the OptumHealth Defendants under either New York's long-arm statute or the Due Process Clause. Nor does RICO's jurisdictional provision cure those deficiencies. Under recent Sixth Circuit precedent, Plaintiffs cannot invoke RICO jurisdiction unless doing so is "necessary." But forcing the OptumHealth Defendants to litigate in New York is *not* necessary. Plaintiffs' only argument for haling them into a New York court is convenience—an argument that the Sixth Circuit has now rejected.

### I. THE COURT LACKS GENERAL JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS.

General jurisdiction attaches only in a company's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The same is true for limited liability companies. *E.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) (*Daimler*'s reasoning extends to non-corporate entities); *Canaday v. Anthem Cos.*, 9 F.4th 392, 396

(6th Cir. 2021) (a court may exercise general jurisdiction "where the defendant is incorporated or headquartered"). Plaintiffs concede that each OptumHealth Defendant is subject to general jurisdiction only in Minnesota or Delaware. Rochester Am. Compl. ¶¶ 178, 182, 183; Ogdensburg Am. Compl. ¶¶ 176, 180, 181.

## II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS.

Specific personal jurisdiction exists over a defendant only if the plaintiff can show *both* that New York's long-arm statute authorizes jurisdiction and that exercising jurisdiction comports with federal due process. *Edwardo v. Roman Catholic Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023); *Daimler*, 571 U.S. at 125. Plaintiffs cannot satisfy either.

### A. The Court lacks jurisdiction over the OptumHealth Defendants under New York's long-arm statute.

Plaintiffs do not have any facts showing any OptumHealth Defendant's involvement in activities enumerated in the long-arm statute. Neither Plaintiff even attempts to allege that its claims arise from the OptumHealth Defendants' (1) transacting business in New York or contracting to supply services in New York (N.Y. C.P.L.R. § 302(a)(1)), (2) committing a tortious act in New York (*id.* § 302(a)(2)), or (3) owning, using, or possessing any real property in New York (*id.* § 302(a)(4)). Inasmuch as the Plaintiffs try to suggest that any OptumHealth Defendant committed a tortious out-of-state act that caused in-state injury (*id.* § 302(a)(3)), the record shows otherwise.

Under § 302(a)(3), Plaintiffs must show that "(1) [t]he [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce." *Nat'l Union Fire Ins. Co.*

*of Pitt., Pa. v. UPS Supply Chain Sols, Inc.*, 74 F.4th 66, 72 (2d Cir. 2023). There are no facts supporting those elements.

There is no evidence that any OptumHealth Defendant committed a tortious act outside New York that it expected to have consequences in New York. Plaintiffs' allegations focus on how "OptumHealth" (undifferentiated) supposedly produced educational materials related to pain treatment and provided a variety of standard healthcare services to individuals. *E.g.*, Rochester Am. Compl. ¶¶ 181, 188, 372–78; Ogdensburg Am. Compl. ¶¶ 179, 186, 370–376. The documents Plaintiffs rely on to support those allegations[1] make no mention of New York. And Dr. Rosen testified that he had no knowledge of those supposed educational materials—which were created for nurse case managers, not prescribing physicians (Hatchett Decl. ¶ 2 Ex. 1 (**Rosen Tr.**) 268:18–269:4)—being sent to a single health care professional in New York. Rosen Tr. 83:4–85:8. There is no evidence those purported materials even reached New York, let alone that the OptumHealth Defendants should have reasonably expected their receipt of a few pamphlets for nurse case managers to have consequences in New York. *Nat'l Union Fire Ins.*, 74 F.4th at 72.

### B. The Court lacks specific jurisdiction over the OptumHealth Defendants as a matter of federal due process.

Specific jurisdiction under the Due Process Clause exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury

[1] PPLPC021000066876; PPLPC022000059801; PPLPC028000120866; PPLPC028000130521; PPLPC020000038112; PPLPC022000050740; PPLPC022000050741; PPLPC022000051750; PPLPC012000105112; PPLPC029000207366; PPLPC028000245007; PPLPC022000260832; PPLPR001000287899.

or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290; *see also Williams v. Beemiller, Inc.*, 130 N.E.3d 833, 836 (N.Y. 2019). "[T]he mere likelihood that a product will find its way into the forum cannot establish the requisite connection between defendant and the forum such that [defendant] should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Exercising jurisdiction over the non-resident defendant must comport with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiffs do not come close to showing that the OptumHealth Defendants engaged in "suit-related conduct . . . creat[ing] a substantial connection with" New York. *Walden*, 571 U.S. at 284. Below, we walk through every allegation that conceivably references an OptumHealth Defendant and explain how each is insufficient to establish a prima facie case for personal jurisdiction on the pleadings. Further, when appropriate, we explain how the evidence that has come in during the past two years of discovery confirms that the OptumHealth Defendants did not engage in suit-related conduct by which they "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within" New York. *Williams*, 130 N.E.3d at 836; *see Conn*, 667 F.3d at 711.

**Rochester Amended Complaint's opening paragraph and paragraphs 186 and 189; Ogdensburg Amended Complaint's opening paragraph and paragraphs 184 and 187.** In those paragraphs, Plaintiffs list the defendants and improperly group them together. For example, the opening paragraph in both amended complaints defines "Optum" to include *ten* different entities and "Defendants" or "PBM Defendants" to include *eighteen* different entities. *See* Rochester Am. Compl. at 1; Ogdensburg Am. Compl. at 1. Plaintiffs also lump three entities together as "OptumHealth." Rochester Am. Compl. ¶ 186; Ogdensburg Am. Compl. ¶ 184. Rochester groups nine entities together as "Optum." Rochester Am. Compl. ¶ 189. Ogdensburg's definition of

"Optum" also includes nine entities. Ogdensburg Am. Compl. ¶ 187. Those grouped allegations are especially confusing given that both opening paragraphs define "Optum" to include ten entities. Even Plaintiffs cannot track which entities they claim did what. But as important, Plaintiffs' group pleading makes no sense. The OptumHealth Defendants do not offer pharmacy benefit management services or otherwise engage in any of the PBM activities that form the crux of the complaint against Optum Rx. Rochester Am. Compl. ¶ 187; Ogdensburg Am. Compl. ¶ 185. The allegations and theories against OptumHealthcare Solutions, LLC (that it disseminated opioid-related educational materials) are separate from the allegations against any other defendant in the litigation.

**Rochester Amended Complaint paragraphs 164, 178-80, 182–85, 187; Ogdensburg Amended Complaint paragraphs 162, 176–78, 180–83, 185.** In those paragraphs, Plaintiffs provide general background about the OptumHealth Defendants, including where they are citizens and certain licenses or registrations they hold. For example, Plaintiffs recite publicly available information that various OptumHealth Defendants are registered to do business in New York. Rochester Am. Compl. ¶¶ 164, 179–80, 184; Ogdensburg Am. Compl. ¶¶ 162, 177–78, 182. But allegations about where a company is registered to do business are not enough for general jurisdiction. *Christie v. Hyatt Corp.*, 2024 WL 2387513, at *5 n.5 (E.D.N.Y. May 23, 2024); *Aybar v. Aybar*, 177 N.E.3d 1257, 1266 (N.Y. 2021). Nor can those allegations establish specific jurisdiction because Plaintiffs do not connect any alleged New York registration with the substance of their claims, never mind show that registration constitutes suit-related conduct creating a substantial connection with the state. *See Walden*, 571 U.S. at 284.

**Rochester Amended Complaint paragraphs 30, 181, 188, 372–77; Ogdensburg Amended Complaint paragraphs 30, 179, 186, 370–75.** In these paragraphs, Plaintiffs allege

that "OptumHealth" (undifferentiated) worked with certain opioid manufacturers to reshape the pain treatment market by developing educational materials related to pain treatment. Plaintiffs further allege that "OptumHealth" (undifferentiated) provides a variety of healthcare services, including specialty health services, health banking services, and ancillary care networks—allegations that bear no appreciable connection to Plaintiffs' claims. Finally, Plaintiffs make vague references to an alleged "OptumHealth" (undifferentiated) partnership with Purdue—which allegedly arose from a family connection between a Purdue employee and an "OptumHealth" (undifferentiated) director, Dr. Michael Rosen. In fact, Dr. Rosen only worked for one OptumHealthDefendant: OptumHealth Care Solutions, LLC. Any allegations about him cannot establish personal jurisdiction over OptumHealth Holdings, LLC, or Optum Health Networks, Inc.

*None* of the paragraphs says anything about New York, let alone establishes suit-related conduct creating a substantial connection with the State. *See Walden*, 571 U.S. at 284. And the discovery record confirms that Plaintiffs have no evidence that any of the OptumHealth Defendants targeted New York. None of the Purdue documents Plaintiffs rely on references New York, and there is no evidence in the record that any of those documents even reached New York—let alone that they were disseminated to such a degree as to make out a colorable claim that OptumHealth somehow contributed to a public nuisance in Rochester or Ogdensburg. And Dr. Rosen testified that the purported educational materials were created for nurse case managers (Rosen Tr. 268:18–269:4), not individuals that had any control over opioid prescribing, and that he had no knowledge that the documents ever reached New York. *Id.* 83:4–85:8. There is no evidence that any individual in the state of New York ever so much as laid eyes on the materials.

In short, there are no allegations—and there is no evidence—that any OptumHealth Defendant engaged in any suit-related conduct creating a "substantial connection" with New York.

*See* Rosen Tr. 83:4–85:8.. Plaintiffs have had two years to develop that evidence but have nothing to show for it. *See Conn,* 667 F.3d at 711 (Plaintiffs must show, by a preponderance of the evidence, this Court can exercise jurisdiction). The claims against the OptumHealth Defendants should be dismissed for lack of personal jurisdiction.

## III. THE COURT LACKS RICO JURISDICTION OVER THE OPTUMHEALTH DEFENDANTS.

Recognizing the flaws in their jurisdictional allegations, Plaintiffs alternatively allege that this Court can exercise personal jurisdiction over the OptumHealth Defendants under 18 U.S.C. § 1965(b). Rochester Am. Compl. ¶ 97; Ogdensburg Am. Compl. ¶ 95. That is wrong, as the Sixth Circuit recently confirmed. *Hall,* 178 F.4th at 991–92.

A civil RICO action is proper only "in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Id.* at 990. RICO § 1965(b) may then "allow[] a district court to exercise personal jurisdiction over additional parties residing in other districts, but only when 'the ends of justice require.'" *Id.* (quoting 18 U.S.C. §1965(b)). Previously, this Court found that the ends of justice permitted personal jurisdiction over the OptumInsight Defendants because they allegedly participated in the same RICO conspiracy as Optum Rx (Order at 6), had participated in discovery, and were represented by the same counsel as Optum Rx, and because dismissing the OptumInsight entities "would create significant delays and the balance of hardships also favors retaining jurisdiction." Order at 7 n.7. But since that decision, the Sixth Circuit has held that the "ends of justice" authorizes courts to exercise RICO jurisdiction only when "required" and that factors related to convenience—like those that the Court considered before—do not justify the exercise of RICO jurisdiction. *Hall,* 178 F.4th at 991–92.

In *Hall*, three Michigan plaintiffs filed a putative class action in Michigan federal court, alleging that a North Carolina defendant and multiple Florida-based defendants defrauded them.

*Id.* at 989. The plaintiffs pressed a RICO claim and a state-law claim. *Id.* The Florida defendants moved to dismiss for lack of personal jurisdiction. *Id.* The district court denied the motion, reasoning, much like this Court did in denying the OptumInsight Defendants' motion to dismiss, that it would serve the ends of justice to exercise personal jurisdiction over the Florida defendants because (1) the case had already been pending in Michigan for ten months, (2) the Florida defendants had already hired Michigan counsel, and (3) it would be no less convenient for defendants to litigate in Michigan than it would be for plaintiffs to litigate in Florida. *Id.* at 991.

The Sixth Circuit reversed. The Court explained that § 1965(b) "hardly means a plaintiff can hale any RICO defendant it likes—no matter how far-flung—into any court in any district where a single defendant has minimum contacts." *Id*. Instead, § 1965(b) "demands that the 'ends of justice *require*'" the exercise of personal jurisdiction over nonresident defendants, which means "that §1965(b) permits service on out-of-state defendants only when necessary." *Id.* (cleaned up). The plaintiffs had failed to show a *need* to exercise personal jurisdiction over the Florida defendants, and the district court's considerations—the amount of time the case was pending in Michigan, the defendants' access to competent local counsel, and the balance of hardships between the parties—were "insignificant when compared to the due-process principle of treating defendants fairly." *Id*. The Sixth Circuit concluded "that interests of convenience cannot 'require' for purposes of §1965(b), that a defendant be haled into a district in which it lacks minimum contacts." *Id.* at 991–992.

*Hall* requires dismissal. As explained above, the OptumHealth Defendants lack minimum, suit-related contacts with New York as explained above. And the "interests of convenience" that this Court considered when dispensing with the OptumInsight entities' motion to dismiss are "insignificant" and cannot support the exercise of RICO jurisdiction after *Hall*. *Id.*

Plaintiffs' own allegations reinforce that it is not "necessary" to force the OptumHealth Defendants to litigate in a foreign forum to satisfy the "ends of justice." *Hall* makes clear Plaintiffs have the burden of proving that exercising RICO jurisdiction is necessary. *Id.* at 991. Plaintiffs cannot carry that burden. This Court previously identified Optum Rx as the anchoring defendant that is subject to jurisdiction in New York. Order at 4. But the allegations against Optum Rx have nothing to do with the allegations against the OptumHealth Defendants, and there is nothing in the complaint that would explain why the claims against those separate legal entities must be tried together.

Plaintiffs allege that Optum Rx participated in a "Formulary & UM Enterprise" that included negotiating and contracting for rebates from opioid manufacturers, giving those manufacturers' products favorable placement on standard formularies, foregoing utilization management controls limiting how opioids are used by plan members, and dispensing opioids through mail-order pharmacies without investigating potentially fraudulent claims. Rochester Am. Compl. ¶ 638; Ogdensburg Am. Compl. ¶ 636. They allege that the racketeering activity includes communicating about formulary placement, rebates, and utilization management by U.S. Mail and interstate wire (Rochester Am. Compl. ¶¶ 678–82; Ogdensburg Am. Compl. ¶¶ 676–80) and violating the controlled substances act through mail-order pharmacies. Rochester Am. Compl. ¶ 690; Ogdensburg Am. Compl. ¶ 688.

None of that relates to any OptumHealth Defendant. There is not a single allegation in the complaint that the OptumHealth Defendants participated in any of those alleged activities. Instead, Plaintiffs allege that "OptumHealth" is a "healthcare services provider" (Rochester Am. Compl. ¶ 187; Ogdensburg Am. Compl. ¶ 185), not a PBM or pharmacy. The only factual allegations in the complaint concerning "OptumHealth" relate to OptumHealth Care Solutions' former employee Dr.

Rosen's alleged work on several "educational initiatives" and "programs" that were presented to "case managers" (not prescribers) at UnitedHealthcare. Rochester Am. Compl. ¶¶ 372–77; Ogdensburg Am. Compl. ¶¶ 370–75. There are no allegations that Dr. Rosen or "OptumHealth" conducted any work jointly or in coordination with Optum Rx or any other alleged member of the Formulary & UM Enterprise.

Inasmuch as Plaintiffs allege that the OptumHealth Defendants associated or coordinated with anyone, it is with Purdue alone. Neither complaint contains a single allegation that the OptumHealth Defendants formed an association-in-fact enterprise with any other defendant in this case. If this case were to go to trial against Optum Rx and the OptumHealth Defendants simultaneously, the facts and evidence, including documents and witness testimony, would diverge sharply. A trial against Optum Rx will rely on evidence obtained from Optum Rx and expert testimony regarding formulary design, rebate negotiations, red-flag analyses, and dispensing practices. But Plaintiffs' case against the OptumHealth Defendants will rely on Purdue documents and "OptumHealth's" purported training materials. Those are two distinct liability theories that rely on two distinct sets of evidence. It is not "necessary" for the OptumHealth Defendants to litigate their claims alongside Optum Rx. If anything, including both defendants in a single trial would only create confusion given the sharply diverging legal theories. In that way, Plaintiffs' position is even weaker than the plaintiffs in *Hall*—at least there, all claims against all defendants arose out of a common factual basis. *Hall*, 178 F.4th at 989. They do not here.

It does not serve the ends of justice to drag the OptumHealth Defendants into a RICO case that is not about them. Even before *Hall*, other courts across the country had refused to extend RICO jurisdiction against attenuated defendants like the OptumHealth Defendants that are not tied to the alleged RICO enterprise. *Anthony v. Van Over*, 2023 WL 6307960, at *5 (E.D. Tenn. Sep. 27,

2023) ("[I]n the entirety of their 191 page Amended Complaint, Plaintiffs never specifically allege any single act of racketeering engaged in by [Defendant]. . . . [I]t is difficult to understand . . . how exercising personal jurisdiction over [Defendant] under the RICO SOP is required by the 'ends of justice.'"); *see also World Depot Corp. v. Onofri*, 2017 WL 6003052, at *5 (D. Mass. Dec. 4, 2017) ("Because of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants."). This Court should do the same.

If Plaintiffs want to pursue claims against the OptumHealth Defendants, they must do so in a forum where the OptumHealth Defendants have minimum contacts, such as Delaware or Minnesota. That is what *Hall* teaches. Convenience cannot override the Constitution's minimum-contacts requirement.

## IV. PENDENT JURISDICTION DOES NOT EXTEND JURISDICTION TO PLAINTIFFS' STATE-LAW CLAIMS.

RICO jurisdiction aside, pendent jurisdiction cannot save Plaintiffs' state-law claims. The Sixth Circuit has not authorized the exercise of pendent personal jurisdiction. *Canaday*, 9 F.4th at 401 ("[O]ur court has never recognized this exception to these due-process limitations" and "[w]e see no good reason to do so now."). This Court disagreed with that argument before, finding that *Canaday* left open the door to pendent claim personal jurisdiction. Order at 10. That is inconsistent with *Canaday*. *See Doe v. Varsity Brands, LLC*, 2023 WL 4935933, at *17 (N.D. Ohio Aug. 2, 2023) ("the Sixth Circuit also observed that 'no federal statute or rule authorizes pendent . . . claim personal jurisdiction'"). The OptumHealth Defendants reserve their right to argue on appeal that pendent claim personal jurisdiction does not exist.

## CONCLUSION

The Court should dismiss the OptumHealth Defendants for lack of personal jurisdiction.

Dated: July 16, 2026

_/s/ Brian D. Boone_
Brian D. Boone
Emily McGowan
Brandon C.E. Springer
Matthew P. Hooker
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com
matthew.hooker@alston.com

D. Andrew Hatchett
Bradley D. Harder
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com
bradley.harder@alston.com

Robert J. Giuffra Jr.
Jeffrey T. Scott
Matthew J. Porpora
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, Optum Health Networks, Inc.*